IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU; COMMONWEALTH OF MASSACHUSETTS; THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York; and COMMONWEALTH OF VIRGINIA, *EX REL.* MARK R. HERRING, ATTORNEY GENERAL,<br><br>*Plaintiffs,*<br><br>v.<br><br>NEXUS SERVICES, INC.; LIBRE BY NEXUS, INC.; MICHEAL DONOVAN; RICHARD MOORE, and EVAN AJIN,<br><br>*Defendants.* | Case No. 5:21-cv-00016 |

# DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF SUBJECT-MATTER JURISDICTION

Defendants Nexus Services, Inc., Libre by Nexus, Inc., Michael Donovan, Richard Moore, and Evan Ajin, file this Motion requesting that this Court dismiss this case for lack of subject matter jurisdiction for the following principal reasons, inter alia:

1. These Defendants are not covered persons or related persons, or service providers, as required under the Consumer Financial Protection Act (12 U.S.C. 5481(6)) because these Defendants are subject to regulations of state insurance agencies and do not engage in the busines of financial goods and services;

2. The Virginia Attorney General does not have jurisdiction over Nexus, under Va. Code § 59.1-199, inter alia, for nearly the same reasons set forth regarding the Consumer Federal Protection Bureau ("CFPB"); and

3. After declaring the CFPB lacks jurisdiction over Defendants, this Court should decline to exercise supplemental jurisdiction over the remaining state law claims brought by the Attorney Generals of Massachusetts and New York. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351, 108 S. Ct. 614, 619, 98 L. Ed. 2d 720 (1988)

## INTRODUCTION

The most salient point regarding the hyperbolic, inaccurate, and flat-out false allegations contained in the CFPB's Complaint is the following: absent—conspicuously so—from the CFPB's Complaint is the actual true fact that every time a Libre Program Participant has testified under oath regarding allegations of consumer fraud, three different, well-respected arbitrators (one a former judge) concluded that zero fraud took place. (See Exhs. 1, 2, 3.) Significantly, the conclusion that no fraud took place also included the consensus amongst all three arbitrators that these Defendants did not violate the Virginia Consumer Protection Act, because zero—with emphasis on the term zero—evidence demonstrated any remote violation. *Id.*

Specifically, one arbitrator stated that "Respondent [Libre by Nexus] **did not commit fraud in violation of Virginia law**, including [sic] common law fraud and the VCPA." (See Ex. 1, Arbitration Award, *Juan Francisco Narvaez-Molina vs. Libre by Nexus Inc., et al.*) This same

arbitrator addressed claims that match Plaintiffs' bogus claims of assault and battery regarding ankle bracelet monitoring, by stating:

> "As to Claimant's claim of battery under Virginia law relating to the impact of a monitoring device upon him, in fact, Claimant agree in the contract to wear the monitoring device. Accordingly, the impact of the device upon Claimant's leg **did not constitute "an unwanted touching which is neither consented to, excused, nor justified." Thus, Claimant's wearing of the device, which he agreed to wear, did not constitute battery. Accordingly, Claimant's claims are denied."**

*Id.*

Like the first arbitrator, the second arbitrator also found no fraud, finding zero evidence/proof of misrepresentation, while reasoning that the contract which these Plaintiffs allege is so misleading actually "was not a misrepresentation" at all:

> "The **VCPA** [Virginia Consumer Protection Act], however, still **requires proof**, in misrepresentation cases," that there actually be a misrepresentation (or in concealment cases that there has been concealment), and misrepresentations are not actionably unless the claimant proves "the elements of reliance and damages." Id. *(citing* Va. Code § 59.1-204(A)). Here, there is no dispute that this was a "consumer transaction" subject to the VCPA. But Mr. Portillo Morales **has not proven** the misrepresentation or concealment his VCPA claims require…But assuming that an alleged misrepresentation or concealment of a party's "true purpose" could be construed as misrepresenting its benefits, **this contract** *was* **not a misrepresentation."**

(**Compare** Ex. 2, Arbitration Award, *Carlos Roberto Portillo Morales v. Libre by Nexus Inc., et al*, **with** Ex. 6, Complaint at issue in all three arbitrations, claiming violation of the Virginia Consumer Protection Act, Common Law Fraud, Virginia Construction Fraud, and Battery in a 210-paragraphed complaint.)

