**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Harrisonburg Division**

**CONSUMER FINANCIAL PROTECTION BUREAU; COMMONWEALTH OF MASSACHUSETTS; THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York; and COMMONWEALTH OF VIRGINIA, *EX REL.* MARK R. HERRING, ATTORNEY GENERAL,**

*Plaintiffs,*

**v.**

**NEXUS SERVICES, INC.; LIBRE BY NEXUS, INC.; MICHEAL DONOVAN; RICHARD MOORE, and EVAN AJIN,**

*Defendants.*

**Case No. 5:21-cv-00016**

**DEFENDANTS' CONSOLIDATED REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION**

Defendants Nexus Services, Inc., Libre by Nexus, Inc., Michael Donovan, Richard Moore, and Evan Ajin, file this Consolidated Reply in Support of Defendants' Motion to Dismiss, highlighting the following facts regarding Plaintiffs' Response, inter alia, that support dismissal of Plaintiffs' claims:

1. Plaintiff CFPB's assertion that this Court "should not credit any of the exhibits attached to the motion… because they are extrinsic…" flies in the face of precedent by the Fourth Circuit Court of Appeals, which states:

> [i]n considering these issues when a defendant challenges subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a court may evaluate the pleadings as evidence on the

> issue **and may consider other evidence in the record "without converting the proceeding to one for summary judgment."**
>
> See Al Shimari v. CACI Premier Tech., Inc., 758 F.3d 516, 531–32 (4th Cir. 2014); accord Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 37 (1st Cir. 2000) (stating, "[t]he court, without conversion, ***may consider extrinsic materials and, to the extent it engages in jurisdictional factfinding, is free to test the truthfulness of the plaintiff's allegations***");

2. Because the CFPB has no jurisdiction over these Defendants, based on both limiting and excluding statutory language within the Consumer Federal Protection Act (CFPA)—language that expressly "speaks in jurisdictional terms"— this Court may dismiss Plaintiffs' claims under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. See Arbaugh v. Y&H Corp., 546 U.S. 500, 515, 126 S. Ct. 1235, 1245, 163 L. Ed. 2d 1097 (2006); cf. United States v. Prado, 933 F.3d 121, 153 (2d Cir. 2019); cf. Calderone v. Sonic Houston JLR, L.P., 879 F.3d 577, 581 (5th Cir. 2018).

3. Likewise, CFPB's allegations, on their face, demonstrate that the CFPB lacks jurisdiction over these Defendants, a reality that is further supported by the CFPB trying to escape the Congressional mandate imposed upon it, to engage the CFPB's rulemaking process in order to expand its jurisdiction in a manner that would lawfully cover these Defendants. *See* 12 U.S.C. § 5481(15)(xi).

# INTRODUCTION

Case law relied upon by the CFPB itself—Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assocs., P.C., 114 F. Supp. 3d 1342, 1375 (N.D. Ga. 2015)—demonstrates the CFPB's continual, shameless attempt to expand its jurisdiction well beyond that which Congress bestowed upon this out-of-control government agency. (See Pls' Resp. to Defs' Mot. to Dismiss, p. 8.) In Consumer Fin. Prot. Bureau, the CFPB made an audacious attempt to expand its jurisdictional reach by inanely arguing that no statute of limitations applies to the CFPB because, according the CFPB, Congress never intended to impose time limits on the agency's claims: "[t]he Bureau urges the Court to apply no statute of limitations at all, arguing *inter alia* that this approach is consistent with the overall statutory structure." Consumer Fin. Prot. Bureau, 114 F. Supp. 3d at 1376. This type of absurd argument requires everyone to restrain themselves from saying aloud the commonly used colloquialism, "c'mon, really?" Luckily, the Court easily debunked this mortifying argument by simply pointing to, inter alia, the CFPA—which expressly imposes a three-year statute of limitations on CFPB claims:

> Here, however, the Court is hard-pressed to proclaim that Congress was silent as to the limitations period applicable to claims brought by the Bureau. The CFPA's own limitations provisions, and the provisions relevant to the Bureau's predecessor agency the FTC, suggest that Congress envisioned *some* statute of limitations applying when the Bureau brings an action. Section 5564(g) of the CFPA specifically proscribes the "[t]ime for bringing action." "Except as otherwise permitted by law or equity," § 5564(g) provides, "no action may be brought under this title more than 3 years after the date of discovery of the violation to which an action relates." 12 U.S.C. § 5564(g). Thus, under the CFPA, the Bureau generally has three years to bring an action from the date of discovery of the violation.

Id.

