IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU; COMMONWEALTH OF MASSACHUSETTS; THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York; and COMMONWEALTH OF VIRGINIA, *EX REL.* MARK R. HERRING, ATTORNEY GENERAL, | Case No.: 5:21-cv-00016-EKD <br><br> Judge Elizabeth K. Dillon <br> Magistrate Judge Joel Hoppe |
| Plaintiffs, | |
| v. | |
| NEXUS SERVICES, INC.; LIBRE BY NEXUS, INC.; MICHEAL DONOVAN; RICHARD MOORE; and EVAN AJIN, | |
| Defendants. | |

**REVIVED MOTION TO STAY DISCOVERY AND
MOTION TO QUASH THIRD-PARTY SUBPOENAS**

COME NOW Defendants Nexus Services, Inc., Libre by Nexus, Micheal Donovan, Richard Moore and Evan Ajin, by and through undersigned counsel, and file this Revived Motion to Stay Discovery and Motion to Quash Third-Party Subpoenas. In support thereof, Defendants state:

**BACKGROUND**

Plaintiffs filed the Complaint in this case on February 22, 2021. On March 31, 2021, but before the undersigned counsel had been engaged, then-counsel for Defendants filed a Motion to Stay Discovery ("Original Motion to Stay"). Plaintiffs filed an Opposition in response on April 8, 2021. Defendants filed a Reply on April 15, 2021. The Original Motion to Stay, therefore, had been fully briefed before it was orally withdrawn nine and a half weeks later.

- 1 -

Although then-counsel for Defendants characterized the request for a stay as "moot" during oral argument on June 22, 2021, such statement was neither accurate nor authorized. (See Declaration of Michael Donovan filed concurrently herewith ("Donovan Decl.") ‖ 8). In fact, the factual and legal bases for the Original Motion to Stay—including the pending motion to dismiss, longstanding parameters set out in the Federal Rules of Civil Procedure, and prevailing case law in the Fourth Circuit—are presently just as strong as they were in March 2021. If anything, the need to seek a stay of discovery, and to intervene in Plaintiffs' approach to third parties, is more palpable now, for several reasons.

First, the Defendants' Motion to Dismiss ("MTD")—filed on March 1, 2021—is still pending. Second, Defendants have engaged new counsel and, in discussing the matter internally, have had the opportunity to review the oral transcript portion in which then-counsel for Defendants withdrew the Original Motion to Stay, and disagree with then-counsel's characterization that it was moot. Third, the discovery requests—whose inefficiencies and burden form the precise malady that a stay would cure—have not abated in the case since the last hearing. Instead, they have proliferated. Finally, plaintiffs' fresh batch of subpoenas propounded to third parties(see Donovan Decl., ‖ 5, Ex. A-G) fails to conform to the requirements of applicable discovery rules. Each of these reasons is detailed more fully below.

## ARGUMENT AND CITATION TO AUTHORITY

### I.      The Court Should Stay Discovery Pending the Resolution of Defendants' Dispositive Motion.

Defendants reiterate their prior position that the MTD will terminate the case in this venue if granted. (*See* ECF 31). Further to the case authorities provided by then-counsel for Defendants in the Original Motion to Stay, Defendants state—through new counsel—that the following case authorities are also applicable. When a motion that would be dispositive of the claims in the case is pending, it is appropriate to stay discovery. (*See Thigpen v. United States*, 800 F.2d 393, 396-97 (4th Cir. 1986) (approving of the district court's decision to stay discovery

pending disposition of a Rule 12(b)(1) motion), *overruled on other grounds by Sheridan v. United States*, 487 U.S. 392 (1988)). A stay of discovery during the pendency of a dispositive motion is "an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources." (*Wymes v. Lustbader*, No. CIV. WDQ-10-1629, 2012 WL 1819836, at *4 (D. Md. May 16, 2012) (quotations omitted)). "When considering a stay of discovery pending the outcome of a dispositive motion, courts may consider: the potential for the dispositive motion to terminate all claims in the case or all claims against a particular party; the merits of the dispositive motion; and the irrelevancy of the discovery to the dispositive motion." (*See, e.g., Oce N. Am., Inc. v. MCS Servs., Inc.*, No. CV WMN-10-984, 2011 WL 13217390, at *2 (D. Md. Mar. 1, 2011)).

