IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU; COMMONWEALTH OF MASSACHUSETTS; THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK; and COMMONWEALTH OF VIRGINIA, *ex rel.* MARK R. HERRING, ATTORNEY GENERAL, | Civil Action No. 5:21-cv-00016 <br><br> By: Elizabeth K. Dillon <br>     United States District Judge |
| Plaintiffs, | |
| v. | |
| NEXUS SERVICES, INC.; LIBRE BY NEXUS, INC.; MICHEAL DONOVAN; RICHARD MOORE; and EVAN AJIN, | |
| Defendants. | |

**MEMORANDUM OPINION**

The Consumer Financial Protection Bureau ("CFPB"), the Commonwealth of Massachusetts, the People of the State of New York, and the Commonwealth of Virginia have filed a 17-count complaint against Nexus Services, Inc. ("Nexus"), Libre by Nexus, Inc. ("Libre"), Micheal Donovan, Richard Moore, and Evan Ajin. (Compl. 1, Dkt. No. 1.) Plaintiffs allege violations of the Consumer Financial Protection Act ("CFPA"), the Virginia Consumer Protection Act ("VCPA"), and Massachusetts and New York consumer protection laws. (Compl. 26–47.) Pending before the court is defendants' motion to dismiss for lack of subject matter jurisdiction. (Mot. to Dismiss, Dkt. No. 18.) Following briefing and argument, the motion is ripe for resolution. For the reasons stated below, the court will deny the motion to dismiss.

1

I.  BACKGROUND

Nexus, through its wholly owned subsidiary Libre, operates a nationwide business aimed at immigrants held in federal detention. (Compl. ¶ 23.) The business was designed and implemented by Micheal Donovan, Richard Moore, and Evan Ajin. (*Id.* ¶ 6.) Donovan is a majority owner, officer, and director of Nexus and the chief executive officer of Libre. (*Id.* ¶ 20.) Moore is part owner of Nexus, the chief financial officer of Libre, and the executive vice president of Nexus and Libre. (*Id.* ¶ 21.) Ajin is part owner and a director of Nexus and a vice president of Libre. (*Id.* ¶ 22.)

Libre advertises its services to immigrants who are detained and may be released on bond. (*Id.* ¶ 26, 30.) In 2018, the average immigration bond was $7,500. (*Id.*) A detainee may pay an immigration bond fully in cash or guarantee the bond through a surety company that is certified by the U.S. Treasury. (*Id.* ¶ 26–27.) Neither Nexus nor Libre is a licensed bail-bond agent or a surety company certified by the U.S. Treasury. (*Id.* ¶ 28, 29.) Instead, Libre is a service provider that acts as an intermediary between immigration detainees and sureties and their bond agents. (*Id.* ¶ 37.)

To obtain Libre's services, Libre requires detainees to execute an agreement with certain obligations, and, in exchange, Libre agrees to indemnify the sureties and their bond agents for any losses in connection with the immigration bonds. (*Id.*) From about 2014 until 2017, Libre used a multi-part, 21-page, written client agreement ("the Original Agreement"). (*Id.* ¶ 34, 69.) The Original Agreement was written in English, except for a single page written in Spanish. (*Id.*) The Original Agreement required consumers to make upfront payments in the amount of 20% of the bond, a $420 advance payment, and an activation fee up to $460. (*Id.* ¶ 47.) In addition, it required consumers to wear a GPS ankle monitor and make monthly payments of

$420 until: (1) the consumer's immigration proceedings are resolved; or (2) the consumer makes supplemental collateral payments that add up to 80% of the amount of the bond, at which time the ankle monitor is removed, and the consumer agrees to pay the remaining 20% over a specified time. (*Id.* ¶ 48.) A consumer's monthly payments to Libre are not refundable, but the collateral payments are refundable once a consumer's immigration proceedings are resolved. (*Id.* ¶ 49, 50.)

