# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

CONSUMER FINANCIAL PROTECTION
BUREAU; COMMONWEALTH OF
MASSACHUSETTS; THE PEOPLE OF
THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of
the State of New York; and
COMMONWEALTH OF VIRGINIA, *EX
REL*. MARK R. HERRING, ATTORNEY
GENERAL,

   Plaintiffs,

v.

NEXUS SERVICES, INC.; LIBRE BY
NEXUS, INC.; MICHEAL DONOVAN;
RICHARD MOORE; and EVAN AJIN,

   Defendants.

Case No.: 5:21-cv-00016

## PLAINTIFFS' FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION ADDRESSED TO NEXUS SERVICES, INC. AND LIBRE BY NEXUS, INC.

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs

Consumer Financial Protection Bureau, Commonwealth of Massachusetts, the People of

the State of New York, by Letitia James, Attorney General of the State of New York, and

Commonwealth of Virginia, *ex rel*. Mark R. Herring, Attorney General (collectively,

"Plaintiffs") request that Defendants Nexus Services, Inc. and Libre by Nexus, Inc.

produce the following documents for inspection and copying on or before July 9, 2021 to

the attention of Joseph P. Mueller and Stewart Dearing at the Office of the New York

State Attorney General, PTG Unit, 3 Airport Park Blvd., Latham, New York 12110 or via

a secure File Transfer Protocol (FTP) to be negotiated with Plaintiffs' counsel prior to delivery of the documents.

## **Definitions**

1.      "Action" refers to the above-captioned case, *CFPB* et al. *v. Nexus Services, Inc.* et al., Case No. 21-cv-16 (W.D. Va.).

2.      "Collection Agency" means any natural person or Entity who collects or attempts to collect, either directly or indirectly, payments or debts owed or due or asserted to be owed or due another.

3.      "Communication" means any transmittal of information of any kind, whether transmitted in writing, orally, electronically or by any other means, and including any Document that abstracts, digests, transcribes, records, or reflects the transmittal of information of any kind.

4.      For the definition of "Company," please see Definition No. 14.

5.      "Complaint" is the complaint Plaintiffs filed in this Action, as well as any subsequent or amended versions that may be filed.

6.      "Concerning" means, directly or indirectly, in whole or in part, relating to, referring to, describing, evidencing or constituting.

7.      "Consumer" means any natural person, including natural persons who were detained by immigration authorities and their guarantors, co-signers or sponsors.

8.      "Consumer Reporting Agency" means any natural person or Entity which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.

9.      "Debt Buyer" means any natural person or Entity that buys debts or the right to future payments from creditors and tries to collect them.

10.      "Document" is defined to be equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a) and includes any written matter of every type and description, including electronically stored information, and specifically including emails, voicemails, chat programs such as GroupMe and Slack, and instant messages such as SMS, WhatsApp, Telegram, and Signal, and social media direct and private messages, and including any non-identical copies (such as drafts or annotated copies).

11.      "Entity" means without limitation any corporation, company, limited liability company or corporation, partnership, limited partnership, association, trust, sole proprietorship or other firm or similar body or organization, or any unit, division, agency, department, or similar subdivision thereof.

12.      "Identify" means to provide: (a) for a natural person, the person's full name, title or position, present or last known address, the present or last known business affiliation or place of employment, e-mail address, and telephone number; (b) for Entities, the name, address, identities of officers, directors, managers, and members of the business or organization, and contact persons with e-mail addresses and telephone numbers, where applicable; (c) for Documents, the type of Document, general subject matter, date of the Document, and authors, addressees and recipients; and (d) for lawsuits or other legal actions, the date of the case, the court or other legal forum, and the parties to the case.

13.      "Individual Defendants" means Micheal Donovan, Richard Moore and Evan Ajin, or any of them, and all contractors, vendors, consultants, employees, agents,

3

representatives, and attorneys of the foregoing, and all other Persons associated with or acting on behalf of the foregoing.

14.     "Nexus," "You," "Your," or the "Company" means Nexus Services, Inc. and/or Libre by Nexus, Inc.; any of their predecessors, successors, present or former parents, subsidiaries, or affiliates, whether direct or indirect, including all Nexus-Affiliated Entities; all directors, officers, partners, principals, owners, supervisors, contractors, vendors, consultants, employees, agents, representatives, and attorneys of the foregoing; and any other Persons associated with or acting on behalf of the foregoing, or acting on behalf of any predecessors, successors, or affiliates of the foregoing.

15.     "Nexus-Affiliated Entities" means all of Libre By Nexus, Inc.'s or Nexus Services, Inc.'s predecessors, successors, present or former parents, subsidiaries, or affiliates, whether direct or indirect, including Homes by Nexus, Inc., Serve by Nexus, Inc., Nexus Properties, LLC, Nexus Commercial Ventures, LLC, Entertainment by Nexus, Inc., Secure by Nexus, Inc., Nexus Investigations & Security, Inc., Nexus Financial Services Corporation, Nexus Libre Inc., Nexus Monitoring LLC, Nexus Programs Inc., Nexus Caridades, Inc., Nexus Caridades Attorneys, Inc., Nexus Health Inc., Entlest Brands, Inc., and One Fish Two Fish, LLC.

16.     "Nexus Immigration Bond Service" means the immigration bond service described in the Complaint run by Libre by Nexus, Inc., Nexus Services, Inc., and the Individual Defendants, and includes all aspects of that service, including paying for or arranging Consumers' immigration bonds, providing transportation to Consumers, paying for Consumers' meals, providing and affixing GPS devices to Consumers, and

4

"collateralizing" Consumers' bonds.

17.     "Nexus Immigration Legal Services" means any legal services advertised, promoted, marketed, promised, offered or provided by the Company or the Company's affiliates or agents to Consumers Concerning immigration law or immigration proceedings in the United States.

18.     "Nexus Products and/or Services" means any product or service advertised, promoted, marketed, promised, offered, or provided to Consumers by Libre by Nexus, Inc. or Nexus Services, Inc., or advertised, promoted, marketed, promised, offered, or provided to Consumers by any Nexus-Affiliated Entity in connection with the Nexus Immigration Bond Service. "Nexus Products and/or Services" shall include but not be limited to the Nexus Immigration Bond Service and the Nexus Immigration Legal Services.

19.     "Person" means any natural person or any Entity.

20.     For the definition of "You" and "Your," please see Definition No. 14.

21.     The use of the singular form of any word used herein shall include the plural and vice versa. In construing these requests, the plural shall include the singular and the singular shall include the plural; a masculine, feminine, or neuter term shall include all other genders; the terms "or," "and," "and/or," "including," "each" and "every" shall be construed inclusively rather than exclusively so as to bring more Documents within the scope of the request; and the terms "all" and "any" shall be interpreted inclusively so as to mean both "all" and "any" whenever either term is used. The use of any tense of any verb includes all other tenses of the verb.

**<u>Instructions</u>**

1.        In addition to the specific instructions set forth below, Plaintiffs' First
Request for the Production of Documents and Electronically Stored Information
Addressed to Nexus Services, Inc. and Libre by Nexus, Inc. (the "First Nexus Document
Requests," the "Document Requests," or the "Requests") incorporate the definitions and
instructions set forth in Federal Rules of Civil Procedure 26 and 34.

2.        Unless otherwise specified, the time period covered by these Document
Requests shall be from July 1, 2012 through the present.

3.        Each Document Request is to be fully and separately answered.

4.        In responding to these Requests, You are required to furnish all
Documents that are within Your possession, custody and/or control, including
Documents in the possession of Your attorneys, accountants, agents, affiliates, directors,
officers, consultants, advisors, representatives, vendors, contractors, or Persons directly
or indirectly employed by or connected with You or Your attorneys, and any other
Person subject to Your control.

5.        All Documents that respond, in whole or in part, to any portion of the
Requests below shall be produced in their entirety, including all metadata, attachments,
enclosures, and embedded information or materials.

6.        In responding to each Document Request, You are required to produce all
responsive Documents in all forms and languages in which they exist.

7.        If any Document responsive to the Requests was, but is no longer, within
Your possession, custody, or control, You shall provide a list Identifying all such
Documents, including the Document Request to which the Document is responsive, a
statement of the author(s), recipient(s), date and contents of the Document, as well as

6

the disposition (*i.e.*, destruction, transfer, *etc.*) of the Document and the date of and reason for such disposition.

8.      If any Document is withheld from production, either in whole or in part, on the basis of a claim of privilege, work product, or any other protection, please provide, for each such Document, a description sufficiently detailed as set forth in Federal Rule of Civil Procedure 26(b)(5) to allow Plaintiffs to evaluate Your claim of privilege, work product, or protection. Such description shall include: the title and general subject matter of the Document, the date of the Document, the Identity of all Persons who participated in creating the Document, the Identity of each Person who signed the Document or in whose name the Document was issued, the Identity of each addressee and recipient of the Document, the number of pages which comprise the Document, a description of the nature and substance of the Document, its attachments, if any, its present custodian, and a description of the basis for each claimed privilege, work product, or protection.  You shall provide privilege logs on a rolling basis with each production, *not* at the end of discovery.

9.      If a Document Request is ambiguous or unclear to You, You shall contact undersigned counsel as soon as possible so that the request can be clarified and any unnecessary delays in providing Your answer can be avoided.

10.      Responsive Documents shall be produced in native format as they are kept in the ordinary course of business and shall be organized and labeled to correspond with these Requests. Documents created or stored electronically MUST be produced in their original electronic format, not converted to another format such as printed hard-copy documents or PDFs.  If, with respect to any Document Request, there are no responsive

Documents, You must so state in writing.

11.     Productions made in electronic format shall meet the specifications set out in Attachments 1 and 2.

12.     Each page of any Documents produced must be marked with a unique "Bates" number.

13.     Your obligation to produce information and Documents is a continuing one, as prescribed in Federal Rule of Civil Procedure 26(e).

14.     If any Document Requests seek information or Documents that You have previously produced in response to a Civil Investigative Demand, Subpoena or other request for information or documents from a Plaintiff, You must re-produce such information or Documents in accordance with these Requests and these Instructions, including Instruction Nos. 10, 11, and 12.

15.     You must clearly identify for each Document the Document Request number to which it is responsive.  Documents that may be responsive to more than one of these Requests need not be provided more than once.  However, your response must clearly indicate, for each Document provided, all of the Document Requests to which the Document is responsive.

**<u>Documents and Electronically Stored Information to be Produced</u>**

1.     Documents sufficient to show the organizational and ownership structure of the Company, including the relationship and any agreements (whether written or oral) between or among Libre by Nexus, Inc., Nexus Services, Inc., the Individual Defendants, and Nexus-Affiliated Entities.

2.     Documents sufficient to Identify all of the Company's current and former employees and corporate officers (including the Individual Defendants), the dates of

8

their employment, their duties and responsibilities in the Company, and the reporting or supervisory relationships among those officers and employees.

3.      Documents sufficient to show all addresses or locations at which the Company is located, has offices, or does business.

4.      Documents sufficient to show how the Company determined compensation of its employees or agents who interacted or communicated with Consumers Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, including Documents describing or setting forth any sales incentive program or commissions.

5.      Documents sufficient to show the following:

a.  all Nexus Products and/or Services;

b.  the number and Identity of Consumers that received each such Nexus Product and/or Service (including the Nexus Immigration Legal Services);

c.  the date(s) on which each such Nexus Product and/or Service was provided to each Consumer Identified in subsection (b);

d.  the number and Identity of Consumers who sought but did not receive Nexus Immigration Legal Services; and

e.  the number and Identity of Consumers who sought but did not receive any Nexus Products and/or Services, other than Nexus Immigration Legal Services.

6.      All Documents and Communications Concerning all advertising, marketing, or promotional material Concerning any Nexus Products and/or Services, including materials for television, internet, social media, in-person or experiential marketing, and printed materials.

7.     All Documents constituting or reflecting Company policies, procedures, scripts, talking points, guidance, instructions, and training Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, and all Communications Concerning the development, revision, or implementation of the foregoing.

8.     All Documents the Company provided or made available to any Consumers Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, including written agreements between the Company and Consumers and all Documents incorporated in, referenced by, associated with or presented with such written agreements.

9.     All Documents and Communications Concerning the creation of, or any proposed or actual revisions, amendments, or changes to any Documents that are responsive to Request No. 8.

10.     Documents sufficient to show (a) the native language of and (b) the language(s) spoken and understood by each Consumer who signed up for the Nexus Immigration Bond Service.

11.     All Documents and Communications (including without limitation any written logs, databases, recordings of telephone calls, text messages, emails, and instant and social media messages) Concerning the following topics:

    a.  the Company paying Consumers' immigration bonds;

    b.  Consumers breaching immigration bonds;

    c.  Consumer non-compliance with the terms, requirements, or conditions of the Nexus Immigration Bond Service, including non-payment;

d.  the reason for or purpose of any Consumer payments to the Company Concerning the Nexus Immigration Bond Service;

e.  the Company offering or providing loans or offering or extending credit to Consumers Concerning the Nexus Immigration Bond Service;

f.  Consumers owing a debt because the Company paid an immigration bond or Consumers' payments to the Company going towards paying down an immigration bond or paying down a loan;

g.  arrest, criminal prosecution, detention, or deportation of Consumers or any other negative outcome in a Consumer's immigration case or negative impact on a Consumer's immigration status;

h.  the GPS devices used for the Nexus Immigration Bond Service, including how they functioned; instructions for Consumers about how to use them; injuries, harm, irritation, or any adverse reaction caused by GPS devices; requests by either Consumers or the Company to remove, exchange, or replace a GPS device; co-signers wearing GPS devices; and whether GPS devices are required by third parties (such as the courts or Immigration and Customs Enforcement);

i.  the collection or attempted collection of payments or debts purportedly owed by Consumers for the Nexus Immigration Bond Service, including through the sale or transfer of Consumer accounts or purported debts to a Debt Buyer, Collection Agency, or other third-party Entity for collection;

j.  harm to a Consumer's credit rating or reporting of any kind to a Consumer Reporting Agency;

11

    k.  the Company's affiliation or relationship with any third-party Entity Concerning the provision of the Nexus Immigration Bond Service, including Immigration and Customs Enforcement, the U.S. Department of Homeland Security, the courts, and bond agents; and

    l.  the Nexus Immigration Legal Services.

12.    Documents sufficient to Identify and explain the nature of any lawsuits or other legal actions brought by the Company against a Consumer, including for non-payment for the Nexus Immigration Bond Service.

13.    All Documents and Communications Concerning the tracking or accounting of all money received from Consumers or purportedly owed by Consumers for the Nexus Immigration Bond Service, including the following:

    a.  Lightspeed records;

    b.  Documents and Communications describing the procedures or ways Consumer payments are or should be made; and

    c.  Documents and Communications Concerning the accuracy of or completeness of the Company's Consumer payment tracking or accounting system.

14.    All Documents and Communications Concerning Consumer refunds Concerning the Nexus Immigration Bond Service, including instances when

    a.  a Consumer requested a refund and did not receive one;

    b.  a Consumer's immigration case ended, when an immigration judge rendered a decision of any kind in a Consumer's case, and/or his or her bond was cancelled; and

       c.   a Consumer made payments to the Company or any of its affiliates, but no

          Consumer was released from immigration detention.

15.     All agreements between any Defendant and any Person to provide products or services Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, and Documents and Communications Concerning performance of any Entity under such agreements.  The response to this request shall include agreements (and the requested Documents and Communications):

       a.   for the provision of GPS hardware or services;

       b.   for the provision of marketing, advertising, or public relations services;

       c.   for the provision of legal services to Consumers;

       d.   for the storage of Communications for the Company, including e-mail, instant messaging, chat, or telephone recordings (both cellular and landlines); and

       e.   with any bond, surety, or insurance company or the agent of any bond, surety, or insurance company.

16.     Documents sufficient to show all costs incurred by any Defendant or any other money paid, due, owed or allegedly due or owed to third parties by any Defendant Concerning (a) the Nexus Immigration Bond Service and (b) the Nexus Immigration Legal Services. The response to this Document Request shall include the cost of any services or products provided by third parties to the Company and the cost of paying any employees or agents.

17.     All Communications with Consumers, and all Documents Concerning those Communications (including without limitation any written logs, databases,

recordings of telephone calls, text messages, emails, and instant and social media messages), Concerning any of the following topics:

      a.   how the Nexus Immigration Bond Service works or what it provides to Consumers; and

      b.   signing up, registering, or enrolling in the Nexus Immigration Bond Service.

18.     Documents and Communications sufficient to show the Company's financial condition, including financial statements (whether audited or unaudited), Documents reflecting payments to members or corporate officers, Documents reflecting real estate property held by the Company, Documents showing trusts which contain assets used by or for the benefit of the Company, and tax returns (to the extent those tax returns contain responsive information not contained in other Documents).

19.     Documents sufficient to show all of the Company's bank accounts and the Persons who own, are beneficiaries of, or control, in any way, such accounts.  The response to this Document Request shall include the accounts into which money from Consumers was deposited and accounts that were used for sharing money among or between Nexus-Affiliated Entities.

20.     All Documents reflecting Consumer complaints or disputes Concerning any Nexus Products and/or Services and all responses to such complaints or disputes.

21.     All Documents and Communications Concerning quality assurance or quality control reviews, audits, or assessments undertaken by the Company or any Person Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, including "QA Reports" or any similar Communications.

14

22.     All Documents and Communications Concerning the supervision or auditing of employees or agents of the Company who communicated with or interacted with Consumers.

23.     All Documents produced previously to any of the Plaintiffs, including those produced in response to a Subpoena or Civil Investigative Demand issued by any of the Plaintiffs.

24.     All Documents (including both transcripts and any related videos), in unredacted form, reflecting or containing testimony by any of the Defendants, or any former or current Company employee or agent in any investigation, lawsuit or arbitration to which the any of the Defendants was a party Concerning Libre by Nexus, Inc., Nexus Services, Inc., the Individual Defendants, or any Nexus Product and/or Service, including all exhibits and any videos or recordings of such testimony.  The response to this Document Request shall include the following:

- From *Vasquez v. Libre by Nexus, Inc.*, Case No. 4:17-cv-00755-CW (N.D. Cal.):

    o   Deposition of David See

- From *RLI Ins. Co. v. Nexus Services, Inc.*, No. Case 5:18-cv-00066-MFU-JCH (W.D. Va.):

    o   Deposition of Richard Moore (both parts)

    o   Deposition of Tim Okonski

    o   Deposition of Micheal Donovan

    o   Deposition of Micheal Donovan under Federal Rule of Civil Procedure 30(b)(6)

    o   Deposition of Erik Schneider

    o Deposition of Erik Schneider and Tim Okonski under Federal Rule of Civil Procedure 30(b)(6)

  25. All Documents Concerning any governmental or regulatory licenses sought or held by the Company.

  26. Documents and Communications sufficient to show the substantive and temporal scope of all litigation holds and/or document preservation policies and procedures implemented by the Company to preserve Documents and information, including those taken in response to this Action or in response to any of the Plaintiffs' Subpoenas or Civil Investigative Demands.

  27. All Documents Concerning expert testimony or reports any Defendant intends to rely upon in this Action for any purpose, including all Documents Concerning compensation for expert testimony and all Documents provided to the expert Concerning this Action.

  28. All Documents showing any Defendants' insurance coverage, including insurance policies, umbrella coverage, excess liability coverage, directors and officers coverage, errors and omissions coverage, funding agreements, side agreements, and notices sent by any Defendant to any insurer Concerning this Action, Plaintiffs' investigations, or other investigations or lawsuits and their responses.

  29. All Documents received by Defendants in response to any subpoena *duces tecum* in this Action.

Dated: June 9, 2021

*Attorneys for the Consumer Financial Protection Bureau*

Cara M. Petersen
    *Acting Enforcement Director*
Jeffrey Paul Ehrlich
    *Deputy Enforcement Director*
Kara K. Miller
    *Assistant Litigation Deputy*

**Hai Binh T. Nguyen**
California Bar Number: 313503
Donald R. Gordon
District of Columbia Bar Number: 482384
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Telephone (Nguyen): (202) 435-7251
Telephone (Gordon): (212) 328-7011
Fax: (703) 642-4585
Email: haibinh.nguyen@cfpb.gov
Email: donald.gordon@cfpb.gov

*Attorneys for the Commonwealth of Virginia, ex rel.
Mark R. Herring, Attorney General*

Mark R. Herring
    *Attorney General*
Erin B. Ashwell
    *Chief Deputy Attorney General*
Samuel T. Towell
    *Deputy Attorney General*
Richard S. Schweiker, Jr.
    *Chief and Senior Assistant Attorney General*

**David B. Irvin**
Virginia Bar Number: 23927
Unit Manager and Senior Assistant Attorney General
Erin E. Witte
Virginia Bar Number: 81096
Stephen J. Sovinsky
Virginia Bar Number: 85637
Assistant Attorneys General
Office of the Attorney General
Consumer Protection Section

202 North Ninth Street
Richmond, VA 23219
Telephone (Irvin): (804) 786-4047
Telephone (Witte): (703) 359-6716
Telephone (Sovinsky): (804) 823-6341
Fax: (804) 786-0122
Email: dirvin@oag.state.va.us
Email: ewitte@oag.state.va.us
Email: ssovinsky@oag.state.va.us


*Attorneys for the Commonwealth of Massachusetts*

Maura Healy
    *Attorney General*

**Jon Burke**
Massachusetts Bar Number: 673472
Assistant Attorney General
Office of the Attorney General
10 Mechanic Street
Worcester, MA 01608
Telephone: (774) 214-4416
Email: Jonathan.burke@mass.gov

*Attorneys for the People of the State of New York*

LETITIA JAMES
    *Attorney General*
Jane Azia (New York Bar Number: 1539600)
    *Bureau Chief for the Bureau of Consumer Frauds and
    Protection*
Laura Levine (New York Bar Number: 2337368)
    *Deputy Bureau Chief for the Bureau of Consumer
    Frauds and Protection*

**Stewart Dearing**
New York Bar Number: 5108444
Joseph P. Mueller
New York Bar Number: 5079389
Assistant Attorneys General
Office of the Attorney General
28 Liberty Street
New York, NY 10005
Telephone (Mueller): (212) 416-8321
Telephone (Dearing): (212) 416-8320
Fax: (212) 416-6003

Email: Joseph.Mueller@ag.ny.gov
Email: Stewart.Dearing@ag.ny.gov

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 9, 2021, I served the foregoing Plaintiffs' First Request for

the Production of Documents and Electronically Stored Information Addressed to

Nexus Services, Inc. and Libre by Nexus, Inc. on Defendants electronically by email to

all attorneys of record and caused it to be mailed to counsel for the Defendants via First

Class Mail at the following addresses: John M. Shoreman, McFadden & Shoreman, 1050

Connecticut Avenue, NW, Suite 500, Washington, DC 20036 and Mario Bernard

Williams & John M. Shoreman, NDH LLC, 44 Broad Street, NW, Suite 200, Atlanta GA

30303.

**Stewart Dearing**
New York Bar Number: 5108444
Assistant Attorney General
Office of the Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8320
Fax: (212) 416-6003
Email: Stewart.Dearing@ag.ny.gov

**ATTACHMENT 1**
**Electronic Document Production Specifications**

Unless otherwise specified and agreed to by the Plaintiffs, all responsive documents must be produced in LexisNexis® Concordance® format in accordance with the following instructions.  Any questions regarding electronic document production should be directed to Plaintiffs.

1.  <u>Concordance Production Components</u>.  A Concordance production consists of the following component files, which must be produced in accordance with the specifications set forth below in Section 7.

    A.  ***Metadata Load File.***  A delimited text file that lists in columnar format the required metadata for each produced document.

    B.  ***Extracted or OCR Text Files.***  Document-level extracted text for each produced document or document-level optical character recognition ("OCR") text where extracted text is not available.

    C.  ***Single-Page Image Files.***  Individual petrified page images of the produced documents in tagged image format ("TIF"), with page-level Bates number endorsements.

    D.  ***Opticon Load File.***  A delimited text file that lists the single-page TIF files for each produced document and defines (i) the relative location of the TIF files on the production media and (ii) each document break.

    E.  ***Native Files.***  Native format versions of non-printable or non–print friendly produced documents.

2.  <u>Production Folder Structure</u>.  The production must be organized according to the following standard folder structure:
- data\ (contains production load files)
- images\ (contains single-page TIF files, with subfolder organization)
  \0001, \0002, \0003…
- native_files\ (contains native files, with subfolder organization)
  \0001, \0002, \0003…
- text\ (contains text files, with subfolder organization)
  \0001, \0002, \0003…

3.  <u>De-Duplication</u>.  You must perform global de-duplication of stand-alone documents and email families.

4.  <u>Paper or Scanned Documents</u>.  Documents that exist only in paper format must be scanned to single-page TIF files and OCR'd.  The resulting electronic files should be pursued in Concordance format pursuant to these instructions.  You must contact Plaintiffs to discuss (i) any documents that cannot be scanned, and

i

(ii) how information for scanned documents should be represented in the metadata load file.

5.  <u>Structured Data</u>.  Before producing structured data, including but not limited to relational databases, transactional data, and xml pages, you must first speak to Plaintiffs.   Structured data is data that has a defined length and format and includes, but is not limited to, relational databases, graphical databases, JSON files, or xml/html pages.

    A.  Relational Databases

       1.  Database tables should be provided in CSV or other delimited machine-readable, non-proprietary format, with each table in a separate data file. The preferred delimiter is a vertical bar "|". If after speaking with Plaintiffs, it is determined that the data cannot be exported from a proprietary database, then the data can be produced in the proprietary format so long as the Plaintiffs are given sufficient access to that data.

       2.  Each database must have an accompanying Data Dictionary.

       3.  Dates and numbers must be clearly and consistently formatted and, where relevant, units of measure should be explained in the Data Dictionary.

       4.  Records must contain clear, unique identifiers, and the Data Dictionary must include explanations of how the files and records relate to one another.

       5.  Each data file must also have an accompanying summary file that provides total row counts for the entire dataset and total row counts.

    B.  Compression

       1.  If Documents are provided in a compressed archive, only standard lossless compression methods (e.g., gzip, bzip2, and ZIP) shall be used. Media files should be provided in their original file format, with metadata preserved and no additional lossy encoding applied.

6.  <u>Media and Encryption</u>.  All documents must be produced on CD, DVD, or hard-drive media.   After consultation with the Plaintiffs, Documents may also be produced over a secure file transfer protocol (FTP), a pre-approved cloud-based platform (e.g. Amazon Web Services S3 bucket), or the New York Attorney General's cloud platform OAGCloud. All production media must be protected with a strong, randomly-generated password containing at least 16 alphanumeric characters and encrypted using Advanced Encryption Standard with 256-bit key length (AES-256). Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately from the media.

7.   <u>Production File Requirements</u>.

A.   ***Metadata Load File***
- Required file format:
  - ASCII or UTF-8
  - Windows formatted CR + LF end of line characters, including full CR + LF on last record in file.
  - .dat file extension
  - Field delimiter: (ASCII decimal character 20)
  - Text Qualifier: þ (ASCII decimal character 254).  Date and pure numeric value fields do not require qualifiers.
  - Multiple value field delimiter: ; (ASCII decimal character 59)
- The first line of the metadata load file must list all included fields.  All required fields are listed in Attachment 2.
- Fields with no values must be represented by empty columns maintaining delimiters and qualifiers.
- ***Note:*** All documents must have page-level Bates numbering (except documents produced only in native format, which must be assigned a document-level Bates number).  The metadata load file must list the beginning and ending Bates numbers (BEGDOC and ENDDOC) for each document.  For document families, including but not limited to emails and attachments, compound documents, and uncompressed file containers, the metadata load file must also list the Bates range of the entire document family (ATTACHRANGE), beginning with the first Bates number (BEGDOC) of the "parent" document and ending with the last Bates number (ENDDOC) assigned to the last "child" in the document family.
- Date and Time metadata must be provided in separate columns.
- Accepted date formats:
  - mm/dd/yyyy
  - yyyy/mm/dd
  - yyyymmdd
- Accepted time formats:
  - hh:mm:ss (if not in 24-hour format, you must indicate am/pm)
  - hh:mm:ss:mmm

B.   ***Extracted or OCR Text Files***
- You must produce individual document-level text files containing the full extracted text for each produced document.
- When extracted text is not available (for instance, for image-only documents) you must provide individual document-level text files containing the document's full OCR text.
- The filename for each text file must match the document's beginning Bates number (BEGDOC) listed in the metadata load file.

- Text files must be divided into subfolders containing no more than 500 to 1000 files.

C.    ***Single-Page Image Files (Petrified Page Images)***
- Where possible, all produced documents must be converted into single-page tagged image format ("TIF") files.  See Section 7.E below for instructions on producing native versions of documents you are unable to convert.
- Image documents that exist only in non-TIF formats must be converted into TIF files.  The original image format must be produced as a native file as described in Section 7.E below.
- For documents produced only in native format, you must provide a TIF placeholder that states "Document produced only in native format."
- Each single-page TIF file must be endorsed with a unique Bates number.
- The filename for each single-page TIF file must match the unique page-level Bates number (or document-level Bates number for documents produced only in native format).
- Required image file format:
    o   CCITT Group 4 compression
    o   2-Bit black and white
    o   300 dpi
    o   Either .tif or .tiff file extension.
- TIF files must be divided into subfolders containing no more than 500 to 1000 files.  Where possible documents should not span multiple subfolders.

D.    ***Opticon Load File***
- Required file format:
    o   ASCII
    o   Windows formatted CR + LF end of line characters
    o   Field delimiter: , (ASCII decimal character 44)
    o   No Text Qualifier
    o   .opt file extension
- The comma-delimited Opticon load file must contain the following seven fields (as indicated below, values for certain fields may be left blank):
    o   ALIAS or IMAGEKEY – the unique Bates number assigned to each page of the production.
    o   VOLUME – this value is optional and may be left blank.
    o   RELATIVE PATH – the filepath to each single-page image file on the production media.
    o   DOCUMENT BREAK – defines the first page of a document. The only possible values for this field are "Y" or blank.
    o   FOLDER BREAK – defines the first page of a folder.  The only possible values for this field are "Y" or blank.

iv

- o BOX BREAK – defines the first page of a box. The only possible values for this field are "Y" or blank.
- o PAGE COUNT – this value is optional and may be left blank.
- • ***Example*:**
  ABC00001,,IMAGES\0001\ABC00001.tif,Y,,,2
  ABC00002,,IMAGES\0001\ABC00002.tif,,,,
  ABC00003,,IMAGES\0002\ABC00003.tif,Y,,,1
  ABC00004,,IMAGES\0002\ABC00004.tif,Y,,,1

E.   ***Native Files***

- • Non-printable or non–print friendly documents (including but not limited to spreadsheets, audio files, video files and documents for which color has significance to document fidelity) must be produced in their native format.
- • The filename of each native file must match the document's beginning Bates number (BEGDOC) in the metadata load file and retain the original file extension.
- • For documents produced only in native format, you must assign a single document-level Bates number and provide an image file placeholder that states "Document produced only in native format."
- • The relative paths to all native files on the production media must be listed in the NATIVEFILE field of the metadata load file.
- • Native files that are password-protected must be decrypted prior to conversion and produced in decrypted form.  In cases where this cannot be achieved the document's password must be listed in the metadata load file.  The password should be placed in the COMMENTS field with the format Password: <PASSWORD>.
- • You may be required to supply a software license for proprietary documents produced only in native format.

v

**ATTACHMENT 2**
**Required Fields for Metadata Load File**

| FIELD NAME | FIELD DESCRIPTION | FIELD VALUE EXAMPLE[1] |
|---|---|---|
| DOCID | Unique document reference (can be used for de-duplication). | ABC0001 or ###.######.### |
| BEGDOC | Bates number assigned to the first page of the document. | ABC0001 |
| ENDDOC | Bates number assigned to the last page of the document. | ABC0002 |
| BEGATTACH | Bates number assigned to the first page of the parent document in a document family (*i.e.*, should be the same as BEGDOC of the parent document, or PARENTDOC). | ABC0001 |
| ENDATTACH | Bates number assigned to the last page of the last child document in a family (*i.e.*, should be the same as ENDDOC of the last child document). | ABC0008 |
| ATTACHRANGE | Bates range of entire document family. | ABC0001 - ABC0008 |
| PARENTDOC | BEGDOC of parent document. | ABC0001 |
| CHILDDOCS | List of BEGDOCs of all child documents, delimited by ";" when field has multiple values. | ABC0002; ABC0003; ABC0004... |
| DOCREQ | List of particular Requests for Documents to be Produced | 1; 2; 3 . . . |
| INTERROG | List of particular Interrogatories | 1; 2; 3 . . . |
| COMMENTS | Additional document comments, such as passwords for encrypted files. | |
| NATIVEFILE | Relative file path of the native file on the production media. | .\Native_File\Folder\... \BEGDOC.ext |

---

[1] Examples represent possible values and not required format unless the field format is specified in Attachment 1.

| | | |
|---|---|---|
| SOURCE | For scanned paper records this should be a description of the physical location of the original paper record.  For loose electronic files this should be the name of the file server or workstation where the files were gathered. | Company Name, Department Name, Location, Box Number... |
| CUSTODIAN | Owner of the document or file. | Firstname Lastname, Lastname, Firstname, User Name; Company Name, Department Name... |
| FROM | Sender of the email. | Firstname Lastname < FLastname @domain > |
| TO | All to: members or recipients, delimited by ";" when field has multiple values. | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; ... |
| CC | All cc: members, delimited by ";" when field has multiple values. | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; ... |
| BCC | All bcc: members, delimited by ";" when field has multiple values | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; ... |
| SUBJECT | Subject line of the email. | |
| DATERCVD | Date that an email was received. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| TIMERCVD | Time that an email was received. | hh:mm:ss AM/PM or hh:mm:ss |
| DATESENT | Date that an email was sent. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| TIMESENT | Time that an email was sent. | hh:mm:ss AM/PM or hh:mm:ss |

| CALBEGDATE | Date that a meeting begins. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
|---|---|---|
| CALBEGTIME | Time that a meeting begins. | hh:mm:ss AM/PM or hh:mm:ss |
| CALENDDATE | Date that a meeting ends. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| CALENDTIME | Time that a meeting ends. | hh:mm:ss AM/PM or hh:mm:ss |
| CALENDARDUR | Duration of a meeting in hours. | 0.75, 1.5... |
| ATTACHMENTS | List of filenames of all attachments, delimited by ";" when field has multiple values. | AttachmentFileName.; AttachmentFileName.docx; AttachmentFileName.pdf;... |
| NUMATTACH | Number of attachments. | 1, 2, 3, 4.... |
| RECORDTYPE | General type of record. | IMAGE; LOOSE E-MAIL; E-MAIL; E-DOC; IMAGE ATTACHMENT; LOOSE E-MAIL ATTACHMENT; E-MAIL ATTACHMENT; E-DOC ATTACHMENT |
| FOLDERLOC | Original folder path of the produced document. | Drive:\Folder\...\...\ |
| FILENAME | Original filename of the produced document. | Filename.ext |
| DOCEXT | Original file extension. | html, xls, pdf |
| DOCTYPE | Name of the program that created the produced document. | Adobe Acrobat, Microsoft Word, Microsoft Excel, Corel WordPerfect... |
| TITLE | Document title (if entered). | |
| AUTHOR | Name of the document author. | Firstname Lastname; Lastname, First Name; FLastname |
| REVISION | Number of revisions to a document. | 18 |

| DATECREATED | Date that a document was created. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
|---|---|---|
| TIMECREATED | Time that a document was created. | hh:mm:ss AM/PM or hh:mm:ss |
| DATEMOD | Date that a document was last modified. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| TIMEMOD | Time that a document was last modified. | hh:mm:ss AM/PM or hh:mm:ss |
| FILESIZE | Original file size in bytes. | 128, 512, 1024... |
| PGCOUNT | Number of pages per document. | 1, 2, 10, 100... |
| IMPORTANCE | Email priority level if set. | Low, Normal, High |
| TIFFSTATUS | Generated by the Law Pre-discovery production tool (leave blank if inapplicable). | Y, C, E, W, N, P |
| DUPSTATUS | Generated by the Law Pre-discovery production tool (leave blank if inapplicable). | P |
| MD5HASH | MD5 hash value computed from native file (a/k/a file fingerprint). | BC1C5CA6C1945179FEE144F25F51087B |
| SHA1HASH | SHA1 hash value | B68F4F57223CA7DA3584BAD7ECF111B8044F8631 |
| MSGINDEX | Email message ID | |

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

CONSUMER FINANCIAL PROTECTION
BUREAU; COMMONWEALTH OF
MASSACHUSETTS; THE PEOPLE OF
THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of
the State of New York; and
COMMONWEALTH OF VIRGINIA, *EX
REL*. MARK R. HERRING, ATTORNEY
GENERAL,

    Plaintiffs,

v.

NEXUS SERVICES, INC.; LIBRE BY
NEXUS, INC.; MICHEAL DONOVAN;
RICHARD MOORE; and EVAN AJIN,

    Defendants.

Case No.: 5:21-cv-00016

## PLAINTIFFS' FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION ADDRESSED TO MICHEAL DONOVAN

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs

Consumer Financial Protection Bureau, Commonwealth of Massachusetts, the People of

the State of New York, by Letitia James, Attorney General of the State of New York, and

Commonwealth of Virginia, *ex rel*. Mark R. Herring, Attorney General (collectively,

"Plaintiffs") request that Defendant Micheal Donovan produce the following documents

for inspection and copying on or before July 9, 2021 to the attention of Joseph P.

Mueller and Stewart Dearing at the Office of the New York State Attorney General, PTG

Unit, 3 Airport Park Blvd., Latham, New York 12110 or via a secure File Transfer

1

Protocol (FTP) to be negotiated with Plaintiffs' counsel prior to delivery of the documents.

## **Definitions**

1.      "Action" refers to the above-captioned case, *CFPB* et al. *v. Nexus Services, Inc.* et al., Case No. 21-cv-16 (W.D. Va.).

2.      "Collection Agency" means any natural person or Entity who collects or attempts to collect, either directly or indirectly, payments or debts owed or due or asserted to be owed or due another.

3.      "Communication" means any transmittal of information of any kind, whether transmitted in writing, orally, electronically or by any other means, and including any Document that abstracts, digests, transcribes, records, or reflects the transmittal of information of any kind.

4.      The "Company" means Nexus Services, Inc. and/or Libre by Nexus, Inc.; any of their predecessors, successors, present or former parents, subsidiaries, or affiliates, whether direct or indirect, including all Nexus-Affiliated Entities; all directors, officers, partners, principals, owners, supervisors, contractors, vendors, consultants, employees, agents, representatives, and attorneys of the foregoing; and any other Persons associated with or acting on behalf of the foregoing, or acting on behalf of any predecessors, successors, or affiliates of the foregoing.

5.      "Complaint" is the complaint Plaintiffs filed in this Action, as well as any subsequent or amended versions that may be filed.

6.      "Concerning" means, directly or indirectly, in whole or in part, relating to, referring to, describing, evidencing or constituting.

7.      "Consumer" means any natural person, including natural persons who

2

were detained by immigration authorities and their guarantors, co-signers or sponsors.

8.     "Consumer Reporting Agency" means any natural person or Entity which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.

9.     "Debt Buyer" means any natural person or Entity that buys debts or the right to future payments from creditors and tries to collect them.

10.     "Document" is defined to be equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a) and includes any written matter of every type and description, including electronically stored information, and specifically including emails, voicemails, chat programs such as GroupMe and Slack, and instant messages such as SMS, WhatsApp, Telegram, and Signal, and social media direct and private messages, and including any non-identical copies (such as drafts or annotated copies).

11.     "Entity" means without limitation any corporation, company, limited liability company or corporation, partnership, limited partnership, association, trust, sole proprietorship or other firm or similar body or organization, or any unit, division, agency, department, or similar subdivision thereof.

12.     "Identify" means to provide: (a) for a natural person, the person's full name, title or position, present or last known address, the present or last known business affiliation or place of employment, e-mail address, and telephone number; (b) for Entities, the name, address, identities of officers, directors, managers, and members of the business or organization, and contact persons with e-mail addresses and

3

telephone numbers, where applicable; and (c) for Documents, the type of Document, general subject matter, date of the Document, and authors, addressees and recipients.

13.     "Individual Defendants" means Micheal Donovan, Richard Moore and Evan Ajin, or any of them, and all contractors, vendors, consultants, employees, agents, representatives, and attorneys of the foregoing, and all other Persons associated with or acting on behalf of the foregoing.

14.     "Libre" means Libre by Nexus, Inc.

15.     "Nexus-Affiliated Entities" means all of Libre By Nexus, Inc.'s or Nexus Services, Inc.'s predecessors, successors, present or former parents, subsidiaries, or affiliates, whether direct or indirect, including Homes by Nexus, Inc., Serve by Nexus, Inc., Nexus Properties, LLC, Nexus Commercial Ventures, LLC, Entertainment by Nexus, Inc., Secure by Nexus, Inc., Nexus Investigations & Security, Inc., Nexus Financial Services Corporation, Nexus Libre Inc., Nexus Monitoring LLC, Nexus Programs Inc., Nexus Caridades, Inc., Nexus Caridades Attorneys, Inc., Nexus Health Inc., Entlest Brands, Inc., and One Fish Two Fish, LLC.

16.      "Nexus Immigration Bond Service" means the immigration bond service described in the Complaint run by Libre by Nexus, Inc., Nexus Services, Inc., and the Individual Defendants, and includes all aspects of that service, including paying for or arranging Consumers' immigration bonds, providing transportation to Consumers, paying for Consumers' meals, providing and affixing GPS devices to Consumers, and "collateralizing" Consumers' bonds.

17.     "Nexus Immigration Legal Services" means any legal services advertised, promoted, marketed, promised, offered or provided by the Company or the Company's affiliates or agents to Consumers Concerning immigration law or immigration

proceedings in the United States.

18.     "Nexus Products and/or Services" means any product or service advertised, promoted, marketed, promised, offered, or provided to Consumers by Libre by Nexus, Inc. or Nexus Services, Inc., or advertised, promoted, marketed, promised, offered, or provided to Consumers by any Nexus-Affiliated Entity in connection with the Nexus Immigration Bond Service. "Nexus Products and/or Services" shall include but not be limited to the Nexus Immigration Bond Service and the Nexus Immigration Legal Services.

19.     "Nexus" means Nexus Services, Inc.

20.     "Person" means any natural person or any Entity.

21.     "You" or "Your" means Defendant Micheal Donovan.

22.     The use of the singular form of any word used herein shall include the plural and vice versa. In construing these requests, the plural shall include the singular and the singular shall include the plural; a masculine, feminine, or neuter term shall include all other genders; the terms "or," "and," "and/or," "including," "each" and "every" shall be construed inclusively rather than exclusively so as to bring more Documents within the scope of the request; and the terms "all" and "any" shall be interpreted inclusively so as to mean both "all" and "any" whenever either term is used. The use of any tense of any verb includes all other tenses of the verb.

## **Instructions**

1.     In addition to the specific instructions set forth below, Plaintiffs' First Request for the Production of Documents and Electronically Stored Information Addressed to Micheal Donovan (the "First Donovan Document Requests," the

"Document Requests," or the "Requests") incorporate the definitions and instructions set forth in Federal Rules of Civil Procedure 26 and 34.

2.     Unless otherwise specified, the time period covered by these Document Requests shall be from July 1, 2012 through the present.

3.     Each Document Request is to be fully and separately answered.

4.     In responding to these Requests, You are required to furnish all Documents that are within Your possession, custody and/or control, including Documents in the possession of Your attorneys, accountants, agents, affiliates, directors, officers, consultants, advisors, representatives, vendors, contractors, or Persons directly or indirectly employed by or connected with You or Your attorneys, and any other Person subject to Your control.

5.     All Documents that respond, in whole or in part, to any portion of the Requests below shall be produced in their entirety, including all metadata, attachments, enclosures, and embedded information or materials.

6.     In responding to each Document Request, You are required to produce all responsive Documents in all forms and languages in which they exist.

7.     If any Document responsive to the Requests was, but is no longer, within Your possession, custody, or control, You shall provide a list Identifying all such Documents, including the Document Request to which the Document is responsive, a statement of the author(s), recipient(s), date and contents of the Document, as well as the disposition (*i.e.*, destruction, transfer, *etc.*) of the Document and the date of and reason for such disposition.

8.     If any Document is withheld from production, either in whole or in part, on the basis of a claim of privilege, work product, or any other protection, please

6

provide, for each such Document, a description sufficiently detailed as set forth in Federal Rule of Civil Procedure 26(b)(5) to allow Plaintiffs to evaluate Your claim of privilege, work product, or protection. Such description shall include: the title and general subject matter of the Document, the date of the Document, the Identity of all Persons who participated in creating the Document, the Identity of each Person who signed the Document or in whose name the Document was issued, the Identity of each addressee and recipient of the Document, the number of pages which comprise the Document, a description of the nature and substance of the Document, its attachments, if any, its present custodian, and a description of the basis for each claimed privilege, work product, or protection. You shall provide privilege logs on a rolling basis with each production, *not* at the end of discovery.

9.     If a Document Request is ambiguous or unclear to You, You shall contact undersigned counsel as soon as possible so that the request can be clarified and any unnecessary delays in providing Your answer can be avoided.

10.    Responsive Documents shall be produced in native format as they are kept in the ordinary course of business and shall be organized and labeled to correspond with these Requests. Documents created or stored electronically MUST be produced in their original electronic format, not converted to another format such as printed hard-copy documents or PDFs.  If, with respect to any Document Request, there are no responsive Documents, You must so state in writing.

11.    Productions made in electronic format shall meet the specifications set out in Attachments 1 and 2.

12.    Each page of any Documents produced must be marked with a unique

"Bates" number.

13.     Your obligation to produce information and Documents is a continuing one, as prescribed in Federal Rule of Civil Procedure 26(e).

14.     If any Document Requests seek information or Documents that You have previously produced in response to a Civil Investigative Demand, Subpoena or other request for information or Documents from a Plaintiff, You must re-produce such information or Documents in accordance with these Requests and these Instructions, including Instruction Nos. 10, 11, and 12.

15.     You must clearly identify for each Document the Document Request number to which it is responsive.  Documents that may be responsive to more than one of these Requests need not be provided more than once. However, Your response must clearly indicate, for each Document provided, all of the Document Requests to which the Document is responsive.

### **Documents and Electronically Stored Information to be Produced**

1.     All Documents and Communications not produced by Nexus or Libre Concerning the following topics:

  a.  advertising, marketing, promoting, selling, or explaining the Nexus Immigration Bond Service or the Nexus Immigration Legal Services;

  b.  how the Nexus Immigration Bond Service works or what it provides to Consumers;

  c.  the Company paying Consumers' immigration bonds;

  d.  Consumers breaching immigration bonds;

  e.  Consumer non-compliance with the terms, requirements, or conditions of the Nexus Immigration Bond Service, including non-payment;

8

f. the reason for or purpose of any Consumer payments to the Company Concerning the Nexus Immigration Bond Service;

g. the Company offering or providing loans or offering or extending credit to Consumers Concerning the Nexus Immigration Bond Service;

h. Consumers owing a debt because the Company paid an immigration bond or Consumers' payments going towards paying down an immigration bond or paying down a loan;

i. arrest, criminal prosecution, detention, or deportation of Consumers or any other negative outcome in a Consumer's immigration case or negative impact on a Consumer's immigration status;

j. the GPS devices used for the Nexus Immigration Bond Service, including how they functioned; instructions for Consumers about how to use them; injuries, harm, irritation, or any adverse reaction caused by GPS devices; requests by either Consumers or the Company to remove, exchange, or replace a GPS device; co-signers wearing GPS devices; and whether GPS devices are required by third parties (such as the courts or Immigration and Customs Enforcement);

k. the collection or attempted collection of payments or debts purportedly owed by Consumers for the Nexus Immigration Bond Service, including through the sale or transfer of Consumer accounts or purported debts to a Debt Buyer, Collection Agency, or other third-party Entity for collection;

l. harm to a Consumer's credit rating or reporting of any kind to a Consumer Reporting Agency;

9

m.  the Company's affiliation or relationship with any third-party Entity
Concerning the provision of the Nexus Immigration Bond Service,
including Immigration and Customs Enforcement, the U.S. Department of
Homeland Security, the courts, and bond agents;

n.  the Nexus Immigration Legal Services;

o.  processing, handling, reporting, or responding to Consumer disputes or
complaints Concerning the Nexus Immigration Bond Service or the Nexus
Immigration Legal Services;

p.  tracking or recording payments from Consumers;

q.  collateralizing a Consumer's immigration bond;

r.  concluding Consumer relationships with Libre or Nexus, including the
steps taken when an immigration judge renders a decision of any kind in a
Consumer's case and the cancellation of an immigration bond;

s.  quality assurance or quality control reviews, audits, or assessments
undertaken by the Company or any Person Concerning the Nexus
Immigration Bond Service or the Nexus Immigration Legal Services,
including "QA Reports" or any similar Communications; and

t.  refunding Consumers.

2.    Documents sufficient to describe Your formal education and Your
employment, including Your CVs, resumes or other Documents that describe Your
employers, job titles, and responsibilities or duties, including for Nexus, Libre, and
Nexus-Affiliated Entities.

3.    Documents sufficient to show the following:

10

a.  every position, office, role, or title that You have held with Nexus, Libre, Nexus-Affiliated Entities, or with any Entity Concerning immigration bonds or immigration legal services;

b.  the dates during which You held each such position, office, role, or title;

c.  the responsibilities that You had in each such position, office, role or title; and

d.  Your compensation for each such position, office, role or title.

4.      All Documents Concerning licenses You have sought or held from any local, state, federal or other governmental or regulatory authority.

5.      All contracts or agreements (whether written or oral) between You and any of the other Defendants Concerning the following:

a.  Libre, Nexus, or Nexus-Affiliated Entities;

b.  any Nexus Product and/or Service; or

c.  any monies or assets related thereto.

6.      Documents sufficient to show payment, compensation, or any other transfers of property, assets, or monies, from any Defendant to You; the assumption, guarantee, or payment of any liability by any Defendant on Your behalf; or Your assumption, guarantee, or payment of any liability of any other Defendant.

7.      Documents sufficient to show insurance policies held by or covering You Concerning Nexus, Libre, any Nexus-Affiliated Entities, or this Action.

8.      Documents and Communications sufficient to show Your financial condition from January 1, 2016 to the present, including bank accounts which You own, have signing rights to, or are the beneficiary of; records reflecting income; and tax returns (if the information in tax returns is not available in other Documents).

11

9.     All Documents (including both transcripts and any related videos), in unredacted form, reflecting or containing testimony by You and not produced by Nexus or Libre Concerning Libre, Nexus, the Individual Defendants, or any Nexus Product and/or Service, including all exhibits and any videos or recordings of such testimony.

Dated: June 9, 2021

*Attorneys for the Consumer Financial Protection Bureau*

Cara M. Petersen
   *Acting Enforcement Director*
Jeffrey Paul Ehrlich
   *Deputy Enforcement Director*
Kara K. Miller
   *Assistant Litigation Deputy*

**Hai Binh T. Nguyen**
California Bar Number: 313503
Donald R. Gordon
District of Columbia Bar Number: 482384
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Telephone (Nguyen): (202) 435-7251
Telephone (Gordon): (212) 328-7011
Fax: (703) 642-4585
Email: haibinh.nguyen@cfpb.gov
Email: donald.gordon@cfpb.gov

*Attorneys for the Commonwealth of Virginia, ex rel.*
*Mark R. Herring, Attorney General*

Mark R. Herring
   *Attorney General*
Erin B. Ashwell
   *Chief Deputy Attorney General*
Samuel T. Towell
   *Deputy Attorney General*
Richard S. Schweiker, Jr.
   *Chief and Senior Assistant Attorney General*

**David B. Irvin**
Virginia Bar Number: 23927
Unit Manager and Senior Assistant Attorney General
Erin E. Witte
Virginia Bar Number: 81096
Stephen J. Sovinsky
Virginia Bar Number: 85637
Assistant Attorneys General
Office of the Attorney General
Consumer Protection Section
202 North Ninth Street
Richmond, VA 23219
Telephone (Irvin): (804) 786-4047
Telephone (Witte): (703) 359-6716
Telephone (Sovinsky): (804) 823-6341
Fax: (804) 786-0122
Email: dirvin@oag.state.va.us
Email: ewitte@oag.state.va.us
Email: ssovinsky@oag.state.va.us

*Attorneys for the Commonwealth of Massachusetts*

Maura Healy
 *Attorney General*

**Jon Burke**
Massachusetts Bar Number: 673472
Assistant Attorney General
Office of the Attorney General
10 Mechanic Street
Worcester, MA 01608
Telephone: (774) 214-4416
Email: Jonathan.burke@mass.gov

*Attorneys for the People of the State of New York*

LETITIA JAMES
 *Attorney General*
Jane Azia (New York Bar Number: 1539600)
 *Bureau Chief for the Bureau of Consumer Frauds and*
 *Protection*
Laura Levine (New York Bar Number: 2337368)
 *Deputy Bureau Chief for the Bureau of Consumer*
 *Frauds and Protection*

**Stewart Dearing**

13

New York Bar Number: 5108444
Joseph P. Mueller
New York Bar Number: 5079389
Assistant Attorneys General
Office of the Attorney General
28 Liberty Street
New York, NY 10005
Telephone (Mueller): (212) 416-8321
Telephone (Dearing): (212) 416-8320
Fax: (212) 416-6003
Email: Joseph.Mueller@ag.ny.gov
Email: Stewart.Dearing@ag.ny.gov

## CERTIFICATE OF SERVICE

I certify that on June 9, 2021, I served the foregoing Plaintiffs' First Request for the Production of Documents and Electronically Stored Information Addressed to Micheal Donovan on Defendants electronically by email to all attorneys of record and caused it to be mailed to counsel for the Defendants via First Class Mail at the following addresses:  John M. Shoreman, McFadden & Shoreman, 1050 Connecticut Avenue, NW, Suite 500, Washington, DC 20036 and Mario Bernard Williams & John M. Shoreman, NDH LLC, 44 Broad Street, NW, Suite 200, Atlanta GA 30303.

**Stewart Dearing**
New York Bar Number: 5108444
Assistant Attorney General
Office of the Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8320
Fax: (212) 416-6003
Email: Stewart.Dearing@ag.ny.gov

**ATTACHMENT 1**
**Electronic Document Production Specifications**

Unless otherwise specified and agreed to by the Plaintiffs, all responsive documents must be produced in LexisNexis® Concordance® format in accordance with the following instructions.  Any questions regarding electronic document production should be directed to Plaintiffs.

1.  <u>Concordance Production Components</u>.  A Concordance production consists of the following component files, which must be produced in accordance with the specifications set forth below in Section 7.

    A.  ***Metadata Load File.***  A delimited text file that lists in columnar format the required metadata for each produced document.

    B.  ***Extracted or OCR Text Files.***  Document-level extracted text for each produced document or document-level optical character recognition ("OCR") text where extracted text is not available.

    C.  ***Single-Page Image Files.***  Individual petrified page images of the produced documents in tagged image format ("TIF"), with page-level Bates number endorsements.

    D.  ***Opticon Load File.***  A delimited text file that lists the single-page TIF files for each produced document and defines (i) the relative location of the TIF files on the production media and (ii) each document break.

    E.  ***Native Files.***  Native format versions of non-printable or non–print friendly produced documents.

2.  <u>Production Folder Structure</u>.  The production must be organized according to the following standard folder structure:
- data\ (contains production load files)
- images\ (contains single-page TIF files, with subfolder organization) \0001, \0002, \0003...
- native_files\ (contains native files, with subfolder organization) \0001, \0002, \0003...
- text\ (contains text files, with subfolder organization) \0001, \0002, \0003...

3.  <u>De-Duplication</u>.  You must perform global de-duplication of stand-alone documents and email families.

4.  <u>Paper or Scanned Documents</u>.  Documents that exist only in paper format must be scanned to single-page TIF files and OCR'd.  The resulting electronic files should be pursued in Concordance format pursuant to these instructions.  You must contact Plaintiffs to discuss (i) any documents that cannot be scanned, and

i

(ii) how information for scanned documents should be represented in the metadata load file.

5.   <u>Structured Data</u>.  Before producing structured data, including but not limited to relational databases, transactional data, and xml pages, you must first speak to Plaintiffs.   Structured data is data that has a defined length and format and includes, but is not limited to, relational databases, graphical databases, JSON files, or xml/html pages.

    A.   Relational Databases

        1.   Database tables should be provided in CSV or other delimited machine-readable, non-proprietary format, with each table in a separate data file. The preferred delimiter is a vertical bar "|". If after speaking with Plaintiffs, it is determined that the data cannot be exported from a proprietary database, then the data can be produced in the proprietary format so long as the Plaintiffs are given sufficient access to that data.

        2.   Each database must have an accompanying Data Dictionary.

        3.   Dates and numbers must be clearly and consistently formatted and, where relevant, units of measure should be explained in the Data Dictionary.

        4.   Records must contain clear, unique identifiers, and the Data Dictionary must include explanations of how the files and records relate to one another.

        5.   Each data file must also have an accompanying summary file that provides total row counts for the entire dataset and total row counts.

    B.   Compression

        1.   If Documents are provided in a compressed archive, only standard lossless compression methods (e.g., gzip, bzip2, and ZIP) shall be used. Media files should be provided in their original file format, with metadata preserved and no additional lossy encoding applied.

6.   <u>Media and Encryption</u>.  All documents must be produced on CD, DVD, or hard-drive media.   After consultation with the Plaintiffs, Documents may also be produced over a secure file transfer protocol (FTP), a pre-approved cloud-based platform (e.g. Amazon Web Services S3 bucket), or the New York Attorney General's cloud platform OAGCloud. All production media must be protected with a strong, randomly-generated password containing at least 16 alphanumeric characters and encrypted using Advanced Encryption Standard with 256-bit key length (AES-256). Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately from the media.

7.   <u>Production File Requirements</u>.

   A.   ***Metadata Load File***
- Required file format:
  - ASCII or UTF-8
  - Windows formatted CR + LF end of line characters, including full CR + LF on last record in file.
  - .dat file extension
  - Field delimiter: (ASCII decimal character 20)
  - Text Qualifier: þ (ASCII decimal character 254). Date and pure numeric value fields do not require qualifiers.
  - Multiple value field delimiter: ; (ASCII decimal character 59)
- The first line of the metadata load file must list all included fields. All required fields are listed in Attachment 2.
- Fields with no values must be represented by empty columns maintaining delimiters and qualifiers.
- ***Note:*** All documents must have page-level Bates numbering (except documents produced only in native format, which must be assigned a document-level Bates number). The metadata load file must list the beginning and ending Bates numbers (BEGDOC and ENDDOC) for each document. For document families, including but not limited to emails and attachments, compound documents, and uncompressed file containers, the metadata load file must also list the Bates range of the entire document family (ATTACHRANGE), beginning with the first Bates number (BEGDOC) of the "parent" document and ending with the last Bates number (ENDDOC) assigned to the last "child" in the document family.
- Date and Time metadata must be provided in separate columns.
- Accepted date formats:
  - mm/dd/yyyy
  - yyyy/mm/dd
  - yyyymmdd
- Accepted time formats:
  - hh:mm:ss (if not in 24-hour format, you must indicate am/pm)
  - hh:mm:ss:mmm

   B.   ***Extracted or OCR Text Files***
- You must produce individual document-level text files containing the full extracted text for each produced document.
- When extracted text is not available (for instance, for image-only documents) you must provide individual document-level text files containing the document's full OCR text.
- The filename for each text file must match the document's beginning Bates number (BEGDOC) listed in the metadata load file.

- Text files must be divided into subfolders containing no more than 500 to 1000 files.

C.  ***Single-Page Image Files (Petrified Page Images)***
- Where possible, all produced documents must be converted into single-page tagged image format ("TIF") files.  See Section 7.E below for instructions on producing native versions of documents you are unable to convert.
- Image documents that exist only in non-TIF formats must be converted into TIF files.  The original image format must be produced as a native file as described in Section 7.E below.
- For documents produced only in native format, you must provide a TIF placeholder that states "Document produced only in native format."
- Each single-page TIF file must be endorsed with a unique Bates number.
- The filename for each single-page TIF file must match the unique page-level Bates number (or document-level Bates number for documents produced only in native format).
- Required image file format:
  o CCITT Group 4 compression
  o 2-Bit black and white
  o 300 dpi
  o Either .tif or .tiff file extension.
- TIF files must be divided into subfolders containing no more than 500 to 1000 files.  Where possible documents should not span multiple subfolders.

D.  ***Opticon Load File***
- Required file format:
  o ASCII
  o Windows formatted CR + LF end of line characters
  o Field delimiter: , (ASCII decimal character 44)
  o No Text Qualifier
  o .opt file extension
- The comma-delimited Opticon load file must contain the following seven fields (as indicated below, values for certain fields may be left blank):
  o ALIAS or IMAGEKEY – the unique Bates number assigned to each page of the production.
  o VOLUME – this value is optional and may be left blank.
  o RELATIVE PATH – the filepath to each single-page image file on the production media.
  o DOCUMENT BREAK – defines the first page of a document. The only possible values for this field are "Y" or blank.
  o FOLDER BREAK – defines the first page of a folder.  The only possible values for this field are "Y" or blank.

- o  BOX BREAK – defines the first page of a box.  The only possible values for this field are "Y" or blank.
- o  PAGE COUNT – this value is optional and may be left blank.
- • ***Example*:**
  ABC00001,,IMAGES\0001\ABC00001.tif,Y,,,2
  ABC00002,,IMAGES\0001\ABC00002.tif,,,,
  ABC00003,,IMAGES\0002\ABC00003.tif,Y,,,1
  ABC00004,,IMAGES\0002\ABC00004.tif,Y,,,1

E.      ***Native Files***

- • Non-printable or non–print friendly documents (including but not limited to spreadsheets, audio files, video files and documents for which color has significance to document fidelity) must be produced in their native format.
- • The filename of each native file must match the document's beginning Bates number (BEGDOC) in the metadata load file and retain the original file extension.
- • For documents produced only in native format, you must assign a single document-level Bates number and provide an image file placeholder that states "Document produced only in native format."
- • The relative paths to all native files on the production media must be listed in the NATIVEFILE field of the metadata load file.
- • Native files that are password-protected must be decrypted prior to conversion and produced in decrypted form.  In cases where this cannot be achieved the document's password must be listed in the metadata load file.  The password should be placed in the COMMENTS field with the format Password: <PASSWORD>.
- • You may be required to supply a software license for proprietary documents produced only in native format.

**ATTACHMENT 2**
**Required Fields for Metadata Load File**

| FIELD NAME | FIELD DESCRIPTION | FIELD VALUE EXAMPLE[1] |
|---|---|---|
| DOCID | Unique document reference (can be used for de-duplication). | ABC0001 or ###.######.### |
| BEGDOC | Bates number assigned to the first page of the document. | ABC0001 |
| ENDDOC | Bates number assigned to the last page of the document. | ABC0002 |
| BEGATTACH | Bates number assigned to the first page of the parent document in a document family (*i.e.*, should be the same as BEGDOC of the parent document, or PARENTDOC). | ABC0001 |
| ENDATTACH | Bates number assigned to the last page of the last child document in a family (*i.e.*, should be the same as ENDDOC of the last child document). | ABC0008 |
| ATTACHRANGE | Bates range of entire document family. | ABC0001 - ABC0008 |
| PARENTDOC | BEGDOC of parent document. | ABC0001 |
| CHILDDOCS | List of BEGDOCs of all child documents, delimited by ";" when field has multiple values. | ABC0002; ABC0003; ABC0004... |
| DOCREQ | List of particular Requests for Documents to be Produced | 1; 2; 3 . . . |
| INTERROG | List of particular Interrogatories | 1; 2; 3 . . . |
| COMMENTS | Additional document comments, such as passwords for encrypted files. | |
| NATIVEFILE | Relative file path of the native file on the production media. | .\Native_File\Folder\... \BEGDOC.ext |

---

[1] Examples represent possible values and not required format unless the field format is specified in Attachment 1.

| SOURCE | For scanned paper records this should be a description of the physical location of the original paper record.  For loose electronic files this should be the name of the file server or workstation where the files were gathered. | Company Name, Department Name, Location, Box Number... |
|--------|------------------|----------------------|
| CUSTODIAN | Owner of the document or file. | Firstname Lastname, Lastname, Firstname, User Name; Company Name, Department Name... |
| FROM | Sender of the email. | Firstname Lastname < FLastname @domain > |
| TO | All to: members or recipients, delimited by ";" when field has multiple values. | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; ... |
| CC | All cc: members, delimited by ";" when field has multiple values. | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; ... |
| BCC | All bcc: members, delimited by ";" when field has multiple values | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; ... |
| SUBJECT | Subject line of the email. | |
| DATERCVD | Date that an email was received. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| TIMERCVD | Time that an email was received. | hh:mm:ss AM/PM or hh:mm:ss |
| DATESENT | Date that an email was sent. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| TIMESENT | Time that an email was sent. | hh:mm:ss AM/PM or hh:mm:ss |

| CALBEGDATE | Date that a meeting begins. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
|---|---|---|
| CALBEGTIME | Time that a meeting begins. | hh:mm:ss AM/PM or hh:mm:ss |
| CALENDDATE | Date that a meeting ends. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| CALENDTIME | Time that a meeting ends. | hh:mm:ss AM/PM or hh:mm:ss |
| CALENDARDUR | Duration of a meeting in hours. | 0.75, 1.5... |
| ATTACHMENTS | List of filenames of all attachments, delimited by ";" when field has multiple values. | AttachmentFileName.; AttachmentFileName.docx; AttachmentFileName.pdf;... |
| NUMATTACH | Number of attachments. | 1, 2, 3, 4.... |
| RECORDTYPE | General type of record. | IMAGE; LOOSE E-MAIL; E-MAIL; E-DOC; IMAGE ATTACHMENT; LOOSE E-MAIL ATTACHMENT; E-MAIL ATTACHMENT; E-DOC ATTACHMENT |
| FOLDERLOC | Original folder path of the produced document. | Drive:\Folder\...\...\ |
| FILENAME | Original filename of the produced document. | Filename.ext |
| DOCEXT | Original file extension. | html, xls, pdf |
| DOCTYPE | Name of the program that created the produced document. | Adobe Acrobat, Microsoft Word, Microsoft Excel,  Corel WordPerfect... |
| TITLE | Document title (if entered). | |
| AUTHOR | Name of the document author. | Firstname Lastname; Lastname, First Name; FLastname |
| REVISION | Number of revisions to a document. | 18 |

| DATECREATED | Date that a document was created. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
|---|---|---|
| TIMECREATED | Time that a document was created. | hh:mm:ss AM/PM or hh:mm:ss |
| DATEMOD | Date that a document was last modified. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| TIMEMOD | Time that a document was last modified. | hh:mm:ss AM/PM or hh:mm:ss |
| FILESIZE | Original file size in bytes. | 128, 512, 1024… |
| PGCOUNT | Number of pages per document. | 1, 2, 10, 100… |
| IMPORTANCE | Email priority level if set. | Low, Normal, High |
| TIFFSTATUS | Generated by the Law Pre-discovery production tool (leave blank if inapplicable). | Y, C, E, W, N, P |
| DUPSTATUS | Generated by the Law Pre-discovery production tool (leave blank if inapplicable). | P |
| MD5HASH | MD5 hash value computed from native file (a/k/a file fingerprint). | BC1C5CA6C1945179FEE144F25F51087B |
| SHA1HASH | SHA1 hash value | B68F4F57223CA7DA3584BAD7ECF111B8044F8631 |
| MSGINDEX | Email message ID | |

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU; COMMONWEALTH OF MASSACHUSETTS; THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York; and COMMONWEALTH OF VIRGINIA, *EX REL*. MARK R. HERRING, ATTORNEY GENERAL,<br><br>    Plaintiffs,<br><br>v.<br><br>NEXUS SERVICES, INC.; LIBRE BY NEXUS, INC.; MICHEAL DONOVAN; RICHARD MOORE; and EVAN AJIN,<br><br>    Defendants. | Case No.: 5:21-cv-00016 |

## PLAINTIFFS' FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION ADDRESSED TO RICHARD MOORE

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs

Consumer Financial Protection Bureau, Commonwealth of Massachusetts, the People of

the State of New York, by Letitia James, Attorney General of the State of New York, and

Commonwealth of Virginia, *ex rel*. Mark R. Herring, Attorney General (collectively,

"Plaintiffs") request that Defendant Richard Moore produce the following documents

for inspection and copying on or before July 9, 2021 to the attention of Joseph P.

Mueller and Stewart Dearing at the Office of the New York State Attorney General, PTG

Unit, 3 Airport Park Blvd., Latham, New York 12110 or via a secure File Transfer

Protocol (FTP) to be negotiated with Plaintiffs' counsel prior to delivery of the documents.

## **<u>Definitions</u>**

1.      "Action" refers to the above-captioned case, *CFPB* et al. *v. Nexus Services, Inc.* et al., Case No. 21-cv-16 (W.D. Va.).

2.      "Collection Agency" means any natural person or Entity who collects or attempts to collect, either directly or indirectly, payments or debts owed or due or asserted to be owed or due another.

3.      "Communication" means any transmittal of information of any kind, whether transmitted in writing, orally, electronically or by any other means, and including any Document that abstracts, digests, transcribes, records, or reflects the transmittal of information of any kind.

4.      The "Company" means Nexus Services, Inc. and/or Libre by Nexus, Inc.; any of their predecessors, successors, present or former parents, subsidiaries, or affiliates, whether direct or indirect, including all Nexus-Affiliated Entities; all directors, officers, partners, principals, owners, supervisors, contractors, vendors, consultants, employees, agents, representatives, and attorneys of the foregoing; and any other Persons associated with or acting on behalf of the foregoing, or acting on behalf of any predecessors, successors, or affiliates of the foregoing.

5.      "Complaint" is the complaint Plaintiffs filed in this Action, as well as any subsequent or amended versions that may be filed.

6.      "Concerning" means, directly or indirectly, in whole or in part, relating to, referring to, describing, evidencing or constituting.

7.      "Consumer" means any natural person, including natural persons who

2

were detained by immigration authorities and their guarantors, co-signers or sponsors.

8.      "Consumer Reporting Agency" means any natural person or Entity which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.

9.      "Debt Buyer" means any natural person or Entity that buys debts or the right to future payments from creditors and tries to collect them.

10.      "Document" is defined to be equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a) and includes any written matter of every type and description, including electronically stored information, and specifically including emails, voicemails, chat programs such as GroupMe and Slack, and instant messages such as SMS, WhatsApp, Telegram, and Signal, and social media direct and private messages, and including any non-identical copies (such as drafts or annotated copies).

11.      "Entity" means without limitation any corporation, company, limited liability company or corporation, partnership, limited partnership, association, trust, sole proprietorship or other firm or similar body or organization, or any unit, division, agency, department, or similar subdivision thereof.

12.      "Identify" means to provide: (a) for a natural person, the person's full name, title or position, present or last known address, the present or last known business affiliation or place of employment, e-mail address, and telephone number; (b) for Entities, the name, address, identities of officers, directors, managers, and members of the business or organization, and contact persons with e-mail addresses and

3

telephone numbers, where applicable; and (c) for Documents, the type of Document, general subject matter, date of the Document, and authors, addressees and recipients.

13.     "Individual Defendants" means Micheal Donovan, Richard Moore and Evan Ajin, or any of them, and all contractors, vendors, consultants, employees, agents, representatives, and attorneys of the foregoing, and all other Persons associated with or acting on behalf of the foregoing.

14.     "Libre" means Libre by Nexus, Inc.

15.     "Nexus-Affiliated Entities" means all of Libre By Nexus, Inc.'s or Nexus Services, Inc.'s predecessors, successors, present or former parents, subsidiaries, or affiliates, whether direct or indirect, including Homes by Nexus, Inc., Serve by Nexus, Inc., Nexus Properties, LLC, Nexus Commercial Ventures, LLC, Entertainment by Nexus, Inc., Secure by Nexus, Inc., Nexus Investigations & Security, Inc., Nexus Financial Services Corporation, Nexus Libre Inc., Nexus Monitoring LLC, Nexus Programs Inc., Nexus Caridades, Inc., Nexus Caridades Attorneys, Inc., Nexus Health Inc., Entlest Brands, Inc., and One Fish Two Fish, LLC.

16.     "Nexus Immigration Bond Service" means the immigration bond service described in the Complaint run by Libre by Nexus, Inc., Nexus Services, Inc., and the Individual Defendants, and includes all aspects of that service, including paying for or arranging Consumers' immigration bonds, providing transportation to Consumers, paying for Consumers' meals, providing and affixing GPS devices to Consumers, and "collateralizing" Consumers' bonds.

17.     "Nexus Immigration Legal Services" means any legal services advertised, promoted, marketed, promised, offered or provided by the Company or the Company's affiliates or agents to Consumers Concerning immigration law or immigration

4

proceedings in the United States.

18.     "Nexus Products and/or Services" means any product or service

advertised, promoted, marketed, promised, offered, or provided to Consumers by Libre

by Nexus, Inc. or Nexus Services, Inc., or advertised, promoted, marketed, promised,

offered, or provided to Consumers by any Nexus-Affiliated Entity in connection with the

Nexus Immigration Bond Service. "Nexus Products and/or Services" shall include but

not be limited to the Nexus Immigration Bond Service and the Nexus Immigration Legal

Services.

19.     "Nexus" means Nexus Services, Inc.

20.      "Person" means any natural person or any Entity.

21.     "You" or "Your" means Defendant Richard Moore.

22.     The use of the singular form of any word used herein shall include the

plural and vice versa. In construing these requests, the plural shall include the singular

and the singular shall include the plural; a masculine, feminine, or neuter term shall

include all other genders; the terms "or," "and," "and/or," "including," "each" and

"every" shall be construed inclusively rather than exclusively so as to bring more

Documents within the scope of the request; and the terms "all" and "any" shall be

interpreted inclusively so as to mean both "all" and "any" whenever either term is used.

The use of any tense of any verb includes all other tenses of the verb.

## **Instructions**

1.     In addition to the specific instructions set forth below, Plaintiffs' First

Request for the Production of Documents and Electronically Stored Information

Addressed to Richard Moore (the "First Moore Document Requests," the "Document

Requests," or the "Requests") incorporate the definitions and instructions set forth in Federal Rules of Civil Procedure 26 and 34.

2.     Unless otherwise specified, the time period covered by these Document Requests shall be from July 1, 2012 through the present.

3.     Each Document Request is to be fully and separately answered.

4.     In responding to these Requests, You are required to furnish all Documents that are within Your possession, custody and/or control, including Documents in the possession of Your attorneys, accountants, agents, affiliates, directors, officers, consultants, advisors, representatives, vendors, contractors, or Persons directly or indirectly employed by or connected with You or Your attorneys, and any other Person subject to Your control.

5.     All Documents that respond, in whole or in part, to any portion of the Requests below shall be produced in their entirety, including all metadata, attachments, enclosures, and embedded information or materials.

6.     In responding to each Document Request, You are required to produce all responsive Documents in all forms and languages in which they exist.

7.     If any Document responsive to the Requests was, but is no longer, within Your possession, custody, or control, You shall provide a list Identifying all such Documents, including the Document Request to which the Document is responsive, a statement of the author(s), recipient(s), date and contents of the Document, as well as the disposition (*i.e.*, destruction, transfer, *etc.*) of the Document and the date of and reason for such disposition.

8.     If any Document is withheld from production, either in whole or in part, on the basis of a claim of privilege, work product, or any other protection, please

provide, for each such Document, a description sufficiently detailed as set forth in Federal Rule of Civil Procedure 26(b)(5) to allow Plaintiffs to evaluate Your claim of privilege, work product, or protection. Such description shall include: the title and general subject matter of the Document, the date of the Document, the Identity of all Persons who participated in creating the Document, the Identity of each Person who signed the Document or in whose name the Document was issued, the Identity of each addressee and recipient of the Document, the number of pages which comprise the Document, a description of the nature and substance of the Document, its attachments, if any, its present custodian, and a description of the basis for each claimed privilege, work product, or protection. You shall provide privilege logs on a rolling basis with each production, *not* at the end of discovery.

9.      If a Document Request is ambiguous or unclear to You, You shall contact undersigned counsel as soon as possible so that the request can be clarified and any unnecessary delays in providing Your answer can be avoided.

10.     Responsive Documents shall be produced in native format as they are kept in the ordinary course of business and shall be organized and labeled to correspond with these Requests. Documents created or stored electronically MUST be produced in their original electronic format, not converted to another format such as printed hard-copy documents or PDFs.  If, with respect to any Document Request, there are no responsive Documents, You must so state in writing.

11.     Productions made in electronic format shall meet the specifications set out in Attachments 1 and 2.

12.     Each page of any Documents produced must be marked with a unique

"Bates" number.

13.     Your obligation to produce information and Documents is a continuing one, as prescribed in Federal Rule of Civil Procedure 26(e).

14.     If any Document Requests seek information or Documents that You have previously produced in response to a Civil Investigative Demand, Subpoena or other request for information or Documents from a Plaintiff, You must re-produce such information or Documents in accordance with these Requests and these Instructions, including Instruction Nos. 10, 11, and 12.

15.     You must clearly identify for each Document the Document Request number to which it is responsive.  Documents that may be responsive to more than one of these Requests need not be provided more than once. However, Your response must clearly indicate, for each Document provided, all of the Document Requests to which the Document is responsive.

### **Documents and Electronically Stored Information to be Produced**

1.     All Documents and Communications not produced by Nexus or Libre Concerning the following topics:

     a.   advertising, marketing, promoting, selling, or explaining the Nexus Immigration Bond Service or the Nexus Immigration Legal Services;

     b.   how the Nexus Immigration Bond Service works or what it provides to Consumers;

     c.   the Company paying Consumers' immigration bonds;

     d.   Consumers breaching immigration bonds;

     e.   Consumer non-compliance with the terms, requirements, or conditions of the Nexus Immigration Bond Service, including non-payment;

f.   the reason for or purpose of any Consumer payments to the Company Concerning the Nexus Immigration Bond Service;

g.   the Company offering or providing loans or offering or extending credit to Consumers Concerning the Nexus Immigration Bond Service;

h.   Consumers owing a debt because the Company paid an immigration bond or Consumers' payments going towards paying down an immigration bond or paying down a loan;

i.   arrest, criminal prosecution, detention, or deportation of Consumers or any other negative outcome in a Consumer's immigration case or negative impact on a Consumer's immigration status;

j.   the GPS devices used for the Nexus Immigration Bond Service, including how they functioned; instructions for Consumers about how to use them; injuries, harm, irritation, or any adverse reaction caused by GPS devices; requests by either Consumers or the Company to remove, exchange, or replace a GPS device; co-signers wearing GPS devices; and whether GPS devices are required by third parties (such as the courts or Immigration and Customs Enforcement);

k.   the collection or attempted collection of payments or debts purportedly owed by Consumers for the Nexus Immigration Bond Service, including through the sale or transfer of Consumer accounts or purported debts to a Debt Buyer, Collection Agency, or other third-party Entity for collection;

l.   harm to a Consumer's credit rating or reporting of any kind to a Consumer Reporting Agency;

9

m. the Company's affiliation or relationship with any third-party Entity Concerning the provision of the Nexus Immigration Bond Service, including Immigration and Customs Enforcement, the U.S. Department of Homeland Security, the courts, and bond agents;

n. the Nexus Immigration Legal Services;

o. processing, handling, reporting, or responding to Consumer disputes or complaints Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services;

p. tracking or recording payments from Consumers;

q. collateralizing a Consumer's immigration bond;

r. concluding Consumer relationships with Libre or Nexus, including the steps taken when an immigration judge renders a decision of any kind in a Consumer's case and the cancellation of an immigration bond;

s. quality assurance or quality control reviews, audits, or assessments undertaken by the Company or any Person Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, including "QA Reports" or any similar Communications; and

t. refunding Consumers.

2.     Documents sufficient to describe Your formal education and Your employment, including Your CVs, resumes or other Documents that describe Your employers, job titles, and responsibilities or duties, including for Nexus, Libre, and Nexus-Affiliated Entities.

3.     Documents sufficient to show the following:

10

    a.  every position, office, role, or title that You have held with Nexus, Libre, Nexus-Affiliated Entities, or with any Entity Concerning immigration bonds or immigration legal services;

    b.  the dates during which You held each such position, office, role, or title;

    c.  the responsibilities that You had in each such position, office, role or title; and

    d.  Your compensation for each such position, office, role or title.

4.    All Documents Concerning licenses You have sought or held from any local, state, federal or other governmental or regulatory authority.

5.    All contracts or agreements (whether written or oral) between You and any of the other Defendants Concerning the following:

    a.  Libre, Nexus, or Nexus-Affiliated Entities;

    b.  any Nexus Product and/or Service; or

    c.  any monies or assets related thereto.

6.    Documents sufficient to show payment, compensation, or any other transfers of property, assets, or monies, from any Defendant to You; the assumption, guarantee, or payment of any liability by any Defendant on Your behalf; or Your assumption, guarantee, or payment of any liability of any other Defendant.

7.    Documents sufficient to show insurance policies held by or covering You Concerning Nexus, Libre, any Nexus-Affiliated Entities, or this Action.

8.    Documents and Communications sufficient to show Your financial condition from January 1, 2016 to the present, including bank accounts which You own, have signing rights to, or are the beneficiary of; records reflecting income; and tax returns (if the information in tax returns is not available in other Documents).

9.      All Documents (including both transcripts and any related videos), in unredacted form, reflecting or containing testimony by You and not produced by Nexus or Libre Concerning Libre, Nexus, the Individual Defendants, or any Nexus Product and/or Service, including all exhibits and any videos or recordings of such testimony.

Dated: June 9, 2021

*Attorneys for the Consumer Financial Protection Bureau*

Cara M. Petersen
    *Acting Enforcement Director*
Jeffrey Paul Ehrlich
    *Deputy Enforcement Director*
Kara K. Miller
    *Assistant Litigation Deputy*

**Hai Binh T. Nguyen**
California Bar Number: 313503
Donald R. Gordon
District of Columbia Bar Number: 482384
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Telephone (Nguyen): (202) 435-7251
Telephone (Gordon): (212) 328-7011
Fax: (703) 642-4585
Email: haibinh.nguyen@cfpb.gov
Email: donald.gordon@cfpb.gov

*Attorneys for the Commonwealth of Virginia, ex rel.*
*Mark R. Herring, Attorney General*

Mark R. Herring
    *Attorney General*
Erin B. Ashwell
    *Chief Deputy Attorney General*
Samuel T. Towell
    *Deputy Attorney General*
Richard S. Schweiker, Jr.
    *Chief and Senior Assistant Attorney General*

**David B. Irvin**
Virginia Bar Number: 23927
Unit Manager and Senior Assistant Attorney General
Erin E. Witte
Virginia Bar Number: 81096
Stephen J. Sovinsky
Virginia Bar Number: 85637
Assistant Attorneys General
Office of the Attorney General
Consumer Protection Section
202 North Ninth Street
Richmond, VA 23219
Telephone (Irvin): (804) 786-4047
Telephone (Witte): (703) 359-6716
Telephone (Sovinsky): (804) 823-6341
Fax: (804) 786-0122
Email: dirvin@oag.state.va.us
Email: ewitte@oag.state.va.us
Email: ssovinsky@oag.state.va.us


*Attorneys for the Commonwealth of Massachusetts*

Maura Healy
     *Attorney General*

**Jon Burke**
Massachusetts Bar Number: 673472
Assistant Attorney General
Office of the Attorney General
10 Mechanic Street
Worcester, MA 01608
Telephone: (774) 214-4416
Email: Jonathan.burke@mass.gov

*Attorneys for the People of the State of New York*

LETITIA JAMES
     *Attorney General*
Jane Azia (New York Bar Number: 1539600)
     *Bureau Chief for the Bureau of Consumer Frauds and
     Protection*
Laura Levine (New York Bar Number: 2337368)
     *Deputy Bureau Chief for the Bureau of Consumer
     Frauds and Protection*

**Stewart Dearing**

New York Bar Number: 5108444
Joseph P. Mueller
New York Bar Number: 5079389
Assistant Attorneys General
Office of the Attorney General
28 Liberty Street
New York, NY 10005
Telephone (Mueller): (212) 416-8321
Telephone (Dearing): (212) 416-8320
Fax: (212) 416-6003
Email: Joseph.Mueller@ag.ny.gov
Email: Stewart.Dearing@ag.ny.gov

14

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 9, 2021, I served the foregoing Plaintiffs' First Request for the Production of Documents and Electronically Stored Information Addressed to Richard Moore on Defendants electronically by email to all attorneys of record and caused it to be mailed to counsel for the Defendants via First Class Mail at the following addresses:  John M. Shoreman, McFadden & Shoreman, 1050 Connecticut Avenue, NW, Suite 500, Washington, DC 20036 and Mario Bernard Williams & John M. Shoreman, NDH LLC, 44 Broad Street, NW, Suite 200, Atlanta GA 30303.

**Stewart Dearing**
New York Bar Number: 5108444
Assistant Attorney General
Office of the Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8320
Fax: (212) 416-6003
Email: Stewart.Dearing@ag.ny.gov

**ATTACHMENT 1**
**Electronic Document Production Specifications**

Unless otherwise specified and agreed to by the Plaintiffs, all responsive documents must be produced in LexisNexis® Concordance® format in accordance with the following instructions. Any questions regarding electronic document production should be directed to Plaintiffs.

1. <u>Concordance Production Components</u>. A Concordance production consists of the following component files, which must be produced in accordance with the specifications set forth below in Section 7.

   A. ***Metadata Load File.*** A delimited text file that lists in columnar format the required metadata for each produced document.

   B. ***Extracted or OCR Text Files.*** Document-level extracted text for each produced document or document-level optical character recognition ("OCR") text where extracted text is not available.

   C. ***Single-Page Image Files.*** Individual petrified page images of the produced documents in tagged image format ("TIF"), with page-level Bates number endorsements.

   D. ***Opticon Load File.*** A delimited text file that lists the single-page TIF files for each produced document and defines (i) the relative location of the TIF files on the production media and (ii) each document break.

   E. ***Native Files.*** Native format versions of non-printable or non–print friendly produced documents.

2. <u>Production Folder Structure</u>. The production must be organized according to the following standard folder structure:
   - data\ (contains production load files)
   - images\ (contains single-page TIF files, with subfolder organization) \0001, \0002, \0003…
   - native_files\ (contains native files, with subfolder organization) \0001, \0002, \0003…
   - text\ (contains text files, with subfolder organization) \0001, \0002, \0003…

3. <u>De-Duplication</u>. You must perform global de-duplication of stand-alone documents and email families.

4. <u>Paper or Scanned Documents</u>. Documents that exist only in paper format must be scanned to single-page TIF files and OCR'd. The resulting electronic files should be pursued in Concordance format pursuant to these instructions. You must contact Plaintiffs to discuss (i) any documents that cannot be scanned, and

i

(ii) how information for scanned documents should be represented in the metadata load file.

5.  <u>Structured Data</u>.  Before producing structured data, including but not limited to relational databases, transactional data, and xml pages, you must first speak to Plaintiffs.   Structured data is data that has a defined length and format and includes, but is not limited to, relational databases, graphical databases, JSON files, or xml/html pages.

    A.  Relational Databases

        1.  Database tables should be provided in CSV or other delimited machine-readable, non-proprietary format, with each table in a separate data file. The preferred delimiter is a vertical bar "|". If after speaking with Plaintiffs, it is determined that the data cannot be exported from a proprietary database, then the data can be produced in the proprietary format so long as the Plaintiffs are given sufficient access to that data.

        2.  Each database must have an accompanying Data Dictionary.

        3.  Dates and numbers must be clearly and consistently formatted and, where relevant, units of measure should be explained in the Data Dictionary.

        4.  Records must contain clear, unique identifiers, and the Data Dictionary must include explanations of how the files and records relate to one another.

        5.  Each data file must also have an accompanying summary file that provides total row counts for the entire dataset and total row counts.

    B.  Compression

        1.  If Documents are provided in a compressed archive, only standard lossless compression methods (e.g., gzip, bzip2, and ZIP) shall be used. Media files should be provided in their original file format, with metadata preserved and no additional lossy encoding applied.

6.  <u>Media and Encryption</u>.  All documents must be produced on CD, DVD, or hard-drive media.   After consultation with the Plaintiffs, Documents may also be produced over a secure file transfer protocol (FTP), a pre-approved cloud-based platform (e.g. Amazon Web Services S3 bucket), or the New York Attorney General's cloud platform OAGCloud. All production media must be protected with a strong, randomly-generated password containing at least 16 alphanumeric characters and encrypted using Advanced Encryption Standard with 256-bit key length (AES-256). Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately from the media.

7.  <u>Production File Requirements</u>.

    A.  ***Metadata Load File***
- Required file format:
  - ASCII or UTF-8
  - Windows formatted CR + LF end of line characters, including full CR + LF on last record in file.
  - .dat file extension
  - Field delimiter: (ASCII decimal character 20)
  - Text Qualifier: þ (ASCII decimal character 254).  Date and pure numeric value fields do not require qualifiers.
  - Multiple value field delimiter: ; (ASCII decimal character 59)
- The first line of the metadata load file must list all included fields.  All required fields are listed in Attachment 2.
- Fields with no values must be represented by empty columns maintaining delimiters and qualifiers.
- ***Note:*** All documents must have page-level Bates numbering (except documents produced only in native format, which must be assigned a document-level Bates number).  The metadata load file must list the beginning and ending Bates numbers (BEGDOC and ENDDOC) for each document.  For document families, including but not limited to emails and attachments, compound documents, and uncompressed file containers, the metadata load file must also list the Bates range of the entire document family (ATTACHRANGE), beginning with the first Bates number (BEGDOC) of the "parent" document and ending with the last Bates number (ENDDOC) assigned to the last "child" in the document family.
- Date and Time metadata must be provided in separate columns.
- Accepted date formats:
  - mm/dd/yyyy
  - yyyy/mm/dd
  - yyyymmdd
- Accepted time formats:
  - hh:mm:ss (if not in 24-hour format, you must indicate am/pm)
  - hh:mm:ss:mmm

    B.  ***Extracted or OCR Text Files***
- You must produce individual document-level text files containing the full extracted text for each produced document.
- When extracted text is not available (for instance, for image-only documents) you must provide individual document-level text files containing the document's full OCR text.
- The filename for each text file must match the document's beginning Bates number (BEGDOC) listed in the metadata load file.

- Text files must be divided into subfolders containing no more than 500 to 1000 files.

C.  ***Single-Page Image Files (Petrified Page Images)***

- Where possible, all produced documents must be converted into single-page tagged image format ("TIF") files.  See Section 7.E below for instructions on producing native versions of documents you are unable to convert.
- Image documents that exist only in non-TIF formats must be converted into TIF files.  The original image format must be produced as a native file as described in Section 7.E below.
- For documents produced only in native format, you must provide a TIF placeholder that states "Document produced only in native format."
- Each single-page TIF file must be endorsed with a unique Bates number.
- The filename for each single-page TIF file must match the unique page-level Bates number (or document-level Bates number for documents produced only in native format).
- Required image file format:
  - CCITT Group 4 compression
  - 2-Bit black and white
  - 300 dpi
  - Either .tif or .tiff file extension.
- TIF files must be divided into subfolders containing no more than 500 to 1000 files.  Where possible documents should not span multiple subfolders.

D.  ***Opticon Load File***

- Required file format:
  - ASCII
  - Windows formatted CR + LF end of line characters
  - Field delimiter: , (ASCII decimal character 44)
  - No Text Qualifier
  - .opt file extension
- The comma-delimited Opticon load file must contain the following seven fields (as indicated below, values for certain fields may be left blank):
  - ALIAS or IMAGEKEY – the unique Bates number assigned to each page of the production.
  - VOLUME – this value is optional and may be left blank.
  - RELATIVE PATH – the filepath to each single-page image file on the production media.
  - DOCUMENT BREAK – defines the first page of a document. The only possible values for this field are "Y" or blank.
  - FOLDER BREAK – defines the first page of a folder.  The only possible values for this field are "Y" or blank.

iv

- o BOX BREAK – defines the first page of a box.  The only possible values for this field are "Y" or blank.
- o PAGE COUNT – this value is optional and may be left blank.

- ***Example*:**
  ABC00001,,IMAGES\0001\ABC00001.tif,Y,,,2
  ABC00002,,IMAGES\0001\ABC00002.tif,,,,
  ABC00003,,IMAGES\0002\ABC00003.tif,Y,,,1
  ABC00004,,IMAGES\0002\ABC00004.tif,Y,,,1

E.    ***Native Files***

- Non-printable or non–print friendly documents (including but not limited to spreadsheets, audio files, video files and documents for which color has significance to document fidelity) must be produced in their native format.
- The filename of each native file must match the document's beginning Bates number (BEGDOC) in the metadata load file and retain the original file extension.
- For documents produced only in native format, you must assign a single document-level Bates number and provide an image file placeholder that states "Document produced only in native format."
- The relative paths to all native files on the production media must be listed in the NATIVEFILE field of the metadata load file.
- Native files that are password-protected must be decrypted prior to conversion and produced in decrypted form.  In cases where this cannot be achieved the document's password must be listed in the metadata load file.  The password should be placed in the COMMENTS field with the format Password: <PASSWORD>.
- You may be required to supply a software license for proprietary documents produced only in native format.

**ATTACHMENT 2**
**Required Fields for Metadata Load File**

| FIELD NAME | FIELD DESCRIPTION | FIELD VALUE EXAMPLE[1] |
|---|---|---|
| DOCID | Unique document reference (can be used for de-duplication). | ABC0001 or ###.######.### |
| BEGDOC | Bates number assigned to the first page of the document. | ABC0001 |
| ENDDOC | Bates number assigned to the last page of the document. | ABC0002 |
| BEGATTACH | Bates number assigned to the first page of the parent document in a document family (*i.e.*, should be the same as BEGDOC of the parent document, or PARENTDOC). | ABC0001 |
| ENDATTACH | Bates number assigned to the last page of the last child document in a family (*i.e.*, should be the same as ENDDOC of the last child document). | ABC0008 |
| ATTACHRANGE | Bates range of entire document family. | ABC0001 - ABC0008 |
| PARENTDOC | BEGDOC of parent document. | ABC0001 |
| CHILDDOCS | List of BEGDOCs of all child documents, delimited by ";" when field has multiple values. | ABC0002; ABC0003; ABC0004... |
| DOCREQ | List of particular Requests for Documents to be Produced | 1; 2; 3 . . . |
| INTERROG | List of particular Interrogatories | 1; 2; 3 . . . |
| COMMENTS | Additional document comments, such as passwords for encrypted files. | |
| NATIVEFILE | Relative file path of the native file on the production media. | .\Native_File\Folder\...\BEGDOC.ext |

---

[1] Examples represent possible values and not required format unless the field format is specified in Attachment 1.

| SOURCE | For scanned paper records this should be a description of the physical location of the original paper record. For loose electronic files this should be the name of the file server or workstation where the files were gathered. | Company Name, Department Name, Location, Box Number... |
|---|---|---|
| CUSTODIAN | Owner of the document or file. | Firstname Lastname, Lastname, Firstname, User Name; Company Name, Department Name... |
| FROM | Sender of the email. | Firstname Lastname < FLastname @domain > |
| TO | All to: members or recipients, delimited by ";" when field has multiple values. | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; ... |
| CC | All cc: members, delimited by ";" when field has multiple values. | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; ... |
| BCC | All bcc: members, delimited by ";" when field has multiple values | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; ... |
| SUBJECT | Subject line of the email. | |
| DATERCVD | Date that an email was received. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| TIMERCVD | Time that an email was received. | hh:mm:ss AM/PM or hh:mm:ss |
| DATESENT | Date that an email was sent. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| TIMESENT | Time that an email was sent. | hh:mm:ss AM/PM or hh:mm:ss |

| CALBEGDATE | Date that a meeting begins. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
|---|---|---|
| CALBEGTIME | Time that a meeting begins. | hh:mm:ss AM/PM or hh:mm:ss |
| CALENDDATE | Date that a meeting ends. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| CALENDTIME | Time that a meeting ends. | hh:mm:ss AM/PM or hh:mm:ss |
| CALENDARDUR | Duration of a meeting in hours. | 0.75, 1.5... |
| ATTACHMENTS | List of filenames of all attachments, delimited by ";" when field has multiple values. | AttachmentFileName.; AttachmentFileName.docx; AttachmentFileName.pdf;... |
| NUMATTACH | Number of attachments. | 1, 2, 3, 4.... |
| RECORDTYPE | General type of record. | IMAGE; LOOSE E-MAIL; E-MAIL; E-DOC; IMAGE ATTACHMENT; LOOSE E-MAIL ATTACHMENT; E-MAIL ATTACHMENT; E-DOC ATTACHMENT |
| FOLDERLOC | Original folder path of the produced document. | Drive:\Folder\...\...\ |
| FILENAME | Original filename of the produced document. | Filename.ext |
| DOCEXT | Original file extension. | html, xls, pdf |
| DOCTYPE | Name of the program that created the produced document. | Adobe Acrobat, Microsoft Word, Microsoft Excel, Corel WordPerfect... |
| TITLE | Document title (if entered). | |
| AUTHOR | Name of the document author. | Firstname Lastname; Lastname, First Name; FLastname |
| REVISION | Number of revisions to a document. | 18 |

| DATECREATED | Date that a document was created. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
|---|---|---|
| TIMECREATED | Time that a document was created. | hh:mm:ss AM/PM or hh:mm:ss |
| DATEMOD | Date that a document was last modified. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| TIMEMOD | Time that a document was last modified. | hh:mm:ss AM/PM or hh:mm:ss |
| FILESIZE | Original file size in bytes. | 128, 512, 1024... |
| PGCOUNT | Number of pages per document. | 1, 2, 10, 100... |
| IMPORTANCE | Email priority level if set. | Low, Normal, High |
| TIFFSTATUS | Generated by the Law Pre-discovery production tool (leave blank if inapplicable). | Y, C, E, W, N, P |
| DUPSTATUS | Generated by the Law Pre-discovery production tool (leave blank if inapplicable). | P |
| MD5HASH | MD5 hash value computed from native file (a/k/a file fingerprint). | BC1C5CA6C1945179FE E144F25F51087B |
| SHA1HASH | SHA1 hash value | B68F4F57223CA7DA35 84BAD7ECF111B8044F 8631 |
| MSGINDEX | Email message ID | |

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

CONSUMER FINANCIAL PROTECTION
BUREAU; COMMONWEALTH OF
MASSACHUSETTS; THE PEOPLE OF
THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of
the State of New York; and
COMMONWEALTH OF VIRGINIA, *EX
REL*. MARK R. HERRING, ATTORNEY
GENERAL,

    Plaintiffs,

v.

NEXUS SERVICES, INC.; LIBRE BY
NEXUS, INC.; MICHEAL DONOVAN;
RICHARD MOORE; and EVAN AJIN,

    Defendants.

Case No.: 5:21-cv-00016

## PLAINTIFFS' FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION ADDRESSED TO EVAN AJIN

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs

Consumer Financial Protection Bureau, Commonwealth of Massachusetts, the People of

the State of New York, by Letitia James, Attorney General of the State of New York, and

Commonwealth of Virginia, *ex rel*. Mark R. Herring, Attorney General (collectively,

"Plaintiffs") request that Defendant Evan Ajin produce the following documents for

inspection and copying on or before July 9, 2021 to the attention of Joseph P. Mueller

and Stewart Dearing at the Office of the New York State Attorney General, PTG Unit, 3

Airport Park Blvd., Latham, New York 12110 or via a secure File Transfer Protocol (FTP) to be negotiated with Plaintiffs' counsel prior to delivery of the documents.

## **Definitions**

1.      "Action" refers to the above-captioned case, *CFPB* et al. *v. Nexus Services, Inc.* et al., Case No. 21-cv-16 (W.D. Va.).

2.      "Collection Agency" means any natural person or Entity who collects or attempts to collect, either directly or indirectly, payments or debts owed or due or asserted to be owed or due another.

3.      "Communication" means any transmittal of information of any kind, whether transmitted in writing, orally, electronically or by any other means, and including any Document that abstracts, digests, transcribes, records, or reflects the transmittal of information of any kind.

4.      The "Company" means Nexus Services, Inc. and/or Libre by Nexus, Inc.; any of their predecessors, successors, present or former parents, subsidiaries, or affiliates, whether direct or indirect, including all Nexus-Affiliated Entities; all directors, officers, partners, principals, owners, supervisors, contractors, vendors, consultants, employees, agents, representatives, and attorneys of the foregoing; and any other Persons associated with or acting on behalf of the foregoing, or acting on behalf of any predecessors, successors, or affiliates of the foregoing.

5.      "Complaint" is the complaint Plaintiffs filed in this Action, as well as any subsequent or amended versions that may be filed.

6.      "Concerning" means, directly or indirectly, in whole or in part, relating to, referring to, describing, evidencing or constituting.

7.      "Consumer" means any natural person, including natural persons who

were detained by immigration authorities and their guarantors, co-signers or sponsors.

8.      "Consumer Reporting Agency" means any natural person or Entity which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.

9.      "Debt Buyer" means any natural person or Entity that buys debts or the right to future payments from creditors and tries to collect them.

10.     "Document" is defined to be equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a) and includes any written matter of every type and description, including electronically stored information, and specifically including emails, voicemails, chat programs such as GroupMe and Slack, and instant messages such as SMS, WhatsApp, Telegram, and Signal, and social media direct and private messages, and including any non-identical copies (such as drafts or annotated copies).

11.     "Entity" means without limitation any corporation, company, limited liability company or corporation, partnership, limited partnership, association, trust, sole proprietorship or other firm or similar body or organization, or any unit, division, agency, department, or similar subdivision thereof.

12.     "Identify" means to provide: (a) for a natural person, the person's full name, title or position, present or last known address, the present or last known business affiliation or place of employment, e-mail address, and telephone number; (b) for Entities, the name, address, identities of officers, directors, managers, and members of the business or organization, and contact persons with e-mail addresses and

3

telephone numbers, where applicable; and (c) for Documents, the type of Document, general subject matter, date of the Document, and authors, addressees and recipients.

13.     "Individual Defendants" means Micheal Donovan, Richard Moore and Evan Ajin, or any of them, and all contractors, vendors, consultants, employees, agents, representatives, and attorneys of the foregoing, and all other Persons associated with or acting on behalf of the foregoing.

14.     "Libre" means Libre by Nexus, Inc.

15.     "Nexus-Affiliated Entities" means all of Libre By Nexus, Inc.'s or Nexus Services, Inc.'s predecessors, successors, present or former parents, subsidiaries, or affiliates, whether direct or indirect, including Homes by Nexus, Inc., Serve by Nexus, Inc., Nexus Properties, LLC, Nexus Commercial Ventures, LLC, Entertainment by Nexus, Inc., Secure by Nexus, Inc., Nexus Investigations & Security, Inc., Nexus Financial Services Corporation, Nexus Libre Inc., Nexus Monitoring LLC, Nexus Programs Inc., Nexus Caridades, Inc., Nexus Caridades Attorneys, Inc., Nexus Health Inc., Entlest Brands, Inc., and One Fish Two Fish, LLC.

16.      "Nexus Immigration Bond Service" means the immigration bond service described in the Complaint run by Libre by Nexus, Inc., Nexus Services, Inc., and the Individual Defendants, and includes all aspects of that service, including paying for or arranging Consumers' immigration bonds, providing transportation to Consumers, paying for Consumers' meals, providing and affixing GPS devices to Consumers, and "collateralizing" Consumers' bonds.

17.     "Nexus Immigration Legal Services" means any legal services advertised, promoted, marketed, promised, offered or provided by the Company or the Company's affiliates or agents to Consumers Concerning immigration law or immigration

proceedings in the United States.

18.     "Nexus Products and/or Services" means any product or service advertised, promoted, marketed, promised, offered, or provided to Consumers by Libre by Nexus, Inc. or Nexus Services, Inc., or advertised, promoted, marketed, promised, offered, or provided to Consumers by any Nexus-Affiliated Entity in connection with the Nexus Immigration Bond Service. "Nexus Products and/or Services" shall include but not be limited to the Nexus Immigration Bond Service and the Nexus Immigration Legal Services.

19.     "Nexus" means Nexus Services, Inc.

20.      "Person" means any natural person or any Entity.

21.     "You" or "Your" means Defendant Evan Ajin.

22.     The use of the singular form of any word used herein shall include the plural and vice versa. In construing these requests, the plural shall include the singular and the singular shall include the plural; a masculine, feminine, or neuter term shall include all other genders; the terms "or," "and," "and/or," "including," "each" and "every" shall be construed inclusively rather than exclusively so as to bring more Documents within the scope of the request; and the terms "all" and "any" shall be interpreted inclusively so as to mean both "all" and "any" whenever either term is used. The use of any tense of any verb includes all other tenses of the verb.

## **Instructions**

1.     In addition to the specific instructions set forth below, Plaintiffs' First Request for the Production of Documents and Electronically Stored Information Addressed to Evan Ajin (the "First Ajin Document Requests," the "Document Requests,"

or the "Requests") incorporate the definitions and instructions set forth in Federal Rules of Civil Procedure 26 and 34.

2.      Unless otherwise specified, the time period covered by these Document Requests shall be from July 1, 2012 through the present.

3.      Each Document Request is to be fully and separately answered.

4.      In responding to these Requests, You are required to furnish all Documents that are within Your possession, custody and/or control, including Documents in the possession of Your attorneys, accountants, agents, affiliates, directors, officers, consultants, advisors, representatives, vendors, contractors, or Persons directly or indirectly employed by or connected with You or Your attorneys, and any other Person subject to Your control.

5.      All Documents that respond, in whole or in part, to any portion of the Requests below shall be produced in their entirety, including all metadata, attachments, enclosures, and embedded information or materials.

6.      In responding to each Document Request, You are required to produce all responsive Documents in all forms and languages in which they exist.

7.      If any Document responsive to the Requests was, but is no longer, within Your possession, custody, or control, You shall provide a list Identifying all such Documents, including the Document Request to which the Document is responsive, a statement of the author(s), recipient(s), date and contents of the Document, as well as the disposition (*i.e.*, destruction, transfer, *etc.*) of the Document and the date of and reason for such disposition.

8.      If any Document is withheld from production, either in whole or in part, on the basis of a claim of privilege, work product, or any other protection, please

6

provide, for each such Document, a description sufficiently detailed as set forth in Federal Rule of Civil Procedure 26(b)(5) to allow Plaintiffs to evaluate Your claim of privilege, work product, or protection. Such description shall include: the title and general subject matter of the Document, the date of the Document, the Identity of all Persons who participated in creating the Document, the Identity of each Person who signed the Document or in whose name the Document was issued, the Identity of each addressee and recipient of the Document, the number of pages which comprise the Document, a description of the nature and substance of the Document, its attachments, if any, its present custodian, and a description of the basis for each claimed privilege, work product, or protection. You shall provide privilege logs on a rolling basis with each production, *not* at the end of discovery.

9.      If a Document Request is ambiguous or unclear to You, You shall contact undersigned counsel as soon as possible so that the request can be clarified and any unnecessary delays in providing Your answer can be avoided.

10.      Responsive Documents shall be produced in native format as they are kept in the ordinary course of business and shall be organized and labeled to correspond with these Requests. Documents created or stored electronically MUST be produced in their original electronic format, not converted to another format such as printed hard-copy documents or PDFs.  If, with respect to any Document Request, there are no responsive Documents, You must so state in writing.

11.      Productions made in electronic format shall meet the specifications set out in Attachments 1 and 2.

12.      Each page of any Documents produced must be marked with a unique

"Bates" number.

13.    Your obligation to produce information and Documents is a continuing one, as prescribed in Federal Rule of Civil Procedure 26(e).

14.    If any Document Requests seek information or Documents that You have previously produced in response to a Civil Investigative Demand, Subpoena or other request for information or Documents from a Plaintiff, You must re-produce such information or Documents in accordance with these Requests and these Instructions, including Instruction Nos. 10, 11, and 12.

15.    You must clearly identify for each Document the Document Request number to which it is responsive.  Documents that may be responsive to more than one of these Requests need not be provided more than once. However, Your response must clearly indicate, for each Document provided, all of the Document Requests to which the Document is responsive.

**<u>Documents and Electronically Stored Information to be Produced</u>**

1.    All Documents and Communications not produced by Nexus or Libre Concerning the following topics:

      a.    advertising, marketing, promoting, selling, or explaining the Nexus Immigration Bond Service or the Nexus Immigration Legal Services;

      b.    how the Nexus Immigration Bond Service works or what it provides to Consumers;

      c.    the Company paying Consumers' immigration bonds;

      d.    Consumers breaching immigration bonds;

      e.    Consumer non-compliance with the terms, requirements, or conditions of the Nexus Immigration Bond Service, including non-payment;

f.   the reason for or purpose of any Consumer payments to the Company Concerning the Nexus Immigration Bond Service;

g.   the Company offering or providing loans or offering or extending credit to Consumers Concerning the Nexus Immigration Bond Service;

h.   Consumers owing a debt because the Company paid an immigration bond or Consumers' payments going towards paying down an immigration bond or paying down a loan;

i.   arrest, criminal prosecution, detention, or deportation of Consumers or any other negative outcome in a Consumer's immigration case or negative impact on a Consumer's immigration status;

j.   the GPS devices used for the Nexus Immigration Bond Service, including how they functioned; instructions for Consumers about how to use them; injuries, harm, irritation, or any adverse reaction caused by GPS devices; requests by either Consumers or the Company to remove, exchange, or replace a GPS device; co-signers wearing GPS devices; and whether GPS devices are required by third parties (such as the courts or Immigration and Customs Enforcement);

k.   the collection or attempted collection of payments or debts purportedly owed by Consumers for the Nexus Immigration Bond Service, including through the sale or transfer of Consumer accounts or purported debts to a Debt Buyer, Collection Agency, or other third-party Entity for collection;

l.   harm to a Consumer's credit rating or reporting of any kind to a Consumer Reporting Agency;

9

m. the Company's affiliation or relationship with any third-party Entity Concerning the provision of the Nexus Immigration Bond Service, including Immigration and Customs Enforcement, the U.S. Department of Homeland Security, the courts, and bond agents;

n. the Nexus Immigration Legal Services;

o. processing, handling, reporting, or responding to Consumer disputes or complaints Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services;

p. tracking or recording payments from Consumers;

q. collateralizing a Consumer's immigration bond;

r. concluding Consumer relationships with Libre or Nexus, including the steps taken when an immigration judge renders a decision of any kind in a Consumer's case and the cancellation of an immigration bond;

s. quality assurance or quality control reviews, audits, or assessments undertaken by the Company or any Person Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, including "QA Reports" or any similar Communications; and

t. refunding Consumers.

2.    Documents sufficient to describe Your formal education and Your employment, including Your CVs, resumes or other Documents that describe Your employers, job titles, and responsibilities or duties, including for Nexus, Libre, and Nexus-Affiliated Entities.

3.    Documents sufficient to show the following:

10

   a.  every position, office, role, or title that You have held with Nexus, Libre, Nexus-Affiliated Entities, or with any Entity Concerning immigration bonds or immigration legal services;

   b.  the dates during which You held each such position, office, role, or title;

   c.  the responsibilities that You had in each such position, office, role or title; and

   d.  Your compensation for each such position, office, role or title.

4.     All Documents Concerning licenses You have sought or held from any local, state, federal or other governmental or regulatory authority.

5.     All contracts or agreements (whether written or oral) between You and any of the other Defendants Concerning the following:

   a.  Libre, Nexus, or Nexus-Affiliated Entities;

   b.  any Nexus Product and/or Service; or

   c.  any monies or assets related thereto.

6.     Documents sufficient to show payment, compensation, or any other transfers of property, assets, or monies, from any Defendant to You; the assumption, guarantee, or payment of any liability by any Defendant on Your behalf; or Your assumption, guarantee, or payment of any liability of any other Defendant.

7.     Documents sufficient to show insurance policies held by or covering You Concerning Nexus, Libre, any Nexus-Affiliated Entities, or this Action.

8.     Documents and Communications sufficient to show Your financial condition from January 1, 2016 to the present, including bank accounts which You own, have signing rights to, or are the beneficiary of; records reflecting income; and tax returns (if the information in tax returns is not available in other Documents).

11

9.      All Documents (including both transcripts and any related videos), in unredacted form, reflecting or containing testimony by You and not produced by Nexus or Libre Concerning Libre, Nexus, the Individual Defendants, or any Nexus Product and/or Service, including all exhibits and any videos or recordings of such testimony.

Dated: June 9, 2021

*Attorneys for the Consumer Financial Protection Bureau*

Cara M. Petersen
        *Acting Enforcement Director*
Jeffrey Paul Ehrlich
        *Deputy Enforcement Director*
Kara K. Miller
        *Assistant Litigation Deputy*

**Hai Binh T. Nguyen**
California Bar Number: 313503
Donald R. Gordon
District of Columbia Bar Number: 482384
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Telephone (Nguyen): (202) 435-7251
Telephone (Gordon): (212) 328-7011
Fax: (703) 642-4585
Email: haibinh.nguyen@cfpb.gov
Email: donald.gordon@cfpb.gov

*Attorneys for the Commonwealth of Virginia, ex rel.*
*Mark R. Herring, Attorney General*

Mark R. Herring
        *Attorney General*
Erin B. Ashwell
        *Chief Deputy Attorney General*
Samuel T. Towell
        *Deputy Attorney General*
Richard S. Schweiker, Jr.
        *Chief and Senior Assistant Attorney General*

**David B. Irvin**
Virginia Bar Number: 23927
Unit Manager and Senior Assistant Attorney General
Erin E. Witte
Virginia Bar Number: 81096
Stephen J. Sovinsky
Virginia Bar Number: 85637
Assistant Attorneys General
Office of the Attorney General
Consumer Protection Section
202 North Ninth Street
Richmond, VA 23219
Telephone (Irvin): (804) 786-4047
Telephone (Witte): (703) 359-6716
Telephone (Sovinsky): (804) 823-6341
Fax: (804) 786-0122
Email: dirvin@oag.state.va.us
Email: ewitte@oag.state.va.us
Email: ssovinsky@oag.state.va.us


*Attorneys for the Commonwealth of Massachusetts*

Maura Healy
    *Attorney General*

**Jon Burke**
Massachusetts Bar Number: 673472
Assistant Attorney General
Office of the Attorney General
10 Mechanic Street
Worcester, MA 01608
Telephone: (774) 214-4416
Email: Jonathan.burke@mass.gov

*Attorneys for the People of the State of New York*

LETITIA JAMES
    *Attorney General*
Jane Azia (New York Bar Number: 1539600)
    *Bureau Chief for the Bureau of Consumer Frauds and
    Protection*
Laura Levine (New York Bar Number: 2337368)
    *Deputy Bureau Chief for the Bureau of Consumer
    Frauds and Protection*

**Stewart Dearing**

13

New York Bar Number: 5108444
Joseph P. Mueller
New York Bar Number: 5079389
Assistant Attorneys General
Office of the Attorney General
28 Liberty Street
New York, NY 10005
Telephone (Mueller): (212) 416-8321
Telephone (Dearing): (212) 416-8320
Fax: (212) 416-6003
Email: Joseph.Mueller@ag.ny.gov
Email: Stewart.Dearing@ag.ny.gov

14

## CERTIFICATE OF SERVICE

I certify that on June 9, 2021, I served the foregoing Plaintiffs' First Request for the Production of Documents and Electronically Stored Information Addressed to Evan Ajin on Defendants electronically by email to all attorneys of record and caused it to be mailed to counsel for the Defendants via First Class Mail at the following addresses: John M. Shoreman, McFadden & Shoreman, 1050 Connecticut Avenue, NW, Suite 500, Washington, DC 20036 and Mario Bernard Williams & John M. Shoreman, NDH LLC, 44 Broad Street, NW, Suite 200, Atlanta GA 30303.

**Stewart Dearing**
New York Bar Number: 5108444
Assistant Attorney General
Office of the Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8320
Fax: (212) 416-6003
Email: Stewart.Dearing@ag.ny.gov

**ATTACHMENT 1**
**Electronic Document Production Specifications**

Unless otherwise specified and agreed to by the Plaintiffs, all responsive documents must be produced in LexisNexis® Concordance® format in accordance with the following instructions. Any questions regarding electronic document production should be directed to Plaintiffs.

1. <u>Concordance Production Components</u>. A Concordance production consists of the following component files, which must be produced in accordance with the specifications set forth below in Section 7.

   A. ***Metadata Load File.*** A delimited text file that lists in columnar format the required metadata for each produced document.

   B. ***Extracted or OCR Text Files.*** Document-level extracted text for each produced document or document-level optical character recognition ("OCR") text where extracted text is not available.

   C. ***Single-Page Image Files.*** Individual petrified page images of the produced documents in tagged image format ("TIF"), with page-level Bates number endorsements.

   D. ***Opticon Load File.*** A delimited text file that lists the single-page TIF files for each produced document and defines (i) the relative location of the TIF files on the production media and (ii) each document break.

   E. ***Native Files.*** Native format versions of non-printable or non–print friendly produced documents.

2. <u>Production Folder Structure</u>. The production must be organized according to the following standard folder structure:
   • data\ (contains production load files)
   • images\ (contains single-page TIF files, with subfolder organization)
       \0001, \0002, \0003...
   • native_files\ (contains native files, with subfolder organization)
       \0001, \0002, \0003...
   • text\ (contains text files, with subfolder organization)
       \0001, \0002, \0003...

3. <u>De-Duplication</u>. You must perform global de-duplication of stand-alone documents and email families.

4. <u>Paper or Scanned Documents</u>. Documents that exist only in paper format must be scanned to single-page TIF files and OCR'd. The resulting electronic files should be pursued in Concordance format pursuant to these instructions. You must contact Plaintiffs to discuss (i) any documents that cannot be scanned, and

i

(ii) how information for scanned documents should be represented in the metadata load file.

5.  <u>Structured Data</u>.  Before producing structured data, including but not limited to relational databases, transactional data, and xml pages, you must first speak to Plaintiffs.   Structured data is data that has a defined length and format and includes, but is not limited to, relational databases, graphical databases, JSON files, or xml/html pages.

A.  Relational Databases

1.  Database tables should be provided in CSV or other delimited machine-readable, non-proprietary format, with each table in a separate data file. The preferred delimiter is a vertical bar "|". If after speaking with Plaintiffs, it is determined that the data cannot be exported from a proprietary database, then the data can be produced in the proprietary format so long as the Plaintiffs are given sufficient access to that data.

2.  Each database must have an accompanying Data Dictionary.

3.  Dates and numbers must be clearly and consistently formatted and, where relevant, units of measure should be explained in the Data Dictionary.

4.  Records must contain clear, unique identifiers, and the Data Dictionary must include explanations of how the files and records relate to one another.

5.  Each data file must also have an accompanying summary file that provides total row counts for the entire dataset and total row counts.

B.  Compression

1.  If Documents are provided in a compressed archive, only standard lossless compression methods (e.g., gzip, bzip2, and ZIP) shall be used. Media files should be provided in their original file format, with metadata preserved and no additional lossy encoding applied.

6.  <u>Media and Encryption</u>.  All documents must be produced on CD, DVD, or hard-drive media.   After consultation with the Plaintiffs, Documents may also be produced over a secure file transfer protocol (FTP), a pre-approved cloud-based platform (e.g. Amazon Web Services S3 bucket), or the New York Attorney General's cloud platform OAGCloud. All production media must be protected with a strong, randomly-generated password containing at least 16 alphanumeric characters and encrypted using Advanced Encryption Standard with 256-bit key length (AES-256). Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately from the media.

7.      <u>Production File Requirements</u>.

    A.    ***Metadata Load File***
- Required file format:
  - ASCII or UTF-8
  - Windows formatted CR + LF end of line characters, including full CR + LF on last record in file.
  - .dat file extension
  - Field delimiter: (ASCII decimal character 20)
  - Text Qualifier: þ (ASCII decimal character 254). Date and pure numeric value fields do not require qualifiers.
  - Multiple value field delimiter: ; (ASCII decimal character 59)
- The first line of the metadata load file must list all included fields. All required fields are listed in Attachment 2.
- Fields with no values must be represented by empty columns maintaining delimiters and qualifiers.
- ***Note:*** All documents must have page-level Bates numbering (except documents produced only in native format, which must be assigned a document-level Bates number). The metadata load file must list the beginning and ending Bates numbers (BEGDOC and ENDDOC) for each document. For document families, including but not limited to emails and attachments, compound documents, and uncompressed file containers, the metadata load file must also list the Bates range of the entire document family (ATTACHRANGE), beginning with the first Bates number (BEGDOC) of the "parent" document and ending with the last Bates number (ENDDOC) assigned to the last "child" in the document family.
- Date and Time metadata must be provided in separate columns.
- Accepted date formats:
  - mm/dd/yyyy
  - yyyy/mm/dd
  - yyyymmdd
- Accepted time formats:
  - hh:mm:ss (if not in 24-hour format, you must indicate am/pm)
  - hh:mm:ss:mmm

    B.    ***Extracted or OCR Text Files***
- You must produce individual document-level text files containing the full extracted text for each produced document.
- When extracted text is not available (for instance, for image-only documents) you must provide individual document-level text files containing the document's full OCR text.
- The filename for each text file must match the document's beginning Bates number (BEGDOC) listed in the metadata load file.

- Text files must be divided into subfolders containing no more than 500 to 1000 files.

C. ***Single-Page Image Files (Petrified Page Images)***

- Where possible, all produced documents must be converted into single-page tagged image format ("TIF") files.  See Section 7.E below for instructions on producing native versions of documents you are unable to convert.
- Image documents that exist only in non-TIF formats must be converted into TIF files.  The original image format must be produced as a native file as described in Section 7.E below.
- For documents produced only in native format, you must provide a TIF placeholder that states "Document produced only in native format."
- Each single-page TIF file must be endorsed with a unique Bates number.
- The filename for each single-page TIF file must match the unique page-level Bates number (or document-level Bates number for documents produced only in native format).
- Required image file format:
    o CCITT Group 4 compression
    o 2-Bit black and white
    o 300 dpi
    o Either .tif or .tiff file extension.
- TIF files must be divided into subfolders containing no more than 500 to 1000 files.  Where possible documents should not span multiple subfolders.

D. ***Opticon Load File***

- Required file format:
    o ASCII
    o Windows formatted CR + LF end of line characters
    o Field delimiter: , (ASCII decimal character 44)
    o No Text Qualifier
    o .opt file extension
- The comma-delimited Opticon load file must contain the following seven fields (as indicated below, values for certain fields may be left blank):
    o ALIAS or IMAGEKEY – the unique Bates number assigned to each page of the production.
    o VOLUME – this value is optional and may be left blank.
    o RELATIVE PATH – the filepath to each single-page image file on the production media.
    o DOCUMENT BREAK – defines the first page of a document. The only possible values for this field are "Y" or blank.
    o FOLDER BREAK – defines the first page of a folder.  The only possible values for this field are "Y" or blank.

- o BOX BREAK – defines the first page of a box.  The only possible values for this field are "Y" or blank.
- o PAGE COUNT – this value is optional and may be left blank.
- **_Example_:**
  ABC00001,,IMAGES\0001\ABC00001.tif,Y,,,2
  ABC00002,,IMAGES\0001\ABC00002.tif,,,,
  ABC00003,,IMAGES\0002\ABC00003.tif,Y,,,1
  ABC00004,,IMAGES\0002\ABC00004.tif,Y,,,1

E.     **_Native Files_**

- Non-printable or non–print friendly documents (including but not limited to spreadsheets, audio files, video files and documents for which color has significance to document fidelity) must be produced in their native format.
- The filename of each native file must match the document's beginning Bates number (BEGDOC) in the metadata load file and retain the original file extension.
- For documents produced only in native format, you must assign a single document-level Bates number and provide an image file placeholder that states "Document produced only in native format."
- The relative paths to all native files on the production media must be listed in the NATIVEFILE field of the metadata load file.
- Native files that are password-protected must be decrypted prior to conversion and produced in decrypted form.  In cases where this cannot be achieved the document's password must be listed in the metadata load file.  The password should be placed in the COMMENTS field with the format Password: <PASSWORD>.
- You may be required to supply a software license for proprietary documents produced only in native format.

**ATTACHMENT 2**
**Required Fields for Metadata Load File**

| FIELD NAME | FIELD DESCRIPTION | FIELD VALUE EXAMPLE[1] |
|---|---|---|
| DOCID | Unique document reference (can be used for de-duplication). | ABC0001 or ###.######.### |
| BEGDOC | Bates number assigned to the first page of the document. | ABC0001 |
| ENDDOC | Bates number assigned to the last page of the document. | ABC0002 |
| BEGATTACH | Bates number assigned to the first page of the parent document in a document family (*i.e.*, should be the same as BEGDOC of the parent document, or PARENTDOC). | ABC0001 |
| ENDATTACH | Bates number assigned to the last page of the last child document in a family (*i.e.*, should be the same as ENDDOC of the last child document). | ABC0008 |
| ATTACHRANGE | Bates range of entire document family. | ABC0001 - ABC0008 |
| PARENTDOC | BEGDOC of parent document. | ABC0001 |
| CHILDDOCS | List of BEGDOCs of all child documents, delimited by ";" when field has multiple values. | ABC0002; ABC0003; ABC0004... |
| DOCREQ | List of particular Requests for Documents to be Produced | 1; 2; 3 . . . |
| INTERROG | List of particular Interrogatories | 1; 2; 3 . . . |
| COMMENTS | Additional document comments, such as passwords for encrypted files. | |
| NATIVEFILE | Relative file path of the native file on the production media. | .\Native_File\Folder\... \BEGDOC.ext |

---

[1] Examples represent possible values and not required format unless the field format is specified in Attachment 1.

| SOURCE | For scanned paper records this should be a description of the physical location of the original paper record. For loose electronic files this should be the name of the file server or workstation where the files were gathered. | Company Name, Department Name, Location, Box Number... |
|---|---|---|
| CUSTODIAN | Owner of the document or file. | Firstname Lastname, Lastname, Firstname, User Name; Company Name, Department Name... |
| FROM | Sender of the email. | Firstname Lastname < FLastname @domain > |
| TO | All to: members or recipients, delimited by ";" when field has multiple values. | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; ... |
| CC | All cc: members, delimited by ";" when field has multiple values. | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; ... |
| BCC | All bcc: members, delimited by ";" when field has multiple values | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; ... |
| SUBJECT | Subject line of the email. | |
| DATERCVD | Date that an email was received. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| TIMERCVD | Time that an email was received. | hh:mm:ss AM/PM or hh:mm:ss |
| DATESENT | Date that an email was sent. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| TIMESENT | Time that an email was sent. | hh:mm:ss AM/PM or hh:mm:ss |

| CALBEGDATE | Date that a meeting begins. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
|---|---|---|
| CALBEGTIME | Time that a meeting begins. | hh:mm:ss AM/PM or hh:mm:ss |
| CALENDDATE | Date that a meeting ends. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| CALENDTIME | Time that a meeting ends. | hh:mm:ss AM/PM or hh:mm:ss |
| CALENDARDUR | Duration of a meeting in hours. | 0.75, 1.5... |
| ATTACHMENTS | List of filenames of all attachments, delimited by ";" when field has multiple values. | AttachmentFileName.; AttachmentFileName.docx; AttachmentFileName.pdf;... |
| NUMATTACH | Number of attachments. | 1, 2, 3, 4.... |
| RECORDTYPE | General type of record. | IMAGE; LOOSE E-MAIL; E-MAIL; E-DOC; IMAGE ATTACHMENT; LOOSE E-MAIL ATTACHMENT; E-MAIL ATTACHMENT; E-DOC ATTACHMENT |
| FOLDERLOC | Original folder path of the produced document. | Drive:\Folder\...\...\ |
| FILENAME | Original filename of the produced document. | Filename.ext |
| DOCEXT | Original file extension. | html, xls, pdf |
| DOCTYPE | Name of the program that created the produced document. | Adobe Acrobat, Microsoft Word, Microsoft Excel,  Corel WordPerfect... |
| TITLE | Document title (if entered). | |
| AUTHOR | Name of the document author. | Firstname Lastname; Lastname, First Name; FLastname |
| REVISION | Number of revisions to a document. | 18 |

| DATECREATED | Date that a document was created. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
|---|---|---|
| TIMECREATED | Time that a document was created. | hh:mm:ss AM/PM or hh:mm:ss |
| DATEMOD | Date that a document was last modified. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| TIMEMOD | Time that a document was last modified. | hh:mm:ss AM/PM or hh:mm:ss |
| FILESIZE | Original file size in bytes. | 128, 512, 1024... |
| PGCOUNT | Number of pages per document. | 1, 2, 10, 100... |
| IMPORTANCE | Email priority level if set. | Low, Normal, High |
| TIFFSTATUS | Generated by the Law Pre-discovery production tool (leave blank if inapplicable). | Y, C, E, W, N, P |
| DUPSTATUS | Generated by the Law Pre-discovery production tool (leave blank if inapplicable). | P |
| MD5HASH | MD5 hash value computed from native file (a/k/a file fingerprint). | BC1C5CA6C1945179FEE144F25F51087B |
| SHA1HASH | SHA1 hash value | B68F4F57223CA7DA3584BAD7ECF111B8044F8631 |
| MSGINDEX | Email message ID | |

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

|  |  |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU; COMMONWEALTH OF MASSACHUSETTS; THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York; and COMMONWEALTH OF VIRGINIA, *EX REL.* MARK R. HERRING, ATTORNEY GENERAL, | Case No.: 5:21-cv-00016-EKD |
| Plaintiffs, | |
| v. | |
| NEXUS SERVICES, INC.; LIBRE BY NEXUS, INC.; MICHEAL DONOVAN; RICHARD MOORE; and EVAN AJIN, | |
| Defendants. | |

**DEFENDANTS NEXUS SERVICES, INC.'S AND LIBRE BY NEXUS, INC.'S
RESPONSE TO PLAINTIFFS' FIRST REQUEST FOR THE PRODUCTION
OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure Defendants NEXUS

SERVICES, INC. and LIBRE BY NEXUS, INC. ("Defendants"), through counsel, hereby submit

the following objections and responses to Plaintiffs' First Request for the Production of Documents

and Electronically Stored Information ("Requests").

These responses are made solely for the purpose of the above-captioned proceeding. Each

response is subject to all appropriate objections, including competency, relevancy, propriety and

admissibility, which would require the exclusion of any response set forth herein if the question

of materiality were asked of, or any response were made by, a witness present and testifying in

1

Court. All such objections are expressly reserved. The fact that any demand herein has been answered should not be taken as an admission of relevancy, admissibility or any fact set forth in the Requests. All responses are given on the basis of a good-faith effort to locate requested information, and should not be construed as an admission that the requested information actually exists. Upon additional information being located throughout the course of discovery, Defendants will supplement their responses. Further, the proposed production schedule provided below assumes that the Parties will be able to promptly agree on search terms that may be applicable to a given Request, issues related to withdrawing counsel's transfer of the case files do not make compliance with the proposed production schedule impractical, and that a Court order does not impact the parties' discovery obligations.

Defendants further state that various instructions and definitions contained in the Requests purport to require Defendants to provide information well outside the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1) and/or are nonsensical as drafted. For example, Plaintiffs' instructions define the relevant time period covered by the Requests as "from July 1, 2012 through the present"—even though, as Plaintiffs' own allegations make clear, Defendants did not even exist until 2013 and 2014. Plaintiffs further define the "Company" as including all Nexus-Affiliated Entities, among other entities, despite these separate entities being wholly irrelevant to Plaintiffs' claims in this case. Thus, when Defendants indicate below that they will respond to a particular Request, they are agreeing to review and produce responsive documents within the applicable statute of limitations period relevant to the actual Defendants, and not irrelevant third parties.

Finally, Defendants flatly dispute that they or their principals provide "the immigration bond service [*as*] *described in the Complaint*" or "legal services" to consumers or offer or provide

a "loan," "credit," or "debt" product. Thus, by agreeing to produce relevant, non-privileged documents called for by a particular Request that incorporates the terms "Nexus Immigration Bond Service," "Nexus Immigration Legal Services," "loan," "credit," and/or "debt," Defendants are not conceding or implicitly admitting the accuracy of any allegations in the Complaint or the Requests.

## RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**

Documents sufficient to show the organizational and ownership structure of the Company, including the relationship and any agreements (whether written or oral) between or among Libre by Nexus, Inc., Nexus Services, Inc., the Individual Defendants, and Nexus-Affiliated Entities.

**RESPONSE TO REQUEST NO. 1:**

Information related to the Nexus-Affiliated Entities, including their organizational and ownership structure, is wholly irrelevant to Plaintiffs' claims in this case, and is therefore outside the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1).

Defendants will produce relevant, non-privileged documents called for by this Request within 21 days of this response related to the named corporate and individual Defendants in this Action.

**REQUEST NO. 2:**

Documents sufficient to Identify all of the Company's current and former employees and corporate officers (including the Individual Defendants), the dates of their employment, their duties and responsibilities in the Company, and the reporting or supervisory relationships among those officers and employees.

**RESPONSE TO REQUEST NO. 2:**

Defendants will produce relevant, non-privileged documents called for by this Request within 21 days of this response.

**REQUEST NO. 3:**

Documents sufficient to show all addresses or locations at which the Company is located,

has offices, or does business.

**RESPONSE TO REQUEST NO. 3:**

Defendants will produce relevant, non-privileged documents called for by this Request within 21 days of this response.

**REQUEST NO. 4:**

Documents sufficient to show how the Company determined compensation of its employees or agents who interacted or communicated with Consumers Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, including Documents describing or setting forth any sales incentive program or commissions.

**RESPONSE TO REQUEST NO. 4:**

Defendants will produce relevant, non-privileged documents called for by this Request within 21 days of this response.

**REQUEST NO. 5:**

Documents sufficient to show the following:

a.      all Nexus Products and/or Services;

b.      the number and Identity of Consumers that received each such Nexus Product and/or Service (including the Nexus Immigration Legal Services);

c.      the date(s) on which each such Nexus Product and/or Service was provided to each Consumer Identified in subsection (b);

d.      the number and Identity of Consumers who sought but did not receive Nexus Immigration Legal Services; and

e.      the number and Identity of Consumers who sought but did not receive any Nexus Products and/or Services, other than Nexus Immigration Legal Services.

**RESPONSE TO REQUEST NO. 5:**

As to subpart A, Defendants will produce relevant, non-privileged documents called for by this Request within 21 days of this response. As to subparts B-E, Defendants will produce relevant, non-privileged documents called for by these Requests within 49 days of this response.

**REQUEST NO. 6:**

All Documents and Communications Concerning all advertising, marketing, or promotional material Concerning any Nexus Products and/or Services, including materials for television, internet, social media, in-person or experiential marketing, and printed materials.

**RESPONSE TO REQUEST NO. 6:**

Defendants will produce relevant, non-privileged documents called for by this Request within 49 days of this response.

**REQUEST NO. 7:**

All Documents constituting or reflecting Company policies, procedures, scripts, talking points, guidance, instructions, and training Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, and all Communications Concerning the development, revision, or implementation of the foregoing.

**RESPONSE TO REQUEST NO. 7:**

Defendants will produce relevant, non-privileged documents called for by this Request within 49 days of this response.

**REQUEST NO. 8:**

All Documents the Company provided or made available to any Consumers Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, including written agreements between the Company and Consumers and all Documents incorporated in, referenced by, associated with or presented with such written agreements.

**RESPONSE TO REQUEST NO. 8:**

Defendants will produce relevant, non-privileged documents called for by this Request within 21 days of this response.

**REQUEST NO. 9:**

All Documents and Communications Concerning the creation of, or any proposed or actual revisions, amendments, or changes to any Documents that are responsive to Request No. 8.

**RESPONSE TO REQUEST NO. 9:**

Defendants will produce relevant, non-privileged documents called for by this Request within 70 days of this response.

**REQUEST NO. 10:**

Documents sufficient to show (a) the native language of and (b) the language(s) spoken and understood by each Consumer who signed up for the Nexus Immigration Bond Service.

**RESPONSE TO REQUEST NO. 10:**

Defendants will produce relevant, non-privileged documents called for by this Request within 21 days of this response.

**REQUEST NO. 11:**

All Documents and Communications (including without limitation any written logs, databases, recordings of telephone calls, text messages, emails, and instant and social media messages) Concerning the following topics:

      a.      the Company paying Consumers' immigration bonds;

      b.      Consumers breaching immigration bonds;

      c.      Consumer non-compliance with the terms, requirements, or conditions of the Nexus Immigration Bond Service, including non-payment;

      d.      the reason for or purpose of any Consumer payments to the Company Concerning the Nexus Immigration Bond Service;

      e.      the Company offering or providing loans or offering or extending credit to Consumers Concerning the Nexus Immigration Bond Service;

      f.      Consumers owing a debt because the Company paid an immigration bond or Consumers' payments to the Company going towards paying down an immigration bond or paying down a loan;

      g.      arrest, criminal prosecution, detention, or deportation of Consumers or any other negative outcome in a Consumer's immigration case or negative impact on a Consumer's immigration status;

h.      the GPS devices used for the Nexus Immigration Bond Service, including how they functioned; instructions for Consumers about how to use them; injuries, harm, irritation, or any adverse reaction caused by GPS devices; requests by either Consumers or the Company to remove, exchange, or replace a GPS device; co-signers wearing GPS devices; and whether GPS devices are required by third parties (such as the courts or Immigration and Customs Enforcement);

i.      the collection or attempted collection of payments or debts purportedly owed by Consumers for the Nexus Immigration Bond Service, including through the sale or transfer of Consumer accounts or purported debts to a Debt Buyer, Collection Agency, or other third-party Entity for collection;

j.      harm to a Consumer's credit rating or reporting of any kind to a Consumer Reporting Agency;

k.      the Company's affiliation or relationship with any third-party Entity Concerning the provision of the Nexus Immigration Bond Service, including Immigration and Customs Enforcement, the U.S. Department of Homeland Security, the courts, and bond agents; and

l.      the Nexus Immigration Legal Services.

**<u>RESPONSE TO REQUEST NO. 11:</u>**

As to subpart A, Defendants will produce relevant, non-privileged documents called for by this Request within 21 days of this response.

As to subparts B and C, information related to consumers breaching immigration bonds or non-compliance with the bond services generally is highly sensitive material that is not relevant to Plaintiffs' claims, and therefore is outside the scope of permissible discovery. To the extent that Plaintiffs are actually seeking documents related to their allegations that *Defendants' employees* purportedly engaged in misrepresentations related to these topics, Defendants will produce relevant, non-privileged documents called for by this Request within 49 days of this response.

As to subparts D-F and H-L, Defendants will produce relevant, non-privileged documents

called for by this Request within 70 days of this response.

As to subpart G, information related to an individual consumer's arrest, criminal prosecution, detention, or deportation, or any other negative information related to a consumer's immigration case, is entirely irrelevant to Plaintiffs' claims against Defendants in this Action, and is therefore outside the scope of permissible discovery. By way of a hypothetical, if Consumer X conveyed to Defendants that the individual recently was arrested for a DUI and was very concerned what impact this would have on his immigration case, such information—disclosed to Defendants in strict confidence—would have no conceivable relevance to establishing any of Plaintiffs' claims. Simply put, Defendants will not produce information in this Action that (1) could (a) jeopardize the immigration status of a consumer or (b) create a risk of injury or harm to the consumer's well-being and safety, and (2) is ripe for abuse by Plaintiffs and other government agencies, particularly when there is no legitimate need for the information as requested by Plaintiffs. The concern with regard to protecting consumers' well-being and safety is informed by the representation that the federal agency Plaintiff in this matter made to Defendants that evidence of a crime by immigrants will be referred to law enforcement authorities.

**REQUEST NO. 12:**

Documents sufficient to Identify and explain the nature of any lawsuits or  other legal actions brought by the Company against a Consumer, including for nonpayment for the Nexus Immigration Bond Service.

**RESPONSE TO REQUEST NO. 12:**

Defendants will produce relevant, non-privileged documents called for by this Request within 21 days of this response.

**REQUEST NO. 13:**

All Documents and Communications Concerning the tracking or accounting of all money received from Consumers or purportedly owed by Consumers for the Nexus Immigration Bond Service, including the following:

a.      Lightspeed records;

  b.  Documents and Communications describing the procedures or ways Consumer payments are or should be made; and

  c.  Documents and Communications Concerning the accuracy of or completeness of the Company's Consumer payment tracking or accounting system.

**RESPONSE TO REQUEST NO. 13:**

As to subpart A, all Defendant's Lightspeed records would encompass information entirely irrelevant to Plaintiffs' claims in this Action, and is therefore outside the scope of permissible discovery. Defendants will, however, produce a statistically significant, random sample of non-privileged documents called for by this Request within 70 days of this response.

As to subpart B, Defendants will produce relevant, non-privileged documents called for by this Request within 49 days of this response.

As to subpart C, Defendants will produce relevant, non-privileged documents called for by this Request within 70 days of this response.

**REQUEST NO. 14:**

All Documents and Communications Concerning Consumer refunds Concerning the Nexus Immigration Bond Service, including instances when

  a.  a Consumer requested a refund and did not receive one;

  b.  a Consumer's immigration case ended, when an immigration judge rendered a decision of any kind in a Consumer's case, and/or his or her bond was cancelled; and

  c.  a Consumer made payments to the Company or any of its affiliates, but no Consumer was released from immigration detention.

**RESPONSE TO REQUEST NO. 14:**

Defendants will produce relevant, non-privileged documents called for by this Request within 70 days of this response.

**REQUEST NO. 15:**

All agreements between any Defendant and any Person to provide products or services

Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, and Documents and Communications Concerning performance of any Entity under such agreements. The response to this request shall include agreements (and the requested Documents and Communications):

    a.    for the provision of GPS hardware or services;

    b.    for the provision of marketing, advertising, or public relations services;

    c.    for the provision of legal services to Consumers;

    d.    for the storage of Communications for the Company, including e-mail, instant messaging, chat, or telephone recordings (both cellular and landlines); and

    e.    with any bond, surety, or insurance company or the agent of any bond, surety, or insurance company.

**RESPONSE TO REQUEST NO. 15:**

As to subparts, A, B and D, Defendants will produce relevant, non-privileged documents called for by these Requests within 49 days of this response.

As to subparts C and E, Defendants will produce relevant, non-privileged documents called for by these Requests within 49 days of this response.

**REQUEST NO. 16:**

Documents sufficient to show all costs incurred by any Defendant or any other money paid, due, owed or allegedly due or owed to third parties by any Defendant Concerning (a) the Nexus Immigration Bond Service and (b) the Nexus Immigration Legal Services. The response to this Document Request shall include the cost of any services or products provided by third parties to the Company and the cost of paying any employees or agents.

**RESPONSE TO REQUEST NO. 16:**

Defendants will produce relevant, non-privileged documents called for by this Request within 49 days of this response.

**REQUEST NO. 17:**

All Communications with Consumers, and all Documents Concerning those

10

Communications (including without limitation any written logs, databases, recordings of telephone calls, text messages, emails, and instant and social media messages), Concerning any of the following topics:

    a.    how the Nexus Immigration Bond Service works or what it provides to Consumers; and

    b.    signing up, registering, or enrolling in the Nexus Immigration Bond Service.

**RESPONSE TO REQUEST NO. 17:**

Defendants will produce a statistically significant, random sample of non-privileged documents called for by this Request within 70 days of this response.

**REQUEST NO. 18:**

Documents and Communications sufficient to show the Company's financial condition, including financial statements (whether audited or unaudited), Documents reflecting payments to members or corporate officers, Documents reflecting real estate property held by the Company, Documents showing trusts which contain assets used by or for the benefit of the Company, and tax returns (to the extent those tax returns contain responsive information not contained in other Documents).

**RESPONSE TO REQUEST NO. 18:**

Information related to the Company's financial condition is wholly irrelevant to Plaintiffs' claims in this case, and this therefore outside the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1).

**REQUEST NO. 19:**

Documents sufficient to show all of the Company's bank accounts and the Persons who own, are beneficiaries of, or control, in any way, such accounts. The response to this Document Request shall include the accounts into which money from Consumers was deposited and accounts that were used for sharing money among or between Nexus-Affiliated Entities.

**RESPONSE TO REQUEST NO. 19:**

Information related to the Defendants' banks accounts is wholly irrelevant to Plaintiffs'

claims in this case, and this therefore outside the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1).

**REQUEST NO. 20:**

All Documents reflecting Consumer complaints or disputes Concerning any Nexus Products and/or Services and all responses to such complaints or disputes.

**RESPONSE TO REQUEST NO. 20:**

Defendants will produce relevant, non-privileged documents called for by this Request within 70 days of this response.

**REQUEST NO. 21:**

All Documents and Communications Concerning quality assurance or quality control reviews, audits, or assessments undertaken by the Company or any Person Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, including "QA Reports" or any similar Communications.

**RESPONSE TO REQUEST NO. 21:**

Defendants will produce relevant, non-privileged documents called for by this Request within 49 days of this response.

**REQUEST NO. 22:**

All Documents and Communications Concerning the supervision or auditing of employees or agents of the Company who communicated with or interacted with Consumers.

**RESPONSE TO REQUEST NO. 22:**

Defendants will produce relevant, non-privileged documents called for by this Request within 49 days of this response.

**REQUEST NO. 23:**

All Documents produced previously to any of the Plaintiffs, including those produced in response to a Subpoena or Civil Investigative Demand issued by any of the Plaintiffs.

**RESPONSE TO REQUEST NO. 23:**

Information "produced previously to any of the Plaintiffs" is information necessarily within

the possession, custody or control of the Plaintiffs. Requesting that Defendants produce documents Plaintiffs already have serves no other purpose than to impose unnecessary costs on Defendants, and thus violates Plaintiffs' duty to "secure the just, speedy, ***and inexpensive*** determination of every action and proceeding."  Fed. R. Civ. P. 1 (emphasis added).

**REQUEST NO. 24:**

All Documents (including both transcripts and any related videos), in unredacted form, reflecting or containing testimony by any of the Defendants, or any former or current Company employee or agent in any investigation, lawsuit or arbitration to which the any of the Defendants was a party Concerning Libre by Nexus, Inc., Nexus Services, Inc., the Individual Defendants, or any Nexus Product and/or Service, including all exhibits and any videos or recordings of such testimony. The response to this Document Request shall include the following:

- From *Vasquez v. Libre by Nexus, Inc.*, Case No. 4:17-cv-00755-CW (N.D. Cal.):
  - o   Deposition of David See
- From *RLI Ins. Co. v. Nexus Services, Inc.*, No. Case 5:18-cv-00066-MFU-JCH (W.D. Va.):
  - o   Deposition of Richard Moore (both parts)
  - o   Deposition of Tim Okonski
  - o   Deposition of Micheal Donovan
  - o   Deposition of Micheal Donovan under Federal Rule of Civil Procedure 30(b)(6)
  - o   Deposition of Erik Schneider
  - o    Deposition of Erik Schneider and Tim Okonski under Federal Rule of Civil Procedure 30(b)(6)

**RESPONSE TO REQUEST NO. 24:**

Defendants will produce relevant, non-privileged documents called for by this Request within 70 days of this response.

**REQUEST NO. 25:**

All Documents Concerning any governmental or regulatory licenses sought or held by the Company.

**RESPONSE TO REQUEST NO. 25:**

Defendants will produce relevant, non-privileged documents called for by this Request within 49 days of this response.

**REQUEST NO. 26:**

Documents and Communications sufficient to show the substantive and temporal scope of all litigation holds and/or document preservation policies and procedures implemented by the Company to preserve Documents and information, including those taken in response to this Action or in response to any of the Plaintiffs' Subpoenas or Civil Investigative Demands.

**RESPONSE TO REQUEST NO. 26:**

The information sought by this Request is not relevant to any of Plaintiffs' claims in this Action, and also seeks documents that constitutes attorney-work product, attorney-client communications and information related to actions taken at the direction of counsel. This Request therefore seeks information wholly outside the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1).

**REQUEST NO. 27:**

All Documents Concerning expert testimony or reports any Defendant intends to rely upon in this Action for any purpose, including all Documents Concerning compensation for expert testimony and all Documents provided to the expert Concerning this Action.

**RESPONSE TO REQUEST NO. 27:**

Defendants have no documents responsive to this Request at present, but will timely produce relevant, non-privileged documents related to expert discovery required to be produced

by the Federal Rules of Civil Procedure.

**REQUEST NO. 28:**

All Documents showing any Defendants' insurance coverage, including insurance policies, umbrella coverage, excess liability coverage, directors and officers coverage, errors and omissions coverage, funding agreements, side agreements, and notices sent by any Defendant to any insurer Concerning this Action, Plaintiffs' investigations, or other investigations or lawsuits and their responses.

**RESPONSE TO REQUEST NO. 28:**

Defendants will produce relevant, non-privileged documents called for by this Request within 49 days of this response.

**REQUEST NO. 29:**

All Documents received by Defendants in response to any subpoena *duces tecum* in this Action.

**RESPONSE TO REQUEST NO. 29:**

Defendants have no documents responsive to this Request at present, but will produce relevant, non-privileged documents called for by this Request within 21 days of Defendants' receipt of documents received in response to any subpoena *duces tecum* issued by Defendants in this Action.

Dated:  September 28, 2021

Respectfully submitted,

/s/ J.H. Jennifer Lee
J.H. Jennifer Lee
District of Columbia Bar Number:  1029193
ARENT FOX LLP
55 Second Street, 21st Floor
San Francisco, California 94105
Telephone:   415.757.5500
Facsimile:    415.757.5501
Email:  jenny.lee@arentfox.com

David G. Bayles
California Bar Number: 208112
ARENT FOX LLP
555 West Fifth Street, 48th Floor
Los Angeles, California 90013-1065
Telephone:   213.629.7400
Facsimile:    213.629.7401
Email:  david.bayles@arentfox.com

*Counsel for Defendants Nexus Services, Inc., Libre by Nexus, Inc., Micheal Donovan, Richard Moore, and Evan Ajin*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 28, 2021, the foregoing was served electronically via email upon Plaintiffs' counsel of record in this Action.


/s/ *Adam Bowser*
Adam Bowser

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

|  |  |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU; COMMONWEALTH OF MASSACHUSETTS; THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York; and COMMONWEALTH OF VIRGINIA, *EX REL.* MARK R. HERRING, ATTORNEY GENERAL, <br><br> Plaintiffs, <br><br> v. <br><br> NEXUS SERVICES, INC.; LIBRE BY NEXUS, INC.; MICHEAL DONOVAN; RICHARD MOORE; and EVAN AJIN, <br><br> Defendants. | Case No.: 5:21-cv-00016-EKD |

**DEFENDANT MICHEAL DONOVAN'S
RESPONSE TO PLAINTIFFS' FIRST REQUEST FOR THE PRODUCTION OF
DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure Defendant Michael Donovan ("Defendant"), through counsel, hereby submits the following objections and responses to Plaintiffs' First Request for the Production of Documents and Electronically Stored Information ("Requests").

These responses are made solely for the purpose of the above-captioned proceeding. Each response is subject to all appropriate objections, including competency, relevancy, propriety and admissibility, which would require the exclusion of any response set forth herein if the question of materiality were asked of, or any response were made by, a witness present and testifying in Court. All such objections are expressly reserved. The fact that any demand herein has been answered should not be taken as an admission of relevancy, admissibility or any fact set forth in

1

the Requests. All responses are given on the basis of a good-faith effort to locate requested information, and should not be construed as an admission that the requested information actually exists. Upon additional information being located throughout the course of discovery, Defendant will supplement his responses. Further, the proposed production schedule provided below assumes that the Parties will be able to promptly agree on search terms that may be applicable to a given Request, issues related to withdrawing counsel's transfer of the case files do not make compliance with the proposed production schedule impractical, and that a Court order does not impact the parties' discovery obligations.

Defendant further states that various instructions and definitions contained in the Requests purport to require Defendant to provide information well outside the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1) and/or are nonsensical as drafted.  For example, Plaintiffs' instructions define the relevant time period covered by the Requests as "from July 1, 2012 through the present"—even though, as Plaintiffs' own allegations make clear, the corporate Defendants did not even exist until 2013 and 2014. Plaintiffs further define the "Company" as including all Nexus-Affiliated Entities, among other entities, despite these separate entities being wholly irrelevant to Plaintiffs' claims in this case. Thus, when Defendant indicates below that he will respond to a particular Request, he is agreeing to review and produce responsive documents within the applicable statute of limitations period relevant to himself and, as relevant, the named corporate Defendants, and not irrelevant third parties.

Finally, Defendant flatly disputes that any of the defendants provide "the immigration bond service [*as*] *described in the Complaint*" or "legal services" to consumers or offer or provide a "loan," "credit," or "debt" product. Thus, by agreeing to produce relevant, non-privileged documents called for by a particular Request that incorporates the terms "Nexus Immigration Bond Service," "Nexus Immigration Legal Services," "loan," "credit," and/or "debt," Defendant is not conceding or implicitly admitting the accuracy of any allegations in the Complaint or the Requests.

2

## **RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS**

**REQUEST NO. 1:**

All Documents and Communications not produced by Nexus or Libre Concerning the following topics:

a.    advertising, marketing, promoting, selling, or explaining the Nexus Immigration Bond Service or the Nexus Immigration Legal Services;

b.    how the Nexus Immigration Bond Service works or what it provides to Consumers;

c.    the Company paying Consumers' immigration bonds;

d.    Consumers breaching immigration bonds;

e.    Consumer non-compliance with the terms, requirements, or conditions of the Nexus Immigration Bond Service, including non-payment;

f.    the reason for or purpose of any Consumer payments to the Company Concerning the Nexus Immigration Bond Service;

g.    the Company offering or providing loans or offering or extending credit to Consumers Concerning the Nexus Immigration Bond Service;

h.    Consumers owing a debt because the Company paid an immigration bond or Consumers' payments going towards paying down an immigration bond or paying down a loan;

i.    arrest, criminal prosecution, detention, or deportation of Consumers or any other negative outcome in a Consumer's immigration case or negative impact on a Consumer's immigration status;

j.    the GPS devices used for the Nexus Immigration Bond Service, including how they functioned; instructions for Consumers about how to use them; injuries, harm, irritation, or any adverse reaction caused by GPS devices; requests by either Consumers or the Company to remove, exchange, or replace a GPS device; co-signers wearing GPS devices; and whether GPS devices are required by third

3

parties (such as the courts or Immigration and Customs Enforcement);

k.      the collection or attempted collection of payments or debts purportedly owed by Consumers for the Nexus Immigration Bond Service, including through the sale or transfer of Consumer accounts or purported debts to a Debt Buyer, Collection Agency, or other third-party Entity for collection;

l.      harm to a Consumer's credit rating or reporting of any kind to a Consumer Reporting Agency;

m.      the Company's affiliation or relationship with any third-party Entity Concerning the provision of the Nexus Immigration Bond Service, including Immigration and Customs Enforcement, the U.S. Department of Homeland Security, the courts, and bond agents;

n.      the Nexus Immigration Legal Services;

o.      processing, handling, reporting, or responding to Consumer disputes or complaints Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services;

p.      tracking or recording payments from Consumers;

q.      collateralizing a Consumer's immigration bond;

r.      concluding Consumer relationships with Libre or Nexus, including the steps taken when an immigration judge renders a decision of any kind in a Consumer's case and the cancellation of an immigration bond;

s.      quality assurance or quality control reviews, audits, or assessments undertaken by the Company or any Person Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, including "QA Reports" or any similar Communications; and

t.      refunding Consumers.

**<u>RESPONSE TO REQUEST NO. 1:</u>**

Defendant possesses no documents in his individual capacity that are responsive to this

4

Request. Put differently, to the extent any documents responsive to this request exist, they would be in the possession of Nexus and/or Libre. Without limiting the foregoing, Defendant further incorporates the corporate Defendants' objections and responses relevant to this Request, but in so doing, Defendant is not undertaking to make a duplicative production and/or produce documents in response to this Request to which the corporate Defendants have objected.

**REQUEST NO. 2:**

Documents sufficient to describe Your formal education and Your employment, including Your CVs, resumes or other Documents that describe Your employers, job titles, and responsibilities or duties, including for Nexus, Libre, and Nexus-Affiliated Entities.

**RESPONSE TO REQUEST NO. 2:**

The information sought by this Request is wholly irrelevant to Plaintiffs' claims in this case, and is therefore outside the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1).

**REQUEST NO. 3:**

Documents sufficient to show the following:

a.      every position, office, role, or title that You have held with Nexus, Libre, Nexus-Affiliated Entities, or with any Entity Concerning immigration bonds or immigration legal services;

b.      the dates during which You held each such position, office, role, or title;

c.      the responsibilities that You had in each such position, office, role or title; and

d.      Your compensation for each such position, office, role or title.

**RESPONSE TO REQUEST NO. 3:**

The information sought by this Request is wholly irrelevant to Plaintiffs' claims in this case, and is therefore outside the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1).

**REQUEST NO. 4:**

All Documents Concerning licenses You have sought or held from any local, state, federal or other governmental or regulatory authority.

**RESPONSE TO REQUEST NO. 4:**

Defendant will produce relevant, non-privileged documents called for by this Request within 21 days of this response.

**REQUEST NO. 5:**

All contracts or agreements (whether written or oral) between You and any of the other Defendants Concerning the following:

      a.      Libre, Nexus, or Nexus-Affiliated Entities;

      b.      any Nexus Product and/or Service; or

      c.      any monies or assets related thereto.

**RESPONSE TO REQUEST NO. 5:**

The information sought by this Request is wholly irrelevant to Plaintiffs' claims in this case, and is therefore outside the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1).

**REQUEST NO. 6:**

Documents sufficient to show payment, compensation, or any other transfers of property, assets, or monies, from any Defendant to You; the assumption, guarantee, or payment of any liability by any Defendant on Your behalf; or Your assumption, guarantee, or payment of any liability of any other Defendant.

**RESPONSE TO REQUEST NO. 6:**

The information sought by this Request is wholly irrelevant to Plaintiffs' claims in this case, and is therefore outside the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1).

**REQUEST NO. 7:**

Documents sufficient to show insurance policies held by or covering You Concerning

Nexus, Libre, any Nexus-Affiliated Entities, or this Action.

**RESPONSE TO REQUEST NO. 7:**

Defendant will produce relevant, non-privileged documents called for by this Request within 21 days of this response.

**REQUEST NO. 8:**

Documents and Communications sufficient to show Your financial condition from January 1, 2016 to the present, including bank accounts which You own, have signing rights to, or are the beneficiary of; records reflecting income; and tax returns (if the information in tax returns is not available in other Documents).

**RESPONSE TO REQUEST NO. 8:**

The information sought by this Request is wholly irrelevant to Plaintiffs' claims in this case, and is therefore outside the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1).

**REQUEST NO. 9:**

All Documents (including both transcripts and any related videos), in unredacted form, reflecting or containing testimony by You and not produced by Nexus or Libre Concerning Libre, Nexus, the Individual Defendants, or any Nexus Product and/or Service, including all exhibits and any videos or recordings of such testimony.

**RESPONSE TO REQUEST NO. 9:**

Defendant possesses no documents in his individual capacity that are responsive to this Request. Put differently, to the extent any documents responsive to this request exist, they would be in the possession of Nexus and/or Libre. Without limiting the foregoing, Defendant further incorporates the corporate Defendants' objections and responses relevant to this Request, but in so doing, Defendant is not undertaking to make a duplicative production and/or produce documents in response to this Request to which the corporate Defendants have objected.

7

Dated:  September 28, 2021

Respectfully submitted,


/s/ J.H. Jennifer Lee
J.H. Jennifer Lee
District of Columbia Bar Number:  1029193
ARENT FOX LLP
55 Second Street, 21st Floor
San Francisco, California 94105
Telephone:   415.757.5500
Facsimile:    415.757.5501
Email:  jenny.lee@arentfox.com


David G. Bayles
California Bar Number: 208112
ARENT FOX LLP
555 West Fifth Street, 48th Floor
Los Angeles, California 90013-1065
Telephone:   213.629.7400
Facsimile:    213.629.7401
Email:  david.bayles@arentfox.com


*Counsel for Defendants Nexus Services, Inc., Libre by*
*Nexus, Inc., Michael Donovan, Richard Moore, and*
*Evan Ajin*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 28, 2021, the foregoing was served electronically via email upon Plaintiffs' counsel of record in this Action.


/s/ *Adam Bowser*
*Adam Bowser*

# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

CONSUMER FINANCIAL PROTECTION
BUREAU; COMMONWEALTH OF
MASSACHUSETTS; THE PEOPLE OF
THE STATE OF NEW YORK, by LETITIA
JAMES, Attorney General of the State of
New York; and COMMONWEALTH OF
VIRGINIA, *EX REL.* MARK R. HERRING,
ATTORNEY GENERAL,

    Plaintiffs,

    v.

NEXUS SERVICES, INC.; LIBRE BY
NEXUS, INC.; MICHEAL DONOVAN;
RICHARD MOORE; and EVAN AJIN,

    Defendants.

Case No.: 5:21-cv-00016-EKD

**DEFENDANT RICHARD MOORE'S
RESPONSE TO PLAINTIFFS' FIRST REQUEST FOR THE PRODUCTION OF
DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

    Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure Defendant Richard
Moore ("Defendant"), through counsel, hereby submits the following objections and responses to
Plaintiffs' First Request for the Production of Documents and Electronically Stored Information
("Requests").

    These responses are made solely for the purpose of the above-captioned proceeding.
Each response is subject to all appropriate objections, including competency, relevancy,
propriety and admissibility, which would require the exclusion of any response set forth herein if
the question of materiality were asked of, or any response were made by, a witness present and
testifying in Court. All such objections are expressly reserved. The fact that any demand herein

1

has been answered should not be taken as an admission of relevancy, admissibility or any fact set forth in the Requests. All responses are given on the basis of a good faith effort to locate requested information, and should not be construed as an admission that the requested information actually exists. Upon additional information being located throughout the course of discovery, Defendant will supplement his responses. Further, the proposed production schedule provided below assumes that the Parties will be able to promptly agree on search terms that may be applicable to a given Request, issues related to withdrawing counsel's transfer of the case files do not make compliance with the proposed production schedule impractical, and that a Court order does not impact the parties' discovery obligations.

Defendant further states that various instructions and definitions contained in the Requests purport to require Defendant to provide information well outside the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1) and/or are nonsensical as drafted. For example, Plaintiffs' instructions define the relevant time period covered by the Requests as "from July 1, 2012 through the present"—even though, as Plaintiffs' own allegations make clear, the corporate Defendants did not even exist until 2013 and 2014.  Plaintiffs further define the "Company" as including all Nexus-Affiliated Entities, among other entities, despite these separate entities being wholly irrelevant to Plaintiffs' claims in this case. Thus, when Defendant indicates below that he will respond to a particular Request, he is agreeing to review and produce responsive documents within the applicable statute of limitations period relevant to himself and, as relevant, the named corporate Defendants, and not irrelevant third parties.

Finally, Defendant flatly disputes that any of the defendants provide "the immigration bond service [*as*] *described in the Complaint*" or "legal services" to consumers or offer or provide a "loan," "credit," or "debt" product. Thus, by agreeing to produce relevant, non-privileged documents called for by a particular Request that incorporates the terms "Nexus Immigration Bond Service," "Nexus Immigration Legal Services," "loan," "credit," and/or "debt," Defendant is not conceding or implicitly admitting the accuracy of any allegations in the Complaint or the Requests.

2

## **RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS**

### **REQUEST NO. 1:**

All Documents and Communications not produced by Nexus or Libre Concerning the following topics:

a.　advertising, marketing, promoting, selling, or explaining the Nexus Immigration Bond Service or the Nexus Immigration Legal Services;

b.　how the Nexus Immigration Bond Service works or what it provides to Consumers;

c.　the Company paying Consumers' immigration bonds;

d.　Consumers breaching immigration bonds;

e.　Consumer non-compliance with the terms, requirements, or conditions of the Nexus Immigration Bond Service, including non-payment;

f.　the reason for or purpose of any Consumer payments to the Company Concerning the Nexus Immigration Bond Service;

g.　the Company offering or providing loans or offering or extending credit to Consumers Concerning the Nexus Immigration Bond Service;

h.　Consumers owing a debt because the Company paid an immigration bond or Consumers' payments going towards paying down an immigration bond or paying down a loan;

i.　arrest, criminal prosecution, detention, or deportation of Consumers or any other negative outcome in a Consumer's immigration case or negative impact on a Consumer's immigration status;

j.　the GPS devices used for the Nexus Immigration Bond Service, including how they functioned; instructions for Consumers about how to use them; injuries, harm, irritation, or any adverse reaction caused by GPS devices; requests by either Consumers or the Company to remove, exchange, or replace a GPS device; co-signers wearing GPS devices; and whether GPS devices are required by third

3

parties (such as the courts or Immigration and Customs Enforcement);

k.      the collection or attempted collection of payments or debts purportedly owed by Consumers for the Nexus Immigration Bond Service, including through the sale or transfer of Consumer accounts or purported debts to a Debt Buyer, Collection Agency, or other third-party Entity for collection;

l.      harm to a Consumer's credit rating or reporting of any kind to a Consumer Reporting Agency;

m.      the Company's affiliation or relationship with any third-party Entity Concerning the provision of the Nexus Immigration Bond Service, including Immigration and Customs Enforcement, the U.S. Department of Homeland Security, the courts, and bond agents;

n.      the Nexus Immigration Legal Services;

o.      processing, handling, reporting, or responding to Consumer disputes or complaints Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services;

p.      tracking or recording payments from Consumers;

q.      collateralizing a Consumer's immigration bond;

r.      concluding Consumer relationships with Libre or Nexus, including the steps taken when an immigration judge renders a decision of any kind in a Consumer's case and the cancellation of an immigration bond;

s.      quality assurance or quality control reviews, audits, or assessments undertaken by the Company or any Person Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, including "QA Reports" or any similar Communications; and

t.      refunding Consumers.

**RESPONSE TO REQUEST NO. 1:**

Defendant possesses no documents in his individual capacity that are responsive to this

Request.  Put differently, to the extent any documents responsive to this request exist, they would be in the possession of Nexus and/or Libre. Without limiting the foregoing, Defendant further incorporates the corporate Defendants' objections and responses relevant to this Request, but in so doing, Defendant is not undertaking to make a duplicative production and/or produce documents in response to this Request to which the corporate Defendants have objected.

**REQUEST NO. 2:**

Documents sufficient to describe Your formal education and Your employment, including Your CVs, resumes or other Documents that describe Your employers, job titles, and responsibilities or duties, including for Nexus, Libre, and Nexus-Affiliated Entities.

**RESPONSE TO REQUEST NO. 2:**

The information sought by this Request is wholly irrelevant to Plaintiffs' claims in this case, and is therefore outside the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1).

**REQUEST NO. 3:**

Documents sufficient to show the following:

a.    every position, office, role, or title that You have held with Nexus, Libre, Nexus-Affiliated Entities, or with any Entity Concerning immigration bonds or immigration legal services;

b.    the dates during which You held each such position, office, role, or title;

c.    the responsibilities that You had in each such position, office, role or title; and

d.    Your compensation for each such position, office, role or title.

**RESPONSE TO REQUEST NO. 3:**

The information sought by this Request is wholly irrelevant to Plaintiffs' claims in this case, and is therefore outside the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1).

**REQUEST NO. 4:**

All Documents Concerning licenses You have sought or held from any local, state, federal or other governmental or regulatory authority.

**RESPONSE TO REQUEST NO. 4:**

Defendant will produce relevant, non-privileged documents called for by this Request within 21 days of this response.

**REQUEST NO. 5:**

All contracts or agreements (whether written or oral) between You and any of the other Defendants Concerning the following:

      a.      Libre, Nexus, or Nexus-Affiliated Entities;

      b.      any Nexus Product and/or Service; or

      c.      any monies or assets related thereto.

**RESPONSE TO REQUEST NO. 5:**

The information sought by this Request is wholly irrelevant to Plaintiffs' claims in this case, and is therefore outside the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1).

**REQUEST NO. 6:**

Documents sufficient to show payment, compensation, or any other transfers of property, assets, or monies, from any Defendant to You; the assumption, guarantee, or payment of any liability by any Defendant on Your behalf; or Your assumption, guarantee, or payment of any liability of any other Defendant.

**RESPONSE TO REQUEST NO. 6:**

The information sought by this Request is wholly irrelevant to Plaintiffs' claims in this case, and is therefore outside the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1).

**REQUEST NO. 7:**

Documents sufficient to show insurance policies held by or covering You Concerning

Nexus, Libre, any Nexus-Affiliated Entities, or this Action.

**RESPONSE TO REQUEST NO. 7:**

Defendant will produce relevant, non-privileged documents called for by this Request within 21 days of this response.

**REQUEST NO. 8:**

Documents and Communications sufficient to show Your financial condition from January 1, 2016 to the present, including bank accounts which You own, have signing rights to, or are the beneficiary of; records reflecting income; and tax returns (if the information in tax returns is not available in other Documents).

**RESPONSE TO REQUEST NO. 8:**

The information sought by this Request is wholly irrelevant to Plaintiffs' claims in this case, and is therefore outside the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1).

**REQUEST NO. 9:**

All Documents (including both transcripts and any related videos), in unredacted form, reflecting or containing testimony by You and not produced by Nexus or Libre Concerning Libre, Nexus, the Individual Defendants, or any Nexus Product and/or Service, including all exhibits and any videos or recordings of such testimony.

**RESPONSE TO REQUEST NO. 9:**

Defendant possesses no documents in his individual capacity that are responsive to this Request. Put differently, to the extent any documents responsive to this request exist, they would be in the possession of Nexus and/or Libre. Without limiting the foregoing, Defendant further incorporates the corporate Defendants' objections and responses relevant to this Request, but in so doing, Defendant is not undertaking to make a duplicative production and/or produce documents in response to this Request to which the corporate Defendants have objected.

Dated:  September 28, 2021

Respectfully submitted,

/s/ J.H. Jennifer Lee
J.H. Jennifer Lee
District of Columbia Bar Number:  1029193
ARENT FOX LLP
55 Second Street, 21st Floor
San Francisco, California 94105
Telephone:   415.757.5500
Facsimile:    415.757.5501
Email:  jenny.lee@arentfox.com


David G. Bayles
California Bar Number: 208112
ARENT FOX LLP
555 West Fifth Street, 48th Floor
Los Angeles, California 90013-1065
Telephone:   213.629.7400
Facsimile:    213.629.7401
Email:  david.bayles@arentfox.com


*Counsel for Defendants Nexus Services, Inc., Libre by Nexus, Inc., Michael Donovan, Richard Moore, and Evan Ajin*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 28, 2021, the foregoing was served electronically via email upon Plaintiffs' counsel of record in this Action.


/s/ *Adam Bowser*
Adam Bowser

# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU; COMMONWEALTH OF MASSACHUSETTS; THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York; and COMMONWEALTH OF VIRGINIA, *EX REL.* MARK R. HERRING, ATTORNEY GENERAL,<br><br>       Plaintiffs,<br><br>   v.<br><br>NEXUS SERVICES, INC.; LIBRE BY NEXUS, INC.; MICHEAL DONOVAN; RICHARD MOORE; and EVAN AJIN,<br><br>       Defendants. | Case No.: 5:21-cv-00016-EKD |

**DEFENDANT EVAN AJIN'S**
**RESPONSE TO PLAINTIFFS' FIRST REQUEST FOR THE PRODUCTION OF**
**DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure Defendant Evan Ajin ("Defendant"), through counsel, hereby submits the following objections and responses to Plaintiffs' First Request for the Production of Documents and Electronically Stored Information ("Requests").

These responses are made solely for the purpose of the above-captioned proceeding. Each response is subject to all appropriate objections, including competency, relevancy, propriety and admissibility, which would require the exclusion of any response set forth herein if the question of materiality were asked of, or any response were made by, a witness present and testifying in Court. All such objections are expressly reserved. The fact that any demand herein has been answered should not be taken as an admission of relevancy, admissibility or any fact set

forth in the Requests. All responses are given on the basis of a good faith effort to locate requested information, and should not be construed as an admission that the requested information actually exists. Upon additional information being located throughout the course of discovery, Defendant will supplement his responses. Further, the proposed production schedule provided below assumes that the Parties will be able to promptly agree on search terms that may be applicable to a given Request, issues related to withdrawing counsel's transfer of the case files do not make compliance with the proposed production schedule impractical, and that a Court order does not impact the parties' discovery obligations.

Defendant further states that various instructions and definitions contained in the Requests purport to require Defendant to provide information well outside the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1) and/or are nonsensical as drafted.  For example, Plaintiffs' instructions define the relevant time period covered by the Requests as "from July 1, 2012 through the present"—even though, as Plaintiffs' own allegations make clear, the corporate Defendants did not even exist until 2013 and 2014.  Plaintiffs further define the "Company" as including all Nexus-Affiliated Entities, among other entities, despite these separate entities being wholly irrelevant to Plaintiffs' claims in this case. Thus, when Defendant indicates below that he will respond to a particular Request, he is agreeing to review and produce responsive documents within the applicable statute of limitations period relevant to himself and, as relevant, the named corporate Defendants, and not irrelevant third parties.

Finally, Defendant flatly disputes that any of the defendants provide "the immigration bond service [*as*] *described in the Complaint*" or "legal services" to consumers or offer or provide a "loan," "credit," or "debt" product. Thus, by agreeing to produce relevant, non-privileged documents called for by a particular Request that incorporates the terms "Nexus Immigration Bond Service," "Nexus Immigration Legal Services," "loan," "credit," and/or "debt," Defendant is not conceding or implicitly admitting the accuracy of any allegations in the Complaint or the Requests.

## **RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS**

**REQUEST NO. 1:**

All Documents and Communications not produced by Nexus or Libre Concerning the following topics:

a.     advertising, marketing, promoting, selling, or explaining the Nexus Immigration Bond Service or the Nexus Immigration Legal Services;

b.     how the Nexus Immigration Bond Service works or what it provides to Consumers;

c.     the Company paying Consumers' immigration bonds;

d.     Consumers breaching immigration bonds;

e.     Consumer non-compliance with the terms, requirements, or conditions of the Nexus Immigration Bond Service, including non-payment;

f.     the reason for or purpose of any Consumer payments to the Company Concerning the Nexus Immigration Bond Service;

g.     the Company offering or providing loans or offering or extending credit to Consumers Concerning the Nexus Immigration Bond Service;

h.     Consumers owing a debt because the Company paid an immigration bond or Consumers' payments going towards paying down an immigration bond or paying down a loan;

i.     arrest, criminal prosecution, detention, or deportation of Consumers or any other negative outcome in a Consumer's immigration case or negative impact on a Consumer's immigration status;

j.     the GPS devices used for the Nexus Immigration Bond Service, including how they functioned; instructions for Consumers about how to use them; injuries, harm, irritation, or any adverse reaction caused by GPS devices; requests by either Consumers or the Company to remove, exchange, or replace a GPS device; co-signers wearing GPS devices; and whether GPS devices are required by third

parties (such as the courts or Immigration and Customs Enforcement);

k.      the collection or attempted collection of payments or debts purportedly owed by Consumers for the Nexus Immigration Bond Service, including through the sale or transfer of Consumer accounts or purported debts to a Debt Buyer, Collection Agency, or other third-party Entity for collection;

l.      harm to a Consumer's credit rating or reporting of any kind to a Consumer Reporting Agency;

m.      the Company's affiliation or relationship with any third-party Entity Concerning the provision of the Nexus Immigration Bond Service, including Immigration and Customs Enforcement, the U.S. Department of Homeland Security, the courts, and bond agents;

n.      the Nexus Immigration Legal Services;

o.      processing, handling, reporting, or responding to Consumer disputes or complaints Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services;

p.      tracking or recording payments from Consumers;

q.      collateralizing a Consumer's immigration bond;

r.      concluding Consumer relationships with Libre or Nexus, including the steps taken when an immigration judge renders a decision of any kind in a Consumer's case and the cancellation of an immigration bond;

s.      quality assurance or quality control reviews, audits, or assessments undertaken by the Company or any Person Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, including "QA Reports" or any similar Communications; and

t.      refunding Consumers.

**RESPONSE TO REQUEST NO. 1:**

Defendant possesses no documents in his individual capacity that are responsive to this

Request. Put differently, to the extent any documents responsive to this request exist, they would be in the possession of Nexus and/or Libre. Without limiting the foregoing, Defendant further incorporates the corporate Defendants' objections and responses relevant to this Request, but in so doing, Defendant is not undertaking to make a duplicative production and/or produce documents in response to this Request to which the corporate Defendants have objected.

**REQUEST NO. 2:**

Documents sufficient to describe Your formal education and Your employment, including Your CVs, resumes or other Documents that describe Your employers, job titles, and responsibilities or duties, including for Nexus, Libre, and Nexus-Affiliated Entities.

**RESPONSE TO REQUEST NO. 2:**

The information sought by this Request is wholly irrelevant to Plaintiffs' claims in this case, and is therefore outside the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1).

**REQUEST NO. 3:**

Documents sufficient to show the following:

a.     every position, office, role, or title that You have held with Nexus, Libre, Nexus-Affiliated Entities, or with any Entity Concerning immigration bonds or immigration legal services;

b.     the dates during which You held each such position, office, role, or title;

c.     the responsibilities that You had in each such position, office, role or title; and

d.     Your compensation for each such position, office, role or title.

**RESPONSE TO REQUEST NO. 3:**

The information sought by this Request is wholly irrelevant to Plaintiffs' claims in this case, and is therefore outside the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1).

**REQUEST NO. 4:**

All Documents Concerning licenses You have sought or held from any local, state, federal or other governmental or regulatory authority.

**RESPONSE TO REQUEST NO. 4:**

Defendant will produce relevant, non-privileged documents called for by this Request within 21 days of this response.

**REQUEST NO. 5:**

All contracts or agreements (whether written or oral) between You and any of the other Defendants Concerning the following:

      a.      Libre, Nexus, or Nexus-Affiliated Entities;

      b.      any Nexus Product and/or Service; or

      c.      any monies or assets related thereto.

**RESPONSE TO REQUEST NO. 5:**

The information sought by this Request is wholly irrelevant to Plaintiffs' claims in this case, and is therefore outside the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1).

**REQUEST NO. 6:**

Documents sufficient to show payment, compensation, or any other transfers of property, assets, or monies, from any Defendant to You; the assumption, guarantee, or payment of any liability by any Defendant on Your behalf; or Your assumption, guarantee, or payment of any liability of any other Defendant.

**RESPONSE TO REQUEST NO. 6:**

The information sought by this Request is wholly irrelevant to Plaintiffs' claims in this case, and is therefore outside the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1).

**REQUEST NO. 7:**

Documents sufficient to show insurance policies held by or covering You Concerning

Nexus, Libre, any Nexus-Affiliated Entities, or this Action.

**RESPONSE TO REQUEST NO. 7:**

Defendant will produce relevant, non-privileged documents called for by this Request within 21 days of this response.

**REQUEST NO. 8:**

Documents and Communications sufficient to show Your financial condition from January 1, 2016 to the present, including bank accounts which You own, have signing rights to, or are the beneficiary of; records reflecting income; and tax returns (if the information in tax returns is not available in other Documents).

**RESPONSE TO REQUEST NO. 8:**

The information sought by this Request is wholly irrelevant to Plaintiffs' claims in this case, and is therefore outside the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1).

**REQUEST NO. 9:**

All Documents (including both transcripts and any related videos), in unredacted form, reflecting or containing testimony by You and not produced by Nexus or Libre Concerning Libre, Nexus, the Individual Defendants, or any Nexus Product and/or Service, including all exhibits and any videos or recordings of such testimony.

**RESPONSE TO REQUEST NO. 9:**

Defendant possesses no documents in his individual capacity that are responsive to this Request. Put differently, to the extent any documents responsive to this request exist, they would be in the possession of Nexus and/or Libre. Without limiting the foregoing, Defendant further incorporates the corporate Defendants' objections and responses relevant to this Request, but in so doing, Defendant is not undertaking to make a duplicative production and/or produce documents in response to this Request to which the corporate Defendants have objected.

Dated:  September 28, 2021

Respectfully submitted,


/s/ J.H. Jennifer Lee
J.H. Jennifer Lee
District of Columbia Bar Number:  1029193
ARENT FOX LLP
55 Second Street, 21st Floor
San Francisco, California 94105
Telephone:   415.757.5500
Facsimile:    415.757.5501
Email:  jenny.lee@arentfox.com


David G. Bayles
California Bar Number: 208112
ARENT FOX LLP
555 West Fifth Street, 48th Floor
Los Angeles, California 90013-1065
Telephone:   213.629.7400
Facsimile:    213.629.7401
Email:  david.bayles@arentfox.com


*Counsel for Defendants Nexus Services, Inc., Libre by Nexus, Inc., Michael Donovan, Richard Moore, and Evan Ajin*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 28, 2021, the foregoing was served electronically via email upon Plaintiffs' counsel of record in this Action.


/s/ *Adam Bowser*
Adam Bowser

# EXHIBIT 9



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

JANE M. AZIA
BUREAU CHIEF
CONSUMER FRAUDS & PROTECTION BUREAU

October 15, 2021

**By Email**
J.H. Jennifer Lee
Arent Fox LLP
55 Second Street, 21st Floor
San Francisco, CA 94105
jenny.lee@arentfox.com

Re:   *Consumer Financial Protection Bureau et al. v. Nexus Services, Inc. et al.*,
      *5:21-cv-16 (W.D. Va.)*

Dear Counsel:

We, the undersigned counsel, on behalf of all Plaintiffs, write in response to Defendants'
Responses to Plaintiffs' First Request for the Production of Documents and Electronically
Stored Information dated September 28, 2021.[1]

Plaintiffs served their First Request for the Production of Documents and Electronically
Stored Information (Plaintiffs' 1st RFPs) on Defendants on June 9, 2021. Under Federal
Rule of Civil Procedure 34(b)(2)(A), Defendants were required to respond within 30 days.
But Defendants did not respond until September 28, 2021, 81 days overdue. By failing to
timely respond, Defendants waived all objections to Plaintiffs' 1st RFPs. Nonetheless, in an
effort to obtain responses without having to involve the Court, we write to address a
number of positions stated in Defendants' Responses.

---

[1] Herein, the Response of Defendants Nexus Services, Inc. and Libre by Nexus, Inc. are referred to as
the "Entity Defendants' Responses." The Responses of Defendants Micheal Donovan, Richard Moore,
and Evan Ajin are referred to collectively as the "Individual Defendants' Responses." The Entity
Defendants' Responses and the Individual Defendants' Responses are together referred to as
"Defendants' Responses."

Arent Fox LLP
October 15, 2021
Page 2 of 9

**Defendants' General Responses**

*First*, Defendants state that the Nexus-Affiliated Entities (as defined in Plaintiffs' 1st RFPs) are "separate entities being wholly irrelevant to Plaintiffs' claims in this case." Defendants' Responses at 2. Defendants further generally respond that they are only "agreeing to review and produce responsive documents . . . relevant to the actual Defendants, and not irrelevant third parties." *Id.*; *see, e.g.*, Entity Defendants' Responses to Request 1. But Plaintiffs are entitled to obtain discovery to determine the relationships among Defendants and entities they control. The documents sought are also relevant to multiple liability issues, including allegations that Nexus Services, Inc. and Individual Defendants offered substantial assistance to Libre's deceptive and abusive acts and that Defendants participated in a common enterprise. In addition, Individual Defendants operated their immigration bond business through multiple entities and did not respect the corporate form. As such, Defendants are obligated to produce the documents and ESI requested by Plaintiffs' 1st RFPs.

*Second*, Defendants state that they only "are agreeing to review and produce responsive documents within the applicable statute of limitations period." Defendants' Responses at 2. However, Defendants' discovery obligations are not temporally limited to the time period of any statutes of limitations, even if such statutes do apply to some Plaintiffs' claims.[2] Moreover, Defendants' objection is improper because it is not stated with the specificity required by Rule 34. Defendants have not stated what they believe the applicable limitations period or periods to be;[3] Defendants have not articulated their reasoning for their claimed legal right to withhold responsive information that is beyond an applicable statute-of-limitations period; and Defendants have not stated the specific period for which they will review and produce responsive documents and ESI.

*Third*, nearly all of Defendants' specific responses state that "Defendants will produce relevant . . . documents called for by this Request." This language does not assert any objection to the requests. If, however, Defendants intend to withhold responsive materials on the basis that Defendants deem them not "relevant," Defendants must state with specificity the materials being withheld and permit inspection of the rest. *See* Fed. R. Civ. P. 34(b)(2)(B)-(C).

*Fourth*, nearly all of Defendants' specific responses state that "Defendants will produce . . . non-privileged documents called for by this Request." This language alone does not assert an objection to the requests. If, however, Defendants intend to withhold responsive materials on the basis that Defendants deem them to be protected as "privileged," Defendants must comply with Rule 26(b)(5) and identify the purported privilege and the materials being withheld and provide information necessary to evaluate the assertions of privilege, including through production of a privilege log.

---

[2] Virginia has no applicable statute of limitations. Virginia Code § 8.01-231 ("No statute of limitations which shall not in express terms apply to the Commonwealth shall be deemed a bar to any proceeding by or on behalf of the same.").

[3] Any such period would not include periods of time tolled through any agreements with Defendants.

Arent Fox LLP
October 15, 2021
Page 3 of 9

*Fifth*, Defendants' reliance on general responses, statements, or objections is improper. *See Wheeler v. Virginia*, No. 7:17-CV-337, 2018 WL 10611693, at *1 (W.D. Va. Sept. 11, 2018).

**Entity Defendants' Responses to Specific Requests**

In Plaintiffs' 1st RFPs to Entity Defendants, Request 11(b)–(c) seeks "Documents and Communications . . . Concerning . . . (b) Consumers breaching immigration bonds; [and] (c) Consumer non-compliance with the terms, requirements, or conditions of the Nexus Immigration Bond Service, including non-payment." In response, Entity Defendants state that this material is highly sensitive and not relevant. The request, however, seeks materials that are directly relevant to the allegations in the Complaint. For example, the Complaint alleges that "Libre . . . threatens to re-detain or deport consumers for non-payment." Compl. ¶ 5. Moreover, Entity Defendants' claim of sensitivity is not a legal basis to withhold responsive and relevant materials in discovery. There is a protective order in place in this action precisely to address such concerns. For the foregoing reasons, Entity Defendants' objections to Request 11(b)–(c) are improper; further, Defendants' responses to Plaintiffs' 1st RFPs were served significantly past the time specified in Rule 34(b)(2)(A) and, as a result, Defendants' objections were not timely made and are waived. Plaintiffs expect Entity Defendants to produce all responsive, non-privileged documents and ESI no later than December 7, 2021. If production has not been made by December 7, 2021, Plaintiffs may seek all available legal remedies.

Request 11(g) seeks "Documents and Communications . . . Concerning . . . arrest, criminal prosecution, detention, or deportation of Consumers or any other negative outcome in a Consumer's immigration case or negative impact on a Consumer's immigration status." Entity Defendants assert that the requested material is irrelevant. But Plaintiffs have alleged that Defendants have made misrepresentations regarding what Defendants do if consumers don't comply with the terms of Libre's program, including by failing to make allegedly owed payments. Libre's contracts themselves state that consumers would be arrested and re-detained if they failed to comply with the program's terms. And, as Plaintiffs allege, consumers were also told that noncompliance with terms of Libre's program could impact their immigration proceedings. Therefore, these documents are relevant to this action.

Entity Defendants further respond to Request 11(g) by stating that "Defendants will not produce information in this Action that (1) could (a) jeopardize the immigration status of a consumer or (b) create a risk of injury or harm to the consumer's well-being and safety, and (2) is ripe for abuse by Plaintiffs and other government agencies . . . ." Entity Defendants' statement does not set forth a legal basis to withhold responsive materials in discovery. There is a protective order in place in this action to address such concerns. Moreover, to the extent that Defendants (Entity or Individual Defendants) intend, on the basis of this statement, to withhold documents responsive to requests other than Request 11(g), this is an improper response or objection under Rule 34(b)(2).

Arent Fox LLP
October 15, 2021
Page 4 of 9

For the foregoing reasons, Entity Defendants' objections to Request 11(g) are improper; further, Defendants' responses to Plaintiffs' 1st RFPs were served significantly past the time specified in Rule 34(b)(2)(A) and, as a result, Defendants' objections were not timely made and are waived. Plaintiffs expect Entity Defendants to produce all responsive, non-privileged documents and ESI no later than December 7, 2021. If production has not been made by December 7, 2021, Plaintiffs may seek all available legal remedies.

Request 13 seeks "Documents and Communications Concerning the tracking or accounting of all money received from Consumers or purportedly owed by Consumers for the Nexus Immigration Bond Service." Entity Defendants respond that "all Defendant's Lightspeed records would encompass information entirely irrelevant to Plaintiffs' claims in this Action, and is therefore outside the scope of permissible discovery. Defendants will, however, produce a statistically significant, random sample of non-privileged documents called for by this Request within 70 days of this response." Entity Defendants do not state that the Lightspeed records do not contain relevant information, but rather that they "encompass" irrelevant information. That is not a valid objection; Plaintiffs are entitled to the production of documents that contain relevant information, regardless of whether they also contain what Entity Defendants believe to be irrelevant information. Clearly, documents concerning payments made by consumers and amounts that consumers purportedly owe are relevant to the claims in this action. In addition, Entity Defendants do not state any basis or explanation for their position that they will only produce some unspecified sample of responsive documents. For the foregoing reasons, Entity Defendants' objections to Request 13 are improper; further, Defendants' responses to Plaintiffs' 1st RFPs were served significantly past the time specified in Rule 34(b)(2)(A) and, as a result, Defendants' objections were not timely made and are waived. Plaintiffs expect Entity Defendants to produce all responsive, non-privileged documents and ESI no later than December 7, 2021. If production has not been made by December 7, 2021, Plaintiffs may seek all available legal remedies.

Request 17 seeks "Communications with Consumers, and all Documents Concerning those Communications . . . , Concerning (a) how the Nexus Immigration Bond Service works or what it provides to Consumers; and (b) signing up, registering, or enrolling in the Nexus Immigration Bond Service." Entity Defendants' state that they will "produce a statistically significant, random sample of non-privileged documents called for by this Request . . . ." without setting forth any basis for their refusal to provide all responsive documents. For the foregoing reason, Entity Defendants' response to Request 17 is improper; further, Defendants' responses to Plaintiffs' 1st RFPs were served significantly past the time specified in Rule 34(b)(2)(A) and, as a result, Defendants' objections were not timely made and are waived. Plaintiffs expect Entity Defendants to produce all responsive, non-privileged documents and ESI no later than December 7, 2021. If production has not been made by December 7, 2021, Plaintiffs may seek all available legal remedies.

In response to Request 18, Entity Defendants assert that "Information related to the Company's financial condition is wholly irrelevant to Plaintiffs' claims in this case, and this [sic] therefore outside the scope of permissible discovery . . . ." This position is incorrect for several reasons. *See, e.g.*, Opp. Revived Mot. Stay Disc. & Mot. Quash Third-Party Subpoenas at 8-9, ECF No. 76. One example is that this material is relevant to Plaintiffs'

Arent Fox LLP
October 15, 2021
Page 5 of 9

claims that seek civil penalties. *See, e.g.*, 12 U.S.C. § 5565(c)(3)(A); *Com. v. Fall River Motor Sales, Inc.*, 409 Mass. 302, 311 (1991). Entity Defendants' objections to Request 18 are improper; further, Defendants' responses to Plaintiffs' 1st RFPs were served significantly past the time specified in Rule 34(b)(2)(A) and, as a result, Defendants' objections were not timely made and are waived. Plaintiffs expect Entity Defendants to produce all responsive, non-privileged documents and ESI no later than December 7, 2021. If production has not been made by December 7, 2021, Plaintiffs may seek all available legal remedies.

In response to Request 19, Entity Defendants assert that "Information related to the Defendants' bank accounts is wholly irrelevant to Plaintiffs' claims in this case, and this [sic] therefore outside the scope of permissible discovery . . . ." This position is incorrect for several reasons. *See, e.g.*, Opp. Revived Mot. Stay Disc. & Mot. Quash Third-Party Subpoenas at 8-9, ECF No. 76. *First*, Request 19 makes clear that the request includes "the accounts into which money from Consumers was deposited and accounts that were used for sharing money among or between Nexus-Affiliated Entities." Plaintiffs allege that consumers' payments were obtained fraudulently and illegally. Therefore, the facts regarding such payments are directly relevant to Plaintiffs' claims. *Second*, this information is relevant to Plaintiffs' claims that seek civil penalties. *See, e.g.*, 12 U.S.C. § 5565(c)(3)(A); *Com. v. Fall River Motor Sales, Inc.*, 409 Mass. 302, 311 (1991). *Third*, these documents are directly relevant to allegations that Nexus Services and Individual Defendants offered substantial assistance to Libre's deceptive and abusive acts and that Defendants all participated in a common enterprise. For the foregoing reasons, Entity Defendants' objections to Request 19 are improper; further, Defendants' responses to Plaintiffs' 1st RFPs were served significantly past the time specified in Rule 34(b)(2)(A) and, as a result, Defendants' objections were not timely made and are waived. Plaintiffs expect Entity Defendants to produce all responsive, non-privileged documents and ESI no later than December 7, 2021. If production has not been made by December 7, 2021, Plaintiffs may seek all available legal remedies.

Request 23 seeks "All Documents produced previously to any of the Plaintiffs, including those produced in response to a Subpoena or Civil Investigative Demand issued by any of the Plaintiffs." Entity Defendants assert that a request to "produce documents Plaintiffs already have" only serves to "impose unnecessary costs on Defendants." But this assertion is wrong, and Plaintiffs' request is valid.

*First*, state law restricts the ability of the Commonwealth of Massachusetts to disclose "documentary material or other information" produced in response to a CID without consent of the defendants. G.L. c. 93A, s. 6(6). Based on Massachusetts' communications with counsel for Defendants, it understood that Defendants have not and will not consent to disclosure, thereby necessitating a request for production in this action.

*Second*, as Defendants know, Nexus Services and Libre by Nexus made a production on March 22, 2019, in response to a civil subpoena issued by the State of New York and under compulsion from New York Supreme Court. That production consisted entirely of hard-copy documents that were printed from the electronic databases in which they were kept during the ordinary course of Libre's business. That ESI should have been produced in its original format. In addition, Libre's production contained extensive legally baseless redactions.

Arent Fox LLP
October 15, 2021
Page 6 of 9

*Third*, Defendants provided documents to Virginia in response to a civil investigative demand that were printed and then scanned into a PDF format, instead of providing the ESI in its original format. In addition, Libre's production contained extensive legally baseless redactions.

For the foregoing reasons, Entity Defendants' objections to Request 23 are improper; further, Defendants' responses to Plaintiffs' 1st RFPs were served significantly past the time specified in Rule 34(b)(2)(A) and, as a result, Defendants' objections were not timely made and are waived. In an effort to compromise, Plaintiffs are willing to accept the following in response to Request 23: (a) a reproduction of all documents previously produced to Massachusetts without redactions; *and* (b) a production of all hard-copy documents previously produced to New York and Virginia in their original format as they are kept in the ordinary course of business and without redactions. [4] Plaintiffs expect Entity Defendants to produce this subset of responsive documents and ESI no later than December 7, 2021. If production has not been made by November 12, 2021, Plaintiffs may seek all available legal remedies.

Finally, Request 26 seeks "Documents and Communications sufficient to show the substantive and temporal scope of all litigation holds and/or document preservation policies and procedures implemented by the Company to preserve Documents and information, including those taken in response to this Action or in response to any of the Plaintiffs' Subpoenas or Civil Investigative Demands." Plaintiffs agree to withdraw Request 26 without prejudice to seeking the materials at a future date.


**Individual Defendants' Responses to Specific Requests**

Individual Defendants' responses to Request 1 states that "Defendant possesses no documents in his individual capacity that are responsive to this Request. Put differently, to the extent any documents responsive to this request exist, they would be in the possession of Nexus and/or Libre." Plaintiffs' request, however, seeks *all* documents in each Individual Defendants' possession, custody, or control, not documents possessed in some specific capacity. Individual Defendants do not state a cognizable objection to the production of documents in their possession in response to Request 1. Therefore, Plaintiffs expect that Individual Defendants will produce all documents in their possession, custody, or control that are responsive to this request. In addition, Individual Defendants' response does not assert any objection to the request under Rule 34. If Individual Defendants intend to withhold responsive materials, Defendants must clearly state a legal objection and explain specifically what materials they are withholding on this basis and permit inspection of the rest. *See* Fed. R. Civ. P. 34(b)(2)(B)-(C).

---

[4] Under this proposal, New York and Virginia would retain the right to challenge any other improper redaction of any information produced in response to their investigatory subpoena and civil investigative demand, respectively.

Arent Fox LLP
October 15, 2021
Page 7 of 9

Individual Defendants' response to Request 1 also states that "Defendant further incorporates the corporate Defendants' objections and responses relevant to this Request." No identical request was made to Entity Defendants. Therefore, it is not possible to determine what "objections and responses" Individual Defendants are attempting to incorporate and what documents, if any, are being withheld under an objection. For the foregoing reasons, Individual Defendants' objections to Request 1 are improper; further, Defendants' responses to Plaintiffs' 1st RFPs were served significantly past the time specified in Rule 34(b)(2)(A) and, as a result, Defendants' objections were not timely made and are waived. Plaintiffs expect Individual Defendants to produce all responsive, non-privileged documents and ESI no later than December 7, 2021. If production has not been made by December 7, 2021, Plaintiffs may seek all available legal remedies.

Request 2 to Individual Defendants seeks "Documents sufficient to describe Your formal education and Your employment, including Your CVs, resumes or other Documents that describe Your employers, job titles, and responsibilities or duties, including for Nexus, Libre, and Nexus-Affiliated Entities." Plaintiffs allege that Individual Defendants own and control Nexus, were involved in the illegal conduct alleged in the Complaint, and are liable as individuals in this action. Therefore, Individual Defendants' "job titles, and responsibilities or duties, including for Nexus, Libre, and Nexus-Affiliated Entities" are relevant. For the foregoing reasons, Individual Defendants' objections to Request 2 are improper; further, Defendants' responses to Plaintiffs' 1st RFPs were served significantly past the time specified in Rule 34(b)(2)(A) and, as a result, Defendants' objections were not timely made and are waived. Plaintiffs expect Individual Defendants to produce all responsive, non-privileged documents and ESI no later than December 7, 2021. If production has not been made by December 7, 2021, Plaintiffs may seek all available legal remedies.

Request 3 to Individual Defendants seeks documents sufficient to show "every position, office, role, or title that You have held with Nexus, Libre, Nexus-Affiliated Entities, or with any Entity Concerning immigration bonds or immigration legal services," as well as dates, responsibilities, and compensation for those positions, offices, roles or titles. For the same reasons as Request 2, these documents are relevant to the claims in this action. For the foregoing reasons, Individual Defendants' objections to Request 3 are improper; further, Defendants' responses to Plaintiffs' 1st RFPs were served significantly past the time specified in Rule 34(b)(2)(A) and, as a result, Defendants' objections were not timely made and are waived. Plaintiffs expect Individual Defendants to produce all responsive, non-privileged documents and ESI no later than December 7, 2021. If production has not been made by December 7, 2021, Plaintiffs may seek all available legal remedies.

Request 5 to Individual Defendants seeks "All contracts or agreements (whether written or oral) between You and any of the other Defendants Concerning the following: a. Libre, Nexus, or Nexus-Affiliated Entities; b. any Nexus Product and/or Service; or c. any monies or assets related thereto." Plaintiffs allege that Individual Defendants own and control Nexus, were involved in the illegal conduct alleged in the Complaint, and are liable in this action as individuals. Documents governing the relationship between Individual Defendants and Entity Defendants are therefore directly relevant and should be produced. The requested documents are also relevant to the allegations that Nexus Services, Inc. and

Arent Fox LLP
October 15, 2021
Page 8 of 9

Individual Defendants offered substantial assistance to Libre's deceptive and abusive acts and that Defendants participated in a common enterprise. For the foregoing reasons, Individual Defendants' objections to Request 5 are improper; further, Defendants' responses to Plaintiffs' 1st RFPs were served significantly past the time specified in Rule 34(b)(2)(A) and, as a result, Defendants' objections were not timely made and are waived. Plaintiffs expect Individual Defendants to produce all responsive, non-privileged documents and ESI no later than December 7, 2021. If production has not been made by December 7, 2021, Plaintiffs may seek all available legal remedies.

Request 6 to Individual Defendants seeks "Documents sufficient to show payment, compensation, or any other transfers of property, assets, or monies, from any Defendant to You; the assumption, guarantee, or payment of any liability by any Defendant on Your behalf; or Your assumption, guarantee, or payment of any liability of any other Defendant." For the same reasons as Request 5, the requested documents are relevant to the claims in this action. For the foregoing reasons, Individual Defendants' objections to Request 6 are improper; further, Defendants' responses to Plaintiffs' 1st RFPs were served significantly past the time specified in Rule 34(b)(2)(A) and, as a result, Defendants' objections were not timely made and are waived. Plaintiffs expect Individual Defendants to produce all responsive, non-privileged documents and ESI no later than December 7, 2021. If production has not been made by December 7, 2021, Plaintiffs may seek all available legal remedies.

Request 8 to Individual Defendants seeks "Documents and Communications sufficient to show Your financial condition from January 1, 2016 to the present, including bank accounts which You own, have signing rights to, or are the beneficiary of; records reflecting income; and tax returns (if the information in tax returns is not available in other Documents)." Individual Defendants' refusal to produce materials in response to this request is incorrect; these materials are relevant for several reasons. *See, e.g.*, Opp. Revived Mot. Stay Disc. & Mot. Quash Third-Party Subpoenas at 8-9, ECF No. 76. One example is that this material is relevant to Plaintiffs' claims that seek civil penalties. *See, e.g.*, 12 U.S.C. § 5565(c)(3)(A); *Com. v. Fall River Motor Sales, Inc.*, 409 Mass. 302, 311 (1991). For the foregoing reasons, Individual Defendants' objections to Request 8 are improper; further, Defendants' responses to Plaintiffs' 1st RFPs were served significantly past the time specified in Rule 34(b)(2)(A) and, as a result, Defendants' objections were not timely made and are waived. Plaintiffs expect Individual Defendants to produce all responsive, non-privileged documents and ESI no later than December 7, 2021. If production has not been made by December 7, 2021, Plaintiffs may seek all available legal remedies.

Individual Defendants' response to Request 9 states "Defendant possesses no documents in his individual capacity that are responsive to this Request. Put differently, to the extent any documents responsive to this request exist, they would be in the possession of Nexus and/or Libre." But as with Request 1, Request 9 seeks *all* documents in each Individual Defendant's possession, custody, or control, not documents possessed in some specific capacity. Individual Defendants do not state a cognizable objection to the production of documents in their possession. Therefore, Plaintiffs expect that Individual Defendants will produce all documents in their possession, custody, or control that are responsive to this request.

Arent Fox LLP
October 15, 2021
Page 9 of 9

Individual Defendants' response to Request 9 further states "Defendant further
incorporates the corporate Defendants' objections and responses relevant to this Request."
No identical request was made to Entity Defendants. Therefore, it is not possible to
determine what "objections and responses" Individual Defendants are attempting to
incorporate and what documents, if any, are being withheld under an objection.

For the foregoing reasons, Individual Defendants' objections to Request 9 are improper;
further, Defendants' responses to Plaintiffs' 1st RFPs were served significantly past the
time specified in Rule 34(b)(2)(A) and, as a result, Defendants' objections were not timely
made and are waived. Plaintiffs expect Individual Defendants to produce all responsive,
non-privileged documents and ESI no later than December 7, 2021. If production has not
been made by December 7, 2021, Plaintiffs may seek all available legal remedies.

- - -

Plaintiffs ask that Defendants reevaluate and amend their responses to address the points
herein. To the extent that any disputes remain, Plaintiffs request to meet and confer with
Defendants at the earliest possible date after which Defendants will be able to obtain the
information needed to address and discuss the issues raised in this letter. Please provide
Plaintiffs with dates on which Defendants are available to meet and confer within the next
two weeks.

Sincerely,

Joseph P. Mueller
Assistant Attorney General
Counsel for the People of the State of New York

/s/ Hai Binh Nguyen
Hai Binh Nguyen
Counsel for Consumer Financial Protection Bureau

/s/ Erin Witte
Erin Witte
Counsel for Commonwealth  of Virginia

/s/ Jon Burke
Jon Burke
Counsel for Commonwealth of Massachusetts

# EXHIBIT 10
## (Attachments Omitted)



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

JANE M. AZIA
BUREAU CHIEF
CONSUMER FRAUDS & PROTECTION BUREAU

November 5, 2021

**By Email**
J.H. Jennifer Lee
Arent Fox LLP
55 Second Street, 21st Floor
San Francisco, CA 94105
jenny.lee@arentfox.com

Re:   *Consumer Financial Protection Bureau et al. v. Nexus Services, Inc. et al.*,
      **5:21-cv-16 (W.D. Va.)**

Dear Counsel:

We, the undersigned counsel, on behalf of all Plaintiffs, write regarding Defendants'
responses to Plaintiffs' First Requests for the Production of Documents and Electronically
Stored Information (Plaintiffs' 1st RFPs), served on Defendants on June 9, 2021.[1]
Defendants' responses were due on July 9, but Defendants did not respond until September
28, 2021, making the responses 81 days overdue. In Defendants' September 28 written
responses, they stated that they would produce "within 21 days" (by October 19, 2021)
materials responsive to the following requests:

- Request to Entity Defendants No. 1: Documents sufficient to show the
  organizational and ownership structure of the Company, including the relationship
  and any agreements (whether written or oral) between or among Libre by Nexus,
  Inc., Nexus Services, Inc., the Individual Defendants, and Nexus-Affiliated Entities.

- Request to Entity Defendants No. 2: Documents sufficient to Identify all of the
  Company's current and former employees and corporate officers (including the
  Individual Defendants), the dates of their employment, their duties and

---

[1] Herein, Plaintiffs' Requests to Defendants Nexus Services, Inc. and Libre by Nexus, Inc. are
referred to as the "Request(s) to Entity Defendants." Plaintiffs' Requests to Defendants Micheal
Donovan, Richard Moore, and Evan Ajin are referred to collectively as the "Request(s) to Individual
Defendants."

Arent Fox LLP
November 5, 2021
Page 2 of 5

responsibilities in the Company, and the reporting or supervisory relationships among those officers and employees.

- Request to Entity Defendants No. 3: Documents sufficient to show all addresses or locations at which the Company is located, has offices, or does business.

- Request to Entity Defendants No. 4: Documents sufficient to show how the Company determined compensation of its employees or agents who interacted or communicated with Consumers Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, including Documents describing or setting forth any sales incentive program or commissions.

- Request to Entity Defendants No. 5(a): Documents sufficient to show the following: a. all Nexus Products and/or Services . . . .

- Request to Entity Defendants No. 8: All Documents the Company provided or made available to any Consumers Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, including written agreements between the Company and Consumers and all Documents incorporated in, referenced by, associated with or presented with such written agreements.

- Request to Entity Defendants No. 10: Documents sufficient to show (a) the native language of and (b) the language(s) spoken and understood by each Consumer who signed up for the Nexus Immigration Bond Service.

- Request to Entity Defendants No. 11(a): All Documents and Communications (including without limitation any written logs, databases, recordings of telephone calls, text messages, emails, and instant and social media messages) Concerning the following topics: a. the Company paying Consumers' immigration bonds . . . ."

- Request to Entity Defendants No. 12: Documents sufficient to Identify and explain the nature of any lawsuits or other legal actions brought by the Company against a Consumer, including for nonpayment for the Nexus Immigration Bond Service.

- Request to Individual Defendants No. 4: All Documents Concerning licenses You have sought or held from any local, state, federal or other governmental or regulatory authority.

- Request to Individual Defendants No. 7: Documents sufficient to show insurance policies held by or covering You Concerning Nexus, Libre, any Nexus-Affiliated Entities, or this Action.

To date, Defendants have produced only 38 documents and have not provided complete responses to the above-listed requests despite promises to do so by October 19.

For example, in response to Request to Entity Defendants No. 4, Defendants produced a single page from a company handbook (CFPB_LIBRE-00000006). Defendants failed to produce the document in its entirety and failed to produce all variations of that document

Arent Fox LLP
November 5, 2021
Page 3 of 5

that existed throughout the covered time period. *See* Plaintiffs' 1st RFPs, Instruction 2. Defendants did not produce any other documents that show how Defendants determined the compensation of their employees or agents who interacted or communicated with Consumers Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services. The request also demands "Documents describing or setting forth any sales incentive program or commissions"; Defendants did not produce responsive documents such as announcements of internal sales-incentive campaigns or promotions in GroupMe, text messages, or emails.

Furthermore, Defendants produced no documents whatsoever in response to Request to Entity Defendants No. 11(a).

In addition, Plaintiffs have already informed Defendants that they improperly implemented and asserted redactions in their first production. Defendants did not fully rectify this issue. The document CFPB_LIBRE-00000036–268 remains redacted and still does not contain any "notation with the basis for the redaction" as required by the ESI order. A "substitute" document was produced on October 29, 2021, but it contained neither the redacted information nor a notation explaining the redaction's basis. Please either produce the document without redactions or state the legal basis for the redaction in accordance with the ESI order.

Please produce all information responsive to the above-listed requests immediately. If you do not intend to produce any more documents in response to these requests, please confirm that fact in writing.

## **ESI Search Terms Disclosure**

We also write to address the Initial ESI Search Terms Disclosure provided by Defendants on October 1, 2021. We reviewed the terms in connection with the list of custodians and the stop words and operators that were provided by Defendants on October 22, 2021.

With respect to Requests to Entity Defendants Nos. 1, 2, 3, 5, 8, 10, 12, 16, 19, 24, 25, 27, 28, and 29, we do not object at this time to Defendants not using ESI search terms. But this is based on our understanding that Defendants will conduct a reasonable search for and produce ESI that is responsive to these requests. Plaintiffs maintain their right to revisit this determination in the future, depending on what search Defendants conduct and what documents Defendants provide in response to these requests.

With respect to Requests to Entity Defendants Nos. 4, 17, and 20, Plaintiffs disagree that ESI search terms are not necessary. As explained above regarding Request 4, Defendants are required to perform a search at least in Defendants' group messaging applications, text messages, and emails. Regarding Requests 17 and 20, responsive documents may be located in Capsule files, emails, text messages, and other written communications, and thus an ESI

Arent Fox LLP
November 5, 2021
Page 4 of 5

search is necessary. Plaintiffs request that Defendants provide ESI search terms and a custodian list for Requests to Entity Defendants Nos. 4, 17, and 20.

With respect to Requests to Entity Defendants No. 11, we believe that Defendants possess and control a significant amount of responsive ESI including in the form of Capsule files, emails, text messages, call recordings, and other communications. Regarding the Capsule files in particular, we do not believe that using search terms would be appropriate for a number of reasons that we can discuss at next week's meet and confer. Instead Plaintiffs request all Capsule files for all consumers during the relevant time period. Search terms should be used to locate other forms of responsive ESI such as emails, text messages and other written communications.

With respect to Request to Entity Defendants No. 13, subpart A, Defendants did not propose search terms and responded that "no ESI search [is] necessary or planned." To the extent that this means Defendants intend to produce all information contained within their Lightspeed records and any other financial or accounting systems, we concur that no ESI search using search terms is necessary for subpart A. If this is not what Defendants intended to convey, then please note that all such records are responsive to this request and should be produced. Subparts A, B, and C of Entity Defendants Request 13 are examples and are not meant to limit the request for "All Documents and Communications Concerning the tracking or accounting of all money received from Consumers or purportedly owed by Consumers for the Nexus Immigration Bond Service."

The terms proposed for Requests to Entity Defendants Nos. 6, 7, 9, 11 (as set forth above), 13 (subparts B and C), 14, 15, 18, 21 and 22 are not drafted in a manner that would locate responsive documents. It appears that Defendants proposed nearly identical words and phrases from the language of Plaintiffs' discovery requests instead of collecting information, for example, from an initial sample of responsive documents and custodians, to develop reasonable terms designed to capture all responsive documents. We have reviewed some of the Defendants' documents in connection with our pre-litigation investigations and can identify documents that are responsive but would not have been located using the terms Defendants have proposed, such as:

***Req. No. 13:***

Request:   All Documents and Communications Concerning the tracking or accounting of all money received from Consumers or purportedly owed by Consumers for the Nexus Immigration Bond Service, including the following: b. Documents and Communications describing the procedures or ways Consumer payments are or should be made....

Search Terms:   As to subpart B – (NEXUS /15 IMMIGRATION /15 BOND) & (PAY! /15 (METHOD PROCEDURE WAY HOW))

Example:   Please see the document sent under separate cover by a secure file transfer and marked as Exhibit A, titled "Libre by Nexus Bank Account Information for Cash Deposit."

Arent Fox LLP
November 5, 2021
Page 5 of 5

This document is responsive to the request, yet an ESI search using the terms proposed by Defendants would not locate this document.

***Req. No. 22:***

Request:   All Documents and Communications Concerning the supervision or auditing of employees or agents of the Company who communicated with or interacted with Consumers.

Search Terms:   (((NEXUS /15 CUSTOMER) /15 (COMMUNICATION! SUPPORT)) /15 (EMPLOYEE AGENT))) & ("QUALITY ASSURANCE" "QUALITY CONTROL" AUDIT ASSESSMENT "QA REPORT")

Example:   Please see the document sent under separate cover by a secure file transfer and marked as Exhibit B and Bates stamped as NEXUSCFPB001997 titled "VERONA CEM." This document is responsive to the request, yet an ESI search using the terms proposed by Defendants would not locate this document.

*          *          *

We look forward to discussing all of these issues with you during our meet and confer on Wednesday, November 10, 2021.

Sincerely,

Joseph P. Mueller
Assistant Attorney General
Counsel for the People of the State of New York

/s/ Hai Binh Nguyen
Hai Binh Nguyen
Counsel for Consumer Financial Protection Bureau

/s/ Erin Witte
Erin Witte
Counsel for Commonwealth of Virginia

/s/ Jon Burke
Jon Burke
Counsel for Commonwealth of Massachusetts

# EXHIBIT 11

| From: | Dearing, Stewart |
|---|---|
| To: | "Bowser, Adam"; "jenny.lee@arentfox.com"; "david.bayles@arentfox.com" |
| Cc: | Mueller, Joseph; Levine, Laura; Gordon, Donald (CFPB); "Nguyen, Hai Binh (CFPB)"; Witte, Erin E.; Burke, Jonathan (AGO) |
| Subject: | CFPB vs. Nexus Services: 11/10 Meet and Confer |
| Date: | Friday, November 12, 2021 2:44:00 PM |
| Attachments: | image001.png |

Adam,

Thanks for speaking with us on 11/10 to meet and confer on Defendants' responses to Plaintiffs' June 9 document requests pursuant to Rule 37 and Judge Hoppe's September 29 Order.  Below you will find a summary of the major points from our conversation.  Please let us know as soon as possible if your recollection differs on any of the below.

We'd like to note that throughout our conversation on 11/10, Defendants took positions on their responses to many of Plaintiffs' document requests that are completely different than what they stated in their 9/28 written responses.  Defendants also raised some objections – such as burden – for example, for the first time during our 11/10 call.  Plaintiffs believe Defendants have waived any such objections by not raising them sooner, but in the interest or reaching a compromise without involving the Court unnecessarily, we ask that Defendants provide revised written responses to the June 9 document requests where necessary to accurately and completely articulate to us Defendants' positions on what they will and will not produce and the reasons for those positions as soon as possible.

On the 11/10 call, Defendants agreed to provide the following within 2 weeks (i.e., by 11/24) and in writing:

1. A summary of whether there are any documents responsive to Plaintiffs' requests within the possession, custody, and control of the companies that are not named Defendants and defined in the document requests as "Nexus Affiliated Entities" and a description of what those documents are.
2. Revised search terms proposals that are more likely to locate responsive documents than Defendants' initial proposal.  Plaintiffs suggested reviewing responsive documents to generate the revised search terms.
3. A statement of whether Defendants preserved and have available for search and review documents of former employees.
4. Revised written responses to Plaintiffs' documents requests where Defendants are taking a different position than what was stated in their 9/28 responses.
5. Defendants' position on Plaintiffs' proposal that Defendants produce all documents from Capsule and Lightspeed (as well as any similar databases Defendants may have used to track consumer communications, payments, and other relevant information).
6. Defendants' proposal (if necessary) on how to handle any concerns about information Defendants' view as "sensitive" and that is contained in responsive documents.  Any such proposal must include a clear definition of the types of information Defendants are concerned about that is objective and circumscribed in scope.
7. Defendants' position on Plaintiffs' proposal on Request 23 addressed to the corporate Defendants.  Plaintiffs' proposal was set forth in Plaintiffs' 10/15 letter.  Defendants also

agreed to provide a summary of what documents Defendants have that were already produced to Plaintiffs before the complaint in this case was filed.

On the 11/10 call, Defendants also agreed to confirm within one week (i.e., by 11/17) whether they intend to produce any other materials in response to requests to which they had promised productions of responsive documents "within 21 days" of their written objections and responses. These requests are also listed in Plaintiffs' 11/5 letter. There are still no documents that have been produced in response to several of these requests.

We also confirmed the following on the 11/10 call:

1. In terms of timeframe, Defendants agree to search for and produce documents from July 2012 to the present.

2. Defendants stated that in their written responses, they did not intend to use the word "relevant" to limit the response to a given request and that they intend to provide all responsive documents, consistent with any other objections they have referenced in their written responses.

3. Defendants stated that they would provide a privilege log for any documents withheld on the basis of privilege consistent with the requirements of Rule 26(b)(5).

4. Defendants stated that they are collecting and preserving documents consistent with the ESI Order, including by collecting and preserving all of the document types listed in that Order where applicable. Defendants stated that they intend to review and provide responsive documents from personal devices, including personal devices of the three named individual Defendants.

5. Defendants stated that the information they view as "sensitive" and that they are concerned about producing to Plaintiffs is the criminal history of their immigrant clients.

6. Plaintiffs stated that we would be unlikely to accept a "statistically significant" amount of Capsule files, Lightspeed files, or communications in response to any of the document requests. Plaintiffs explained that all of those documents contain information that is highly relevant to Plaintiffs' claims and that it would be less burdensome for Defendants to provide all of them to Plaintiffs.

7. Defendants represented that they do not have an unredacted copy of CFPB_LIBRE-00000036-268.

8. On the Requests to the Corporate Defendants:

   a. Request 13 –Plaintiffs stated and that we would consider using search terms to locate written communications responsive to this request, but not for Lightspeed documents or other types of financial records.

   b. Requests 18-19 – Defendants agreed to reevaluate whether they will provide responsive documents, especially in light of Judge Hoppe's ruling on Defendants' motion to quash and stay discovery that Defendants' financial records are relevant to Plaintiffs' claims.

   c. Request 23 – Defendants agreed to provide within 2 weeks a summary of what documents they have that they produced to Plaintiffs during the investigative phase and to respond to Plaintiffs proposal in the 10/15 letter for how to limit Defendants' response to this request. Defendants' counsel stated that he did not know whether Defendants had a copy of the hard-copy production made to New York. Defendants

counsel also did not know the positions Defendants had taken regarding the pre-complaint production made to Massachusetts regarding consent to share those documents.

8.  On the Requests to the Individual Defendants:

   a.  Request 1 – Defendants are taking the position that the documents called for by this request overlap entirely with the requests made to the corporate Defendants.  They will provide any responsive documents that the individual Defendants have in response to the corporate Defendant requests.

   b.  Request 2 – Defendants will consider revising their objection to this request and will see what they can provide in response.

   c.  Request 3 - Defendants will consider revising their objection to this request and will see what they can provide in response.

   d.  Request 4 – Despite stating that documents would be provided "within 21 days," no documents have been provided yet in response to this request.  Defendants indicated that they believed the only responsive document they have is a pastor license that Mr. Donovan possesses.  Defendants agreed to provide that license as soon as possible and to confirm in writing that there are no other responsive documents.  [Though not discussed on 11/10, Plaintiffs also note that the request calls for licenses *sought* or obtained.]

   e.  Request 5 - Defendants will consider revising their objection to this request and will see what they can provide in response.

   f.  Request 6 - Defendants will consider revising their objection to this request and will provide a written proposal of what they can provide in response.

   g.  Request 7 – Defendants stated that the individuals did not have any insurance policies, but that the corporate entities might.  They agreed to supplement their initial disclosures and provide any such insurance policies within 2 weeks.

   h.  Request 8 – Defendants agreed to reconsider their objection and see what they are willing to provide.

   i.  Request 9 – Defendants stated that the individuals do not have any responsive materials that the corporate entities do not have, so the individual defendants do not plan to produce anything in response to this request.

And to avoid any doubt, the above is not intended to waive or limit the objections and positions Plaintiffs have taken in our October 15 and November 5 letters, including that Defendants waived all objections by failing to timely respond to Plaintiffs June 9 document requests.

Best,

Stewart

**Stewart C. Dearing | Assistant Attorney General**
Bureau of Consumer Frauds and Protection
Office of the New York State Attorney General
28 Liberty Street, New York, NY 10005
☎ 212-416-8320 | 🖷 212-416-6003

✉ Stewart.Dearing@ag.ny.gov

http://www.ag.ny.gov/bureau/consumer-frauds-bureau



# EXHIBIT 12

(Attachments Omitted)



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

JANE M. AZIA
BUREAU CHIEF
CONSUMER FRAUDS & PROTECTION BUREAU

November 22, 2021

**By Email**
J.H. Jennifer Lee
Adam Bowser
David G. Bayles
Arent Fox LLP
jenny.lee@arentfox.com
david.bayles@arentfox.com
adam.bowser@arentfox.com

Re:   ***Consumer Financial Protection Bureau et al. v. Nexus Services, Inc. et al.,***
***5:21-cv-16 (W.D. Va.)***

Dear Counsel:

We, the undersigned counsel, on behalf of all Plaintiffs, write regarding Defendants'
responses to Plaintiffs' First Requests for the Production of Documents and Electronically
Stored Information (Plaintiffs' 1st RFPs), served on Defendants on June 9, 2021.[1] In
Defendants' September 28 written responses, they stated that they would produce "within
21 days" (by October 19, 2021) materials responsive to the following requests: Requests to
Entity Defendants 1, 2, 3, 4, 5(a), 8, 10, 11(a) and 12, and Requests to Individual
Defendants 4 and 7.

On November 5, we sent a letter to you explaining that Defendants have not provided
complete responses to the above-listed requests despite promises to do so by October 19. On
November 10, the parties convened a meet-and-confer on these and other issues.
Defendants agreed to confirm whether they intend to produce any other materials in
response to these requests. On November 17, Defendants stated that they "have produced

---

[1] Herein, Plaintiffs' Requests to Defendants Nexus Services, Inc. and Libre by Nexus, Inc. are
referred to as the "Request(s) to Entity Defendants." Plaintiffs' Requests to Defendants Micheal
Donovan, Richard Moore, and Evan Ajin are referred to collectively as the "Request(s) to Individual
Defendants."

Arent Fox LLP
November 22, 2021
Page 2 of 8

to Plaintiffs the documents in their possession that are responsive to the requests for which we indicated documents would be produced within 21 days."[2]

With confirmation that Defendants do not intend to produce additional documents in response to these requests, Plaintiffs write to set forth deficiencies in Defendants' responses. As noted below, there are several documents that Plaintiffs believe are responsive to the requests but that were not produced. Plaintiffs also note that Defendants should be searching for and collecting responsive documents in the possession, custody, or control of each recipient of the requests.[3] And Plaintiffs ask that Defendants explain, for each individual request addressed below, the "diligent search"[4] that they conducted to respond to the request.

<u>Request to Entity Defendants No. 1</u> sought the following: "Documents sufficient to show the organizational and ownership structure of the Company, including the relationship and any agreements (whether written or oral) between or among Libre by Nexus, Inc., Nexus Services, Inc., the Individual Defendants, and Nexus-Affiliated Entities."

> Defendants have produced one document in response to this request: CFPB_LIBRE-00000393. This document consists of Nexus Services, Inc., Libre by Nexus, Inc., and Homes by Nexus' responses to interrogatories and document requests in the action *RLI Insur. Co. v. Nexus Services, Inc.* No. 5:18-cv-66-MFU (W.D. Va. Apr. 30, 2021).

> For several reasons, this document does not satisfy Plaintiffs' request.

> *First*, Defendants did not produce the original interrogatories and requests in the *RLI* action, only the responses. And therefore, it is not clear what questions Defendants are responding to, rendering the exact meaning of the responses unclear.

> *Second*, the document itself does not satisfy the request. This document does not at all reflect the organizational structure of the company. It shows only the Individual Defendants' percentage "shareholder interest" in some unidentified entity or entities.

> In addition, Defendants did not produce documents sufficient to show *any* agreements (written or oral) between or among Libre by Nexus, Inc., Nexus Services, Inc., the Individual Defendants, and/or Nexus-Affiliated Entities. If no such documents (or agreements) exist, please amend Defendants' written responses to the document requests accordingly.

---

[2] Ex. A (Email from A. Bowser to Plaintiffs dated Nov. 17, 2021). Defendants stated that the only "potential exception" to their position is that there is a license held by Defendant Donovan that is responsive to Individual Request No. 4. *Id.*

[3] "Defendants ha[ve] an obligation under the Federal Rules of Civil Procedure to conduct a reasonable search for relevant documents and produce those documents responsive to discovery requests." *Bans Pasta, LLC v. Mirko Franchising, LLC*, No. 7:13-CV-360, 2015 WL 13861049, at *3 (W.D. Va. Feb. 6, 2015).

[4] Ex. A (Email from A. Bowser to Plaintiffs dated Nov. 17, 2021).

Arent Fox LLP
November 22, 2021
Page 3 of 8

Request to Entity Defendants No. 2 seeks the following: "Documents sufficient to Identify all of the Company's current and former employees and corporate officers (including the Individual Defendants), the dates of their employment, their duties and responsibilities in the Company, and the reporting or supervisory relationships among those officers and employees."

> Defendants have produced two documents in response to this request: CFPB_LIBRE-00000391 and CFPB_LIBRE-00000392.

> These documents do not "Identify" Defendants' employees and officers as that term is defined in the requests. To satisfy the request, Defendants must produce documents sufficient to show "the person's full name, title or position, present or last known address, the present or last known business affiliation or place of employment, e-mail address, and telephone number."[5] Please produce such documents.

> In addition, there are employees within the responsive period (July 1, 2012 through the present[6]) who are not identified on this list. A single example is David Quintana, who was a compliance manager for Libre by Nexus during the relevant period.

Request to Entity Defendants No. 3 seeks the following: "Documents sufficient to show all addresses or locations at which the Company is located, has offices, or does business."

> Defendants have produced one document in response to this request: CFPB_LIBRE-00000269.

> It is clear that Defendants have not satisfied their obligations to produce documents in response to this request.

> The document produced appears incomplete, and it is unclear whether its contents cover the responsive period of the document requests—July 1, 2012 through the present.

> For example, in 2017 the website for Libre by Nexus identified offices that are not included anywhere in this document, including "New York, NY."

Request to Entity Defendants No. 4 seeks the following: "Documents sufficient to show how the Company determined compensation of its employees or agents who interacted or communicated with Consumers Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, including Documents describing or setting forth any sales incentive program or commissions."

---

[5] Ex. B (Plaintiffs' 1st RFPs), Definition No. 12.
[6] Ex. B (Plaintiffs' 1st RFPs), Instruction No. 2.

Arent Fox LLP
November 22, 2021
Page 4 of 8

Defendants have produced one three-page document in response to this request: CFPB_LIBRE-00000006-08.

It is clear that Defendants have not satisfied their obligations to produce documents in response to this request.

The document produced is incomplete. The filename of the document as produced says that it is merely a "selection." It is only three-pages long despite that the company has, over many years, employed a great number of consumer-facing employees and agents. The document was not produced with its original metadata as required. And the document on its face identifies itself as part of "Nexus Services, Inc. Standard Operating Procedures – *5th Edition*" (emphasis added).

This document should have been produced in its entirety, as should have all editions of the "Operating Procedures" or any other similar types of documents that were used at any time during the responsive period of the document requests—July 1, 2012 through the present. This is especially important as we believe that the method by which "the Company determined compensation of its employees or agents who interacted with or communicated with Consumers" has changed over time.

In addition, the document that Defendants produced was part of a manual that was meant to be an overview, and we understand that items in the manual are covered in more detail in other company documents. This would of course be necessary, since the single document produced by Defendants is not sufficient to determine "how the Company determined compensation." For example, the document references "New Program Participant Goals[s]" and "Payment Goal[s]" for which "Monthly Payouts" are awarded if the goals are met. But those goals themselves are not in the document. If they are reflected elsewhere, they must be produced. Likewise, Section 2.13.3 of the document produced as CFPB_LIBRE-00000006-08 shows that the company runs "daily & weekly" "contests and promotions" that "can result in prizes and other monetary giveaways." Documents sufficient to show how these contests and promotions worked, were calculated, and determined compensation would also be responsive and should have been produced. These are just some examples of how the production is insufficient to respond to the request.

<u>Request to Entity Defendants No. 5(a)</u> seeks the following: "Documents sufficient to show the following: a. all Nexus Products and/or Services . . . ."

In response to this request, Defendants have produced CFPB_LIBRE-00000375-390. These documents are screenshots of Defendants' public-facing website. And their file names indicate that the screenshots were taken on October 12, 2021.

It is clear that Defendants have not satisfied their obligations to produce documents in response to this request.

Arent Fox LLP
November 22, 2021
Page 5 of 8

*First*, this document reflects only a single point in time—October 12, 2021—rather than the whole responsive period of the document requests—July 1, 2012 through the present.

*Second*, read in conjunction with the definition of "Nexus Products and/or Services," this request requires Defendants to provide documents sufficient to show "any product or service advertised, promoted, marketed, promised, offered or provided to Consumers . . . ."[7] But, at most, this document purports to show only products or services that currently are being advertised, promoted, marketing, promised, or offered. It does not show what products and services were actually *provided* to consumers.

In particular, but without limitation, Defendants should produce all Capsule (or other CRM database) files, which Plaintiffs have explained are responsive to this and other requests in their entirety.

Request to Entity Defendants No. 8 seeks the following: "All Documents the Company provided or made available to any Consumers Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, including written agreements between the Company and Consumers and all Documents incorporated in, referenced by, associated with or presented with such written agreements."

In response to this request, which is for "All Documents," Defendants have produced only 13 documents.

For several reasons, it is clear that Defendants have not satisfied their obligations to produce documents in response to this request.

*First,* none of these documents bear a date on their face of earlier than 2017. Therefore, the documents produced fail to cover the responsive period of the document requests—July 1, 2012 through the present.

*Second*, Defendants have clearly failed to produce *all* Documents the Company provided or made available to any Consumers Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services. We have already provided you with a copy of one such document that was distributed to consumers and was never produced by Defendants to Plaintiffs.[8] This is just one example. Plaintiffs are entitled to all such documents.

Request to Entity Defendants No. 10 seeks the following: "Documents sufficient to show (a) the native language of and (b) the language(s) spoken and understood by each Consumer who signed up for the Nexus Immigration Bond Service."

---

[7] Ex. B (Plaintiffs' 1st RFPs), Definition No. 18.
[8] Ex. C (Letter from Plaintiffs to Defendants dated Nov. 5, 2021), at Ex. A.

Arent Fox LLP
November 22, 2021
Page 6 of 8

Defendants have produced two documents in response to this request: CFPB_LIBRE-00000030 and CFPB_LIBRE-00000441.

These documents do not identify the languages that are native to each Consumer and that are spoken and understood by each Consumer. Rather, they show Consumers' "country of citizenship." If Defendants' position is that no documents exist that specifically and directly respond to this request, Defendants must amend their written responses to the document requests accordingly. In addition, Defendants should produce all Capsule (or other CRM database) files, as they reflect consumer communications and the languages spoken and understood by each consumer.

Moreover, as mentioned repeatedly, CFPB_LIBRE-00000030 is heavily redacted in violation of the Court's Orders governing discovery in this action. Defendants have represented that they do not have an unredacted copy of CFPB_LIBRE-00000036-268—even though it contains information kept by Defendants themselves. Please explain in writing and in detail the "diligent search"[9] that Defendants conducted to locate an unredacted version of this document.

Request to Entity Defendants No. 11(a) seeks the following: "All Documents and Communications (including without limitation any written logs, databases, recordings of telephone calls, text messages, emails, and instant and social media messages) Concerning the following topics: a. the Company paying Consumers' immigration bonds . . . ."

Defendants have not produced a single document in response to this request.

Plaintiffs do not understand how Defendants are maintaining the position that they do not possess or have custody or control over a single document that is responsive to this request, which seeks "All Documents and Communications" on this topic. In the limited Capsule files that the company has produced to Plaintiffs prior to the start of this action, employees have represented to consumers that Defendants pay the consumers' bonds. These and other documents would be responsive to this request.

Also of concern, Defendants have represented that all relevant documents have been produced in response to this request,[10] while also continuing to propose new searches with new search terms for this request.[11] These positions appear inconsistent.

---

[9] Ex. A (Email from A. Bowser to Plaintiffs dated Nov. 17, 2021).
[10] Id. ("Defendants have produced to Plaintiffs the documents in their possession that are responsive to the requests for which we indicated documents would be produced within 21 days.").
[11] Ex. D (Defendants' ESI Search Term Disclosures dated Oct. 1, 2021), at 6.

Arent Fox LLP
November 22, 2021
Page 7 of 8

<u>Request to Entity Defendants No. 12</u> seeks the following: "Documents sufficient to Identify and explain the nature of any lawsuits or other legal actions brought by the Company against a Consumer, including for nonpayment for the Nexus Immigration Bond Service."

> Defendants have not produced a single document in response to this request.

> Plaintiffs are aware of at least one action in which Nexus Services has sued a consumer.[12] Documents identifying this lawsuit were responsive and should have been produced.

> If Defendants are taking the position that they have never been involved in any other lawsuit or legal action brought by the Company against a Consumer, we ask that Defendants please amend their written responses accordingly. Plaintiffs will then reconsider the sufficiency of Defendants' response to this request.

<u>Request to Individual Defendants No. 4</u> seeks the following: "All Documents Concerning licenses You have sought or held from any local, state, federal or other governmental or regulatory authority."

> Defendants have not produced a single document in response to this request.

> If an Individual Defendant has ever sought any such a license, all Documents Concerning that sought license should be produced regardless of whether the license was obtained.

<u>Request to Individual Defendants No. 7</u> seeks the following: "Documents sufficient to show insurance policies held by or covering You Concerning Nexus, Libre, any Nexus-Affiliated Entities, or this Action."

> Defendants have produced no documents in response to this request. Plaintiffs therefore understand that no responsive documents exist. If that is not accurate please tell us and please amend Defendants' written responses to the document requests accordingly.

*       *       *

In addition to the foregoing, please identify everyone who is on the "Executive Team" that is "work[ing] with staff to locate" responsive documents.[13] If that team differs for different requests, please identify the team for each request.

Finally, at the November 10 meet-and-confer, Defendants represented that Defendants may not have retained or preserved complete copies of the productions that they made to Plaintiffs during Plaintiffs' investigations that preceded this action. This is of particular concern because Defendants have refused to provide documents in this action on the basis

---

[12] *See* Ex. E (Cross-Complaint, *Nexus Services, Inc. v. Flores* (Sup. Ct. CA L.A. Cnty. Sept. 27, 2016)).
[13] Ex. D (Defendants' ESI Search Term Disclosures dated Oct. 1, 2021), at 2.

Arent Fox LLP
November 22, 2021
Page 8 of 8

that they were provided to Plaintiffs during the prior investigations. We do not understand how, if Defendants do not have copies of what was previously produced, Defendants can distinguish between documents that were already provided to Plaintiffs and those that still need to be produced in this action. Please explain how Defendants have made these distinctions.

Plaintiffs ask for a response and any responsive documents by Tuesday, November 30.

Sincerely,

Joseph P. Mueller
Assistant Attorney General
Counsel for the People of the State of New York

/s/ Hai Binh Nguyen
Hai Binh Nguyen
Counsel for Consumer Financial Protection Bureau

/s/ Erin Witte
Erin Witte
Counsel for Commonwealth of Virginia

/s/ Jon Burke
Jon Burke
Counsel for Commonwealth of Massachusetts

# EXHIBIT 13

| | |
|---|---|
| **From:** | Bowser, Adam |
| **To:** | Dearing, Stewart; Lee, Jenny; Bayles, David |
| **Cc:** | Mueller, Joseph; Levine, Laura; Gordon, Donald (CFPB); Nguyen, Hai Binh (CFPB); Witte, Erin E.; Burke, Jonathan (AGO) |
| **Subject:** | RE: CFPB vs. Nexus Services: 11/10 Meet and Confer |
| **Date:** | Monday, December 06, 2021 3:21:26 PM |
| **Attachments:** | image001.png |

Counsel,

I am addressing below the issues raised in Joe's November 22, 2021 letter concerning Defendants' responses to particular RFPs, and Stewart's email from Friday afternoon.

**RFP 1** – This request asks for "Documents *sufficient* to show the organizational and ownership structure of the Company." In response to this Request, Defendants produced documents sufficient to show the ownership structure of the Company during the relevant period, in addition to documents and information provided during the underlying administrative proceedings.

Plaintiffs attempt to fault Defendants for not producing the *separate* "original interrogatories and requests in the *RLI* action, only the responses." Defendants did not provide the original discovery requests for good reason. The original interrogatories and requests would not have shown Plaintiffs *anything* about Defendants' organizational or ownership structure. In short, these separate documents are non-responsive to the request at issue. Defendants stand by their productions to Plaintiffs on this topic.

**RFP 2** – In order to moot this issue, Defendants are currently reviewing employee and former employee records to supplement their prior response and will produce a supplemental document once the review is complete.

**RFP 3** – In order to moot this issue, Defendants are currently reviewing older files to determine whether they had any additional office locations and will produce any supplemental, responsive documents once the review is complete.

**RFP 4** – In order to moot this issue, Defendants will be producing the complete Standard Operating Procedures document requested, including prior editions. Defendants are not aware of any other documents responsive to this request, as the "daily & weekly" "contests and promotions" referenced in your letter were and are informal incentives communicated to employees in person.

**RFP 5(a)** – This request asks for "Documents *sufficient* to show … all Nexus Products and/or Services." Defendants' website material produced accurately and sufficiently show the services Defendants offer and have offered since the Company was founded, and therefore Defendants stand by their production.

Plaintiff's request for all Capsule files in response to this request is a non-sequitur. It would be akin to asking a doctor for documents sufficient to show what type of medical services she offered, but then demand every single patients' detailed medical records. Such documents would not only be non-responsive to the generic question posed, but contain highly sensitive and personal information

for which there is no legitimate reason to disclose.  Here too, Plaintiffs' demand for all consumer Capsule files would result in the production of highly sensitive, yet wholly irrelevant, personal information provided to Defendants in confidence and which could potentially be used by the government Plaintiffs to the immigrant consumers' detriment.

**RFP 8 –** In order to moot this issue, Defendants will (re)produce the original agreements predating 2017 (which Plaintiffs already have).  Defendants otherwise state that they did not provide other documents to consumers in the ordinary course of business than what has been produced to Plaintiffs.

**RFP 10 –** As previously explained, Defendants do not track the native language of consumers in the ordinary course of business, and have no documents responsive to this request as drafted. Instead, Defendants track and record the country of origin of consumers.  As an accommodation, Defendants located a document produced in redacted form in an earlier litigation and produced it to Plaintiffs unaltered here because country of origin can be used as a proxy for native language.  As mentioned repeatedly, Defendants did not redact the document originally produced for purposes of this litigation.  As a further accommodation, Defendants created another document with the country of origin information of consumers without any redactions, but this also appears to not be good enough for Plaintiffs.  Defendants see no point in continuing this pointless dispute over documents Plaintiffs do not believe are responsive to this request in any event.

**RFP 11(a)** – Defendants are at a loss as to what documents/Capsule files Plaintiffs contend Defendants previously produced that demonstrate "employees have represented to consumers that Defendants pay the consumers' bonds."  Defendants are aware of no such documents, but if Plaintiffs identify the above-referenced documents, Defendants can draft search terms based on the documents identified.

**RFP 12 –** Defendants continue to maintain that they have no documents responsive to this Request. Filing a cross claim necessarily requires an existing lawsuit or legal action in which to file such a claim.  Put differently, Defendants did not bring "any lawsuits or other legal actions" when Defendants lodged the publicly available cross claim identified by Plaintiffs – the lawsuit was already brought, and not by Defendants.  This document is therefore not even responsive to the request at issue, and Defendants stand by their production.  Indeed, as indicated in Defendants' RFP responses, "[a]ll responses are given on the basis of a good-faith effort to locate requested information, and should not be construed as an admission that the requested information actually exists."  It was thus made clear to Plaintiffs that Defendants were not representing any documents actually existed, but only that they would make a good faith effort to locate and produce responsive documents *if* they existed.

**Individual Defendant RFP 4** – Defendants have previously asked Plaintiffs to clarify if Plaintiffs are seeking Defendant Mike Donovan's ordained minister's license. Can you please clarify, in writing, if that is the case.  Ultimately, the individual Defendants are not aware of any licenses relevant to the claims and defenses at issue in this case, as has been repeatedly communicated to Plaintiffs, and are thus at a loss as to why Plaintiffs continue to beat this dead horse.  Are Plaintiffs seeking the individual Defendants' drivers' licenses?

**Individual Defendant RFP 7 –** The individual Defendants are not aware of any insurance policies covered by this Request, but for the avoidance of doubt, Defendants are searching for prior insurance policies the corporate Defendants had and will produce any policies located.

## Miscellaneous Issues

Defendants' position on producing all databases to Plaintiffs – As indicated repeatedly to Plaintiffs, the Capsule files (and other databases) will contain vast amounts of irrelevant, yet highly sensitive information provided to Defendants in confidence by immigrants, but which could be used by the federal immigration authorities or other law enforcement agencies to the detriment of these vulnerable individuals. Indeed, this is precisely why judges in this district have frequently ordered that Defendants information not be disclosed to immigration authorities without leave of court.

In response to these concerns, the Bureau (through Hai Binh) indicated on our call that federal law would *not* require the Bureau to disclose information obtained in this case to other federal agencies. And I specifically asked for the Bureau's position on this assertion, in writing, so we could properly evaluate our privacy concerns. That has not been provided. Instead, you merely provide a generic statement below that "12 USC 5566 is not a legitimate basis for Defendants to withhold or redact relevant materials." Respectfully, that does not address our concerns (shared by the judges in this district), or meaningfully set forth the Bureau's or other Plaintiffs' positions on what protections or other limitations they are willing to afford immigrant PII. So I will ask again, will you please address these issues?

As it stands now, producing entire databases over to Plaintiffs wholesale without any privacy protections for the immigrant consumers is a non-starter. This is why I suggested we take a more incremental approach by producing a statistically significant sample of Capsule files, so we could address confidentiality and relevance issues on a more refined basis. Specifically, what I proposed, and do so here again, is that we determine the number of total consumer Capsule files, agree to a confidence level and interval (95% and +/- 5% is typical), and determine the sample size needed based on these inputs. For example, if there are 30,000 consumer Capsule files, and using the confidence level and intervals above, a sample size of 379 would be statistically significant. We would then use a random number generator to select 379 numbers between 1 and 30,000, and use those random numbers to pull the corresponding random Capsule files for review, production, and if needed, negotiate additional privacy protections based on the specific personal information that may be contained in these particular files. This would allow each side to obtain a statistically significant production of the "relevant" database files, so we can then assess whether these files are *actually* relevant and without imposing an undue burden on either side. Please let us know Plaintiffs' position on this approach.

Defendants' Access to Prior Productions – From the file transfers received from prior counsel, it appears that we (Arent Fox) have received the complete production(s) made to the Bureau, while we only have partial and limited documents produced to New York. Our files do not reflect any documents produced to Massachusetts or Virginia.

Regards,

Adam

**Adam Bowser**
Partner

Arent Fox LLP | Attorneys at Law
1717 K Street, NW
Washington, DC  20006-5344
202.857.6126 DIRECT | 202.857.6395 FAX
adam.bowser@arentfox.com | www.arentfox.com

---

**From:** Dearing, Stewart <Stewart.Dearing@ag.ny.gov>
**Sent:** Friday, December 3, 2021 2:59 PM
**To:** Bowser, Adam <Adam.Bowser@arentfox.com>; Lee, Jenny <Jenny.Lee@arentfox.com>; Bayles, David <David.Bayles@arentfox.com>
**Cc:** Mueller, Joseph <Joseph.Mueller@ag.ny.gov>; Levine, Laura <Laura.Levine@ag.ny.gov>; Gordon, Donald (CFPB) <Donald.Gordon@cfpb.gov>; Nguyen, Hai Binh (CFPB) <HaiBinh.Nguyen@cfpb.gov>; Witte, Erin E. <EWitte@oag.state.va.us>; Burke, Jonathan (AGO) <jonathan.burke@state.ma.us>
**Subject:** RE: CFPB vs. Nexus Services: 11/10 Meet and Confer

Adam,

Thank you for your responses on 11/24 to some of these outstanding items.  We have a few follow ups below.

(1) We understand Defendants to be stating that all of the documents in question—documents that are responsive to Plaintiffs' requests within the possession, custody, and control of the companies that are not named Defendants and defined in the document requests as "Nexus Affiliated Entities"—are also in in the possession, custody, or control of Defendants and therefore will be subject to Defendants' collection and search process. If that is incorrect, please clarify as soon as possible.

(2) We are reviewing the revised search terms you provided, in conjunction with your prior custodian proposal, to provide feedback.  Upon an initial review, we still think these revised terms will not capture a significant number of responsive documents.  But while we come up with a more appropriate counter-proposal on search terms and custodians, we ask that Defendants run these revised terms in their proposed custodians' documents and provide us with a hit count for each request. For comparison, we would also appreciate if you could provide the total number of custodians' documents that hit on Defendants' revised terms. Any such hit count should also reflect de-duplication across custodians.  We ask that Defendants please provide this information by 12/10 to keep the discussion moving forward.

(3) We are glad to hear that ESI of former employees is being maintained.  Can you please confirm that this covers all ESI, including e.g., text messages and other phone-related data from former employees, and not just Google Drive and email history data; and that the information being preserved includes both information that was on physical devices and information that was stored

remotely, such as information on the systems identified in Defendants' Responses to the New York's First Set of Interrogatories. *See, e.g.*, Responses to Interrogatories 11 and 12.

(4) Based on our conversation on Tuesday, we expect Defendants to provide their revised written responses to Plaintiffs' June 9 document requests and a response to Plaintiffs' 11/22 letter as soon as possible.  If you will not provide those items by Monday 12/6, please provide us with a date on which you expect to provide them.

(5)-(6) As memorialized in my 11/12 email, Defendants agreed during the 11/10 meet and confer to provide the following:

- Defendants' position on Plaintiffs' proposal that Defendants produce all documents from Capsule and Lightspeed (as well as any similar databases Defendants may have used to track consumer communications, payments, and other relevant information).
- Defendants' proposal (if necessary) on how to handle any concerns about information that Defendants' view as "sensitive" and that is contained in responsive documents.  Any such proposal must include a clear definition of the types of information Defendants are concerned about that is objective and circumscribed in scope.

Your email did not provide either of these things. As discussed during the 11/10 call, we need a more concrete description of what documents or information Defendants believe they are entitled to exclude from discovery, citations to any statutes or other legal authorities on which Defendants rely, and a proposal from Defendants on how to handle to move this forward.  And at a minimum, we need the first two of those three items before we can have an informed discussion about this. Lastly, as we stated on the 11/10 call, 12 USC 5566 is not a legitimate basis for Defendants to withhold or redact relevant materials.

(7) We are sorry to hear about your paralegal's father's illness.  If you do not anticipate providing this information to us by Monday 12/6 (the information identified in number 7 of my 11/12 email), we need a date by which you anticipate providing it as soon as possible.

Best,

Stewart

**Stewart C. Dearing | Assistant Attorney General**
Bureau of Consumer Frauds and Protection
Office of the New York State Attorney General
28 Liberty Street, New York, NY 10005
☎ 212-416-8320 | 📠 212-416-6003
✉ Stewart.Dearing@ag.ny.gov
http://www.ag.ny.gov/bureau/consumer-frauds-bureau



**From:** Bowser, Adam <Adam.Bowser@arentfox.com>
**Sent:** Wednesday, November 24, 2021 2:37 PM
**To:** Dearing, Stewart <Stewart.Dearing@ag.ny.gov>; Lee, Jenny <Jenny.Lee@arentfox.com>; Bayles, David <David.Bayles@arentfox.com>
**Cc:** Mueller, Joseph <Joseph.Mueller@ag.ny.gov>; Levine, Laura <Laura.Levine@ag.ny.gov>; Gordon, Donald (CFPB) <Donald.Gordon@cfpb.gov>; Nguyen, Hai Binh (CFPB) <HaiBinh.Nguyen@cfpb.gov>; Witte, Erin E. <EWitte@oag.state.va.us>; Burke, Jonathan (AGO) <jonathan.burke@state.ma.us>
**Subject:** RE: CFPB vs. Nexus Services: 11/10 Meet and Confer

[EXTERNAL]

Counsel,

Please find attached the supplemental ESI search terms proposed by the corporate defendants that we discussed providing during our 11/10 call, along with discovery requests to the Plaintiffs.

On the remaining items on Stewart's list, please see the responses below:

(1)  There should not be any unique responsive documents in the possession of the Non-Parties/Nexus Affiliated Entities related to the Nexus Immigration Bond Service or the Nexus Immigration Bond Service (as those terms are defined in your RFPs), either because the applicable entity has no connection to the Complaint, and/or because the entity would not have a separate database of documents that would not also be searched by the corporate Defendants when Plaintiffs ultimately agree to the search terms to be used and custodians to be searched.

(3)  Yes, ESI associated with former employees is being retained.  If an employee leaves, his or her Google Drive stored documents and email history (with associated attachments) are downloaded from Defendants' Google account and stored on a local server. Such data is being made a part of the ESI pool to be searched, subject to custodian relevance.

(4)  We are still processing Joe's letter received on Monday regarding the RFP production and responses, and believe it makes sense to address both at the same time.

(5-6) As discussed during our 11/10 call, we need to understand primarily the Bureau's position, but the other Plaintiffs' as well, on Plaintiffs' ability not to further disclose immigrant PII or other data Defendants possess that could potentially be used against an immigrant.  To reiterate the hypothetical example I provided during our call, let's say an immigrant notified Libre that they were arrested/charged with a crime, or provided some other information, that could impact their immigration proceeding/status, and this information was noted in the immigrant's file.  Our understanding is that the Bureau likely would be required to provide this information to the DoJ or other appropriate agency, but Hai Binh suggested this was not the case.  And what we would like to understand better is the Bureau's position on its obligation, or lack thereof, to report issues discovered in this litigation to other agencies.

(7) Unfortunately our paralegal who was responsible for the file transfers ████████████ ████████████████████████████, so we are still attempting to track down and summarize the files we obtained with reference to the underlying investigations and former law firms.  We hope to have this information to you shortly.

Have a great Thanksgiving,
Adam

**Adam Bowser**
**Partner**

Arent Fox LLP | Attorneys at Law
1717 K Street, NW
Washington, DC  20006-5344
202.857.6126 DIRECT | 202.857.6395 FAX
adam.bowser@arentfox.com | www.arentfox.com

---

**From:** Bowser, Adam
**Sent:** Wednesday, November 17, 2021 7:34 PM
**To:** Dearing, Stewart <Stewart.Dearing@ag.ny.gov>; Lee, Jenny <Jenny.Lee@arentfox.com>; Bayles, David <David.Bayles@arentfox.com>
**Cc:** Mueller, Joseph <Joseph.Mueller@ag.ny.gov>; Levine, Laura <Laura.Levine@ag.ny.gov>; Gordon, Donald (CFPB) <Donald.Gordon@cfpb.gov>; Nguyen, Hai Binh (CFPB) <HaiBinh.Nguyen@cfpb.gov>; Witte, Erin E. <EWitte@oag.state.va.us>; Burke, Jonathan (AGO) <jonathan.burke@state.ma.us>
**Subject:** RE: CFPB vs. Nexus Services: 11/10 Meet and Confer

Stewart,

With respect to the item you all had asked us to get back to you on by today, I am writing to confirm that, after a diligent search, the Defendants have produced to Plaintiffs the documents in their possession that are responsive to the requests for which we indicated documents would be produced within 21 days.  To further clear up any ambiguity, for the limited number of requests for which no responsive documents were located, we intend to supplement our responses by next week indicating where no responsive documents exist (e.g., the individual Defendants do not have insurance policies responsive to Individual Request No. 7, so we'll indicate as much in our supplemental response).

The only potential exception to the foregoing is Mike Donovan's ordained minister's license I mentioned on our call, and which is ostensibly responsive to Individual Request No. 4.  While I'm still struggling to see the relevance of this license to any claims or defenses at issue in this case, please let us know if Plaintiffs want this license to be produced.

Regards,
Adam

**Adam Bowser**
**Partner**

Arent Fox LLP | Attorneys at Law
1717 K Street, NW
Washington, DC  20006-5344
202.857.6126 DIRECT | 202.857.6395 FAX
adam.bowser@arentfox.com | www.arentfox.com

**From:** Dearing, Stewart <Stewart.Dearing@ag.ny.gov>
**Sent:** Friday, November 12, 2021 5:44 PM
**To:** Bowser, Adam <Adam.Bowser@arentfox.com>; Lee, Jenny <Jenny.Lee@arentfox.com>; Bayles, David <David.Bayles@arentfox.com>
**Cc:** Mueller, Joseph <Joseph.Mueller@ag.ny.gov>; Levine, Laura <Laura.Levine@ag.ny.gov>; Gordon, Donald (CFPB) <Donald.Gordon@cfpb.gov>; Nguyen, Hai Binh (CFPB) <HaiBinh.Nguyen@cfpb.gov>; Witte, Erin E. <EWitte@oag.state.va.us>; Burke, Jonathan (AGO) <jonathan.burke@state.ma.us>
**Subject:** CFPB vs. Nexus Services: 11/10 Meet and Confer

Adam,

Thanks for speaking with us on 11/10 to meet and confer on Defendants' responses to Plaintiffs' June 9 document requests pursuant to Rule 37 and Judge Hoppe's September 29 Order.  Below you will find a summary of the major points from our conversation.  Please let us know as soon as possible if your recollection differs on any of the below.

We'd like to note that throughout our conversation on 11/10, Defendants took positions on their responses to many of Plaintiffs' document requests that are completely different than what they stated in their 9/28 written responses.  Defendants also raised some objections – such as burden – for example, for the first time during our 11/10 call.  Plaintiffs believe Defendants have waived any such objections by not raising them sooner, but in the interest or reaching a compromise without involving the Court unnecessarily, we ask that Defendants provide revised written responses to the June 9 document requests where necessary to accurately and completely articulate to us Defendants' positions on what they will and will not produce and the reasons for those positions as soon as possible.

On the 11/10 call, Defendants agreed to provide the following within 2 weeks (i.e., by 11/24) and in writing:

1.   A summary of whether there are any documents responsive to Plaintiffs' requests within the possession, custody, and control of the companies that are not named Defendants and defined in the document requests as "Nexus Affiliated Entities" and a description of what those documents are.

2.   Revised search terms proposals that are more likely to locate responsive documents than Defendants' initial proposal.  Plaintiffs suggested reviewing responsive documents to generate the revised search terms.

3.   A statement of whether Defendants preserved and have available for search and review documents of former employees.

4.   Revised written responses to Plaintiffs' documents requests where Defendants are taking a different position than what was stated in their 9/28 responses.

5.   Defendants' position on Plaintiffs' proposal that Defendants produce all documents from Capsule and Lightspeed (as well as any similar databases Defendants may have used to track consumer communications, payments, and other relevant information).

6.   Defendants' proposal (if necessary) on how to handle any concerns about information Defendants' view as "sensitive" and that is contained in responsive documents.  Any such

proposal must include a clear definition of the types of information Defendants are concerned about that is objective and circumscribed in scope.

7.   Defendants' position on Plaintiffs' proposal on Request 23 addressed to the corporate Defendants.  Plaintiffs' proposal was set forth in Plaintiffs' 10/15 letter.  Defendants also agreed to provide a summary of what documents Defendants have that were already produced to Plaintiffs before the complaint in this case was filed.

On the 11/10 call, Defendants also agreed to confirm within one week (i.e., by 11/17) whether they intend to produce any other materials in response to requests to which they had promised productions of responsive documents "within 21 days" of their written objections and responses. These requests are also listed in Plaintiffs' 11/5 letter.  There are still no documents that have been produced in response to several of these requests.

We also confirmed the following on the 11/10 call:

1.   In terms of timeframe, Defendants agree to search for and produce documents from July 2012 to the present.

2.   Defendants stated that in their written responses, they did not intend to use the word "relevant" to limit the response to a given request and that they intend to provide all responsive documents, consistent with any other objections they have referenced in their written responses.

3.   Defendants stated that they would provide a privilege log for any documents withheld on the basis of privilege consistent with the requirements of Rule 26(b)(5).

4.   Defendants stated that they are collecting and preserving documents consistent with the ESI Order, including by collecting and preserving all of the document types listed in that Order where applicable.  Defendants stated that they intend to review and provide responsive documents from personal devices, including personal devices of the three named individual Defendants.

5.   Defendants stated that the information they view as "sensitive" and that they are concerned about producing to Plaintiffs is the criminal history of their immigrant clients.

6.   Plaintiffs stated that we would be unlikely to accept a "statistically significant" amount of Capsule files, Lightspeed files, or communications in response to any of the document requests.  Plaintiffs explained that all of those documents contain information that is highly relevant to Plaintiffs' claims and that it would be less burdensome for Defendants to provide all of them to Plaintiffs.

7.   Defendants represented that they do not have an unredacted copy of CFPB_LIBRE-00000036-268.

8.   On the Requests to the Corporate Defendants:

   a.   Request 13 –Plaintiffs stated and that we would consider using search terms to locate written communications responsive to this request, but not for Lightspeed documents or other types of financial records.

   b.   Requests 18-19 – Defendants agreed to reevaluate whether they will provide responsive documents, especially in light of Judge Hoppe's ruling on Defendants' motion to quash and stay discovery that Defendants' financial records are relevant to Plaintiffs' claims.

   c.   Request 23 – Defendants agreed to provide within 2 weeks a summary of what

documents they have that they produced to Plaintiffs during the investigative phase and to respond to Plaintiffs proposal in the 10/15 letter for how to limit Defendants' response to this request.  Defendants' counsel stated that he did not know whether Defendants had a copy of the hard-copy production made to New York.  Defendants counsel also did not know the positions Defendants had taken regarding the pre-complaint production made to Massachusetts regarding consent to share those documents.

8.   On the Requests to the Individual Defendants:

   a.   Request 1 – Defendants are taking the position that the documents called for by this request overlap entirely with the requests made to the corporate Defendants.  They will provide any responsive documents that the individual Defendants have in response to the corporate Defendant requests.

   b.   Request 2 – Defendants will consider revising their objection to this request and will see what they can provide in response.

   c.   Request 3 - Defendants will consider revising their objection to this request and will see what they can provide in response.

   d.   Request 4 – Despite stating that documents would be provided "within 21 days," no documents have been provided yet in response to this request.  Defendants indicated that they believed the only responsive document they have is a pastor license that Mr. Donovan possesses.  Defendants agreed to provide that license as soon as possible and to confirm in writing that there are no other responsive documents.  [Though not discussed on 11/10, Plaintiffs also note that the request calls for licenses *sought* or obtained.]

   e.   Request 5 - Defendants will consider revising their objection to this request and will see what they can provide in response.

   f.   Request 6 - Defendants will consider revising their objection to this request and will provide a written proposal of what they can provide in response.

   g.   Request 7 – Defendants stated that the individuals did not have any insurance policies, but that the corporate entities might.  They agreed to supplement their initial disclosures and provide any such insurance policies within 2 weeks.

   h.   Request 8 – Defendants agreed to reconsider their objection and see what they are willing to provide.

   i.   Request 9 – Defendants stated that the individuals do not have any responsive materials that the corporate entities do not have, so the individual defendants do not plan to produce anything in response to this request.

And to avoid any doubt, the above is not intended to waive or limit the objections and positions Plaintiffs have taken in our October 15 and November 5 letters, including that Defendants waived all objections by failing to timely respond to Plaintiffs June 9 document requests.

Best,

Stewart

**Stewart C. Dearing | Assistant Attorney General**

Bureau of Consumer Frauds and Protection

Office of the New York State Attorney General

28 Liberty Street, New York, NY 10005

☎ 212-416-8320 | 🖨 212-416-6003

✉ Stewart.Dearing@ag.ny.gov

http://www.ag.ny.gov/bureau/consumer-frauds-bureau



**IMPORTANT NOTICE:** This e-mail, including any attachments, may be confidential, privileged or otherwise legally protected. It is intended only for the addressee. If you received this e-mail in error or from someone who was not authorized to send it to you, do not disseminate, copy or otherwise use this e-mail or its attachments. Please notify the sender immediately by reply e-mail and delete the e-mail from your system.

CONFIDENTIALITY NOTICE: This e-mail and any attachments are for the exclusive and confidential use of the intended recipient. If you received this in error, please do not read, distr bute, or take action in reliance upon this message. Instead, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

CONFIDENTIALITY NOTICE: This e-mail and any attachments are for the exclusive and confidential use of the intended recipient. If you received this in error, please do not read, distr bute, or take action in reliance upon this message. Instead, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

# EXHIBIT 14

## (Attachments Omitted)



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF ECONOMIC JUSTICE
CONSUMER FRAUDS & PROTECTION BUREAU

December 14, 2021

**By Email**
J.H. Jennifer Lee
Adam Bowser
David G. Bayles
Arent Fox LLP
jenny.lee@arentfox.com
david.bayles@arentfox.com
adam.bowser@arentfox.com

Re:  ***Consumer Financial Protection Bureau et al. v. Nexus Services, Inc. et al.,***
      **5:21-cv-16 (W.D. Va.)**

Counsel:

We write on behalf of all Plaintiffs to respond to the issues raised by Mr. Bowser's December 6, 2021 email, as well as a few other outstanding issues.

## I.   <u>Responses to Defendants' Statements Concerning Particular Document Requests Issued by Plaintiffs</u>

At the outset, we reiterate that Plaintiffs' position is that Defendants have waived all of their objections to our document requests for numerous reasons. We are engaging in these discussions in an attempt to resolve disputes without Court intervention. But we reserve our right to assert that position before the Court.

<u>Plaintiffs' Request for the Production of Documents ("RFP") 1 Issued to Libre by Nexus Inc. and Nexus Services, Inc. (collectively, "Entity Defendants")</u>

> We have explained in Plaintiffs' Letter dated November 22, 2021 ("Plaintiffs' November 22 Letter") why the one document provided in response to this request is, on its face, not "sufficient to show the organizational and ownership structure of the Company." Nevertheless, we understand that Entity Defendants will not be producing anything in addition to the one document they provided. Therefore, the parties have a disagreement about the sufficiency of Defendants' response.

1

<u>Plaintiffs' RFP 4 Issued to Entity Defendants</u>

Plaintiffs understand that Defendants' position is that there are no documents that show the "daily & weekly" "contests and promotions" referenced in Plaintiffs' November 22 Letter. If that is incorrect please let us know.

Your email did not address the "New Program Participant Goals[s]" and "Payment Goal[s]" for which "Monthly Payouts" are awarded if the goals are met. If there are records that show these goals and payouts, they are responsive to this request as they would be required to show how the Company determined the compensation of its employees or agents who interacted or communicated with Consumers.

Plaintiffs' understanding is that some or all of Defendants' incentive programs were communicated to employees via written messages. Such communications are responsive to this request, especially given Defendants' apparent position that there are no other documents that reflect the terms of these programs.

<u>Plaintiffs' RFP 5(a) Issued to Entity Defendants</u>

In Plaintiffs' November 22 Letter, Plaintiffs explained that the screenshots of Defendants' public-facing website—which were taken on October 12, 2021 and are the only documents that were produced in response to this request—do not show what products and services were actually provided to consumers.

We explained that Capsule records  do show what products and services were actually provided to consumers. These are easily producible documents that are responsive to this request. If Defendants have other documents that would satisfy this request—for example, recordkeeping of which consumers received which products and services—they are responsive too. But Defendants only have produced recent screen captures of the most recent iteration of their website.

In addition, Plaintiffs believe that Defendants' products and services have varied during the time period contemplated by these requests.  Defendants have failed to provide documents that are sufficient to show the nature and extent of that variation.

Given Defendants' position that they stand by their production and will not produce any additional documents, the parties have a disagreement about the sufficiency of Defendants' response.

<u>Plaintiffs' RFP 8 Issued to Entity Defendants</u>

Request to Entity Defendants No. 8 seeks "All Documents the Company provided or made available to any Consumers Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services . . . ."  Plaintiffs appreciate that Defendants are now willing to produce "the original agreements predating 2017. However, Defendants further "state that they did not provide other documents to consumers *in the ordinary course of business* than what has been produced to Plaintiffs." (emphasis added.) That is not a valid legal basis to object or withhold

2

responsive documents. And Defendants are raising this limitation on their response to this request for this first time now; it did not appear in Defendants' written responses and objections. Plaintiffs' request seeks all documents provided or made available to any Consumers, and Plaintiffs ask that Defendants provide all responsive documents.

In addition, Plaintiffs' Letter dated November 5, 2021 ("Plaintiffs' November 5 Letter") attached an example of one document that was provided to consumers (Ex. A thereto) but that Defendants have never produced to Plaintiffs. Given the document's contents (i.e., bank account numbers and instructions for consumers to make payments), it is hard to imagine that this document (and others like it) were not presented to consumers in the "ordinary course of business." Given Defendants' silence on this example and their response to this request, Plaintiffs understand that Defendants are acknowledging that additional responsive documents exist but that Defendants will not produce them for unspecified reasons. Therefore, the parties have a disagreement about the sufficiency of Defendants' response.

We further understand that Capsule records include and reflect copies of documents that were given to consumers and, therefore, those records are responsive to this request.

## Plaintiffs' RFP 10 Issued to Entity Defendants

Request to Entity Defendants No. 10 seeks the following: "Documents sufficient to show (a) the native language of and (b) the language(s) spoken and understood by each Consumer who signed up for the Nexus Immigration Bond Service." In response, Defendants state "Defendants do not track the native language of consumers *in the ordinary course of business* . . . ." (emphasis added.) That is not a valid legal basis to object or withhold responsive documents. And Defendants are raising this limitation on their response to this request for this first time now; it did not appear in Defendants' written responses and objections.

The limited number of Capsule files Plaintiffs have from their pre-Complaint investigations reflect consumer communications, including the languages spoken and understood by each consumer on a regular basis. In other words, the vast majority of Capsule files that Plaintiffs have seen include some reference to or indication of the language spoken by the consumer. Therefore, they are responsive to this request by showing the languages spoken and understood by each Consumer. During the November 10, 2021 meet and confer, Plaintiffs asked that Defendants' counsel review some Capsule files to get a better sense of their content. We reiterate that request, as such a review would show that the Capsule files, for this and for the request as a whole, are all responsive and should all be produced.

## Plaintiffs' RFP 11(a) Issued to Entity Defendants

Defendants state that they "are at a loss as to what documents/Capsule files Plaintiffs contend Defendants previously produced that demonstrate 'employees have represented to consumers that Defendants pay the consumers' bonds.'" We have attached some examples. (*See* Ex. A, Excerpts from Capsule Files Produced to

3

Virginia). During the November 10, 2021 meet and confer, Plaintiffs asked that Defendants' counsel review some Capsule files to get a better sense of their content. We reiterate that request, as such a review would show that the Capsule files, for this and for the request as a whole, are all responsive and should all be produced. Plaintiffs reiterate that Capsule records are easily producible documents that are responsive to this request as well as several others.

<u>Plaintiffs' RFP 12 Issued to Entity Defendants</u>

Thank you for the explanation as to why Entity Defendants did not produce documents sufficient to identify the "one action in which Nexus Services has sued a consumer" that was identified in my letter. Plaintiffs disagree that this document was not responsive, as the request speaks not just in terms of initiating lawsuits but also bringing "other legal actions." Plaintiffs believe that a reasonable interpretation of the request would include counterclaims, as well as arbitration proceedings.

Plaintiffs simply want to know of all lawsuits or legal actions in which the Company has asserted claims against a Consumer. If no others exist, we would appreciate if Defendants could tell us to resolve this issue simply and efficiently. If Defendants are still taking the position that that information would not be responsive, please confirm that position so that Plaintiffs may issue another request.

<u>Plaintiffs' Request 4 Issued to Individual Defendants</u>

We are seeking all documents responsive to our requests, including this request. Please provide all documents that are responsive. If you have an objection to providing specific responsive documents, please state your position in writing by amending your written responses, and we can discuss further.

As indicated in the request, Plaintiffs are also seeking all documents concerning any license that was ***sought*** by Individual Defendants. If Individual Defendants have never sought any license that relates, whether directly or indirectly, to Libre, Nexus, the Nexus Immigration Bond Service, the Nexus Immigration Legal Services, or any of the factual allegations in the Complaint, we request that Defendants tell us and amend their written responses accordingly. Plaintiffs will then reconsider the sufficiency of Defendants' response to this request.

## II.    <u>The Production of Capsule/Lightspeed Files</u>

The Capsule files are responsive to multiple document requests as set forth above and as discussed previously. Producing a limited sampling process of Capsule records would be insufficient to satisfy Defendants' obligation to produce all responsive documents in this action.

In addition, Defendants also have still not stated clearly or specifically what their "privacy" concerns are with respect to the Capsule or Lightspeed files. In Plaintiffs' December 3, 2021 email, we clearly said that "we need a more concrete description of what documents or information Defendants believe they are entitled to exclude from discovery, [and] citations

4

to any statutes or other legal authorities on which Defendants rely" in order for us to "have an informed discussion about this." Defendants have not provided either of these things, and Plaintiffs' unified position is that Defendants' vaguely articulated "privacy" concerns are not a lawful basis for withholding critical and highly relevant documents that are responsive to discovery requests in this action.

With respect to the sampling process set forth in your letter, we understand Defendants to be proposing sampling as a process by which the parties would later "negotiate additional privacy protections based on the specific personal information that may be contained in" an initial limited sample of Capsule documents. This approach is not necessary or appropriate, particularly when Defendants continue to fail to articulate a proper legal basis for such concerns. To date, Defendants have not provided any legal basis for why the production should be limited to a "sampling" of documents that have already been identified as responsive.

Further, Plaintiffs and Defendants have negotiated a protective order in this case that provides protections for documents marked confidential. Defendants can mark files they believe warrant "privacy protections" as confidential pursuant to that order. This approach continues to be appropriate and is consistent with the Federal Rules.

Briefs and court orders from New York's and Virginia's pre-complaint litigation with Nexus and Libre are also instructive here. They address numerous "privacy" issues raised by your clients, including concerns about sharing data with criminal law enforcement. The New York Supreme Court and the First Department found that those concerns were unfounded and were not a basis to withhold materials from lawful requests for production. Additionally, the Richmond Circuit Court in Virginia analyzed this issue and similarly found that "Nexus enjoys no attorney-client, doctor-patient or priest-penitent privilege. Nexus is a private business making money by providing services to immigrants from foreign companies." August 7, 2018 Letter Opinion, *Commonwealth v. Nexus Services, Inc.*, Case No. CL18-2037 at 4-5.

Finally, with respect to the "burden" concern mentioned in your most recent email, Plaintiffs continue to take the position that the most efficient way for Defendants to respond to many of Plaintiffs' requests is to simply produce all Capsule records. Engaging in some other more complicated methodology, such as the sampling procedure proposed in your email, will create additional unnecessary burden while also failing to provide all responsive documents. Defendants must factually substantiate any claims of undue burden and have failed to do so. In addition, no such objection was adequately made by Defendants in their written responses to Plaintiffs' requests for production as required by the Federal Rules of Civil Procedure.

### III.   Pre-Complaint Productions to Plaintiffs by Defendants

Thank you for clarifying what documents Defendants possess from prior pre-complaint productions. Given Defendants' position that they do not possess, or have custody or control of, a large amount of the materials that were provided pre-complaint, it is impossible for Defendants to make the distinction between documents that were already provided to Plaintiffs and those that still need to be produced in this action. Plaintiffs ask that

5

Defendants withdraw their general objection to producing documents to Plaintiffs in this case on the basis that they were previously provided.

In addition, Mr. Shoreman stated to the Court in this action that Libre itself should have copies of the productions made to New York. *See* Ex. B, Excerpt from Transcript of September 23, 2021 Hearing at 23:8-11 ("We do have some investigation [sic] from an investigation in New York. We don't have the production, which was enormous, but that's maintained by Nexus, or they should have a copy of it themselves."). We also note that John Shoreman, who was involved in making pre-complaint productions to New York, continues to represent Libre as counsel of record in other actions despite representing to the Court that he has an irreconcilable conflict that precluded his continued representation in this case. As such, Mr. Shoreman, and any other current or past agents of Defendants, should be able to assist Arent Fox in locating any missing New York productions.

To help move this forward, please provide us with the following as soon as possible and by December 21, 2021:

(A) Please identify the dates of production and the bates ranges of the "partial and limited documents produced to New York" that Defendants preserved and retained.
(B) Please explain why Arent Fox does not have access to all of the NY productions and to any of the VA and MA productions. We'd like to verify that these productions were properly preserved in accordance with Defendants' responsibilities.
(C) And if responsive documents were destroyed, whether intentionally or by failure to implement adequate retention policies, please state with specificity the materials that were destroyed and the circumstances of such destruction.

## IV.   Defendants' Failure to Explain Their Search

Defendants still have not explained, for any of the requests, the "diligent search" that they conducted to identify responsive materials as we requested in Plaintiffs' November 22 Letter. We ask that Defendants provide these explanations to us, for each applicable request, as soon as possible.

## V.   Defendants' Failure to Respond

Plaintiffs note that we are still waiting on the following from Defendants:

(A) Revised written responses to Plaintiffs' document requests where Defendants are taking a different position than what was stated in their September 28, 2021 responses. (which Defendants agreed to provide within two weeks of the November 10 meet and confer as memorialized in Plaintiffs' November 12, 2021 email)
(B) A response to our proposal from Plaintiffs' letter dated October 15, 2021 concerning the response to Request 23 (which Defendants also had agreed to provide within two weeks of the November 10 meet and confer as memorialized in Plaintiffs' November 12, 2021 email).
(C) A response to #3 from Plaintiffs' December 3, 2021 email regarding the status of ESI preservation.
(D) Hit counts on Defendants' revised search terms, which we asked you to run by December 10, 2021 in our December 3, 2021 email.

Please provide these items as soon as possible.

## VI.     <u>Defendants' Failure to Produce Documents by November 16</u>

Finally, Defendants' September 28 written responses to Plaintiffs' document requests indicated that Defendants would provide documents in response to numerous requests within 49 days, or by November 16. Plaintiffs received no production of any such documents by or after that date. For some requests, Defendants stated that they would use search terms, which the parties are still negotiating. But Defendants did not indicate that they would use search terms for the following requests: 5(d), (e); 11(b), (c); 16; 25; and 28. Therefore, responsive documents should have been produced by now. Please provide responsive documents immediately or explain why Defendants still have not produced any documents in response to these requests.


Sincerely,

/s/ Stewart Dearing
Stewart Dearing
Counsel for the People of the State of New York

/s/ Hai Binh Nguyen
Hai Binh Nguyen
Counsel for Consumer Financial Protection Bureau

/s/ Erin Witte
Erin Witte
Counsel for Commonwealth of Virginia

/s/ Jon Burke
Jon Burke
Counsel for Commonwealth of Massachusetts

# EXHIBIT 15

| From: | Dearing, Stewart |
|---|---|
| To: | Bowser, Adam; Burke, Jonathan (AGO); Lee, Jenny; Bayles, David |
| Cc: | Mueller, Joseph; Levine, Laura; Gordon, Donald (CFPB); Nguyen, Hai Binh (CFPB); Witte, Erin E. |
| Subject: | RE: CFPB vs. Nexus Services: 11/10 Meet and Confer |
| Date: | Friday, January 14, 2022 1:31:00 PM |
| Attachments: | image001.png |

Adam,

I write to respond to the remaining issues raised in your 12/22 email on behalf of all Plaintiffs.

**Capsule Files**

On the capsule files, as we understand it, the two reasons that Defendants are offering to justify the sampling proposal are (1) to address consumer privacy issues and (2) to alleviate burden put on Defendants by having to produce the Capsule files.  Given the high level of relevance of these files, we disagree that your stated reasons warrant the production of a "sampling" production of these files. Moreover, Defendants have waived all of their objections to our document requests.  Plaintiffs routinely handle private consumer information and are required to protect it. Defendants have no authority to redact non-privileged information from relevant discovery requests. Indeed, the claimed burden in doing so is both self-created and unjustified.

In the spirit of moving discovery forward, we propose revising the Protective Order as follows:

> 6.1 <u>Basic Principles</u>. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this Action only for prosecuting, defending, or attempting to settle this Action unless another use is authorized by this Order or ~~permitted~~ required by federal statute or regulation applicable to the Bureau or ~~permitted~~ required by any law or regulation applicable to the States. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order and as ~~permitted~~ required by federal statute or regulation applicable to the Bureau or ~~permitted~~ required by any law or regulation applicable to the States. When the Action has been terminated, a Receiving Party must comply with the provisions of section 12 below (FINAL DISPOSITION). Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

Please let us know as soon as possible (and no later than January 21, 2022) if these edits would resolve Defendants concerns.

**Pre-Complaint Productions**

On the MA pre-complaint productions, Jon is working separately with you to try to resolve the issues.  But on the non-MA pre-complaint productions, your email does not address any of the outstanding issues.  Our October 15, 2021 letter indicates that at this time, we are no longer asking Defendants to produce all of the pre-complaint productions.  Instead, as a compromise, we asked Defendants to reproduce only the documents provided to NY or VA that contained redactions or were provided in hard copy format.  We explained that the redactions were improper and in violation of court orders and that scanning the hard copy documents would be unduly burdensome for Plaintiffs (and unnecessarily so, given that Defendants keep those files in electronic format in the

ordinary course of business).  Plaintiffs have asked for over two months now for an answer to that proposal but have yet to receive an answer.  Accordingly, it seems we have a disagreement.

**

If we do not receive a further response from you by January 28, 2022 on any of the issues raised by any of our letters and emails or during the 11/10 meet and confer concerning Defendants' responses to Plaintiffs document requests and interrogatories, we will take your silence to mean the parties have a disagreement on those issues.

Best,

Stewart

**Stewart C. Dearing | Assistant Attorney General**
Bureau of Consumer Frauds and Protection
Office of the New York State Attorney General
28 Liberty Street, New York, NY 10005
☎ 212-416-8320 | 🖨 212-416-6003
✉ Stewart.Dearing@ag.ny.gov
http://www.ag.ny.gov/bureau/consumer-frauds-bureau



**From:** Bowser, Adam <Adam.Bowser@arentfox.com>
**Sent:** Wednesday, December 22, 2021 7:14 PM
**To:** Burke, Jonathan (AGO) <jonathan.burke@state.ma.us>; Dearing, Stewart <Stewart.Dearing@ag.ny.gov>; Lee, Jenny <Jenny.Lee@arentfox.com>; Bayles, David <David.Bayles@arentfox.com>
**Cc:** Mueller, Joseph <Joseph.Mueller@ag.ny.gov>; Levine, Laura <Laura.Levine@ag.ny.gov>; Gordon, Donald (CFPB) <Donald.Gordon@cfpb.gov>; Nguyen, Hai Binh (CFPB) <HaiBinh.Nguyen@cfpb.gov>; Witte, Erin E. <EWitte@oag.state.va.us>
**Subject:** RE: CFPB vs. Nexus Services: 11/10 Meet and Confer

[EXTERNAL]

Counsel,

I write to address various discovery issues recently raised by Plaintiffs.  Please let us know if you would like to schedule a call to discuss these matters further.

-
**Request by Massachusetts for an Extension**

Our clients agree to providing Massachusetts the requested extension up to January 15 to respond Defendants' Requests for Production of Documents.

We do not agree that serving discovery requests operates as consent to the disclosure of information specifically protected under G.L. c. 93A, s. (6)(6) to third parties, and do not see any support for a contrary view in this law. We also would like to understand the "additional restrictions for a small number of documents" agreed to by Massachusetts, and the documents subject to these protections, so we can evaluate how to address these documents. Until we can reach an agreement, which may be resolved by our request for revisions to the current protective order as discussed below, we expect Massachusetts can produce documents responsive to our requests that are not subject to G.L. c. 93A, s. (6)(6) or the parties' prior agreement, and can supplement its production, as needed, once we reach an agreement about Defendants' prior protected production(s).

**Document Production Issues**

Due to my recent bout with COVID, I am still working through certain items identified in Stewart's December 14 letter with our clients, but I would like to address the following issues here.

<u>Capsule Files and Privacy Issues</u>

First, as to the Production of Capsule/Lightspeed records, we are not proposing a sampling method simply to address privacy concerns that may later arise, although sampling would make privacy concerns more manageable. Rather, the primary purpose is to reduce the indisputable burden that would arise from having to review and produce tens of thousands of individual immigrant consumer files, *and* having to address the numerous discrete privacy issues that would arise in these tens of thousands of files.

For the same reason pollsters do not have to call every telephone subscriber, but can rely on a statistically significant sample size, to conduct a scientifically accurate survey, Plaintiffs can likewise obtain a significantly significant sample size of Capsule and Lightspeed files. Statistically significant sampling is routinely conducted in litigation, particularly where, like here, Plaintiffs are alleging Defendants *routinely* engage in certain practices. *See*, *e.g.*, Compl. ¶ 117. While we certainly dispute Plaintiffs' allegations, the point here is a statistically significant sample of Capsule and other files will, by definition, provide Plaintiffs a representative sample of such files. That is why we are proposing this method as an initial solution. If, for whatever reason, Plaintiffs believe they "need" more Capsule files after receiving a statistically significant sample, we can address that at such time. But demanding tens of thousands of files now, without regard to actual need or relevance – which the parties can better assess after conducting the sampling – is not necessary, let alone proportional to the needs of the case in our view. We believe Judge Hoppe would agree based on the guidance provided during the hearing.

Second, as to representative privacy issues, as I previously explained, immigrants frequently provide Defendants with information in confidence that could potentially be used against these vulnerable individuals in their immigration proceedings. For example, an immigrant in a sanctuary jurisdiction

could have been arrested for, e.g., a DUI or other crime, that would not be reported to immigration authorities, and they may inform Defendants of this fact, which can be memorialized in their Capsule file.  Immigrants may also convey other seemingly innocuous information to Defendants, such as coming to America for a better life for themselves and their children, which could be taken out of context in an asylum proceeding. In either case, such information could potentially be used against the immigrant in their immigration proceedings.

And a review of the Protective Order negotiated with prior counsel would permit such a result in our view.  Specifically, even if material is designated Confidential, Plaintiffs can still disclose the material if "permitted by federal statute or regulation applicable to the Bureau or permitted by any law or regulation applicable to the States."  ECF No. 51, ¶ 6.1; *see also* ¶ 6.1(j).  This is such a vague "restriction" as to be meaningless.  And there does not appear to be a notice-and-challenge mechanism in the Protective Order that would require Plaintiffs to notify us if they believed a law or regulation did "permit" disclosure of an immigrant's confidential information to other federal or state agencies.  In other words, there does not appear to be any restriction on Plaintiffs unilaterally determining that some unspecified law allowed Confidential information supplied by an immigrant to be disclosed to a law enforcement agency, and that information to be used against these vulnerable individuals who provided information to Defendants in confidence.

For these reasons, we believe the Protective Order should be modified to better protect immigrant consumer personally-identifiable information.  To put a finer point on it, our clients are not concerned about Plaintiffs using any information obtained during discovery against *Defendants*.  They are concerned that Plaintiffs can use information provided by immigrants in confidence to Defendants against these vulnerable individuals *outside this case*.  And Rule 26(c) specifically allows the Court to enter a revised Protective Order to protect these third parties from annoyance, embarrassment or oppression.  And indeed, the judges in this district have done precisely that with respect to the exact information at issue, including in the RLI case.  There, the court ordered that none of Nexus's "documents or the information learned from these documents" could be used "to arrest or cause the arrest of any bond holders or persons identified in the documents."  ECF No. 59 at 33.  The court also ruled that documents produced by Defendants could not be shared with "government agencies or immigration courts, without permission of Nexus or this court."

Ultimately, what we are asking for is a similar framework that would allow Plaintiffs to prosecute their claims in this case against Defendants, but which would protect any information provided by or concerning immigrants from being used against these individuals absent permission of the Court.  Please let us know if Plaintiffs are amenable to such an approach, and if so, we can propose specific language to modify the existing Protective Order.

        Search Terms Results

We have been working with the client's discovery vendor to obtain the requested hit report for the ESI search terms previously proposed.  Unfortunately, there were technical problems and limitations that arose from how the prior search terms were constructed in certain instances.  We are including revised proposed search terms here, along with a chart explaining the changes.  We do not view these changes as substantive, but wanted to confirm you did not have any objection to the use of

these revised search terms prior to running the report.  Please advise.

       <u>Pre-Complaint Productions</u>

As previously discussed, Judge Hoppe directed Plaintiffs to avoid duplicative discovery.  As far as we understand, only Massachusetts is subject to any restriction that would prevent it from producing the documents Defendants previously produced in the underlying administrative investigation, and as discussed above, we are still attempting to understand the full scope of that protection.  Put differently, we don't understand why the Bureau, New York and Virginia cannot share the documents already produced to these Plaintiffs – outside of seeking to impose this (unnecessary) burden on Defendants.  If there is an actual legal impediment preventing Plaintiffs from sharing Defendants' prior document productions among themselves, we would like to understand the bases for any such assertion.

**<u>Interrogatories</u>**

-

We are currently reviewing the claimed deficiencies in your December 15 letter with our clients in order to assess what information can be supplemented by January 7, as requested.  There are a few assertions in your letter which we wish to address now.

-

First, we did not rely on general objections. We *specifically* objected to *specific* definitions and instructions contained in both the NYROGs and VAROGs.  The *Wheeler* case cited by you provides absolutely no support for your assertion that we have waived objections in these circumstances, as this decision did not address objections to supplied instructions and definitions at all.  On the contrary, it addressed formulaic "to the extent [they are] cumulative and overbroad" objections lodged against specific interrogatories, and even then, the court ruled that such objections were not waived if the "discovery request is overly broad, unduly burdensome, or irrelevant on its face." *Wheeler*, 2018 WL 10611693, *1.  As has been repeatedly made clear to Plaintiffs, defining the "relevant" time period to be before Nexus or Libre even existed, or defining these entities to include third-party entities that were not even mentioned in Plaintiffs' 50-page complaint, *is* seeking facially overbroad and irrelevant material.  Defendants stand by their objections.

Second, Plaintiffs fault Defendants for not responding to questions Plaintiffs *didn't* ask.  Specifically, you object that "Defendants' responses repeatedly fail to specify the dates or time period for the information provided in the responses," and then you cite numerous interrogatories that purportedly must be amended to provide specific dates and times.  But a cursory review of these interrogatories make clear that you didn't remotely ask for such information to be provided.  For example, NYROG 1 simply asks Defendants to "Identify Persons *who* made or participated in decisions Concerning how the Company compensated its employees and agents …"  The persons responsive to this request were identified – and that's all the interrogatory asked Defendants to do. It did *not* ask Defendants to "Identify Persons who made or participated in decisions Concerning how the Company compensated its employees and agents [and when they made or participated in such decisions] …"  Defendants understandably only answered the questions posed, and Defendants stand by not providing specific dates and time periods Plaintiffs did not ask for.

Third, certain of Plaintiffs' claims are facially incorrect.  For example, Plaintiffs fault Defendant's response to NYROG 4, asserting Defendants specifically failed to identify David See and Maria Martinez Morales.  Defendant's response clearly and specifically identifies these individuals, however.

Regards,
Adam

**Adam Bowser**
Partner

Arent Fox LLP | Attorneys at Law
1717 K Street, NW
Washington, DC  20006-5344
202.857.6126 DIRECT | 202.857.6395 FAX
adam.bowser@arentfox.com | www.arentfox.com

---

**From:** Burke, Jonathan (AGO) <jonathan.burke@state.ma.us>
**Sent:** Tuesday, December 21, 2021 9:54 AM
**To:** Bowser, Adam <Adam.Bowser@arentfox.com>; Dearing, Stewart <Stewart.Dearing@ag.ny.gov>; Lee, Jenny <Jenny.Lee@arentfox.com>; Bayles, David <David.Bayles@arentfox.com>
**Cc:** Mueller, Joseph <Joseph.Mueller@ag.ny.gov>; Levine, Laura <Laura.Levine@ag.ny.gov>; Gordon, Donald (CFPB) <Donald.Gordon@cfpb.gov>; Nguyen, Hai Binh (CFPB) <HaiBinh.Nguyen@cfpb.gov>; Witte, Erin E. <EWitte@oag.state.va.us>
**Subject:** RE: CFPB vs. Nexus Services: 11/10 Meet and Confer

Morning,

██████████████████████████████████

The statute is G.L. c. 93A, s. (6)(6). In addition to the statute, I believe we agreed to some additional restrictions for a small number of documents to address a concern raised by your clients. But I don't have that file at hand and will need to confirm. (I don't want to go into any more detail on an email involving all parties.)

Best,

Jon Burke

---

**From:** Bowser, Adam <Adam.Bowser@arentfox.com>
**Sent:** Monday, December 20, 2021 4:31 PM
**To:** Burke, Jonathan (AGO) <jonathan.burke@mass.gov>; Dearing, Stewart <Stewart.Dearing@ag.ny.gov>; Lee, Jenny <Jenny.Lee@arentfox.com>; Bayles, David <David.Bayles@arentfox.com>
**Cc:** Mueller, Joseph <Joseph.Mueller@ag.ny.gov>; Levine, Laura <Laura.Levine@ag.ny.gov>; Gordon, Donald (CFPB) <Donald.Gordon@cfpb.gov>; Nguyen, Hai Binh (CFPB) <HaiBinh.Nguyen@cfpb.gov>;

Witte, Erin E. <EWitte@oag.state.va.us>
**Subject:** RE: CFPB vs. Nexus Services: 11/10 Meet and Confer

CAUTION: This email originated from a sender outside of the Commonwealth of Massachusetts mail system.  Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Hi Jon,

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████

We are still attempting to confer with our clients concerning your request below, but hope to have an answer for your shortly.  In the meantime, would you mind identifying the Mass. state law governing the confidentiality of CID responses so we're on the same page in terms of the law at issue and its scope.

Regards,
Adam

**Adam Bowser**
Partner

**Arent Fox LLP** | Attorneys at Law
1717 K Street, NW
Washington, DC  20006-5344
202.857.6126 DIRECT | 202.857.6395 FAX
adam.bowser@arentfox.com | www.arentfox.com

---

**From:** Burke, Jonathan (AGO) <jonathan.burke@state.ma.us>
**Sent:** Monday, December 20, 2021 3:21 PM
**To:** Bowser, Adam <Adam.Bowser@arentfox.com>; Dearing, Stewart <Stewart.Dearing@ag.ny.gov>; Lee, Jenny <Jenny.Lee@arentfox.com>; Bayles, David <David.Bayles@arentfox.com>
**Cc:** Mueller, Joseph <Joseph.Mueller@ag.ny.gov>; Levine, Laura <Laura.Levine@ag.ny.gov>; Gordon, Donald (CFPB) <Donald.Gordon@cfpb.gov>; Nguyen, Hai Binh (CFPB) <HaiBinh.Nguyen@cfpb.gov>; Witte, Erin E. <EWitte@oag.state.va.us>
**Subject:** RE: CFPB vs. Nexus Services: 11/10 Meet and Confer

Good afternoon Adam,

████████████████████████████████████████████████████ I'm circling back on the request below. Again, I'm happy to give you whatever time you need under the circumstances. But, to reiterate, I need the information requested before Massachusetts can respond to the RFPs. Among other issues, as of now I do not know the defendants' position as to what documents Massachusetts should be reviewing or producing; or how production should be

modified, if at all, to address CID material. I need that information in order to formulate responses and objections.

Please let me know at your earliest convenience whether defendants agree to an extension to January 15. To be clear, however, whether or not defendants agree, Massachusetts cannot respond until we receive the information requested. And, given the timeline, I do not expect we will be able to respond by December 24.

Best,

Jon Burke

**From:** Bowser, Adam <Adam.Bowser@arentfox.com>
**Sent:** Friday, December 10, 2021 1:07 PM
**To:** Burke, Jonathan (AGO) <jonathan.burke@mass.gov>; Dearing, Stewart <Stewart.Dearing@ag.ny.gov>; Lee, Jenny <Jenny.Lee@arentfox.com>; Bayles, David <David.Bayles@arentfox.com>
**Cc:** Mueller, Joseph <Joseph.Mueller@ag.ny.gov>; Levine, Laura <Laura.Levine@ag.ny.gov>; Gordon, Donald (CFPB) <Donald.Gordon@cfpb.gov>; Nguyen, Hai Binh (CFPB) <HaiBinh.Nguyen@cfpb.gov>; Witte, Erin E. <EWitte@oag.state.va.us>
**Subject:** RE: CFPB vs. Nexus Services: 11/10 Meet and Confer

CAUTION: This email originated from a sender outside of the Commonwealth of Massachusetts mail system.  Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Hi Jon,

Confirming receipt. ████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████  ████████████ will confer with our clients about your request below, and will circle back as soon as I can.

Regards,
Adam

**From:** Burke, Jonathan (AGO) <jonathan.burke@state.ma.us>
**Sent:** Friday, December 10, 2021 10:30 AM
**To:** Bowser, Adam <Adam.Bowser@arentfox.com>; Dearing, Stewart <Stewart.Dearing@ag.ny.gov>; Lee, Jenny <Jenny.Lee@arentfox.com>; Bayles, David <David.Bayles@arentfox.com>
**Cc:** Mueller, Joseph <Joseph.Mueller@ag.ny.gov>; Levine, Laura <Laura.Levine@ag.ny.gov>; Gordon, Donald (CFPB) <Donald.Gordon@cfpb.gov>; Nguyen, Hai Binh (CFPB) <HaiBinh.Nguyen@cfpb.gov>; Witte, Erin E. <EWitte@oag.state.va.us>
**Subject:** RE: CFPB vs. Nexus Services: 11/10 Meet and Confer

Good morning Adam,

I hope things are going well with you. As we have discussed, Massachusetts state law restricts the Attorney General's ability to disclose material produced in response to a Civil Investigative Demand. During an earlier meet and confer, I requested that you confirm Defendants' position concerning the disclosure of CID material in this case. I do not believe I have received a response.

Based on my initial review of Defendants' Requests for the Production of Documents, it seems likely that Massachusetts' response may disclose material Defendants' produced in response to our CID. Without waving any position or objection, it seems likely that CID material may be responsive to some of the requests; and, consistent with Rule 5, Massachusetts will serve its response on our co-Plaintiffs.

Massachusetts' position is that Defendants, through the RFPs, have consented to the disclosure of CID material. However, in order to avoid any unnecessary dispute, I need you to clarify Defendants' position, and we need to discuss how they are proposing to proceed, before Massachusetts responds to the RFPs.

In order to give us time to discuss and resolve any issues, Massachusetts requests that Defendants extend its time to respond to the RFPs to January 15, 2021.

Again, I am sending this email in an attempt to avoid any unnecessary dispute. Massachusetts reserves the right to take any position on this issue in any future proceeding.

Best,

Jon Burke

---

**From:** Bowser, Adam <Adam.Bowser@arentfox.com>
**Sent:** Wednesday, November 24, 2021 2:37 PM
**To:** Dearing, Stewart <Stewart.Dearing@ag.ny.gov>; Lee, Jenny <Jenny.Lee@arentfox.com>; Bayles, David <David.Bayles@arentfox.com>
**Cc:** Mueller, Joseph <Joseph.Mueller@ag.ny.gov>; Levine, Laura <Laura.Levine@ag.ny.gov>; Gordon, Donald (CFPB) <Donald.Gordon@cfpb.gov>; Nguyen, Hai Binh (CFPB) <HaiBinh.Nguyen@cfpb.gov>; Witte, Erin E. <EWitte@oag.state.va.us>; Burke, Jonathan (AGO) <jonathan.burke@mass.gov>
**Subject:** RE: CFPB vs. Nexus Services: 11/10 Meet and Confer

CAUTION: This email originated from a sender outside of the Commonwealth of Massachusetts mail system.  Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Counsel,

Please find attached the supplemental ESI search terms proposed by the corporate defendants that we discussed providing during our 11/10 call, along with discovery requests to the Plaintiffs.

On the remaining items on Stewart's list, please see the responses below:

1. There should not be any unique responsive documents in the possession of the Non-Parties/Nexus Affiliated Entities related to the Nexus Immigration Bond Service or the Nexus Immigration Bond Service (as those terms are defined in your RFPs), either because the applicable entity has no connection to the Complaint, and/or because the entity would not have a separate database of documents that would not also be searched by the corporate Defendants when Plaintiffs ultimately agree to the search terms to be used and custodians to be searched.

3. Yes, ESI associated with former employees is being retained.  If an employee leaves, his or her Google Drive stored documents and email history (with associated attachments) are downloaded from Defendants' Google account and stored on a local server. Such data is being made a part of the ESI pool to be searched, subject to custodian relevance.

4. We are still processing Joe's letter received on Monday regarding the RFP production and responses, and believe it makes sense to address both at the same time.

(5-6) As discussed during our 11/10 call, we need to understand primarily the Bureau's position, but the other Plaintiffs' as well, on Plaintiffs' ability not to further disclose immigrant PII or other data Defendants possess that could potentially be used against an immigrant.  To reiterate the hypothetical example I provided during our call, let's say an immigrant notified Libre that they were arrested/charged with a crime, or provided some other information, that could impact their immigration proceeding/status, and this information was noted in the immigrant's file.  Our understanding is that the Bureau likely would be required to provide this information to the DoJ or other appropriate agency, but Hai Binh suggested this was not the case.  And what we would like to understand better is the Bureau's position on its obligation, or lack thereof, to report issues discovered in this litigation to other agencies.

(7) Unfortunately our paralegal who was responsible for the file transfers ██████████████████ ███████████████████████████████████, so we are still attempting to track down and summarize the files we obtained with reference to the underlying investigations and former law firms.  We hope to have this information to you shortly.

Have a great Thanksgiving,
Adam

**Adam Bowser**
**Partner**

**Arent Fox LLP** | Attorneys at Law
1717 K Street, NW
Washington, DC  20006-5344
202.857.6126 DIRECT | 202.857.6395 FAX
adam.bowser@arentfox.com | www.arentfox.com

**From:** Bowser, Adam
**Sent:** Wednesday, November 17, 2021 7:34 PM
**To:** Dearing, Stewart <Stewart.Dearing@ag.ny.gov>; Lee, Jenny <Jenny.Lee@arentfox.com>; Bayles, David <David.Bayles@arentfox.com>
**Cc:** Mueller, Joseph <Joseph.Mueller@ag.ny.gov>; Levine, Laura <Laura.Levine@ag.ny.gov>; Gordon, Donald (CFPB) <Donald.Gordon@cfpb.gov>; Nguyen, Hai Binh (CFPB) <HaiBinh.Nguyen@cfpb.gov>; Witte, Erin E. <EWitte@oag.state.va.us>; Burke, Jonathan (AGO) <jonathan.burke@state.ma.us>
**Subject:** RE: CFPB vs. Nexus Services: 11/10 Meet and Confer

Stewart,

With respect to the item you all had asked us to get back to you on by today, I am writing to confirm that, after a diligent search, the Defendants have produced to Plaintiffs the documents in their possession that are responsive to the requests for which we indicated documents would be produced within 21 days.  To further clear up any ambiguity, for the limited number of requests for which no responsive documents were located, we intend to supplement our responses by next week indicating where no responsive documents exist (e.g., the individual Defendants do not have insurance policies responsive to Individual Request No. 7, so we'll indicate as much in our supplemental response).

The only potential exception to the foregoing is Mike Donovan's ordained minister's license I mentioned on our call, and which is ostensibly responsive to Individual Request No. 4.  While I'm still struggling to see the relevance of this license to any claims or defenses at issue in this case, please let us know if Plaintiffs want this license to be produced.

Regards,
Adam

**Adam Bowser**
**Partner**

Arent Fox LLP | Attorneys at Law
1717 K Street, NW
Washington, DC  20006-5344
202.857.6126 DIRECT | 202.857.6395 FAX
adam.bowser@arentfox.com | www.arentfox.com

---

**From:** Dearing, Stewart <Stewart.Dearing@ag.ny.gov>
**Sent:** Friday, November 12, 2021 5:44 PM
**To:** Bowser, Adam <Adam.Bowser@arentfox.com>; Lee, Jenny <Jenny.Lee@arentfox.com>; Bayles, David <David.Bayles@arentfox.com>
**Cc:** Mueller, Joseph <Joseph.Mueller@ag.ny.gov>; Levine, Laura <Laura.Levine@ag.ny.gov>; Gordon, Donald (CFPB) <Donald.Gordon@cfpb.gov>; Nguyen, Hai Binh (CFPB) <HaiBinh.Nguyen@cfpb.gov>; Witte, Erin E. <EWitte@oag.state.va.us>; Burke, Jonathan (AGO) <jonathan.burke@state.ma.us>
**Subject:** CFPB vs. Nexus Services: 11/10 Meet and Confer

Adam,

Thanks for speaking with us on 11/10 to meet and confer on Defendants' responses to Plaintiffs' June 9 document requests pursuant to Rule 37 and Judge Hoppe's September 29 Order.  Below you will find a summary of the major points from our conversation.  Please let us know as soon as possible if your recollection differs on any of the below.

We'd like to note that throughout our conversation on 11/10, Defendants took positions on their responses to many of Plaintiffs' document requests that are completely different than what they stated in their 9/28 written responses.  Defendants also raised some objections – such as burden – for example, for the first time during our 11/10 call.  Plaintiffs believe Defendants have waived any such objections by not raising them sooner, but in the interest or reaching a compromise without involving the Court unnecessarily, we ask that Defendants provide revised written responses to the June 9 document requests where necessary to accurately and completely articulate to us Defendants' positions on what they will and will not produce and the reasons for those positions as soon as possible.

On the 11/10 call, Defendants agreed to provide the following within 2 weeks (i.e., by 11/24) and in writing:

1. A summary of whether there are any documents responsive to Plaintiffs' requests within the possession, custody, and control of the companies that are not named Defendants and defined in the document requests as "Nexus Affiliated Entities" and a description of what those documents are.
2. Revised search terms proposals that are more likely to locate responsive documents than Defendants' initial proposal.  Plaintiffs suggested reviewing responsive documents to generate the revised search terms.
3. A statement of whether Defendants preserved and have available for search and review documents of former employees.
4. Revised written responses to Plaintiffs' documents requests where Defendants are taking a different position than what was stated in their 9/28 responses.
5. Defendants' position on Plaintiffs' proposal that Defendants produce all documents from Capsule and Lightspeed (as well as any similar databases Defendants may have used to track consumer communications, payments, and other relevant information).
6. Defendants' proposal (if necessary) on how to handle any concerns about information Defendants' view as "sensitive" and that is contained in responsive documents.  Any such proposal must include a clear definition of the types of information Defendants are concerned about that is objective and circumscribed in scope.
7. Defendants' position on Plaintiffs' proposal on Request 23 addressed to the corporate Defendants.  Plaintiffs' proposal was set forth in Plaintiffs' 10/15 letter.  Defendants also agreed to provide a summary of what documents Defendants have that were already produced to Plaintiffs before the complaint in this case was filed.

On the 11/10 call, Defendants also agreed to confirm within one week (i.e., by 11/17) whether they intend to produce any other materials in response to requests to which they had promised productions of responsive documents "within 21 days" of their written objections and responses.

These requests are also listed in Plaintiffs' 11/5 letter.  There are still no documents that have been produced in response to several of these requests.

We also confirmed the following on the 11/10 call:

1. In terms of timeframe, Defendants agree to search for and produce documents from July 2012 to the present.

2. Defendants stated that in their written responses, they did not intend to use the word "relevant" to limit the response to a given request and that they intend to provide all responsive documents, consistent with any other objections they have referenced in their written responses.

3. Defendants stated that they would provide a privilege log for any documents withheld on the basis of privilege consistent with the requirements of Rule 26(b)(5).

4. Defendants stated that they are collecting and preserving documents consistent with the ESI Order, including by collecting and preserving all of the document types listed in that Order where applicable.  Defendants stated that they intend to review and provide responsive documents from personal devices, including personal devices of the three named individual Defendants.

5. Defendants stated that the information they view as "sensitive" and that they are concerned about producing to Plaintiffs is the criminal history of their immigrant clients.

6. Plaintiffs stated that we would be unlikely to accept a "statistically significant" amount of Capsule files, Lightspeed files, or communications in response to any of the document requests.  Plaintiffs explained that all of those documents contain information that is highly relevant to Plaintiffs' claims and that it would be less burdensome for Defendants to provide all of them to Plaintiffs.

7. Defendants represented that they do not have an unredacted copy of CFPB_LIBRE-00000036-268.

8. On the Requests to the Corporate Defendants:
   a. Request 13 –Plaintiffs stated and that we would consider using search terms to locate written communications responsive to this request, but not for Lightspeed documents or other types of financial records.
   b. Requests 18-19 – Defendants agreed to reevaluate whether they will provide responsive documents, especially in light of Judge Hoppe's ruling on Defendants' motion to quash and stay discovery that Defendants' financial records are relevant to Plaintiffs' claims.
   c. Request 23 – Defendants agreed to provide within 2 weeks a summary of what documents they have that they produced to Plaintiffs during the investigative phase and to respond to Plaintiffs proposal in the 10/15 letter for how to limit Defendants' response to this request.  Defendants' counsel stated that he did not know whether Defendants had a copy of the hard-copy production made to New York.  Defendants counsel also did not know the positions Defendants had taken regarding the pre-complaint production made to Massachusetts regarding consent to share those documents.

8. On the Requests to the Individual Defendants:
   a. Request 1 – Defendants are taking the position that the documents called for by this request overlap entirely with the requests made to the corporate Defendants.  They

will provide any responsive documents that the individual Defendants have in response to the corporate Defendant requests.

b. Request 2 – Defendants will consider revising their objection to this request and will see what they can provide in response.

c. Request 3 - Defendants will consider revising their objection to this request and will see what they can provide in response.

d. Request 4 – Despite stating that documents would be provided "within 21 days," no documents have been provided yet in response to this request. Defendants indicated that they believed the only responsive document they have is a pastor license that Mr. Donovan possesses. Defendants agreed to provide that license as soon as possible and to confirm in writing that there are no other responsive documents. [Though not discussed on 11/10, Plaintiffs also note that the request calls for licenses *sought* or obtained.]

e. Request 5 - Defendants will consider revising their objection to this request and will see what they can provide in response.

f. Request 6 - Defendants will consider revising their objection to this request and will provide a written proposal of what they can provide in response.

g. Request 7 – Defendants stated that the individuals did not have any insurance policies, but that the corporate entities might. They agreed to supplement their initial disclosures and provide any such insurance policies within 2 weeks.

h. Request 8 – Defendants agreed to reconsider their objection and see what they are willing to provide.

i. Request 9 – Defendants stated that the individuals do not have any responsive materials that the corporate entities do not have, so the individual defendants do not plan to produce anything in response to this request.

And to avoid any doubt, the above is not intended to waive or limit the objections and positions Plaintiffs have taken in our October 15 and November 5 letters, including that Defendants waived all objections by failing to timely respond to Plaintiffs June 9 document requests.

Best,

Stewart

**Stewart C. Dearing | Assistant Attorney General**
Bureau of Consumer Frauds and Protection
Office of the New York State Attorney General
28 Liberty Street, New York, NY 10005
☏ 212-416-8320 | 📠 212-416-6003
✉ Stewart.Dearing@ag.ny.gov
http://www.ag.ny.gov/bureau/consumer-frauds-bureau



**IMPORTANT NOTICE:** This e-mail, including any attachments, may be confidential, privileged or otherwise legally protected. It is intended only for the addressee. If you received this e-mail in error or from someone who was not authorized to send it to you, do not disseminate, copy or otherwise use this e-mail or its attachments. Please notify the sender immediately by reply e-mail and delete the e-mail from your system.

CONFIDENTIALITY NOTICE: This e-mail and any attachments are for the exclusive and confidential use of the intended recipient. If you received this in error, please do not read, distr bute, or take action in reliance upon this message. Instead, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

CONFIDENTIALITY NOTICE: This e-mail and any attachments are for the exclusive and confidential use of the intended recipient. If you received this in error, please do not read, distr bute, or take action in reliance upon this message. Instead, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

CONFIDENTIALITY NOTICE: This e-mail and any attachments are for the exclusive and confidential use of the intended recipient. If you received this in error, please do not read, distr bute, or take action in reliance upon this message. Instead, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

CONFIDENTIALITY NOTICE: This e-mail and any attachments are for the exclusive and confidential use of the intended recipient. If you received this in error, please do not read, distr bute, or take action in reliance upon this message. Instead, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

# EXHIBIT 16

| **From:** | Dearing, Stewart |
| --- | --- |
| **To:** | Bayles, David; Bowser, Adam; Lee, Jenny |
| **Cc:** | Mueller, Joseph; Azia, Jane; Levine, Laura; Nguyen, Hai Binh (CFPB); Gordon, Donald (CFPB); Witte, Erin E.; Irvin, David; Burke, Jonathan (AGO) |
| **Subject:** | CFPB v. Nexus Services - Plaintiffs Counterproposal on Search Terms and Custodians |
| **Date:** | Monday, January 24, 2022 8:56:26 AM |
| **Attachments:** | image001.png |
| | 2022.01.24 Plts. Counterproposal for Defs. ESI Search Terms (final).pdf |
| | 2022.01.24 Plts. Counterproposal for Defs. ESI Search Terms - Appendix A (final).pdf |

Counsel,

Please see attached Plaintiffs' counterproposal on search terms and custodians for ESI responsive to Plaintiffs' June 9, 2021 document requests issued to Libre by Nexus, Inc. and Nexus Services, Inc.

Best,

Stewart

**Stewart C. Dearing │ Assistant Attorney General**
Bureau of Consumer Frauds and Protection
Office of the New York State Attorney General
28 Liberty Street, New York, NY 10005
☎ 212-416-8320 | 🖷 212-416-6003
✉ Stewart.Dearing@ag.ny.gov
http://www.ag.ny.gov/bureau/consumer-frauds-bureau



**IMPORTANT NOTICE:** This e-mail, including any attachments, may be confidential, privileged or otherwise legally protected. It is intended only for the addressee. If you received this e-mail in error or from someone who was not authorized to send it to you, do not disseminate, copy or otherwise use this e-mail or its attachments. Please notify the sender immediately by reply e-mail and delete the e-mail from your system.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

CONSUMER FINANCIAL PROTECTION
BUREAU; COMMONWEALTH OF
MASSACHUSETTS; THE PEOPLE OF
THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of
the State of New York; and
COMMONWEALTH OF VIRGINIA, *EX
REL.* MARK R. HERRING, ATTORNEY
GENERAL,

Plaintiffs,

v.

NEXUS SERVICES, INC.; LIBRE BY
NEXUS, INC.; MICHEAL DONOVAN;
RICHARD MOORE; and EVAN AJIN,

Defendants.

Case No.: 5:21-cv-00016

**PLAINTIFFS' COUNTERPROPOSAL OF SEARCH TERMS AND
CUSTODIANS FOR ESI RESPONSIVE TO PLAINTIFFS' FIRST REQUEST
FOR THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY
STORED INFORMATION ADDRESSED TO NEXUS SERVICES, INC. AND
LIBRE BY NEXUS, INC.**

Plaintiffs Consumer Financial Protection Bureau, Commonwealth of

Massachusetts, the People of the State of New York, by Letitia James, Attorney General

of the State of New York, and Commonwealth of Virginia, *ex rel.* Mark R. Herring,

Attorney General (collectively, "Plaintiffs") submit this counterproposal of search terms

and custodians for Defendants Nexus Services, Inc. and Libre by Nexus, Inc. (together,

"Entity Defendants") to use to locate documents responsive to Plaintiffs' First Set of

Requests for the Production of Documents dated June 9, 2021.

The Entity Defendants submitted an initial search term proposal on October 1, 2021. That proposal did not identify proposed custodians. On October 8, 2021, Plaintiffs asked Defendants for a written list of custodians associated with each of Plaintiffs' requests for which they planned to provide ESI. Defendants proposed custodians on October 22, 2021. During the November 10, 2021 meet and confer, Plaintiffs explained to Defendants that their search terms proposal was inadequate on its face because it would fail to locate many responsive and relevant documents; Plaintiffs asked Defendants to provide a supplemental proposal, which they did on November 24, 2021. Defendants' second proposal remains inadequate for the same reasons. So Plaintiffs are making the following counterproposal of search terms and custodians.

In their proposals, Defendants have failed to meet their obligations under Federal Rules of Civil Procedure 26 and 34 by failing to provide search terms and custodians that can be reasonably expected to locate materials "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). This counterproposal represents Plaintiffs' good-faith effort attempt to craft search terms that will locate responsive documents and identify custodians that possess responsive documents.

Plaintiffs are providing these search terms and additional custodians in an attempt to engage in discovery cooperatively and to move discovery forward expeditiously. However, this counterproposal is based on the limited documents and information currently available to Plaintiffs. Plaintiffs possess virtually no internal communications among Defendants and their employees, for example emails, text messages, or chats. Accordingly, Plaintiffs reserve their right to ask for more search terms to be run, for additional custodians to be identified, and for additional documents to be produced at any time. And this proposal does not relieve Defendants of their

2

obligations under Federal Rules of Civil Procedure 26 and 34 to locate and produce responsive documents, including Defendants' obligation to demonstrate the reasonableness of their search and production, especially given that Defendants know their own documents better than Plaintiffs do.

Defendants have a responsibility to respond fully to Plaintiffs' document requests, even without the use of search terms. And the use of search terms is not meant to limit Defendants' obligation to produce relevant and responsive documents as required by the Federal Rules of Civil Procedure.

Plaintiffs have reason to believe all of the individuals proposed as custodians in this counterproposal may possess ESI that is relevant and responsive to Plaintiffs' document requests. If Defendants believe that is incorrect, we expect Defendants to identify which of those individuals do not possess ESI that is relevant and responsive to Plaintiffs' document requests. We are available to meet and confer on this. In addition, although the parties are identifying custodians for each individual request, Defendants must produce all documents from their custodians that are relevant and responsive to any of Plaintiffs' document requests.

In addition to the custodians who are identified below, Plaintiffs also propose as custodians all general-use or departmental email accounts that contain ESI that is relevant and responsive to one or more of the document requests. One such example is info@librebynexus.com.

Plaintiffs' First Request for the Production of Documents calls for the production of all forms of ESI. This includes written communications and documents. Plaintiffs are proposing these search terms and custodians with the understanding that they will be used on written communications and documents. But other forms of ESI, such as call

3

recordings, must also be reviewed for relevant and responsive information. Plaintiffs ask to meet and confer about that process as soon as possible.

Finally, Plaintiffs understand that Defendants regularly use Spanish in conducting their business, communicating with consumers, and memorializing those communications. As a result, once we have reached agreement on some or all of the search terms, Plaintiffs ask that Defendants' translate all of the terms into Spanish (using the Spanish terms, phrases, syntax and grammar that are commonly used by Defendants and their agents and employees), provide alternative Spanish terms as necessary to locate responsive documents, and run both the Spanish and English versions of the search terms. Plaintiffs also ask to see the translated version of these terms prior to Defendants running them so the parties can reach an agreement on a reasonable translation. Further, Plaintiffs' reserve the right to have the search terms run in languages other than English and Spanish if necessary.

Plaintiffs ask Defendants to respond in writing to this counterproposal as soon as possible and no later than February 7, 2022. Plaintiffs' good-faith attempt to engage in this cooperative process is not meant to waive any of Plaintiffs' rights, including the right to seek judicial intervention if Defendants do not timely produce relevant materials that are responsive to Plaintiffs' document requests, which were served approximately seven months ago. Plaintiffs are available to meet and confer regarding this counterproposal upon Defendants' request.

**Plaintiffs' Search Term and Custodian Proposals for Document Requests Issued to Entity Defendants on June 9, 2021**

Request 4.[1]

Documents sufficient to show how the Company determined compensation of its employees or agents who interacted or communicated with Consumers Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, including Documents describing or setting forth any sales incentive program or commissions.

### PLAINTIFFS' PROPOSED SEARCH TERMS:

- BONUS![2] or INCENTIVE* or GOAL* or BENCHMARK* or COMMISSION* or SALARY or SALARIES or "TIGER PAY" or "MYSTERY SHOP" or JACKPOT or PRODUCTIVITY or CONTEST* or PROMOT! or PRIZE* or "CORRECTIVE ACTION" or PERFORMANCE or "MARKETING INITIATIVE" or PAYROLL or TAKE*HOME

---

[1] Defendants never proposed search terms or custodians on this request. Plaintiffs asked that search terms be run to respond to this request. Plaintiffs' Letter to Defendants dated Nov. 5, 2021 at 3-4. To try to move discovery along expeditiously, Plaintiffs have proposed search terms and custodians. But as explained above, Defendants still have a burden to propose any additional search terms and custodians they believe would locate responsive documents.

[2] Where a search term uses "!" it is meant to be a root expander, which operates to locate a root word plus all possible terms made by adding any number of letters to the end of it. For example, DOC! would capture the words DOCTOR, DOCS, and DOCUMENT, but not DODO. Where a term uses "*" it is meant to be a wildcard character, which operates to locate all possible terms made by adding any single character (or no character at all) where the wildcard is located. For example, CEM* would capture the words CEM and CEMS, but not CEMENT. As another example, WITHDR*W would capture both WITHDRAW or WITHDREW. Where a term uses "w/[#]" it is meant to be a numerical connector, which operates to locate documents in which the antecedent term is located within a particular number of terms of the subsequent term. For example DOGS w/3 CATS would capture a document that includes the following: "He owns dogs and cats." But it would not capture "The dogs are in a never-ending feud with the cats." If Defendants are uncertain of the meaning or function of any of the terms or operators, Defendants should raise that uncertainty with Plaintiffs before running the searches.

- (PAY! or PAID) w/25 (SCALE* or SCHEDULE* or CALCULAT! or DETERMIN! or ACCORD! or EMPLOYEE! or CEM or "CASE MANAGER" or RISK or SALE! or NEW or PARTICIPANT* or CUSTOMER*)

- COMPENSAT! or PAY! or PAID or INCOME or EARNING* or WAGE* or (PAY w/25 CHECK)

- (BEST or TOP or MOST or HIGHEST) w/10 (CEM* or "CLIENT EXPERIENCE" or "CUSTOMER EXPERIENCE" or "CASE EXPERIENCE")

- (SELL! or COLLECT! or ENROLL! or (SIGN! w/3 UP)) w/10 (BEST or TOP or MOST or HIGHEST)

- (PARTICIPANT* or CLIENT* or CUSTOMER* or DETAINEE* or IMMIGRANT*) w/10 (ENROLL! or PROCESS! or SIGN!)

**PLAINTIFFS' PROPOSED CUSTODIANS:** Plaintiffs propose as custodians the following individuals and any other individuals who have held the same or equivalent titles as the individuals listed below at any time from July 1, 2012 to the present.

| | |
|---|---|
| Micheal Donovan | CEO |
| Richard Moore | Executive VP |
| Evan Ajin | VP of Operations |
| David See | COO |
| Alisa Wilson | COO |
| Eddie Noel Nieves Garcia | Call Center Manager |
| Edwin Adorno Liddy | Call Center Manager |
| Johana Ballesteros Paez | Call Center Manager |
| Raymond Rivera | Call Center Manager |
| Robert Belle | Call Center Manager |
| Samantha Cushman | Call Center Supervisor |

| Summer Cruz | Call Center Supervisor |
|---|---|
| Gordon Turner | Caridades |
| Mohsen Ansari | Central Regional Director |
| Richard Miniter | CEO |
| Gregory Solsrud | CFO |
| Rebecca Wells | CFO |
| Tim Okonski | CFO |
| Glenda Oquendo-Marrero | Collections Manager |
| Jovanahilit Correa | Corporate Regional Manager |
| Liliana Chavez | Corporate Regional Manager |
| Alonso Sandra | Customer Service Manager |
| Abigail Campana | Customer Service Manager |
| Maria De Santiago Casiano | Customer Service Manager |
| Kerry J. DeLeon | Customer Service Manager |
| Darlin Santamaria | Customer Service Manager |
| Gustavo Murillo | Customer Service Manager |
| James G.A. Walker | Director of Call Center Operations |
| Chad Sager | Director of Human Resources |
| Lisa Breeden | Director of Human Resources |
| Nathalie Duda | Director of Human Resources |
| Vincent Munoz | Director of Investigations |
| Jenny Cadena-Castillo | Director of Operations |
| Nina Erlandson | Director of Operations |
| Raul Sanchez | Director of Operations |
| Carol Taylor | Director of Risk Management |
| Julian Leyva | Director of Risk Management |
| Richard Reigenborn | Director of Risk Management |
| Terry Johnson | Director of Serve/Empower |
| Robin Fife | Director of Support Services |
| Rodolfo Prieto | East Coast Regional Manager |
| Wendy Cruz Montalvan | East Coast Regional Manager |
| Edward DeLeon | Risk East Coast Regional Manager |
| Heather Munzner | Finance |
| Elizabeth Hurst | Finance Manager |
| Wanda Barnes | Finance Manager |
| Janine Saldivar | HR Administrator |
| Martha Pulido | HR Administrator |
| Jesus Fernandez | HR Generalist |
| Joel Wells | HR Generalist |
| Tina M. Landes | HR Generalist |

| Raquel Hernandez | HR Manager |
|---|---|
| Andrew Singer | Legal Assistant/ Non-Attorney Director of Legal Operations |
| Kathryn Shoreman | Legal Support Manager |
| Hiram Castillo | Loss Prevention Manager |
| Beatriz Aleman | National Recruiter |
| Ivan Panisse Negron | National Recruiter |
| Andrew Jones | National Recruiting Manager |
| Jordan S. Escobedo Diaz | National Training Manager |
| Maria Ortiz Garcia | National Training Manager |
| Adam Donovan | Operations |
| Jennifer Turner | Operations |
| Stephanie Cash | Payroll & Benefits Manager |
| Matthew P. Gira | Recruiting Manager |
| Sergio Anselmo | Regional Manager |
| Cesar Henriquez | Regional Risk Manager |
| Cristina Velez Santos | Regional Risk Manager |
| Danny Hart | Regional Risk Manager |
| Ernie Correa | Regional Risk Manager |
| Francis Hernandez | Regional Risk Manager |
| Luis Angel Aspeitia | Regional Risk Manager |
| Gilberto Cantu | Risk Mgmt. Central Regional Manager |
| Tawana Washington | Senior Finance Manager |
| Erik Schneider | VP of Risk Management |
| Tim Shipe | VP of Support Services |
| Marco Orellana | West Coast Regional Risk |
| Ana Bonilla | West Region Director |

Request 6.

All Documents and Communications Concerning all advertising, marketing, or promotional material Concerning any Nexus Products and/or Services, including materials for television, internet, social media, in-person or experiential marketing, and printed materials.

**PLAINTIFFS' PROPOSED SEARCH TERMS:**

- AD* or ADVERTIS! or SCRIPT* or MARKET! or PROMOT! or

  HAND*OUT or INSTAGRAM or IG or FACEBOOK or FB or TWITTER or

TWEET or SOCIAL or UNIVISION or TELEMUNDO or PINTA or MEDIA or WEBSITE* or "WE ARE DIFFERENT" or "MEDIA BUY" or BODEGA or PR or "PUBLIC RELATIONS" or OUTREACH!

- ADVOCA!

- CHARITABLE

- COLLATERAL

- (SECURITIZ! or SECURE* or SECURING) and (BOND or RELEAS!)

- REUNIT!

- "ICE CUSTODY"

- "LOVED ONES" or FAMILY

- TRAIL*BLAZING

- "OUR LEGAL" or "OUR LAWYERS" or "PRO BONO" or "OUR ATTORNEYS" or (LEGAL w/20 SUPPORT) or "LEGAL AID"

- (PAY! or POST! or AFFORD! or HELP!) w/20 (BAIL or BOND)

- (FEAR! or SUPPORT!) w/20 (IMMIGRA! or CLIENT* or PARTICIPANT* or PROGRAM)

- FREE w/20 (LEGAL or LAW! or ATTORNEY*)

- MESSAG! w/20 (DONOVAN or MIKE)

- TESTIMONIAL

- (STORY or STORIES) w/20 (IMMIGRA* or CLIENT* or PARTICIPANT* or PROGRAM)

- TV or RADIO or PODCAST or PRESS

- (HELP! or ASSIST! or AFFORD!) w/20 PAY!

- BIBLE or CHURCH or JESUS or PRIEST or PASTOR! or REVEREND or REV or MINISTER or GOSPEL or GOSPAL

- FREE w/20 BOND

- WINNER*

- "PROSPECTIVE CLIENT" or "PROSPECTIVE CLIENTS"

- KXZM or "LA MOVIDA"

- "DAILY PROGRESS" or DAILYPROGRESS

- "THE NEWS VIRGINIAN"

- WVIR or NBC

- "DAILY NEWS RECORD" or DNR

- KABE or KFTV

- "BUSINESS WIRE" or "PRESS RELEASE"

**DEFENDANTS' PROPOSED CUSTODIANS:**

| Micheal Donovan | CEO |
| --- | --- |
| Tim Shipe | VP of Support Services |
| David See | COO, Libre |
| Nina Erlandson | Director of Operations, Libre |
| Evan Ajin | VP of Operations |
| Richard Moore | Executive VP |
| Crimson Solano | Public Relations |

**PLAINTIFFS' PROPOSED ADDITIONAL CUSTODIANS:** [3] Plaintiffs propose as custodians the following individuals and any other individuals who

---

[3] All of Plaintiffs' "Proposed Additional Custodians" are in addition to those proposed by Defendants. In other words, Plaintiffs propose that Defendants run the proposed search terms through the documents of both the custodians proposed by Defendants and Plaintiffs.

have held the same or equivalent titles as the individuals listed below at any time from July 1, 2012 to the present.

| | |
|---|---|
| Bret Sternberg | Artist Developer Creative Director |
| John Zane | Assistant Editor |
| Elaine Rackley | Breaking Through |
| Theodore Whitelow | Breaking Through |
| Pierre Loza | Breaking Through |
| Eddie Noel Nieves Garcia | Call Center Manager |
| Edwin Adorno Liddy | Call Center Manager |
| Johana Ballesteros Paez | Call Center Manager |
| Raymond Rivera | Call Center Manager |
| Robert Belle | Call Center Manager |
| Samantha Cushman | Call Center Supervisor |
| Summer Cruz | Call Center Supervisor |
| Richard Miniter | CEO |
| Alisa Wilson | COO |
| Anthony Darcus | Community Service Ambassador |
| Jeffrey Mongold | Community Service Ambassador |
| Lance Brooks | Community Service Ambassador |
| Shan Baber | Community Service Ambassador |
| Jennifer Vangorder | Community Service Ambassador |
| Alonso Sandra | Customer Service Manager |
| Abigail Campana | Customer Service Manager |
| Maria De Santiago Casiano | Customer Service Manager |
| Kerry J. DeLeon | Customer Service Manager |
| Darlin Santamaria | Customer Service Manager |
| Gustavo Murillo | Customer Service Manager |
| Juan Barragan | Digital Media Director |
| David Briggman | Director |
| Giancarlo Sopo | Director of Communications |
| Jenny Cadena-Castillo | Director of Operations |
| Raul Sanchez | Director of Operations |

| | |
|---|---|
| Cindy Carr | Director of Pastoral Services |
| Jennifer Little | Director of Public Relations |
| Terry Johnson | Director of Serve/Empower |
| Robin Fife | Director of Support Services |
| Edward DeLeon | East Coast Regional Manager |
| Rodolfo Prieto | East Coast Regional Manager |
| Wendy Cruz Montalvan | East Coast Regional Manager |
| Alex Martinez | IT |
| Eric Billings | IT |
| Andrew Untiedt | IT |
| Chelsea Noel | IT |
| Nicholas Argiro | IT |
| Glenda Oquendo-Marrero | Manager of Call Center Operations |
| Johana Ballesteros Paez | Manager of Call Center Operations |
| Ivan Panisse Negron | National Recruiter |
| Andrew Jones | National Recruiting Manager |
| Beatriz Aleman | National Recruiting Manager |
| Tim Okonski | New Business Development |
| Berta Campos | Nexus Spokesperson |
| Andrew Singer | Legal Assistant/ Non-Attorney Director of Legal Operations |
| Kathryn Shoreman | Legal Support Manager |
| Timothy Smith | Online Sales Rep |
| Adam Donovan | Operations |
| Jennifer Turner | Operations |
| Karl Magenhofer | Producer - Breaking Through |
| Mark Horace Jamse | Public Advocacy Assistant |
| King Salim Khalfani | Public Advocacy Director |
| Anthony Anderson | Public Advocacy Manager |
| Brice Estes | Public Relations |
| Matthew P. Gira | Recruiting Manager |
| Sergio Anselmo | Regional Manager/Call Center Manager |
| Aaron White | Sales Associate |
| Alex Lear | Sales Associate |
| Bane High | Sales Associate |

| Hersey Lane | Sales Associate |
|---|---|
| Joshua Roberts | Sales Associate |
| Robert Jarrell | Sales Associate |
| Joseph Hammond | Senior Editor |
| Bridget Huhn | Social Media Specialist |
| Donna Salmons | Support Services Operational Assistant |
| Andre Johnson | Vice President of Distribution |
| Erik Schneider | VP of Risk Management |
| Ana Bonilla | West Regional Director |

Request 7.

All Documents constituting or reflecting Company policies, procedures, scripts, talking points, guidance, instructions, and training Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services and all Communications Concerning the development, revision, or implementation of the foregoing.

**PLAINTIFFS' PROPOSED SEARCH TERMS:**

- MISSION

- MESSAGING

- MESSAG! w/20 (WE or LIBRE or LBN or NEXUS or CARIDADES or HUMANOS or ATTORNEYS or LAWYERS)

- BOND! w/20 (WE or LIBRE or LBN or NEXUS)

- SERVIC! w/20 (WE or LIBRE or LBN or NEXUS or CARIDADES or HUMANOS or ATTORNEYS or LAWYERS)

- COMMUNICAT! w/20 (CLIENT or PARTICIPANT or IMMIGRANT or CUSTOMER or DETAINEE or SPONSOR or LIBRE or LBN or NEXUS or CARIDADES or HUMANOS or CEM or "CASE MANAGER" or RISK or BREACH! or PAY!)

13

- INSTRUCT! w/20 (CLIENT or PARTICIPANT or IMMIGRANT or CUSTOMER or DETAINEE or SPONSOR or LIBRE or LBN or NEXUS or CARIDADES or HUMANOS or CEM or "CASE MANAGER" or RISK or BREACH! or PAY!)

- SCRIPT!

- "TALKING POINTS"

- GUID!

- TRAIN!

- NARRATIVE

- VALIDATOR

- PR

- PUBLIC w/2 RELATIO!

- (RESPON! or ANSWER!) w/20 QUESTIO!

- ATTORN! w/20 (SHALL or WILL or MUST or NEED*)

- MANUAL

- OPERAT! w/20 PROCED!

- SOP*

- POLICY

- POLICIES

- PROCEDURE*

## DEFENDANTS' PROPOSED CUSTODIANS:

| David See | COO, Libre |
|---|---|
| Nina Erlandson | Director of Operations, Libre |
| Evan Ajin | VP of Operations |

| | |
|---|---|
| Lisa Breeden | Director of Human Resources |
| Micheal Donovan | CEO |
| Richard Moore | Executive VP |
| Erik Schneider | VP of Risk Management |

**PLAINTIFFS' PROPOSED ADDITIONAL CUSTODIANS:** Plaintiffs

propose as custodians the following individuals and any other individuals who

have held the same or equivalent titles as the individuals listed below at any time

from July 1, 2012 to the present.

| | |
|---|---|
| Victor Silva Tejeda | Assistant Monitoring Center Supervisor |
| Juliana Gutierrez | Breach Management Attorney |
| Eddie Noel Nieves Garcia | Call Center Manager |
| Edwin Adorno Liddy | Call Center Manager |
| Johana Ballesteros Paez | Call Center Manager |
| Raymond Rivera | Call Center Manager |
| Robert Belle | Call Center Manager |
| Samantha Cushman | Call Center Supervisor |
| Summer Cruz | Call Center Supervisor |
| Gordon Turner | Caridades |
| Mohsen Ansari | Central Regional Director |
| Andrea Arroyo | CEM |
| Richard Miniter | CEO |
| Tim Okonski | CFO |
| Glenda Oquendo-Marrero | Collections Manager |
| Alisa Wilson | COO |
| Liliana Chavez | Corporate Regional Manager |
| Jovanahilit Correa | Corporate Regional Manager |
| Alonso Sandra | Customer Service Manager |
| Abigail Campana | Customer Service Manager |
| Maria De SantiagoCasiano | Customer Service Manager |
| Kerry J. DeLeon | Customer Service Manager |
| Darlin Santamaria | Customer Service Manager |
| Gustavo Murillo | Customer Service Manager |
| David Briggman | Director |

| James G.A. Walker | Director of Call Center Operations |
|---|---|
| William E. Norton | Director of Collateral Services |
| Tim Donovan | Director of Facilities |
| Chad Sager | Director of Human Resources |
| Lisa Breedan | Director of Human Resources |
| Nathalie Duda | Director of Human Resources |
| Vincent Munoz | Director of Nexus Investigations |
| Jenny Cadena-Castillo | Director of Operations |
| Raul Sanchez Jr. | Director of Operations |
| Carol Taylor | Director of Risk Management |
| Julian Leyva | Director of Risk Management |
| Richard Reigenborn | Director of Risk Management |
| T-Ann Johnson | Director of Serve and Empower |
| Robin Fife | Director of Support Services |
| Robin Fife | Director of Support Services |
| Christopher Wilmore | Director of Wellness Program |
| Rudy Prieto | East Coast Regional Director |
| Wendy Cruz Montalvan | East Coast Regional Manager |
| Lorisol Rodriguez | HR Administrator |
| Janine Saldivar | HR Administrator |
| Martha Pulido | HR Administrator |
| Tina M. Landes | HR Generalist |
| Jesus Fernandez | HR Generalist |
| Joel Wells | HR Generalist |
| Nicholas Agiro | IT Manager |
| Andrew Singer | Legal Assistant/ Non-Attorney Director of Legal Operations |
| Kathryn Shoreman | Legal Support Manager |
| Juliana Castillo | Libre General Council |
| Juliana Johnson | Libre General Counsel |
| Hiram Castillo | Loss Prevention Manager |
| Ivan Panisse Negron | National Recruiter |
| Andrew Jones | National Recruiting Manager |
| Beatriz Aleman | National Recruiting Manager |
| Maria Portillo | National Trainer |
| Jordan Escobedo Diaz | National Training Manager |
| Maria Ortiz Garcia | National Training Manager |
| Adam Donovan | Operations |
| Jennifer Turner | Operations |

| Maria Morales | Quality Assurance Manager |
|---|---|
| Mathew Gira | Recruiting Manager |
| Gabriel Duarte Solis | Rehire- Customer Satisfaction Manager |
| Sergio Anselmo | Regional Manager |
| Cesar Henriquez | Regional Risk Manager |
| Luis Angel Aspeitia | Regional Risk Manager |
| Ernie Correa | Regional Risk Manager |
| Danny Hart | Regional Risk Manager |
| Cesar Henriquez | Regional Risk Manager |
| Francis Hernandez | Regional Risk Manager |
| Cristina Velez Santos | Regional Risk Manager |
| Robert Garcia | Risk Manager |
| Edward DeLeon | Risk East Coast Regional Manager |
| Gilberto Cantu | Risk Mgmt. Central Regional Manager |
| Melanie Cabrera | RM Monitoring Manager |
| Hector Ortiz Cordova | RM Night Shift Supervisor |
| Matthew Stoltz | Senior Investigator |
| Samuel Slayton | Shipping & Receiving Manager |
| Roger Mathias | STC Training Coordinator |
| Cristina Flores | Supervisor-Monitoring Agent Center |
| Michael Song | Support Services |
| Marsha Breeden | Training Manager |
| Marco Orellana | West Coast Regional Risk |
| Ana Bonilla | West Regional Director |

In addition, Plaintiffs propose as custodians all Compliance Managers. Plaintiffs have compiled a list, attached as Appendix A, of individuals Plaintiffs believe to be the relevant individuals who held that role. But Defendants have an independent duty to confirm that all Compliance Managers are included.

Request 9.

All Documents and Communications Concerning the creation of, or any proposed or actual revisions, amendments, or changes to any Documents that are responsive to Request No. 8.[4]

## **PLAINTIFFS' PROPOSED SEARCH TERMS:**

- CONTRACT*

- AGREEMENT* or AGMT*

- "COVER SHEET"

- "RISK ASSESSMENT"

- "INFORMATION SHEET"

- LEAS!

- "DISCLOSURE STATEMENT"

- PROMISSOR*

- ADDENDUM and (CONTRACT or LEASE or AGREEMENT)

- "AUTHORIZATION FORM"

- CO*SIGNER*

- SIGNATORY or SIGNATORIES

- PAPERWORK

- DEPOSIT! w/10 CASH

- STATES w/20 SERVICE

---

[4] For reference, Request 8 calls for "All Documents the Company provided or made available to any Consumers Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, including written agreements between the Company and Consumers and all Documents incorporated in, referenced by, associated with or presented with such written agreements."

- (TERM* or PAPER* or PACKET* or MATERIAL* or SIGNATURE* or INFO or INFORMATION or ENROLL! or "SIGN UP" or JOIN! or NEW) w/25 (CLIENT* or CUSTOMER* or PARTICIPANT* or DETAINEE* or CO*SIGNER* or SPONSOR*)

**DEFENDANTS' PROPOSED CUSTODIANS:**

| Micheal Donovan | CEO |
|---|---|
| Richard Moore | Executive VP |
| Tim Shipe | VP of Support Services |
| David See | COO, Libre |
| Nina Erlandson | Director of Operations, Libre |
| Evan Ajin | VP of Operations |
| Erik Schneider | VP of Risk Management |
| Andrew Singer | Legal Assistant |
| Tim Donovan | Director of Facilities |
| Lisa Breeden | Director of Human Resources |
| T-Ann Johnson | Director of Serve and Empower |

**PLAINTIFFS' PROPOSED ADDITIONAL CUSTODIANS:** Plaintiffs propose as custodians the following individuals and any other individuals who have held the same or equivalent titles as the individuals listed below at any time from July 1, 2012 to the present.

| Eddie Noel Nieves Garcia | Call Center Manager |
|---|---|
| Edwin Adorno Liddy | Call Center Manager |
| Raymond Rivera | Call Center Manager |
| Robert Belle | Call Center Manager |
| Johana Ballesteros Paez | Call Center Manager |
| Samantha Cushman | Call Center Supervisor |
| Summer Cruz | Call Center Supervisor |
| Gordon Turner | Caridades |
| Mohsen Ansari | Central Regional Director |
| Richard Miniter | CEO |
| Alisa Wilson | COO |

| | |
|---|---|
| Jovanahilit Correa | Corporate Regional Manager |
| Liliana Chavez | Corporate Regional Manager |
| Abigail Campana | Customer Service Manager |
| Alonso Sandra | Customer Service Manager |
| Darlin Santamaria | Customer Service Manager |
| Gustavo Murillo | Customer Service Manager |
| Kerry J. DeLeon | Customer Service Manager |
| Maria De Santiago Casiano | Customer Service Manager |
| David Briggman | Director |
| James G.A. Walker | Director of Call Center Operations |
| William E. Norton | Director of Collateral Services |
| Giancarlo Sopo | Director of Communications |
| Chad Sager | Director of Human Resources |
| Lisa Breedan | Director of Human Resources |
| Nathalie Duda | Director of Human Resources |
| Vincent Munoz | Director of Nexus Investigations |
| Jenny Cadena-Castillo | Director of Operations |
| Raul Sanchez Jr. | Director of Operations |
| Cindy Carr | Director of Pastoral Services |
| Carol Taylor | Director of Risk Management |
| Julian Leyva | Director of Risk Management |
| Richard Reigenborn | Director of Risk Management |
| Robin Fife | Director of Support Services |
| Christopher Wilmore | Director of Wellness Program |
| Rodolfo Prieto | East Coast Regional Manager |
| Wendy Cruz Montalvan | East Coast Regional Manager |
| Kathryn Shoreman | Legal Support Manager |
| Juliana Castillo | Libre General Council |
| Juliana Johnson | Libre General Counsel |
| Hiram Castillo | Loss Prevention Manager |
| Johana Ballesteros Paez | Manager of Call Center Operations |
| Tim Okonski | New Business Development |
| Adam Donovan | Operations |
| Jennifer Turner | Operations |
| Gabriel Duarte Solis | Rehire- Customer Satisfaction Manager |
| Sergio Anselmo | Regional Manager/Call Center Manager |
| Cesar Henriquez | Regional Risk Manager |
| Cristina Velez Santos | Regional Risk Manager |
| Danny Hart | Regional Risk Manager |

| Ernie Correa | Regional Risk Manager |
|---|---|
| Francis Hernandez | Regional Risk Manager |
| Luis Angel Aspeitia | Regional Risk Manager |
| Edward DeLeon | Risk East Coast Regional Manager |
| Gilberto Cantu | Risk Mgmt. Central Regional Manager |
| Michael Song | Support Services |
| Donna Salmons | Support Services Operational Assistant |
| Andre Johnson | Vice President of Distribution |
| Marco Orellana | West Coast Regional Risk |
| Ana Bonilla | West Regional Director |

In addition, Plaintiffs propose as custodians all Compliance Managers. Plaintiffs

have compiled a list, attached as Appendix A, of individuals Plaintiffs believe to

be the relevant individuals who held that role. But Defendants have an

independent duty to confirm that all Compliance Managers are included.


<u>Request 11.</u>

All Documents and Communications (including without limitation any written logs,
databases, recordings of telephone calls, text messages, emails, and instant and social
media messages) Concerning the following topics:
   a. The Company paying Consumers' immigration bonds;
   b. Consumers breaching immigration bonds;
   c. Consumer non-compliance with the terms, requirements, or conditions of
      the Nexus Immigration Bond Service, including non-payment;
   d. The reason for or purpose of any Consumer payments to the Company
      Concerning the Nexus Immigration Bond Service;
   e. The Company offering or providing loans or offering or extending credit to
      Consumers Concerning the Nexus Immigration Bond Service;
   f. Consumers owing a debt because the Company paid an immigration bond
      or Consumers' payments going towards paying down an immigration bond
      or paying down a loan;
   g. Arrest, criminal prosecution, detention, or deportation of Consumers or
      any other negative outcome in a Consumer's immigration case or negative
      impact on a Consumer's immigration status;
   h. The GPS devices used for the Nexus Immigration Bond Service, including
      how they functioned, instructions for Consumers about how to use them,
      injuries, harm, irritation, or any adverse reaction caused by GPS devices,
      requests by either Consumers or the Company to remove, exchange, or

replace a GPS device, co-signers wearing GPS devices, and whether GPS devices are required by third parties (such as the court or Immigration and Customs Enforcement);

i.  The collection or attempted collection of payments or debts purportedly owed by Consumers for the Nexus Immigration Bond Service, including through the sale or transfer of Consumer accounts or purported debts to a Debt Buyer, Collection Agency, or other third-party Entity for collection;

j.  Harm to a Consumer's credit rating or reporting of any kind to a Consumer Reporting Agency;

k.  The Company's affiliation or relationship with any third-party Entity Concerning the provision of the Nexus Immigration Bond Service, including Immigration and Customs Enforcement, the U.S. Department of Homeland Security, the courts, and bond agents; and

l.  the Nexus Immigration Legal Services.

## PLAINTIFFS' PROPOSED SEARCH TERMS:

Plaintiffs maintain their position that the Capsule files do not need to be searched to determine responsiveness because they are all responsive and, should not be subject to a "search terms" production, because they should instead be provided in their entirety. The proposed terms are therefore intended to apply to all other forms of ESI:

a.
- (PAY! or PAID or "PUT UP") w/20 (BOND! or BAIL or PREMIUM* or COLLATERAL)

- (POST!) w/20 (BOND! or BAIL or PREMIUM* or COLLATERAL)

- COMPANY w/20 (BOND! or BAIL or PREMIUM* or COLLATERAL)

- (LIBRE or NEXUS) w/20 (BOND! or BAIL or PREMIUM* or COLLATERAL)

- PLEDG! w/20 (COLLATERAL or BOND! or PREMIUM*)

b.
- (BREAC! or VIOLAT!) w/20 (BOND! or BAIL or CONDITION! or OBLIGAT!)

- (MISS! or "SHOW UP" or "SHOWED UP" or APPEAR!) w/20 COURT

- "NO SHOW"

- (FAIL! or NO) w/20 PERFORM*

- ORDER w/20 REMOV*

- "I-862" or NTA* or "NOTICE TO APPEAR" or "I-340" or "NOTICE TO DELIVER" or NTD*

- TAKE w/5 IN

- "RISK MANAGEMENT" or "RISK MGMT" or "RISK MANAGER"

c.  - PTP* or "PROMISE TO PAY" or "PROMISED TO PAY"

- "CHECK IN"

- (CALL! or REPORT! or MEET! or "SHOW UP" or "SHOWED UP" or "CHECK IN" or "CHECKED IN") w/25 (LIBRE or NEXUS or US or OFFICE or FAIL or "DID NOT" or NEVER)

- (PROGRAM* or CONRACT* or AGREEMENT*) w/25 (CONDITION! or REQUIR! or TERM*)

- (REMIN! or BEHIND or LATE or FAIL! or "DID NOT" or OW! or STOP! or START! or ON*TIME or TIMELY) w/20 (PAY! or DUE or OW! or MONTH* or FEE*)

- (REMIN! or NOT or FAIL!) w/20 CHARG!

- (GPS or BRACELET or ANKLET or WRIST or ANKLE or MONITOR or DEVICE or TRACK!) w/20 (REMOV! or CUT! or "TAKE OFF")

23

- (FAIL! or NO) w/20 COMPL!

- (FEE* or PAY!) w/20 (NEVER or FAIL! or NOT)

- SCARED or AFRAID

d. - RECEIPT*

- INVOICE*

- COLLATERAL*

- PRINCIPAL*

- LEAS!

- LIGHTSPEED and PAY!

- "AMERICAN SPIRIT"

- CAPSULE

- WUFOO

- (FOR or TOWARD or TO or PROCESS!) w/20 (GPS or ANKLET or BRACELET or WRIST or ANKLE or MONITOR or DEVICE or TRACK!)

- (FOR or TOWARD or TO or PROCESS!) w/20 (BOND* or BAIL or PROGRAM or FEE* or PREMIUM* or PAY!)

- ("80" or EIGHTY) w/10 (PERCENT or "%") or "80%"

- PTP

- COLLATERAL!

- UPFRONT

- TRAVEL! or TICKET* or BUS or FLIGHT or PLANE or HOTEL or TAXI or MEAL or DINNER or FOOD or FLIGHT or TRANSPORT!

- CONSULT!

e. • BORROW!

- PAY! w/10 (DOWN or BACK or BOND* or BAIL*)

- "PUT UP" w/10 (MONEY or BOND* or CASH or COST or BAIL*)

- REPAY! or REPAID

- LOAN!

- CREDIT

- ADVANC!

- INTEREST

- LEND! or LENT

- PROMISSOR!

- DEBT!

- OWE* or OWING

f. • BORROW!

- PAY! w/10 (DOWN or BACK or BOND* or BAIL*)

- "PUT UP" w/10 (MONEY or BOND* or CASH or COST or BAIL*)

- REPAY! or REPAID

- LOAN!

- CREDIT

- ADVANC!

- INTEREST

- LEND! or LENT

- PROMISSOR!

- DEBT!

- OWE* or OWING

g. • ARREST!

- PROSECUT!

- PICK! w/5 UP

- TAKE w/5 IN

- (SEND! or BACK or GO! or RETURN! or REPOR! or HAND! or INFORM!) w/20 (JAIL or PRISON or DETENTION or IMMIGRATION or CUSTODY or ICE or DHS or GOVERNMENT or AUTHORIT!)

- DEPOR!

- SEND! w/10 BACK

- REPUTATION

- BAD w/15 (NAME or TIME or FAMILY)

- TROUBLE

- PROBLEM*

- SHERIFF

- CRIMINAL or CRIME*

- POLICE or COP*

- SECURITY

- INVESTIGAT!

- HOOK w/5 BOOK

- BOUNTY

- (NEGATIVE or HURT) and (IMPACT or EFFECT or CASE)

h.
- (GPS or BRACELET or ANKLET or WRIST or MONITOR or DEVICE) w/20 (INJUR! or COMPLA! or SKIN or INFECT! or BLEED! or BLOOD! or BURN! or BRUIS! or RASH! or IRRIT! or MEDICA! or HARM! or HURT! or PAIN! or SORE or CUT! or DOCTOR* or HOSPITAL* or EXPLOD! or JOB* or WORK! or BOSS! or EMPLOY! or COMFORT!* or DISCOMFORT or UNCOMFORT! or OFF or STOP! or DONE or END! or REMOV! or UNASSIGN! or BROKE* or DEFECT! or MALFUNCTION! or SWAP! or SICK or SURGERY or OPERAT! or SHOWER! or WASH! or WATER or WET or ALLERG! or OFF or "HOW TO" or INSTRUCT! or FUNCTION or EXCHANG! or "TAKE OFF" or PROBLEM!)

- (NOT or NO) w/10 (WORK! or FUNCTION! or ICE or IMMIGRATION or DHS or COURT or JAIL or PRISON or DETENTION or CUSTODY or ICE or GOVERNMENT or AUTHORIT!)

- UPGRAD! or PROMOT! or PIZZA or PARTY

- PREGNANT or PREGNANCY

- ATTENTI

- 3M

- BUDDI

- OMNI!

- "SECURE ALERT" or "SECUREALERT"

27

i. • (NEED! or NON or NO or PART! or OWE! or FAIL! or "DID NOT" or WILL or WON*T) w/10 PAY!

• COLLECT!

• DEBT* w/10 SELL!

• SEN! w/20 COLLEC!

• REPOR! w/10 CREDIT*

• DEBT* w/5 COLLECT!

• (PAY* or PAYMEN! or TRIED or TRY! or FAIL! or ATTEMPT! or WENT) w/5 COLLECT!

• CALL! w/20 (EVERY*DAY or CONTINU! or LOT or MANY or CONSTANT! or HARRASS! or STOP or "KEEPS" or REPEAT!)

• RESPONSIB!

• (SYSTEM! or AUTO!) w/10 (CALL! TEXT! CONTACT! NOTI!)

• DUE w/5 TAG!

• BACK w/20 (GPS or ANKLET or BRACELET or MONITOR or WRIST or ANKLE or DEVICE or TRACK!)

j. • CREDIT w/5 (BUREAU or REPOR! or HARM! or AFFEC! or HURT! or NEGATIVE or "GO DOWN" or DECREAS! or BAD or HURT! or LOW! or FUCK! or SHIT! or WRONG or UNFAIR* or DING!)

• EXPERIAN or EQUIFAX or TRANSUNION

• (SEND! or SELL! or SENT) w/25 COLLECT!

k. • (LIBRE or NEXUS or WE or US or OUR or PROGRAM or COMPANY or PROGRAM or SYSTEM) w/50 (ICE or POLICE or COP or

28

GOVERNMENT or IMMIGRA! or DEPOR! or DHS or COURT or BAIL or
BOND or JUDGE or OFFICER or JAIL or PRISON or DETENTION or
DETAIN! or CUSTODY or ICE or GOVERNMENT or AUTHORI!)

l.        •        CARIDADES

•        (ATTORNEY or LAWYER or LEGAL or FIRM or LAW) w/5
(LIBRE or NEXUS or WE or US or OUR or PROGRAM or HELP! or
DEPARTMENT or HAV! or FREE or REFER! or REPRESENT! or "NO
CHARGE")

•        (REPRESENT! or REFER!) w/10 (HIM or HER or PARTICIPANT
or YOU or CLIENT)

•        "PRO BONO"

•        "LEGAL AID"

•        (HELP! or ASSIST! or REPRESENT!) w/20 (CASE or ASYLUM or
STATUS or "GREEN CARD" or "PERMANENT RESIDENT")

•        REFER!

•        HUMANOS

**DEFENDANTS' PROPOSED CUSTODIANS:**

| Richard Moore | Executive VP |
|---|---|
| Micheal Donovan | CEO |
| Erik Schneider | VP of Risk Management |
| Hazzar Pastor Perdomo | Breach Manager |
| Jose Pastrana | Breach Manager |
| Ray Salinas | Breach Manager |
| Carol Taylor | Director of Risk Management |
| Evan Ajin | VP of Operations |
| Gilbert Cantu | Central Regional Risk Manager |

**PLAINTIFFS' PROPOSED ADDITIONAL CUSTODIANS:**

Plaintiffs propose as custodians the following individuals and any other

individuals who have held the same or equivalent titles as the individuals listed

below at any time from July 1, 2012 to the present.

| | |
|---|---|
| Victor Silva Tejeda | Assistant Monitoring Center Supervisor |
| Eddie Noel Nieves Garcia | Call Center Manager |
| Edwin Adorno Liddy | Call Center Manager |
| Johana Ballesteros Paez | Call Center Manager |
| Raymond Rivera | Call Center Manager |
| Robert Belle | Call Center Manager |
| Samantha Cushman | Call Center Supervisor |
| Summer Cruz | Call Center Supervisor |
| Gordon Turner | Caridades |
| Mohsen Ansari | Central Regional Director |
| Richard Miniter | CEO |
| Tim Okonski | CFO |
| Glenda Oquendo-Marrero | Collections Manager |
| David See | COO |
| Alisa Wilson | COO |
| Liliana Chavez | Corporate Regional Manager |
| Jovanahilit Correa | Corporate Regional Manager |
| Alonso Sandra | Customer Service Manager |
| Abigail Campana | Customer Service Manager |
| Maria De SantiagoCasiano | Customer Service Manager |
| Kerry J. DeLeon | Customer Service Manager |
| Darlin Santamaria | Customer Service Manager |
| Gustavo Murillo | Customer Service Manager |
| David Briggman | Director |
| James G.A. Walker | Director of Call Center Operations |
| William E. Norton | Director of Collateral Services |
| Nancy Insco | Director of Empower |
| Tim Donovan | Director of Facilities |
| Chad Sager | Director of Human Resources |
| Lisa Breedan | Director of Human Resources |
| Nathalie Duda | Director of Human Resources |

| | |
|---|---|
| Vincent Munoz | Director of Nexus Investigations |
| Jenny Cadena-Castillo | Director of Operations |
| Raul Sanchez Jr. | Director of Operations |
| Nina Erlandson | Director of Operations |
| Julian Leyva | Director of Risk Management |
| Richard Reigenborn | Director of Risk Management |
| T-Ann Johnson | Director of Serve and Empower |
| Robin Fife | Director of Support Services |
| Robin Fife | Director of Support Services |
| Christopher Wilmore | Director of Wellness Program |
| Rudy Prieto | East Coast Regional Director |
| Wendy Cruz Montalvan | East Coast Regional Manager |
| Nicole Strickler | GPS Coordinator |
| Ellen Jan-Nel Smith | GPS Coordinator |
| Lorisol Rodriguez | HR Administrator |
| Janine Saldivar | HR Administrator |
| Martha Pulido | HR Administrator |
| Tina M. Landes | HR Generalist |
| Jesus Fernandez | HR Generalist |
| Joel Wells | HR Generalist |
| Nicholas Agiro | IT Manager |
| Robert Sherman | Lead Technician |
| Andrew Singer | Legal Assistant/ Non-Attorney Director of Legal Operations |
| Kathryn Shoreman | Legal Support Manager |
| Juliana Castillo | Libre General Council |
| Juliana Johnson | Libre General Counsel |
| Hiram Castillo | Loss Prevention Manager |
| Andrew Jones | National Recruiting Manager |
| Beatriz Aleman | National Recruiting Manager |
| Maria Portillo | National Trainer |
| Jordan Escobedo Diaz | National Training Manager |
| Maria Ortiz Garcia | National Training Manager |
| Adam Donovan | Operations |
| Jennifer Turner | Operations |
| Maria Morales | Quality Assurance Manager |
| Mathew Gira | Recruiting Manager |
| Sergio Anselmo | Regional Manager |
| Cesar Henriquez | Regional Risk Manager |

| Luis Angel Aspeitia | Regional Risk Manager |
|---|---|
| Ernie Correa | Regional Risk Manager |
| Danny Hart | Regional Risk Manager |
| Cesar Henriquez | Regional Risk Manager |
| Francis Hernandez | Regional Risk Manager |
| Cristina Velez Santos | Regional Risk Manager |
| Edward DeLeon | Risk East Coast Regional Manager |
| Melanie Cabrera | RM Monitoring Manager |
| Hector Ortiz Cordova | RM Night Shift Supervisor |
| Matthew Stoltz | Senior Investigator |
| Roger Mathias | STC Training Coordinator |
| Cristina Flores | Supervisor-Monitoring Agent Center |
| Marsha Breeden | Training Manager |
| Marco Orellana | West Coast Regional Risk |
| Ana Bonilla | West Regional Director |

Plaintiffs also propose as custodians all general-use or departmental emails, including but not limited to info@librebynexus.com, that were provided to consumers, as well as all employees who held the following titles at any time from July 1, 2012 to the present:

- Breach Manager (including any Associate Breach Managers)
- Call Center
- Case Manager
- Client Experience Manager
- Collections or Collections Specialist
- Compliance Manager
- Customer Experience Manager (CEM)
- Empower Call Center
- Empower Case Manager
- Empower Client Experience Manager
- Investigator
- Monitoring Agent
- Monitoring Center
- Monitoring Technician
- Risk Manager
- Secured

- Transportation Agent

Plaintiffs have compiled a list, attached as Appendix A, of individuals Plaintiffs believe to be the relevant individuals who held these roles. But Defendants have an independent duty to confirm that all employees who held these titles anytime during the relevant time period are included.

Request 13.

All Documents and Communications Concerning the tracking or accounting of all money received from Consumers or purportedly owed by Consumers for the Nexus Immigration Bond Service, including the following:

   a. Lightspeed records;

   b. Documents and Communications describing the procedures or ways Consumer payments are or should be made; and

   c. Documents and Communications Concerning the accuracy of or completeness of the Company's Consumer payment tracking or accounting system.

**PLAINTIFFS' PROPOSED SEARCH TERMS:**

Plaintiffs maintain their position that the Lightspeed records and other payment-tracking records should not be subject to a "search terms" production, and should instead be produced in their entirety. The proposed search terms are therefore intended to apply to all other forms of ESI. In addition, by only proposing search terms and custodians for the lettered sub-parts, Defendants have failed to make a proposal that addresses all of the documents sought by this request.

- (QUESTIO! or ASK! or "HOW MUCH" or COST! or OW! or AMOUNT!) w/20 (PAY! or TOTAL or BOND* or BAIL* or OW! or COLLATERAL!)

- LIGHTSPEED or RETAIL

- "AMERICAN SPIRIT"

- WUFOO

- DUE w/5 (TAG! or PAY! or MONTH!)

- (RECEIPT* or DEPOSIT*) w/10 (PHOTO* or PICTURE or TEXT! or SEND! or NEED or MUST or PROVIDE or HAVE)

- DEPOSIT* w/10 (CASH or BANK)

- PAY! w/10 (CARD or CC)

- (TRACK! or ACCOUNT! or ORGANIZ! or KEEP! or SAV! or COLLECT!) w/20 (PAY! or BILL* or INVOICE* or RECEIPT* or COLLATERAL! or RECORD!)

- (INACCURATE or ACCUR! or WRONG or INCOMPLETE or COMPLET! or MANY or ALREADY) w/20 (PAY! or BILL or INVOICE* or RECEIPT* or COLLATERAL! or RECORD! or ACCOUNT! or TRACK!)

- REFUND!

## DEFENDANTS' PROPOSED CUSTODIANS:

| Richard Moore | Executive VP |
| Micheal Donovan | CEO |
| Evan Ajin | VP of Operations |

**PLAINTIFFS' PROPOSED ADDITIONAL CUSTODIANS:** Plaintiffs propose as custodians the following individuals and any other individuals who have held the same or equivalent titles as the individuals listed below at any time from July 1, 2012 to the present.

| | |
|---|---|
| David See | COO |
| Alisa Wilson | COO |
| Eddie Noel Nieves Garcia | Call Center Manager |
| Edwin Adorno Liddy | Call Center Manager |
| Johana Ballesteros Paez | Call Center Manager |
| Raymond Rivera | Call Center Manager |
| Robert Belle | Call Center Manager |
| Samantha Cushman | Call Center Supervisor |
| Summer Cruz | Call Center Supervisor |
| Mohsen Ansari | Central Regional Director |
| Andrea Arroyo | CEM |
| Richard Miniter | CEO |
| Gregory Solsrud | CFO |
| Rebecca Wells | CFO |
| Tim Okonski | CFO |
| Andrea Arroyo | CEM |
| Glenda Oquendo-Marrero | Collections Manager |
| Jovanahilit Correa | Corporate Regional Manager |
| Liliana Chavez | Corporate Regional Manager |
| Jose L. Alfaro | Critical Controls |
| Luis Garcia | Critical Controls |
| Gonzalo Rosas | Critical Controls Call Center |
| Alonso Sandra | Customer Service Manager |
| Abigail Campana | Customer Service Manager |
| Maria De Santiago Casiano | Customer Service Manager |
| Kerry J. DeLeon | Customer Service Manager |
| Darlin Santamaria | Customer Service Manager |
| Gustavo Murillo | Customer Service Manager |
| James G.A. Walker | Director of Call Center Operations |
| William E. Norton | Director of Collateral Services |
| Vincent Munoz | Director of Investigations |
| Jenny Cadena-Castillo | Director of Operations |
| Nina Erlandson | Director of Operations |

| | |
|---|---|
| Raul Sanchez | Director of Operations |
| Carol Taylor | Director of Risk Management |
| Julian Leyva | Director of Risk Management |
| Richard Reigenborn | Director of Risk Management |
| Robin Fife | Director of Support Services |
| Rodolfo Prieto | East Coast Regional Manager |
| Wendy Cruz Montalvan | East Coast Regional Manager |
| Edward DeLeon | Risk East Coast Regional Manager |
| Heather Munzner | Finance |
| Elizabeth Hurst | Finance Manager |
| Wanda Barnes | Finance Manager |
| Alex Martinez | IT |
| Eric Billings | IT |
| Andrew Untiedt | IT |
| Chelsea Noel | IT |
| Nicholas Argiro | IT |
| Juliana Castillo | Libre General Council |
| Juliana Johnson | Libre General Counsel |
| Hiram Castillo | Loss Prevention Manager |
| Adam Donovan | Operations |
| Jennifer Turner | Operations |
| Maria Morales | Quality Assurance Manager |
| Sergio Anselmo | Regional Manager |
| Cesar Henriquez | Regional Risk Manager |
| Cristina Velez Santos | Regional Risk Manager |
| Danny Hart | Regional Risk Manager |
| Ernie Correa | Regional Risk Manager |
| Francis Hernandez | Regional Risk Manager |
| Luis Angel Aspeitia | Regional Risk Manager |
| Gabriel Duarte Solis | Rehire- Customer Satisfaction Manager |
| Robert Garcia | Risk Manager |
| Gilberto Cantu | Risk Mgmt. Central Regional Manager |
| Tawana Washington | Senior Finance Manager |
| Erik Scheinder | VP of Risk Management |
| Tim Shipe | VP of Support Services |
| Marco Orellana | West Coast Regional Risk |
| Ana Bonilla | West Region Director |

Plaintiffs also propose as custodians all employees who held the titles of "Collections," "Collections Specialist," or any other similar or equivalent title at any time from July 1, 2012 to the present. Plaintiffs have compiled a list, attached as Appendix A, of individuals Plaintiffs believe to be the relevant individuals who held these roles. But Defendants have an independent duty to confirm that all employees who held these titles anytime during the relevant time period are included.

Request 14.

All Documents and Communications Concerning Consumer refunds Concerning the Nexus Immigration Bond Service, including instances when
      d. a Consumer requested a refund and did not receive one;
      e. a Consumer's immigration case ended and/or his or her bond was cancelled; or
      f. a Consumer made payments to the Company or any of its affiliates but no Consumer was released from immigration detention.

**PLAINTIFFS' PROPOSED SEARCH TERMS:**

By only proposing search term and custodians for the lettered sub-parts, Defendants have failed to make a proposal that addresses all of the documents sought by this request.

- REFUND!

- MONEY w/10 BACK

- COLLATERAL! or DOWN*PAYMENT or "DOWN PAYMENT" or DEPOSIT or PTP*

- (END! or CLOS! or WIN! or WON or LOS! or "GREEN CARD" or "PERMANENT RESIDENT" or ASYLUM or STATUS or APPEAL! or

CHALLENG!) w/20 (CASE or COURT or FILE or PROCEEDING or DECISION or JUDGE or IMMIGRATION or RULING)

- (EIGHTY or 80) w/2 PERCENT

- "80%"

- "EIGHTY %"

**DEFENDANTS' PROPOSED CUSTODIANS:**

| Richard Moore | Executive VP |
|---|---|
| David See | COO, Libre |
| Nina Erlandson | Director of Operations, Libre |
| Micheal Donovan | CEO |
| Evan Ajin | VP of Operations |

**PLAINTIFFS' PROPOSED ADDITIONAL CUSTODIANS:** Plaintiffs propose as custodians the following individuals and any other individuals who have held the same or equivalent titles as the individuals listed below at any time from July 1, 2012 to the present.

| Alisa Wilson | COO |
|---|---|
| Eddie Noel Nieves Garcia | Call Center Manager |
| Edwin Adorno Liddy | Call Center Manager |
| Johana Ballesteros Paez | Call Center Manager |
| Raymond Rivera | Call Center Manager |
| Robert Belle | Call Center Manager |
| Samantha Cushman | Call Center Supervisor |
| Summer Cruz | Call Center Supervisor |
| Mohsen Ansari | Central Regional Director |
| Richard Miniter | CEO |
| Gregory Solsrud | CFO |
| Rebecca Wells | CFO |
| Tim Okonski | CFO |

| Glenda Oquendo-Marrero | Collections Manager |
|---|---|
| Jovanahilit Correa | Corporate Regional Manager |
| Liliana Chavez | Corporate Regional Manager |
| Alonso Sandra | Customer Service Manager |
| Abigail Campana | Customer Service Manager |
| Maria De Santiago Casiano | Customer Service Manager |
| Kerry J. DeLeon | Customer Service Manager |
| Darlin Santamaria | Customer Service Manager |
| Gustavo Murillo | Customer Service Manager |
| James G.A. Walker | Director of Call Center Operations |
| William E. Norton | Director of Collateral Services |
| Jenny Cadena-Castillo | Director of Operations |
| Raul Sanchez | Director of Operations |
| Carol Taylor | Director of Risk Management |
| Julian Leyva | Director of Risk Management |
| Richard Reigenborn | Director of Risk Management |
| Robin Fife | Director of Support Services |
| Rodolfo Prieto | East Coast Regional Manager |
| Wendy Cruz Montalvan | East Coast Regional Manager |
| Edward DeLeon | Risk East Coast Regional Manager |
| Heather Munzner | Finance |
| Elizabeth Hurst | Finance Manager |
| Wanda Barnes | Finance Manager |
| Alex Martinez | IT |
| Eric Billings | IT |
| Andrew Untiedt | IT |
| Chelsea Noel | IT |
| Nicholas Argiro | IT |
| Juliana Castillo | Libre General Council |
| Juliana Johnson | Libre General Counsel |
| Hiram Castillo | Loss Prevention Manager |
| Adam Donovan | Operations |
| Jennifer Turner | Operations |
| Maria Morales | Quality Assurance Manager |
| Sergio Anselmo | Regional Manager |
| Cesar Henriquez | Regional Risk Manager |
| Cristina Velez Santos | Regional Risk Manager |
| Danny Hart | Regional Risk Manager |
| Ernie Correa | Regional Risk Manager |
| Francis Hernandez | Regional Risk Manager |

| Luis Angel Aspeitia | Regional Risk Manager |
|---|---|
| Robert Garcia | Risk Manager |
| Gilberto Cantu | Risk Mgmt. Central Regional Manager |
| Tawana Washington | Senior Finance Manager |
| Erik Scheinder | VP of Risk Management |
| Tim Shipe | VP of Support Services |
| Marco Orellana | West Coast Regional Risk |
| Ana Bonilla | West Region Director |
| Gabriel Duarte Solis | Rehire- Customer Satisfaction Manager |

Plaintiffs also propose as custodians all employees who held any of the following titles or any other similar or equivalent titles at any time from July 1, 2012 to the present:

- Call Center
- Case Manager
- Client Experience Manager
- Collections or Collections Specialist
- Customer Experience Manager (CEM)
- Secured

Plaintiffs have compiled a list, attached as Appendix A, of individuals Plaintiffs believe to be the relevant individuals who held these roles. But Defendants have an independent duty to confirm that all employees who held these titles anytime during the relevant time period are included.

Request 15.

All agreements between any Defendant and any Person to provide products or services Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, and Documents and Communications Concerning performance of any Entity under such agreements. The response to this request shall include any agreements for the following:
  a.      the provision of GPS hardware or services;
  b.      the provision of marketing, advertising, or public relations services;
  c.      the provision of legal services to Consumers;

    d.      the storage of Communications for the Company, including e-mail, instant messaging, chat, or telephone recordings (both cellular and landlines); and

    e.      with any bond, surety, or insurance company or the agent of any bond, surety, or insurance company.

## **PLAINTIFFS' PROPOSED SEARCH TERMS:**

Plaintiffs maintain their position that search terms are not necessary to provide the agreements requested herein, and they all should be provided in their entirety. The proposed terms are therefore intended to apply to all other forms of ESI. In addition, by only proposing search term and custodians for the lettered sub-parts, Defendants have failed to make a proposal that addresses all of the documents sought by this request.

- OMNI!

- BUDDI or FITBIT

- ATTENTI or 3M

- "SECURE ALERT" or "SECUREALERT"

- MARCO

- LIMANDRI

- COLE

- STATEWIDE

- ALIGN

- SURETY

- EVERGREEN

- (INTERNATIONAL or INT*L or INTL) w/3 FID!

- BONDSMAN or (PHIL! w/3 RE*)

- CARIDADES

41

- HUMANOS

- SHERMAN*STOLTZ

- GMAIL

- GOOGLE

- WORKPLACE

- EMAIL w/ (PROVID! or HOST! or STOR!)

- PHONE.COM

- NEXTIVA

- "8x8"

- VOIP

- YTEL

- FIVE9

- SLACK or WHATSAPP or SMS or ICHAT or "TEXT MESSAGE" or "TEXT BETTER"

- (CONTRACT* or AGREEMENT* or TERM* or DEAL*) w/10 (BREACH! or PERFRM! or VIOLAT! or REQUIR! or OBLIG! or MUST or NEED or COMPL!)

- PINTA

- FUSION

- LIBRE w/5 APP

- "LIBREAPP"

**DEFENDANTS' PROPOSED CUSTODIANS:**

| 15a | Micheal Donovan | CEO |
|-----|-----------------|-----|

|  | Richard Moore | Executive VP |
|---|---|---|
|  | Evan Ajin | VP of Operations |
|  | Hiram Castillo | Loss Prevention Manager |
| 15b | Micheal Donovan | CEO |
|  | Evan Ajin | VP of Operations |
|  | Richard Moore | Executive VP |
|  | David See | COO, Libre |
|  | Tim Shipe | VP of Support Services |
|  | Crimson Solano | Public Relations |
|  | Nina Erlandson | Director of Operations, Libre |
| 15c | Micheal Donovan | CEO |
|  | Evan Ajin | VP of Operations |
|  | Richard Moore | Executive VP |
|  | Andrew Singer | Legal Assistant |
| 15d | Richard Moore | Executive VP |
|  | Micheal Donovan | CEO |
|  | Evan Ajin | VP of Operations |
| 15e | Micheal Donovan | CEO |
|  | Richard Moore | Executive VP |
|  | Evan Ajin | VP of Operations |
|  | Erik Schneider | VP of Risk Management |

**PLAINTIFFS' PROPOSED ADDITIONAL CUSTODIANS:** Plaintiffs ask that Defendants run all of the proposed search terms in the documents of all of the custodians Defendants proposed above, regardless of the particular sub-part they were proposed for. In addition, Plaintiffs propose as custodians the following individuals and any other individuals who have held the same or equivalent titles as the individuals listed below at any time from July 1, 2012 to the present.

| Victor Silva Tejeda | Assistant Monitoring Center Supervisor |
|---|---|
| Gordon Turner | Caridades |
| Mohsen Ansari | Central Regional Director |
| Andrea Arroyo | CEM |
| Richard Miniter | CEO |
| Tim Okonski | CFO |
| Alisa Wilson | COO |
| David See | COO |
| Liliana Chavez | Corporate Regional Manager |
| Jovanahilit Correa | Corporate Regional Manager |
| Juan Barragan | Digital Media Director |
| David Briggman | Director |
| James G.A. Walker | Director of Call Center Operations |
| William E. Norton | Director of Collateral Services |
| Giancarlo Sopo | Director of Communications |
| Tim Donovan | Director of Facilities |
| Chad Sager | Director of Human Resources |
| Lisa Breedan | Director of Human Resources |
| Nathalie Duda | Director of Human Resources |
| Vincent Munoz | Director of Nexus Investigations |
| Jenny Cadena-Castillo | Director of Operations |
| Raul Sanchez Jr. | Director of Operations |
| Nina Erlandson | Director of Operations |
| Cindy Carr | Director of Pastoral Services |
| Jennifer Little | Director of Public Relations |
| Carol Taylor | Director of Risk Management |
| Julian Leyva | Director of Risk Management |
| Richard Reigenborn | Director of Risk Management |
| T-Ann Johnson | Director of Serve and Empower |
| Robin Fife | Director of Support Services |
| Christopher Wilmore | Director of Wellness Program |
| Rudy Prieto | East Coast Regional Director |
| Wendy Cruz Montalvan | East Coast Regional Manager |
| Nicholas Agiro | IT Manager |
| Alex Martinez | IT |
| Eric Billings | IT |
| Andrew Untiedt | IT |
| Chelsea Noel | IT |

| Kathryn Shoreman | Legal Support Manager |
|---|---|
| Juliana Castillo | Libre General Council |
| Juliana Johnson | Libre General Counsel |
| Hiram Castillo | Loss Prevention Manager |
| Andrew Jones | National Recruiting Manager |
| Beatriz Aleman | National Recruiting Manager |
| Maria Portillo | National Trainer |
| Jordan Escobedo Diaz | National Training Manager |
| Maria Ortiz Garcia | National Training Manager |
| Adam Donovan | Operations |
| Jennifer Turner | Operations |
| Maria Morales | Quality Assurance Manager |
| Karl Magenhofer | Producer - Breaking Through |
| King Salim Khalfani | Public Advocacy Director |
| Anthony Anderson | Public Advocacy Manager |
| Mathew Gira | Recruiting Manager |
| Sergio Anselmo | Regional Manager |
| Cesar Henriquez | Regional Risk Manager |
| Luis Angel Aspeitia | Regional Risk Manager |
| Ernie Correa | Regional Risk Manager |
| Danny Hart | Regional Risk Manager |
| Cesar Henriquez | Regional Risk Manager |
| Francis Hernandez | Regional Risk Manager |
| Cristina Velez Santos | Regional Risk Manager |
| Robert Garcia | Risk Manager |
| Edward DeLeon | Risk East Coast Regional Manager |
| Gilberto Cantu | Risk Mgmt. Central Regional Manager |
| Cristina Flores | Supervisor-Monitoring Agent Center |
| Michael Song | Support Services |
| Antwhon Suiter | Support Services Assistant |
| Donna Salmons | Support Services Operational Assistant |
| Oliver McKenzie | Technology Manager |
| Marsha Breeden | Training Manager |
| Andre Johnson | Vice President of Distribution |
| Tim Shipe | VP of Support Services |
| Erik Schneider | VP of Risk Management |
| Marco Orellana | West Coast Regional Risk |

| Ana Bonilla | West Regional Director |
|---|---|

Request 17.[5]

All Communications with Consumers, and all Documents Concerning those
Communications (including without limitation any written logs, databases, recordings
of telephone calls, text messages, emails, and instant and social media messages),
Concerning any of the following topics:
   a. How the Nexus Immigration Bond Service works or what it provides to
      Consumers; and
   b. Signing up, registering, or enrolling in the Nexus Immigration Bond
      Service.

**PLAINTIFFS' PROPOSED SEARCH TERMS:**

- (LOG! or TRACK! or RECORD! or DATABASE or SPREADSHEET or

  COLLECT!) w/10 (CALL! or TEXT! or MESSAG! or SMS or WHATSAPP

  or CHAT! or IM! or EMAIL! or COMMUNICAT! or CONTACT!)

- (PARTICIPANT* or CLIENT* or CO*SIGNER* or SPONSOR* or EXPLA!

  or WORKS! or REQUIR! or RULE! or TERM* or MUST or SYSTEM! or

  PROGRAM!) w/15 (SIGN or ENROLL! or INITIAL! or PROGRAM! or

  BOND! or TERM* or SYSTEM! or "WE DO" or CONTRACT! or

  AGREEMENT*)

- I*391 or "391"

- CANCEL! w/25 (BOND* or BAIL* or FORM*)

- CANCELLATION

---

[5] Defendants never proposed search terms or custodians on this request. Plaintiffs asked that
search terms be run to respond to this request. Plaintiffs' Letter to Defendants dated Nov. 5,
2021 at 3-4. To try to move discovery along expeditiously, Plaintiffs have proposed search terms
and custodians. But as explained above, Defendants still have a burden to propose any
additional search terms and custodians they believe would locate responsive documents.

- (APPEAL! or STATUS or ASYLUM or END! or CLOS! or WIN! or WON or LOS! or "GREEN CARD" or "PERMANENT RESIDENT" or FINISH!) w/20 (CASE or COURT or PROCEEDING or ASYLUM or STATUS)

- (PROGRAM! or LIST*) w/20 (CONDITION! or REQUIREMENT!)

- PAY! w/20 (FORGIV! or FORGAVE or EARLY or ONTIME or ON*TIME or "ON TIME")

- PROMOT! or OFFER! or DISCOUNT!

- RELEAS! w/10 (DETAIN! or DETENTION or JAIL* or PRISON* or IMMIGRATION or CUSTOD! or GOVERNMENT! or ICE or HOMELAND or DHS or FED!)

- SIGN! w/ 20 (CONTRACT! or AGREE!)

- TRAVEL or CHARIT* or INTEGRATION or TRANSLAT!

**PLAINTIFFS' PROPOSED CUSTODIANS:** Plaintiffs propose the same custodians as those Plaintiffs proposed for Request 11.

Request 20.[6]

All Documents reflecting Consumer complaints or disputes Concerning any Nexus Products and/or Services and all responses to such complaints or disputes.

**PLAINTIFFS' PROPOSED SEARCH TERMS:**

- COMPLAI! or CONCER! or QUESTI! or DISPUT! or SCAM! or FUCK! or SHIT or FRAUD! or MISLEAD! or MISLED! or MISREP! or ROB! or

---

[6] Defendants never proposed search terms or custodians on this request. Plaintiffs asked that search terms be run to respond to this request in our letter dated November 5, 2021. Plaintiffs' Letter to Defendants dated Nov. 5, 2021 at 3-4. To try to move discovery along expeditiously, Plaintiffs have proposed search terms and custodians, but as explained above, Defendants still have a burden to propose any additional search terms and custodians they believe would locate responsive documents.

STEAL! or STOLE* or LIAR* or LIE! or LYING or MISINFORM! or CHEAT! or PREY! or PREDATOR* or ILLEGAL! or UNLAWFUL! or "AGAINT THE LAW" or UNFAIR! or "NOT FAIR" or CONFUS! or UNETHICAL! or ETHIC! or USUR! or WRONG! or ABUS! or HARRASS! or WRONG! or ERROR* or UNDERSTAND! or MISUNDERSTAND! or FAIL! or BELIE! or MISBELIE! or (MIX! w/3 UP) or UNDERSTOOD or MISUNDERSTOOD or DECEI! or DECEPT! or DISORT! or HONEST! or DISHONEST! or BS or CON or CONNED or CONNING or FABRICAT! or MISSTAT! or "GO BACK ON" or MISINSTRUCT! or UNTRUTH! or "NOT RIGHT" or (RIP! w/3 OFF) or EXTORT! or (RIP! w/3 OFF) or RIPOFF or CHEAT! or SHADY or CROOKED or DEFRAUD! or CROOK

- (NO or NOT) w/10 (CONTRACT! or AGREE!)
- (NOT or NO) w/20 RELEAS!
- AUDIT!
- INVESTIGAT!
- REFUND!

**PLAINTIFFS' PROPOSED CUSTODIANS:** Plaintiffs propose the same custodians as those Plaintiffs proposed for Request 11.

Request 21.

All Documents and Communications Concerning quality assurance or quality control reviews, audits, or assessments undertaken by the Company or any Person Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, including "QA Reports" or any similar Communications.

48

## **PLAINTIFFS' PROPOSED SEARCH TERMS:**

- (CALL! or COMMUNICAT! or CEM* or SALES or CLIENT! or PARTICIPANT!) w/20 (SUM! or REVIEW! or "GO THROUGH" or "WENT THROUGH" or "WENT OVER" or ANALYZ! or EVAL! or LOOK or EXAM! or INSPECT! or LOG!)

- QA

- QUALITY w/10 (CONTROL or ASSUR!)

- AUDIT!

- ASSESS!

- REPORT!

## **DEFENDANTS' PROPOSED CUSTODIANS:**

| Micheal Donovan | CEO |
| Evan Ajin | VP of Operations |
| David See | COO, Libre |
| Nina Erlandson | Director of Operations, Libre |
| Richard Moore | Executive VP |
| Maria Morales | Quality Assurance Manager |

## **PLAINTIFFS' PROPOSED ADDITIONAL CUSTODIANS:** Plaintiffs propose as custodians the following individuals and any other individuals who have held the same or equivalent titles as the individuals listed below at any time from July 1, 2012 to the present.

| Alisa Wilson | COO |
| Eddie Noel Nieves Garcia | Call Center Manager |
| Edwin Adorno Liddy | Call Center Manager |
| Johana Ballesteros Paez | Call Center Manager |

49

| Raymond Rivera | Call Center Manager |
|---|---|
| Robert Belle | Call Center Manager |
| Samantha Cushman | Call Center Supervisor |
| Summer Cruz | Call Center Supervisor |
| Mohsen Ansari | Central Regional Director |
| Andrea Arroyo | CEM |
| Richard Miniter | CEO |
| Glenda Oquendo-Marrero | Collections Manager |
| Jovanahilit Correa | Corporate Regional Manager |
| Liliana Chavez | Corporate Regional Manager |
| Jose L. Alfaro | Critical Controls |
| Luis Garcia | Critical Controls |
| Gonzalo Rosas | Critical Controls Call Center |
| Alonso Sandra | Customer Service Manager |
| Abigail Campana | Customer Service Manager |
| Maria De Santiago Casiano | Customer Service Manager |
| Kerry J. DeLeon | Customer Service Manager |
| Darlin Santamaria | Customer Service Manager |
| Gustavo Murillo | Customer Service Manager |
| James G.A. Walker | Director of Call Center Operations |
| Chad Sager | Director of Human Resources |
| Lisa Breeden | Director of Human Resources |
| Nathalie Duda | Director of Human Resources |
| Vincent Munoz | Director of Investigations |
| Jenny Cadena-Castillo | Director of Operations |
| Raul Sanchez | Director of Operations |
| Carol Taylor | Director of Risk Management |
| Julian Leyva | Director of Risk Management |
| Richard Reigenborn | Director of Risk Management |
| Robin Fife | Director of Support Services |
| Rodolfo Prieto | East Coast Regional Manager |
| Wendy Cruz Montalvan | East Coast Regional Manager |
| Edward DeLeon | Risk East Coast Regional Manager |
| Raquel Hernandez | HR Manager |
| Alex Martinez | IT |
| Andrew Untiedt | IT |
| Chelsea Noel | IT |
| Nicholas Argiro | IT |
| Andrew Singer | Legal Assistant/ Non-Attorney Director of Legal Operations |

| Juliana Castillo | Libre General Council |
| Juliana Johnson | Libre General Counsel |
| Kathryn Shoreman | Legal Support Manager |
| Hiram Castillo | Loss Prevention Manager |
| Maria Portillo | National Trainer/Call Center Manager |
| Jordan S. Escobedo Diaz | National Training Manager |
| Maria Ortiz Garcia | National Training Manager |
| Adam Donovan | Operations |
| Jennifer Turner | Operations |
| Maria Morales | Quality Assurance Manager |
| Sergio Anselmo | Regional Manager |
| Cesar Henriquez | Regional Risk Manager |
| Cristina Velez Santos | Regional Risk Manager |
| Danny Hart | Regional Risk Manager |
| Ernie Correa | Regional Risk Manager |
| Francis Hernandez | Regional Risk Manager |
| Luis Angel Aspeitia | Regional Risk Manager |
| Robert Garcia | Risk Manager |
| Gilberto Cantu | Risk Mgmt. Central Regional Manager |
| Erik Schneider | VP of Risk Management |
| Tim Shipe | VP of Support Services |
| Marco Orellana | West Coast Regional Risk |
| Ana Bonilla | West Region Director |

Request 22

All Documents and Communications Concerning the supervision or auditing of
employees or agents of the Company who communicated with or interacted with
Consumers.

### PLAINTIFFS' PROPOSED SEARCH TERMS:

- (EMPLOYEE* or CEM* or "CASE MANAGER" or "CASE MANAGERS" or
  (CUSTOMER w/3 SERVICE)) w/20 (SUMMAR! or REPORT!)

- QA

- AUDIT! or INVESTIGAT!

- ALLEG!

- "CALL LOG"

- SUPERVIS!

- DISCIPLIN! or FIRE! or TERMINAT! or "PINK SLIP" or "KICK OUT" or (LET! w/3 GO)

- MISCONDUCT!

- MISLEAD! or MISLED or LIE! or LYING or THREAT! or ABUS! or SCAM! or FUCK! or SHIT or FRAUD! or MISREP! or ROB! or STEAL! or STOLE* or LIAR* or MISINFORM! or CHEAT! or PREY! or PREDATOR* or ILLEGAL! or UNLAWFUL! or "AGAINT THE LAW" or UNFAIR! or "NOT FAIR" or CONFUS! or UNETHICAL! or ETHIC! or WRONG! or HARRASS! or WRONG! or DECEI! or DECEPT! or DISORT! or HONEST! or DISHONEST! or BS or CON or CONNED or CONNING or FABRICAT! or MISSTAT! or "GO BACK ON" or MISINSTRUCT! or UNTRUTH! or "NOT RIGHT" or (RIP! w/3 OFF)

- (PERFORM! or ANNUAL or EMPLOYEE* or YEAR! or MONTH! or QUARTER!) w/20 (REVIEW! or EVALUAT! or GRAD!)

- BONUS! or INCENTIV! or GOAL* or BENCHMARK! or COMMISSION* or PRODUCTIV! or CONTEST* or PROMOT! or PRIZE* or "CORRECTIVE ACTION" or PERFORMANCE

**<u>DEFENDANTS' PROPOSED CUSTODIANS:</u>**

| | |
|---|---|
| Micheal Donovan | CEO |
| Richard Moore | Executive VP |
| Tim Shipe | VP of Support Services |
| David See | COO, Libre |
| Nina Erlandson | Director of Operations, Libre |

| Evan Ajin | VP of Operations |
| Erik Schneider | VP of Risk Management |
| Lisa Breeden | Director of Human Resources |

**PLAINTIFFS' PROPOSED ADDITIONAL CUSTODIANS:** Plaintiffs

propose the same custodians as those Plaintiffs proposed for Request 21.

Request 26.[7]

Documents and Communications sufficient to show the substantive and temporal scope of all litigation holds and/or document preservation policies and procedures implemented by the Company to preserve Documents and information, including those taken in response to this Action or in response to any of the Plaintiffs' Subpoenas or Civil Investigative Demands.

**PLAINTIFFS' PROPOSED SEARCH TERMS:** Plaintiffs propose the

following search terms if search terms are necessary for Defendants to be able to

locate the responsive documents.

- "LITIGATION HOLD"

- (PRESERV! or RETAIN!) W/3 (NOTICE* or DOCUMENT* or

  MATERIAL*)

- (SUSPEND! or STOP!) W/3 (DELET! or DESTR!)

**PLAINTIFFS' PROPOSED CUSTODIANS:** Plaintiffs are not proposing

individual custodians but instead propose that Defendants produce documents

sufficient to show (1) who received litigation holds and/or document preservation

policies and procedures that are responsive to this request and (2) when they

received them.

---

[7] Given the recent communications that suggest that Defendants may not have fulfilled their preservation obligations, Plaintiffs have reinstated their demand that Defendants provide documents in response to this request.

Dated: January 24, 2022

*Attorneys for the Consumer Financial Protection Bureau*

Cara M. Petersen
　　*Acting Enforcement Director*
Jeffrey Paul Ehrlich
　　*Deputy Enforcement Director*
Kara K. Miller
　　*Assistant Litigation Deputy*

**Hai Binh T. Nguyen**
California Bar Number: 313503
Donald R. Gordon
District of Columbia Bar Number: 482384
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Telephone (Nguyen): (202) 435-7251
Telephone (Gordon): (212) 328-7011
Fax: (703) 642-4585
Email: haibinh.nguyen@cfpb.gov
Email: donald.gordon@cfpb.gov

*Attorneys for the Commonwealth of Virginia, ex rel.*
*Jason S. Miyares, Attorney General*

Jason S. Miyares
　　*Attorney General*
Charles H. Slemp
　　*Chief Deputy Attorney General*
Steven G. Popps
　　*Deputy Attorney General*
Richard S. Schweiker,.
　　*Chief and Senior* Jr *Assistant Attorney General*

**David B. Irvin**
Virginia Bar Number: 23927
Unit Manager and Senior Assistant Attorney General
Erin E. Witte
Virginia Bar Number: 81096

Assistant Attorney General
Office of the Attorney General
Consumer Protection Section
202 North Ninth Street
Richmond, VA 23219
Telephone (Irvin): (804) 786-4047
Telephone (Witte): (703) 359-6716
Fax: (804) 786-0122
Email: dirvin@oag.state.va.us
Email: ewitte@oag.state.va.us

*Attorneys for the Commonwealth of Massachusetts*

Maura Healy
    *Attorney General*

**Jon Burke**
Massachusetts Bar Number: 673472
Assistant Attorney General
Office of the Attorney General
10 Mechanic Street
Worcester, MA 01608
Telephone: (774) 214-4416
Email: Jonathan.burke@mass.gov

*Attorneys for the People of the State of New York*

LETITIA JAMES
    *Attorney General*
Jane Azia (New York Bar Number: 1539600)
    *Bureau Chief for the Bureau of Consumer Frauds and Protection*
Laura Levine (New York Bar Number: 2337368)
    *Deputy Bureau Chief for the Bureau of Consumer Frauds and Protection*

**Stewart Dearing**
New York Bar Number: 5108444
Joseph P. Mueller
New York Bar Number: 5079389
Assistant Attorneys General
Office of the Attorney General
28 Liberty Street
New York, NY 10005
Telephone (Mueller): (212) 416-8321
Telephone (Dearing): (212) 416-8320

Fax: (212) 416-6003
Email: Joseph.Mueller@ag.ny.gov
Email: Stewart.Dearing@ag.ny.gov

## CERTIFICATE OF SERVICE

I certify that on January 24, 2022, I served the foregoing document and attached

appendix on Defendants electronically by email to all attorneys of record.

**Stewart Dearing**
New York Bar Number: 5108444
Assistant Attorney General
Office of the Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8320
Fax: (212) 416-6003
Email: Stewart.Dearing@ag.ny.gov

## APPENDIX A – SUPPLEMENTAL EMPLOYEE LIST

| FIRST NAME | LAST NAME | LAST KNOWN POSITION |
|---|---|---|
| LUIS | VEGA | REHIRED – CUSTOMER EXPERIENCE MANAGER |
| HECTOR | PEREZ-ESCOBAR | ASSOCIATE BREACH MANAGER |
| HAZZAR | PASTOR PERDOMO | BREACH MANAGER |
| STEPHANIE | NUNEZ | BREACH MANAGER |
| JOSE | PASTRANA | BREACH MANAGER |
| RAY | SALINAS | BREACH MANAGER |
| TANIA | CORTES | BREACH MANAGER |
| MONIQUE | HAMILTON | CALL CENTER |
| TOYA | JACKSON | CALL CENTER |
| MEREDITH | MEINDL | CALL CENTER |
| NOEL | JIMENEZ RIVERA | CALL CENTER |
| ALICIA | LOBO | CALL CENTER |
| TONYA | LOMAX | CALL CENTER |
| HEATHER | MORAN | CALL CENTER |
| DAISY | MORENO | CALL CENTER |
| ELIAS | GUARDADO | CASE MANAGER |
| ALEJANDRA | CANO | CASE MANAGER |
| ROSA | CHAVEZ | CASE MANAGER |
| FERNANDO R. | CHILA | CASE MANAGER |
| CESAR | CORDERO-SANTIAGO | CASE MANAGER |
| FABIAN | CORDERO-SANTIAGO | CASE MANAGER |
| WENDY S. | CORONA | CASE MANAGER |
| CINDY | CORTES | CASE MANAGER |
| RUTH | HERNANDEZ | CASE MANAGER |
| SANDRA E. | KITCHEN | CASE MANAGER |
| SARA L. | LUNA | CASE MANAGER |
| MARIBEL M. | MARTINEZ | CASE MANAGER |
| CESILIA | MEJIA | CASE MANAGER |
| EVER | MENDOZA BARRETO | CASE MANAGER |
| CYNTHIA E. | MORQUECHO | CASE MANAGER |
| LOUIS A. | PEREIRA | CASE MANAGER |
| JOSE | ROMO | CASE MANAGER |
| TONY A. | SUAREZ | CASE MANAGER |
| FELIPE | LADRON DE GUEVARA | CASE MANAGER |
| MARTA | VAZQUEZ | CASE MANAGER |

| IRIS | ARREDONDO | CASE MANAGER |
|------|-----------|--------------|
| JOSE | BONILLA CORTEZ | CASE MANAGER |
| MARIA | CARDOSO DE LIRA | CASE MANAGER |
| LORELY J. | CASTILLEJA | CASE MANAGER |
| ELIZABETH | CONTRERAS | CASE MANAGER |
| LILIANA | CRUZ MARTINEZ | CASE MANAGER |
| GABRIEL | DUARTE-SOLIS | CASE MANAGER |
| HUGO | FERNANDEZ | CASE MANAGER |
| DANIEL | FIELD | CASE MANAGER |
| HUGO | HERNANDEZ-ESCOBAR | CASE MANAGER |
| LUIS F. | LOPEZ | CASE MANAGER |
| JOSE | MEJIA VELASZO | CASE MANAGER |
| DOUGLAS | MORENO | CASE MANAGER |
| BRIAN | PERLMAN | CASE MANAGER |
| STEPHEN | PINEDA | CASE MANAGER |
| ROSA | QUINTERO | CASE MANAGER |
| ALMA D. | RAZO | CASE MANAGER |
| DAISY | RIOS | CASE MANAGER |
| PRISSILLA | RIVERA-ORTEZ | CASE MANAGER |
| MICHELLE | SUAREZ LOPEZ | CASE MANAGER |
| JASON C. | SYDNOR | CASE MANAGER |
| MARCOS | MENDOZA | CASE MANAGER/TRANSPORTATION AGENT |
| PEDRO | HERNANDEZ | CASE MANAGER |
| KERRY | DE LEON | CEM |
| ANDREA | RAMIREZ-ARROYO | CEM |
| ANA | SHEPHERD | CEM |
| ARIANA | PEREZ | CEM/ FILE CLERK |
| DAYANARA | DELGADO NAJARRO | CLIENT EXPERIENCE MANAGER |
| YANIRA | GARCIA AYALA, | CLIENT EXPERIENCE MANAGER |
| GUILLERMO | NUNEZ | COLLECTIONS |
| MICHAEL | ORTIZ | COLLECTIONS |
| SANTA | PEREZ VASQUEZ | COLLECTIONS |
| FRANCISCO | PEREZ RODRIGUEZ | COLLECTIONS SPECIALIST |
| JACQUELINE | PEREZ-LOZANO | COLLECTIONS SPECIALIST |
| NOELIA | CASTRO RAMIREZ | COLLECTIONS SPECIALIST |
| DIANA | ORTIZ MIRANDA | COLLECTIONS SPECIALIST |

| MELANIE | RIVERA VARGAS | COLLECTIONS SPECIALIST |
|---|---|---|
| JUAN | VEGA | COMPLIANACE MANAGER |
| ANDRES | BARRENO-BANCHON | COMPLIANCE MANAGER |
| LUIS E. | COLON-DIAZ | COMPLIANCE MANAGER |
| FAVIAN | DUENAS | COMPLIANCE MANAGER |
| DANNY | GONZALEZ MOJERON | COMPLIANCE MANAGER |
| JAZMIR | RAMOS | COMPLIANCE MANAGER |
| NOEMY Y RODAS | RODRIGUEZ | COMPLIANCE MANAGER |
| VICTOR | SANCHEZ | COMPLIANCE MANAGER |
| STEPHANIE | SOLIS | COMPLIANCE MANAGER |
| DOROTHY | MAUPIN | COMPLIANCE MANGER |
| HECTOR J. | MEDINA | COMPLIANCE MANGER |
| HECTOR P. | MEDINA | COMPLIANCE MANGER |
| JORGE L. | MENDOZA | COMPLIANCE MANGER |
| DIANIBEL | CORREA | CUSTOMER EXPERIENCE |
| TRACORA | ALLEN | CUSTOMER EXPERIENCE MANAGER |
| ASHLEY | BARRIOS | CUSTOMER EXPERIENCE MANAGER |
| MARIA | DE SANTIAGO | CUSTOMER EXPERIENCE MANAGER |
| LUIS A. | DIAZ | CUSTOMER EXPERIENCE MANAGER |
| DELYS B. | DONAIRE | CUSTOMER EXPERIENCE MANAGER |
| LOURDES | LOPEZ FEBO | CUSTOMER EXPERIENCE MANAGER |
| NELSON | MARTINEZ | CUSTOMER EXPERIENCE MANAGER |
| MAYRA | MIJARES-HERNANDEZ | CUSTOMER EXPERIENCE MANAGER |
| CRISTAL | MOLINA | CUSTOMER EXPERIENCE MANAGER |
| JENDRY C. | MORALES | CUSTOMER EXPERIENCE MANAGER |
| MAITE | MORALES VAZQUEZ | CUSTOMER EXPERIENCE MANAGER |
| SAMUEL G. | NAJARRO ORANTES | CUSTOMER EXPERIENCE MANAGER |
| MARISOL | PAGAN | CUSTOMER EXPERIENCE MANAGER |
| ALMA | QUINONES | CUSTOMER EXPERIENCE MANAGER |

| CHRISTIANO | RINGHEIM | CUSTOMER EXPERIENCE MANAGER |
|---|---|---|
| SALVADOR | RIVERA CRUZ | CUSTOMER EXPERIENCE MANAGER |
| ISABEL | RUIZ | CUSTOMER EXPERIENCE MANAGER |
| SURESH | SALINAS | CUSTOMER EXPERIENCE MANAGER |
| JAVIER E. | SANCHEZ ESPINOZA | CUSTOMER EXPERIENCE MANAGER |
| RICARDO | SEGURA | CUSTOMER EXPERIENCE MANAGER |
| MICHAEL | SEVERINO | CUSTOMER EXPERIENCE MANAGER |
| ANNE | SILVEIRA | CUSTOMER EXPERIENCE MANAGER |
| AMY E. | ST. CLAIR | CUSTOMER EXPERIENCE MANAGER |
| SHERRY D. | WHETZEL | CUSTOMER EXPERIENCE MANAGER |
| SHEILA | WIMER | CUSTOMER EXPERIENCE MANAGER |
| ESTEFANY | ACOSTA-ZELAYA | CUSTOMER EXPERIENCE MANAGER |
| FABIOLA | ALMARAZ CARRANZA | CUSTOMER EXPERIENCE MANAGER |
| EMILY | ALMODOVAR | CUSTOMER EXPERIENCE MANAGER |
| KARLA | APONTE | CUSTOMER EXPERIENCE MANAGER |
| KIZZY Y | BADILLO | CUSTOMER EXPERIENCE MANAGER |
| JONATHAN STANLEY | BAIRES MEJIA | CUSTOMER EXPERIENCE MANAGER |
| MARLEN | BALDERAMOS | CUSTOMER EXPERIENCE MANAGER |
| JEAN CARLOS | BARBOSA VALLESCORBO | CUSTOMER EXPERIENCE MANAGER |
| BRITTANY | BARNETT | CUSTOMER EXPERIENCE MANAGER |
| DEWAN | BELLAMY | CUSTOMER EXPERIENCE MANAGER |
| JORGE | BENITEZ | CUSTOMER EXPERIENCE MANAGER |
| DANEISHA | BONILLA COTTO | CUSTOMER EXPERIENCE MANAGER |

4

| HEATHER | BREA | CUSTOMER EXPERIENCE MANAGER |
|---|---|---|
| SYLVIA | BRINGUIER SANTIAGO | CUSTOMER EXPERIENCE MANAGER |
| ALEXANDRA | CABAN ROSADO | CUSTOMER EXPERIENCE MANAGER |
| MIGUEL A. | CACERES FONSECA | CUSTOMER EXPERIENCE MANAGER |
| JUAN | CANTRES BRUNO | CUSTOMER EXPERIENCE MANAGER |
| ASHLEY | COLON | CUSTOMER EXPERIENCE MANAGER |
| VERONICA MARIE | COLON RODRIGUEZ | CUSTOMER EXPERIENCE MANAGER |
| REBECA | ESTRADA | CUSTOMER EXPERIENCE MANAGER |
| LAURA I. | FAUSTINELLI SANCHEZ | CUSTOMER EXPERIENCE MANAGER |
| KASSANDRA | FERNANDEZ | CUSTOMER EXPERIENCE MANAGER |
| CINDY | GARCIA | CUSTOMER EXPERIENCE MANAGER |
| ANGIE | GONZALES | CUSTOMER EXPERIENCE MANAGER |
| ALEJANDRO | GONZALEZ | CUSTOMER EXPERIENCE MANAGER |
| CHRISTIAN | GONZALEZ ARROYO | CUSTOMER EXPERIENCE MANAGER |
| AMBAR | GONZALEZ RODRIGUEZ | CUSTOMER EXPERIENCE MANAGER |
| JOE | GONZALEZ VELAZQUEZ | CUSTOMER EXPERIENCE MANAGER |
| JOSE | GONZALEZ-MUNOZ | CUSTOMER EXPERIENCE MANAGER |
| KATHYA B. | GUEKDJIAN | CUSTOMER EXPERIENCE MANAGER |
| DARY | GUZMAN DE LA CRUZ | CUSTOMER EXPERIENCE MANAGER |
| ROQUE | HENRIQUEZ-ESCOBAR | CUSTOMER EXPERIENCE MANAGER |
| ESTEFANIA | HERNANDEZ | CUSTOMER EXPERIENCE MANAGER |
| YESENIA | HERNANDEZ | CUSTOMER EXPERIENCE MANAGER |
| PATRICIA | HERNANDEZ MENDOZA | CUSTOMER EXPERIENCE MANAGER |

| SONIA | HERNANDEZ-GOMEZ | CUSTOMER EXPERIENCE MANAGER |
|---|---|---|
| DIANA | HERRERA | CUSTOMER EXPERIENCE MANAGER |
| JANIE | IGLESIAS | CUSTOMER EXPERIENCE MANAGER |
| ANNJEANNETTE | JEAN-BAPTISTE | CUSTOMER EXPERIENCE MANAGER |
| RICARDO | JIMENEZ MARTINEZ | CUSTOMER EXPERIENCE MANAGER |
| JOHN C. | LEE | CUSTOMER EXPERIENCE MANAGER |
| CHRISTIAN | LEON | CUSTOMER EXPERIENCE MANAGER |
| JOSE | LOPEZ | CUSTOMER EXPERIENCE MANAGER |
| GENESIS | LUGO | CUSTOMER EXPERIENCE MANAGER |
| GERARD | MACHADO | CUSTOMER EXPERIENCE MANAGER |
| LESLY | MADERA-OGDEN | CUSTOMER EXPERIENCE MANAGER |
| ORLANDO | MENDEZ RODRIGUEZ | CUSTOMER EXPERIENCE MANAGER |
| LAURA | MERCED OTERO | CUSTOMER EXPERIENCE MANAGER |
| NANCY | MONSERRATE | CUSTOMER EXPERIENCE MANAGER |
| JUAN | MOZA-MORENO | CUSTOMER EXPERIENCE MANAGER |
| YESENIA | NIEVES CABAN | CUSTOMER EXPERIENCE MANAGER |
| CARLOS | NIEVES-JIMINEZ | CUSTOMER EXPERIENCE MANAGER |
| JUSTINA | ORTEGA GARCIA | CUSTOMER EXPERIENCE MANAGER |
| CARLOS | ORTIZ | CUSTOMER EXPERIENCE MANAGER |
| WILBERTO | ORTIZ HERNANDEZ | CUSTOMER EXPERIENCE MANAGER |
| LUIS | ORTIZ SOTO | CUSTOMER EXPERIENCE MANAGER |
| ADILIA | OTERO MARTINEZ | CUSTOMER EXPERIENCE MANAGER |
| PILAR MARIE | PARRA-RODRIGUEZ | CUSTOMER EXPERIENCE MANAGER |

| EMY | PEREZ | CUSTOMER EXPERIENCE MANAGER |
|---|---|---|
| JACQUELINE | PICHARDO | CUSTOMER EXPERIENCE MANAGER |
| ESTEFANY | PONCE | CUSTOMER EXPERIENCE MANAGER |
| EDWARD | RAMOS | CUSTOMER EXPERIENCE MANAGER |
| ESTELLA | RAMOS RUIZ | CUSTOMER EXPERIENCE MANAGER |
| ALONDRA | RANGEL | CUSTOMER EXPERIENCE MANAGER |
| ISMAEL | RODRIGUEZ | CUSTOMER EXPERIENCE MANAGER |
| MICHELLE | RODRIGUEZ GUZMAN | CUSTOMER EXPERIENCE MANAGER |
| JULIO | RODRIGUEZ-SOLANO | CUSTOMER EXPERIENCE MANAGER |
| BRIAN | ROSA VELEZ | CUSTOMER EXPERIENCE MANAGER |
| KARLA | ROSARIO RODRIGUEZ | CUSTOMER EXPERIENCE MANAGER |
| ESMERALDA C. | SALCEDO DE JAIMES | CUSTOMER EXPERIENCE MANAGER |
| RODRIGO | SALVATIERRA MORAN | CUSTOMER EXPERIENCE MANAGER |
| GIOVANNA | SANTINI | CUSTOMER EXPERIENCE MANAGER |
| MELISSA | TERAN CASTILLO | CUSTOMER EXPERIENCE MANAGER |
| MACHA | TOWNSEND | CUSTOMER EXPERIENCE MANAGER |
| SHARHONDA | TRIMIEW | CUSTOMER EXPERIENCE MANAGER |
| CESIA | VARELA-HERNANDEZ | CUSTOMER EXPERIENCE MANAGER |
| ROSALBA | VARGAS | CUSTOMER EXPERIENCE MANAGER |
| MARTHA | VAZQUEZ | CUSTOMER EXPERIENCE MANAGER |
| WISIN | VELEZ DIAZ | CUSTOMER EXPERIENCE MANAGER |
| VICTORIA | VELOZ | CUSTOMER EXPERIENCE MANAGER |
| FERNANDO | ZIATA MANU | CUSTOMER EXPERIENCE MANAGER |

| JEANMAR | FIGUEROA | CUSTOMER EXPERIENCE MGR |
|---|---|---|
| MARIA | FIGUEROA | CUSTOMER EXPERIENCE MGR |
| MARIA | FLORES | CUSTOMER EXPERIENCE MGR |
| PATRICIA | GONZALEZ ARELLANO | CUSTOMER EXPERIENCE MGR |
| SONIA | FLORES | CUSTOMER EXPERIENCE MGR |
| LUIS | CRUZ SOLANO | CUSTOMER EXPERIENCE MGR. |
| KENNY | DAVILA MERCADO | CUSTOMER EXPERIENCE MGR. |
| KEISHLA M. | DE JESUS | CUSTOMER EXPERIENCE MGR. |
| INGRID | JIMENEZ | EMPOWER - CALL CENTER |
| ROSLYN | BROOKS | EMPOWER CAL CENTER |
| CLARA | ALFARO | EMPOWER CALL CENTER |
| ELLEN | SMITH | EMPOWER CALL CENTER |
| LATISHA | BRANCH | EMPOWER CALL CENTER |
| LAWRENCE JR. | CARNEAL | EMPOWER CALL CENTER |
| AMANDA | CHANDLER | EMPOWER CALL CENTER |
| SAMUEL | SLAYTON | EMPOWER CALL CENTER |
| PETE | CRAIG | EMPOWER CALL CENTER |
| KEVIN | HERNANDEZ | EMPOWER CASE MANAGER |
| ANNTTUNETTE | BUSH | EMPOWER CASE MANAGER |
| KENNETH V. | MACKIE | EMPOWER CASE MANGER |
| JONATHAN | ROBERTSON | EMPOWER CLIENT EXPERIENCE MGR. |
| ROLANDO A. | GONZALEZ | INVESTIGATOR |
| IVAN | LOPEZ | INVESTIGATOR |
| TYREE | SYDNOR | INVESTIGATOR |
| JOSE | MELENDEZ | INVESTIGATOR |
| JUAN CARLOS | POSADA-LOPEZ | INVESTIGATOR |
| VIRGINIA M. | SULLENBERGER | INVESTIGATOR |
| GRACIELA | TAFOYA | INVESTIGATOR |
| JEANNETTE | COLON AMARO | MONITORING AGENT |
| CESAR | CASIANO | MONITORING AGENT |
| JAN | CASTRO RAMOS | MONITORING AGENT |
| LILIANA | DAVID ALICEA | MONITORING AGENT |
| OMAYRA | GONZALEZ NAVARRO | MONITORING AGENT |

8

| | | |
|---|---|---|
| RODNEY | KYLE | MONITORING AGENT |
| JASMINE | MENDOZA-CAMPA | MONITORING AGENT |
| DWAYNE | MORALES ARROYO | MONITORING AGENT |
| LYMARIE | OJEDA PORTALATIN | MONITORING AGENT |
| FRANCES | PACHECO | MONITORING AGENT |
| RENZO | RAMELLA | MONITORING AGENT |
| ALINA | SANTOS GUZMAN | MONITORING AGENT |
| VICTOR | SILVA TEJEDA | MONITORING AGENT |
| ALEX, LONDON | ZUNIGA | MONITORING AGENT |
| EDITH | AGUILAR-ALVARDO | MONITORING AGENT |
| GUILLERMO | APONTE SALAS | MONITORING AGENT |
| ZAYDI | ARCOS | MONITORING AGENT |
| OTILIA | ASIG PUTUL | MONITORING AGENT |
| OTILIA | ASIG PUTUL | MONITORING AGENT |
| JASLIM | BLAY | MONITORING AGENT |
| LAURA J. | BRANNON | MONITORING AGENT |
| NANCY | BURGER | MONITORING AGENT |
| DIANEMARIE | CAMACHO | MONITORING AGENT |
| CARLOS | CARRASQUILLO AYALA | MONITORING AGENT |
| CINDY | HERNANDEZ | MONITORING AGENT |
| RAHIZA | HERNANDEZ CARDOZA | MONITORING AGENT |
| TAMAR | LAURENT | MONITORING AGENT |
| DORIAN | MENDOZA | MONITORING AGENT |
| BRENDA | MICHAEL | MONITORING AGENT |
| DIEGO | REYES MATTAR | MONITORING AGENT |
| ALINA | TAVARES GUERRERO | MONITORING AGENT |
| MARIA | VAZQUEZ FIGUEROA | MONITORING AGENT |
| ALEX | MARTINEZ | MONITORING AGENT- IT TEAM |
| JESUS | BATISTA | MONITORING AGENT/BREACH MANAGER |
| JAQUAN | JOSEPH | MONITORING CENTER |
| EDITH | HERNANDEZ COREA | MONITORING CENTER |
| GERALD | RIVERA-VELEZ | MONITORING TECHNICIAN |
| RAMON | SARMIENTO | MONITORING TECHNICIAN |
| VICTOR | SANCHEZ | RISK MANAGER |
| JOCELYN | CUETO | RISK MANAGER |
| MICHAEL | FERNANDEZ | RISK MANAGER |
| EFRAIM | FLORES GONZALEZ | RISK MANAGER |

| LEONARDO | NEGRON CATALA | RISK MANAGER |
|---|---|---|
| EDREL ABIRAM | SILVA | RISK MANAGER |
| CESAR | HENRIQUEZ | RISK MANAGER |
| CARLOS | VILLARAN | RISK MANAGER |
| JAZMIR | RAMOS | RISK MANAGER |
| CRIS | BELLO | RISK MANAGER |
| ZAID | DIAZ | RISK MANAGER |
| ROBERT | GARCIA | RISK MANAGER |
| PEDRO | NUNEZ | RISK MANAGER |
| ADRIAN | PENA | RISK MANAGER |
| FANIA | PEREZ | RISK MANAGER |
| LUIS A. | RODRIGUEZ-CRUZ | RISK MANAGER |
| DANIEL | SIFUENTES | RISK MANAGER |
| FANIA | PEREZ | RISK MANAGER /RELOCATED |
| JOSE | ORTIZ | SECURED |
| JASON | VOIGT | SECURED |
| MIRA | DE LIRA | SECURED |
| DAVID | DIAZ | SECURED |
| KIMBERLY | CASEY | SECURED |
| DAVID | QUINTANA | SECURED |
| MIGUEL A. | GONZALEZ | SECURED |
| ELIAS | GUARDADO | SECURED |
| HERBERT | SINGLETON | SECURED |
| WENDY | DOVE | SECURED |
| CARLOS | VILLARON | SECURED |
| VALERIE | MUNOZ | SECURED (CASE MANAGER) |
| ANNETTE | PADILLA | SECURED (CASE MANAGER) |
| JOSE | FUENTES RODRIGUEZ | TRANSFER TO BREACH MANAGER |
| CHRISTIAN | ROMAN | TRANSPORTATION AGENT |
| RAY ANTHONY | LORA | TRANSPORTATION AGENT |
| CHRISTIAN | MERCADO | TRANSPORTATION AGENT |
| AL VICTOR | MORALES | TRANSPORTATION AGENT |
| CESAR | PAVON SANCHEZ | TRANSPORTATION AGENT |
| REBECCA | RETANA | TRANSPORTATION AGENT |
| NICHOLOKIMA | RODRIGUEZ | TRANSPORTATION AGENT |
| GARY | VELASQUEZ AGUILERA | TRANSPORTATION AGENT |
| EDUARDO | HERNANDEZ | TRANSPORTATION AGENT |
| CESAR | ANGULO | TRANSPORTATION AGENT |

| CHRISTIAN | ALBANES | TRANSPORTATION AGENT |
|---|---|---|
| JOE | ALEMAN | TRANSPORTATION AGENT |
| ONEL | ARMAS FERNANDEZ | TRANSPORTATION AGENT |
| GIANNCARLO | ESCAMILLA | TRANSPORTATION AGENT |
| ANTONIO J. | ESQUILIN | TRANSPORTATION AGENT |
| ANDREW | FREEMAN | TRANSPORTATION AGENT |
| MARVIN | HERNANDEZ CASTRO | TRANSPORTATION AGENT |
| KANE-ZSYHON | HINTON | TRANSPORTATION AGENT |
| CRISTIAN | ISLAS | TRANSPORTATION AGENT |
| JAVIER | LANDA | TRANSPORTATION AGENT |
| RODOLFO I. | MONTOYA | TRANSPORTATION AGENT |
| RICHARD | PALMER | TRANSPORTATION AGENT |
| CHRISTIAN | ROMAN | TRANSPORTATION AGENT |
| EZEQUIEL | VAZQUEZ | TRANSPORTATION AGENT |
| PHILLIP A. | WILLIAMS | TRANSPORTATION AGENT |
| ERIC | YANEZ | TRANSPORTATION AGENT |
| OMAR | PANDO | TRANSPORTATION AGENT/CASE MANAGER |

# EXHIBIT 17

| From: | Nguyen, Hai Binh (CFPB) |
|---|---|
| To: | Bowser, Adam; Lee, Jenny; Bayles, David |
| Cc: | Mueller, Joseph; Levine, Laura; Gordon, Donald (CFPB); Witte, Erin E.; Lavache, Ruth (AGO); Scott, James E.; Dearing, Stewart; Burke, Jonathan (AGO) |
| Subject: | RE: CFPB vs. Nexus Services: 11/10 Meet and Confer |
| Date: | Saturday, January 29, 2022 9:10:00 AM |
| Attachments: | image001.png |

Adam,

Plaintiffs have considered and cannot agree with your proposed revisions to the protective order. As we have previously stated, Defendants have no legal basis to redact or withhold relevant information about consumers, and this information was requested in the first set of RFPs. Please let us know how you intend to move forward.

Thanks,

Hai Binh T. Nguyen (pronouns: she/her/hers)
Attorney | Office of Enforcement
Telephone: (202) 435-7251
Mobile: (202) 341-7124
Consumer Financial Protection Bureau
consumerfinance.gov

**Confidentiality Notice**: If you received this email by mistake, you should notify the sender of the mistake and delete the email and any attachments. An inadvertent disclosure is not intended to waive any privileges.

**From:** Bowser, Adam <Adam.Bowser@arentfox.com>
**Sent:** Friday, January 21, 2022 3:50 PM
**To:** Dearing, Stewart <Stewart.Dearing@ag.ny.gov>; Burke, Jonathan (AGO) <jonathan.burke@state.ma.us>; Lee, Jenny <Jenny.Lee@arentfox.com>; Bayles, David <David.Bayles@arentfox.com>
**Cc:** Mueller, Joseph <Joseph.Mueller@ag.ny.gov>; Levine, Laura <Laura.Levine@ag.ny.gov>; Gordon, Donald (CFPB) <Donald.Gordon@cfpb.gov>; Nguyen, Hai Binh (CFPB) <HaiBinh.Nguyen@cfpb.gov>; Witte, Erin E. <EWitte@oag.state.va.us>
**Subject:** RE: CFPB vs. Nexus Services: 11/10 Meet and Confer

CAUTION: This email originated from a non-government domain. DO NOT click links or open attachments unless you recognize and/or trust the sender. Contact Cybersecurity Incident Response Team (CSIRT) at 202-435-7200 or report a suspicious email.

Stewart,

With respect to the modification to the Protective Order you proposed below, while we appreciate the Plaintiffs' willingness to make this change to the current protective order, we respectfully do not believe that it addresses many of the concerns I raised in my 12/22 email and during our more recent telephone calls. More specifically, it does not address one of our primary concerns that there is no notice-and-challenge procedure that would provide due process protections to an affected immigrant before their personal information could be provided to a law enforcement agency.

As a result, we have prepared the attached revised version of the protective order that we believe is necessary to better protect immigrant personally identifiable information from being used outside this case.  Please let us know if Plaintiffs agree to this revised version, or would like to meet and confer regarding it.

Have a great weekend,
Adam

**Adam Bowser**
Partner

Arent Fox LLP | Attorneys at Law
1717 K Street, NW
Washington, DC  20006-5344
202.857.6126 DIRECT | 202.857.6395 FAX
adam.bowser@arentfox.com | www.arentfox.com

---

**From:** Dearing, Stewart <Stewart.Dearing@ag.ny.gov>
**Sent:** Friday, January 14, 2022 4:32 PM
**To:** Bowser, Adam <Adam.Bowser@arentfox.com>; Burke, Jonathan (AGO) <jonathan.burke@state.ma.us>; Lee, Jenny <Jenny.Lee@arentfox.com>; Bayles, David <David.Bayles@arentfox.com>
**Cc:** Mueller, Joseph <Joseph.Mueller@ag.ny.gov>; Levine, Laura <Laura.Levine@ag.ny.gov>; Gordon, Donald (CFPB) <Donald.Gordon@cfpb.gov>; Nguyen, Hai Binh (CFPB) <HaiBinh.Nguyen@cfpb.gov>; Witte, Erin E. <EWitte@oag.state.va.us>
**Subject:** RE: CFPB vs. Nexus Services: 11/10 Meet and Confer

Adam,

I write to respond to the remaining issues raised in your 12/22 email on behalf of all Plaintiffs.

**Capsule Files**
On the capsule files, as we understand it, the two reasons that Defendants are offering to justify the sampling proposal are (1) to address consumer privacy issues and (2) to alleviate burden put on Defendants by having to produce the Capsule files.  Given the high level of relevance of these files, we disagree that your stated reasons warrant the production of a "sampling" production of these files. Moreover, Defendants have waived all of their objections to our document requests.  Plaintiffs routinely handle private consumer information and are required to protect it. Defendants have no authority to redact non-privileged information from relevant discovery requests. Indeed, the claimed burden in doing so is both self-created and unjustified.

In the spirit of moving discovery forward, we propose revising the Protective Order as follows:

     6.1 <u>Basic Principles</u>. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this Action only for prosecuting, defending, or attempting to settle this Action unless another use is authorized by this Order or ~~permitted~~ required by federal statute or regulation applicable to the Bureau

or ~~permitted~~ required by any law or regulation applicable to the States. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order and as ~~permitted~~ required by federal statute or regulation applicable to the Bureau or ~~permitted~~ required by any law or regulation applicable to the States. When the Action has been terminated, a Receiving Party must comply with the provisions of section 12 below (FINAL DISPOSITION). Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

Please let us know as soon as possible (and no later than January 21, 2022) if these edits would resolve Defendants concerns.

**Pre-Complaint Productions**
On the MA pre-complaint productions, Jon is working separately with you to try to resolve the issues.  But on the non-MA pre-complaint productions, your email does not address any of the outstanding issues.  Our October 15, 2021 letter indicates that at this time, we are no longer asking Defendants to produce all of the pre-complaint productions.  Instead, as a compromise, we asked Defendants to reproduce only the documents provided to NY or VA that contained redactions or were provided in hard copy format.  We explained that the redactions were improper and in violation of court orders and that scanning the hard copy documents would be unduly burdensome for Plaintiffs (and unnecessarily so, given that Defendants keep those files in electronic format in the ordinary course of business).  Plaintiffs have asked for over two months now for an answer to that proposal but have yet to receive an answer.  Accordingly, it seems we have a disagreement.

**

If we do not receive a further response from you by January 28, 2022 on any of the issues raised by any of our letters and emails or during the 11/10 meet and confer concerning Defendants' responses to Plaintiffs document requests and interrogatories, we will take your silence to mean the parties have a disagreement on those issues.

Best,

Stewart

**Stewart C. Dearing │ Assistant Attorney General**
Bureau of Consumer Frauds and Protection
Office of the New York State Attorney General
28 Liberty Street, New York, NY 10005
☎ 212-416-8320 | 🖨 212-416-6003
✉ Stewart.Dearing@ag.ny.gov
http://www.ag.ny.gov/bureau/consumer-frauds-bureau



**From:** Bowser, Adam <Adam.Bowser@arentfox.com>
**Sent:** Wednesday, December 22, 2021 7:14 PM
**To:** Burke, Jonathan (AGO) <jonathan.burke@state.ma.us>; Dearing, Stewart <Stewart.Dearing@ag.ny.gov>; Lee, Jenny <Jenny.Lee@arentfox.com>; Bayles, David <David.Bayles@arentfox.com>
**Cc:** Mueller, Joseph <Joseph.Mueller@ag.ny.gov>; Levine, Laura <Laura.Levine@ag.ny.gov>; Gordon, Donald (CFPB) <Donald.Gordon@cfpb.gov>; Nguyen, Hai Binh (CFPB) <HaiBinh.Nguyen@cfpb.gov>; Witte, Erin E. <EWitte@oag.state.va.us>
**Subject:** RE: CFPB vs. Nexus Services: 11/10 Meet and Confer

[EXTERNAL]

Counsel,

I write to address various discovery issues recently raised by Plaintiffs.  Please let us know if you would like to schedule a call to discuss these matters further.

**Request by Massachusetts for an Extension**

Our clients agree to providing Massachusetts the requested extension up to January 15 to respond Defendants' Requests for Production of Documents.

We do not agree that serving discovery requests operates as consent to the disclosure of information specifically protected under G.L. c. 93A, s. (6)(6) to third parties, and do not see any support for a contrary view in this law.  We also would like to understand the "additional restrictions for a small number of documents" agreed to by Massachusetts, and the documents subject to these protections, so we can evaluate how to address these documents.  Until we can reach an agreement, which may be resolved by our request for revisions to the current protective order as discussed below, we expect Massachusetts can produce documents responsive to our requests that are not subject to G.L. c. 93A, s. (6)(6) or the parties' prior agreement, and can supplement its production, as needed, once we reach an agreement about Defendants' prior protected production(s).

**Document Production Issues**

Due to my recent bout with COVID, I am still working through certain items identified in Stewart's December 14 letter with our clients, but I would like to address the following issues here.

<u>Capsule Files and Privacy Issues</u>

First, as to the Production of Capsule/Lightspeed records, we are not proposing a sampling method

simply to address privacy concerns that may later arise, although sampling would make privacy concerns more manageable.  Rather, the primary purpose is to reduce the indisputable burden that would arise from having to review and produce tens of thousands of individual immigrant consumer files, *and* having to address the numerous discrete privacy issues that would arise in these tens of thousands of files.

For the same reason pollsters do not have to call every telephone subscriber, but can rely on a statistically significant sample size, to conduct a scientifically accurate survey, Plaintiffs can likewise obtain a significantly significant sample size of Capsule and Lightspeed files.  Statistically significant sampling is routinely conducted in litigation, particularly where, like here, Plaintiffs are alleging Defendants *routinely* engage in certain practices.  *See*, *e.g.*, Compl. ¶ 117.  While we certainly dispute Plaintiffs' allegations, the point here is a statistically significant sample of Capsule and other files will, by definition, provide Plaintiffs a representative sample of such files.  That is why we are proposing this method as an initial solution.  If, for whatever reason, Plaintiffs believe they "need" more Capsule files after receiving a statistically significant sample, we can address that at such time.  But demanding tens of thousands of files now, without regard to actual need or relevance – which the parties can better assess after conducting the sampling – is not necessary, let alone proportional to the needs of the case in our view.  We believe Judge Hoppe would agree based on the guidance provided during the hearing.

Second, as to representative privacy issues, as I previously explained, immigrants frequently provide Defendants with information in confidence that could potentially be used against these vulnerable individuals in their immigration proceedings.  For example, an immigrant in a sanctuary jurisdiction could have been arrested for, e.g., a DUI or other crime, that would not be reported to immigration authorities, and they may inform Defendants of this fact, which can be memorialized in their Capsule file.  Immigrants may also convey other seemingly innocuous information to Defendants, such as coming to America for a better life for themselves and their children, which could be taken out of context in an asylum proceeding. In either case, such information could potentially be used against the immigrant in their immigration proceedings.

And a review of the Protective Order negotiated with prior counsel would permit such a result in our view.  Specifically, even if material is designated Confidential, Plaintiffs can still disclose the material if "permitted by federal statute or regulation applicable to the Bureau or permitted by any law or regulation applicable to the States."  ECF No. 51, ¶ 6.1; *see also* ¶ 6.1(j).  This is such a vague "restriction" as to be meaningless.  And there does not appear to be a notice-and-challenge mechanism in the Protective Order that would require Plaintiffs to notify us if they believed a law or regulation did "permit" disclosure of an immigrant's confidential information to other federal or state agencies.  In other words, there does not appear to be any restriction on Plaintiffs unilaterally determining that some unspecified law allowed Confidential information supplied by an immigrant to be disclosed to a law enforcement agency, and that information to be used against these vulnerable individuals who provided information to Defendants in confidence.

For these reasons, we believe the Protective Order should be modified to better protect immigrant consumer personally-identifiable information.  To put a finer point on it, our clients are not concerned about Plaintiffs using any information obtained during discovery against *Defendants*.

They are concerned that Plaintiffs can use information provided by immigrants in confidence to Defendants against these vulnerable individuals *outside this case*. And Rule 26(c) specifically allows the Court to enter a revised Protective Order to protect these third parties from annoyance, embarrassment or oppression. And indeed, the judges in this district have done precisely that with respect to the exact information at issue, including in the RLI case. There, the court ordered that none of Nexus's "documents or the information learned from these documents" could be used "to arrest or cause the arrest of any bond holders or persons identified in the documents." ECF No. 59 at 33. The court also ruled that documents produced by Defendants could not be shared with "government agencies or immigration courts, without permission of Nexus or this court."

Ultimately, what we are asking for is a similar framework that would allow Plaintiffs to prosecute their claims in this case against Defendants, but which would protect any information provided by or concerning immigrants from being used against these individuals absent permission of the Court. Please let us know if Plaintiffs are amenable to such an approach, and if so, we can propose specific language to modify the existing Protective Order.

　　　　Search Terms Results

We have been working with the client's discovery vendor to obtain the requested hit report for the ESI search terms previously proposed. Unfortunately, there were technical problems and limitations that arose from how the prior search terms were constructed in certain instances. We are including revised proposed search terms here, along with a chart explaining the changes. We do not view these changes as substantive, but wanted to confirm you did not have any objection to the use of these revised search terms prior to running the report. Please advise.

　　　　Pre-Complaint Productions

As previously discussed, Judge Hoppe directed Plaintiffs to avoid duplicative discovery. As far as we understand, only Massachusetts is subject to any restriction that would prevent it from producing the documents Defendants previously produced in the underlying administrative investigation, and as discussed above, we are still attempting to understand the full scope of that protection. Put differently, we don't understand why the Bureau, New York and Virginia cannot share the documents already produced to these Plaintiffs – outside of seeking to impose this (unnecessary) burden on Defendants. If there is an actual legal impediment preventing Plaintiffs from sharing Defendants' prior document productions among themselves, we would like to understand the bases for any such assertion.

**Interrogatories**

We are currently reviewing the claimed deficiencies in your December 15 letter with our clients in order to assess what information can be supplemented by January 7, as requested. There are a few assertions in your letter which we wish to address now.

First, we did not rely on general objections. We *specifically* objected to *specific* definitions and instructions contained in both the NYROGs and VAROGs. The *Wheeler* case cited by you provides

absolutely no support for your assertion that we have waived objections in these circumstances, as this decision did not address objections to supplied instructions and definitions at all.  On the contrary, it addressed formulaic "to the extent [they are] cumulative and overbroad" objections lodged against specific interrogatories, and even then, the court ruled that such objections were not waived if the "discovery request is overly broad, unduly burdensome, or irrelevant on its face." *Wheeler*, 2018 WL 10611693, *1.  As has been repeatedly made clear to Plaintiffs, defining the "relevant" time period to be before Nexus or Libre even existed, or defining these entities to include third-party entities that were not even mentioned in Plaintiffs' 50-page complaint, *is* seeking facially overbroad and irrelevant material.  Defendants stand by their objections.

Second, Plaintiffs fault Defendants for not responding to questions Plaintiffs *didn't* ask.  Specifically, you object that "Defendants' responses repeatedly fail to specify the dates or time period for the information provided in the responses," and then you cite numerous interrogatories that purportedly must be amended to provide specific dates and times.  But a cursory review of these interrogatories make clear that you didn't remotely ask for such information to be provided.  For example, NYROG 1 simply asks Defendants to "Identify Persons *who* made or participated in decisions Concerning how the Company compensated its employees and agents …"  The persons responsive to this request were identified – and that's all the interrogatory asked Defendants to do. It did *not* ask Defendants to "Identify Persons who made or participated in decisions Concerning how the Company compensated its employees and agents [and when they made or participated in such decisions] …"  Defendants understandably only answered the questions posed, and Defendants stand by not providing specific dates and time periods Plaintiffs did not ask for.

Third, certain of Plaintiffs' claims are facially incorrect.  For example, Plaintiffs fault Defendant's response to NYROG 4, asserting Defendants specifically failed to identify David See and Maria Martinez Morales.  Defendant's response clearly and specifically identifies these individuals, however.

Regards,
Adam

**Adam Bowser**
Partner

Arent Fox LLP | Attorneys at Law
1717 K Street, NW
Washington, DC  20006-5344
202.857.6126 DIRECT | 202.857.6395 FAX
adam.bowser@arentfox.com | www.arentfox.com

---

**From:** Burke, Jonathan (AGO) <jonathan.burke@state.ma.us>
**Sent:** Tuesday, December 21, 2021 9:54 AM
**To:** Bowser, Adam <Adam.Bowser@arentfox.com>; Dearing, Stewart <Stewart.Dearing@ag.ny.gov>; Lee, Jenny <Jenny.Lee@arentfox.com>; Bayles, David <David.Bayles@arentfox.com>
**Cc:** Mueller, Joseph <Joseph.Mueller@ag.ny.gov>; Levine, Laura <Laura.Levine@ag.ny.gov>; Gordon, Donald (CFPB) <Donald.Gordon@cfpb.gov>; Nguyen, Hai Binh (CFPB) <HaiBinh.Nguyen@cfpb.gov>;

Witte, Erin E. <EWitte@oag.state.va.us>
**Subject:** RE: CFPB vs. Nexus Services: 11/10 Meet and Confer

Morning,

███████████████████████████████████

The statute is G.L. c. 93A, s. (6)(6). In addition to the statute, I believe we agreed to some additional restrictions for a small number of documents to address a concern raised by your clients. But I don't have that file at hand and will need to confirm. (I don't want to go into any more detail on an email involving all parties.)

Best,

Jon Burke

---

**From:** Bowser, Adam <Adam.Bowser@arentfox.com>
**Sent:** Monday, December 20, 2021 4:31 PM
**To:** Burke, Jonathan (AGO) <jonathan.burke@mass.gov>; Dearing, Stewart <Stewart.Dearing@ag.ny.gov>; Lee, Jenny <Jenny.Lee@arentfox.com>; Bayles, David <David.Bayles@arentfox.com>
**Cc:** Mueller, Joseph <Joseph.Mueller@ag.ny.gov>; Levine, Laura <Laura.Levine@ag.ny.gov>; Gordon, Donald (CFPB) <Donald.Gordon@cfpb.gov>; Nguyen, Hai Binh (CFPB) <HaiBinh.Nguyen@cfpb.gov>; Witte, Erin E. <EWitte@oag.state.va.us>
**Subject:** RE: CFPB vs. Nexus Services: 11/10 Meet and Confer

CAUTION: This email originated from a sender outside of the Commonwealth of Massachusetts mail system.  Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Hi Jon,

███████████████████████████████████████
███████████████████████████████████████████
██████████████

We are still attempting to confer with our clients concerning your request below, but hope to have an answer for your shortly.  In the meantime, would you mind identifying the Mass. state law governing the confidentiality of CID responses so we're on the same page in terms of the law at issue and its scope.

Regards,
Adam

**Adam Bowser**
Partner

Arent Fox LLP | Attorneys at Law
1717 K Street, NW
Washington, DC  20006-5344
202.857.6126 DIRECT | 202.857.6395 FAX
adam.bowser@arentfox.com | www.arentfox.com

**From:** Burke, Jonathan (AGO) <jonathan.burke@state.ma.us>
**Sent:** Monday, December 20, 2021 3:21 PM
**To:** Bowser, Adam <Adam.Bowser@arentfox.com>; Dearing, Stewart <Stewart.Dearing@ag.ny.gov>; Lee, Jenny <Jenny.Lee@arentfox.com>; Bayles, David <David.Bayles@arentfox.com>
**Cc:** Mueller, Joseph <Joseph.Mueller@ag.ny.gov>; Levine, Laura <Laura.Levine@ag.ny.gov>; Gordon, Donald (CFPB) <Donald.Gordon@cfpb.gov>; Nguyen, Hai Binh (CFPB) <HaiBinh.Nguyen@cfpb.gov>; Witte, Erin E. <EWitte@oag.state.va.us>
**Subject:** RE: CFPB vs. Nexus Services: 11/10 Meet and Confer

Good afternoon Adam,

████████████████████████████████████████ I'm circling back on the request below. Again, I'm happy to give you whatever time you need under the circumstances. But, to reiterate, I need the information requested before Massachusetts can respond to the RFPs. Among other issues, as of now I do not know the defendants' position as to what documents Massachusetts should be reviewing or producing; or how production should be modified, if at all, to address CID material. I need that information in order to formulate responses and objections.

Please let me know at your earliest convenience whether defendants agree to an extension to January 15. To be clear, however, whether or not defendants agree, Massachusetts cannot respond until we receive the information requested. And, given the timeline, I do not expect we will be able to respond by December 24.

Best,

Jon Burke

**From:** Bowser, Adam <Adam.Bowser@arentfox.com>
**Sent:** Friday, December 10, 2021 1:07 PM
**To:** Burke, Jonathan (AGO) <jonathan.burke@mass.gov>; Dearing, Stewart <Stewart.Dearing@ag.ny.gov>; Lee, Jenny <Jenny.Lee@arentfox.com>; Bayles, David <David.Bayles@arentfox.com>
**Cc:** Mueller, Joseph <Joseph.Mueller@ag.ny.gov>; Levine, Laura <Laura.Levine@ag.ny.gov>; Gordon, Donald (CFPB) <Donald.Gordon@cfpb.gov>; Nguyen, Hai Binh (CFPB) <HaiBinh.Nguyen@cfpb.gov>; Witte, Erin E. <EWitte@oag.state.va.us>
**Subject:** RE: CFPB vs. Nexus Services: 11/10 Meet and Confer

CAUTION: This email originated from a sender outside of the Commonwealth of Massachusetts mail system.  Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Hi Jon,

Confirming receipt. ███████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████ will confer with our clients about your request below, and will circle back as soon as I can.

Regards,
Adam

---

**From:** Burke, Jonathan (AGO) <jonathan.burke@state.ma.us>
**Sent:** Friday, December 10, 2021 10:30 AM
**To:** Bowser, Adam <Adam.Bowser@arentfox.com>; Dearing, Stewart <Stewart.Dearing@ag.ny.gov>; Lee, Jenny <Jenny.Lee@arentfox.com>; Bayles, David <David.Bayles@arentfox.com>
**Cc:** Mueller, Joseph <Joseph.Mueller@ag.ny.gov>; Levine, Laura <Laura.Levine@ag.ny.gov>; Gordon, Donald (CFPB) <Donald.Gordon@cfpb.gov>; Nguyen, Hai Binh (CFPB) <HaiBinh.Nguyen@cfpb.gov>; Witte, Erin E. <EWitte@oag.state.va.us>
**Subject:** RE: CFPB vs. Nexus Services: 11/10 Meet and Confer

Good morning Adam,

I hope things are going well with you. As we have discussed, Massachusetts state law restricts the Attorney General's ability to disclose material produced in response to a Civil Investigative Demand. During an earlier meet and confer, I requested that you confirm Defendants' position concerning the disclosure of CID material in this case. I do not believe I have received a response.

Based on my initial review of Defendants' Requests for the Production of Documents, it seems likely that Massachusetts' response may disclose material Defendants' produced in response to our CID. Without waving any position or objection, it seems likely that CID material may be responsive to some of the requests; and, consistent with Rule 5, Massachusetts will serve its response on our co-Plaintiffs.

Massachusetts' position is that Defendants, through the RFPs, have consented to the disclosure of CID material. However, in order to avoid any unnecessary dispute, I need you to clarify Defendants' position, and we need to discuss how they are proposing to proceed, before Massachusetts responds to the RFPs.

In order to give us time to discuss and resolve any issues, Massachusetts requests that Defendants extend its time to respond to the RFPs to January 15, 2021.

Again, I am sending this email in an attempt to avoid any unnecessary dispute. Massachusetts reserves the right to take any position on this issue in any future proceeding.

Best,

Jon Burke

---

**From:** Bowser, Adam <Adam.Bowser@arentfox.com>
**Sent:** Wednesday, November 24, 2021 2:37 PM
**To:** Dearing, Stewart <Stewart.Dearing@ag.ny.gov>; Lee, Jenny <Jenny.Lee@arentfox.com>; Bayles, David <David.Bayles@arentfox.com>
**Cc:** Mueller, Joseph <Joseph.Mueller@ag.ny.gov>; Levine, Laura <Laura.Levine@ag.ny.gov>; Gordon, Donald (CFPB) <Donald.Gordon@cfpb.gov>; Nguyen, Hai Binh (CFPB) <HaiBinh.Nguyen@cfpb.gov>; Witte, Erin E. <EWitte@oag.state.va.us>; Burke, Jonathan (AGO) <jonathan.burke@mass.gov>
**Subject:** RE: CFPB vs. Nexus Services: 11/10 Meet and Confer

> CAUTION: This email originated from a sender outside of the Commonwealth of Massachusetts mail system.  Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Counsel,

Please find attached the supplemental ESI search terms proposed by the corporate defendants that we discussed providing during our 11/10 call, along with discovery requests to the Plaintiffs.

On the remaining items on Stewart's list, please see the responses below:

1. There should not be any unique responsive documents in the possession of the Non-Parties/Nexus Affiliated Entities related to the Nexus Immigration Bond Service or the Nexus Immigration Bond Service (as those terms are defined in your RFPs), either because the applicable entity has no connection to the Complaint, and/or because the entity would not have a separate database of documents that would not also be searched by the corporate Defendants when Plaintiffs ultimately agree to the search terms to be used and custodians to be searched.
3. Yes, ESI associated with former employees is being retained.  If an employee leaves, his or her Google Drive stored documents and email history (with associated attachments) are downloaded from Defendants' Google account and stored on a local server. Such data is being made a part of the ESI pool to be searched, subject to custodian relevance.
4. We are still processing Joe's letter received on Monday regarding the RFP production and responses, and believe it makes sense to address both at the same time.

   (5-6) As discussed during our 11/10 call, we need to understand primarily the Bureau's position,

but the other Plaintiffs' as well, on Plaintiffs' ability not to further disclose immigrant PII or other data Defendants possess that could potentially be used against an immigrant.  To reiterate the hypothetical example I provided during our call, let's say an immigrant notified Libre that they were arrested/charged with a crime, or provided some other information, that could impact their immigration proceeding/status, and this information was noted in the immigrant's file.  Our understanding is that the Bureau likely would be required to provide this information to the DoJ or other appropriate agency, but Hai Binh suggested this was not the case.  And what we would like to understand better is the Bureau's position on its obligation, or lack thereof, to report issues discovered in this litigation to other agencies.

(7) Unfortunately our paralegal who was responsible for the file transfers ████████████████ ████████████████████████████████████████, so we are still attempting to track down and summarize the files we obtained with reference to the underlying investigations and former law firms.  We hope to have this information to you shortly.


Have a great Thanksgiving,
Adam


**Adam Bowser**
Partner

Arent Fox LLP | Attorneys at Law
1717 K Street, NW
Washington, DC  20006-5344
202.857.6126 DIRECT | 202.857.6395 FAX
adam.bowser@arentfox.com | www.arentfox.com

---

**From:** Bowser, Adam
**Sent:** Wednesday, November 17, 2021 7:34 PM
**To:** Dearing, Stewart <Stewart.Dearing@ag.ny.gov>; Lee, Jenny <Jenny.Lee@arentfox.com>; Bayles, David <David.Bayles@arentfox.com>
**Cc:** Mueller, Joseph <Joseph.Mueller@ag.ny.gov>; Levine, Laura <Laura.Levine@ag.ny.gov>; Gordon, Donald (CFPB) <Donald.Gordon@cfpb.gov>; Nguyen, Hai Binh (CFPB) <HaiBinh.Nguyen@cfpb.gov>; Witte, Erin E. <EWitte@oag.state.va.us>; Burke, Jonathan (AGO) <jonathan.burke@state.ma.us>
**Subject:** RE: CFPB vs. Nexus Services: 11/10 Meet and Confer

Stewart,

With respect to the item you all had asked us to get back to you on by today, I am writing to confirm that, after a diligent search, the Defendants have produced to Plaintiffs the documents in their possession that are responsive to the requests for which we indicated documents would be produced within 21 days.  To further clear up any ambiguity, for the limited number of requests for which no responsive documents were located, we intend to supplement our responses by next week indicating where no responsive documents exist (e.g., the individual Defendants do not have insurance policies responsive to Individual Request No. 7, so we'll indicate as much in our supplemental response).

The only potential exception to the foregoing is Mike Donovan's ordained minister's license I mentioned on our call, and which is ostensibly responsive to Individual Request No. 4.  While I'm still struggling to see the relevance of this license to any claims or defenses at issue in this case, please let us know if Plaintiffs want this license to be produced.

Regards,
Adam

**Adam Bowser**
Partner

**Arent Fox LLP** | Attorneys at Law
1717 K Street, NW
Washington, DC  20006-5344
202.857.6126 DIRECT | 202.857.6395 FAX
adam.bowser@arentfox.com | www.arentfox.com

**From:** Dearing, Stewart <Stewart.Dearing@ag.ny.gov>
**Sent:** Friday, November 12, 2021 5:44 PM
**To:** Bowser, Adam <Adam.Bowser@arentfox.com>; Lee, Jenny <Jenny.Lee@arentfox.com>; Bayles, David <David.Bayles@arentfox.com>
**Cc:** Mueller, Joseph <Joseph.Mueller@ag.ny.gov>; Levine, Laura <Laura.Levine@ag.ny.gov>; Gordon, Donald (CFPB) <Donald.Gordon@cfpb.gov>; Nguyen, Hai Binh (CFPB) <HaiBinh.Nguyen@cfpb.gov>; Witte, Erin E. <EWitte@oag.state.va.us>; Burke, Jonathan (AGO) <jonathan.burke@state.ma.us>
**Subject:** CFPB vs. Nexus Services: 11/10 Meet and Confer

Adam,

Thanks for speaking with us on 11/10 to meet and confer on Defendants' responses to Plaintiffs' June 9 document requests pursuant to Rule 37 and Judge Hoppe's September 29 Order.  Below you will find a summary of the major points from our conversation.  Please let us know as soon as possible if your recollection differs on any of the below.

We'd like to note that throughout our conversation on 11/10, Defendants took positions on their responses to many of Plaintiffs' document requests that are completely different than what they stated in their 9/28 written responses.  Defendants also raised some objections – such as burden – for example, for the first time during our 11/10 call.  Plaintiffs believe Defendants have waived any such objections by not raising them sooner, but in the interest or reaching a compromise without involving the Court unnecessarily, we ask that Defendants provide revised written responses to the June 9 document requests where necessary to accurately and completely articulate to us Defendants' positions on what they will and will not produce and the reasons for those positions as soon as possible.

On the 11/10 call, Defendants agreed to provide the following within 2 weeks (i.e., by 11/24) and in writing:

1. A summary of whether there are any documents responsive to Plaintiffs' requests within the

possession, custody, and control of the companies that are not named Defendants and defined in the document requests as "Nexus Affiliated Entities" and a description of what those documents are.

2. Revised search terms proposals that are more likely to locate responsive documents than Defendants' initial proposal.  Plaintiffs suggested reviewing responsive documents to generate the revised search terms.

3. A statement of whether Defendants preserved and have available for search and review documents of former employees.

4. Revised written responses to Plaintiffs' documents requests where Defendants are taking a different position than what was stated in their 9/28 responses.

5. Defendants' position on Plaintiffs' proposal that Defendants produce all documents from Capsule and Lightspeed (as well as any similar databases Defendants may have used to track consumer communications, payments, and other relevant information).

6. Defendants' proposal (if necessary) on how to handle any concerns about information Defendants' view as "sensitive" and that is contained in responsive documents.  Any such proposal must include a clear definition of the types of information Defendants are concerned about that is objective and circumscribed in scope.

7. Defendants' position on Plaintiffs' proposal on Request 23 addressed to the corporate Defendants.  Plaintiffs' proposal was set forth in Plaintiffs' 10/15 letter.  Defendants also agreed to provide a summary of what documents Defendants have that were already produced to Plaintiffs before the complaint in this case was filed.

On the 11/10 call, Defendants also agreed to confirm within one week (i.e., by 11/17) whether they intend to produce any other materials in response to requests to which they had promised productions of responsive documents "within 21 days" of their written objections and responses.  These requests are also listed in Plaintiffs' 11/5 letter.  There are still no documents that have been produced in response to several of these requests.

We also confirmed the following on the 11/10 call:

1. In terms of timeframe, Defendants agree to search for and produce documents from July 2012 to the present.

2. Defendants stated that in their written responses, they did not intend to use the word "relevant" to limit the response to a given request and that they intend to provide all responsive documents, consistent with any other objections they have referenced in their written responses.

3. Defendants stated that they would provide a privilege log for any documents withheld on the basis of privilege consistent with the requirements of Rule 26(b)(5).

4. Defendants stated that they are collecting and preserving documents consistent with the ESI Order, including by collecting and preserving all of the document types listed in that Order where applicable.  Defendants stated that they intend to review and provide responsive documents from personal devices, including personal devices of the three named individual Defendants.

5. Defendants stated that the information they view as "sensitive" and that they are concerned about producing to Plaintiffs is the criminal history of their immigrant clients.

6. Plaintiffs stated that we would be unlikely to accept a "statistically significant" amount of

Capsule files, Lightspeed files, or communications in response to any of the document requests. Plaintiffs explained that all of those documents contain information that is highly relevant to Plaintiffs' claims and that it would be less burdensome for Defendants to provide all of them to Plaintiffs.

7. Defendants represented that they do not have an unredacted copy of CFPB_LIBRE-00000036-268.

8. On the Requests to the Corporate Defendants:

   a. Request 13 –Plaintiffs stated and that we would consider using search terms to locate written communications responsive to this request, but not for Lightspeed documents or other types of financial records.

   b. Requests 18-19 – Defendants agreed to reevaluate whether they will provide responsive documents, especially in light of Judge Hoppe's ruling on Defendants' motion to quash and stay discovery that Defendants' financial records are relevant to Plaintiffs' claims.

   c. Request 23 – Defendants agreed to provide within 2 weeks a summary of what documents they have that they produced to Plaintiffs during the investigative phase and to respond to Plaintiffs proposal in the 10/15 letter for how to limit Defendants' response to this request. Defendants' counsel stated that he did not know whether Defendants had a copy of the hard-copy production made to New York. Defendants counsel also did not know the positions Defendants had taken regarding the pre-complaint production made to Massachusetts regarding consent to share those documents.

8. On the Requests to the Individual Defendants:

   a. Request 1 – Defendants are taking the position that the documents called for by this request overlap entirely with the requests made to the corporate Defendants. They will provide any responsive documents that the individual Defendants have in response to the corporate Defendant requests.

   b. Request 2 – Defendants will consider revising their objection to this request and will see what they can provide in response.

   c. Request 3 - Defendants will consider revising their objection to this request and will see what they can provide in response.

   d. Request 4 – Despite stating that documents would be provided "within 21 days," no documents have been provided yet in response to this request. Defendants indicated that they believed the only responsive document they have is a pastor license that Mr. Donovan possesses. Defendants agreed to provide that license as soon as possible and to confirm in writing that there are no other responsive documents. [Though not discussed on 11/10, Plaintiffs also note that the request calls for licenses *sought* or obtained.]

   e. Request 5 - Defendants will consider revising their objection to this request and will see what they can provide in response.

   f. Request 6 - Defendants will consider revising their objection to this request and will provide a written proposal of what they can provide in response.

   g. Request 7 – Defendants stated that the individuals did not have any insurance policies, but that the corporate entities might. They agreed to supplement their initial disclosures and provide any such insurance policies within 2 weeks.

h. Request 8 – Defendants agreed to reconsider their objection and see what they are willing to provide.

i. Request 9 – Defendants stated that the individuals do not have any responsive materials that the corporate entities do not have, so the individual defendants do not plan to produce anything in response to this request.

And to avoid any doubt, the above is not intended to waive or limit the objections and positions Plaintiffs have taken in our October 15 and November 5 letters, including that Defendants waived all objections by failing to timely respond to Plaintiffs June 9 document requests.

Best,

Stewart

**Stewart C. Dearing | Assistant Attorney General**
Bureau of Consumer Frauds and Protection
Office of the New York State Attorney General
28 Liberty Street, New York, NY 10005
☎ 212-416-8320 | 📠 212-416-6003
✉ Stewart.Dearing@ag.ny.gov
http://www.ag.ny.gov/bureau/consumer-frauds-bureau



**IMPORTANT NOTICE:** This e-mail, including any attachments, may be confidential, privileged or otherwise legally protected. It is intended only for the addressee. If you received this e-mail in error or from someone who was not authorized to send it to you, do not disseminate, copy or otherwise use this e-mail or its attachments. Please notify the sender immediately by reply e-mail and delete the e-mail from your system.

CONFIDENTIALITY NOTICE: This e-mail and any attachments are for the exclusive and confidential use of the intended recipient. If you received this in error, please do not read, distr bute, or take action in reliance upon this message. Instead, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

CONFIDENTIALITY NOTICE: This e-mail and any attachments are for the exclusive and confidential use of the intended recipient. If you received this in error, please do not read, distr bute, or take action in reliance upon this message. Instead, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

CONFIDENTIALITY NOTICE: This e-mail and any attachments are for the exclusive and confidential use of the intended recipient. If you received this in error, please do not read, distr bute, or take action in reliance upon this message. Instead, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or

work product privilege by the transmission of this message.

---

CONFIDENTIALITY NOTICE: This e-mail and any attachments are for the exclusive and confidential use of the intended recipient. If you received this in error, please do not read, distr bute, or take action in reliance upon this message. Instead, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

---

CONFIDENTIALITY NOTICE: This e-mail and any attachments are for the exclusive and confidential use of the intended recipient. If you received this in error, please do not read, distr bute, or take action in reliance upon this message. Instead, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

# EXHIBIT 18

| | |
|---|---|
| **From:** | Dearing, Stewart |
| **To:** | Bowser, Adam; Lee, Jenny; Bayles, David |
| **Cc:** | Mueller, Joseph; Burke, Jonathan (AGO); Witte, Erin E.; Scott, James E.; Nguyen, Hai Binh (CFPB); Gordon, Donald (CFPB) |
| **Subject:** | Libre - Follow Up |
| **Date:** | Friday, February 04, 2022 2:04:57 PM |
| **Attachments:** | image001.png |

Adam,

In their response to Plaintiffs' first RFPs, Nexus Services Inc. and Libre by Nexus Inc. represented that they would produce relevant, non-privileged documents called for by request 24 within 70 days (by December 7, 2021). Defendants never produced any documents responsive to this request. Plaintiffs request that Defendants produce these documents immediately.

Best,

Stewart

**Stewart C. Dearing | Assistant Attorney General**
Bureau of Consumer Frauds and Protection
Office of the New York State Attorney General
28 Liberty Street, New York, NY 10005
☎ 212-416-8320 | 🖨 212-416-6003
✉ Stewart.Dearing@ag.ny.gov
http://www.ag.ny.gov/bureau/consumer-frauds-bureau



# EXHIBIT 19

| | |
|---|---|
| **From:** | Bowser, Adam |
| **To:** | Burke, Jonathan (AGO); Mueller, Joseph; Bayles, David; Lee, Jenny |
| **Cc:** | Azia, Jane; Levine, Laura; Nguyen, Hai Binh (CFPB); Gordon, Donald (CFPB); Irvin, David; Scott, James E.; Stewart.Dearing@ag.ny.gov |
| **Subject:** | RE: CFPB v. Nexus Services - Plaintiffs Counterproposal on Search Terms and Custodians |
| **Date:** | Thursday, February 24, 2022 11:00:33 AM |
| **Attachments:** | image002.png image003.png |

> **CAUTION:** This email originated from a non-government domain. DO NOT click links or open attachments unless you recognize and/or trust the sender. Contact Cybersecurity Incident Response Team (CSIRT) at 202-435-7200 or report a suspicious email.

Jon,

Apologies for the delay in getting back to you on this request, as we needed to confer with our clients and ensure that we could meet any commitments on the search term hit reports you requested.  Unfortunately, Nexus is experiencing significant financial and banking issues at the moment, and the outside discovery vendor Nexus has been using has stopped work on this case until the next installment payment is made.  This has been made more difficult by Nexus's primary bank shutting down Nexus's bank accounts after it received Plaintiffs' subpoena (which is precisely the harm we were trying to avoid through our motion for a protective order).  And as you can see from Nexus's responses to Virginia's discovery requests, Nexus's current revenues are less than 1/3 of what they were two years ago, and this is on top of Nexus making significant settlement payments to resolve Virginia's separate claims that Nexus, Libre, Michael Donovan and Richard Moore were "knowingly transacting the business of insurance."

Given the above, we are diligently working with our clients to resolve the payment issue with the discovery vendor.  We anticipate that this situation should be resolved within the next week, at which point we should be able to confer with the discovery vendor about the time it needs to run the search terms you've proposed on the custodians we have so far agreed upon.  But regrettably, I am not in a position to commit to a timeline until I am able to coordinate with the discovery vendor.  I will revert back to you as soon as I have an update, which again, I hope to have next week.

Regards,
Adam



**Adam Bowser**
PARTNER | ARENT FOX LLP

adam.bowser@arentfox.com | 202.857.6126 **DIRECT**
Bio | LinkedIn | Subscribe
1717 K Street NW, Washington, DC 20006
**Smarter Service.** On March 1, we will become ArentFox Schiff. Learn More

**From:** Burke, Jonathan (AGO) <jonathan.burke@state.ma.us>
**Sent:** Friday, February 18, 2022 4:53 PM
**To:** Mueller, Joseph <Joseph.Mueller@ag.ny.gov>; Bowser, Adam <Adam.Bowser@arentfox.com>; Bayles, David <David.Bayles@arentfox.com>; Lee, Jenny <Jenny.Lee@arentfox.com>
**Cc:** Azia, Jane <Jane.Azia@ag.ny.gov>; Levine, Laura <Laura.Levine@ag.ny.gov>; Nguyen, Hai Binh (CFPB) <HaiBinh.Nguyen@cfpb.gov>; Gordon, Donald (CFPB) <Donald.Gordon@cfpb.gov>; Witte, Erin E. <EWitte@oag.state.va.us>; Irvin, David <dirvin@oag.state.va.us>; Scott, James E. <JScott@oag.state.va.us>; Dearing, Stewart <Stewart.Dearing@ag.ny.gov>
**Subject:** RE: CFPB v. Nexus Services - Plaintiffs Counterproposal on Search Terms and Custodians

Counsel,

I am following up concerning the parties proposed search terms. On February 11, we requested that Defendants run Plaintiffs' proposed search terms for all agreed-upon custodians. As we have not received a response, we are renewing that request. Please run the search terms and provide the hit list report required by Section III(B) of the ESI Order by close of business on February 25, 2022. To the extent that Defendants believe that it may help the parties reach an agreement on this issue, please also run Defendants' proposed terms and provide the hit list report; note that Plaintiffs requested that Defendants run an initial search using their terms more than a month ago and did not receive a response. Please confirm that Defendants will run the initial search(es) and provide the report(s) by close of business on February 21, 2022.

Sincerely,

Jon Burke

---

**From:** Mueller, Joseph <Joseph.Mueller@ag.ny.gov>
**Sent:** Friday, February 11, 2022 3:45 PM
**To:** Bowser, Adam <Adam.Bowser@arentfox.com>; Bayles, David <David.Bayles@arentfox.com>; Lee, Jenny <Jenny.Lee@arentfox.com>
**Cc:** Azia, Jane <Jane.Azia@ag.ny.gov>; Levine, Laura <Laura.Levine@ag.ny.gov>; Nguyen, Hai Binh (CFPB) <HaiBinh.Nguyen@cfpb.gov>; Gordon, Donald (CFPB) <Donald.Gordon@cfpb.gov>; Witte, Erin E. <EWitte@oag.state.va.us>; Irvin, David <dirvin@oag.state.va.us>; Burke, Jonathan (AGO) <jonathan.burke@mass.gov>; Scott, James E. <JScott@oag.state.va.us>; Dearing, Stewart <Stewart.Dearing@ag.ny.gov>
**Subject:** RE: CFPB v. Nexus Services - Plaintiffs Counterproposal on Search Terms and Custodians

CAUTION: This email originated from a sender outside of the Commonwealth of Massachusetts mail system.  Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Counsel,

We are reviewing your custodians counterproposal and will respond separately. We need to move forward on discovery as quickly as possible, though. Therefore, we suggest that Defendants run Plaintiffs' proposed search terms for all of the agreed-upon custodians—i.e. those that Plaintiffs' suggested and that Defendants indicated have or may have potentially responsive information—and that Defendants begin reviewing and producing responsive materials. Plaintiffs are suggesting this process based on the mutual understanding that additional custodians are likely to be added in the future, including at Plaintiffs' request after fully reviewing Defendants' February 7 custodians counterproposal.

Plaintiffs carefully considered Defendants' proposed revisions to the Protective Order, just as Plaintiffs have heard and considered the positions expressed by Defendants on this issue in correspondence and on past calls. We have discussed amending the PI Order only in order to resolve an underlying dispute concerning whether certain consumer information should be redacted. Plaintiffs' position is that Defendants have no legal basis to redact consumer information. Further, Defendants' proposed notice-process amendments to the Protective Order are not acceptable. Plaintiffs and Defendants have now discussed this issue on several occasions and have not been able to come to an agreement. Plaintiffs believe that conferring again would not be helpful and is not needed.

Plaintiffs reiterate their request to meet and confer (made on January 24) about other forms of ESI that are possessed or are in the custody or control of Defendants, such as call recordings with consumers. To date, Defendants have not produced any call recordings even though they are responsive to Plaintiffs' discovery requests. Please provide dates and times that Defendants are able to confer on this issue.

Regards,

Joe

**Joseph P. Mueller | Assistant Attorney General**
Bureau of Consumer Frauds and Protection
Office of the New York State Attorney General
28 Liberty Street, New York, NY 10005
Ph: (212) 416-8321  Fax: (212) 416-6003
joseph.mueller@ag.ny.gov
http://www.ag.ny.gov/bureau/consumer-frauds-bureau



---

**From:** Bowser, Adam <Adam.Bowser@arentfox.com>
**Sent:** Monday, February 7, 2022 4:55 PM
**To:** Dearing, Stewart <Stewart.Dearing@ag.ny.gov>; Bayles, David <David.Bayles@arentfox.com>; Lee, Jenny <Jenny.Lee@arentfox.com>
**Cc:** Mueller, Joseph <Joseph.Mueller@ag.ny.gov>; Azia, Jane <Jane.Azia@ag.ny.gov>; Levine, Laura <Laura.Levine@ag.ny.gov>; Nguyen, Hai Binh (CFPB) <HaiBinh.Nguyen@cfpb.gov>; Gordon, Donald (CFPB) <Donald.Gordon@cfpb.gov>; Witte, Erin E. <EWitte@oag.state.va.us>; Irvin, David <dirvin@oag.state.va.us>; Burke, Jonathan (AGO) <jonathan.burke@state.ma.us>
**Subject:** RE: CFPB v. Nexus Services - Plaintiffs Counterproposal on Search Terms and Custodians

[EXTERNAL]

Counsel,

We have analyzed your counterproposal in depth and prepared the attached spreadsheet in response.  As you'll see, we have agreed to include numerous supplemental custodians identified in your counterproposal (which are highlighted for ease of reference).  There are, however, many Nexus employees and/or positions that have no relevance to a particular request, as we also explain in the attached spreadsheet for each identified individual and title, and as they relate to each particular request.  We will make ourselves available to meet and confer after you've had a chance to review the attached, if the accompanying explanations do not suffice to show why particular custodians proposed by Plaintiffs are not relevant.

For the avoidance of doubt, and consistent with the ESI Order, Defendants are reserving the right to challenge particular search terms contained in your counterproposal based on the amount of false positives a particular search term may create.  But it seemed logical to us to first agree on the proper custodians so we are not running unnecessary search term hit reports on employees who have no relevant involvement related to a particular request, and all the extra costs that would entail.

Finally, we would also like to meet and confer concerning Plaintiffs' response to our proposed revisions to the Protective Order.  Respectfully, we were frankly puzzled by Plaintiffs' terse response – i.e., "Defendants have no legal basis to redact or withhold relevant information about consumers" – given that our proposed revisions do not in any way relate to redactions or withholding documents.  On the contrary, our revisions are

designed to *facilitate* the production of documents *without redactions* for use *in this case*. The additional protections we are seeking relate to how information related to vulnerable immigrants can potentially be used against these third parties *outside of this case* – particularly by immigration authorities – without their knowledge, consent, or ability to challenge the further disclosure of their personal information. Put differently, what we are seeking through our proposed revisions are simple due process protections for vulnerable third parties *if* any Plaintiff intends to share information about an immigrant with other agencies for purposes outside of this case.

At bottom, since there appears to be a fundamental misunderstanding of the changes we are proposing, we would like to discuss our proposed revisions with your further.

Regards,
Adam



**Adam Bowser**
PARTNER | ARENT FOX LLP

adam.bowser@arentfox.com | 202.857.6126 **DIRECT**
Bio | LinkedIn | Subscribe
1717 K Street NW, Washington, DC 20006
**Smarter Service.** On March 1, we will become ArentFox Schiff. Learn More

---

**From:** Dearing, Stewart <Stewart.Dearing@ag.ny.gov>
**Sent:** Monday, January 24, 2022 11:48 AM
**To:** Bayles, David <David.Bayles@arentfox.com>; Bowser, Adam <Adam.Bowser@arentfox.com>; Lee, Jenny <Jenny.Lee@arentfox.com>
**Cc:** Mueller, Joseph <Joseph.Mueller@ag.ny.gov>; Azia, Jane <Jane.Azia@ag.ny.gov>; Levine, Laura <Laura.Levine@ag.ny.gov>; Nguyen, Hai Binh (CFPB) <HaiBinh.Nguyen@cfpb.gov>; Gordon, Donald (CFPB) <Donald.Gordon@cfpb.gov>; Witte, Erin E. <EWitte@oag.state.va.us>; Irvin, David <dirvin@oag.state.va.us>; Burke, Jonathan (AGO) <jonathan.burke@state.ma.us>
**Subject:** CFPB v. Nexus Services - Plaintiffs Counterproposal on Search Terms and Custodians

Counsel,

Please see attached Plaintiffs' counterproposal on search terms and custodians for ESI responsive to Plaintiffs' June 9, 2021 document requests issued to Libre by Nexus, Inc. and Nexus Services, Inc.

Best,

Stewart

**Stewart C. Dearing | Assistant Attorney General**
Bureau of Consumer Frauds and Protection
Office of the New York State Attorney General
28 Liberty Street, New York, NY 10005
☎ 212-416-8320 | 🖷 212-416-6003
✉ Stewart.Dearing@ag.ny.gov
http://www.ag.ny.gov/bureau/consumer-frauds-bureau



**IMPORTANT NOTICE:** This e-mail, including any attachments, may be confidential, privileged or otherwise legally protected. It is intended only for the addressee. If you received this e-mail in error or from someone who was not authorized to send it to you, do not disseminate, copy or otherwise use this e-mail or its attachments. Please notify the sender immediately by reply e-mail and delete the e-mail from your system.

CONFIDENTIALITY NOTICE: This e-mail and any attachments are for the exclusive and confidential use of the intended recipient. If you received this in error, please do not read, distribute, or take action in reliance upon this message. Instead, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by  he transmission of this message.

CONFIDENTIALITY NOTICE: This e-mail and any attachments are for the exclusive and confidential use of the intended recipient. If you received this in error, please do not read, distribute, or take action in reliance upon this message. Instead, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by  he transmission of this message.

# EXHIBIT 20

| From: | Nguyen, Hai Binh (CFPB) |
|---|---|
| To: | Bayles, David; Lee, Jenny; Bowser, Adam |
| Cc: | Burke, Jonathan (AGO); Gordon, Donald (CFPB); Mueller, Joseph; Scott, James E.; Dearing, Stewart |
| Subject: | CFPB v. Nexus Services Inc (5:21-cv-16, WD VA) |
| Date: | Tuesday, March 22, 2022 1:55:07 PM |
| Attachments: | Joint Discovery Dispute Submission - Plaintiffs RFPs.docx |

**[EXTERNAL]**

Counsel,

I am writing concerning outstanding discovery issues. It has been more than nine months since Plaintiffs served their First Requests for the Production of Documents on the Entity and Individual Defendants. Defendants still have not produced documents that they stated in their written responses would be produced; continue to withhold documents based on objections that were waived and are without merit; and have now effectively stalled ESI Discovery. Plaintiffs have attempted to meet and confer with Defendants in good faith but have been unable to resolve these issues. Plaintiffs therefore consider the parties to have reached an impasse that requires the Court's intervention.

Consistent with the Court's Discovery Order (ECF No. 81), Plaintiffs plan to file the attached Joint Statement on April 15, 2022. Please fill in any content Defendants want to include and return the document by close of business on April 14. As indicated in the Statement, Plaintiffs plan to request an order compelling production in response to Entity RFP Nos. 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 20, 21, 22, 24, 25, 26 and 28; and Individual RFP Nos. 3, 5, 6, and 8. Plaintiffs are particularly seeking the following categories of documents:

1. Capsule, Lightspeed and other Database Files: As we have repeatedly discussed, these files contain highly relevant information that is responsive to multiple Entity RFPs. Defendants have neither produced any documents nor identified any privilege or protection that justifies withholding or redacting information from the files. Further, even if Defendants were withholding documents based on a valid objection – which they are not – Defendants waived their objections to the RFPs by failing to serve a timely response. Notwithstanding, Plaintiffs have heard and considered Defendants' proposals to produce statistically significant samples from the databases and amend the Protective Order. Defendants' proposals are not acceptable. Plaintiffs will seek to compel production of complete Capsule, Lightspeed and other responsive database files as they are maintained in the usual course of business without redactions for relevance.

2. ESI Search Term Documents: Defendants have stalled ESI Discovery by failing to take steps reasonably necessary to agree to search terms and custodians. Plaintiffs will seek to compel an initial production of ESI based on Plaintiffs' proposed terms and mutually agreed custodians.

3. Documents Concerning the Individual Defendants' Finances and Relationships to the Entity Defendants: Defendants are withholding these documents based on objections that were waived and are without merit. Plaintiffs requested that Defendants reconsider their

objections and begin producing documents more than five months ago. Defendants never responded. Plaintiffs will seek to compel production of all documents responsive to Individual RFPs Nos. 3, 5, 6, and 8.

4. Information Concerning the Entity Defendants' Document Retention Policies and Efforts: In our letter dated December 14, 2021, Plaintiffs demanded that Defendants provide certain information concerning their efforts to preserve discoverable material and respond to Entity RFP No. 26. Defendants have not provided any of the requested information or produced any documents. Plaintiffs will seek to compel production of all responsive documents.

5. Overdue Non-ESI/Search Term Production: Defendants asserted no objections in response to Entity RFP Nos. 16, 22, 24, 25, and 28 and stated that responsive documents would be produced by certain dates. Defendants further indicated that they did not intend to use search terms to identify documents responsive to these RFPs. Yet Defendants have produced no documents. Plaintiffs will seek to compel production of all responsive documents.

Plaintiffs will additionally seek fees and costs.

To be clear, Plaintiffs do not believe that they have received a complete response to any RFP to date. Plaintiffs reserve the right to seek additional relief at a later date if Defendants continue to fail to comply with their discovery obligations.

Sincerely,

Hai Binh T. Nguyen (pronouns: she/her/hers)
Attorney | Office of Enforcement
Telephone: (202) 435-7251
Mobile: (202) 341-7124
Consumer Financial Protection Bureau
consumerfinance.gov

**Confidentiality Notice**:  If you received this email by mistake, you should notify the sender of the mistake and delete the email and any attachments.  An inadvertent disclosure is not intended to waive any privileges.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU; COMMONWEALTH OF MASSACHUSETTS; THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York; and COMMONWEALTH OF VIRGINIA, *EX REL*. JASON S. MIYARES, ATTORNEY GENERAL, | Case No.:  5:21-cv-00016-EKD-JCH |
| Plaintiffs, | Judge Elizabeth K. Dillon |
| | Magistrate Judge Joel C. Hoppe |
| v. | |
| NEXUS SERVICES, INC., LIBRE BY NEXUS, INC., MICHEAL DONOVAN, RICHARD MOORE, and EVAN AJIN, | |
| Defendants. | |

**Joint Statement Detailing and Itemizing Discovery Dispute**

Pursuant to the Order entered September 29, 2021, ECF No. 81, the parties submit the attached joint statement detailing a discovery dispute concerning Plaintiffs' First Requests for the Production of Documents and Electronically Stored Information Addressed to Nexus Services, Inc. and Libre by Nexus, Inc.; Micheal Donovan; Richard Moore; and Evan Ajin. The Requests were served on June 9, 2021 and are attached as Joint Exhibits A, B, C, and D respectively. Defendants' responses were served on September 28, 2021 and are attached as Joint Exhibits E, F, G, and H respectively.

Plaintiffs seek an order: (a) compelling Defendants to produce documents in response to the Requests as detailed in the chart below; and (b) granting Plaintiffs a judgment for attorney's fees and costs.

**Plaintiffs' Position:**

<u>Plaintiff's Statement of Efforts to Resolve Dispute</u>:  [<mark>To Be Inserted by Plaintiffs</mark>]

Plaintiffs' Itemization of Discovery Dispute:

*Entity Defendant RFPs*

| Requests for Production: | Defendants' Response: | Plaintiffs' Position: |
|---|---|---|
| **RFP No. 4:**  Documents sufficient to show how the Company determined compensation of its employees or agents who interacted or communicated with Consumers Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, including Documents describing or setting forth any sales incentive program or commissions. | "Defendants will produce relevant, non-privileged documents called for by this request within 21 days of this response." | [To Be Inserted By Plaintiffs] |
| **RFP No. 5**: Documents sufficient to show the following:<br>a.   all Nexus Products and/or Services;<br>b.   the number and Identity of Consumers that received each such Nexus Product and/or Service (including the Nexus Immigration Legal Services);<br>c.   the date(s) on which each such Nexus Product and/or Service was provided to each Consumer Identified in subsection (b);<br>d.   the number and Identity of Consumers who sought but did not receive Nexus Immigration Legal Services; and | "As to subpart A, Defendants will produce relevant, non-privileged documents called for by this Request within 21 days of this response. As to subparts B-E, Defendants will produce relevant, non-privileged documents called for by these Requests within 49 days of this response." | [To Be Inserted By Plaintiffs] |

3

| | | |
|---|---|---|
| e.  the number and Identity of Consumers who sought but did not receive any Nexus Products and/or Services, other than Nexus Immigration Legal Services. | | |
| **RFP No.6:**  All Documents and Communications Concerning all advertising, marketing, or promotional material Concerning any Nexus Products and/or Services, including materials for television, internet, social media, in-person or experiential marketing, and printed materials. | "Defendants will produce relevant, non-privileged documents called for by this Request within 49 days of this response." | [To Be Inserted By Plaintiffs] |
| **RFP No. 7:**  All Documents constituting or reflecting Company policies, procedures, scripts, talking points, guidance, instructions, and training Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, and all Communications Concerning the development, revision, or implementation of the foregoing. | "Defendants will produce relevant, non-privileged documents called for by this Request within 49 days of this response." | [To Be Inserted By Plaintiffs] |
| **RFP No. 8:**  All Documents the Company provided or made available to any Consumers Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, including written agreements between the Company and Consumers and all | "Defendants will produce relevant, non-privileged documents called for by this Request within 21 days of this response." | [To Be Inserted By Plaintiffs] |

| | | |
|---|---|---|
| Documents incorporated in, referenced by, associated with or presented with such written agreements. | | |
| **RFP No. 9:** All Documents and Communications Concerning the creation of, or any proposed or actual revisions, amendments, or changes to any Documents that are responsive to Request No. 8. | "Defendants will produce relevant, non-privileged documents called for by this Request within 70 days of this response." | [To Be Inserted By Plaintiffs] |
| **RFP No. 10:** Documents sufficient to show (a) the native language of and (b) the language(s) spoken and understood by each Consumer who signed up for the Nexus Immigration Bond Service. | "Defendants will produce relevant, non-privileged documents called for by this Request within 21 days of this response." | [To Be Inserted By Plaintiffs] |
| **RFP No. 11:** All Documents and Communications (including without limitation any written logs, databases, recordings of telephone calls, text messages, emails, and instant and social media messages) Concerning the following topics:<br>　a. the Company paying Consumers' immigration bonds;<br>　b. Consumers breaching immigration bonds;<br>　c. Consumer non-compliance with the terms, requirements, or conditions of the Nexus | "As to subpart A, Defendants will produce relevant, non-privileged documents called for by this Request within 21 days of this response. As to subparts B and C, information related to consumers breaching immigration bonds or non-compliance with the bond services generally is highly sensitive material that is not relevant to Plaintiffs' claims, and therefore is outside the scope of permissible discovery. To the extent that Plaintiffs are actually seeking documents related to their allegations that *Defendants' employees* | [To Be Inserted By Plaintiffs] |

| | | |
|---|---|---|
| Immigration Bond Service, including non-payment;<br>d.   the reason for or purpose of any Consumer payments to the Company Concerning the Nexus Immigration Bond Service;<br>e.   the Company offering or providing loans or offering or extending credit to Consumers Concerning the Nexus Immigration Bond Service;<br>f.    Consumers owing a debt because the Company paid an immigration bond or Consumers' payments to the Company going towards paying down an immigration bond or paying down a loan;<br>g.   arrest, criminal prosecution, detention, or deportation of Consumers or any other negative outcome in a Consumer's immigration case or negative impact on a Consumer's immigration status;<br>h.   the GPS devices used for the Nexus Immigration Bond Service, including how they functioned; instructions for Consumers about how to use them; injuries, harm, irritation, or any adverse reaction caused by GPS devices; requests by either Consumers or the Company to remove, exchange, or replace a | purportedly engaged in misrepresentations related to these topics, Defendants will produce relevant, non-privileged documents called for by this Request within 49 days of this response.<br>As to subparts D-F and H-L, Defendants will produce relevant, non-privileged documents 8 called for by this Request within 70 days of this response.<br>As to subpart G, information related to an individual consumer's arrest, criminal prosecution, detention, or deportation, or any other negative information related to a consumer's immigration case, is entirely irrelevant to Plaintiffs' claims against Defendants in this Action, and is therefore outside the scope of permissible discovery. By way of a hypothetical, if Consumer X conveyed to Defendants that the individual recently was arrested for a DUI and was very concerned what impact this would have on his immigration case, such information—disclosed to Defendants in strict confidence— would have no conceivable relevance to establishing any of Plaintiffs' claims. Simply put, Defendants will not produce information in this Action that (1) could (a) jeopardize the immigration status of a consumer or | |

| | | |
|---|---|---|
| GPS device; co-signers wearing GPS devices; and whether GPS devices are required by third parties (such as the courts or Immigration and Customs Enforcement);<br>i.   the collection or attempted collection of payments or debts purportedly owed by Consumers for the Nexus Immigration Bond Service, including through the sale or transfer of Consumer accounts or purported debts to a Debt Buyer, Collection Agency, or other third-party Entity for collection;<br>j.   harm to a Consumer's credit rating or reporting of any kind to a Consumer Reporting Agency;<br>k.  the Company's affiliation or relationship with any third-party Entity Concerning the provision of the Nexus Immigration Bond Service, including Immigration and Customs Enforcement, the U.S. Department of Homeland Security, the courts, and bond agents; and<br>l.    the Nexus Immigration Legal Services. | (b) create a risk of injury or harm to the consumer's well-being and safety, and (2) is ripe for abuse by Plaintiffs and other government agencies, particularly when there is no legitimate need for the information as requested by Plaintiffs. The concern with regard to protecting consumers' well-being and safety is informed by the representation that the federal agency Plaintiff in this matter made to Defendants that evidence of a crime by immigrants will be referred to law enforcement authorities." | |
| **RFP No. 13:** All Documents and Communications Concerning the tracking or accounting of all money received from Consumers or purportedly owed by Consumers for | "As to subpart A, all Defendant's Lightspeed records would encompass information entirely irrelevant to Plaintiffs' claims in this Action, and is therefore outside the scope of | [To Be Inserted By Plaintiffs] |

| the Nexus Immigration Bond Service, including the following: a. Lightspeed records; b. Documents and Communications describing the procedures or ways Consumer payments are or should be made; and c. Documents and Communications Concerning the accuracy of or completeness of the Company's Consumer payment tracking or accounting system. | permissible discovery. Defendants will, however, produce a statistically significant, random sample of non-privileged documents called for by this Request within 70 days of this response. As to subpart B, Defendants will produce relevant, non-privileged documents called for by this Request within 49 days of this response. As to subpart C, Defendants will produce relevant, non-privileged documents called for by this Request within 70 days of this response." | |
|---|---|---|
| **RFP No. 14:** All Documents and Communications Concerning Consumer refunds Concerning the Nexus Immigration Bond Service, including instances when a. a Consumer requested a refund and did not receive one; b. a Consumer's immigration case ended, when an immigration judge rendered a decision of any kind in a Consumer's case, and/or his or her bond was cancelled; and c. a Consumer made payments to the Company or any of its affiliates, but no Consumer was released from immigration detention. | "Defendants will produce relevant, non-privileged documents called for by this Request within 70 days of this response." | [To Be Inserted By Plaintiffs] |
| **RFP No. 15:** All agreements between any Defendant and any Person to provide products or services | "As to subparts, A, B and D, Defendants will produce relevant, non-privileged documents called for | [To Be Inserted By Plaintiffs] |

| | | |
|---|---|---|
| Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, and Documents and Communications Concerning performance of any Entity under such agreements. The response to this request shall include agreements (and the requested Documents and Communications):<br><br>a. for the provision of GPS hardware or services;<br>b. for the provision of marketing, advertising, or public relations services;<br>c. for the provision of legal services to Consumers;<br>d. for the storage of Communications for the Company, including e-mail, instant messaging, chat, or telephone recordings (both cellular and landlines); and<br>e. with any bond, surety, or insurance company or the agent of any bond, surety, or insurance company. | by these Requests within 49 days of this response.<br>As to subparts C and E, Defendants will produce relevant, non-privileged documents called for by these Requests within 49 days of this response." | |
| **RFP No. 16:** Documents sufficient to show all costs incurred by any Defendant or any other money paid, due, owed or allegedly due or owed to third parties by any Defendant Concerning (a) the Nexus Immigration Bond Service and (b) the | "Defendants will produce relevant, non-privileged documents called for by this Request within 49 days of this response." | [To Be Inserted By Plaintiffs] |

| | | |
|---|---|---|
| Nexus Immigration Legal Services. The response to this Document Request shall include the cost of any services or products provided by third parties to the Company and the cost of paying any employees or agents. | | |
| **RFP No. 17:** All Communications with Consumers, and all Documents Concerning those Communications (including without limitation any written logs, databases, recordings of telephone calls, text messages, emails, and instant and social media messages), Concerning any of the following topics:<br>   a. how the Nexus Immigration Bond Service works or what it provides to Consumers; and<br>   b. signing up, registering, or enrolling in the Nexus Immigration Bond Service. | "Defendants will produce a statistically significant, random sample of non-privileged documents called for by this Request within 70 days of this response." | [To Be Inserted By Plaintiffs] |
| **RFP No. 20:** All Documents reflecting Consumer complaints or disputes Concerning any Nexus Products and/or Services and all responses to such complaints or disputes. | "Defendants will produce relevant, non-privileged documents called for by this Request within 70 days of this response." | [To Be Inserted By Plaintiffs] |
| **RFP No. 21:** All Documents and Communications Concerning quality assurance or quality control reviews, audits, or assessments undertaken by | "Defendants will produce relevant, non-privileged documents called for by this Request within 49 days of this response." | [To Be Inserted By Plaintiffs] |

| | | |
|---|---|---|
| the Company or any Person Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, including "QA Reports" or any similar Communications. | | |
| **RFP No. 22:** All Documents and Communications Concerning the supervision or auditing of employees or agents of the Company who communicated with or interacted with Consumers. | "Defendants will produce relevant, non-privileged documents called for by this Request within 49 days of this response." | [To Be Inserted By Plaintiffs] |
| **RFP No. 24:** All Documents (including both transcripts and any related videos), in unredacted form, reflecting or containing testimony by any of the Defendants, or any former or current Company employee or agent in any investigation, lawsuit or arbitration to which the any of the Defendants was a party Concerning Libre by Nexus, Inc., Nexus Services, Inc., the Individual Defendants, or any Nexus Product and/or Service, including all exhibits and any videos or recordings of such testimony.  The response to this Document Request shall include the following: <br> • From *Vasquez v. Libre by Nexus, Inc.*, Case No. 4:17-cv-00755-CW (N.D. Cal.): <br>     o Deposition of David See | "Defendants will produce relevant, non-privileged documents called for by this Request within 70 days of this response." | [To Be Inserted By Plaintiffs] |

| | | |
|---|---|---|
| • From *RLI Ins. Co. v. Nexus Services, Inc.*, No. Case 5:18-cv-00066-MFU-JCH (W.D. Va.):<br>    ○ Deposition of Richard Moore (both parts)<br>    ○ Deposition of Tim Okonski<br>    ○ Deposition of Micheal Donovan<br>    ○ Deposition of Micheal Donovan under Federal Rule of Civil Procedure 30(b)(6)<br>    ○ Deposition of Erik Schneider<br>    ○ Deposition of Erik Schneider and Tim Okonski under Federal Rule of Civil Procedure 30(b)(6) | | |
| **RFP No. 25:** All Documents Concerning any governmental or regulatory licenses sought or held by the Company. | "Defendants will produce relevant, non-privileged documents called for by this Request within 49 days of this response." | [To Be Inserted By Plaintiffs] |
| **RFP No. 26:** Documents and Communications sufficient to show the substantive and temporal scope of all litigation holds and/or document preservation policies and procedures implemented by the Company to preserve Documents and information, | "The information sought by this Request is not relevant to any of Plaintiffs' claims in this Action, and also seeks documents that constitutes attorney-work product, attorney-client communications and information related to actions taken at the | [To Be Inserted By Plaintiffs] |

| | | |
|---|---|---|
| including those taken in response to this Action or in response to any of the Plaintiffs' Subpoenas or Civil Investigative Demands. | direction of counsel. This Request therefore seeks information wholly outside the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1)." | |
| **RFP No. 28:** All Documents showing any Defendants' insurance coverage, including insurance policies, umbrella coverage, excess liability coverage, directors and officers coverage, errors and omissions coverage, funding agreements, side agreements, and notices sent by any Defendant to any insurer Concerning this Action, Plaintiffs' investigations, or other investigations or lawsuits and their responses. | "Defendants will produce relevant, non-privileged documents called for by this Request within 49 days of this response." | [To Be Inserted By Plaintiffs] |

*Individual Defendant RFPs*

| Requests for Production: | Defendants' Response: | Plaintiffs' Position: |
|---|---|---|
| **RFP No. 3:** Documents sufficient to show the following:<br>  a.  every position, office, role, or title that You have held with Nexus, Libre, Nexus-Affiliated Entities, or with any Entity Concerning immigration bonds or immigration legal services; | "The information sought by this Request is wholly irrelevant to Plaintiffs' claims in this case, and is therefore outside the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1)." | [To Be Inserted By Plaintiffs] |

| b. the dates during which You held each such position, office, role, or title;<br>c. the responsibilities that You had in each such position, office, role or title; and<br>d. Your compensation for each such position, office, role or title. | | |
|---|---|---|
| **RFP No. 5:** All contracts or agreements (whether written or oral) between You and any of the other Defendants Concerning the following:<br>a. Libre, Nexus, or Nexus-Affiliated Entities;<br>b. any Nexus Product and/or Service; or<br>c. any monies or assets related thereto. | "The information sought by this Request is wholly irrelevant to Plaintiffs' claims in this case, and is therefore outside the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1)." | [To Be Inserted By Plaintiffs] |
| **RFP No. 6:** Documents sufficient to show payment, compensation, or any other transfers of property, assets, or monies, from any Defendant to You; the assumption, guarantee, or payment of any liability by any Defendant on Your behalf; or Your assumption, guarantee, or payment of any liability of any other Defendant. | "The information sought by this Request is wholly irrelevant to Plaintiffs' claims in this case, and is therefore outside the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1)." | [To Be Inserted By Plaintiffs] |
| **RFP No. 8:** Documents and Communications sufficient to show Your financial condition from January 1, 2016 to the present, including bank | "The information sought by this Request is wholly irrelevant to Plaintiffs' claims in this case, and is therefore outside the scope of | [To Be Inserted By Plaintiffs] |

14

| | | |
|---|---|---|
| accounts which You own, have signing rights to, or are the beneficiary of; records reflecting income; and tax returns (if the information in tax returns is not available in other Documents). | permissible discovery under Federal Rule of Civil Procedure 26(b)(1)." | |

## Defendants' Position

[To Be Inserted By Defendants]

## Plaintiffs' Rule 37 Certification

[To Be Inserted By Plaintiffs]

# EXHIBIT 21

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU; COMMONWEALTH OF MASSACHUSETTS; THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York; and COMMONWEALTH OF VIRGINIA, *EX REL*. MARK R. HERRING, ATTORNEY GENERAL,<br><br>        Plaintiffs,<br><br>    v.<br><br>NEXUS SERVICES, INC.; LIBRE BY NEXUS, INC.; MICHEAL DONOVAN; RICHARD MOORE; and EVAN AJIN,<br><br>        Defendants. | Case No.: 5:21-cv-00016 |

## **DEFENDANTS' INITIAL DISCLOSURES**

Pursuant to Federal Rule of Civil Procedure 26(a)(1), Defendants Nexus Services, Inc., Libre by Nexus, Inc., Micheal Donovan, Richard Moore, and Evan Ajin make the following Initial Disclosures. These Initial Disclosures are made based upon information reasonably available to Defendants at this time. Defendants reserve the right at any time to revise, correct, supplement or clarify these Initial Disclosures consistent with Federal Rule of Civil Procedure 26(e). Defendants hereby expressly reserve all objections to the use for any purpose of these Initial Disclosures or any of the information and documents referenced herein, including objections based on relevance, materiality, admissibility, or privilege.

1

## <u>INITIAL DISCLOSURES</u>

**A. Disclosures under Federal Rule of Civil Procedure 26(a)(1)(A)(i):**

1. Micheal Donovan, 47 S. Windsong Ct., Fishersville, VA 22939.

2. Richard Moore, 47 S. Windsong Ct., Fishersville, VA 22939.

3. Evan Ajin, 30 S. Windsong Ct., Fishersville, VA 22939.

4. Nexus Services, Inc.

5. Libre by Nexus, Inc.

6. Hai Binh Nguyen

7. Donald R. Gordon

8. Jeffrey Paul Ehrlich

9. Massachusetts Attorney General's Office

10. New York Attorney General's Office

11. Letitia James

12. Virginia Attorney General's Office

13. Mark R. Herring

14. The Legal Aid Justice Center, 1000 Preston Ave # A, Charlottesville, VA 22903

15. James H. Boykin, 1775 I Street, NW, Washington DC 20006

16. Simon Y. Sandoval-Moshenberg, 1000 Preston Avenue, Charlottesville, VA 22903

17. David Briggman

18. Vivian Katsantonis

19. Former Nexus Client referred to as M.H. in a CFPB Affidavit dated 10/12/17, Hillsborough, Florida

Defendants' identification of individuals pursuant to Rule 26(a)(1)(A)(i) is not

intended to preclude Defendants from obtaining discovery of individuals not presently identified. Defendants incorporate all individuals identified by all other parties into Defendants' Initial Disclosures.

**B.  Disclosures under Federal Rule of Civil Procedure 26(a)(1)(A)(ii):**

Defendants have no documents, electronically stored information, and tangible thingsin their possession, custody, or control at this time.

**C.  Disclosures Under Federal Rule of Civil Procedure 26(a)(1)(A)(iii):**

Defendants have no computation of damages at this time.

**D.  Disclosures Under Federal Rule of Civil Procedure 26(a)(1)(A)(iv):**

Not applicable.

Dated: July 22, 2021

/s/ JOHN M SHOREMAN
John M. Shoreman

McFadden & Shoreman
1050 Connecticut Avenue, NW, Suite 500
Washington, DC 20036
jmshoreman@verizon.net

/s/ MARIO B WILLIAMS
Mario Bernard Williams

NDH LLC
44 Broad Street, NW, Suite 200
Atlanta GA 30303
(404) 254-0442
mwilliams@ndh-law.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 22, 2021, I served the foregoing Plaintiffs' Initial Disclosures by email upon counsel of record in this action:

*Attorneys for the Consumer Financial Protection Bureau*

Cara M. Petersen
   *Acting Enforcement Director*
Jeffrey Paul Ehrlich
   *Deputy Enforcement Director*
Kara K. Miller
   *Assistant Litigation Deputy*

**Hai Binh T. Nguyen**
California Bar Number: 313503

Donald R. Gordon
District of Columbia Bar Number: 482384
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Telephone (Nguyen): (202) 435-7251
Telephone (Gordon): (212) 328-7011
Fax: (703) 642-4585
Email: haibinh.nguyen@cfpb.gov
Email: donald.gordon@cfpb.gov

*Attorneys for the Commonwealth of Virginia, ex rel.
Mark R. Herring, Attorney General*

Mark R. Herring
   *Attorney General*
Erin B. Ashwell
   *Chief Deputy Attorney General*
Samuel T. Towell
   *Deputy Attorney General*
Richard S. Schweiker, Jr.
   *Chief and Senior Assistant Attorney General*

**David B. Irvin**
Virginia Bar Number: 23927
Unit Manager and Senior Assistant Attorney General
Erin E. Witte
Virginia Bar Number: 81096

4

Stephen J. Sovinsky
Virginia Bar Number: 85637
Assistant Attorneys General
Office of the Attorney General
Consumer Protection Section
202 North Ninth Street
Richmond, VA 23219
Telephone (Irvin): (804) 786-4047
Telephone (Witte): (703) 359-6716
Telephone (Sovinsky): (804) 823-6341
Fax: (804) 786-0122
Email: dirvin@oag.state.va.us
Email: ewitte@oag.state.va.us
Email: ssovinsky@oag.state.va.us


*Attorneys for the Commonwealth of Massachusetts*

Maura Healy
    *Attorney General*

**Jon Burke**
Massachusetts Bar Number: 673472
Assistant Attorney General
Office of the Attorney General
10 Mechanic Street
Worcester, MA 01608
Telephone: (774) 214-4416
Email: Jonathan.burke@mass.gov


*Attorneys for the People of the State of New York*

LETITIA JAMES
    *Attorney General*
Jane Azia (New York Bar Number: 1539600)
    *Bureau Chief for the Bureau of Consumer Frauds and*
    *Protection*
Laura Levine (New York Bar Number: 2337368)
    *Deputy Bureau Chief for the Bureau of Consumer*
    *Frauds and Protection*

**Joseph P. Mueller**
New York Bar Number: 5079389
Stewart Dearing
New York Bar Number: 5108444
Assistant Attorneys General
Office of the Attorney General
28 Liberty Street

New York, NY 10005
Telephone (Mueller): (212) 416-8321
Telephone (Dearing): (212) 416-8320
Fax: (212) 416-6003
Email: Joseph.Mueller@ag.ny.gov
Email: Stewart.Dearing@ag.ny.gov

**Hai Binh T. Nguyen**
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Telephone: (202) 435-7251
Fax: (703) 642-4585
Email: haibinh.nguyen@cfpb.gov

Respectfully submitted this 22nd day of July 2021,

Mario Bernard Williams
NDH LLC
44 Broad Street, NW, Suite 200
Atlanta GA 30303
mwilliams@ndh-law.com

6

# EXHIBIT 22

| From: | Bowser, Adam |
|---|---|
| To: | Dearing, Stewart; Bayles, David; Lee, Jenny |
| Cc: | Mueller, Joseph; Azia, Jane; Levine, Laura; Nguyen, Hai Binh (CFPB); Gordon, Donald (CFPB); Witte, Erin E.; Irvin, David; Burke, Jonathan (AGO) |
| Subject: | RE: CFPB v. Nexus Services - Plaintiffs Counterproposal on Search Terms and Custodians |
| Date: | Monday, February 07, 2022 1:55:39 PM |
| Attachments: | image002.png |
| | image003.png |
| | Response to Plaintiffs" ESI Counterproposal.pdf |

**CAUTION:** This email originated from a non-government domain. DO NOT click links or open attachments unless you recognize and/or trust the sender. Contact Cybersecurity Incident Response Team (CSIRT) at 202-435-7200 or report a suspicious email.

Counsel,

We have analyzed your counterproposal in depth and prepared the attached spreadsheet in response. As you'll see, we have agreed to include numerous supplemental custodians identified in your counterproposal (which are highlighted for ease of reference). There are, however, many Nexus employees and/or positions that have no relevance to a particular request, as we also explain in the attached spreadsheet for each identified individual and title, and as they relate to each particular request. We will make ourselves available to meet and confer after you've had a chance to review the attached, if the accompanying explanations do not suffice to show why particular custodians proposed by Plaintiffs are not relevant.

For the avoidance of doubt, and consistent with the ESI Order, Defendants are reserving the right to challenge particular search terms contained in your counterproposal based on the amount of false positives a particular search term may create. But it seemed logical to us to first agree on the proper custodians so we are not running unnecessary search term hit reports on employees who have no relevant involvement related to a particular request, and all the extra costs that would entail.

Finally, we would also like to meet and confer concerning Plaintiffs' response to our proposed revisions to the Protective Order. Respectfully, we were frankly puzzled by Plaintiffs' terse response – i.e., "Defendants have no legal basis to redact or withhold relevant information about consumers" – given that our proposed revisions do not in any way relate to redactions or withholding documents. On the contrary, our revisions are designed to *facilitate* the production of documents *without redactions* for use *in this case.* The additional protections we are seeking relate to how information related to vulnerable immigrants can potentially be used against these third parties *outside of this case* – particularly by immigration authorities – without their knowledge, consent, or ability to challenge the further disclosure of their personal information. Put differently, what we are seeking through our proposed revisions are simple due process protections for vulnerable third parties *if* any Plaintiff intends to share information about an immigrant with other agencies for purposes outside of this case.

At bottom, since there appears to be a fundamental misunderstanding of the changes we are proposing, we would like to discuss our proposed revisions with your further.

Regards,
Adam



**Adam Bowser**
PARTNER | ARENT FOX LLP

adam.bowser@arentfox.com | 202.857.6126 **DIRECT**
Bio | LinkedIn | Subscribe
1717 K Street NW, Washington, DC 20006

**Smarter Service.** On March 1, we will become ArentFox Schiff. [Learn More](#)

---

**From:** Dearing, Stewart <Stewart.Dearing@ag.ny.gov>
**Sent:** Monday, January 24, 2022 11:48 AM
**To:** Bayles, David <David.Bayles@arentfox.com>; Bowser, Adam <Adam.Bowser@arentfox.com>; Lee, Jenny <Jenny.Lee@arentfox.com>
**Cc:** Mueller, Joseph <Joseph.Mueller@ag.ny.gov>; Azia, Jane <Jane.Azia@ag.ny.gov>; Levine, Laura <Laura.Levine@ag.ny.gov>; Nguyen, Hai Binh (CFPB) <HaiBinh.Nguyen@cfpb.gov>; Gordon, Donald (CFPB) <Donald.Gordon@cfpb.gov>; Witte, Erin E. <EWitte@oag.state.va.us>; Irvin, David <dirvin@oag.state.va.us>; Burke, Jonathan (AGO) <jonathan.burke@state.ma.us>
**Subject:** CFPB v. Nexus Services - Plaintiffs Counterproposal on Search Terms and Custodians

Counsel,

Please see attached Plaintiffs' counterproposal on search terms and custodians for ESI responsive to Plaintiffs' June 9, 2021 document requests issued to Libre by Nexus, Inc. and Nexus Services, Inc.

Best,

Stewart

**Stewart C. Dearing | Assistant Attorney General**
Bureau of Consumer Frauds and Protection
Office of the New York State Attorney General
28 Liberty Street, New York, NY 10005
☎ 212-416-8320 | 📠 212-416-6003
✉ [Stewart.Dearing@ag.ny.gov](mailto:Stewart.Dearing@ag.ny.gov)
[http://www.ag.ny.gov/bureau/consumer-frauds-bureau](http://www.ag.ny.gov/bureau/consumer-frauds-bureau)



**IMPORTANT NOTICE:** This e-mail, including any attachments, may be confidential, privileged or otherwise legally protected. It is intended only for the addressee. If you received this e-mail in error or from someone who was not authorized to send it to you, do not disseminate, copy or otherwise use this e-mail or its attachments. Please notify the sender immediately by reply e-mail and delete the e-mail from your system.

---

CONFIDENTIALITY NOTICE: This e-mail and any attachments are for the exclusive and confidential use of the intended recipient. If you received this in error, please do not read, distribute, or take action in reliance upon this message. Instead, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by  he transmission of this message.

**Request 4**

Documents sufficient to show how the Company determined compensation of its employees or agents who interacted or communicated with Consumers Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, including Documents describing or setting forth any sales incentive program or commissions.

| Name | Job Title | Job Description | Relevance to Request |
|---|---|---|---|
| Micheal Donovan | CEO | Senior executive management. | May possess potentially responsive information. |
| Richard Moore | Executive VP | Senior executive management. | May possess potentially responsive information. |
| Evan Ajin | VP of Operations | Senior executive management. | May possess potentially responsive information. |
| David See | COO | Senior executive management. | May possess potentially responsive information. |
| Alisa Wilson | COO | COO of the Entertainment division, she acted as an event coordinator for internal company events such as all staff meetings. She supervised no employees and had no control over anyone else's compensation. | Not relevant. No authority to determine anyone else's compensation or incentives. |
| Eddie Noel Nieves Garcia | Call Center Manager | Call Center Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. No authority to determine anyone else's compensation or incentives. |
| Edwin Adorno Liddy | Call Center Manager | Call Center Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. No authority to determine anyone else's compensation or incentives. |
| Johana Ballesteros Paez | Call Center Manager | Call Center Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. No authority to determine anyone else's compensation or incentives. |

| Raymond Rivera | Call Center Manager | Call Center Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. No authority to determine anyone else's compensation or incentives. |
|---|---|---|---|
| Robert Belle | Call Center Manager | Call Center Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. No authority to determine anyone else's compensation or incentives. |
| Samantha Cushman | Call Center Supervisor | Call Center Supervisors were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. No authority to determine anyone else's compensation or incentives. |
| Summer Cruz | Call Center Supervisor | Call Center Supervisors were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. No authority to determine anyone else's compensation or incentives. |
| Gordon Turner | Caridades | Not an entity of ours. No internal documents determining Caridades employees roles. | Not relevant. No Caridades employee had any authority, control, or input into Libre's compensation system. |
| Mohsen Ansari | Central Regional Director | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. No regional manager had any authority, control, or input into Libre's compensation system. |

| Richard Miniter | CEO | This individual was never CEO of Libre; he served mainly as a PR consultant. | Not relevant. Had no authority, control, or input into Libre's compensation system. |
|---|---|---|---|
| Gregory Solsrud | CFO | Finance issues related to banks, payments, financial systems and reporting. | Not relevant. Had no authority, control, or input into Libre's compensation system. |
| Rebecca Wells | CFO | Finance issues related to banks, payments, financial systems and reporting. | Not relevant. Had no authority, control, or input into Libre's compensation system. |
| Tim Okonski | CFO | Finance issues related to banks, payments, financial systems and reporting. | Not relevant. Had no authority, control, or input into Libre's compensation system. |
| Glenda Oquendo-Marrero | Collections Manager | Collections Managers served the same role as Call Center Supervisors, above, but only dealt with outbound calls. | Not relevant. No authority to determine anyone else's compensation or incentives. |
| Jovanahilit Correa | Corporate Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. No regional manager had any authority, control, or input into Libre's compensation system. |
| Liliana Chavez | Corporate Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. No regional manager had any authority, control, or input into Libre's compensation system. |
| Alonso Sandra | Customer Service Manager | These are front line call center employees making and receiving inbound and outbound calls with program participants. They update the CRM with client contacts. They conduct payment transactions. They update relevant forms. They escalate issues to supervisors if needed. | Not relevant. These are entry level staff with no authority, control, or input into Libre's compensation system. |

| | | | |
|---|---|---|---|
| Abigail Campana | Customer Service Manager | These are front line call center employees making and receiving inbound and outbound calls with program participants. They update the CRM with client contacts. They conduct payment transactions. They update relevant forms. They escalate issues to supervisors if needed. | Not relevant. These are entry level staff with no authority, control, or input into Libre's compensation system. |
| Maria De Santiago Casiano | Customer Service Manager | These are front line call center employees making and receiving inbound and outbound calls with program participants. They update the CRM with client contacts. They conduct payment transactions. They update relevant forms. They escalate issues to supervisors if needed. | Not relevant. These are entry level staff with no authority, control, or input into Libre's compensation system. |
| Kerry J. DeLeon | Customer Service Manager | These are front line call center employees making and receiving inbound and outbound calls with program participants. They update the CRM with client contacts. They conduct payment transactions. They update relevant forms. They escalate issues to supervisors if needed. | Not relevant. These are entry level staff with no authority, control, or input into Libre's compensation system. |
| Darlin Santamaria | Customer Service Manager | These are front line call center employees making and receiving inbound and outbound calls with program participants. They update the CRM with client contacts. They conduct payment transactions. They update relevant forms. They escalate issues to supervisors if needed. | Not relevant. These are entry level staff with no authority, control, or input into Libre's compensation system. |
| Gustavo Murillo | Customer Service Manager | These are front line call center employees making and receiving inbound and outbound calls with program participants. They update the CRM with client contacts. They conduct payment transactions. They update relevant forms. They escalate issues to supervisors if needed. | Not relevant. These are entry level staff with no authority, control, or input into Libre's compensation system. |

| James G.A. Walker | Director of Call Center Operations | This position is the same as a Call Center Supervisor. He was responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. No authority to determine anyone else's compensation or incentives. |
|---|---|---|---|
| Chad Sager | Director of Human Resources | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. No authority to determine anyone else's compensation or incentives. |
| Lisa Breeden | Director of Human Resources | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. No authority to determine anyone else's compensation or incentives. |
| Nathalie Duda | Director of Human Resources | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. No authority to determine anyone else's compensation or incentives. |
| Vincent Munoz | Director of Investigations | Director of Investigations oversees front line investigators who look into participants who fail to show up for court, have lost contact with Libre, or need to be checked on for general welfare. Investigators also look into notario fraud agains our program participants and submit reports to law enforcement. | Not relevant. No authority to determine anyone else's compensation or incentives. |
| Jenny Cadena-Castillo | Director of Operations | It is possible that this position could have offered or participated in the decision to offer bonuses at one time or another to Libre staff. | Not relevant. No authority to determine anyone else's compensation or incentives. |
| Nina Erlandson | Director of Operations | It is possible that this individual could have offered or participated in the decision to offer bonuses at one time or another to Libre staff. | May possess potentially responsive information. |

| Raul Sanchez | Director of Operations | This individual engaged in the operational side of Libre, and did not have any involvement in determining employee compensation. | Not relevant. No authority to determine anyone else's compensation or incentives. |
|---|---|---|---|
| Carol Taylor | Director of Risk Management | This individual engaged in the operational side of Libre, and did not have any involvement in determining employee compensation. | Not relevant. No authority to determine anyone else's compensation or incentives. |
| Julian Leyva | Director of Risk Management | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. No authority to determine anyone else's compensation or incentives. |
| Richard Reigenborn | Director of Risk Management | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. No authority to determine anyone else's compensation or incentives. |
| Terry Johnson | Director of Serve/Empower | This position supervised all employees of Serve, which was Libre's criminal bonding program. | Not relevant. The Director of Serve had no authority, control, or input into the compensation of Serve employees. |
| Robin Fife | Director of Support Services | It is possible that this position could have offered or participated in the decision to offer bonuses at one time or another to Libre staff. | May possess potentially responsive information. |
| Rodolfo Prieto | East Coast Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. No regional manager had any authority, control, or input into Libre's compensation system. |
| Wendy Cruz Montalvan | East Coast Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. No regional manager had any authority, control, or input into Libre's compensation system. |

| Edward DeLeon | Risk East Coast Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. No regional manager had any authority, control, or input into Libre's compensation system. |
|---|---|---|---|
| Heather Munzner | Finance | Finance issues related to banks, payments, financial systems and reporting. | Not relevant. Had no authority, control, or input into Libre's compensation system. |
| Elizabeth Hurst | Finance Manager | Finance issues related to banks, payments, financial systems and reporting. | Not relevant. Had no authority, control, or input into Libre's compensation system. |
| Wanda Barnes | Finance Manager | Finance issues related to banks, payments, financial systems and reporting. | Not relevant. Had no authority, control, or input into Libre's compensation system. |
| Janine Saldivar | HR Administrator | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. No authority to determine anyone else's compensation or incentives. |
| Martha Pulido | HR Administrator | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. No authority to determine anyone else's compensation or incentives. |
| Jesus Fernandez | HR Generalist | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. No authority to determine anyone else's compensation or incentives. |
| Joel Wells | HR Generalist | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. No authority to determine anyone else's compensation or incentives. |
| Tina M. Landes | HR Generalist | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. No authority to determine anyone else's compensation or incentives. |

| Raquel Hernandez | HR Manager | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. No authority to determine anyone else's compensation or incentives. |
|---|---|---|---|
| Andrew Singer | Legal Assistant/ Non-Attorney Director of Legal Operations | This position coordinates with and assists Nexus's general counsel and outside attorneys. It does not supervise any other employees and has no say on compensation. | Not relevant. No authority to determine anyone else's compensation or incentives. |
| Kathryn Shoreman | Legal Support Manager | This position coordinates with and assists Nexus's general counsel and outside attorneys. It does not supervise any other employees and has no say on compensation. | Not relevant. No authority to determine anyone else's compensation or incentives. |
| Hiram Castillo | Loss Prevention Manager | This is.a position within the Risk department that focuses on GPS issues, especially their collection and return to the vendor, and otherwise assists the Director of Risk Management. | Not relevant. No authority to determine anyone else's compensation or incentives. |
| Beatriz Aleman | National Recruiter | This position assists in the process of locating candidates for job openings and assists in the interview and hiring process. This position has no say over compensation of such employees. | Not relevant. No authority to determine anyone else's compensation or incentives. |
| Ivan Panisse Negron | National Recruiter | This position assists in the process of locating candidates for job openings and assists in the interview and hiring process. This position has no say over compensation of such employees. | Not relevant. No authority to determine anyone else's compensation or incentives. |
| Andrew Jones | National Recruiting Manager | This position assists in the process of locating candidates for job openings and assists in the interview and hiring process. This position has no say over compensation of such employees. | Not relevant. No authority to determine anyone else's compensation or incentives. |
| Jordan S. Escobedo Diaz | National Training Manager | This position conducts employee training. | Not relevant. No authority to determine anyone else's compensation or incentives. |
| Maria Ortiz Garcia | National Training Manager | This position conducts employee training. | Not relevant. No authority to determine anyone else's compensation or incentives. |

| Adam Donovan | Operations | This is a general purpose role encompassing administrative assistant duties. | Not relevant. No authority to determine anyone else's compensation or incentives. |
|---|---|---|---|
| Jennifer Turner | Operations | This is a general purpose role encompassing administrative assistant duties. | Not relevant. No authority to determine anyone else's compensation or incentives. |
| Stephanie Cash | Payroll & Benefits Manager | This position addresses employment issues realted to payroll but is not authorized to set salaries or bonuses. They maintain the paperwork, employee files, and other HR tasks. | Not relevant. No authority to determine anyone else's compensation or incentives. |
| Matthew P. Gira | Recruiting Manager | This position assists in the process of locating candidates for job openings and assists in the interview and hiring process. This position has no say over compensation of such employees. | Not relevant. No authority to determine anyone else's compensation or incentives. |
| Sergio Anselmo | Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. No regional manager had any authority, control, or input into Libre's compensation system. |
| Cesar Henriquez | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. No regional manager had any authority, control, or input into Libre's compensation system. |
| Cristina Velez Santos | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. No regional manager had any authority, control, or input into Libre's compensation system. |

| Danny Hart | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. No regional manager had any authority, control, or input into Libre's compensation system. |
|---|---|---|---|
| Ernie Correa | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. No regional manager had any authority, control, or input into Libre's compensation system. |
| Francis Hernandez | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. No regional manager had any authority, control, or input into Libre's compensation system. |
| Luis Angel Aspeitia | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. No regional manager had any authority, control, or input into Libre's compensation system. |
| Gilberto Cantu | Risk Mgmt. Central Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. No regional manager had any authority, control, or input into Libre's compensation system. |
| Tawana Washington | Senior Finance Manager | Finance issues related to banks, payments, financial systems and reporting. | Not relevant. Had no authority, control, or input into Libre's compensation system. |
| Erik Schneider | VP of Risk Management | It is possible that this position could have offered or participated in the decision to offer bonuses at one time or another to Libre staff. | May possess potentially responsive information. |

| Tim Shipe | VP of Support Services | It is possible that this position could have offered or participated in the decision to offer bonuses at one time or another to Libre staff. | May possess potentially responsive information. |
| Marco Orellana | West Coast Regional Risk | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. No regional manager had any authority, control, or input into Libre's compensation system. |
| Ana Bonilla | West Region Director | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. No regional manager had any authority, control, or input into Libre's compensation system. |

**Request 6**

All Documents and Communications Concerning all advertising, marketing, or promotional material Concerning any Nexus Products and/or Services, including materials for television, internet, social media, in-person or experiential marketing, and printed materials.

| Name | Job Title | Job Description | Relevance to Request |
|---|---|---|---|
| Bret Sternberg | Artist Developer Creative Director | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| John Zane | Assistant Editor | Breaking Through is a locally focused publisher of progressive news stories. It was funded by Nexus but did not engage in advertising, marketing, or promoting the Defendants' immigration business. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Elaine Rackley | Breaking Through | Breaking Through is a locally focused publisher of progressive news stories. It was funded by Nexus but did not engage in advertising, marketing, or promoting the Defendants' immigration business. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |

| Theodore Whitelow | Breaking Through | Breaking Through is a locally focused publisher of progressive news stories. It was funded by Nexus but did not engage in advertising, marketing, or promoting the Defendants' immigration business. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
|---|---|---|---|
| Pierre Loza | Breaking Through | Breaking Through is a locally focused publisher of progressive news stories. It was funded by Nexus but did not engage in advertising, marketing, or promoting the Defendants' immigration business. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Eddie Noel Nieves Garcia | Call Center Manager | Call Center Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Edwin Adorno Liddy | Call Center Manager | Call Center Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Johana Ballesteros Paez | Call Center Manager | Call Center Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |

| Raymond Rivera | Call Center Manager | Call Center Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
|---|---|---|---|
| Robert Belle | Call Center Manager | Call Center Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Samantha Cushman | Call Center Supervisor | Call Center Supervisors were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Summer Cruz | Call Center Supervisor | Call Center Supervisors were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Richard Miniter | CEO | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Alisa Wilson | COO | COO of the Entertainment division, she acted as an event coordinator for internal company events such as all staff meetings. She supervised no employees and had no control over anyone else's compensation. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |

| Anthony Darcus | Community Service Ambassador | This position comprised former Serve clients (the formerly incarcerated on criminal charges). They performed outreach in the community to educate people on criminal justice issues and attempted to reduce recidivism. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
|---|---|---|---|
| Jeffrey Mongold | Community Service Ambassador | This position comprised former Serve clients (the formerly incarcerated on criminal charges). They performed outreach in the community to educate people on criminal justice issues and attempted to reduce recidivism. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Lance Brooks | Community Service Ambassador | This position comprised former Serve clients (the formerly incarcerated on criminal charges). They performed outreach in the community to educate people on criminal justice issues and attempted to reduce recidivism. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Shan Baber | Community Service Ambassador | This position comprised former Serve clients (the formerly incarcerated on criminal charges). They performed outreach in the community to educate people on criminal justice issues and attempted to reduce recidivism. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Jennifer Vangorder | Community Service Ambassador | This position comprised former Serve clients (the formerly incarcerated on criminal charges). They performed outreach in the community to educate people on criminal justice issues and attempted to reduce recidivism. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Alonso Sandra | Customer Service Manager | This position was front line call center workers. They engaged in inbound and outbound calls with program participants, updated CRM re such communications, engaged in payment transactions. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Abigail Campana | Customer Service Manager | This position was front line call center workers. They engaged in inbound and outbound calls with program participants, updated CRM re such communications, engaged in payment transactions. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |

| Maria De Santiago Casiano | Customer Service Manager | This position was front line call center workers. They engaged in inbound and outbound calls with program participants, updated CRM re such communications, engaged in payment transactions. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
|---|---|---|---|
| Kerry J. DeLeon | Customer Service Manager | This position was front line call center workers. They engaged in inbound and outbound calls with program participants, updated CRM re such communications, engaged in payment transactions. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Darlin Santamaria | Customer Service Manager | This position was front line call center workers. They engaged in inbound and outbound calls with program participants, updated CRM re such communications, engaged in payment transactions. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Gustavo Murillo | Customer Service Manager | This position was front line call center workers. They engaged in inbound and outbound calls with program participants, updated CRM re such communications, engaged in payment transactions. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Juan Barragan | Digital Media Director | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| David Briggman | Director | Mr. Briggman was expected to perform a variety of Risk related activities, including facilitating GPS units, ensuring adequate supply, returned units, issues in the field with units, and other ad hoc Risk activities. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Giancarlo Sopo | Director of Communications | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Jenny Cadena-Castillo | Director of Operations | This position engaged in the operational side of Libre. It had no role in advertising or PR. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Raul Sanchez | Director of Operations | This position engaged in the operational side of Libre. It had no role in advertising or PR. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |

| Cindy Carr | Director of Pastoral Services | Self-explanatory. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
|---|---|---|---|
| Jennifer Little | Director of Public Relations | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Terry Johnson | Director of Serve/Empower | This position supervised all employees of Serve, which was Libre's criminal bonding program. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Robin Fife | Director of Support Services | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Edward DeLeon | East Coast Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Rodolfo Prieto | East Coast Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Wendy Cruz Montalvan | East Coast Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Alex Martinez | IT | Computer and network issues. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Eric Billings | IT | Computer and network issues. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Andrew Untiedt | IT | Computer and network issues. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Chelsea Noel | IT | Computer and network issues. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Nicholas Argiro | IT | Computer and network issues. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |

| Glenda Oquendo-Marrero | Manager of Call Center Operations | Call Center Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
|---|---|---|---|
| Johana Ballesteros Paez | Manager of Call Center Operations | Call Center Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Ivan Panisse Negron | National Recruiter | This position assists in the process of locating candidates for job openings and assists in the interview and hiring process. This position has no say over compensation of such employees. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Andrew Jones | National Recruiting Manager | This position assists in the process of locating candidates for job openings and assists in the interview and hiring process. This position has no say over compensation of such employees. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Beatriz Aleman | National Recruiting Manager | This position assists in the process of locating candidates for job openings and assists in the interview and hiring process. This position has no say over compensation of such employees. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Tim Okonski | New Business Development | Mr. Okanski engaged in finance issues related to banks, payments, financial systems and reporting, and subsequently seeks out new lines of potential business. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Berta Campos | Nexus Spokesperson | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |

| Andrew Singer | Legal Assistant/ Non-Attorney Director of Legal Operations | This position coordinates with and assists Nexus's general counsel and outside attorneys. It does not supervise any other employees and has no say on compensation. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
|---|---|---|---|
| Kathryn Shoreman | Legal Support Manager | This position coordinates with and assists Nexus's general counsel and outside attorneys. It does not supervise any other employees and has no say on compensation. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Timothy Smith | Online Sales Rep | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Adam Donovan | Operations | This is a general purpose role encompassing administrative assistant duties. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Jennifer Turner | Operations | This is a general purpose role encompassing administrative assistant duties. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Karl Magenhofer | Producer - Breaking Through | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Mark Horace Jamse | Public Advocacy Assistant | This position engaged in lobbying and advocacy for criminal justice and immigration issues generally. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| King Salim Khalfani | Public Advocacy Director | This position engaged in lobbying and advocacy for criminal justice and immigration issues generally. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Anthony Anderson | Public Advocacy Manager | This position engaged in lobbying and advocacy for criminal justice and immigration issues generally. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Brice Estes | Public Relations | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Matthew P. Gira | Recruiting Manager | This position assists in the process of locating candidates for job openings and assists in the interview and hiring process. This position has no say over compensation of such employees. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |

| Sergio Anselmo | Regional Manager/Call Center Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| --- | --- | --- | --- |
| Aaron White | Sales Associate | This position is associated with the RepMe App, not in the advertising, marketing, or promoting of the Defendants' immigration business | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Alex Lear | Sales Associate | This position is associated with the RepMe App, not in the advertising, marketing, or promoting of the Defendants' immigration business | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Bane High | Sales Associate | This position is associated with the RepMe App, not in the advertising, marketing, or promoting of the Defendants' immigration business | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Hersey Lane | Sales Associate | This position is associated with the RepMe App, not in the advertising, marketing, or promoting of the Defendants' immigration business | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Joshua Roberts | Sales Associate | This position is associated with the RepMe App, not in the advertising, marketing, or promoting of the Defendants' immigration business | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Robert Jarrell | Sales Associate | This position is associated with the RepMe App, not in the advertising, marketing, or promoting of the Defendants' immigration business | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Joseph Hammond | Senior Editor | This position was associated with Breaking Through, a locally focused publisher of progressive news stories. It was funded by Nexus but did not engage in advertising, marketing, or promoting the Defendants' immigration business. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |

| Bridget Huhn | Social Media Specialist | This position was associated with Breaking Through, a locally focused publisher of progressive news stories. It was funded by Nexus but did not engage in advertising, marketing, or promoting the Defendants' immigration business. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
|---|---|---|---|
| Donna Salmons | Support Services Operational Assistant | This position engaged in the roles of campus receptionist and various data entry tasks | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Andre Johnson | Vice President of Distribution | This position was associated with Breaking Through, a locally focused publisher of progressive news stories. It was funded by Nexus but did not engage in advertising, marketing, or promoting the Defendants' immigration business. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |
| Erik Schneider | VP of Risk Management | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Ana Bonilla | West Regional Director | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. Position did not engage in advertising, marketing, or promoting the Defendants' business. |

**Request 7**

All Documents constituting or reflecting Company policies, procedures, scripts, talking points, guidance, instructions, and training Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services and all Communications Concerning the development, revision, or implementation of the foregoing.

| Name | Job Title | Job Description | Relevance to Request |
|---|---|---|---|
| Victor Silva Tejeda | Assistant Monitoring Center Supervisor | This position was involved in contacing program participants who had issues with their GPS compliance. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Juliana Gutierrez | Breach Management Attorney | This position drafted immigration appeals. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |

| Eddie Noel Nieves Garcia | Call Center Manager | Call Center Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
|---|---|---|---|
| Edwin Adorno Liddy | Call Center Manager | Call Center Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Johana Ballesteros Paez | Call Center Manager | Call Center Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Raymond Rivera | Call Center Manager | Call Center Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Robert Belle | Call Center Manager | Call Center Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |

| Samantha Cushman | Call Center Supervisor | Call Center Supervisors were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
|---|---|---|---|
| Summer Cruz | Call Center Supervisor | Call Center Supervisors were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Gordon Turner | Caridades | Not an entity of ours. No internal documents determining Caridades employees roles. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Mohsen Ansari | Central Regional Director | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Andrea Arroyo | CEM | This position was front line call center workers. They engaged in inbound and outbound calls with program participants, updated CRM re such communications, engaged in payment transactions. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Richard Miniter | CEO | This individual was never CEO of Libre; he served mainly as a PR consultant. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Tim Okonski | CFO | Finance issues related to banks, payments, financial systems and reporting. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Glenda Oquendo-Marrero | Collections Manager | Finance issues related to banks, payments, financial systems and reporting. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |

| Alisa Wilson | COO | COO of the Entertainment division, she acted as an event coordinator for internal company events such as all staff meetings. She supervised no employees and had no control over anyone else's compensation. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
|---|---|---|---|
| Liliana Chavez | Corporate Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Jovanahilit Correa | Corporate Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Alonso Sandra | Customer Service Manager | These are front line call center employees making and receiving inbound and outbound calls with program participants. They update the CRM with client contacts. They conduct payment transactions. They update relevant forms. They escalate issues to supervisors if needed. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Abigail Campana | Customer Service Manager | These are front line call center employees making and receiving inbound and outbound calls with program participants. They update the CRM with client contacts. They conduct payment transactions. They update relevant forms. They escalate issues to supervisors if needed. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |

| Maria De SantiagoCasiano | Customer Service Manager | These are front line call center employees making and receiving inbound and outbound calls with program participants. They update the CRM with client contacts. They conduct payment transactions. They update relevant forms. They escalate issues to supervisors if needed. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
|---|---|---|---|
| Kerry J. DeLeon | Customer Service Manager | These are front line call center employees making and receiving inbound and outbound calls with program participants. They update the CRM with client contacts. They conduct payment transactions. They update relevant forms. They escalate issues to supervisors if needed. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Darlin Santamaria | Customer Service Manager | These are front line call center employees making and receiving inbound and outbound calls with program participants. They update the CRM with client contacts. They conduct payment transactions. They update relevant forms. They escalate issues to supervisors if needed. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Gustavo Murillo | Customer Service Manager | These are front line call center employees making and receiving inbound and outbound calls with program participants. They update the CRM with client contacts. They conduct payment transactions. They update relevant forms. They escalate issues to supervisors if needed. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| David Briggman | Director | Mr. Briggman was expected to perform a variety of Risk related activities, including facilitating GPS units, ensuring adequate supply, returned units, issues in the field with units, and other ad hoc Risk activities. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |

| James G.A. Walker | Director of Call Center Operations | This position is the same as a Call Center Supervisor. He was responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
|---|---|---|---|
| William E. Norton | Director of Collateral Services | This position worked with Serve to facilitate the bonding of its clients | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Tim Donovan | Director of Facilities | This position oversees the maintenance and repair of facilities. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Chad Sager | Director of Human Resources | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Lisa Breedan | Director of Human Resources | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Nathalie Duda | Director of Human Resources | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Vincent Munoz | Director of Nexus Investigations | Director of Investigations oversees front line investigators who look into participants who fail to show up for court, have lost contact with Libre, or need to be checked on for general welfare. Investigators also look into notario fraud agains our program participants and submit reports to law enforcement. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Jenny Cadena-Castillo | Director of Operations | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |

| Raul Sanchez Jr. | Director of Operations | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
|---|---|---|---|
| Carol Taylor | Director of Risk Management | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Julian Leyva | Director of Risk Management | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Richard Reigenborn | Director of Risk Management | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| T-Ann Johnson | Director of Serve and Empower | This position supervised all employees of Serve, which was Libre's criminal bonding program. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Robin Fife | Director of Support Services | This position assisted the VP of Support Services. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Robin Fife | Director of Support Services | This position assisted the VP of Support Services. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Christopher Wilmore | Director of Wellness Program | This person assisted in employee health and wellness programs. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Rudy Prieto | East Coast Regional Director | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |

| Wendy Cruz Montalvan | East Coast Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
|---|---|---|---|
| Lorisol Rodriguez | HR Administrator | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Janine Saldivar | HR Administrator | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Martha Pulido | HR Administrator | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Tina M. Landes | HR Generalist | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Jesus Fernandez | HR Generalist | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Joel Wells | HR Generalist | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Nicholas Agiro | IT Manager | Computer and Networking issues. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |

| Andrew Singer | Legal Assistant/ Non-Attorney Director of Legal Operations | This position coordinates with and assists Nexus's general counsel and outside attorneys. It does not supervise any other employees and has no say on compensation. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
|---|---|---|---|
| Kathryn Shoreman | Legal Support Manager | This position coordinates with and assists Nexus's general counsel and outside attorneys. It does not supervise any other employees and has no say on compensation. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Juliana Castillo | Libre General Counsel | She oversaw immigration appeals. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Juliana Johnson | Libre General Counsel | She oversaw immigration appeals. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Hiram Castillo | Loss Prevention Manager | This is a position within the Risk department that focuses on GPS issues, especially their collection and return to the vendor, and otherwise assists the Director of Risk Management. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Ivan Panisse Negron | National Recruiter | This position assists in the process of locating candidates for job openings and assists in the interview and hiring process. This position has no say over compensation of such employees. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Andrew Jones | National Recruiting Manager | This position assists in the process of locating candidates for job openings and assists in the interview and hiring process. This position has no say over compensation of such employees. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Beatriz Aleman | National Recruiting Manager | This position assists in the process of locating candidates for job openings and assists in the interview and hiring process. This position has no say over compensation of such employees. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Maria Portillo | National Trainer | Conducts training. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |

| Jordan Escobedo Diaz | National Training Manager | Conducts training. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
|---|---|---|---|
| Maria Ortiz Garcia | National Training Manager | Conducts training. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Adam Donovan | Operations | This is a general purpose role encompassing administrative assistant duties. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Jennifer Turner | Operations | This is a general purpose role encompassing administrative assistant duties. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Maria Morales | Quality Assurance Manager | This position audited procedures for quality assurance | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Mathew Gira | Recruiting Manager | This position assists in the process of locating candidates for job openings and assists in the interview and hiring process. This position has no say over compensation of such employees. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Gabriel Duarte Solis | Rehire- Customer Satisfaction Manager | This position was front line call center workers. They engaged in inbound and outbound calls with program participants, updated CRM re such communications, engaged in payment transactions. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Sergio Anselmo | Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Cesar Henriquez | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |

| Luis Angel Aspeitia | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
|---|---|---|---|
| Ernie Correa | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Danny Hart | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Cesar Henriquez | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Francis Hernandez | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Cristina Velez Santos | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |

| Robert Garcia | Risk Manager | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
|---|---|---|---|
| Edward DeLeon | Risk East Coast Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Gilberto Cantu | Risk Mgmt. Central Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Melanie Cabrera | RM Monitoring Manager | This position was involved in contacing program participants who had issues with their GPS compliance. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Hector Ortiz Cordova | RM Night Shift Supervisor | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Matthew Stoltz | Senior Investigator | This position investigated matters. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Samuel Slayton | Shipping & Receiving Manager | This position managed mailroom operations. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Roger Mathias | STC Training Coordinator | This position conducts employee training. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Cristina Flores | Supervisor-Monitoring Agent Center | This position was involved in contacing program participants who had issues with their GPS compliance. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Michael Song | Support Services | Mr. Song serves as outside General Counsel to Nexus. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |

| Marsha Breeden | Training Manager | This position conducts employee training. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
|---|---|---|---|
| Marco Orellana | West Coast Regional Risk | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |
| Ana Bonilla | West Regional Director | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over policies or procedures nor did it create instructions or training materials around client communications. |

**Request 9**

All Documents and Communications Concerning the creation of, or any proposed or actual revisions, amendments, or changes to any Documents that are responsive to Request No. 8

| Name | Job Title | Job Description | Relevance to Request |
|---|---|---|---|
| Eddie Noel Nieves Garcia | Call Center Manager | Call Center Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. This position did not participate in document revisions or policy |
| Edwin Adorno Liddy | Call Center Manager | Call Center Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. This position did not participate in document revisions or policy |

| Raymond Rivera | Call Center Manager | Call Center Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. This position did not participate in document revisions or policy |
|---|---|---|---|
| Robert Belle | Call Center Manager | Call Center Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. This position did not participate in document revisions or policy |
| Johana Ballesteros Paez | Call Center Manager | Call Center Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. This position did not participate in document revisions or policy |
| Samantha Cushman | Call Center Supervisor | Call Center Supervisors were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. This position did not participate in document revisions or policy |
| Summer Cruz | Call Center Supervisor | Call Center Supervisors were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. This position did not participate in document revisions or policy |

| Gordon Turner | Caridades | Not a Nexus or Libre entity. No internal documents determining Caridades employees roles. | Not relevant. This position did not participate in document revisions or policy |
|---|---|---|---|
| Mohsen Ansari | Central Regional Director | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not participate in document revisions or policy |
| Richard Miniter | CEO | This individual was never CEO of Libre; he served mainly as a PR consultant. | Not relevant. This position did not participate in document revisions or policy |
| Alisa Wilson | COO | COO of the Entertainment division, she acted as an event coordinator for internal company events such as all staff meetings. She supervised no employees and had no control over anyone else's compensation. | Not relevant. This position did not participate in document revisions or policy |
| Jovanahilit Correa | Corporate Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not participate in document revisions or policy |
| Liliana Chavez | Corporate Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not participate in document revisions or policy |
| Abigail Campana | Customer Service Manager | Customer Service Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. This position did not participate in document revisions or policy |

| Alonso Sandra | Customer Service Manager | Customer Service Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. This position did not participate in document revisions or policy |
|---|---|---|---|
| Darlin Santamaria | Customer Service Manager | Customer Service Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. This position did not participate in document revisions or policy |
| Gustavo Murillo | Customer Service Manager | Customer Service Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. This position did not participate in document revisions or policy |
| Kerry J. DeLeon | Customer Service Manager | Customer Service Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. This position did not participate in document revisions or policy |
| Maria De Santiago Casiano | Customer Service Manager | Customer Service Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. This position did not participate in document revisions or policy |

| David Briggman | Director | Mr. Briggman was expected to perform a variety of Risk related activities, including facilitating GPS units, ensuring adequate supply, returned units, issues in the field with units, and other ad hoc Risk activities. | Not relevant. This position did not participate in document revisions or policy |
|---|---|---|---|
| James G.A. Walker | Director of Call Center Operations | This position is the same as a Call Center Supervisor. He was responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. This position did not participate in document revisions or policy |
| William E. Norton | Director of Collateral Services | This position worked with Serve to facilitate the bonding of its clients | Not relevant. This position did not participate in document revisions or policy |
| Giancarlo Sopo | Director of Communications | This position engaged in public messaging for the company. | Not relevant. This position did not participate in document revisions or policy |
| Chad Sager | Director of Human Resources | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. This position did not participate in document revisions or policy |
| Lisa Breedan | Director of Human Resources | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. This position did not participate in document revisions or policy |
| Nathalie Duda | Director of Human Resources | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. This position did not participate in document revisions or policy |

| Vincent Munoz | Director of Nexus Investigations | Director of Investigations oversees front line investigators who look into participants who fail to show up for court, have lost contact with Libre, or need to be checked on for general welfare. Investigators also look into notario fraud agains our program participants and submit reports to law enforcement. | Not relevant. This position did not participate in document revisions or policy |
|---|---|---|---|
| Jenny Cadena-Castillo | Director of Operations | This position engaged in the operational side of Libre. | Not relevant. This position did not participate in document revisions or policy |
| Raul Sanchez Jr. | Director of Operations | This position engaged in the operational side of Libre. | Not relevant. This position did not participate in document revisions or policy |
| Cindy Carr | Director of Pastoral Services | Self-explanatory. | Not relevant. This position did not participate in document revisions or policy |
| Carol Taylor | Director of Risk Management | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. This position did not participate in document revisions or policy |
| Julian Leyva | Director of Risk Management | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. This position did not participate in document revisions or policy |
| Richard Reigenborn | Director of Risk Management | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. This position did not participate in document revisions or policy |
| Robin Fife | Director of Support Services | This position assisted the VP of Support Services. | Not relevant. This position did not participate in document revisions or policy |
| Christopher Wilmore | Director of Wellness Program | This person assisted in employee health and wellness programs. | Not relevant. This position did not participate in document revisions or policy |
| Rodolfo Prieto | East Coast Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not participate in document revisions or policy |

| Wendy Cruz Montalvan | East Coast Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not participate in document revisions or policy |
|---|---|---|---|
| Kathryn Shoreman | Legal Support Manager | This position provided legal support services to Nexus outside counsel. | Not relevant. This position did not participate in document revisions or policy |
| Juliana Castillo | Libre General Council | This position drafted immigration appeals. | Not relevant. This position did not participate in document revisions or policy |
| Juliana Johnson | Libre General Counsel | This position drafted immigration appeals. | Not relevant. This position did not participate in document revisions or policy |
| Hiram Castillo | Loss Prevention Manager | This is a position within the Risk department that focuses on GPS issues, especially their collection and return to the vendor, and otherwise assists the Director of Risk Management. | Not relevant. This position did not participate in document revisions or policy |
| Johana Ballesteros Paez | Manager of Call Center Operations | Call Center Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. This position did not participate in document revisions or policy |
| Tim Okonski | New Business Development | Mr. Okanski engaged in finance issues related to banks, payments, financial systems and reporting, and subsequently seeks out new lines of potential business. | Not relevant. This position did not participate in document revisions or policy |
| Adam Donovan | Operations | This is a general purpose role encompassing administrative assistant duties. | Not relevant. This position did not participate in document revisions or policy |
| Jennifer Turner | Operations | This is a general purpose role encompassing administrative assistant duties. | Not relevant. This position did not participate in document revisions or policy |

| Gabriel Duarte Solis | Rehire- Customer Satisfaction Manager | Customer Satisfaction Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. This position did not participate in document revisions or policy |
|---|---|---|---|
| Sergio Anselmo | Regional Manager/Call Center Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not participate in document revisions or policy |
| Cesar Henriquez | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not participate in document revisions or policy |
| Cristina Velez Santos | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not participate in document revisions or policy |
| Danny Hart | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not participate in document revisions or policy |

| Ernie Correa | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not participate in document revisions or policy |
|---|---|---|---|
| Francis Hernandez | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not participate in document revisions or policy |
| Luis Angel Aspeitia | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not participate in document revisions or policy |
| Edward DeLeon | Risk East Coast Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not participate in document revisions or policy |
| Gilberto Cantu | Risk Mgmt. Central Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not participate in document revisions or policy |
| Michael Song | Support Services | Mr. Song serves as outside General Counsel to Nexus. | Not relevant. This position did not participate in document revisions or policy |
| Donna Salmons | Support Services Operational Assistant | This position engaged in the roles of campus receptionist and various data entry tasks | Not relevant. This position did not participate in document revisions or policy |
| Andre Johnson | Vice President of Distribution | This position engaged in public messaging for the company. | Not relevant. This position did not participate in document revisions or policy |

| | | | |
|---|---|---|---|
| Marco Orellana | West Coast Regional Risk | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not participate in document revisions or policy |
| Ana Bonilla | West Regional Director | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not participate in document revisions or policy |

**Request 11**

All Documents and Communications (including without limitation any written logs, databases, recordings of telephone calls, text messages, emails, and instant and social media messages) Concerning the following topics:

a.The Company paying Consumers' immigration bonds;

b.Consumers breaching immigration bonds;

c.Consumer non-compliance with the terms, requirements, or conditions of the Nexus Immigration Bond Service, including non-payment;

d.The reason for or purpose of any Consumer payments to the Company Concerning the Nexus Immigration Bond Service;

e.The Company offering or providing loans or offering or extending credit to Consumers Concerning the Nexus Immigration Bond Service;

f.Consumers owing a debt because the Company paid an immigration bond or Consumers' payments going towards paying down an immigration bond or paying down a loan;

g.Arrest, criminal prosecution, detention, or deportation of Consumers or any other negative outcome in a Consumer's immigration case or negative impact on a Consumer's immigration status;

h.The GPS devices used for the Nexus Immigration Bond Service, including how they functioned, instructions for Consumers about how to use them, injuries, harm, irritation, or any adverse reaction caused by GPS devices, requests by either Consumers or the Company to remove, exchange, or replace a GPS device, co-signers wearing GPS devices, and whether GPS devices are required by third parties (such as the court or Immigration and Customs Enforcement);

i.The collection or attempted collection of payments or debts purportedly owed by Consumers for the Nexus Immigration Bond Service, including through the sale or transfer of Consumer accounts or purported debts to a Debt Buyer, Collection Agency, or other third-party Entity for collection;

j.Harm to a Consumer's credit rating or reporting of any kind to a Consumer Reporting Agency;

k.The Company's affiliation or relationship with any third-party Entity Concerning the provision of the Nexus Immigration Bond Service, including Immigration and Customs Enforcement, the U.S. Department of Homeland Security, the courts, and bond agents; and

l.the Nexus Immigration Legal Services.

| Name | Job Title | Job Description | Relevance to Request |
|---|---|---|---|
| Victor Silva Tejeda | Assistant Monitoring Center Supervisor | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |

| Eddie Noel Nieves Garcia | Call Center Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
|---|---|---|---|
| Edwin Adorno Liddy | Call Center Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Johana Ballesteros Paez | Call Center Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Raymond Rivera | Call Center Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Robert Belle | Call Center Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Samantha Cushman | Call Center Supervisor | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Summer Cruz | Call Center Supervisor | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Gordon Turner | Caridades | Not a Nexus or Libre entity. No internal documents determining Caridades employees roles. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Mohsen Ansari | Central Regional Director | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Richard Miniter | CEO | This individual was never CEO of Libre; he served mainly as a PR consultant. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Tim Okonski | CFO | Mr. Okanski engaged in finance issues related to banks, payments, financial systems and reporting, and subsequently seeks out new lines of potential business. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Glenda Oquendo-Marrero | Collections Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |

| David See | COO | This position is the operating manager for Libre, with focus on the call center operations | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
|---|---|---|---|
| Alisa Wilson | COO | COO of the Entertainment division, she acted as an event coordinator for internal company events such as all staff meetings. She supervised no employees and had no control over anyone else's compensation. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Liliana Chavez | Corporate Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Jovanahilit Correa | Corporate Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Alonso Sandra | Customer Service Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Abigail Campana | Customer Service Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Maria De SantiagoCasiano | Customer Service Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Kerry J. DeLeon | Customer Service Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Darlin Santamaria | Customer Service Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Gustavo Murillo | Customer Service Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |

| David Briggman | Director | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
|---|---|---|---|
| James G.A. Walker | Director of Call Center Operations | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| William E. Norton | Director of Collateral Services | This position worked with Serve to facilitate the bonding of its clients | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Nancy Insco | Director of Empower | This position worked on the development of a criminal bonding | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Tim Donovan | Director of Facilities | Supervises grounds and maintenance staff | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Chad Sager | Director of Human Resources | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Lisa Breedan | Director of Human Resources | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Nathalie Duda | Director of Human Resources | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Vincent Munoz | Director of Nexus Investigations | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Jenny Cadena-Castillo | Director of Operations | This position engaged in the operational side of Libre. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Raul Sanchez Jr. | Director of Operations | This position engaged in the operational side of Libre. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Nina Erlandson | Director of Operations | This position engaged in the operational side of Libre. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Julian Leyva | Director of Risk Management | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Richard Reigenborn | Director of Risk Management | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |

| T-Ann Johnson | Director of Serve and Empower | This position supervised all employees of Serve, which was Libre's criminal bonding program. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
|---|---|---|---|
| Robin Fife | Director of Support Services | This position assisted the VP of Support Services. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Robin Fife | Director of Support Services | This position assisted the VP of Support Services. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Christopher Wilmore | Director of Wellness Program | This person assisted in employee health and wellness programs. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Rudy Prieto | East Coast Regional Director | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Wendy Cruz Montalvan | East Coast Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Nicole Strickler | GPS Coordinator | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Ellen Jan-Nel Smith | GPS Coordinator | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Lorisol Rodriguez | HR Administrator | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Janine Saldivar | HR Administrator | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |

| Martha Pulido | HR Administrator | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
|---|---|---|---|
| Tina M. Landes | HR Generalist | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Jesus Fernandez | HR Generalist | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Joel Wells | HR Generalist | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Nicholas Agiro | IT Manager | Computer and network issues. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Robert Sherman | Lead Technician | Computer and network issues. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Andrew Singer | Legal Assistant/ Non-Attorney Director of Legal Operations | This position coordinates with and assists Nexus's general counsel and outside attorneys. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Kathryn Shoreman | Legal Support Manager | This position coordinates with and assists Nexus's general counsel and outside attorneys. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Juliana Castillo | Libre General Council | This position drafted immigration appeals. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Juliana Johnson | Libre General Counsel | This position drafted immigration appeals. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Hiram Castillo | Loss Prevention Manager | This is a position within the Risk department that focuses on GPS issues, especially their collection and return to the vendor, and otherwise assists the Director of Risk Management. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |

| Andrew Jones | National Recruiting Manager | This position assists in the process of locating candidates for job openings and assists in the interview and hiring process. This position has no say over compensation of such employees. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
|---|---|---|---|
| Beatriz Aleman | National Recruiting Manager | This position assists in the process of locating candidates for job openings and assists in the interview and hiring process. This position has no say over compensation of such employees. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Maria Portillo | National Trainer | This position conducts employee training. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Jordan Escobedo | National Training Manager | This position conducts employee | Not relevant. This position did not have authority over or |
| Maria Ortiz Garcia | National Training Manager | This position conducts employee training. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Adam Donovan | Operations | This is a general purpose role encompassing administrative assistant duties. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Jennifer Turner | Operations | This is a general purpose role encompassing administrative assistant duties. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Maria Morales | Quality Assurance Manager | This position audited procedures for quality assurance | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Mathew Gira | Recruiting Manager | This position assists in the process of locating candidates for job openings and assists in the interview and hiring process. This position has no say over compensation of such employees. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Sergio Anselmo | Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Cesar Henriquez | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |

| Luis Angel Aspeitia | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
|---|---|---|---|
| Ernie Correa | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Danny Hart | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Cesar Henriquez | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Francis Hernandez | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Cristina Velez Santos | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |

| Edward DeLeon | Risk East Coast Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
|---|---|---|---|
| Melanie Cabrera | RM Monitoring Manager | This position was involved in contacing program participants who had issues with their GPS compliance. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Hector Ortiz Cordova | RM Night Shift Supervisor | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Matthew Stoltz | Senior Investigator | This position looks into participants who fail to show up for court, have lost contact with Libre, or need to be checked on for general welfare. Investigators also look into notario fraud agains our program participants and submit reports to law enforcement. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Roger Mathias | STC Training Coordinator | This position conducts employee training. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Cristina Flores | Supervisor-Monitoring Agent Center | This position was involved in contacing program participants who had issues with their GPS compliance. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Marsha Breeden | Training Manager | This position conducts employee training. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Marco Orellana | West Coast Regional Risk | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |

| Ana Bonilla | West Regional Director | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
|---|---|---|---|
| [any] | Breach Manager (including any Associate Breach Managers) | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| [any] | Call Center | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| [any] | Case Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| [any] | Client Experience Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| [any] | Collections or Collections Specialist | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| [any] | Compliance Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| [any] | Customer Experience Manager (CEM) | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| [any] | Empower Call Center | This position worked on the development of a criminal bonding | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| [any] | Empower Case Manager | This position worked on the development of a criminal bonding | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| [any] | Empower Client Experience Manager | This position worked on the development of a criminal bonding | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| [any] | Investigator | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| [any] | Monitoring Agent | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |

| | | | |
|---|---|---|---|
| [any] | Monitoring Center | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| [any] | Monitoring Technician | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| [any] | Risk Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| [any] | Secured | Secure was an attempted program to expand immigration bonding to criminal defendants | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |

**Request 13**

All Documents and Communications Concerning the tracking or accounting of all money received from Consumers or purportedly owed by Consumers for the Nexus Immigration Bond Service, including the following:

a.Lightspeed records;

b.Documents and Communications describing the procedures or ways Consumer payments are or should be made; and

c.Documents and Communications Concerning the accuracy of or completeness of the Company's Consumer payment tracking or accounting system.

| Name | Job Title | Job Description | Relevance to Request |
|---|---|---|---|
| David See | COO | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Alisa Wilson | COO | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Eddie Noel Nieves Garcia | Call Center Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Edwin Adorno Liddy | Call Center Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Johana Ballesteros Paez | Call Center Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Raymond Rivera | Call Center Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Robert Belle | Call Center Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |

| Samantha Cushman | Call Center Supervisor | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
|---|---|---|---|
| Summer Cruz | Call Center Supervisor | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Mohsen Ansari | Central Regional Director | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Andrea Arroyo | CEM | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Richard Miniter | CEO | This individual was never CEO of Libre; he served mainly as a PR consultant. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Gregory Solsrud | CFO | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Rebecca Wells | CFO | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Tim Okonski | CFO | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Andrea Arroyo | CEM | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Glenda Oquendo-Marrero | Collections Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Jovanahilit Correa | Corporate Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |

| Liliana Chavez | Corporate Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
|---|---|---|---|
| Jose L. Alfaro | Critical Controls | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Luis Garcia | Critical Controls | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Gonzalo Rosas | Critical Controls Call Center | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Alonso Sandra | Customer Service Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Abigail Campana | Customer Service Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Maria De Santiago Casiano | Customer Service Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Kerry J. DeLeon | Customer Service Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Darlin Santamaria | Customer Service Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Gustavo Murillo | Customer Service Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| James G.A. Walker | Director of Call Center Operations | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| William E. Norton | Director of Collateral Services | This position worked with Serve to facilitate the bonding of its clients | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |

| Vincent Munoz | Director of Investigations | Director of Investigations oversees front line investigators who look into participants who fail to show up for court, have lost contact with Libre, or need to be checked on for general welfare. Investigators also look into notario fraud agains our program participants and submit reports to law enforcement. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
|---|---|---|---|
| Jenny Cadena-Castillo | Director of Operations | This position engaged in the operational side of Libre. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Nina Erlandson | Director of Operations | This position engaged in the operational side of Libre. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Raul Sanchez | Director of Operations | This position engaged in the operational side of Libre. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Carol Taylor | Director of Risk Management | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Julian Leyva | Director of Risk Management | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Richard Reigenborn | Director of Risk Management | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Robin Fife | Director of Support Services | This position assisted the VP of Support Services. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Rodolfo Prieto | East Coast Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |

| Wendy Cruz Montalvan | East Coast Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
|---|---|---|---|
| Edward DeLeon | Risk East Coast Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Heather Munzner | Finance | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Elizabeth Hurst | Finance Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Wanda Barnes | Finance Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Alex Martinez | IT | Computer and network issues. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Eric Billings | IT | Computer and network issues. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Andrew Untiedt | IT | Computer and network issues. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Chelsea Noel | IT | Computer and network issues. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Nicholas Argiro | IT | Computer and network issues. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Juliana Castillo | Libre General Council | This position drafted immigration appeals. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Juliana Johnson | Libre General Counsel | This position drafted immigration appeals. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |

| | | | |
|---|---|---|---|
| Hiram Castillo | Loss Prevention Manager | This is.a position within the Risk department that focuses on GPS issues, especially their collection and return to the vendor, and otherwise assists the Director of Risk Management. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Adam Donovan | Operations | This is a general purpose role encompassing administrative assistant duties. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Jennifer Turner | Operations | This is a general purpose role encompassing administrative assistant duties. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Maria Morales | Quality Assurance Manager | This position audited procedures for quality assurance | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Sergio Anselmo | Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Cesar Henriquez | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Cristina Velez Santos | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Danny Hart | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |

| Ernie Correa | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
|---|---|---|---|
| Francis Hernandez | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Luis Angel Aspeitia | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Gabriel Duarte Solis | Rehire- Customer Satisfaction Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Robert Garcia | Risk Manager | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Gilberto Cantu | Risk Mgmt. Central Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Tawana Washington | Senior Finance Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |

| Erik Scheinder | VP of Risk Management | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Tim Shipe | VP of Support Services | This position oversees the operations of the company including HR. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Marco Orellana | West Coast Regional Risk | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |
| Ana Bonilla | West Region Director | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in the topics listed in this request. |

**Request 14**

All Documents and Communications Concerning Consumer refunds Concerning the Nexus Immigration Bond Service, including instances when

d.a Consumer requested a refund and did not receive one;

e.a Consumer's immigration case ended and/or his or her bond was cancelled; or

f.a Consumer made payments to the Company or any of its affiliates but no Consumer was released from immigration detention.

| Name | Job Title | Job Description | Relevance to Request |
|---|---|---|---|
| Alisa Wilson | COO | COO of the Entertainment division, she acted as an event coordinator for internal company events such as all staff meetings. She supervised no employees and had no control over anyone else's compensation. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Eddie Noel Nieves Garcia | Call Center Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Edwin Adorno Liddy | Call Center Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |

| Johana Ballesteros Paez | Call Center Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
|---|---|---|---|
| Raymond Rivera | Call Center Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Robert Belle | Call Center Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Samantha Cushman | Call Center Supervisor | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Summer Cruz | Call Center Supervisor | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Mohsen Ansari | Central Regional Director | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Richard Miniter | CEO | This individual was never CEO of Libre; he served mainly as a PR consultant. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Gregory Solsrud | CFO | Finance issues related to banks, payments, financial systems and reporting. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Rebecca Wells | CFO | Finance issues related to banks, payments, financial systems and reporting. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Tim Okonski | CFO | Mr. Okanski engaged in finance issues related to banks, payments, financial systems and reporting, and subsequently seeks out new lines of potential business. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Summer Cruz | Call Center Supervisor | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |

| Mohsen Ansari | Central Regional Director | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in refund determinations |
|---|---|---|---|
| Richard Miniter | CEO | This individual was never CEO of Libre; he served mainly as a PR consultant. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Gregory Solsrud | CFO | Finance issues related to banks, payments, financial systems and reporting. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Rebecca Wells | CFO | Finance issues related to banks, payments, financial systems and reporting. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Tim Okonski | CFO | Finance issues related to banks, payments, financial systems and reporting. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Glenda Oquendo-Marrero | Collections Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Jovanahilit Correa | Corporate Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Liliana Chavez | Corporate Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Alonso Sandra | Customer Service Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Abigail Campana | Customer Service Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |

| Maria De Santiago Casiano | Customer Service Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
|---|---|---|---|
| Kerry J. DeLeon | Customer Service Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Darlin Santamaria | Customer Service Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Gustavo Murillo | Customer Service Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| James G.A. Walker | Director of Call Center Operations | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| William E. Norton | Director of Collateral Services | This position worked with Serve to facilitate the bonding of its clients | Not relevant. This position did not have authority over or involvement in refund determinations |
| Jenny Cadena-Castillo | Director of Operations | This position engaged in the operational side of Libre. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Raul Sanchez | Director of Operations | This position engaged in the operational side of Libre. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Carol Taylor | Director of Risk Management | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Julian Leyva | Director of Risk Management | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Richard Reigenborn | Director of Risk Management | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Robin Fife | Director of Support Services | This position assisted the VP of Support Services. | Not relevant. This position did not have authority over or involvement in refund determinations |

| | | | |
|---|---|---|---|
| Rodolfo Prieto | East Coast Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Wendy Cruz Montalvan | East Coast Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Edward DeLeon | Risk East Coast Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Heather Munzner | Finance | Finance issues related to banks, payments, financial systems and reporting. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Elizabeth Hurst | Finance Manager | Finance issues related to banks, payments, financial systems and reporting. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Wanda Barnes | Finance Manager | Finance issues related to banks, payments, financial systems and reporting. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Alex Martinez | IT | Computer and network issues. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Eric Billings | IT | Computer and network issues. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Andrew Untiedt | IT | Computer and network issues. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Chelsea Noel | IT | Computer and network issues. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Nicholas Argiro | IT | Computer and network issues. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Juliana Castillo | Libre General Council | This position drafted immigration appeals. | Not relevant. This position did not have authority over or involvement in refund determinations |

| Juliana Johnson | Libre General Counsel | This position drafted immigration appeals. | Not relevant. This position did not have authority over or involvement in refund determinations |
|---|---|---|---|
| Hiram Castillo | Loss Prevention Manager | This is a position within the Risk department that focuses on GPS issues, especially their collection and return to the vendor, and otherwise assists the Director of Risk Management. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Adam Donovan | Operations | This is a general purpose role encompassing administrative assistant duties. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Jennifer Turner | Operations | This is a general purpose role encompassing administrative assistant duties. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Maria Morales | Quality Assurance Manager | This position audited procedures for quality assurance | Not relevant. This position did not have authority over or involvement in refund determinations |
| Sergio Anselmo | Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Cesar Henriquez | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Cristina Velez Santos | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in refund determinations |

| Danny Hart | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in refund determinations |
|---|---|---|---|
| Ernie Correa | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Francis Hernandez | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Luis Angel Aspeitia | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Robert Garcia | Risk Manager | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Gilberto Cantu | Risk Mgmt. Central Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Tawana Washington | Senior Finance Manager | Self explanatory | Not relevant. This position did not have authority over or involvement in refund determinations |

| Erik Scheinder | VP of Risk Management | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. This position did not have authority over or involvement in refund determinations |
|---|---|---|---|
| Tim Shipe | VP of Support Services | This position oversees the operations of the company including HR. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Marco Orellana | West Coast Regional Risk | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Ana Bonilla | West Region Director | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in refund determinations |
| Gabriel Duarte Solis | Rehire- Customer Satisfaction Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| [any] | Call Center | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| [any] | Case Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| [any] | Client Experience Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| [any] | Collections or Collections Specialist | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| [any] | Customer Experience Manager (CEM) | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| [any] | Secured | Secure was an attempted program to expand immigration bonding to criminal defendants | Not relevant. This position did not have authority over or involvement in refund determinations |

**Request 15**

All agreements between any Defendant and any Person to provide products or services Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, and Documents and Communications Concerning performance of any Entity under such agreements. The response to this request shall include any agreements for the following:

a.the provision of GPS hardware or services;

b.the provision of marketing, advertising, or public relations services;

c.the provision of legal services to Consumers; d.the storage of Communications for the Company, including e-mail, instant messaging, chat, or telephone recordings (both cellular and landlines); and

e.with any bond, surety, or insurance company or the agent of any bond, surety, or insurance company.

| Name | Job Title | Job Description | Relevance to Request |
|---|---|---|---|
| Victor Silva Tejeda | Assistant Monitoring Center Supervisor | This position was involved in contacing program participants who had issues with their GPS compliance. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Gordon Turner | Caridades | Not a Nexus or Libre entity. No internal documents determining Caridades employees roles. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Mohsen Ansari | Central Regional Director | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Andrea Arroyo | CEM | Customer Experience Managers were responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Richard Miniter | CEO | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Tim Okonski | CFO | Mr. Okanski engaged in finance issues related to banks, payments, financial systems and reporting, and subsequently seeks out new lines of potential business. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |

| Alisa Wilson | COO | COO of the Entertainment division, she acted as an event coordinator for internal company events such as all staff meetings. She supervised no employees and had no control over anyone else's compensation. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
|---|---|---|---|
| David See | COO | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Liliana Chavez | Corporate Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Jovanahilit Correa | Corporate Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Juan Barragan | Digital Media Director | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| David Briggman | Director | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| James G.A. Walker | Director of Call Center Operations | This position is the same as a Call Center Supervisor. He was responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| William E. Norton | Director of Collateral Services | This position worked with Serve to. Facilitate the bonding of its clients | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |

| Giancarlo Sopo | Director of Communications | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
|---|---|---|---|
| Tim Donovan | Director of Facilities | Physical plant and grounds issues. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Chad Sager | Director of Human Resources | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Lisa Breedan | Director of Human Resources | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Nathalie Duda | Director of Human Resources | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Vincent Munoz | Director of Nexus Investigations | Director of Investigations oversees front line investigators who look into participants who fail to show up for court, have lost contact with Libre, or need to be checked on for general welfare. Investigators also look into notario fraud agains our program participants and submit reports to law enforcement. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Jenny Cadena-Castillo | Director of Operations | This position engaged in the operational side of Libre. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Raul Sanchez Jr. | Director of Operations | This position engaged in the operational side of Libre. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Nina Erlandson | Director of Operations | This position engaged in the operational side of Libre. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Cindy Carr | Director of Pastoral Services | Self-explanatory. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Jennifer Little | Director of Public Relations | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |

| Carol Taylor | Director of Risk Management | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
|---|---|---|---|
| Julian Leyva | Director of Risk Management | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Richard Reigenborn | Director of Risk Management | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| T-Ann Johnson | Director of Serve and Empower | This position supervised all employees of Serve, which was Libre's criminal bonding program. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Robin Fife | Director of Support Services | This position assisted the VP of Support Services. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Christopher Wilmore | Director of Wellness Program | This person assisted in employee health and wellness programs. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Rudy Prieto | East Coast Regional Director | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Wendy Cruz Montalvan | East Coast Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Nicholas Agiro | IT Manager | Computer and network issues. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Alex Martinez | IT | Computer and network issues. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Eric Billings | IT | Computer and network issues. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |

| Andrew Untiedt | IT | Computer and network issues. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Chelsea Noel | IT | Computer and network issues. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Kathryn Shoreman | Legal Support Manager | Computer and network issues. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Juliana Castillo | Libre General Council | This position drafted immigration appeals. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Juliana Johnson | Libre General Counsel | This position drafted immigration appeals. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Hiram Castillo | Loss Prevention Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Andrew Jones | National Recruiting Manager | This position assists in the process of locating candidates for job openings and assists in the interview and hiring process. This position has no say over compensation of such employees. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Beatriz Aleman | National Recruiting Manager | This position assists in the process of locating candidates for job openings and assists in the interview and hiring process. This position has no say over compensation of such employees. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Maria Portillo | National Trainer | This position conducts employee training. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Jordan Escobedo Diaz | National Training Manager | This position conducts employee training. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Maria Ortiz Garcia | National Training Manager | This position conducts employee training. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Adam Donovan | Operations | This is a general purpose role encompassing administrative assistant duties. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Jennifer Turner | Operations | This is a general purpose role encompassing administrative assistant duties. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Maria Morales | Quality Assurance Manager | This position audited procedures for quality assurance | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |

| Karl Magenhofer | Producer - Breaking Through | Breaking Through is a locally focused publisher of progressive news stories. It was funded by Nexus but did not engage in advertising, marketing, or promoting the Defendants' immigration business. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
|---|---|---|---|
| King Salim Khalfani | Public Advocacy Director | This position comprised former Serve clients (the formerly incarcerated on criminal charges). They performed outreach in the community to educate people on criminal justice issues and attempted to reduce recidivism. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Anthony Anderson | Public Advocacy Manager | This position comprised former Serve clients (the formerly incarcerated on criminal charges). They performed outreach in the community to educate people on criminal justice issues and attempted to reduce recidivism. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Mathew Gira | Recruiting Manager | This position assists in the process of locating candidates for job openings and assists in the interview and hiring process. This position has no say over compensation of such employees. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Sergio Anselmo | Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Cesar Henriquez | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |

| Luis Angel Aspeitia | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
|---|---|---|---|
| Ernie Correa | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Danny Hart | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Cesar Henriquez | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Francis Hernandez | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Cristina Velez Santos | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |

| Robert Garcia | Risk Manager | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
|---|---|---|---|
| Edward DeLeon | Risk East Coast Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Gilberto Cantu | Risk Mgmt. Central Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Cristina Flores | Supervisor-Monitoring Agent Center | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Michael Song | Support Services | Mr. Song serves as outside General Counsel to Nexus. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Antwhon Suiter | Support Services Assistant | This positions assists with support services | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Donna Salmons | Support Services Operational Assistant | This position engaged in the roles of campus receptionist and various data entry tasks | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Oliver McKenzie | Technology Manager | This position conducts employee training. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Marsha Breeden | Training Manager | This position conducts employee training. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Andre Johnson | Vice President of Distribution | This position was associated with Breaking Through, a locally focused publisher of progressive news stories. It was funded by Nexus but did not engage in advertising, marketing, or promoting the Defendants' immigration business. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Tim Shipe | VP of Support Services | This position oversees the operations of the company including HR. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |

| Erik Schneider | VP of Risk Management | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
|---|---|---|---|
| Marco Orellana | West Coast Regional Risk | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |
| Ana Bonilla | West Regional Director | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in agreements with such vendors. |

**Request 21**

All Documents and Communications Concerning quality assurance or quality control reviews, audits, or assessments undertaken by the Company or any Person Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, including "QA Reports" or any similar Communications.

| Name | Job Title | Job Description | Relevance to Request |
|---|---|---|---|
| Alisa Wilson | COO | COO of the Entertainment division, she acted as an event coordinator for internal company events such as all staff meetings. She supervised no employees and had no control over anyone else's compensation. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Eddie Noel Nieves Garcia | Call Center Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Edwin Adorno Liddy | Call Center Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Johana Ballesteros Paez | Call Center Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |

| Raymond Rivera | Call Center Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
|---|---|---|---|
| Robert Belle | Call Center Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Samantha Cushman | Call Center Supervisor | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Summer Cruz | Call Center Supervisor | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Mohsen Ansari | Central Regional Director | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Andrea Arroyo | CEM | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Richard Miniter | CEO | This individual was never CEO of Libre; he served mainly as a PR consultant. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Glenda Oquendo-Marrero | Collections Manager | Finance issues related to banks, payments, financial systems and reporting. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Jovanahilit Correa | Corporate Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Liliana Chavez | Corporate Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in quality assurance |

| Jose L. Alfaro | Critical Controls | Finance issues related to banks, payments, financial systems and reporting. | Not relevant. This position did not have authority over or involvement in quality assurance |
|---|---|---|---|
| Luis Garcia | Critical Controls | Finance issues related to banks, payments, financial systems and reporting. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Gonzalo Rosas | Critical Controls Call Center | Finance issues related to banks, payments, financial systems and reporting. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Alonso Sandra | Customer Service Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Abigail Campana | Customer Service Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Maria De Santiago Casiano | Customer Service Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Kerry J. DeLeon | Customer Service Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Darlin Santamaria | Customer Service Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Gustavo Murillo | Customer Service Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| James G.A. Walker | Director of Call Center Operations | This position is the same as a Call Center Supervisor. He was responsible for scheduling staff at their call center location; kept track of call center employee's time, participated in inbound and outbound calls to or from program participants, other line workers would escalate certain calls to such managers. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Chad Sager | Director of Human Resources | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. This position did not have authority over or involvement in quality assurance |

| Lisa Breeden | Director of Human Resources | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. This position did not have authority over or involvement in quality assurance |
|---|---|---|---|
| Nathalie Duda | Director of Human Resources | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Vincent Munoz | Director of Investigations | Director of Investigations oversees front line investigators who look into participants who fail to show up for court, have lost contact with Libre, or need to be checked on for general welfare. Investigators also look into notario fraud agains our program participants and submit reports to law enforcement. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Jenny Cadena-Castillo | Director of Operations | This position engaged in the operational side of Libre. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Raul Sanchez | Director of Operations | This position engaged in the operational side of Libre. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Carol Taylor | Director of Risk Management | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Julian Leyva | Director of Risk Management | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Richard Reigenborn | Director of Risk Management | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Robin Fife | Director of Support Services | This position assisted the VP of Support Services. | Not relevant. This position did not have authority over or involvement in quality assurance |

| | | | |
|---|---|---|---|
| Rodolfo Prieto | East Coast Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Wendy Cruz Montalvan | East Coast Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Edward DeLeon | Risk East Coast Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Raquel Hernandez | HR Manager | This position addresses employment issues but is not authorized to set salaries or bonuses. HR maintains the paperwork, employee files, and other HR tasks. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Alex Martinez | IT | Computer and network issues. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Andrew Untiedt | IT | Computer and network issues. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Chelsea Noel | IT | Computer and network issues. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Nicholas Argiro | IT | Computer and network issues. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Andrew Singer | Legal Assistant/ Non-Attorney Director of Legal Operations | This position coordinates with and assists Nexus's general counsel and outside attorneys. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Juliana Castillo | Libre General Council | This position drafted immigration appeals. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Juliana Johnson | Libre General Counsel | This position drafted immigration appeals. | Not relevant. This position did not have authority over or involvement in quality assurance |

| Kathryn Shoreman | Legal Support Manager | This position coordinates with and assists Nexus's general counsel and outside attorneys. | Not relevant. This position did not have authority over or involvement in quality assurance |
|---|---|---|---|
| Hiram Castillo | Loss Prevention Manager | This is a position within the Risk department that focuses on GPS issues, especially their collection and return to the vendor, and otherwise assists the Director of Risk Management. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Maria Portillo | National Trainer/Call Center Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Jordan S. Escobedo Diaz | National Training Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Maria Ortiz Garcia | National Training Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Adam Donovan | Operations | This is a general purpose role encompassing administrative assistant duties. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Jennifer Turner | Operations | This is a general purpose role encompassing administrative assistant duties. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Maria Morales | Quality Assurance Manager | Employees in this position may have been involved in functions potentially relevant to this Request. | May possess potentially responsive information. |
| Sergio Anselmo | Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Cesar Henriquez | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in quality assurance |

| Cristina Velez Santos | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in quality assurance |
|---|---|---|---|
| Danny Hart | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Ernie Correa | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Francis Hernandez | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Luis Angel Aspeitia | Regional Risk Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Robert Garcia | Risk Manager | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. This position did not have authority over or involvement in quality assurance |

| Gilberto Cantu | Risk Mgmt. Central Regional Manager | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in quality assurance |
|---|---|---|---|
| Erik Schneider | VP of Risk Management | This position is responsible for the safety and compliance for the Program Participants assigned in their region/area and oversees regional risk managers. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Tim Shipe | VP of Support Services | This position oversees the operations of the company including HR. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Marco Orellana | West Coast Regional Risk | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in quality assurance |
| Ana Bonilla | West Region Director | All regional directors were intended to serve as middle management between the individual call center managers and to Libre Directors. This program did not pan out as intended and as a result regional managers never acquired any significant managerial authority. | Not relevant. This position did not have authority over or involvement in quality assurance |

# EXHIBIT 23



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

JANE M. AZIA
BUREAU CHIEF
CONSUMER FRAUDS & PROTECTION BUREAU

December 15, 2021

**By Email**
J.H. Jennifer Lee
Adam Bowser
David G. Bayles
Arent Fox LLP
jenny.lee@arentfox.com
david.bayles@arentfox.com
adam.bowser@arentfox.com

**Re:**  ***Consumer Financial Protection Bureau et al. v. Nexus Services, Inc. et al.,
5:21-cv-16 (W.D. Va.)***

Dear Counsel:

We, the undersigned counsel for New York and Virginia, write regarding Defendants Nexus
Services, Inc. and Libre By Nexus, Inc.'s ("Entity Defendants") responses to New York's
First Interrogatories Addressed to Nexus Services, Inc. and Libre By Nexus, Inc. [1]
("NYROGs"); and Virginia's First Interrogatories Addressed to Nexus Services, Inc. and
Libre By Nexus, Inc. [2] ("VAROGs"). As set forth below, Entity Defendants' responses to both
sets of interrogatories are deficient. Further, the responses indicate that Entity Defendants
may have not satisfied their duty to preserve discoverable material.

New York and Virginia request that Entity Defendants respond to this letter by December
22, 2021 and supplement or amend their responses as necessary to address the deficiencies
discussed below by January 7, 2021. If you have any questions, or would like to further
discuss this matter, please suggest dates within the next week during which counsel are
available to meet and confer.

---

[1] New York's First Set of Interrogatories was served on Defendants on October 12, 2021.
[2] Virginia's First Set of Interrogatories was served on Defendants on October 14, 2021.

Arent Fox LLP
December 15, 2021
Page 2 of 11

<u>General Issues With Responses to Both NYROGs and VAROGs</u>

Entity Defendants' responses include several deficiencies that are repeated across multiple answers to both the NYROGs and VAROGs.

*First*, Entity Defendants continue to rely upon general objections. *See* Ex. A (Plaintiffs' Ltr. to Defendants dated Oct. 15, 2021) at 3 (identifying the improper use of general objections in response to RFPs). Entity Defendants' use of general objections and statements is improper and makes it impossible to determine what information, if any, they are withholding from their responses. Because Entity Defendants have failed to assert objections to the NYROGs and VAROGs with the specificity required by FRCP 33(b)(4), they have waived their objections. *See Wheeler v. Virginia*, No. 7:17-cv-337, 2018 WL 10611693, *1 (W.D. Va. Sept. 11, 2018).

*Second*, Entity Defendants take issue with the "relevant time period" covered by both the NYROGs and VAROGs: July 1, 2012 to the present. However, Judge Hoppe has already rejected Defendants' contention that this time period is improper for discovery in this case. *See* Ex. B (Oct. 14, 2021 Hearing Tr.) at 40-41 (denying Defendants' motion to quash subpoenas that sought information going back to 2012). And Defendants have agreed to search for and produce documents from July 1, 2012 to the present. *See* Ex. C (Nov. 12, 2021 Dearing email to Defendants) at 2 (memorializing Defendants' agreement "to search for and produce documents from July 2012 to the present"). Entity Defendants must provide any responsive information that they withheld on the basis of this objection and amend their responses accordingly.[3]

*Third*, Entity Defendants' responses repeatedly fail to specify the dates or time periods for the information provided in the responses. *See, e.g.*, NYROG Responses Nos. 1, 2, 3, 5, 6, 7, 13; VAROG Response Nos. 1, 4, 9. Unless the information provided in a response is accurate for the entire time period covered by the interrogatory (July 1, 2012 to the present), Entity Defendants must amend their responses. For example, NYROG No. 5 calls on Entity Defendants to identify persons "involved in developing and implementing . . . policies and procedures." In response, Entity Defendants stated that the "Nexus Advisory Board participates in all decisions concerning policies and procedures." Entity Defendants then provided a list of individuals who "comprised" the Advisory Board "during the period in question." However, several of the people listed were only recently hired by Defendants. Nina Erlandson, for example, was hired in March 2018. *See* Ex. D (spreadsheet of employees produced by Defendants as CFPB_LIBRE-00000391) at 4. Unless Entity

---

[3] Although Defendants object to the time period provided in the NYROGs and VAROGs, they do not specify the time period for which they are providing responses. It is therefore impossible for New York and Virginia to determine whether Defendants have withheld any information from their responses.

Arent Fox LLP
December 15, 2021
Page 3 of 11

Defendants contend that Ms. Erlandson (and others) were involved in developing and implementing policies prior to their date of hire, the response is inaccurate and incomplete.

*Fourth*, Entity Defendants have failed to properly respond to all interrogatories that call for the identification of persons and entities. As defined in both the NYROGs and VAROGs:

> Identify means to provide: (a) for a natural person, the person's full name, dates of employment and title or position at Your Company (where applicable), present or last known address, the present or last known business affiliation or place of employment, e-mail address, and telephone number, and if applicable, the person's alien number or 'A number'; (b) for Entities, the name, address, identities of officers, directors, managers, and members of the business or organization, and contact persons with e-mail addresses and telephone numbers, where applicable . . . .

For example, Entity Defendants' responses that identify natural people generally provide only their name and title. *See* NYROG Responses Nos. 1, 2, 4, 5, 6, 9; VAROG Responses 1 and 9. Entity Defendants must provide the additional information called for by the NYROGs and VAROGs.

*Fifth*, Entity Defendants have repeatedly failed to state the responsibilities of persons when called to do so by the interrogatories. *See, e.g.*, NYROG Responses Nos. 1, 2, 4, 5, 6, 9. Entity Defendants must provide this information.

*Sixth*, for interrogatories that seek the Identity of certain Persons, it appears that Entity Defendants have omitted former agents and employees from their responses, even though they are necessary for a complete and accurate response. Entity Defendants must provide this information.

<u>Deficiencies in Responses to Specific Interrogatories</u>

Entity Defendants' responses to the following interrogatories are deficient for additional reasons.

New York Interrogatory No. 2*: Identify Persons who drafted, edited, approved, provided, or administered education and training programs or materials for the Company's employees and agents Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, and state the responsibilities of each such Person.*

> Entity Defendants' response is deficient because it does not identify all persons who were involved in the specified activities. For example, Entity Defendants' response fails to identify Maria Ortiz or Jordan Diaz who, as National Training Managers,

Arent Fox LLP
December 15, 2021
Page 4 of 11

would have been involved in drafting, editing, approving, providing, or administering education and training programs. *See* Ex. E ("Nexus Services Employee Training Guide") at 3772.

New York Interrogatory No. 3: *State the date(s) and topics of all of the education and training programs provided to the Company's employees Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, and for each such program, Identify the participants and Person(s) who provided it.*

Entity Defendants' response is deficient because it does not provide any dates on which education and training programs were provided. Further, because Defendants' response refers back to their response to NYROG 2, it similarly to fails to identify all persons who were involved in providing education and training programs.

New York Interrogatory No. 4: *Identify all Persons who were involved in or made decisions Concerning any quality assurance or quality control efforts undertaken by the Company or any Person Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, including "QA Reports" or any reviews of Communications with Consumers, and state the responsibilities of each such Person.*

Entity Defendants' response is deficient because it does not identify all persons who were involved in the specified activities. For example, Entity Defendants' response fails to identify David See, Maria Martinez Morales, or Sergio Anselmo, who were involved in creating, analyzing, and reviewing "QA reports" and reviewing audited telephone calls of Defendants' employees.

New York Interrogatory No. 5: *Identify all Persons who drafted, edited, approved, or were otherwise involved in developing and implementing, policies and procedures (including telephone scripts) used by You Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, and state the responsibilities of each such Person and the types of policies and procedures he or she was involved with (e.g., debt collection, sign up, legal services, etc.).*

Entity Defendants' response includes a list of members of the Nexus Advisory Board who were involved in developing policies and procedures. However, Entity Defendants failed to identify the policies and procedures with which each member of the Board was involved.

New York Interrogatory No. 6: *Identify Persons who interacted with or who supervised agents and employees who interacted with Consumers Concerning any aspect of the Nexus Immigration Bond Service or the Nexus Immigration Legal Services or who had decision-making authority about how those interactions occurred and state the responsibilities of each such Person.*

Arent Fox LLP
December 15, 2021
Page 5 of 11

Entity Defendants' response, which partially identifies only 16 people, is obviously incomplete. Entity Defendants' have failed to identify large numbers of employees who Plaintiffs understand interacted with customers concerning the Nexus Immigration Bond Service, including "Call Center" employees, [4] "customer experience managers" (CEMs), and "risk management" employees. Further, Entity Defendants have not identified a single non-Defendant Entity that "interacted with . . . Consumers Concerning any aspect of the Nexus Immigration Bond Service or the Nexus Immigration Legal Services."

New York Interrogatory No. 7: *Describe all Nexus Products and / or Services offered by the Company, and for each product or service state the date range during which they were provided, the Persons responsible for providing it, and the number of Consumers who received it. The response to this Interrogatory shall include but not be limited to the Nexus Immigration Legal Services.*

Entity Defendants' narrative response does not identify the date range that any of the products or services were provided. The response does not identify "the Persons responsible for providing" each such product or service. Nor does it state "the number of consumers who received" each such product or service. Moreover, Entity Defendants' response is by its own admission incomplete. The response says it provides only "non-exhaustive examples" of "nonfinancial services" provided to consumers. The request, however, asks for "all Nexus Products and/or Services."

New York Interrogatory No. 8: *State the number of Consumers in each month who did any of the following and, where appropriate, provide the name of the GPS provider who provided the devices: (a) wore an ankle GPS device due to the Nexus Immigration Bond Service; (b) wore any other type of GPS monitoring device not worn on the ankle due to the Nexus Immigration Bond Service; (c) were required to use a GPS monitoring service that was administered through a smartphone application; and (d) were enrolled in the Nexus Immigration Bond Service but were not wearing any GPS device.*

Entity Defendants state that this request is unduly burdensome. Entity Defendants assert that to respond they would need to search "tens of thousands of client records," and that the resulting information would not be "relevant or proportional to Plaintiffs' claims." Entity Defendants also state that this information is not kept in the "ordinary course of business." Neither of these statements is accurate. The information sought is directly relevant and of central importance to Plaintiffs' claims. Plaintiffs allege that Defendants made false and misleading statements to consumers concerning GPS monitoring and devices, made deceptive threats to consumers about GPS monitoring and devices, and imposed unfair terms on consumers involving GPS monitoring and devices. *See* Complaint ¶¶ 45, 59, 60, 62, 63, 65-67, 70, 80-92, 151-56,

---

[4] Defendants' failure to identify "Call Center" employees is particularly objectionable given that their response identified "Call Center Managers."

Arent Fox LLP
December 15, 2021
Page 6 of 11

172-76, 233-51. Further, Entity Defendants have demonstrated their ability to provide the type of information requested by this interrogatory without issue. Entity Defendants previously produced similar GPS data on a group of more than 1,000 consumers to the Commonwealth of Virginia.[5] *See* Ex. F.

New York Interrogatory No. 9: *Identify all Person(s) who created, devised, or supervised any marketing efforts Concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services, and for each such Person, state the efforts he or she was responsible for (e.g., advertisements, flyers, outreach to clergy, visits to detention centers, etc.), the date(s) the efforts were made, and Identify any Documents disseminated to Consumers as part of those efforts.*

Entity Defendants' response is incomplete. Entity Defendants do not identify any of the dates that marketing efforts concerning the Nexus Immigration Bond Service or the Nexus Immigration Legal Services were made. Nor do they identify documents disseminated to consumers as part of those efforts.

New York Interrogatory No. 10: *Identify all versions of Your agreements Consumers signed Concerning the Nexus Immigration Bond Services, and for each such version, the date(s) they were in use, the languages they were available in, and the number of Consumers who signed them.*

Entity Defendants' response is incomplete. Entity Defendants do not properly "Identify" the agreements listed in their response in accordance with NYROGs Definition No. 9, which requires Entity Defendants to set forth "the type of Document, general subject matter, date of the Document, and authors, addressees and recipients."[6] Entity Defendants also do not state with sufficient specificity the dates that the agreements were in use. Entity Defendants' response only states that certain agreements were in use "in or around" certain years. Entity Defendants additionally do not identify "the number of Consumers who signed" each of the agreements. And Entity Defendants do not identify the languages in which each of the agreements were made available to consumers.

New York Interrogatory No. 11: *State all methods You have used to Communicate with Consumers and Identify all Systems You have used to memorialize or keep records of such communications.*

Entity Defendants' response is incomplete. Entity Defendants have not stated all methods used to communicate with consumers or identified all systems used to

[5] New York is not requesting that Defendants reproduce the document previously produced to Virginia.
[6] Defendants do not appear to have produced many of these identified documents in response to Plaintiffs' document requests in this action.

Arent Fox LLP
December 15, 2021
Page 7 of 11

memorialize those communications. For example, Entity Defendants fail to mention their use of telephone services from Phone.com. *See* Ex. G (Entity Defendants' response to subpoena *duces tecum*) at 13 ("Libre previously used a third-party vendor, Phone.com, to record and store the information . . . ."). Entity Defendants also fail to list in-person communications as a method by which Defendants communicated with consumers or to specifically identify any systems used to memorialize or keep records of such communications.

Entity Defendants' response to this interrogatory also raises issues concerning the preservation of documents that are addressed below.

New York Interrogatory No. 12: *State all methods You have used to Communicate internally about the Nexus Immigration Bond Service and / or the Nexus Immigration Legal Services and Identify any Systems You have used to memorialize or keep records of the same.*

Entity Defendants' response to this interrogatory raises issues concerning the preservation of documents that are addressed below.

New York Interrogatory No. 13: *Identify your Systems for tracking or accounting for Consumer payments, including monthly fee payments and collateral payments.*

Entity Defendants' response to this interrogatory does not properly "Identify" the systems used track consumer payments as required by NYROGS Definition No. 9. For each system, Entity Defendants must provide "the name of the system, a brief description of what it is, dates it was in use, and address of any Entity who oversees, offers, or administers it."

Virginia Interrogatory No. 1: *Identify all Persons who supervised employees or had decision-making authority concerning Your use of GPS bracelets, including Your efforts to switch consumers' GPS bracelets from one provider to another (e.g., Omnilink to 3M / Attenti and/or 3M / Attenti to Buddi).*

Entity Defendants' response is incomplete. Entity Defendants have identified current employees but appear to have omitted former employees involved in the specified activities.

Virginia Interrogatory No. 2: *Identify all sureties and bond agents with which You have done business relating to the Nexus Immigration Bond Service and the dates during which You did business with them.*

Entity Defendants' response is improper and incomplete. Entity Defendants direct Virginia to documents provided "in response to the underlying Civil Investigative Demand productions." But Defendants do not identify which Civil Investigative Demand ("CID"), or which documents, they are referring to. *See* FRCP 33(d)(1).

Arent Fox LLP
December 15, 2021
Page 8 of 11

Further, it is unclear how Entity Defendants are able to assert that CID documents provide a complete answer to this Interrogatory when Defendants recently have admitted that they do not have complete or accurate records of what they produced in response to Plaintiffs' CIDs. Lastly, even if such CIDs or documents were identified, Entity Defendants' response would be incomplete and missing information from 2019 to 2021, because Entity Defendants last responded to Plaintiffs' CIDs in 2019.

Virginia Interrogatory No. 3: *Identify all Entities providing GPS devices or services with which You have done business relating to the Nexus.*

Entity Defendants' response does not identify any GPS devices or services prior to April 2014, even though Defendants have contractually obligated consumers to wear a GPS bracelet since at least 2013. Please identify all such GPS devices or services provided prior to April 2014.

Virginia Interrogatory No. 4: *Identify all Systems You have used for organizing, keeping, or tracking information or Documents Concerning Consumers . . . .*

Entity Defendants' response to this interrogatory does not "Identify" systems in accordance with VAROGs Definition No. 9, which requires "the name of the system, a brief description of what it is, dates it was in use, and address of any Entity who oversees, offers, or administers it."

Virginia Interrogatory No. 5: *State the addresses for all physical locations at which the Company provides or performs any aspect of its Nexus Immigration Bonding Service and/or Nexus Immigration Legal Services and, for each such location, state what types of tasks are performed there (e.g., answering telephone calls, enrolling consumers, fee collections, etc.) and what geographical areas are covered by that location.*

Entity Defendants' response to this interrogatory does not provide the requested information, including "*for each such location*, state what types of tasks are performed there (e.g., answering telephone calls, enrolling consumers, fee collections, etc.) and what geographical areas are covered by that location" (emphasis added).

In addition, Plaintiffs have already pointed out that Defendants' production in response to Plaintiffs' Document Request No. 3 appeared incomplete. And Defendants responded by explaining that their search of "older files" is ongoing "to determine whether they had any additional office locations . . . ." Ex. H (Dec. 6, 2021 Bowser email to Plaintiffs) at 1. Therefore, Entity Defendants' response to this interrogatory—which relies on reference to their document productions—is not accurate or complete.

Arent Fox LLP
December 15, 2021
Page 9 of 11

Plaintiffs also object to Entity Defendants' response to this interrogatory on the grounds that it is vague and incomplete. For each location, the interrogatory requires Entity Defendants to "state what types of tasks are performed there (e.g., answering telephone calls, enrolling consumers, fee collections, etc.)." At the end of the response, Entity Defendants identified where "the Company's executive team," "the Company's finance team," and "a Company call center" are located. But Entity Defendants did not explain what tasks are performed by these teams and this call center. Defendants should supplement their response to include a complete statement of the tasks that are performed by each of these teams and this call center. In addition, to the extent there are other Company call centers that are located at other physical locations, they should be identified as part of a complete response.

Finally, to the extent that these locations or tasks have changed over the responsive time period (July 1, 2012 to the present), Entity Defendants must set that forth in their supplemented response.

Virginia Interrogatory No. 6: *Identify all of the banks at which the Company maintains accounts, and state the purpose for those accounts and the source of funds (e.g., Consumer monthly fee payments, collateral payments from Consumers, etc.).*

Entity Defendants' response is incomplete. Entity Defendants have only identified six bank accounts, when they have clearly used significantly more banks than this. It is also not clear that Entity Defendants have identified all bank accounts from July 2012 to the present. Further, for the accounts that Entity Defendants have identified, they do not clearly identify the purpose for the accounts or the source of funds (e.g., "Bank of America: Phasing out use of this bank."). Please supplement this response with the complete information.

Virginia Interrogatory No. 7: *State how much money Nexus and Libre received from Consumers for the Nexus Immigration Bond Service in each month.*

Entity Defendants' response is incomplete. Entity Defendants have only provided information beginning in February 2018. VAROG Instruction No. 2 requires Entity Defendants to provide information from July 1, 2012 to the present.

Virginia Interrogatory No. 8: *State Your gross revenue, before taxes, on an annual basis.*

Entity Defendants' response only provides information beginning in February 2018, despite VAROG Instruction No. 2, which requires Entity Defendants to provide information from July 1, 2012 to the present. Additionally, Entity Defendants' statement that "for years 2019 and beyond, there may be other non-Consumer revenue sources, but any such amounts equal less than 0.02% of total estimated gross revenues" necessarily implies that the information provided is not the gross revenue

Arent Fox LLP
December 15, 2021
Page 10 of 11

prior to 2019, and that after 2019, Entity Defendants have intentionally omitted responsive information.

Virginia Interrogatory No. 9: *Identify Your accountant, comptroller, or any other Person who has any responsibility for collecting, recording or analyzing information regarding the Company's finances.*

Entity Defendants' response is incomplete. Entity Defendants have identified current employees but appear to have omitted former employees engaged in the specified activities.

Document Retention

Entity Defendants' responses to NYROG Nos. 11 and 12 raise questions as to whether they have satisfied their duty to preserve discoverable material. *See Ackerson v. Rectors of the Univ. of Virginia*, No. 3:17-cv-00011, 2018 WL 3097346, *6 (W.D. Va. Apr. 11, 2018). In these responses, Entity Defendants state that communication data for "WhatsApp or other generic text messaging services," GroupMe, and Facebook Workplace was not "store[d] locally." Please clarify. In particular, please confirm (a) whether Defendants have preserved communications exchanged using these services and (b) whether they currently possess records of those communications. Further, to the extent Defendants did not preserve these communications, please explain (a) whether Defendants are able to acquire records of these communications from any source, including WhatsApp, GroupMe, and Facebook Workplace; and (b) whether Defendants have attempted to acquire records of communications from those sources.

Arent Fox LLP
December 15, 2021
Page 11 of 11

In addition, given this development, Plaintiffs are renewing their demand that Defendants
provide a complete response to Request No. 25 of Plaintiffs' First Requests for the
Production of Documents to Nexus Services, Inc. and Libre By Nexus, Inc., which demands:

> Documents and Communications sufficient to show the substantive and temporal
> scope of all litigation holds and/or document preservation policies and procedures
> implemented by the Company to preserve Documents and information, including
> those taken in response to this Action or in response to any of the Plaintiffs'
> Subpoenas or Civil Investigative Demands.

Sincerely,

Joseph P. Mueller
Assistant Attorney General
Counsel for the People of the State of New York


/s/ Erin Witte
Erin Witte
Counsel for Commonwealth of Virginia