IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| CONSUMER FINANCIAL | ) | Civil Action No. 5:21-cv-00016 |
| PROTECTION BUREAU, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| NEXUS SERVICES, INC., et al., | ) | |
| Defendants. | ) | By:   Joel C. Hoppe |
| | ) | United States Magistrate Judge |

Plaintiffs the Consumer Financial Protection Bureau ("CFPB"), the Commonwealth of Massachusetts, the People of the State of New York, and the Commonwealth of Virginia filed a seventeen-count complaint alleging that Defendants Nexus Services, Inc., Libre by Nexus, Inc., Micheal Donovan, Richard Moore, and Evan Ajin violated the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. §§ 5552, 5564, and similar state laws in administering "immigration bonds" for indigent consumers facing deportation. *See generally* Compl. 1–3, 6–47, ECF No. 1; Mem. Op. of Mar. 21, 2022, at 2–4, ECF No. 108.[1] The matter is before the Court further to its prior order denying in part and taking under advisement in part Defendants' "Revived Motion to Stay and Motion to Quash Third-Party Subpoenas," ECF No. 67 ("Defs.' Rev. Mot."). Order of Oct. 19, 2021, ECF No. 98. For the reasons explained below, the Revived Motion, ECF No. 67, as supplemented by Defendants' "Supplemental Brief and Motion to Quash or For Protective Order as to Plaintiffs' Third-Party Subpoenas," ECF No. 99, is hereby **DENIED in its entirety**.

I. Background

In August 2021, Plaintiffs' counsel issued third-party subpoenas duces tecum to twenty-nine banks and financial-services companies seeking information and business records related to

---

[1] Pinpoint citations to documents filed on the electronic case docket use the header page numbers generated by CM/ECF and the exhibit labels assigned by the filing party.

Defendants, as well as to two individuals and twenty entities who are not party to this litigation.[2] *See* Pls.' Br. in Opp'n 2, ECF No. 76. That September, Defendants moved to quash seven of those subpoenas, attached to their Revived Motion as Exhibits A to G, *see* Defs.' Rev. Mot., Decl. of Micheal Donovan ¶ 5, Exs. A–G, ECF No. 67-1, at 5–122, arguing that Defendants' financial information was not relevant to Plaintiffs' claims that Defendants violated state and federal consumer-protection laws, Defs.' Rev. Mot. 8–10; that the "extreme breadth and number of duplicative requests" unduly burdened the third-party recipients, *id.* at 11; and that Plaintiffs did not "need" the third parties to produce this information because they "already engaged in five years' worth of pre-complaint discovery through civil investigative demands and administrative proceedings, and ha[d] received at least 9 GB of documentary information from Defendants," *id.* at 10. Defendants did not initially challenge these subpoenas' separate requests that the recipient banks and financial-services companies produce information related to any non-party individuals and entities. *See id.* at 7–11; Defs.' Reply Br. 15–16 & n.6, ECF No. 84. "No third-party subpoena recipient ha[d] moved to quash or for a protective order" as of September 27, 2021. Pls.' Br. in Opp'n 2.

I denied Defendants' motion to quash these seven subpoenas to the extent they sought information about each Defendant's *own* accounts and records maintained by the recipient banks and financial-services companies. Order of Oct. 19, 2021, at 1. Although Defendants had a cognizable interest in protecting this information from disclosure, Plaintiffs "made a convincing argument" that their subpoenas were procedurally proper, sought information relevant to both

---

[2] The third-party subpoenas at issue here involve multiple "third parties" vis-à-vis Plaintiffs and Defendants. For simplicity's sake, I refer to the third-party *recipients* of those subpoenas (e.g., Fusion CPA, FirstBank Puerto Rico, American Express Company) as "third parties" and to the third-party *subjects* of the attached document requests (e.g., Homes by Nexus, Timothy Okonski, Nexus Caridades) as "nonparties" to the litigation.

Defendants' alleged liability and Plaintiffs' potential remedies, and were proportional to the needs of the case. Tr. of Hr'g on Defs.' Rev. Mot. 34, 39–40 (Oct. 14, 2021), ECF No. 97; *see generally id.* at 39–41. I took the motion under advisement "with respect to the 'Named Businesses' that are not Defendants to this lawsuit." Order of Oct. 19, 2021, at 1 (citing Defs.' Reply Br. 15–16 & n.6). While Defendants arguably waived that objection by raising it for the first time in their reply brief, *see Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734–35 (D. Md. 2006), the court must act "on its own" to "limit the frequency or extent of discovery otherwise allowed by the[] rules . . . if it determines that[] the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient [or] less burdensome," Fed. R. Civ. P. 26(b)(2)(C)(i), or "the proposed discovery is outside the scope permitted by Rule 26(b)(1)," Fed. R. Civ. P. 26(b)(2)(C)(iii). *See Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 364 (D. Md. 2008) (noting that "Rule 26(b)(2)(C) imposes an obligation on the Court, *sua sponte*, to[] 'limit the frequency or extent of discovery otherwise allowed by the rules if it determines that'" certain criteria are met (quoting Fed. R. Civ. P. 26(b)(2)(C) (cleaned up)).

As drafted, the seven subpoenas attached to Defendants' Revived Motion were broad enough that the Court needed to determine for itself whether Plaintiffs' requests for information related to the nonparties were both "relevant to any party's claims or defense and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1). *See* Fed. R. Civ. P. 26(b)(2)(C)(iii). Because Defendants first raised this issue in their reply brief, however, the parties did not have a full opportunity to brief it before the motion hearing on October 14, 2021. Thus, I ordered Defendants and Plaintiffs to each file one supplemental brief "addressing whether the Court should modify these subpoenas to exclude any of the non-party 'Named Businesses' listed in

paragraph 7" of Plaintiffs' subpoena to Fusion CPA, Order of Oct. 19, 2021, at 1–3 (citing Defs.'

Rev. Mot., Donovan Decl. Ex. A, Pls.' Subpoena to Fusion CPA ¶ 7 (Aug. 26, 2021), ECF No.

67-1, at 9)), and/or in Request for Production of Documents No. 1 of Plaintiffs' subpoenas to

FirstBank Puerto Rico, Trustco Bank Corp NY, American Express Company, Citibank,

Comerica Bank, and Westamerica Bancorporation.[3] *See generally* Defs.' Rev. Mot., Donovan

Decl. Ex. B, Pls.' Subpoena to FirstBank P.R. (Aug. 10, 2021), ECF No. 67-1, at 28–30; *id.* Ex.

