IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU; COMMONWEALTH OF MASSACHUSETTS; THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York; and COMMONWEALTH OF VIRGINIA, *EX REL.* MARK R. HERRING, ATTORNEY GENERAL,<br><br>      Plaintiffs,<br><br>      v.<br><br>NEXUS SERVICES, INC.; LIBRE BY NEXUS, INC.; MICHEAL DONOVAN; RICHARD MOORE; and EVAN AJIN,<br><br>      Defendants. | Case No.: 5:21-cv-00016-EKD |

**DEFENDANTS' OPPOSITION TO MOTION FOR SANCTIONS**

Defendants Nexus Services, Inc., Libre by Nexus, Inc., Micheal Donovan, Richard Moore, and Evan Ajin, (collectively, "Nexus" or "Defendants"), hereby file this Opposition to Plaintiffs' Motion for an Order to Show Cause Why Defendants Should Not Be Held in Civil Contempt, to Impose Discovery Sanctions, and for Certification under 28 U.S.C. § 636(e)(6)(B)(iii).

**I.    Defendants Have Complied, Or Are In The Process Of Complying, With All Aspects Of The Discovery Order**

As conveyed to the Court during the August 2, 2022 Status Hearing, Defendants have either fully complied with certain aspects of the Court's June 8, 2022 Order for Defendants to

Provide or Permit Discovery ("Discovery Order"), and are in the process of fully complying with any remaining obligations of the Discovery Order. Defendants address the status of each aspect of the Discovery Order below.

**Depositions**

The Discovery Order required Defendants, within seven days, to "provide Plaintiffs with the name and contact information or company who recorded or transcribed each deposition listed in **RFP No. 24**." Discovery Order, ¶ 2. Plaintiffs do not dispute that Defendants complied with this aspect of the Order – Defendants did identify each court reporting agency known to Defendants responsive to this request.

Defendants were also able to obtain all relevant parties' consent under the applicable protective order to produce the David See deposition from the *Vasquez* matter, and produced all material associated with this deposition on June 30, 2022 – the same day the transcript was obtained.

With respect to the depositions from the *RLI* proceeding, Defendants have repeatedly conveyed to Plaintiffs that they have searched multiple times for these transcripts (1) on Defendants' internal systems and (2) in the files transferred from prior counsel to undersigned counsel. The transcripts could not be located, again, after multiple, time-consuming searches.

Indeed, it should be noted that undersigned counsel brought the issue of a seemingly incomplete file transfer from Defendants' prior counsel – who were also counsel in the *Vasquez* and *RLI* matters – to the Court's attention shortly after appearing in this proceeding. Prior counsel were ordered to certify that they "completed a comprehensive search of their files and transmitted all documents relevant to the above-styled case to" undersigned counsel, which prior counsel did on September 29, 2021. ECF No. 80. Clearly, information responsive to Plaintiffs'

Requests for Production – issued on June 9, 2021 – would have been "relevant to the above-styled case."  Yet none of the responsive transcripts were transferred to undersigned counsel – despite the foregoing certification (and the multiple requests from undersigned counsel for such relevant material that preceded it).  Further, undersigned counsel reached out to Defendants' prior counsel after the Court issued the Discovery Order to specifically ask – once again – whether prior counsel possessed, and could produce, copies of the responsive transcripts.  This request, like all of the preceding ones, did not result in any transcripts being located by prior counsel.

Thus, to the best of their knowledge and after an extensive inquiry, Defendants never independently obtained copies of the responsive transcripts from their prior counsel, who later certified that they transferred all relevant files to undersigned counsel.  The responsive transcripts are not among the files transferred.  Simply put, Defendants have taken all reasonable steps to obtain any responsive transcripts from their prior counsel, and we are well past beating a dead horse on this issue.  Defendants have therefore scrupulously complied with Paragraph 2 of the Discovery Order.

**Discovery Vendor**

The Discovery Order further required Defendants to file a "Notice indicating that Defendants have retained an ESI discovery vendor," along with "a good faith estimate of how much time the vendor needs to run the agreed-upon searches and return the results to Defendants' counsel for their initial review."  Discovery Order, ¶ 3.  Defendants did timely file the required Notice, ECF No. 133, although as indicated in the Notice, the vendor was still running conflicts on Defendants at the time of filing.  Defendants clarify here that Nexus has

3

since executed an agreement with the vendor, and Defendants were therefore in substantial compliance with Paragraph 3 of the Discovery Order.