Turning the focus back to other theories alleged under the VCPA by the plaintiff, this second arbitrator considered three principle allegations made by the plaintiff: "(1) they [Libre

by Nexus] did not provide Mr. Portillo Morales the contract in advance of his release; (2) presented the contract as something Mr. Portillo Morales was obligation to accept (because Ms. Quintanilla-Jimenez had already signed it) and; (3) created the impression that he was not free to do what he pleased that reinforced the view that he had no choice but to sign." *Id.* Upon careful consideration of the evidence, including the alleged victims' testimony about the events at issue, this second arbitrator concluded "**none of these events** constituted "deception, fraud, false pretense, false promise, or misrepresentation…Not provided the contract to Mr. Portillo Morales while he was in ICE detention **does not** meet any of these descriptions…**He was not deceived**. **And there is no evidence that Ms. Quintanilla-Jimenez was either**." *Id.*

Pausing here, and significantly, this second arbitrator's conclusions and findings also directly contradict numerous vague and conclusory allegations made by the CFPB in this case, such as the false allegation that Nexus pretended to be the government, and the false allegation that Nexus allegedly threatened to send Program Participants back to jail if they did not pay. (See Compl., ¶¶ 35, 40, 55-60.) In that vein, while noting that many of plaintiff's "fraud" allegations did not constitute deceit, but merely **constituted facts**—this second arbitrator stated:

> "I **fully credit Mr. Portillo Morales' testimony** that he was afraid that eventually he was be sent to immigration and would lose the $2,590 he had already paid and reject Libre's assertion that this all "must have seemed like an attractive proposition to" him. Post-Hearing Br. at 2…But (sadly) this **was fact**, not deceit…. **There is no evidence that Libre claimed to be the government**. (The contract, Ex. C-6 § 1.2, says it is not). **Nor did it threaten to turn him in to the Government. And it is not false** to say that if he did not sign the contract, Libre would expect to contact its lawyers, or deceptive to leave him with the impression that,

> if he refused to sign, he faced the possibility of "eventually" being returned to detention and losing his $2,590. He dId. Libre's conduct and approach can be criticized in many ways. **But it was the actual circumstances, not deception, fraud or falsity about them, that placed Mr. Portillo Morales in this situation."** *Id.*

Ultimately, all allegations were dismissed because as this second arbitrator reasoned: if the plaintiff failed to establish violations under the "more lenient standards" of the Virginia Consumer Protection Act, allegations under Common law fraud, constructive fraud, and battery must fail too:

> "Common Law Fraud, Constructive Fraud and Battery. **As these circumstances do not make out a violation of the more lenient standards of the VCPA, they also do not meet the stricter standards for common law or constructive fraud.** In addition, as Mr. Portillo Morales notes, "consent is generally a defense to a claim of battery," and he has not proven the consent was fraudulently induced. Also, as Mr. Portillo Morales did not prove his claim against the entity Respondents (Libre by Nexus Inc. and Nexus Services Inc.), he has not proved his claim against the individual Respondents, Michael P. Donovan and Richard E. Moore, whose personal involvement in the events were not the subject of any evidence." *Id.*

That established, as if two arbitrators rejecting allegations of consumer fraud was not enough to deter well-respected lawyers (with the law firm Hughes Hubbard and Reed LLP and the Legal Aid Justice Center) from continuing to go forward with bogus claims, a third arbitrator drove home the point that Defendants did not commit consumer fraud, or any fraud whatsoever. This third arbitrator stated, "Claimant has **failed** to prove by a preponderance of evidence that he is entitled to recovery on his claims under the CVPA, on his claim for battery, or on his claim that the Contract is unconscionable. Claimant has **not** suffered damages on his claims." (Ex. 3, Arbitration Award re Edwin Geovany, *Alvarenga Serrano v. Libre by Nexus Inc., et al.*)

In sum, the above resounding losses with respect to false allegations of fraud (consumer or otherwise) means that every time a so-called victim (who the CFPB and other Plaintiffs purport to represent) actually testified under oath to present evidence through an extremely reputable lawyer and "activist organization"—the Defendants in this case, prevailed. That fact leaves little wonder to the following point: the CFPB and these Attorney Generals never, not one-time, in their Complaint, (1) name one person; (2) provide an actual quote of an alleged misrepresentation; or (3) otherwise provide this Court with the specificity required to allege claims that sound in fraud. These Defendants will address that issue in a separate motion. (*See e.g.*, *Consumer Fin. Prot. Bureau v. Prime Mktg. Holdings, LLC*, No. CV1607111BROJEMX, 2016 WL 10516097, at *6 (C.D. Cal. Nov. 15, 2016) (holding CFPB must comply with 9(b) for claims that allege defendant participated in a unified course of fraudulent conduct, such as allegations of purposeful deception and claims of intentional misrepresentations.)