In this case, much like aspects of Consumer Fin. Prot. Bureau, the CFPB is once again trying to dramatically expand its authority, this time over an entire industry of which Congress has expressly denied CFPB jurisdiction. The Court should grant Defendants' Motion, forcing the CFPB to engage in the legislative process by either (1) lobbying Congress for changes to the law, or by (2) utilizing the rulemaking tools provided to the CFPB, by Congress, to expand CFPB jurisdiction.

## REPLY ARGUMENT

### I. Plaintiffs misconstrue the standard to avoid this Court dismissing the case for lack of subject matter jurisdiction because the CFPB obviously lacks legislative jurisdiction over these Defendants.

To the point, Plaintiffs' statement that "the Court should not credit any of the exhibits attached to the motion," because those documents are "extrinsic evidence," is wrong. As stated by both the Fourth and First Circuits, and nearly every circuit in the United States, this Court should examine extrinsic evidence to determine this Court's own jurisdiction. See Al Shimari, 758 F.3d 516; accord, Dynamic Image Techs., Inc., 221 F.3d 34. This is of no surprise because jurisdiction is a threshold question of such importance that courts should determine their own jurisdiction, *sua sponte*, even when not moved to do so by a party. Id. at 37. Moreover, Plaintiffs cannot just cite a few statutes claiming jurisdiction over Defendants, because jurisdiction "may not be premised on the mere citation of federal statutes." Cf. MotJuste Tirade of Vim Andre Juste v. Brennan, 16 F. Supp. 3d 716, 725 (N.D. W. Va. 2014).

Here, the government, Plaintiff CFPB, does not contest the authenticity of the agreements on record which demonstrate, irrefutably so, that these Defendants are subject to

regulation by state insurance agencies, including the Virginia Bureau of Insurance and the California Department of Insurance. (Compare generally, Pls' Resp. to Defs' Mot. Dismiss, ECF 22, **with** ECFs 18-4, 18-5.) As such, this Court can and should consider these documents to determine whether the CFPB has jurisdiction over these Defendants. See Calderone, 879 F.3d at 581 (reasoning that when the CFPA's statutory limitations and exclusion under the CFPA prohibit them from exercising regulatory authority over a defendant, the CFPB has **no jurisdiction** at all over said defendant).

### A. Congressional, statutory prohibitions imposed upon a government agency's actual jurisdiction over a person/entity is part and parcel to this Court's analysis with respect to its own subject matter jurisdiction.

Relevantly, and significantly, if this Court finds that the CFPB has no jurisdiction over these Defendants, this Court may dismiss this case for lack of subject matter jurisdiction—because determining legislative jurisdiction, *i.e.*, determining the express limitations and exclusions imposed upon a government agency such as the CFPB with respect to persons/entities such as these Defendants is part and parcel to this Court's determination of its own subject matter jurisdiction. See Prado, 933 F.3d 121; (Compare id., **with** Arbaugh, 546 U.S. at 515, **with** United States v. Prado, 933 F.3d at 153, **with** ECF 1-1, CFPB's Civil Cover Sheet, showing the CFPB admitting that jurisdiction in this case is based on the CFPB being an actual proper party to this case). To escape this stark legal reality, the CFPB relies on Arbaugh, a reliance that is misplaced. (Pls' Resp. to Defs' Mot. Dismiss, ECF 22, at fn 7, inter alia.)

Briefly, unlike Arbaugh, the entire issue in this case directly deals with whether the CFPB has side-stepped express, statutory limitations/exclusions imposed upon the CFPB—

by Congress—limiting and exclusionary provisions that expressly prohibit the CFPB from exercising any jurisdiction over these Defendants. (See Defs' Mot. to Dismiss, arguing that the CFPB lacks jurisdiction to regulate these Defendants and thus has no basis to even name itself as a party on the subject civil cover sheet [ECF 1-1], or otherwise, in this case.) On top of that, and significantly, the issue in Arbaugh dealt with the *definition* of "employer," a *definition* that did not 'speak in jurisdictional terms' at all. See Arbaugh, 546 U.S. 500.

To the absolute contrary, the express language in this case—"limitations on the authorities of the Bureau," and "exclusion for persons regulated by a state insurance regulator" does indeed "speak in jurisdictional terms," at least according to one Court of Appeals, which *published* an opinion, reasoning that the CFPB's exclusionary statute (12 USC § 5519, Exclusion for Auto dealers) "clarifies that automobile dealers are outside the Bureau's jurisdiction." Calderone, 879 F.3d at 581.