Here, the dispositive motion is the MTD, which explains the Plaintiff Consumer Financial Protection Bureau ("Bureau")'s lack of authority to bring this lawsuit in federal court. While Plaintiff Bureau alleges that its power to bring the legal action arises under Sections 1031, 1036, and 1054 of the Consumer Financial Protection Act (*see* Compl. ¶ 9), this allegation ignores other provisions of the CFPA which expressly preclude the Bureau's ability to sue Defendants, as argued in the MTD proceedings and briefing.[1] Furthermore, the MTD also addresses the remaining Plaintiffs, the state attorneys general ("State AG's"), which brought claims asserting that their legal power is derivative of the authority of the Bureau's Section 1031/1033 authority, as set out in the Consumer Financial Protection Act ("CFPA") (*see id.*).

Yet, Plaintiffs State AG's are subject to the very same carve-outs of authority in the CFPA that apply to the Bureau. Further, Plaintiffs State AG's have alleged supplemental jurisdiction (*see* Compl. ¶ 11) in this Court over state-law claims because of the latter's relation to the federal claims, which are themselves barred by the CFPA, as litigated in the MTD

---

[1] See MTD briefing; see also Transcript of Hearing at 9, *Consumer Financial Protection Bureau, et al. v. Nexus Services, Inc., et al.* (W.D. Va. heard Jun. 22, 2021) (No. 5:21-CV-00016) (explaining that the CFPA exclusion "stripped the [Bureau] of authority" and that the Bureau "did not have authority or jurisdiction to bring an action against a person, an entity, that was specifically excluded").

proceedings.[2] Thus, if the MTD is granted,[3] it would eliminate claims that all Plaintiffs have brought against the Defendants in this venue.[4]

Accordingly, the Court should stay discovery because Defendants' pending MTD should terminate Plaintiffs' claims on grounds of lack of authority and jurisdiction, and discovery is not needed to resolve the MTD.

## II.    Withdrawal of the Original Motion to Stay Was Improper.

On June 22, 2021, during the hearing on the Original Motion to Stay, then-counsel for Defendants characterized the Original Motion to Stay as "largely moot at this time."[5] However, not only was this a baseless assertion, neither the Defendants nor the Plaintiffs are aware of why this assertion was made.

After having been engaged by Defendants, undersigned counsel conferred with Plaintiffs' counsel to seek a statement as to why the Original Motion to Stay was withdrawn. Plaintiffs' counsel confirmed that it was withdrawn on the record on June 22, 2021, and that Plaintiffs' counsel do not have any additional information regarding the reasons why then-counsel for Defendants chose to withdraw the motion. Defendants assert that the withdrawal of the Original Motion to Stay was improper and unauthorized. (Donovan Decl., ⁋ 8). It was withdrawn by then-counsel who had filed a motion to withdraw as attorney on the case, one day

---

[2] See *id.* at 10.

[3] Plaintiffs specifically argued that their Complaint adequately alleged that Defendant Libre "engages in offering or providing extensions of credit" such that jurisdiction exists. (ECF 32, p. 3). On the contrary, the Complaint only alleged that Defendant Libre "created the reasonable impression in consumers' minds that it is offering or providing extension of credit," which fails to establish jurisdiction. (ECF 1, ¶ 19.)

[4] Plaintiffs suggest a stay should be denied because on an unidentified date, Massachusetts and New York may file claims in state court, even if the MTD were granted. (ECF 32, p. 3.) But this fact is inapposite to the issue of the stay. In *Glamorgan Coal Corp. v. Ratners Grp., PLC*, 854 F. Supp. 436 (W.D. Va. 1993), the court granted a motion to stay discovery where nearly all discovery would likely take place in state court because of a pending motion to transfer venue. Here, a motion to transfer venue is not even on the table, and the possibility of a state court case is even further attenuated. Even if such a state case presently existed, however, it would contravene the need to "respect comity, federalism, and judicial economy" to allow discovery of state-law claims in state court to begin in federal court. *See Powell v. Aegis Mortg. Corp.*, No. CIV.A. DKC 2006-1198, 2007 WL 98372, at *13 (D. Md. Jan. 11, 2007).