In late 2017 or early 2018, Libre revised its written client agreement (the "New Agreement"). (*Id.* ¶ 71.) The New Agreement does not require GPS monthly lease payments. Instead, it requires monthly "program fees," which are recurring monthly charges by Libre that vary according to the bond amount. (*Id.* ¶ 72.) The New Agreement requires consumers to either pay program fees according to a schedule or to pay supplemental bond collateralization payments that add up to the full amount of the bond. (*Id.*) After a consumer has paid all of the program fee installments or made bond collateralization payments in the full amount of the bond, the consumer must then pay a monthly maintenance fee of $50 until the bond is canceled. (*Id.* ¶ 73.)

According to plaintiffs, Libre falsely told consumers that it paid the full amount of the consumer's bond to Immigration and Customs Enforcement ("ICE"). (Compl. ¶ 114.) In addition, Libre falsely told consumers that the $420 monthly payments in the Original Agreement were repayments to Libre for the bond Libre paid, but the monthly payments actually went towards leasing the GPS device. (*Id.* ¶ 115.) Regarding the New Agreement, Libre represented to consumers that the monthly payments were payments toward a loan. (*Id.* ¶ 116.) Further, consumers told call-center employees that they thought their monthly payments were going toward paying down their bond. (*Id.* ¶ 117.) Most Libre consumers do not read or speak

3

English; therefore, they cannot understand the terms in the written agreement and rely on Libre's oral representations. (*Id.* ¶ 118.) Plaintiffs allege that "Libre's misrepresentations lead consumers to reasonably believe that Libre ha[d] paid cash bonds, that consumers owe[d] a debt to Libre in the amount of the cash bonds, and that [consumers'] monthly payments pa[id] down that debt." (*Id.* ¶ 120.)

On February 22, 2021, plaintiffs filed suit against Nexus, Libre, Donovan, Moore, and Ajin alleging violations of the CFPA and the VCPA, among other state consumer protection laws. (Compl. 26–47.) On March 1, 2021, defendants filed a motion to dismiss for lack of subject matter jurisdiction. (Mot. to Dismiss 1.) Defendants argue that "the CFPB has no subject-matter jurisdiction in this case" because: (1) Nexus is exempt from CFPB regulation as a person regulated by a state insurance agency and as a merchant of non-financial services (12 U.S.C. §§ 5517(a)(1), (f)); and (2) Nexus is not a "covered person" under the CFPA because Nexus does not provide consumer financial products (12 U.S.C. §§ 5481(6)). (*Id.* at 6, 9, 12.) In addition, defendants argue that Nexus is excluded from regulation under the VCPA because it has been regulated by the Bureau of Insurance for the Commonwealth of Virginia. (*Id.* at 18.)

Plaintiffs, in response, assert that although defendants style their motion as one to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the motion is properly construed as one to dismiss for failure to state a claim under Rule 12(b)(6).[1] (Plfs.' Response 3, Dkt. No. 22.) Plaintiffs argue that "whether a defendant is covered by the federal statute at issue is distinct from whether the court has jurisdiction to hear the case." (*Id.* at 4.) Virginia, in a separate

---

[1] The court recognizes plaintiffs' argument that the court should construe defendants' motion to dismiss for lack of subject matter jurisdiction as a motion to dismiss for failure to state a claim. Although many of defendants' arguments address 12(b)(6) issues, the court will decline to construe their motion as such. Defendants have filed only a 12(b)(1) motion to dismiss for lack of jurisdiction and the court will consider only the motions before it.

response, addresses the VCPA issue and argues that defendant corporations are not excluded from the VCPA. (Virginia's Response 3, Dkt. No. 23.) The matter is now ripe for resolution.