C, Pls.' Subpoena to Trustco Bank Corp NY (Aug. 10, 2021), ECF No. 67-1, at 41–51; *id.* Ex. D,

Pls.' Subpoena to Am. Express Co. (Aug. 10, 2021), ECF No. 67-1, at 70–72; *id.* Ex. E, Pls.'

Subpoena to Citibank (Aug. 10, 2021), ECF No. 67-1, at 91–93; *id.* Ex. F, Pls.' Subpoena to

Comerica Bank (Aug. 10, 2021), ECF No. 67-1, at 110–12; *id.* Ex. G, Pls.' Subpoena to

Westamerica Bancorp. (Aug. 10, 2021), ECF No. 67-1, at 120; Tr. of Hr'g on Defs.' Rev. Mot.

42–52. I also denied, "without prejudice to refiling a properly supported motion," Defendants'

request to quash or modify any subpoena that was not attached to their Revived Motion,

including twenty-two other third-party subpoenas duces tecum that Defendants first referenced in

---

[3] Plaintiffs' subpoena to Fusion CPA defines the "Named Businesses" as Defendants "Libre by Nexus, Inc., [and] Nexus Services, Inc., and all of their predecessors, successors, present or former parents, subsidiaries, or affiliates, whether direct or indirect, including" sixteen entities that are not party to this litigation. Pls.' Subpoena to Fusion CPA ¶ 7, ECF No. 67-1, at 9. Those entities are: (i) Entertainment by Nexus, Inc.; (ii) Entlest Brands, Inc.; (iii) Homes by Nexus, Inc.; (iv) Nexus Caridades, Inc.; (v) Nexus Caridades Attorneys, Inc.; (vi) Nexus Commercial Ventures, LLC; (vii) Nexus Financial Services Corporation; (viii) Nexus Health, Inc.; (ix) Nexus Investigations & Security, Inc.; (x) Nexus Libre, Inc.; (xi) Nexus Monitoring, LLC; (xii) Nexus Programs, Inc.; (xiii) Nexus Properties, LLC; (xiv) One Fish Two Fish, LLC; (xv) Secure by Nexus, Inc.; and (xvi) Serve by Nexus, Inc. *Id.* Their six other third-party subpoenas request information about two non-party individuals, Timothy Okonski and Erik Schneider, and four non-party entities in addition to the sixteen entities listed above. *See, e.g.*, Pls.' Subpoena to FirstBank P.R. 3–5, at ¶ 1(f)–(bb), ECF No. 67-1, at 28–30. Those additional entities are: (xvii) Executive Investigation Consultants, LLC; (xviii) Fangistics, LLC; (xix) Fixify Solutions, LLC; and (xx) Nexus Services of Virginia, Inc. *Id.* ¶ 1(v)–(y). *See generally* Pls.' Supp'l Br. in Opp'n 6–8, ECF No. 100; Pls.' Supp'l Br. in Opp'n Ex. A, Decl. of Donald R. Gordon, Esq. ¶¶ 12–15 (describing each nonparty's financial or legal connection to at least one Defendant) (Nov. 16, 2021), ECF No. 100-1, at 5–6.

a footnote to their reply brief, *see* Defs.' Reply Br. 9 n.4, and raised at the motion hearing, *see* Tr. of Hr'g on Defs.' Rev. Mot. 34–35, 41–44. Order of Oct. 19, 2021, at 3 (emphasis omitted).

Defendants filed a supplemental brief, ECF No. 99 ("Defs.' Supp'l Br. in Supp."), and an unauthorized reply brief, ECF No. 101 ("Defs.' Supp'l Reply Br."). *See* Order of Oct. 19, 2021, at 2. Defendants' supplemental brief is also labeled a "Motion to Quash and for Protective Order" asking the Court to quash or modify "all of the 41 [third-party] subpoenas issued by Plaintiffs" as of November 2, 2021, Defs.' Supp'l Br. in Supp. 1–2, each of which is attached to the brief. *See generally* Decl. of Adam D. Bowser, Esq. ¶ 3(a)–(oo) (Nov. 2, 2021), ECF No. 99-1; *id.* Exs. A–L, ECF No. 99-2, at 1–252; *id.* Exs. M–Z, ECF No. 99-3, at 1–291; *id.* Exs. AA–HH, ECF No. 99-4, at 1–154; *id.* Exs. II–OO, ECF No. 99-5, at 1–127. Thus, Defendants' supplemental brief purports to challenge not only the seven subpoenas attached to their Revived Motion, *see* Bowser Decl. ¶ 3(b), (e), (g), (l)–(m), (y), (bb), but also the twenty-two subpoenas referenced in my Order of October 19, 2021, *see id.* ¶ 3(a), (c)–(d), (f), (h)–(k), (n)–(x), (z)–(aa), and thirteen other subpoenas that Plaintiffs served on additional third parties a few days before I issued that Order, *see id.* ¶ 3(cc)–(oo).[4] *See generally* Defs.' Supp'l Br. in Supp. 3, 5–6 & n.4.

---

[4] Defendants should have moved to quash each subpoena in the court for the district where the respective third-party recipient's "compliance is required," Fed. R. Civ. P. 45(d)(1), rather than filing an omnibus discovery motion in the court where this action is pending, Fed. R. Civ. P. 26(c). *See generally Sines v. Kessler*, No. 3:17cv72, 2018 U.S. Dist. LEXIS 133124, at *5 (Apr. 20, 2018) (collecting cases). Rule 45 "give[s] 'the court for the district where compliance [with a subpoena] is required,' and not the litigation court from which a subpoena must issue, primary authority over disputes about subpoenas directed at nonparties located within the compliance court's territorial jurisdiction." *Id.* (citing Fed. R. Civ. P. 45(a)–(f)). "However, Rule 26 also provides that '[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending,' and that the litigation 'court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden.'" *Id.* (quoting Fed. R. Civ. P. 26(c)(1)). Defendants' Revived Motion sought an order shielding Defendants' own financial information from disclosure in response to Plaintiffs' third-party subpoenas, *see* ECF No. 67, and their "Supplemental Brief and Motion" expressly seeks a "protective order" against what Defendants believe are Plaintiffs' "overbroad" requests for the nonparties' "irrelevant" information, *see* Defs.' Supp'l Br. in Supp. 1–3, 5, 7–8, 11. Accordingly, I consider Defendants' remaining requests under Rule 26(c), and not under Rule 45(d). *See, e.g.*, *Sines*, 2018 U.S. Dist. LEXIS 133124, at *5 (considering defendant's motion to quash plaintiffs' third-party subpoenas