**Database and Financial Record Productions**

The Discovery Order also required Defendants to produce to Plaintiffs "complete, unredacted electronic versions of all Capsule, Lightspeed, and other database files or records responsive" to numerous RFPs.  Discovery Order, ¶ 5. The Discovery Order also required the Defendants to review large amounts of financial data produced by the financial institutions produced and confirm that all responsive material was produced and/or produce any material that was not previously produced.  *Id.* ¶¶ 6-7, 9.  Unfortunately, given the complexity and sheer sizes of the databases at issue, it was not technically possible to export and produce to Plaintiffs this amount of data in the limited amount of time provided.  That said, Defendants have begun rolling productions of this data where feasible, and are committed to continue rolling productions of this data until all relevant and responsive database material and financial data is produced to Plaintiffs, as well as entire database productions, where feasible.

So that the Court can further evaluate Defendants' good faith efforts to comply with the Discovery Order, Defendants provide the more granular explanations below:

**Lightspeed**:  Lightspeed will be a rolling production.  It takes approximately one to two working days (depending on the monthly volume) to export a complete month of Lightspeed data.  Defendants have already produced the Lightspeed data for 2022 and 2021, and are working back from there.  The data will continue to be produced to Plaintiffs via the Egnyte Cloud Based Service.  Nexus will upload to an Egnyte drive two times a week so that two months' of Lightspeed data will be available twice weekly.

**Capsule CRM**.  Capsule cannot be a rolling production. There is no automatic way to export the database in its entirety.  Typically when exporting Capsule files, it exports a CSV file of certain fields, but no notes and no attachments are included – which would not a "complete" production for Plaintiffs of all the individual CRM files.  Exporting the database in its entirety also is not a solution because Defendant's Capsule files are too large and use several legacy platforms of Capsule as well.  Capsule cannot amend the amount of requests allotted hourly for this query – the maximum API data pulls is 4,000 requests per hour.  A request is one item on one account, such that it takes a variable amount of time to pull the data for each CRM file.

To facilitate the production of the Capsule database as expeditiously as possible, Nexus ordered a new computer with extra processing speed to make sure it can handle all the requests (at a cost of approximately $3,200), as well as an additional internal hard drive with larger capacity. Because of chip shortages and supply chain issues, the computer's estimate arrival was delayed until August 17, 2022.  The Capsule production will take approximately 45 to 60 days just to download using a custom software script that Nexus had to create to meet its production obligation here.  That does not include time to sample for errors and also move the data to a physical encrypted drive which transfers the data at a maximum rate of 2.2mb/s.  Once the data is entirely transferred to an encrypted drive, Defendants will make arrangements to securely deliver the drive to a mutually agreeable location.

**Netsuite**:  Defendants will produce this database by September 2, 2022, via the Egnyte Cloud Based Service.

**Quickbooks**:  Defendants will produce this database by September 2, 2022, via the Egnyte Cloud Based Service.

**American Spirit**: Defendants will produce this database by September 2, 2022, via the Egnyte Cloud Based Service.

**Bank Statements and Financial Records Not Produced**: While the subpoena productions captured the overwhelming majority of financial institution with records of Defendants' responsive documents, Defendants have identified a limited amount of responsive financial records. Defendants will be producing this material by August 23, 2022, via the Egnyte Cloud Based Service.

**Five-9**: Available Five-9 files consist primarily of indiscriminate audio files of call recordings, as well as call log data (which does not appear to be responsive to the particular requests at issue). The Five-9 files amount to several terabytes of data. This would be turned over with a secured external encrypted drive, and could be accomplished by September 16, 2022.

II.     **Defendants Have Substantially Complied, In Good Faith, With The Discovery Order, And Should Not Face Sanctions Or Be Held In Contempt**

As demonstrated above, Plaintiffs have substantially complied with the Court's Discovery Order. For those items that have not been completely satisfied to date, there is substantial justification for the delay in producing the responsive documents given the technical, resource and temporal constraints at issue. Ultimately, Defendants have systematically worked through all of the remaining items and have put forth an achievable plan and associated timeline to complete production of each remaining item. Under these circumstances and on this record, there can be no reasonable basis to conclude that Defendants are engaged in bad faith or dilatory discovery tactics.