> **A. CFPB has no jurisdiction because in a four-year desperate fit of throwing everything imaginable at Defendants, these Attorney Generals have provided proof positive that the CFPB has no subject-matter jurisdiction in this case**

This Court should note that each attorney general in this case has been so-called investigating consumer fraud against these Defendants for over two years. Having no case at all, during that same time period, each one of these Defendants coordinated with their respective Departments of Insurance, whose respective Directors have argued that these Defendants are *subject* to the regulation of their respective Insurance Agency. Each of these agencies, both the Virginia Bureau of Insurance and the California Department of Insurance, have taken a dogged stance, insisting that these Defendants are *supposedly* engaged in the

business of insurance. That is relevant to the fact that the CFPB knows full well that it can only bring a lawsuit under the CFPA against a "covered person," and excluded from its jurisdiction of covered persons are person engaged in "the business of insurance." *See* 12 U.S.C. § 5481(15)(C); see also 12 U.S.C. § 5517.

In fact, the CFPB's regulations expressly state that "the Bureau shall have no authority to exercise any power to enforce this Title with respect to a person regulated by a State insurance regulator," and the phrase <u>a person regulated by a state insurance regulator</u> is defined as "any person that is engaged in the business of insurance and subject to regulation by any State insurance regulator, but only to the extent that such person acts in such capacity."

Here, and trust to this Court, every Plaintiff knows that both the California Department of Insurance and the Virginia Bureau of Insurance have *subjected* these Defendants to their respective regulatory power, as evidenced by the attached regulatory agreements that have forced Nexus to modify its business practices to comply with insurance regulations. Specifically, the California Department of Insurance, while subjecting and maintaining its insurance-regulatory power over these Defendants, states "the Commissioner **retains jurisdiction** to ensure that Respondent complies with the terms of this Stipulation and Waiver for a period of thirty-six (36) months. Nothing contained in this Stipulation and Waiver shall prevent the Department from taking action at any time to enforce this Stipulation and Waiver…" (See Ex. 4, Agreement with the California Department of Insurance.) Relevantly, the Virginia Bureau of Investigation, while also subjecting and maintaining its insurance-regulatory power over these Defendants, states that "[b]ased on its investigation, the **Bureau alleges** that since approximately 2014, Defendants and their employees, while unlicensed by

the Bureau to **transact the business of insurance**, **acted as insurance agents** in soliciting, negotiating, and selling through Libre **surety insurance** in the form of immigration surety bonds." (See Ex. 5, Agreement with the **Virginia Bureau of Insurance**.)

The attached agreements leave no doubt that both the **Virginia** Bureau of Insurance and California Department of Insurance have *subjected* these Defendants to their respective regulatory powers because, *according to them*, these Defendants are "transacting the business of insurance." (See Ex. 5.) The CFPB will have to explain this jurisdictional-based omission, and many others, at the hearing on this matter.

## GENERAL LEGAL STANDARD

Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) raise "the fundamental question of whether a court has jurisdiction to adjudicate the matter before it." *S.C. Elec. & Gas Co. v. Randall*, 331 F. Supp. 3d 485, 491 (D.S.C. 2018). There is no presumption of jurisdiction and the court regards "the pleadings' allegations as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* The moving party prevails if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. *Id*.

## ARGUMENT AND CITATION TO AUTHORITY

Section I argues that the CFPB does not have jurisdiction over these Defendants because the CFB does not have jurisdiction over persons subjected to regulation by any state insurance agency. 12 U.S.C. §§ 5481(6)(B), 5517. Section II argues that the CFPB does not have jurisdiction because these Defendants do not offer or provide a financial good or service.