In sum, and in keeping with this Reply brief, Arbaugh, as well as both Calderon and Prado, *inter alia*, demonstrate that while determining whether it should dismiss this case for lack of subject matter jurisdiction, this Court can and should determine whether the CFPB has jurisdiction over these Defendants, and if the CFPB does not: this Court should dismiss this case. With that in mind, Defendants stand on the arguments made in their Motion that the CFPB lacks legislative jurisdiction over these Defendants. (See Defs' Mot. to Dismiss, ECF 18.) Consequently, this Court should grant Defendants' Motion on that basis alone. But the following gives an equal reason to grant Defendants' Motion: because the CFPB is seeking to vitiate the express intent of Congress, once again.

**II. There is no subject matter jurisdiction based on the factual allegations of the CFPB's Compliant, a reality that also demonstrates no jurisdiction because CFPB has failed to follow its Congressionally-mandated rulemaking process.**

This Section demonstrates that the CFPB must use its rulemaking authority, granted to it by Congress, in order to expand its jurisdiction to cover persons/entities such as these Defendants, because the CFPB's factual allegations demonstrate that it has no statutory jurisdiction over these Defendants. See Calderone, 879 F.3d at 581. In making this point, Defendants argue that Plaintiffs' factual allegations, even when accepted as true, demonstrate unambiguously that there is no consumer financial service or product at issue in this case. See e.g., Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009). Relevantly, accepting factual allegations as true does not mean Defendants' motion should be converted to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Id. Instead, as Kerns makes clear, "when a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged," but still may dismiss the Complaint under 12(b)(1) if those considered-true facts demonstrate that Plaintiffs, for example, have no jurisdiction over the Defendants—thereby prohibiting Plaintiffs, as a matter of law, from being a party to this suit. Id.

Notably, as exemplified in Section II A below, the factual allegations require no merit assessment because the allegations plainly demonstrate the CFPB, itself, understands that zero consumer financial products or services are involved in this case. Id. Because of that fact, as shown in Section II B below, the CFPB has no jurisdiction over these Defendant until the CFPB undertakes its Congressionally mandated rulemaking process to lawfully expand its jurisdiction over these Defendants. Id.

**A. Plaintiffs factual allegations, when considered true, demonstrate that the CFPB knows that these Defendants are not engaged in selling consumer financial products or services.**

In their opposition, Plaintiffs argue that Libre is a "covered person" under § 5481(15)(A)(i) of the CFPA because "[t]he financial products that Libre engages in offering or providing are extensions of credit." (ECF 22 at p. 6.) But, ironically, the CFPB's argument is more than a little deceptive. The Complaint does not allege that Libre actually offers or provides extensions of credit. (See generally Pls' Compl., ECF 1.) Rather, it alleges that Libre falsely creates the reasonable 'impression' in the minds of consumers that Libre is offering them credit: "Libre leads consumers to reasonably believe that it has offered or provided them an extension of credit - a loan - that the consumer must repay." (See Compl., ECF 1 at ¶¶ 114-120); (see also Id. at ¶ 114, stating "Libre ***falsely told*** consumers that Libre paid the full amount of the consumer's bond to ICE"; (see also Id. at ¶ 115, stating "Libre ***falsely told*** consumers that the $420 monthly payments were repayments to Libre for the bond it paid." (emphasis added).

If Libre is "falsely" telling consumers that it is offering them a loan, as alleged in the Complaint, then it is axiomatic that the CFPB knows that Libre is not, in fact, offering consumers a loan. By Plaintiffs' allegations, the existence of any actual loan is false, and thus in actuality, there is no consumer financial product or services at issue in this case. See 12 U.S.C. 5481(15)(A)(i). This material distinction is paramount to the immediate analysis with respect to whether the CFPB has statutory jurisdiction to prosecute this enforcement action in this forum.

As stated, pretending to offer a loan is not offering a loan. If Libre does not actually offer its customers loans, then Libre is not "engaging in offering or providing a consumer financial product or service." See 12 U.S.C. 5481(15)(A)(i). Therefore, Libre is not a "covered person" under the CFPA and not subject to the CFPB's statutorily-based jurisdiction. Id.; see also Calderone, 879 F.3d at 581. There simply is no financial product to regulate here and the CFPB knows this fact. Consequently, the CFPB is trying to persuade this Court to reason that the CFPA permits the CFPB to regulate entities, such as these Defendants, that do not provide financial products or services. Id. at 15. This Court should grant Defendants' Motion.

In that vein and notably, Plaintiffs **do not cite** any statutory definition nor other section of the CFPA that includes the phrase "[r]easonable impression in a consumer's mind…," because no such part of the CFPA exist. Cf. ECF 22, Pls. Resp. to Defs. MTD; see also 12 U.S.C. 5517 *et seq*. Likewise, Plaintiffs do not (and cannot) cite to a single case or final agency rule that expands the definition of financial products to include situations where a customer "reasonably [but falsely] believes" that they were offered a financial product because no such case or final agency rule exist.