[5] Tr. of Hr'g at 34.

before oral argument on the Original Motion to Stay. In addition, then-counsel characterized the Court's opening statement as having established that the Original Motion to Stay was moot. Upon review of the hearing transcript, however, this characterization appears to be inaccurate. In the opening statement, the Court did not say that the Original Motion to Stay was moot.[6]

For the reasons stated above, the decision of then-counsel to withdraw the Original Motion to Stay was not proper, unauthorized, and based upon an imprecise characterization of the Court's introductory remarks. As such, the withdrawal holds no weight against Defendants' present Revived Motion to Stay Discovery.

## III.   The Scope and Volume of Plaintiffs' Discovery Demands Have Expanded, Driving an Increase in Waste and Abuse that the Rules Were Designed to Prevent.

The Federal Rules of Civil Procedure ("FRCP") provide a thoughtful mechanism to ensure litigants in federal court can litigate their disputes efficiently and in an orderly manner. The hallmark of a Rule 12(b) motion is that it permits a defendant, including those who feel they've been wrongfully accused, to assert a defense to any pleading, and to do so before being required to Answer the Complaint. In particular, the two categories of motions that the Plaintiffs and Defendants contend are relevant to the instant MTD (*i.e.*, a Rule 12(b)(6) motion or a Rule 12(b)(1) motion) are particularly noted as defenses that may be asserted by motion. In either case, Rule 12 allows for efficiency by bestowing on a defendant the privilege to seek a decision from the Court on whether there is even jurisdiction over the subject-matter or whether the Plaintiffs have stated any claim for which relief can be granted. It is essential to the efficient litigation of federal claims that the parties work to avoid unnecessary and burdensome discovery requests, especially costly ESI. By insisting that discovery proceed full-speed-ahead, while the MTD is pending, Plaintiffs are upending the orderly sequence set forth in the design of the FRCP.

Furthermore, courts within the Fourth Circuit have established three factors to

---

[6] See Tr. of Hr'g at 5, 6 (introducing parties to the Zoom proceeding, explaining that the Original Motion to Stay and the MTD were up for argument that day, and noting merely that "the case has been stayed until today").

determine whether a motion to stay is proper: "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party." (*E & I Holdings, LLC v. Bellmari Trading USA, Inc.*, No. 2:18-CV-00484, 2018 WL 5624269, at *1 (S.D.W. Va. Oct. 30, 2018) (citing *White v. Ally Fin. Inc.*, 969 F. Supp. 2d 451, 462 (S.D.W. Va. 2013))). A motion to stay is appropriate given that, since the weeks following the June 22, 2021 hearing, the Plaintiffs have enlarged, not tailored, the scope of discovery demands. They have served at least seven known subpoenas on numerous financial institutions and third parties (and potentially more unknown subpoenas),[7] to the detriment of Defendants' business relationships or market reputation. (Donovan Decl., ¶ 6).

For example, not only have Plaintiffs wielded the subpoena power to insinuate wrongdoing by Defendants before valued banking partner relationships,[8] Plaintiffs have apparently even issued a subpoena to a third-party financial institution with which no Defendant has ever transacted business—revealing a scattershot approach to discovery that is intended to abuse the Defendants and mire their reputation. (*Id.* at ¶ 7). In other words, Plaintiffs' recent actions appear to demonstrate the exact prejudice, harassment, and burden Defendants feared when they first filed their Original Motion to Stay. The Plaintiffs' discovery requests would force Defendants, Plaintiffs, and non-parties to expend significant effort and judicial resources,

---

[7] Since the hearing on the Original Motion to Stay and MTD on June 22, 2021, Plaintiffs have served the following third-party subpoenas:

    a.    Subpoena to Produce Documents, Information, or Objects in a Civil Action Issued to Fusion CPA, Attn: Trevor McCandless, CEO. (Donovan Decl., ¶ 5, Ex. A).