## II. DISCUSSION

### A. Standard of Review

"Federal Rule of Civil Procedure 12(b)(1) allows a party to move for dismissal of a claim based on a court's lack of subject matter jurisdiction, which has been defined as 'authority [of a court] to adjudicate the type of controversy involved in the action.'" *Farquhar v. United States*, No. 1:07CV1033, 2007 WL 4233492, at *2 (E.D. Va. Nov. 28, 2007) (quoting *Carlisle v. United States*, 517 U.S. 416, 434–35 (1996) (Ginsburg, J., concurring) (quoting Restatement (Second) of Judgments § 11 (1982))). "A 12(b)(1) motion to dismiss may be made at any time by any party or raised sua sponte by the court." *Id.* (citing Fed. R. Civ. P. 12(h)(3)). "The party asserting subject matter jurisdiction bears the burden of proving jurisdiction exists." *Id.* (citing *Capital One Fin. Corp. v. Drive Fin. Serv., L.P.*, 434 F. Supp. 2d 367, 371 (E.D. Va. 2006)). "A court must regard the pleadings as mere evidence on the issue of jurisdiction, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* "Further, a court should only grant a 12(b)(1) motion to dismiss if the material jurisdictional facts are not in dispute, and the moving party is entitled to prevail as a matter of law." *Id.* (citing *Nelson v. USPS*, 189 F. Supp. 2d 450, 454 (W.D. Va. 2002)).

### B. Subject-Matter Jurisdiction

"[S]ubject matter jurisdiction relates to a federal court's power to hear a case, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006), and that power is generally conferred by the basic

statutory grants of subject matter jurisdiction, such as 28 U.S.C. § 1331[2] or 28 U.S.C. § 1332.[3] *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 453 (4th Cir. 2012). "If a plaintiff invoking § 1331 'pleads a colorable claim 'arising under' the Constitution or laws of the United States,' he invokes federal subject matter jurisdiction, and deficiencies of the claim should be addressed by the other mechanisms provided by the federal rules." *Id.* (quoting *Arbaugh*, 546 U.S. at 513).

"In recent years, the Supreme Court has cautioned against 'drive-by jurisdictional rulings,' *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 91 (1998), that dismiss a claim 'for lack of jurisdiction when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim.'" *Holloway*, 669 F.3d at 452 (quoting *Arbaugh*, 546 U.S. at 511 (quoting *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 361 (2d Cir. 2000))). The Court's "admonition is grounded in the principle that the subject matter jurisdiction of a federal court is not generally resolved by concluding that the plaintiff has failed to allege an element of a federal cause of action or that the plaintiff might not be able to prove an element of a federal cause of action." *Id.* "Rather, a court must look more fundamentally at whether the plaintiff's claim is determined by application of a federal law over which Congress has given the federal courts jurisdiction." *Id.* "If it is, his complaint should not be dismissed for a lack of subject matter jurisdiction, as the federal courts have been given the power and the authority to hear and resolve such claims." *Id.*

---

[2] Providing the district courts with original jurisdiction over federal question cases. Specifically, the statute states, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

[3] Providing the district courts with original jurisdiction over diversity cases.

"Of course, Congress could make [elements of a federal claim] 'jurisdictional,' just as it has made an amount-in-controversy threshold an ingredient of subject-matter jurisdiction in delineating diversity-of-citizenship jurisdiction under 28 U.S.C. § 1332. *Arbaugh*, 546 U.S. at 514–15. "If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue." *Id.* at 515–16 (citing *Da Silva*, 229 F.3d at 361). "But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* at 516; *see also United States v. Alisal Water Corp.*, 431 F.3d 643, 650 (9th Cir. 2005) ("absent statutory direction to the contrary, a district court validly exercises its jurisdiction over actions 'arising under' federal laws.").