Twenty-eight of those subpoenas direct the third-party recipient to produce from its own business records "Documents sufficient to Identify all Accounts," as well as account statements and related communications, that each of the following non-party Entities "owned, created, were beneficiaries of, or had rights to sign on or make changes to":

i.      Entertainment by Nexus, Inc.;

ii.     Entlest Brands, Inc.;

iii.    Executive Investigation Consultants, LLC;

iv.     Fangistics, LLC;

v.      Fixify Solutions, LLC;

vi.     Homes by Nexus, Inc.;

vii.    Nexus Caridades, Inc.;

viii.   Nexus Caridades Attorneys, Inc.;

ix.     Nexus Commercial Ventures, LLC;

x.      Nexus Financial Services Corporation;

xi.     Nexus Health, Inc.;

xii.    Nexus Investigations & Security, Inc.;

xiii.   Nexus Libre, Inc.;

xiv.    Nexus Monitoring, LLC;

xv.     Nexus Programs, Inc.;

xvi.    Nexus Properties, LLC;

xvii.   Nexus Services of Virginia, Inc.;

xviii.  One Fish Two Fish, LLC;

xix.    Secure by Nexus, Inc.;

xx.     Serve by Nexus, Inc.; and

---

seeking information related to nonparties under Rule 26(c)); *cf. Sirpal v. Fengrong Wang*, Civ. No. WDQ-12-0365, 2012 WL 2880565, at *4 n.12 (D. Md. July 12, 2012) ("[T]he Court could consider the [plaintiff's] motion [to quash third-party subpoena] as one for a protective order, and consider the Rule 26 factors, including relevance, in deciding the motion."); *In re Verizon Wireless*, 2019 WL 4415538, at *6 (D. Md. Sept. 16, 2019) (concluding that movants did not have standing to challenge third-party subpoena under Rule 45, but relying on Rule 26(b)(2)(C)(iii) to quash subpoena which did "not satisfy the [Rule's] proportionality concerns as the 'proposed discovery outweigh[ed] its likely benefit'").

xxi.     "[a]ny other Entity that has Timothy J. Okonski or Erik Schneider listed as having
rights to sign on or make changes to the account[.]"

*See, e.g.*, Pls.' Subpoena to FirstBank P.R. 3–5, at ¶1(f)–(y), (bb) (entities listed in alphabetical
order), ECF No. 67-1, at 28–30; *see generally* Defs.' Supp'l Br. in Supp. 3 ("As Defendants
further noted, and as Plaintiffs did not dispute at the hearing held on October 14, 2021, the 29
subpoenas are substantively identical as to the scope of information sought, including as to the
Non-Parties."). The subpoena to Fusion CPA requests similar financial information and business
records related to each nonparty listed above except Mr. Okonski, Mr. Schneider, Executive
Investigation Consultants, Fangistics, Fixify Solutions, and Nexus Services of Virginia. *See* Pls.'
Subpoena to Fusion CPA ¶¶ 5–9, Req. for Prod. of Docs. Nos. 1–11, ECF No. 67-1, at 8–9, 11–
12.

The thirteen more recent subpoenas are directed to insurance or bonding agencies, *see,
e.g.*, Defs.' Supp'l Br. in Supp. Ex. DD, Pls.' Subpoena to Align Gen. Ins. Agency (Oct. 13,
2021), ECF No. 99-4, at 68–81; *id.* Ex. JJ, Pls.' Subpoena to Brian Jerome Cole & Statewide
Bonding, Inc. (Oct. 14, 2021), ECF No. 99-5, at 20–37, and three companies that Defendant
Libre by Nexus allegedly contracted with "to lease GPS-enabled monitors" and to "provide GPS-
location data about" clients awaiting immigration hearings, Compl. ¶¶ 80–92; *see, e.g.*, Defs.'
Supp'l Br. in Supp. Ex. NN, Pls.' Subpoena to Omnilink Sys., Inc. (Oct. 14, 2021), ECF No. 99-
5, at 93–110. They seek documents reflecting any agreements, communications, contracts, and
financial transactions, including those related to immigration bonds and GPS-enabled tracking
devices, between "Defendants" and the third-party subpoena recipient. *See, e.g.*, Defs.' Supp'l
Br. in Supp. Ex. DD, Pls.' Subpoena to Align Gen. Ins. Agency, Req. for Prod. of Docs. Nos. 1–
7, ECF No. 99-4, at 70–72; Defs.' Supp'l Br. in Supp. Ex. NN, Pls.' Subpoena to Omnilink Sys.,
Inc., Req. for Prod. of Docs. Nos. 1–7, ECF No. 99-5, at 98–99. These subpoenas define

"Defendants" to mean Defendants Donovan, Moore, Ajin, Nexus Services, Libre by Nexus, "and all of their predecessors, successors, present or former parents, subsidiaries, or affiliates, whether direct or indirect, including" the same sixteen non-party entities listed in Plaintiffs' subpoena to Fusion CPA. *Compare* Defs.' Supp'l Br. in Supp. Ex. DD, Pls.' Subpoena to Align Gen. Ins. Agency ¶ 4, ECF No. 99-4, at 68, *with* Pls.' Subpoena to Fusion CPA ¶ 7, ECF No. 67-1, at 9.

Defendants primarily argue that financial information related to the non-party individuals and entities "is facially irrelevant to Plaintiffs' claims," as defined only by Plaintiff's factual allegations in their Complaint and is therefore "outside the scope of permissible discovery" under Rule 26(b)(1). *See generally* Defs.' Supp'l Br. in Supp. 5–10; *e.g.*, *id.* at 2 ("[T]hese [non]parties do not even make a cameo appearance in Plaintiffs' Complaint, and information concerning them is therefore facially irrelevant."); *id.* at 4 ("Plaintiffs then drafted a 50-page complaint, and never *once* even hinted at the Non-Parties being relevant to their claims. The only reasonable conclusion one can draw from these facts: the Non-Parties *are* entirely irrelevant to Plaintiffs' claims."); *id.* at 5 ("Mr. Schneider was not mentioned in the Complaint, let alone named as a party. Thus, the government Plaintiffs are seeking the most granular and sensitive financial records of a . . . small business that has no apparent relevance to Plaintiffs' claims."); *id.* at 8 ("There is no defensible way to interpret . . . any allegation in the Complaint[] as bringing anything related to the Non-Parties within the scope of Rule 26."). Defendants also argue that, even if the information is relevant, Plaintiffs "must 'be able to explain why [they] cannot obtain the same information, or comparable information that would also satisfy [their] needs, from one of the'" Defendants before Plaintiffs can request this information from the third-party subpoena recipients. *See id.* at 7 (quoting *Jordan*, 921 F.3d at 189). Defendants assert that "the Court should modify all of the 41 subpoenas issued by Plaintiffs to date, or issue a comparable

protective order, so as to prevent Plaintiffs from conducting irrelevant fishing expeditions into these [non]parties." *Id.* at 2. Aside from asking the Court to "preclud[e] Plaintiffs from seeking discovery on the Non-Parties," *id.* at 11, however, Defendants do not propose any specific modifications to the subpoenas as drafted. *See id.* at 2–11; Pls.' Supp'l Br. in Opp'n 5 & n.9; Fed. R. Civ. P. 26(c)(1)–(2).

Separately, Defendants assert that Plaintiffs' subpoenas to the twenty-nine banks or financial-services companies failed to comply with the Right to Financial Privacy Act ("RFPA") of 1978, thus violating the rights of "the Non-Party Individuals named in th[ose] subpoenas, Tim Okonski and Eri[k] Schneider,"[5] *id.* at 10–11 (citing 12 U.S.C. §§ 3401–3407). They urge the Court to quash these subpoenas on that basis alone "regardless of whose records were being indiscriminately requested by Plaintiffs." *Id.* at 11.

Plaintiffs filed a supplemental response brief opposing Defendants' requests to quash or modify the subpoenas issued to the twenty-nine banks and financial-services companies. *See generally* Pls.' Supp'l Br. in Opp'n 4–13. They argue that Defendants lack standing to assert Mr. Okonski's and Mr. Schneider's rights under the RFPA, *id.* at 11–12; that the business records and financial information sought in the third-party subpoenas are relevant to the claims and defenses in this action and Plaintiffs may ask third parties to produce that information because

---

[5] Plaintiffs' subpoena to Fusion CPA does not specifically request information related to Mr. Okonski or Mr. Schneider. *See generally* Pls.' Subpoena to Fusion CPA ¶¶ 5–9, Req. for Prod. of Docs. Nos. 1–11, ECF No. 67-1, at 8–9, 11–12. Their subpoenas directed to twenty-eight other banks and financial-services companies request "Documents sufficient to Identify all Accounts that each of the [listed] Persons [and Entities] owned, created, were beneficiaries of, or had rights to sign on or make changes to," Pls.' Subpoena to FirstBank P.R. 3–5, at ¶ 1(a)–(z), ECF No. 67-1, at 28–30, including "[a]ny other Entity that has Timothy J. Okonski or Erik Schneider listed as having rights to sign on or make changes to the account," *id.* ¶ 1(bb), ECF No. 67-1, at 30. *See, e.g.*, Pls.' Subpoena to Am. Express Co. 3–5, at ¶ 1(a)–(z), (bb), ECF No. 67-1, at 70–72; Pls.' Subpoena to Ally Fin. 7–9, at ¶1(a)–(y), (aa) (Aug. 21, 2021), ECF No. 99-2, at 7–9; *see generally* Defs.' Supp'l Br. in Supp. 3 ("[T]he 29 subpoenas are substantively identical as to the scope of information sought, including as to the Non-Parties.").

Defendants have refused to provide it themselves, *see id.* at 4–11; and that Defendants' request is untimely with respect to twenty-two subpoenas not attached to their original motion "because the dates for response to those subpoenas ha[d] passed," *id.* at 3, before Defendants moved to quash them in November 2021, *id.* at 12–13 (citing Fed. R. Civ. P. 45(d)(3)(A)).

## II. The Legal Framework

"All civil discovery" into nonprivileged matters, "whether sought from parties or nonparties, is limited in scope by Rule 26(b)(1) in two fundamental ways. First, the matter sought must be 'relevant to any party's claim or defense.'" *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019) (quoting Fed. R. Civ. P. 26(b)(1)); *see Bell, Inc. v. GE Lighting, LLC*, No. 6:14cv12, 2014 WL 1630754, at *6 (W.D. Va. Apr. 23, 2014) ("The scope of discovery for a nonparty litigant under a subpoena duces tecum is the same as the scope of a discovery request made upon a party to the action, and a party is entitled to information that is relevant to a claim or defense in the matter at issue." (cleaned up)). "Relevance is not, on its own, a high bar." *Jordan*, 921 F.3d at 188; *see, e.g.*, *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) ("[R]elevance is still to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "There may be a mountain of documents . . . that are relevant in some way to the parties' dispute, even though much of it is uninteresting or cumulative." *Jordan*, 921 F.3d at 188. Rule 26(b)(1) therefore imposes a second requirement that discovery into relevant matters "must also be 'proportional to the needs of the case.'" *Id.* (quoting Fed. R. Civ. P. 26(b)(1)). "Proportionality requires courts to consider, among other things, 'whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Id.* (quoting Fed. R. Civ. P. 26(b)(1)). "This relieves

parties from the burden of taking unreasonable steps to ferret out every relevant document."[6] *Id.*; *see also* Fed. R. Civ. P. 26(g)(1)(B)(ii)–(iii).

"A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending[.]" Fed. R. Civ. P. 26(c)(1). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" *Id.* "This undue burden category 'encompasses situations where [a] subpoena seeks information irrelevant'" to the parties' claims or defenses, *HDSherer LLC v. Natural Molecular Testing Corp.*, 292 F.R.D. 305, 309 (D.S.C. 2013) (quoting *Cook v. Howard*, 484 F. App'x 805, 812 n.7 (4th Cir. 2012)), or is so broad that it is not proportional to the needs of the case, *In re Verizon Wireless*, 2019 WL 4415538, at *6 ("A subpoena imposes an undue burden on a party when [it] is overbroad.") (citing *In re Subpoena Duces Tecum to AOL*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008)); *cf. Jordan*, 921 F.3d at 190 ("Another type of burden arises when a subpoena is overbroad—that is, when it seeks information beyond what the requesting party reasonably requires" from the nonparty) (citing Fed. R. Civ. P. 45(d)(3)(A)(iv)). "[T]he

---

[6] "When discovery is sought from *nonparties*, however, its scope must be limited even more." *Jordan*, 921 F.3d at 189 (emphasis added). "Nonparties are strangers to the litigation, and since they have no dog in the fight, they have a different set of expectations from the parties themselves. Bystanders should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery." *Id.* (cleaned up). "A more demanding variant of the proportionality analysis therefore applies when determining whether, under Rule 45, a subpoena issued against a nonparty 'subjects a person to undue burden' and must be quashed or modified." *Id.* (quoting Fed. R. Civ. P. 45(d)(3)(A)(iv)). "As under Rule 26, the ultimate question is still whether the benefits to the requesting party outweigh the burdens on the recipient." *Id.* But, *Jordan* instructs that lower "courts must give the recipient's nonparty status special weight" in evaluating "not just the relevance of the information sought, but [also] the requesting party's need for it" and whether the "information is available to the requesting party from other sources." *Id.* (cleaned up). The movant still bears the burdens of proof and of persuasion on a motion to quash under Rule 45(d). *Id.* at 189 n.2 ("We do not mean to imply that, on a motion to quash, the requesting party bears the burdens of proof and of persuasion. The moving party bears those burdens."). "But the[se] are not terribly difficult burdens to meet if the requesting party cannot articulate its need for the information and address obvious alternative sources." *Id.* Additionally, "[a] nonparty should not have to do the work of tailoring a subpoena to what the requesting party needs; the requesting party should have done that before serving it." *Id.* at 190.

burden is on the party resisting discovery to explain specifically why its objections, including those based on irrelevance, are proper given the broad and liberal construction of federal discovery rules." *Desrosiers v. MAG Indus. Automation Sys.*, 675 F. Supp. 2d 598, 601 (D. Md. 2009); *accord Stone v. Trump*, 453 F. Supp. 3d 758, 766 (D. Md. 2020) ("[T]he party resisting discovery bears the burden of persuasion and not the party seeking discovery."). "Specifically, the movant must make a particularized showing" that the information sought is either irrelevant or not proportional to the needs of the case. *Mainstreet Collection, Inc. v. Kirkland's Inc.*, 270 F.R.D. 238, 241 (E.D.N.C. 2010). "[C]onclsuory or generalized statements" opposing discovery "fail to satisfy this burden as a matter of law." *Id.* (citing *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402–03 (4th Cir. 2003)); *accord Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006) ("In order to establish good cause [under Rule 26(c)], a proponent may not rely upon stereotyped and conclusory statements, but must present a particular and specific demonstration of fact, as to why a protective order should issue." (internal quotation marks omitted)).

## III. Discussion

The Court must address two issues before turning to the merits of Defendants' objections. First, Plaintiffs argue that Defendants' motion to quash or for protective order is untimely with respect to twenty-two subpoenas not attached to their Revived Motion "because the dates for response to those subpoenas ha[d] passed," Pls.' Supp'l Br. in Opp'n 3, before Defendants moved to quash them, *id.* at 12–13 (citing Fed. R. Civ. P. 45(d)(3)(A)). Rule 45(d) requires that a motion to quash or modify a subpoena be "timely," Fed. R. Civ. P. 45(d)(3)(A), which typically means the motion must be filed "before the earlier of the time specified [in the subpoena] for compliance or 14 days after the subpoena is served," Fed. R. Civ. P. 45(d)(2)(B). *See Williams v.*

*Big Picture Loans, LLC*, 303 F. Supp. 3d 434, 442 (E.D. Va. 2018) (collecting cases). As explained, however, the Court is considering Defendants' request for protective order as to the nonparties' information under Rule 26(b)–(c), and not under Rule 45(d)(3)(A). *See supra* n.4. Rule 26(c) does not explicitly limit the time within which a party must move for a protective order.[7] *See Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 413 (M.D.N.C. 1991) (citing Fed. R. Civ. P. 26(c)(1)). Courts typically will entertain a motion for a protective order if it is made before the discovery deadline, *see, e.g.*, *id.*, which is still several months away in this case, ECF Nos. 66, 113. Accordingly, Defendants' request for a protective order is not untimely.

Next, Plaintiffs argue that Defendants are not entitled to the remaining relief sought in their motion—i.e., that the Court quash the third-party subpoenas and "preclud[e] Plaintiffs from seeking discovery on the Non-Parties," Defs.' Supp'l Br. in Supp. 11—because Defendants cannot assert a nonparty's legal rights or interests. Pls.' Supp'l Br. in Opp'n 11–12. "Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena." *United States v. Idema*, 118 F. App'x 740, 744 (4th Cir. 2005); *accord Warth v. Seldin*, 422 U.S. 490, 499 (1975) (noting that a litigant "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"). I previously found that Defendants had a personal right or interest in protecting their *own* financial information from disclosure, although their reasons for quashing the seven third-party subpoenas failed on the merits. Order of Oct. 19, 2021, at 1.

---

[7] Rule 26(b)(2) likewise contains no timeframe within which a court should limit discovery "on its own . . . if it determines" the information sought is unreasonably cumulative or duplicative, can be obtained from some other source, or is outside the scope permitted by Rule 26(b)(1), or the party seeking discovery had ample opportunity to obtain the information by discovery in the action, Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii). *See, e.g.*, *Harrison v. Kennedy*, No. 3:18cv57, 2019 WL 3712187, at *2 (D.S.C. Aug. 7, 2019) (relying on Rule 26(b)(2)(C) to quash subpoenas that sought "untimely and impermissible discovery").

The remaining information sought by those (and twenty-two other) subpoenas relates only to the nonparties' "financial records and communications with the banks," Defs.' Supp'l Br. in Supp. 6. *See* Order of Oct. 19, 2021, at 1. Defendants do not claim any "personal right to, or privilege in," that information, *Idema*, 118 F. App'x at 744. *See generally* Defs.' Supp'l Br. in Supp. 2, 5–6, 8, 10–11 (discussing only the nonparties' rights and interests). Instead, they argue that Plaintiffs' subpoenas seeking Mr. Okonski's and Mr. Schneider's financial records should be quashed because they "facially violate [the] RFPA's notice and certification requirements," Defs.' Supp'l Br. in Supp. 6 (citing 12 U.S.C. §§ 3403(b), 3407(2)), and the "RFPA provides a clearly recognized right to bank customers to object to their financial information being disclosed to government authorities," *id.* at 10 (citing 12 U.S.C. §§ 3403, 3407).[8] This argument fails because Defendants are not "the customer[s] to whom the [remaining] financial records sought by the Government authority pertain." 12 U.S.C. § 3410(c) ("If the court finds that the applicant is not the customer to whom the financial records sought by the Government authority pertain, . . . it shall deny [any] motion or application" to quash the subpoena); *see also Hugler v. Chimes Dist. of Columbia*, No. RDB-15-3315, 2017 WL 1176031, at *2–3 (D. Md. Mar. 30, 2017) (noting that RFPA's notice-and-certification requirements "appl[y] only to financial records of individuals or partnerships of five or fewer individuals. The RFPA does not protect corporations, associations, larger partnerships, . . . or other legal entities").

___

[8] Section 3403(b) dictates that "[a] financial institution shall not release the financial records of a customer until the Government authority seeking such records certifies in writing to the financial institution that it has complied with the applicable provisions of this chapter." 12 U.S.C. § 3403(b). Section 3407(2) allows a Government authority to "obtain financial records under section 3403(4) of this [T]itle pursuant to a judicial subp[o]ena only if . . . a copy of the subp[o]ena has been served upon the customer or mailed to his last known address on or before the date on which the subp[o]ena was served on the financial institution together with [a prescribed] notice which shall state with reasonable specificity the nature of the [underlying] law enforcement inquiry." *Id.* § 3407(2). Defendants assert that "[t]he 29 subpoenas" issued to financial institutions violate the "RFPA on their face because" Plaintiff CFPB "indisputably did not attempt to comply with its notice and certification requirements under [this] law." Defs.' Supp'l Br. in Supp. 11.

14

To the extent Defendants address the standing issue at all, *see* Pls.' Supp'l Br. in Opp'n 11–12, Defendants suggest that they can vicariously assert Mr. Okonski's and Mr. Schneider's personal "privacy rights" because "the Fourth Circuit has "directed" lower courts to protect the 'privacy or confidentiality interests' of 'others who might be affected' by a subpoena." *See* Defs.' Supp'l Reply Br. 7 (quoting *Jordan*, 921 F.3d at 190) ("Under *Jordan*, the Court is clearly empowered—indeed, directed—to protect innocent bystanders from the Plaintiffs' overreach here.").

In *Jordan*, the Virginia Department of Corrections ("VDOC") moved under Rule 45(d) to quash aspects of a third-party subpoena directing it to produce its own records relating to executions. *See generally* 921 F.3d at 184–87. The VDOC's previous responses to the subpoena "provided much of the requested information," *id.* at 186, but it objected to producing other information, including documents that would have revealed "how Virginia has obtained its execution drugs" and "the identities of the people who carry out Virginia's executions," *id.* at 185 & n.1. The district court held that requiring the VDOC to produce additional documents imposed an "undue burden" on the state agency, Fed. R. Civ. P. 45(d)(3)(A)(iv), and it granted the VDOC's motion to quash for that reason. *Id.* at 186–87 (summarizing district court's findings that the "VDOC's prompt responses had provided much of the requested information," "[a]dditional information was unlikely to be relevant to the key issue" in the underlying litigation, plaintiffs "failed to explain what relevant information they could receive from [defendant] Mississippi officials, casting more doubt on their need for additional discovery from VDOC" and "further disclosures would burden Virginia's ability to obtain lethal-injection drugs" that it needed "to carry out lawful executions").

15

The Fourth Circuit affirmed the district court's order under Rule 45(d)(3). *See generally id.* at 188–94. In doing so, the panel noted that "a subpoena *may* impose a burden by invading privacy or confidentially interests" and that "[c]ourts *may* consider the interests of the recipient of the subpoena, as well as others who might be affected" by it, in determining if such invasion constitutes an "undue burden" that requires the court to quash or modify the subpoena. *Id.* at 191 (emphasis added) (citing Fed. R. Civ. P. 45(d)(3)(A)(iv)). Contrary to Defendants' position, Defs.' Supp'l Reply Br. 6–7, this language does not "direct" lower courts to always "consider the interests of . . . others who might be affected" by a third-party subpoena, *Jordan*, 921 F.3d at 189. *See Jordan*, 921 F.3d at 188 ("District courts enjoy considerable discretion in overseeing discovery, and we will disturb a district court's discovery rulings only if we find an abuse of that discretion." (internal quotation marks omitted)). Moreover, unlike the VDOC in *Jordan*, Defendants here claim no cognizable interest in either the information sought by Plaintiffs' third-party subpoenas or the procedure by which Plaintiffs may have obtained that information, Defs.' Supp'l Reply Br. 6–7. Accordingly, Defendants have not demonstrated standing to challenge any of Plaintiffs' subpoenas to the extent they seek information related to Mr. Okonski, Mr. Schneider, or the non-party entities.

Nonetheless, the Court must ensure that discovery stays within the scope permitted by Rule 26(b)(1). *Mancia*, 253 F.R.D. at 364; Fed. R. Civ. P. 26(b)(2)(C)(iii). Defendants broadly object that the financial information related to "the Non-parties [is] entirely irrelevant to Plaintiffs' claims" because most of those nonparties "are never mentioned in the Complaint," Defs.' Supp'l Br. in Supp. 5 (emphasis omitted), and "the only reference to affiliated [non-party] entities" in the Complaint is one "throw-away" allegation that "has no independent significance" for Plaintiffs' CPFA claims against Defendants, *id.* at 4 (emphasis omitted) (citing Compl. ¶ 79).

16

That is the wrong legal standard. The question is whether the information sought is "relevant to *any party's* claim *or* defense," not whether the plaintiff's complaint alleges certain facts. Fed. R. Civ. P. 26(b)(1) (emphasis added); *see Bell*, 2014 WL 1630754, at *6 ("The scope of discovery for a nonparty . . . is the same as the scope of a discovery request made upon a party to the action, and a party is entitled to information that is relevant to a claim or defense in the matter at issue." (cleaned up)). "While the pleadings will be important" in determining whether information is discoverable, "it would be a mistake to argue that no fact may be discovered unless it directly correlates with a factual allegation in the complaint or answer." *Thompson v. Dep't of Hous. & Urban Dev.*, 199 F.R.D. 168, 171–72 (D. Md. 2001). "[A] fact must simply be 'germane to a claim or defense in the pleading' and, in determining whether a discovery request is relevant, courts 'must look beyond the allegation of a claim or defense to the controlling substantive law.'" *In re Short*, No. 21-50463, 2022 WL 301659, at *5 (Bankr. M.D.N.C. Jan. 28, 2022) (quoting 6 Moore's Federal Practice § 26.42 (3d ed. 2021)); *see also In re Am. Med. Sys., Inc.*, MDL No. 2325, 2016 WL 3077904, at *4 (D. Md. May 31, 2016) ("Rule 26(b)(1) does not precisely define relevancy. Certainly, information is relevant if it logically relates to a party's claim or defense."). Here, the Court looks to the CFPA and state consumer-protection laws to determine whether the information sought is relevant under Rule 26(b)(1). *See generally* Compl. ¶¶ 142–251.

Defendants also urge the Court to use "the more exacting standards that apply to non-party discovery" in determining whether to "quash or modify" Plaintiffs' third-party subpoenas. Defs.' Supp'l Br. in Supp. 6 (citing *Jordan*, 921 F.3d 180). As noted, *Jordan* involved nonparty VDOC's motion to quash a subpoena seeking that state agency's records relating to executions. *See generally* 921 F.3d at 184–87. The district court excused the VDOC from producing any

additional records under Rule 45(d)(3)(A)(iv), and the Fourth Circuit affirmed. In doing so, the panel explained that "[n]onparties are strangers to the litigation, and since they have no dog in the fight, they . . . . should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery." *Id.* at 189 (cleaned up). "A more demanding variant of the [Rule 26(b)(1)] proportionality analysis therefore applies when determining whether, under Rule 45, a subpoena issued against a nonparty 'subjects a person to undue burden' and must be quashed or modified." *Id.* (quoting Fed. R. Civ. P. 45(d)(3)(A)(iv)). "As under Rule 26, the ultimate question is still whether the benefits to the requesting party outweigh the burdens on the recipient." *Id.* "But courts must give the recipient's nonparty status special weight, leading to an even more demanding and sensitive inquiry than the one governing discovery generally." *Id.* (internal quotation marks omitted). For example, "courts should consider not just the relevance of the information sought, but the requesting party's need for it" and whether the "information is available to the requesting party from" the parties to the litigation "or, in appropriate cases, from third parties that would be more logical targets to for the subpoena." *Id. Johnson* further instructs that, while the moving party "bears the burdens of proof and of persuasion" on a motion to quash under Rule 45(d), "they are not terribly difficult burdens to meet if the requesting party cannot articulate its need for the information and address obvious alterative sources." *Id.* at 189 n.2.

Applying this "more demanding and sensitive inquiry" makes sense when the nonparty recipient of a subpoena seeks the court's protection under Rule 45(d)(3) to avoid undue burden. *See, e.g.*, *Jordan*, 921 F.3d at 184; *Gilmore v. Jones*, 339 F.R.D. 111, 114 (W.D. Va. 2021) (granting nonparty recipients' motions to quash subpoenas under Rule 45(d)(3)(A)(iv)). It makes considerably less sense when the nonparty recipient is not the one resisting discovery. Here, it is

Defendants—certainly no strangers to this litigation—who moved under Rule 26(c)(1) to quash subpoenas to which the third-party recipients must respond. They do not cite any cases where a court has applied "a more demanding variant of the proportionality analysis," *Jordan*, 921 F.3d at 189, when determining whether, under Rule 26(c), there is "good cause[ to] issue an order to protect a party or person from . . . undue burden," Fed. R. Civ. P. 26(c)(1). *See generally* Defs.' Supp'l Br. in Supp. 6–7, 8 (citing *Jordan*, 921 F.3d at 189–90). Accordingly, the Court reviews Plaintiffs' third-party subpoenas under the relevancy and proportionality standards in Rule 26(b)(1). *See, e.g.*, *Singletary v. Sterling Transp. Co., Inc.*, 289 F.R.D. 237, 240–42 (E.D. Va. 2012) (granting plaintiff's motion to quash defendant's third-party subpoenas seeking plaintiff's "entire employment file from his former employers" because they were "both overbroad and not tailored" to return only such information that would be relevant to plaintiff's claims against defendant) (citing Fed. R. Civ. P. 26(b)(2)(C)(iii), (c)(1)).

Defendants do not specifically articulate why the nonparty information sought in Plaintiffs' subpoenas is "irrelevant" to the claims or defenses in this action or "not proportional" to the needs of the case. *See generally* Defs.' Supp'l Br. in Supp. 3–5, 7–10. "Instead, Defendants mistakenly try to shift the burden of persuasion off of themselves and onto Plaintiff[s] as the requesting party," *Bonumose Biochem, LLC v. Zhang*, No. 3:17cv33, 2018 WL 10068639, at *2 n.3 (W.D. Va. Sept. 10, 2018). *See, e.g.*, Defs.' Supp'l Br. in Supp. 8 ("To be clear, it is not Defendants' responsibility here to prove a negative, i.e., that the Non-Parties are *not* relevant to Plaintiffs' claims."). Defendants are "resisting discovery" here, and they bear the burden "to explain specifically why [their] objections, including those based on irrelevance, are proper given the broad and liberal construction of federal discovery rules." *Desrosiers*, 675 F. Supp. 2d at 601. They have not done so. *See Mainstreet Collection*, 270 F.R.D. at 241 ("[T]he

movant must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law."); *Baron Fin. Corp.*, 240 F.R.D. at 202 ("[T]o establish good cause [under Rule 26(c)], a proponent may not rely upon stereotyped and conclusory statements, but must present a particular and specific demonstration of fact, as to why a protective order should issue." (internal quotation marks omitted)).

Moreover, Plaintiffs argued persuasively that information about Defendants' business and financial relationships with the non-party entities and individuals "is relevant because it 'logically relates' to claims and fact[s]" at issue in this case, *Bonumose*, 2018 WL 10068639, at *2 (quoting *In re Am. Med. Sys.*, 2016 WL 3077904, at *4), including potential remedies if Plaintiffs prevail on their CFPA claims. *See* Pls.' Br. in Opp'n 8–9. Plaintiffs also produced evidence demonstrating that Defendants Donovan, Moore, and Ajin are the "sole owners" of Defendant Nexus, "which in turn wholly owns" several non-party entities listed in Plaintiffs' subpoenas,[9] Gordon Decl. ¶ 12 (citing *id.* Ex. A-5), and that "Nexus Programs, Inc. is a 'predecessor entity . . . providing bond securitization services for [immigration] detainees thought the use of GPS devices,'" Gordon Decl. ¶ 13 (quoting *id.* Ex. A-6, ECF No. 100-1, at 43). Public records also show that Defendants Donovan, Moore, and/or Ajin are listed as a

---

[9] Those entities are Entertainment by Nexus, Homes by Nexus, Nexus Commercial Ventures, Nexus Investigations & Security, Nexus Properties, One Fish Two Fish, Secure by Nexus, and Serve by Nexus. *See* Gordon Decl. ¶ 12, ECF No. 100-1, at 5; *id.* Ex. A-5 (true and correct copy of chart showing Nexus's "organizational structure and personnel hierarchy and the relationship of all affiliated entities, including parent and subsidiary status," produced by Nexus in response to Plaintiff CFPB's civil investigative demand dated August 21, 2017), ECF No. 100-1, at 39. These Nexus "subsidiaries all ha[d] their principal place of business at 113 Mill Place Parkway" in Verona, Virginia. *Id.* Ex. A-6, ECF No. 100-1, at 43. In February 2016, Defendants Nexus, Donovan, and Moore further identified Nexus Libre and Nexus Caridades as "subsidiary compan[ies] of Nexus Services, Inc." that had "either a financial interest in or other interest which could be substantially affected by the outcome of" pending litigation. *Id.* Ex. A-7, Joint Statement of Interested Parties, *Omnilink Sys. v. Nexus Programs, Inc.*, No. 1:15cv3181 (N.D. Ga. Feb. 5, 2016), ECF No. 100-1, at 49. Public records show that Executive Investigation Consultants, Nexus Caridades Attorneys, Nexus Financial Services Corporation, Nexus Health, and Nexus Monitoring also have their principal place of business at 113 Mill Place Parkway in Verona, Virginia. *See* Pls.' Supp'l Br. in Opp'n 6 n.12.

director for nonparties Entlest Brands, Fangistics, Fixify Solutions, Nexus Financial Services Corporation, Nexus Health, and Nexus Services of Virginia. Pls.' Supp'l Br. in Opp'n 6 n.12. Plaintiffs note that these entities' assets may be "attributable to those Defendants who own or control them." *Id.* Plaintiffs also produced compelling evidence that significant amounts of money have been transferred between Defendants Nexus and/or Libre and Mr. Okonski, Fangistics, Fixify Solutions, and Entlest Brands, as well as between Nexus Services of Virginia, and Executive Investigation Consultants, Fangistics, and Fixify Solutions. *See* Pls.' Supp'l Br. in Opp'n 5, 7–8; *see, e.g.*, *id.* Ex. A-8, Decl. of Raymond Peroutka Jr. ¶¶ 5–18 (Nov. 7, 2018), *RLI v. Nexus Servs., Inc.*, No. 5:18cv66 (W.D. Va. filed Apr. 12, 2018). Mr. Okonski was Nexus's Chief Financial Officer and likely had "rights to sign or make changes on the accounts" belonging to Nexus and/or its subsidiary entities. Pls.' Supp'l Br. in Opp'n 8 n.25. Mr. Schneider is also a longtime executive at Nexus and, along with Defendant Donovan, is listed in public records as a director of Nexus Financial Services Corporation. *See id.* at 6 n.12. Plaintiffs correctly note that their "subpoenas seek documents concerning *entities* in which Mr. Okonski and Mr. Schneider have rights to sign or make changes on the accounts," not the nonparty individuals' personal financial records. Pls.' Supp'l Br. in Opp'n 8 n.25; *see, e.g.*, Pls.' Subpoena to FirstBank P.R. 5, at ¶1(bb) ("Any other Entity [including a sole proprietorship] that has Timothy J. Okonski or Erik Schneider listed as having rights to sign or make changes to the account[.]"), ECF No. 67-1, at 30. Accordingly, I find that Plaintiffs may obtain and review the requested nonparty information to "fully understand" Defendants' financial condition and relevant business relationships, Pls.' Supp'l Br. in Opp'n 7, as they prepare their case for trial. *See generally Sines v. Kessler*, No. 3:17cv72, 2019 WL 3767475, at *2 (W.D. Va. Aug. 9, 2019) ("'The basic philosophy driving discovery today is 'that prior to trial every party to a civil action

is entitled to the disclosure of all relevant information in the possession of any person, unless the

information is privileged.'" (quoting 8 Charles Wright & Arthur Miller, *Federal Practice &*

*Procedure* § 2001 (3d ed. 2002)); *accord Hickman v. Taylor*, 329 U.S. 495, 501 (1947) ("The

way is now clear, consistent with recognized privileges, for the parties to obtain the fullest

possible knowledge of the issues and facts before trial." (citing Fed. R. Civ. P. 26–37 (1937)).

## IV. Conclusion

For the foregoing reasons, Defendants' "Revived Motion to Stay and Motion to Quash

Third-Party Subpoenas," ECF No. 67, as supplemented by Defendants' "Supplemental Brief and

Motion to Quash or For Protective Order as to Plaintiffs' Third-Party Subpoenas," ECF No. 99,

is hereby **DENIED in its entirety**.

**IT IS SO ORDERED.**

ENTER: May 19, 2022

Joel C. Hoppe
U.S. Magistrate Judge