As counsel for Plaintiffs previously represented, they already have substantial productions of the same material from the underlying CID productions. Indeed, Defendants already produced *all* relevant Capsule files to New York that existed at the time of the CID

productions. While personally-identifiable information was redacted to protect Program Participants from possible immigration and/or law enforcement exposure, the overwhelming majority of the content of Capsule files was produced – including everything relevant about Nexus's interactions with those individuals that is recorded in those files. Point being, if Plaintiffs had questions about particular Capsule CRM files because of prior redactions (which would not have obscured anything related to *Defendants* in any event), they could have singled those out. They, of course, did not – Defendants have been forced to start completely over to reproduce all the material Plaintiffs already have.

The point here is not to relitigate the discovery dispute, but to demonstrate that Libre and/or Nexus Services have been producing the database material *relevant to their conduct* for years and have no incentive to withhold it – that horse left the barn a long time ago.[1] The simple fact is that Libre and/or Nexus Services are facing tremendous financial difficulties at the moment, including, but not limited to:

- Libre and/or Nexus Services' recent revenues are down by **over 66%** from pre-pandemic levels;

- Libre and/or Nexus Services have voluntarily agreed to provide millions of dollars of relief to eligible Program Participants as part of a negotiated resolution to the *Vasquez* class action, and Libre and/or Nexus Services have done so; and

---

[1] Plaintiffs are effectively accusing Defendants of fraud in their 50-page Complaint – which largely copies the allegations from the 2017 *Vasquez* class action complaint. Notably, Plaintiffs' allegations of fraudulent conduct are devoid of any particularity, despite having years of pre-litigation discovery at their disposal. Point being, if there was anything damaging against Defendants in any of the troves of database files previously produced, Plaintiffs would have – and should have – pleaded such facts with particularity. The fact that they did not should tell the Court all it needs to know about the purpose behind this scorched-earth discovery.

- As the Court is aware, Libre and/or Nexus Services were also ordered to pay over $2.3 million to RLI over a matter of months, and Libre and/or Nexus Services have also satisfied that obligation.

In short, Libre and/or Nexus Services have been facing a perfect storm of substantially decreased revenues over a sustained time period, coupled with crippling, multi-million dollar expenses that were not anticipated. When you then throw in litigation against four separate governments, with their relatively unlimited budgets and the scorched-earth discovery they are demanding[2] – again – there comes a point where you cannot get blood from a stone. Libre and/or Nexus Services are beyond that point.

## Conclusion

Defendants have been attempting to fully comply with the Discovery Order as expeditiously as possible subject to their limited and diminishing resources. More than that, Defendants have also asked Plaintiffs to mediate this dispute. While those discussions are ongoing, Defendants respectfully ask the Court to refuse to sanction or hold Defendants in contempt.[3] Defendants have been acting in good faith, and escalating this dispute any further is not warranted, given the facts outlined above. For these reasons, Plaintiffs' Motion should be denied in its entirety.

---

[2]   While Defendants are amenable to a stay of this case pending mediation, they are opposed to extending all deadlines in this case by 9 months to give Plaintiffs more time to impose unnecessary costs on Defendants from even more duplicative scorched-earth discovery.

[3]   For the avoidance of doubt, Plaintiffs' request for $25,000 a day in fines collectively is entirely punitive and beyond anything Libre and/or Nexus Services could possibly afford. To put this in perspective, New York has sought $10,000 a day in fines against former President Trump, who Forbes reports has a current net worth of $3 billion. *See* The Definitive Net Worth Of Donald Trump (forbes.com); *see also* Judge Holds Donald Trump in Contempt, Imposes Sanctions for Noncompliance in New York Probe - WSJ. To seek 2.5 times that amount from a small Virginia business facing significant financial difficulties is entirely unreasonable, and should be rejected out of hand.

|  |  |
|---|---|
| Dated: August 16, 2022 | Respectfully submitted, |

ARENTFOX SCHIFF LLP

By: __/s/ Adam Bowser__
Adam Bowser (Bar No. 76523)
1717 K Street, NW
Washington, DC  20006-5344
Tel:  202-857-6221
Fax:  202-857-6395
*Attorney for Nexus Services, Inc.; Libre by Nexus, Inc.; Micheal Donovan; Richard Moore; and Evan Ajin*