12 U.S.C. §§ 5531(a) 549l(a). After establishing that the CFPB has no jurisdiction over the Defendant companies, Section III will show that the CFPB consequently has no jurisdiction over Michael Donovan, Richard Moore, and Evan Ajin, as individually named Defendants. 12 U.S.C. § 5481(25)(C)(i)-(ii). From that point, the remaining sections argue that the Virginia Attorney General state law claims under the Virginia Consumer Protection Act, inter alia, must be dismissed for similar reasons given with respect to the CFPB. The Defendants then request that this Court refuse to exercise its supplemental jurisdiction over the remaining claims brought by the Attorney Generals of New York and Massachusetts. Va. Code § 59.1-199; *Cohill*, 484 U.S. at 351, 108 S. Ct. at 619; see also 28 U.S.C.A. § 1367 (stating, "[t]he district court may decline to exercise supplemental jurisdiction over a claim under subsection(a) if…the district court has dismissed all claims over which it has original jurisdiction….")

I. Nexus is Exempt from CFPB Regulation by 12 U.S.C. § 5481(6)(B) and 12 U.S.C. § 5517

Foremost, this Complaint is a bold attempt by the CFPB to broadly expand its already nearly unfettered authority. There are hundreds of organizations across the country that do fall within the CFPB's broad authority. These Defendants, however, are simply not included in that authority.

A. Legal Standard

By law, the CFPB is authorized "to take any action … to prevent a **covered person** or service provider" from committing unfair, deceptive, or abusive acts or practices. 12 U.S.C. § 5531(a). Unfortunately, the CFPB, in their zeal to loudly proclaim their false and inflammatory allegations, has filed this action in haste. The CFPB lacks the authority to even

bring the subject action because neither Nexus Services, Inc. nor Libre by Nexus, Inc. are covered persons under the CFPB's own regulations. The CFPA, from which the CFPB derives its regulatory authority, defines a covered person as "(A) any person that engages in offering or providing a consumer financial product or service…." 12 U.S.C. § 5481(6). The CFPA goes on to state "the term financial product or service does not include—(i) the business of insurance." 12 U.S.C. § 5481(15)(C). The CFPA further defines the business of insurance as "the writing of insurance or the **reinsuring of risks by an insurer**, including all acts necessary to such writing or reinsuring and the activities relating to the writing of insurance or the reinsuring of risks conducted by persons who act as, or are, officers, directors, agents, or employees of insurers or who are other persons authorized to act on behalf of such persons." 12 U.S.C. § 5481(3).

Congress, making the limitation on the CFPB's authority perfectly, and unmistakably clear, did not rely solely on § 5481(15)(C)'s exclusion of persons engaged in the activities related to the writing of insurances regarding the definition of covered persons. Instead, Congress wrote into the CFPA § 5517, entitled **Limitations** on authorities of the Bureau. 12 U.S.C. § 5517. Significantly, § 5517 specifically states that "the Bureau shall have **no** authority to exercise any power to enforce this title with respect to a **person regulated** by a State insurance regulator." 12 U.S.C. § 5517(f)(1). Relevantly, the CFPA defines a person regulated by a State insurance regulator as "any person that is engaged in the business of insurance and subject to regulation by **any State** insurance regulator, but only to the extent that such a person acts in such capacity." 12 U.S.C. § 5481(22).

**B. Subjecting Nexus to regulation by the Virginia and California State Insurance Agencies demonstrates unequivocally that Nexus is exempt from CFPB Regulation**

Under the plain language of the CFPA, Nexus Services, Inc. and Libre by Nexus, Inc. (collectively "Nexus") is exempt from CFPB regulation. While Nexus vehemently denied, and still denies, that it is a business of insurance, or that it is subject to any State insurance regulator, Nexus has been hauled before the Bureau of Insurance in Virginia and Department of Insurance in California, being accused by both of transacting the business of insurance without proper authority conferred on them by each states' respective Insurance Agency. (Exhs. 4, 5.) In doing so, these Department of Insurance have undoubtedly subjected Nexus to their jurisdiction, and to this day, both Department of Insurances are actually, in fact, regulating these Defendants, by maintaining jurisdiction over Nexus for enforcement purposes. *Id.*

Indeed, these Department of Insurances have demanded that Nexus adjust its business model in order to comply with respective insurance laws. *Id.* Consequently, under the plain language of the CFPA, Nexus is not a covered person subject to CFPB regulation and thus the CFPB's authority is limited to exclude any ability to regulate these Defendants. 12 U.S.C. §§ 5481(3)(B), 5517(f)(1).

Further, the CFPB is not entitled to any *Chevron* deference to any alternative interpretation as the statute in question is simply unambiguous. *See Dickenson-Russell Coal Co., LLC v. Sec'y of Labor*, 747 F.3d 251, 256 (4th Cir. 2014) (ruling on *Auer* deference under the same standard to grant the CFPB such deference in the face of such an unambiguous statute "would permit the agency, under the guise of interpreting a [statute], to create *de facto* a new [statute]." *Id.* (citing *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 211, 131 S. Ct. 871, 882,

178 L. Ed. 2d 716 (2011)). Consequently, this Court lacks subject matter jurisdiction over the CFPB claims and the Complaint should be dismissed in its entirety.

## II. Nexus is not a covered person because it does not offer or provide a financial good or service

Even if Nexus were not excluded from the definition of covered person, and even if the CFPA did not expressly deny the CFPB the authority to regulate Nexus, as it is currently subject to a State insurance regulator, the CFPB still lacks jurisdiction over these Defendants.

### A. Legal Standard

The CFPB is tasked with regulating the offering and provision of "consumer financial products or services" under the federal consumer financial laws. 12 U.S.C. § 549l(a). The CFPB has authority to prevent a covered person or service provider from committing or engaging in an unfair, deceptive, or abusive act or practice under Federal law in connection with any transaction with a consumer for a "consumer financial product or service," or the offering of a consumer financial product or service. 12 U.S.C. § 5531(a).

In fact, "Covered person" means:

> (A) any person that engages in offering or providing a consumer financial product or service; and
>
> (B) any affiliate of a person described in subparagraph (A) if such affiliate acts as a service provider to such person.

12 U.S.C. § 5481(6). Importantly, the definition of a covered person under 12 U.S.C. § 5481(6) incorporates the defined term "consumer financial product or service." This term, in pertinent part, is defined by a laundry list of financial products or services, with the condition that such

products or services must be offered or provided for use by consumers primarily for personal, family, or household purposes. 12 U.S.C. § 5481(15).

A "covered person," however, does not include "a person who is a merchant, retailer, or seller of any **non**financial good or service"; therefore, a person who is a merchant, retailer, or seller of any **non**financial good or service is expressly excluded from CFPB jurisdiction and thus the CFPB is prohibited from "exercising rulemaking, supervisory, enforcement or other authority over said persons. 12 U.S.C. § 5517(a)(1)." Consequently, in addition to being regulated by a State insurance regulator, these Defendants are not "covered person[s]" because the goods and services at issue are nonfinancial goods and services. *Id.*

> **B. The CFPB has engaged in an audacious jurisdictional grab as evidenced by its attempt to regulate person who deal solely in non-financial goods and services, which are exempt from CFPB jurisdiction.**

No matter how much the CFPB distorts the facts in its Complaint, those facts will always unambiguously demonstrate that Nexus deals only with non-financial goods and services. 12 U.S.C. § 5517(a)(1). Nexus is not a bank, nor does it lend money, and certainly Nexus is not a "financial company." Nexus does not offer or sell consumer financial products. Nexus does not extend nor offer credit to Program Participants of any kind, nor does it make loans. Program Participants pay service fees to Nexus, including Nexus' monthly program fees, which may have included fees for Nexus' former GPS monitoring program. (See Ex. 7, Affidavit used by these Defendants regarding a Motion brought against the CFPB during its "investigation" of Defendants.) In exchange for the fees paid by the Program Participants, Nexus provides a wide range of services for its Program Participants, which include the

following:

1. At all hours of the day or night, Nexus picks up the Program Participants from the detention centers, many of which are remote[1]. This is particularly important in cold weather states in which Program Participants are released in the same clothes they were arrested in and are prohibited from reentering the facility once they have been released. Program Participants are provided mobile phones to contact their families and to facilitate their reentry into society and are also provided essential toiletries. Frequently, Nexus provides clothing, food, shelter and ultimately the transport of undocumented people released from ICE custody to their families. This begins to provide some humanity back to the individuals after they have endured a process which utterly strips all humanity and dignity from them.

2. Nationwide logistics call and support centers are available 24 hours a day to help Program Participants with various needs, including such basic concepts as paying a water bill. Many Program Participants have never lived in housing that requires payment of a water bill or other utilities.

3. Investigative services regarding those individuals who may seek to harm its Program Participants. Many of Nexus' Program Participants are abused and are afraid to come forward for fear of involving the police and Nexus helps them

---

[1] To be clear, bonded immigrants are immediately provided access to a cell phone by a Nexus employee upon release to permit them to call their families. Nexus provides transportation assistance from this time until the immigrant reaches their family, whether that includes travel by car, bus, or even airplane, wherein Nexus facilitates travel under the immigrants release papers. Throughout this process, the immigrant has access to a phone to contact his family.

>   interface and report transgressions so their concerns can be heard.
>
> 4. Travel services for Program Participants, sometimes across the country, to ensure that they appear at their hearings and provide professional staff to escort them to meetings with deportation officers. These staff escorts often result in the Program Participants being allowed to avoid a deportation and remain free to work on their case.
>
> 5. Computer and English language training assistance.
>
> 6. Help with medical expenses.
>
> 7. Counseling, life coaching and pre-paid telephone services.
>
> 8. Assistance during hurricanes and other natural disasters.

Those facts in mind, Nexus is not a "covered person" under the CFPA § 5481(6) because Nexus merely provides "nonfinancial goods or services" within the meaning of 12 U.S.C. § 5517(a), by merely facilitating Program Participants through the immigration bond process. (See Ex. 7.) The CFPB cannot point this Court to one objectively and reasonably viewed good or service that Nexus offers that is anything but non-financial in nature and reality. *Id.* Consequently, the CFPB does not have authority over these Defendants. To escape this reality, these Plaintiffs may argue that Nexus is an affiliate or service provider to a covered person, but that argument fails, too.

Under 12 U.S.C. § 5481(6)(B), in order to be subject to the CFPB's authority, Nexus would need to be an "affiliate" of any covered person. The term "affiliate" means any person that controls, is controlled by, or is under common control with another person. 12 U.S.C. § 5481(6). Nexus has zero relation with the third-party bonding companies with whom it deals,

other than on a contractual basis. And, Nexus certainly does not control, nor are they controlled, or under common control with, any of these third-party bonding companies.

Even if Nexus was affiliated with these bonding companies, they are not a "service provider." The term "service provider" means "any person that provides a material service *to a covered person* in connection with the offering" of a financial product or service, "including a person that - (i) participates in designing, operating, or maintaining the consumer financial product or service; or (ii) processes transactions relating to the consumer financial product or service." 12 U.S.C. § 5481(26) (emphasis added). Simply put, in order to be a "service provider" an entity must provide such services to a "covered person."

Again, the bonding companies with which Nexus deals are not covered persons. As previously stated, and worth arguing for the up-teeth time, pursuant to 12 U.S.C. § 5517(f), the CFPB has no authority to exercise any power "with respect to a person regulated by a State insurance regulator." The bonding companies with which Nexus transacts or transacted business are regulated by state insurance regulators, at least with respect to immigration surety bonds obtained by Program Participants and are therefore not subject to CFPB authority and cannot be covered persons. Because these bonding companies are not covered persons, Nexus cannot be "service provider[s]." Thus, the Complaint should be dismissed in its entirety because the CFPB does not have the authority to prosecute the present Complaint and thus this Court lacks subject matter jurisdiction.

### III. As Nexus is Exempt from CFPB regulation, Donovan, Moore, and Ajin cannot be related parties

The CFPB asserts claims against Michael Donovan ("Donovan"), Richard Moore ("Moore"), and Evan Ajin ("Ajin") as related parties to Nexus. (ECF 1, ¶¶ 20-22.) Specifically, the CFPB asserts that Donovan, Moore, and Ajin are officers or directors of Nexus, have exercised managerial responsibility for Nexus and participated in their conduct, and are thus related persons under § 5481(25)(C)(i),(ii.). *Id.* 12 U.S.C. § 5481(25) defines the term related person to mean "(i) any director, officer, or employee with managerial responsibility for, or controlling shareholder of, or agent for, such **covered person**; (ii) any shareholder, consultant, joint venture partner, or other person, … who materially participates in the conduct of affairs of such **covered person**." 12 U.S.C. § 5481(25)(C)(i)-(ii). For the reasons states in § II *supra*, Nexus is not a covered person, and therefore Donovan, Moore, and Ajin cannot be related persons as defined by the CFPA. *Id.* As such, this Complaint should be dismissed in its entirety.

### IV. Nexus is Excluded from Regulation under the Virginia Consumer Protection Act by Va. Code § 59.1-199

Foremost, Plaintiffs CFPB and the Attorney General of Virginia are collaterally estopped from claiming that these Defendants violated the Virginia Consumer Protection Act because that issue has been litigated over and over, and each time Nexus has prevailed—resoundingly. (See Exhs 1-3.)[2] *Qorvis Commc'ns, LLC v. Wilson*, 549 F.3d 303, 309 (4th Cir. 2008) (holding binding arbitrations are enforceable by court order); *Meridian Imaging Sols., Inc. v. OMNI Bus. Sols. LLC*, 250 F. Supp. 3d 13, 27 (E.D. Va. 2017) (noting that numerous cases stand for the

---

[2] These arguments will be made at the next stage of litigation if Defendants do not prevail on this current Motion.

proposition that the legal concepts of collateral estoppel and issue preclusion apply to binding arbitration.)

That established, Va. Code § 591-199 of the Virginia Consumer Protection Act states that "[n]othing in this chapter shall apply to: … (D) … insurance companies regulated and supervised by the State Corporation Commission." Va. Code § 59.1-199(D). As has been stated in § II *supra*, Nexus has been regulated and supervised by the Bureau of Insurance for the State Corporation Commission for its **Bureau-of-insurance deemed** business actions as an insurance company. As such, Nexus, and its officers and employees Donovan, Moore, and Ajin, are excluded from regulation under the Virginia Consumer Protection Act. *Id.* This Court therefore lacks subject matter jurisdiction over the claims of the Commonwealth of Virginia and thus this Complaint should be dismissed in its entirety.

### V. With the only Federal Claims Dismissed, this Court should Decline to Exercise Supplemental Jurisdiction over the Remaining State Law Claims

This Court enjoys wide latitude in determining whether to retain jurisdiction over state claims when all federal claims have been extinguished. *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). Declining to exercise supplemental jurisdiction where all federal claims have been dismissed is consistent with the general principle that federal jurisdiction is limited. *Boone v. Duke Energy Carolinas, LLC*, No. 3:09-CV-122-RJC-DSC, 2009 WL 3839342, at *2 (W.D.N.C. Nov. 12, 2009). As the Supreme Court has noted, where the federal claim has been dismissed this Court has a powerful reason to choose not to exercise jurisdiction." *Cohill*, 484 U.S. at 351, 108 S. Ct. at 619. As such, and in light of this Court's lack of jurisdiction over the federal claims (as well as the state law claims brought by the Virginia Attorney General), this

Court should decline to exercise supplemental jurisdiction and dismiss this case in its entirety. Id; see also 28 U.S.C.A. § 1367.

## VI. Conclusion

For the reasons argued throughout this brief, Defendants ask that this Court dismiss the CFPB's Complaint against Defendants in its entirety.

Respectfully submitted this 1st day of March 2021,

/s/ Mario B. Williams
Mario B. Williams (VSB # 91955)

**NDH LLC**
44 Broad Street, NW, Suite 200
Atlanta, Georgia 30303
404-254-0442 / 404-935-9391 FAX
mwilliams@ndh-law.com

## CERTIFICATE OF SERVICE

I hereby certify that, on this 1st day of March 2021, I have served a true and correct copy of the foregoing **DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF SUBJECT-MATTER JURISDICTION** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record, including:

| *Attorneys for the Consumer Financial Protection Bureau*<br><br>Hai Binh T. Nguyen<br>Donald R. Gordon<br>Kara K. Miller<br>Email: haibinh.nguyen@cfpb.gov<br>Email: donald.gordon@cfpb.gov | *Attorneys for the Commonwealth of Virginia, ex rel. Mark R. Herring, Attorney General*<br><br>David B. Irvin<br>Erin E. Witte<br>Stephen J. Sovinsky<br>Erin Boyd Ashwell<br>Mark R. Herring<br>Samuel Towell<br>Email: dirvin@oag.state.va.us<br>Email: ewitte@oag.state.va.us<br>Email: ssovinsky@oag.state.va.us<br>Email: eashwell@woodsrogers.com<br>Email: mherring@oag.state.va.us<br>Email: stowell@oag.state.va.us |
|---|---|
| *Attorneys for the Commonwealth of Massachusetts*<br><br>Jonathan T. Burke<br>Email: Jonathan.burke@mass.gov | *Attorneys for the People of the State of New York*<br><br>Joseph P. Mueller<br>Stewart Dearing<br>Laura Levine<br>Jane Azia<br>Email: Joseph.Mueller@ag.ny.gov<br>Email: Stewart.Dearing@ag.ny.gov<br>Email: Laura.Levine@ag.ny.gov<br>Email: Jane.Azia@ag.ny.gov |

/s/ Mario B. Williams
Mario B. Williams (VSB #91955)