**B. Having demonstrated that the CFPB lacks jurisdiction because these Defendants fit under no statutory provision (see Calderone, 879 F.3d at 581), that point is driven home by the CFPB's failure to follow the rulemaking process if it wants to expand its jurisdiction, as Congress has instructed.**

With the above established, if the CFPB wants to expand its jurisdiction to cover scenarios where customers are defrauded into "falsely believing" that they received a financial product or service, Congress has expressly authorized the CFPB to do so. The definition of "financial product or service" includes "(xi) such other financial product or service as may be defined by the Bureau, ***by regulation***, for purposes of this title, if the Bureau finds that such

financial product or service is—(I) entered into or conducted as a subterfuge or with a purpose to evade any Federal consumer financial law." 12 U.S.C. § 5481(15) (emphasis added). That means the CFPB has to modify its regulation through its rulemaking process, a mandated action that the CFPB has to this day failed to undertake regarding these Defendants.

Driving home that point, again, the key requirement established by Congress is that the CFPB can only expand the definition of "financial product or service" **by regulation**— not by using this Court to interpret an aspect of the CFPA that does not yet exist, or to read into the CFPA a definition that does not exist. Id. Again, this procedural distinction matters. Congress imposed several constraints upon the CFPB when using its rulemaking authority. See 12 U.S.C.A. § 5512. The agency's rulemaking authority is also subject to the strictures of the Administrative Procedure Act, 5 U.S.C. § 500, *et seq*. Additionally, the CFPB is one of the few federal agencies that must adhere to special requirements for rulemaking when the proposal is likely to have a significant impact on a substantial number of small entities, triggering the Small Business Regulatory Enforcement Fairness Act, 12 U.S.C. §5532(a).

However, none of these Congressionally mandated protections are triggered if the CFPB is allowed to simply file an enforcement action, like the one in this case, to expand its jurisdiction rather than follow the Congressionally mandated rulemaking process. Id. Indeed, given the complete lack of specificity as to the fraud allegations in the Complaint—*e.g.*, failing to describe any specific transaction/time/date/place or name any specific Libre client who was allegedly misled into believing they were offered a loan—one can imagine how easily the CFPB can expand its jurisdiction **simply by filing an enforcement action against any non-**

**financial entity so long as the agency appends a single assertion**: "[unspecified] customers believed that they received a loan/credit/etc. [even though they didn't.]"

Contesting a government enforcement action is expensive and can be fatal to a business. Judicial oversight of the CFPB's efforts here is particularly important because the CFPB is a relatively new agency under a new administration with demonstrated desire to test courts with respect to its jurisdiction at multiple levels. See CFPB v. Accrediting Council for Indep. Colleges & Sch., 183 F. Supp. 3d 79, 84 (D.D.C. 2016), aff'd, 854 F.3d 683 (D.C. Cir. 2017) ("Although it is understandable that new agencies like the CFPB will struggle to establish the exact parameters of their authority, they must be especially prudent before choosing to plow head long into fields not clearly ceded to them by Congress"); (see also Consumer Fin. Prot. Bureau, 114 F. Supp. 3d at 1376, the CFPB trying to expand its jurisdiction by arguing that Congress never intended to impose a limitation period upon the CFPB with respect to bringing claims against defendants.) This Court can and should dismiss this case for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

## III. Nexus is not within the CFPB's jurisdiction because it is regulated by Virginia's regulatory agencies and was regulated as an insurance company by the SCC

Plaintiff Commonwealth of Virginia ("Virginia") asserts that Defendants Libre by Nexus and Nexus Services, Inc. ("Nexus") are not insurance companies exempted by the Virginia Consumer Protection Act ("VCPA"). (ECF 23 at p. 2.) Instead, Virginia asserts, Defendants are unlicensed insurance agents, not making contracts of insurance regulated by the State Corporation Commission ("SCC"). Id. at pp. 4-5. This assertion, however, flies in the face of the SCC findings in their settlement with Nexus.

In the Settlement Order entered in the regulatory action by Virginia against Nexus, the SCC found that Nexus was "knowingly transacting the business of insurance without a license." (ECF 18-5 at p. 3.) Having made that finding, based upon the same actions alleged by Virginia in this action, Virginia proceeded to settle the regulatory matter with Nexus, levying hundreds of thousands of dollars in fines and requiring operational changes by Nexus to comply with the SCC regulations. Id. This Court may take judicial notice of Virginia's position in the records of the SCC regulatory action. Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 607 (4th Cir. 2015).

**A. Virginia's efforts at double regulation is the kind of mischief the General Assembly sought to avoid**

Virginia asserts that Nexus is attempting to use allegations of unlicensed activity against state regulation as a shield against other trade practices law, while also arguing that this alleged conduct is the mischief that the General Assembly attempted to avoid in making the VCPA a remedial statute. (ECF 23, p. 6, n. 3.) Foremost, Virginia knows that three arbitrators have already and conclusively reasoned that these Defendants have never violated any provisions of the VCPA. (See Defs' Mot. to Dismiss, laying out in detail these findings of which Virginia refuses to acknowledge.) That established, in support of this assertion, Virginia cites to a Tennessee case. Id. This, however, is a complete misstatement of the law and the facts.

As has been stated, Nexus was subject to the regulatory authority of the SCC, who levied fines and enforced changes in Nexus' business practices after finding Nexus was "transacting the business of insurance." (ECF 18-5 at p. 3.) Virginia now seeks to litigate against Nexus in federal court under the VCPA for the same activities. (ECF 1.) The Virginia

Assembly provides for the regulation of companies in the business of insurance by statute through the regulatory arm of the SCC. See Ambrose v. Blue Cross & Blue Shield of Virginia, Inc., 891 F. Supp. 1153, 1156 (E.D. Va. 1995), aff'd, 95 F.3d 41 (4th Cir. 1996). Indeed, and for the umpteenth time, the SCC's exclusive control over the regulation of insurance, including of unfair and deceptive acts, "will lead to consistency of application of such provisions" while varying jury verdicts "may well lead to inconsistencies and interference with Virginia's overall statutory scheme." Harris v. USAA Cas. Ins. Co., 37 Va. Cir. 553 (1994). Where these regulatory agencies police the market, the VCPA provides for an exemption from litigation. Va. Code § 59.1-199.

Nexus remains under the regulation of the SCC as part of the continuing obligations of the Settlement Order wherein Virginia determined that Nexus was conducting the business of insurance. (ECF 18-5 at pp. 4-6.) As such, Virginia may not now seek enforcement under the VCPA's litigation authority as Nexus is, properly, excluded from the VCPA. Va. Code § 59.1-199. The Motion to Dismiss should be granted as to the Commonwealth of Virginia.

## CONCLUSION

For the reasons stated in Defendants' Motion to Dismiss and the instant Reply in Support, this Court should grant Defendants' Motion and dismiss this action in its entirety.

Respectfully submitted this 26th day of March 2021,

/s/ Mario B. Williams
Mario B. Williams (VSB # 91955)

**NDH LLC**
44 Broad Street, NW, Suite 200
Atlanta, Georgia 30303
404-254-0442 / 404-935-9391 FAX
mwilliams@ndh-law.com

## CERTIFICATE OF SERVICE

I hereby certify that, on this 26th day of March 2021, I have served a true and correct copy of the foregoing **DEFENDANTS' CONSOLIDATED REPLY IN SUPPORT OF THEIR MOTION TO DISMISS COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record, including:

| | |
|---|---|
| *Attorneys for the Consumer Financial Protection Bureau*<br><br>Hai Binh T. Nguyen<br>Donald R. Gordon<br>Kara K. Miller<br>Email: haibinh.nguyen@cfpb.gov<br>Email: donald.gordon@cfpb.gov<br>Email: kara.miller@cfpb.gov | *Attorneys for the Commonwealth of Virginia, ex rel. Mark R. Herring, Attorney General*<br><br>David B. Irvin<br>Erin E. Witte<br>Stephen J. Sovinsky<br>Erin Boyd Ashwell<br>Mark R. Herring<br>Samuel Towell<br>Email: dirvin@oag.state.va.us<br>Email: ewitte@oag.state.va.us<br>Email: ssovinsky@oag.state.va.us<br>Email: eashwell@woodsrogers.com<br>Email: mherring@oag.state.va.us<br>Email: stowell@oag.state.va.us |
| *Attorneys for the Commonwealth of Massachusetts*<br><br>Jonathan T. Burke<br>Email: Jonathan.burke@mass.gov | *Attorneys for the People of the State of New York*<br><br>Joseph P. Mueller<br>Stewart Dearing<br>Laura Levine<br>Jane Azia<br>Email: Joseph.Mueller@ag.ny.gov<br>Email: Stewart.Dearing@ag.ny.gov<br>Email: Laura.Levine@ag.ny.gov<br>Email: Jane.Azia@ag.ny.gov |

/s/ Mario B. Williams
Mario B. Williams (VSB #91955)