    b.    Subpoena to Produce Documents, Information, or Objects in a Civil Action Issued to FirstBank Puerto Rico, Attn: Ms. Sara Alvarez-Cabrero, Executive Vice President and General Counsel. (Donovan Decl., ¶ 5, Ex. B).

    c.    Subpoena to Produce Documents, Information, or Objects in a Civil Action Issued to Trustco Bank Corp NY, Attn: Michael Hall. (Donovan Decl., ¶ 5, Ex. C).

    d.    Subpoena to Produce Documents, Information, or Objects in a Civil Action Issued to American Express Company. (Donovan Decl., ¶ 5, Ex. D).

    e.    Subpoena to Produce Documents, Information, or Objects in a Civil Action Issued to Citibank. (Donovan Decl., ¶ 5, Ex. E).

    f.    Subpoena to Produce Documents, Information, or Objects in a Civil Action Issued to Comerica Bank. (Donovan Decl., ¶ 5, Ex. F).

    g.    Subpoena to Produce Documents, Information, or Objects in a Civil Action Issued to Westamerica Bancorporation. (Donovan Decl., ¶ 5, Ex. G).

[8] See footnote 10, infra.

despite the fact that doing so would be a pointless waste of time if the MTD were granted.

Defendants additionally believe that Plaintiffs' approach to discovery—both party discovery and third-party discovery—defeats efficiency because, already as it stands, the requests are duplicative, as Plaintiffs have been engaged in five years' worth of pre-Complaint, administrative discovery from Defendants and multiple third parties in investigatory proceedings. (Donovan Decl., ⁋ 3). Plaintiff Bureau, and likely Plaintiffs State AG's through inter-agency sharing protocols, have already received at least more than 9 GB of documentary material. (*Id.*) In addition to these previous productions, Plaintiffs would have already received the documents it currently seeks from its relationship and evident coordination with litigants in other matters, including RLI Corp. and the Legal Aid Justice Center, which filed a complaint in August 2019 containing substantially similar allegations as those in the Complaint filed by Plaintiffs in this case. (*Id.* at ⁋ 4).

Finally, as with the parties in *Rivers v. U.S.*, 2020 WL 1469475, at *1 (W.D. Va. 2020), the Court here can determine that Defendants showed good cause to stay discovery where a motion to dismiss was pending, and where plaintiff sought discovery from various known and unknown third parties. If the MTD is denied, then Defendants would certainly be amenable to promptly and expeditiously engaging in the discovery process in litigation. Moreover, the Court has already reassured the parties that it would make a determination on the MTD at its earliest convenience. As such, the risk of delaying the discovery process to any party's detriment is low and heavily outweighed by the prejudice on both parties (and on third parties).

## IV.  Plaintiffs' Discovery Demands in All the Third-Party Subpoenas Far Exceed the Scope of Federal Rule of Civil Procedure 26(b) and Ought to be Quashed.

While Plaintiffs certainly have the right under Rule 45 of the FRCP to issue subpoenas for evidence needed from third parties, that right is not unfettered. Also, as Plaintiffs that are government agencies, Plaintiffs possess a higher duty to ensure the manner of litigation conduct impacts individuals is fair, righteous, and otherwise consistent with the right to protect consumer information that is personal and privileged. Here, Plaintiffs' scattershot methodology runs

roughshod over all these goals. Plaintiffs' approach harms all Defendants, including those who are individuals: Evan Ajin, Mike Donovan, and Richard Moore. The fact they are accused alongside the corporate entities does not wipe away the individual Defendants' privilege to keep financial data protected, to be free of harassment, and to protect personal, proprietary information.[9] Notably, as distinct from documents that are mere commercial transactions, the subpoenas here—wielded against Defendants—also directly call for personal, financial data and merits greater scrutiny. (*See*, *e.g.*, *United States v. Raineri*, 670 F.2d 720, 712 (7th Cir. 1982) (explaining that standing to challenge records request existed because movant had a "legitimate interest" in, among other items, protecting against undue harassment, in privilege and proprietary interests)).

In particular, even assuming for argument's sake that the Plaintiffs were private actors and not government agencies (who have more spectacular pre-litigation investigatory tools than private actors and concomitant greater responsibility to pursue fairness), Plaintiffs' subpoenas fall short of the rules that apply to all Plaintiffs of any type. On their face, each of the seven subpoenas extends beyond the scope of discovery set out in Rule 26 of the FRCP, as established in the Fourth Circuit.

In *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180 (4th Cir. 2019), the court affirmed a lower court's grant of a motion to quash a third-party subpoena, finding that third parties require special consideration since they do not have a stake in the case. "Bystanders should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery." (*Id.* at 189). "As under Rule 26, the ultimate question is whether the benefits of discovery to the requesting party outweigh the burdens on the recipient. But courts must give the recipient's nonparty status 'special weight,' leading to an even more 'demanding and sensitive' inquiry than the one governing discovery generally." (*Id.* (citing *In re*

---

[9] The common theme here is that Plaintiffs assert that by virtue of being an accused person in unproven allegations, Defendants are suddenly not deserving of basic rights, including not only their protections of financial data and privacy, but also of constitutionally guaranteed rights, such as the right to a trial by jury, as will be fleshed out in further detail in a likely future motion as needed.

*Public Offering PLE Antitrust Litig.*, 427 F.3d 49, 53 (1st Cir. 2005))). After all, "[a] nonparty should not have to do the work of tailoring a subpoena to what the requesting party needs; the requesting party should have done that before serving it." (*Id*. at 190).

   Here, the seven banks and companies that received Plaintiffs' subpoenas have no stake in the case. They are mere bystanders—not to be drawn into his litigation without good reason, even assuming they may have information that is within the scope of party discovery (and they do not). Rule 26 carefully delineates the boundaries of third-party discovery, requiring courts to examine whether Plaintiffs' seven subpoenas would satisfy the "demanding and sensitive" inquiry that is operative here. In other words, the seven subpoenas are deserving of more careful scrutiny. After undertaking such scrutiny, the Court here can conclude, as did the district court in the underlying case in *Jordan*, that Plaintiffs have not bothered to do the work of tailoring the subpoenas to what Plaintiffs need. Not only is each subpoena a copy-paste job of an earlier template, the original template does not even seek information that is relevant (as explained below). Moving forward, the banks and companies ought not be transformed into litigation project assistants for Plaintiffs; they should not be forced to expend the resources to tailor the subpoenas for them simply because of Plaintiffs' decision not to do so beforehand.

   The next question, then, is whether Plaintiffs' seven subpoenas pass the test established in this district under Rule 26? The answer is: No. In *Gilmore v. Jones*, No. 3:18-CV-00017, 2021 WL 2709669 (W.D. Va. July 1, 2021), similar to *Jordan*, the court held that the third-party subpoena was "overbroad, irrelevant, and disproportionate to the needs of the case." (*Id*. at *13). Here, the Plaintiffs'' seven subpoenas are overbroad, irrelevant, and disproportionate to the needs of the case. Each of the seven subpoenas goes to information that would shed light on evidence relevant to a post-judgment context. In other words, they seek information that is probative of the Defendants' financial status—including bank accounts, transactions, and other highly proprietary information. However, the lawsuit that Plaintiffs chose to file is a different one. This case arises out of allegations regarding immigrants' interactions with Defendants; not a single allegation concerns Defendants' contracts with banks and other commercial entities or

concerns individual Defendants own debit cards, checking accounts, or other financial accounts. The third-party subpoenas, which burrow into irrelevant, private territory, are inappropriate.

Further, the seven subpoenas show that perhaps Plaintiffs mistakenly approved issuance of such requests as relevant, because Plaintiffs are tearing a page out of a post-judgment-case playbook. The problem? Such playbook is itself irrelevant. In other words, when viewed in the most generous light, Plaintiffs' theory appears to be that because Defendants have been accused in this matter, Plaintiffs are immediately entitled to undertake an intrusive and burdensome exam of all of Defendants' private financial details, as though somehow Plaintiffs: (i) may bypass trial and unilaterally declare a judgment, (ii) establish liability without proving it, and (iii) are entitled to transaction records to criticize the speed with which Plaintiffs' are receiving payment of an entered fine. Certainly, none of these things has transpired, let alone stands likely to occur given the Plaintiffs' lack of power to assert the claims in this court (as noted in the MTD). At bottom, all seven subpoenas have no relevancy to the Dodd-Frank Act and state-law claims in this matter, and fail by virtue of their over-breadth, irrelevance, and disproportionality.

Additional facts further demonstrate the seven subpoenas deserve to be quashed. When deciding whether a subpoena meets the Rule 26 standard, courts are instructed to consider three additional factors: (1) "whether the requesting party 'need[s]' the information sought, meaning that the information 'likely (not just theoretically)...offer[s] some value over and above what the requesting party already has'"; (2) "whether the requesting party can obtain the same or comparable information 'that would also satisfy its needs' from other sources"; and (3) "whether the request will impose a 'cognizable burden[ ]' on the nonparty."" (*Jones*, at \*7 (quoting *In re Pub. Offering PLE Antitrust Litig.*, 427 F.3d 49, 53 (1st Cir. 2005))).

Here, all three factors establish the subpoenas' defect. First, as we have noted above, the Plaintiffs have already engaged in five years' worth of pre-complaint discovery through civil investigative demands and administrative proceedings, and have received at least 9 GB of documentary information from Defendants. Not only that, Plaintiffs also have powerful, supervisory oversight or investigatory authority over financial institutions in the United States,

- 10 -

including the institutions listed among the subpoena recipients. Therefore, Plaintiffs' subpoenas would not satisfy a legitimate need for evidence, as they would be duplicative of what Plaintiffs already have. Second, if the MTD is denied and it becomes appropriate to commence discovery in this matter, Defendants would be happy to work directly with Plaintiffs to respond to appropriately tailored requests for discovery, including any proper request for relevant financial information, that Plaintiffs presented to Defendants by way of party discovery. As a result, there is simply no need to burden third-party actors, who have no stake in this matter, to respond when Plaintiffs can more efficiently obtain the information from other sources (assuming they do not currently possess the information already). Third, it is Defendants' understanding that the extreme breadth and number of duplicative requests propounded on the third parties would impose a significant burden on the third parties, and also negatively impact the Defendants' business relationships and reputation in the market.[10] In fact, each of the seven subpoenas is accompanied by nine pages of excessive ESI specifications that are unduly burdensome (see Donovan Decl., ⧙ 5, Ex. A-G) for requirements imposed on parties, let alone on third-party bystanders.

Not only do the seven subpoenas clearly fail the Rule 26 standard, they also stand as anathema to good public policy. The penalty for being named an accused party should not be equivalent to harming banking or other relationships and deprivation of personal financial privacy rights. Plaintiffs should not be allowed to wield the subpoena power in a way that seeks to shortcut the necessary steps to first litigate and establish wrongdoing before inflicting a painful, *de facto* penalty in the real world: prejudice and harassment through the discovery process. Doing so would eviscerate the boundaries of the FRCP and eliminate the protections they afford to litigants at the outset of a case. More than this should be expected of government agency plaintiffs.

---

[10]   Plaintiffs' express language in the requests of the subpoenas is prejudicial and inflammatory, including verbiage that is not only irrelevant, but is also unsupported, totally gratuitous, and unfair, i.e., cloaked references to presumed "fraud" or "irregularity" by the accountholders. (Donovan Decl., ¶ 5, Ex. A-G, Document Request 8.)

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an Order staying discovery in this case pending resolution of the MTD, and quashing the seven third-party subpoenas issued in the case.

Dated:   September 13, 2021                    Respectfully submitted,

                                               ARENT FOX LLP

                                               By:   /s/ J.H. Jennifer Lee
                                               J.H. Jennifer Lee (DC Bar No. 1029193; IL
                                               Bar No. 6290027; CA Bar No. 318353)
                                               David Bayles (CA Bar No. 208112)
                                               Samantha Collins (DC Bar No. 89010)
                                               1717 K Street, NW
                                               Washington, DC  20006-5344
                                               Tel:  202-857-6088
                                               Fax: 202-857-6395
                                               Email: jenny.lee@arentfox.com
                                               *Attorney for Nexus Services, Inc.; Libre by*
                                               *Nexus, Inc.; Micheal Donovan; Richard*
                                               *Moore; and Evan Ajin*