In *Holloway*, the district court dismissed a case brought under the Jones Act, 46 U.S.C. § 30104, concluding that the court lacked subject-matter jurisdiction because plaintiff "had not adequately demonstrated that (1) he was a seaman and (2) his injury occurred during the course of his employment as a seaman," as required by the act. 669 F.3d at 450. The Fourth Circuit reversed the decision on appeal, reasoning that "the district court, ha[s] quite blurred the fundamental difference between a Rule 12(b)(1) motion for lack of subject matter jurisdiction and a Rule 12(b)(6) motion for failure to state a claim . . . ." *Id.* at 452. "Holloway sought to state a claim under the Jones Act, a federal cause of action over which federal courts have jurisdiction . . . [a]nd in stating his claim, he alleged each of the elements of a Jones Act claim." *Id.* at 453. As such, the court had jurisdiction over the case, and any disputes regarding whether plaintiff can prove specific elements of the claim are not for resolution on a 12(b)(1) motion. *Id.*; *see also Fed. Trade Comm'n v. AT&T Mobility LLC*, 883 F.3d 848, 853 (9th Cir. 2018) (defendant's 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, disputing the

FTC's regulatory jurisdiction, is more properly treated as a 12(b)(6) motion for failure to state a claim).

Here, plaintiffs bring a claim under a federal statute, the CFPA; therefore, this court has federal question jurisdiction. As in *Holloway*, whether plaintiffs have adequately pled all elements of their claim, such as whether defendants are "covered persons" under the CFPA, is not a jurisdictional question. Defendants argue that the CFPB lacks authority to exercise any power to enforce the CFPA with respect to Nexus and Libre because these corporations are regulated by state insurance regulators (12 U.S.C. § 5517(f)) and are merchants, retailers, or sellers of nonfinancial goods or services (12 U.S.C. § 5517(a)(1)). However, limitations on the CFPB's regulatory authority do not equate to limitations on this court's jurisdiction.

Defendants argue that *Calderone v. Sonic Houston JLR, L.P.*, 879 F.3d 577, 580 (5th Cir. 2018), stands for the principle that the exclusions to CFPB jurisdiction enumerated in the CFPA are jurisdictional limits on the court. (Dkt. No. 28 at 2.) Defendants are mistaken. *Calderone* "examine[s] § 5481(12) to decide which laws are subject to the Bureau's jurisdiction," but it does not hold that any exclusions to CFPB jurisdiction are limits to on the subject-matter jurisdiction of the court. 879 F.3d at 580. Importantly, Congress did not expressly state that any threshold limitation on the CFPA's scope shall count as jurisdictional limitations on the court. For these reasons, the court finds that it has subject-matter jurisdiction in this case.

## C. Supplemental Jurisdiction

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Salim v. Dahlberg*, 170 F. Supp. 3d 897, 907 (E.D. Va. 2016) (quoting 28 U.S.C. § 1367(a)).

8

"This provision constitutes 'a broad grant of supplemental jurisdiction over other claims within the same case or controversy, as long as the action is one in which the district courts would have original jurisdiction.'" *Id.* (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005)). "In determining whether to exercise supplemental jurisdiction, a district court should undergo a flexible balancing analysis in which it 'should consider and weigh . . . the values of judicial economy, convenience, fairness, and comity.'" *Id.* (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Even when the federal claims that provide the basis for original jurisdiction are dismissed early in the litigation, a court is not required to dismiss the pendent state claims. *Id.* "Moreover, the court's decision to exercise supplemental jurisdiction is 'purely discretionary' and does not constitute a jurisdictional issue." *Id.* (citing *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009)).

Having determined that plaintiffs' CFPA claims confer original jurisdiction, the court will exercise supplemental jurisdiction over the state law claims. The state law claims concern the same issues and facts as the federal claims and are so related that they form part of the same case or controversy. Exercise of supplemental jurisdiction over the state law claims in this case clearly promotes judicial economy, convenience, fairness, and comity. Therefore, the court has jurisdiction over the VCPA claim and the other state law claims in this matter.

### III.  CONCLUSION

For the reasons stated above, the court will deny defendants' motion to dismiss for lack of jurisdiction (Dkt. No. 18), and an appropriate order will be issued.

Entered: March 21, 2022.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge