IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, et al., <br>     Plaintiffs, <br><br> v. <br><br> NEXUS SERVICES, INC., et al., <br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 5:21-cv-00016 <br><br> **ORDER FOR DEFENDANTS TO** <br> **SHOW CAUSE & CERTIFICATION** <br> **UNDER 28 U.S.C. § 636(e)(6)(B)(iii)** <br><br> By:   Joel C. Hoppe <br>        United States Magistrate Judge |

    In February 2021, Plaintiffs the Consumer Financial Protection Bureau ("CFPB"), the

Commonwealth of Massachusetts, the People of the State of New York, and the Commonwealth

of Virginia filed a complaint alleging that Defendants Nexus Services, Inc., Libre by Nexus, Inc.,

Micheal Donovan, Richard Moore, and Evan Ajin violated the Consumer Financial Protection

Act ("CFPA"), 12 U.S.C. §§ 5552, 5564, and similar state laws in administering "immigration

bonds" for indigent consumers facing deportation. *See generally* Compl. 1–3, 6–47, ECF No. 1;

Mem. Op. of Mar. 21, 2022, at 2–4, ECF No. 108.[1] In May 2022, the parties brought to the Court

a dispute over Defendants' responses and objections to Plaintiffs' first sets of Requests for

Production ("RFP") of Documents & Electronically Stored Information ("ESI"). *See* Pls.'

Statement Detailing & Itemizing Disc. Dispute 1 (May 4, 2022) (noting that in June 2021,

Plaintiffs served one set of RFPs on Nexus and Libre (the "Entity Defendants") and another set

of RFPs on each of the other Defendants, Donovan, Moore, and Ajin (the "Individual

Defendant's")), ECF No. 115; Defs.' Resp. to Pls.' Statement, ECF No. 120. That June, I issued

an Order overruling most of Defendants' objections and directing each Defendant to take certain

---

[1] Pinpoint citations to documents filed on the electronic case docket use the header page numbers generated by CM/ECF and the exhibit labels assigned by the filing party.

steps, within specific timeframes, to provide or permit discovery of the materials Plaintiffs sought in the RFPs at issue. Disc. Order (June 8, 2022), ECF No. 129.

Now, the matter is back before the Court on Plaintiffs' Motion for an order directing Defendants to show cause why they should not be held in contempt for violating my Discovery Order; imposing discovery sanctions under Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure; and certifying facts finding Defendants in civil contempt under 28 U.S.C. § 636(e)(6)(B)(iii). *See* Pls.' Mot. 1–2, ECF No. 139. Plaintiffs ask that, "upon a finding of contempt, each Defendant be ordered to pay a fine of $5,000.00 per day continuing until such time as Defendants fully comply with the Discovery Order." *Id.* at 2. They do not seek any evidentiary or claim-dispositive discovery sanctions. *See id.* at 1–2; Pls.' Br. in Supp. 8–9 (citing Fed. R. Civ. P. 37(b)(2)(A)(i)–(iv)), ECF No. 140.

Plaintiffs' Motion has been fully briefed, ECF Nos. 140, 153, 156, and argued, ECF No. 176. James Scott, Esq., counsel for Plaintiff the Commonwealth of Virginia, submitted four declarations supporting Plaintiffs' requests. *See* Decl. of James E. Scott, Esq. (July 19, 2022) ("Scott Decl."), ECF No. 141; Supp'l Decl. of James E. Scott, Esq. (Aug. 23, 2022) ("Scott First Supp'l Decl."), ECF No. 157; Second Supp'l Decl. of James E. Scott, Esq. (Sept. 26, 2022) ("Scott Second Supp'l Decl."), ECF No. 166; Third Supp'l Decl. of James E. Scott, Esq. (Jan. 6, 2023) ("Scott Third Supp'l Decl."), ECF No. 175. Defendants submitted declarations from their then-current attorney, Adam Bowser, Esq.,[2] and from Defendant Evan Ajin in his capacity as the Vice President of Operations for Defendant Nexus Services, Inc. *See* Decl. of Adam D. Bowser, Esq. (Sept. 26, 2022) ("Bowser Decl."), ECF No. 167, at 1–3; Bowser Decl. Ex. A, Decl. of Evan Ajin (Sept. 26, 2021 [sic]) ("Ajin Decl."), ECF No. 167, at 5–6.

---

[2] I later allowed Mr. Bowser and his law firm to withdraw as Defendants' counsel of record in this matter. Order of Jan. 11, 2023, ECF No. 178.

I. The Legal Framework

Rule 37(b)(2) gives the district court where an action is pending broad discretion to impose sanctions when "a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery," Fed. R. Civ. P. 37(b)(2)(A). *See Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758 (5th Cir. 2019). "Once a court makes the threshold determination under Rule 37(b)" that a party or its agent violated a prior discovery order, *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 102 (D. Md. 2003), subsection (b)(2)(A) "contains two standards—one general and one specific—that limit [the] court's discretion" in choosing what sanction(s) to impose against that party, *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982). "First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Ins. Corp. of Ir.*, 456 U.S. at 707 (citing Fed. R. Civ. P. 37(b)(2)(A)). Such sanctions "may include" further orders deeming facts established, entering a default judgment against the disobedient party, or "treating as contempt of court the failure to obey any order except [one] to submit to a physical or mental examination." Fed. R. Civ. P. 37(b)(2)(A)(i), (vi)–(vii).

The Federal Magistrates Act, 28 U.S.C. § 636, defines a magistrate judge's contempt authority where an act of civil contempt "occur[s] outside of the magistrate judge's presence, and not in a proceeding where the magistrate judge [is] presiding" with the parties' consent under § 636(c). *Wallace v. Kmart Corp.*, 687 F.3d 86, 92 (3d Cir. 2012) (capitalization altered); *see* 28 U.S.C. § 636(e)(6). A magistrate judge overseeing pretrial matters under § 636(b)(1) who is faced with an act that constitutes a civil contempt

> shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a

3

day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified.

28 U.S.C. § 636(e)(6)(B)(iii). "The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge." *Id.*

The magistrate judge's role in certifying facts under § 636(e)(6) is "to determine whether the moving party can adduce sufficient evidence to establish a prima facie case of contempt." *Church v. Steller*, 35 F. Supp. 2d 215, 217 (N.D.N.Y. 1999) (citing *Proctor v. State Gov't of N.C.*, 830 F.2d 514, 521 (4th Cir. 1987)). To establish civil contempt, a movant must produce "clear and convincing evidence" showing:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's favor; (3) that the alleged contemnor by [his or her] conduct violated the terms of the decree, and had knowledge (at least constructive) of such violations; and (4) that the movant suffered harm as a result.

*JTH Tax, Inc. v. H&R Block E. Tax Servs., Inc.*, 359 F.3d 699, 705 (4th Cir. 2004) (cleaned up). "Willfulness is not an element of civil contempt." *Redner's Mkts., Inc. Joppatowne G.P. Ltd. P'ship*, 608 F. App'x 130, 131 (4th Cir. 2015); *see McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949). Additionally, "good faith alone does not immunize a party from a civil contempt sanction for non-compliance with a court order," *McLean v. Cent. States, Se. & Sw. Areas Pension Fund*, 762 F.2d 1204, 1210 (4th Cir. 1985) (citing *McComb*, 336 U.S. at 191).

## II. Background

*A.     June 2022: The Discovery Order*

On June 8, 2022, I issued an Order directing Defendants to take certain steps, within specific timeframes, to fully respond to and produce specific categories of documents and ESI responsive to Plaintiffs' outstanding RFPs. *See* Disc. Order ¶¶ 4–9, ECF No. 129; Pls.' Reqs. for

4

Prod. from Entity Defs. ("Entity RFP") Nos. 4–11, 13–17, 20–22, 24–25, 28, ECF No. 115, at

12–24; Pls.' Reqs. for Prod. from Individual Defs. ("Individual RFP") Nos. 3, 5–6, 8, ECF No.

115, at 24–26. More specifically, the Order directed the Entity Defendants (Nexus and Libre) to

do the following:

- Within seven (7) days from the date of the Order, provide Plaintiffs with the name and

  contact information for the individual or company who recorded or transcribed each

  deposition listed in Entity RFP No. 24. Additionally, to the extent they had not done so,

  identify and produce complete copies of any such recordings or transcripts, including

  deposition exhibits, within the Entity Defendants' possession, custody, or control. *See*

  Disc. Order ¶ 2 ("Depositions").

  - This RFP listed one deposition taken in *Vasquez v. Libre by Nexus, Inc.*, No.

    4:17cv775 (N.D. Cal.), and six depositions taken in *RLI Insurance Co. v. Nexus

    Services, Inc.*, No. 5:18cv66 (W.D. Va.). *See* Entity RFP No. 24, ECF No. 115, at

    22–23.

- Within fourteen (14) days, "file a Notice indicating that Defendants had retained an ESI

  discovery vendor and providing a good faith estimate of how much time the vendor needs

  to run the agreed-upon searches and return the results to Defendants' counsel for their

  initial review." Disc. Order ¶ 3 ("ESI Vendor"). This estimate needed to give the parties

  enough time to finish discovery on or before October 1, 2022. *See id.*; Sched. Order 1

  (scheduling bench trial to start on January 30, 2023, and requiring parties to complete

  discovery 95 days before trial), ECF No. 66; Order of Apr. 18, 2022, at 1 (incorporating

  this deadline), ECF No. 113.

- Defendants were to run automated, as unopposed to manual, searches "us[ing] Plaintiffs' proposed search terms and the parties' agreed-upon list of custodians to identify and collect any ESI, other than that stored in Capsule, Lightspeed, or similar database" responsive to Entity RFP Nos. 4, 6, 7, 9, 11, 13, 14, 15, 17, 20, 21, and/or 22. Disc. Order. ¶ 4 ("ESI Search Terms"); *see also id.* ("The Court rejects Defendants' proposal that each custodian be permitted to manually search every location where such ESI might be stored.").

  o These RFPs sought relevant information about staff compensation, RFP No. 4; program marketing and development, RFP Nos. 6–7, 9; Defendants' third-party contracts, RFP No. 15; and internal or external program audits, RFP Nos. 21–22. *See* ECF No. 115, at 12–22.

- Within twenty-one (21) days, export and produce to Plaintiffs complete, unredacted electronic versions of all Capsule, Lightspeed, and other database files or records responsive to Entity RFP Nos. 5, 8, 10, 11, 13, 14, 17, and/or 20. *See* Disc. Order ¶ 5 ("Database Files").

  o These RFPs sought relevant information about the individual consumers who received Defendants' products or services, including the consumers' payment histories, RFP Nos. 5, 10, 13; program or service documents provided to those consumers, RFP No. 8; records of Nexus or Libre employees' communications with the consumers, RFP Nos. 11, 14, 17; and consumer complaints, RFP No. 20. *See* ECF No. 115, at 12–21.

- Within twenty-one (21) days, produce any documents responsive to Entity RFP No. 16 that had not been produced by a specific certified public accountant ("CPA") in response

to Plaintiffs' third-party subpoena or by Defendants in response to any Plaintiff's prior

request(s). *See* Disc. Order ¶ 6 ("CPA Records").

*See generally* Disc. Order ¶¶ 2–7 (setting out the Entity Defendants' obligations).

Separately, the Discovery Order directed each Individual Defendant (Donovan, Moore,

and Ajin) to produce any documents or information that (a) was responsive to Individual RFP

Nos. 3, 5, 6 and/or 8; and (b) had not been produced either by the Entity Defendants or by a third

party in response to Plaintiffs' discovery requests served in this action. *Id.* ¶ 9 ("Individual

Records").[3] These RFPs sought relevant information about each Individual Defendant's

employment history and financial relationship with an Entity Defendant or other affiliated entity,

RFP Nos. 3, 5–6, as well as the Individual Defendant's financial condition from January 1, 2016,

to the present, RFP No. 8, ECF No. 115, at 24–26. *See* Order of Oct. 19, 2021, at 1 (denying

Individual Defendants' motion to quash Plaintiffs' third-party subpoenas to the extent the

subpoenas sought information about each Defendant's own accounts and records maintained by

the recipient banks and financial-services companies), ECF No. 98; *cf.* Mem. Op. & Order of

May 19, 2022, at 20–21 ("Plaintiffs argued persuasively that information about [the Entity]

Defendants' business and financial relationships with the non-party entities and individuals is

relevant because it logically relates to claims and facts at issue in this case, including potential

remedies if Plaintiffs prevail on their CFPA claims . . . . Accordingly, I find that Plaintiffs may

obtain and review the requested nonparty information to fully understand [the Entity]

Defendants' financial condition and relevant business relationships as they prepare their case for

---

[3] Defendants have access to financial records produced by the Entity Defendants and any third parties in
this case. *See* Disc. Order ¶ 9; Scott First Supp'l Decl. ¶ 8 ("Plaintiffs produced documents received from
third-party subpoenas in February and June 2022."). Thus, each Individual Defendant is in the best
position to determine which of his own financial records had not been produced as of June 8, 2022. *See*
Disc. Order ¶ 9.

trial"), ECF No. 119. Those productions were due within twenty-one (21) days from the date of

the Order—i.e., on or before June 29, 2022. *See* Disc. Order ¶ 9.

On June 22, the Entity Defendants timely notified the Court that they had "begun the

onboarding process with a new ESI discovery vendor[] and [were] currently going through the

company's conflicts process." Notice 1, ECF No. 133; *see* Disc. Order ¶ 3. "[B]ased on

preliminary discussions and assessment of the number of custodians, the search terms at issue,

the relevant period, and Defendants' systems," Defendants estimated that the vendor would need

to collect 500 GBs of ESI—not including ESI stored in Capsule, Lightspeed, or similar

databases. Notice 1–2 (citing Disc. Order ¶ 5). "Defendants were informed that the discovery

vendor should be able to run the agreed-upon searches and return the results to Defendants'

counsel within four to six weeks." *Id.* at 2; *see* Disc. Order ¶¶ 3–4. On June 23, Mr. Bowser and

co-counsel at ArentFox Schiff, LLP moved to withdraw as Defendants' attorneys of record in

this matter. ECF Nos. 134 to 136. I took the requests under advisement. ECF No. 143; *see also*

Order of Jan. 11, 2023, at 1–2.

B.     *July 2022: Plaintiffs Move for Sanctions*

Plaintiffs filed this Motion on July 19, 2022. ECF No. 139. Mr. Scott's first sworn

declaration supporting Plaintiffs' Motion laid out Defendants' complete failure to obey most, if

not all, of my Discovery Order's specific requirements as of that date. *See generally* Scott Decl.

¶¶ 3–12. According to Mr. Scott, the Entity Defendants "ha[d] not produced any . . . database

files," *id.* ¶ 3 (citing Disc. Order ¶ 5), and the Individual Defendants "ha[d] not produced any

documents or information" about their own financial conditions from January 1, 2016, to the

present, *id.* ¶ 12 (citing Disc. Order. ¶ 9). Defendants should have given Plaintiffs those materials

on or before June 29, 2022. *See* Disc. Order ¶¶ 5, 9.

Moreover, Defendants had not actually "retained" a discovery vendor to run the agreed-upon searches for responsive ESI stored on platforms other than Capsule, Lightspeed, or similar database. Scott Decl. ¶¶ 10–11 (citing Scott Decl. Ex. 7, Email from A. Bowser to L. Hartmann (June 28, 2022, 6:54 PM) ("Defendants have cleared the conflicts process and the vendor is now in the process of running a credit check. . . . I'm informed that once that is cleared on the vendor's end, the vendor will send its MSA over to the Defendants for execution."), ECF No. 141-7, at 1); *see* Disc. Order ¶¶ 3–4. Nor had they "provided any estimated dates" for when they "would begin and complete production of [this] ESI" so the parties could meet remaining case deadlines. Scott Decl. ¶ 11 (citing Scott Decl. Ex. 6, Email from L. Hartmann to A. Bowser (June 23, 2022, 4:28 PM), ECF No. 141-5, at 1); *see* Disc. Order ¶ 3.

Finally, Defendants claimed that none of the deposition transcripts mentioned in Entity RFP No. 24 were "within Defendants' possession, custody or control," Disc. Order ¶ 2, because "'Defendants did not order any of the deposition transcripts,'" Scott Decl. ¶ 4 (quoting Scott Decl. Ex. 1, Email from A. Bowser to J. Mueller (June 15, 2022, 1:28 PM), ECF No. 141-1, at 1). They did not indicate whether any of the attorneys who represented an Entity Defendant in *RLI* or in *Vasquez* might have access to those transcripts. *See* Scott Decl. Ex. 2, Email from J. Mueller to A. Bowser (June 17, 2022, 5:24 PM) ("Plaintiffs are surprised to hear and frankly do not understand how it could be possible that Defendants' current or former attorneys do not possess or have access to copies of transcripts and exhibits that were part of recent or ongoing litigation."), ECF No. 141-2, at 1. On June 17, Mr. Bowser "[c]onfirmed," Scott Decl. Ex. 2, Email from A. Bowser to J. Mueller (June 17, 2022, 11:37 AM), ECF No. 141-2, at 1, that his clients "do not have the 'right, authority, or practical ability' to obtain the responsive [transcripts] from a third party, including Defendants' current or former counsel," *id.*, Email

from J. Mueller to A. Bowser (June 16, 2022, 5:07 PM), ECF No. 141-2, at 2. On June 30,

Defendants gave Plaintiffs a copy of the Rule 30(b)(6) deposition transcript that Libre's former

attorneys filed in *Vasquez* several years earlier. *See* Scott Decl. ¶¶ 5, 8. They had not produced

any *RLI* deposition transcripts as of July 19, 2022. *Id.* Nexus, the sole defendant in *RLI*, also

declined Plaintiffs' request that Nexus consent to Plaintiffs obtaining those transcripts directly

from the court-reporting agency that recorded the depositions. *See id.* ¶ 7 (citing Scott Decl. Ex.

4, Email from A. Bowser to J. Scott (June 8, 2022, 5:59 PM), ECF No. 141-4, at 1).

C.     *August 2022: Defendants Respond*

On August 16, 2022, Defendants filed a short brief opposing Plaintiffs' motion for

sanctions. *See generally* Defs.' Br. in Opp'n 1–8, ECF No. 153. Defendants claimed that they

had "identif[ied] each court reporting agency known to Defendants" and given Plaintiffs a copy

of the deposition transcript and exhibits from *Vasquez*. *Id.* at 2 (citing Disc. Order ¶ 2). They

asserted that the transcripts from *RLI* "could not be located . . . after multiple, time-consuming

searches" of both their "internal systems and . . . the files transferred from [Defendants'] prior

counsel to [their current] counsel" in this case. *Id.*; *see id.* at 3 ("The responsive transcripts are

not among the [client] files transferred."). Defendants noted that Mr. Bowser "reached out to"

their (unnamed) prior counsel—who had represented Nexus both in *RLI* and in this litigation—to

ask if "prior counsel possessed, and could produce, copies of the responsive transcripts. This

request . . . did not result in any transcripts being located by prior counsel." *Id.* at 3; *see* Pls.'

Reply 6 n.35 ("Defendants have been represented by multiple attorneys both in connection with

this case and the *RLI* litigation. Defendants' opposition suggests that they requested copies of the

transcripts from only one set of attorneys, Mario Williams and John Shoreman."), ECF No. 156.

Defendants do not indicate that they themselves requested the transcripts from their prior

counsel. Their brief did not address Plaintiffs' alternative that Nexus consent to Plaintiffs obtaining the missing *RLI* transcripts directly from the court-reporting agency. *See* Defs.' Br. in Opp'n 2–3.

Defendants also asserted that they were "in the process of complying with," or had "substantially complied with," the Discovery Order's provisions directing them to retain a discovery vendor to run the ESI searches, *see* Disc. Order ¶¶ 3–4; to export and produce complete, unredacted electronic versions of database files from Capsule, Lightspeed, NetSuite, QuickBooks, American Spirit, and Five-9, *see id.* ¶ 5; and to produce additional individual financial records, *see id.* ¶ 9. *See generally* Defs.' Br. in Opp'n 3–6. By August 16, Nexus had "executed an agreement with the [discovery] vendor" referenced in the Notice that Defendants filed nearly two months earlier. *See id.* at 3–4 (citing Notice, ECF No. 133). But, Defendants' brief did not indicate that the vendor had started running the agreed-upon searches. *See id.* Nor did it address whether the vendor still "should be able to run the agreed-upon searches and return the results to Defendants' counsel within four to six weeks," Notice 1, or whether Defendants' legal team could review those results and give Plaintiffs all responsive ESI before discovery closed on October 1, 2022, *see* Disc. Order ¶¶ 3–4. *See generally* Defs.' Br. in Opp'n 2–6.

As for the "complete, unredacted electronic versions" of the six databases that the Entity Defendants were supposed to produce on or before June 29, 2022, Defendants asserted they had "begun rolling productions of this data where feasible[] and [were] committed to continue rolling productions of this data until all relevant and responsive database material . . . is produced to Plaintiffs, as well as entire database productions, where feasible." Defs. Br. in Opp'n 4. As of August 16, 2022, however, the Entity Defendants had produced only "Lightspeed data for 2022 and 2021." *Id.* They had not produced any files from Capsule, NetSuite, QuickBooks, American

11

Spirit, or Five-9. *See id.* at 5–6. Defendants promised to produce the NetSuite, QuickBooks, and American Spirit "database[s] by September 2, 2022, via the Egnyte Cloud Based Service." *Id.* They "could" give Plaintiffs an external hard drive containing "several terabytes" of "[a]vailable Five-9 files . . . . by September 16," but they did not promise to follow through. *Id.* at 6 ("This could be accomplished by September 16, 2022."). Defendants claimed they would need another "45 to 60 days just to download" the Capsule database, not including some unspecified amount of "time [needed] to sample for errors, . . . move the data to a physical encrypted drive," and "securely deliver the drive to [Plaintiffs at] a mutually agreeable location." *Id.* at 5. Finally, Defendants conceded that they had not produced any of the financial information covered by paragraph 6 (Entity Defendants) or paragraph 9 (Individual Defendants) of the Discovery Order. *See id.* at 6. "Defendants [would] be producing this material by August 23, 2022, via the Egnyte Cloud Based Service." *Id.*

Mr. Scott filed his first supplemental declaration on August 23, 2022. Scott First Supp'l Decl., ECF No. 157. He attested that Defendants had "produced some documents from Lightspeed and Capsule," *id.* ¶ 4, including a "single, limited production of fewer than two years of Lightspeed records" made on July 29, 2022, *id.* ¶ 6. They still had "not produced any documents" from NetSuite, QuickBooks, American Spirit, or Five-9. *Id.* ¶ 4; *see* Disc. Order ¶ 5. Nor had they produced "any ESI discovery" from other, non-database sources. Scott First Supp'l Decl. ¶ 3; *see* Disc. Order ¶¶ 3–4.

D.    *September 2022: Order Directing Attorneys to File Declarations*

I held a status conference call with counsel for the parties on September 2, 2022. ECF No. 158. During that call, Mr. Bowser vaguely indicated that Defendants were still looking for, preparing, and/or producing materials covered by the Discovery Order, but several indefinite

12

"delays" were hindering their progress. Order of Sept. 6, 2022, at 1, ECF No. 159. On September 6, I ordered at least one current attorney of record for Plaintiffs and for Defendants to each file a sworn declaration identifying with specificity: (a) The documents or other materials that any Defendant has produced (and Plaintiffs have received), as directed by the Discovery Order and (b) the documents or other materials described in the Order that had not been produced by a Defendant as of the date of counsel's declaration. *Id.* (citing ECF No. 129).

Mr. Bowser submitted a sworn declaration for Defendants on September 26, 2022. ECF No. 167. Mr. Bowser attested that:

- To his knowledge, "[n]o further developments ha[d] occurred with respect to the prior deposition material" mentioned in Defendants' opposition brief filed on August 16, 2022. Bowser Decl. ¶ 3; *see* Disc. Order ¶ 2.

- With respect to the complete database files required to be exported, Mr. Bowser "was informed that Defendants have produced all Lightspeed data for 2022 and 2021." Bowser Decl. ¶ 4; *see* Disc. Order ¶ 5.

- With respect to Capsule, Defendant Evan Ajin attested in a declaration, attached as an exhibit to Mr. Bowser's declaration, that on September 23, 2022, "he personally delivered an external hard drive containing the entirety of the [responsive] Capsule database files" to the CFPB's office in Washington, D.C. Bowser Decl. ¶ 5 (citing Ajin Decl. ¶¶ 3–4).

- "The remaining database material (pre-2021 Lightspeed, NetSuite, QuickBooks, American Spirit and Five9) ha[d] not yet been produced" as of September 26, 2022. Bowser Decl. ¶ 6; *see* Disc. Order ¶ 5.

- On September 7, the Entity Defendants produced 1,050 separate ESI files containing financial records not previously produced by the CPA or other financial institution(s) in response to Plaintiffs' third-party subpoenas. Bowser Decl. ¶ 7; *see* Disc. Order ¶¶ 6–7.

- "The individual defendants ha[d] not yet produced material, in this action," relevant to the individual's employment history or financial relationship with an Entity Defendant or other affiliated entity, or about the individual's financial condition from January 1, 2016, to the present. Bowser Decl. ¶ 7; *see* Disc. Order ¶ 9.

Mr. Bowser's declaration did not address the discovery vendor's progress running the agreed-upon searches for other ESI not stored in the databases, or whether defense counsel could review those results and produce all responsive materials to Plaintiffs' counsel before discovery closed in the next few days. *See* Disc. Order ¶¶ 3–4.

Mr. Scott's second supplemental declaration, filed the same date, generally corroborated Mr. Bowser's sworn statements. *See* Scott Second Supp'l Decl. ¶¶ 4–9, ECF No. 166. Mr. Scott further attested that Defendants had "not provided any ESI discovery or given Plaintiffs any indication of when (or if) they will begin to produce ESI" as required by paragraphs 3 and 4 of the Discovery Order. *See id.* ¶ 5. Plaintiffs had not had a chance to review the contents of the Capsule hard drive that Mr. Ajin dropped off at CFPB's offices on September 23. *Id.* ¶ 9; *see* Disc. Order ¶ 5.

Discovery in this case closed on October 1, 2022. *See* Order of Apr. 18, 2022; Sched. Order 1; Notice Cancelling Bench Trial (Dec. 1, 2022).

E.   *January 2023: Plaintiffs' Third Update & Motion Hearing*

Plaintiffs filed Mr. Scott's third and final supplemental declaration on January 6, 2023. Scott Third Supp'l Decl. ECF No. 175. Defendants still had not produced any files from the

NetSuite, QuickBooks, American Spirit, or Five-9 databases. *Id.* ¶ 14. Nor had they produced all available Lightspeed records. *See id.* ¶ 15.[4] The Capsule hard drive, which Mr. Ajin swore "contained 'all Capsule files currently available to Nexus responsive to Plaintiffs' discovery requests," *id.* ¶ 16 (quoting Ajin Decl. ¶ 4), did not appear to contain a complete copy of that database, *id.* ¶ 17. Mr. Scott explained, "Defendants have represented that the Capsule files—and particularly the program notes—contain a comprehensive and contemporaneous record of consumer interactions" with Nexus employees. *Id.* ¶ 19. Plaintiffs "identified files [on the Capsule hard drive] in which the program notes memorialize that a consumer complained about being misled during the bond program enrollment process[] or about debt collection activity." *Id.* ¶ 20. Nevertheless, underlying "records of the [actual] interactions and communications are missing." *Id.* "In other [Capsule hard drive] files, the program notes refer to texts, emails, and other messages related to the enrollment process, debt collection activity, or consumer refunds, but the [underlying] communications are not reproduced or included in the production." *Id.* As for ESI discovery generally, Defendants still had not "provided initial search term results" or "produced a single page of ESI" covered by paragraphs 3 and 4 of the Discovery Order. *Id.* ¶ 27; *see* Disc. Order. ¶¶ 3–4.

Mr. Scott noted that the Individual Defendants produced some of their own financial records in early October 2022, albeit after discovery ended. Scott Third Supp'l Decl. ¶ 29; *see*

---

[4] The parties' declarations contain inconsistent information about Defendants' production of Lightspeed records. In September 2022, Mr. Bowser stated he had been "informed that Defendants have produced *all* the Lightspeed data for *2022* and 2021," Bowser Decl. ¶ 4 (emphasis added), and that "pre-2021 Lightspeed" database material had not been produced. Mr. Scott attests that "Defendants made a single production of Lightspeed files on July 29, 2022," which "included partial records for *2020* and 2021." Scott Third Supp'l Decl. ¶ 15 (emphasis added) (citing Scott First Supp'l Decl. ¶ 6 (Aug. 2022) ("Defendants made a single, limited production of fewer than two years of Lightspeed records on July 29[.]")). Regardless, the uncontroverted evidence shows that Defendants failed to produce *any* available Lightspeed files on or before June 29, 2022, *see* Scott Decl. ¶ 3 (citing Disc. Order ¶ 5), and that the current production remains incomplete.

Disc. Order ¶ 9. This "partial production" included "monthly statements from a single credit union for an account held by Defendants Donovan and Moore from 2014 to 2017," as well as monthly statements "for an account held by Defendant Ajin from 2017 to 2021." *See* Scott Third Supp'l Decl. ¶ 29. It did not "include up-to-date information" about each Defendant's financial condition; "information concerning other accounts held by Defendants, including accounts that were identifiable through transfer activity [reflected] in the produced statements; or information concerning other assets owned or controlled by Defendants, such as securities or real property." *Id.* ¶ 30; *see* Disc. Order ¶¶ 8–9 (overruling Individual Defendants' relevancy objections to RFP Nos. 3, 5, 6, and 8, and requiring each Individual Defendant to produce materials responsive to the same within twenty-one days).

On January 10, 2023, I held a motion hearing at which counsel for the parties appeared by videoconference. ECF No. 176. Plaintiffs clarified that they were not seeking Rule 37 sanctions under paragraphs 6 or 7 of the Discovery Order, which required the Entity Defendants to search for and produce certain financial records. *See* Disc. Order ¶¶ 6–7. They still seek sanctions against both Entity Defendants for their failure to obey paragraph 2 ("Depositions"), paragraphs 3–4 ("ESI Vendor" and "ESI Search Terms"), and paragraph 5 ("Database Files"), and against each Individual Defendant for his failure to obey paragraph 9 ("Individual Records") of the Discovery Order. Counsel for the parties then addressed their positions as to each category of missing discovery. Neither presented any additional evidence.

1.  *Database Files*

The parties agreed that the Entity Defendants have not produced any files from NetSuite, QuickBooks, American Spirit, or Five-9. *See* Disc. Order ¶ 5.

      a.    *Lightspeed.* Defendants' counsel indicated Defendants produced available Lightspeed records from 2021 and from "part" of 2022, but that they have not produced any Lightspeed records from before 2021. Mr. Bowser thought these records went back "a few more years," but he could not say for sure. Plaintiffs' counsel indicated that Defendants produced partial records from 2020 and 2021 and that Defendants should have Lightspeed records dating back to 2015.

      b.    *Capsule.* Plaintiffs were still reviewing the Capsule hard drive that Mr. Ajin delivered to the CFPB's offices in September 2022. Plaintiffs' counsel explained that Plaintiffs do not have a complete list identifying each consumer to whom the Entity Defendants provided relevant services, so there is no way for Plaintiffs to determine if the Capsule hard drive contains a file for each individual consumer, or if some consumer files are missing all together. Plaintiffs could only identify "internal inconsistencies" in the consumer files on the hard drive. Plaintiffs' counsel reiterated that some consumer files reference specific interactions with Nexus employees, but the transcripts or recordings of those interactions are not on the Capsule hard drive. *See* Scott Third Supp'l Decl. ¶¶ 19–21. Mr. Bowser denied that his clients deleted anything from the Capsule database before exporting it to the hard drive, noting it was possible an employee never uploaded those records to Capsule in the first place.

    2.    *Other ESI*

    The parties agreed that the Entity Defendants have not produced any ESI responsive to RFP Nos. 4, 6, 7, 9, 11, 13, 14, 15, 17, 20, 21 and/or 22. *See* Disc. Order ¶ 4. Mr. Bowser indicated that his clients never retained an ESI vendor to run agreed-upon searches, even though Nexus purportedly "executed an agreement" with one vendor to do that work sometime in the summer of 2022. *See* Defs.' Br. in Opp'n 3–4. Mr. Bowser noted (without revealing privileged

communications) that he repeatedly emailed his clients about retaining the vendor, but he never

got any movement on that front. *See* Order of Jan. 11, 2023, at 2. In short, it appears the Entity

Defendants do not intend to retain an ESI vendor or to produce any of the ESI covered by

paragraphs 3 and 4 of the Discovery Order.

> 3. *Individual Financial Records.*

The parties agree that Mr. Donovan and Mr. Moore produced monthly statements from a

single joint bank account they held from 2014 to 2017 and that Mr. Ajin has produced monthly

statements from one bank account he held from 2017 to 2021. *See* Scott Third Supp'l Decl. ¶ 29.

No one has produced "up-to-date information" about his financial condition, which I have twice

found Plaintiffs are entitled to under Rule 26. Disc. Order ¶¶ 8–9; Order of Oct. 19, 2021, at 1.

III. Certified Facts

My role in certifying facts under 28 U.S.C. § 636(e) is "to determine whether [Plaintiffs]

can adduce sufficient evidence to establish a prima facie case of contempt," *Church*, 35 F. Supp.

2d at 217 (citing *Proctor*, 830 F.2d at 521), as to each Defendant against whom Plaintiffs seek

that sanction, *see* Fed. R. Civ. P. 37(b)(2)(A)(vii). To establish civil contempt, Plaintiffs must

produce "clear and convincing" evidence showing: (1) "the existence of a valid decree," or court

order, of which the Defendant "had actual or constructive knowledge"; (2) the court order was in

Plaintiffs' favor; (3) the Defendant's own conduct or failures violated the order's term(s), and the

Defendant had "knowledge (at least constructive) of such violations"; and (4) Plaintiffs "suffered

harm as a result." *JTH Tax, Inc.*, 359 F.3d at 705. Plaintiffs adduced evidence through Mr.

Scott's sworn declarations and exhibits filed on July 19, 2022, ECF Nos. 141 to 141-7; on

August 23, 2022, ECF Nos. 157, 157-1; on September 26, 2022, ECF No. 166 (declaration only);

and on January 6, 2023, ECF Nos. 175, 175-1. Defendants presented only Mr. Bowser's and Mr.

Ajin's sworn declarations filed September 26, 2022, ECF No. 167, in response to a court order. *See* ECF No. 159. Additionally, I may take judicial notice of the contents of court records in this litigation. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (citing Fed. R. Evid. 201(b)(1), (f)). I have not considered statements made in the parties' unsworn legal briefs because those statements are not evidence. *See, e.g.*, *Agee v. Kiser*, No. 7:17cv537, 2019 WL 1247518, at *8 (W.D. Va. Mar. 18, 2019) ("[U]nsupported allegations made in [an] unsworn legal brief" are not evidence).

The undersigned hereby CERTIFIES the following facts to the Honorable Elizabeth K. Dillon, United States District Judge. 28 U.S.C. § 636(e)(6)(B).

1.      The Discovery Order entered on June 8, 2022, is a valid decree in Plaintiffs' favor and governs each Defendant in this case. *See* Disc. Order, ECF No. 129; Sched. Order ¶ 17 (referring "[a]ll nondispositive motions and issues" under § 636(b)(1)(A)).

2.      The Court delivered a copy of the Discovery Order to each Defendant, through Defendants' then-counsel of record, by filing the Order on this case's electronic docket and sending notice of the electronic filing to counsel of record. *See* ECF No. 129; ECF No. 88 (Mr. Bowser's notice of appearance on behalf of all Defendants) (Oct. 11, 2021).

3.      As a result, each Defendant at least has constructive knowledge of the Discovery Order's provisions requiring that Defendant to provide or permit specified discovery within certain timeframes. *See id.*

4.      **Paragraph 2** required the Entity Defendants to "produce complete copies" of seven deposition transcripts, including any exhibits, within the Entity Defendants' possession, custody, or control. Disc. Order ¶ 2 (citing Entity RFP No. 24). Such productions were due on or before October 1, 2022. *See id.* (citing Fed. R. Civ. P. 34(b)).

19

i.      Defendant Nexus's former attorneys "filed partial copies" of six deposition transcripts "in support of various motions" made on Nexus's behalf in *RLI Insurance Co. v. Nexus Services, Inc.*, No. 5:18cv66 (W.D. Va.). Scott Decl. Ex. 5, Email from J. Scott to A. Bowser (June 29, 2022, 3:00 PM), ECF No. 141-5; Scott Decl. ¶ 7 (citing same); Scott Third Supp'l Decl. ¶ 31.

ii.     Virginia's Rules of Professional Conduct require that, "upon termination" of the attorney-client relationship, "the client, upon request, must . . . be provided within a reasonable time copies of the following documents from the lawyer's file, whether or not the client has paid the fees and costs owed the lawyer: . . . *transcripts*, pleadings and discovery responses." Va. R. Prof'l Conduct 1.16(e) (emphasis added).[5]

iii.    Nexus therefore has "possession, custody, or control" of the *RLI* deposition transcripts listed in Entity RFP No. 24. *See* Disc. Order ¶ 2; Scott Decl. Ex. 2, Email from J. Mueller to A. Bowser (June 16, 2022, 5:07 PM), ECF No. 141-2, at 2. Nexus's assertion that it cannot obtain copies of these transcripts from its prior counsel of record in *RLI* is not credible.

iv.    Nexus has not produced any of the *RLI* deposition transcripts listed in Entity RFP No. 24. *See* Scott Third Supp'l Decl. ¶¶ 31–32. Therefore, Defendant Nexus violated paragraph 2 of the Discovery Order.

5.    **Paragraph 3** required the Entity Defendants to "file a Notice indicating that Defendants had retained an ESI discovery vendor" on or before June 22, 2022. Disc. Order ¶ 3.

---

[5] "Attorneys practicing in the Western District of Virginia are required to comply with the Virginia Rules of Professional Conduct." *United States v. Becerra-Gonzalez*, No. 4:20cr9, 2021 WL 1286559, at *2 (W.D. Va. Apr. 6, 2021) (Dillon, J.) (citing Standing Order, In Re: Amendment to R. IV – Standards for Prof'l Conduct of Fed. R. of Disciplinary Enforcement (W.D. Va. June 16, 2016)).

i.      On June 22, Defendants filed notice that they had "*begun the onboarding process with a new ESI discovery vendor[] and [were] currently going through the company's conflicts process.*" Notice 1 (emphasis added). The Notice shows that Defendants were trying to retain a discovery vendor to run the court-ordered ESI searches. *See* Disc. Order ¶¶ 3–4. It does not indicate that they "had retained" a vendor to do so, Disc. Order ¶ 3. *See* Scott Third Supp'l Decl. ¶ 25.

ii.      On June 28, Mr. Bowser notified Plaintiffs' counsel that his clients "cleared the conflicts process and the vendor is now in the process of running a credit check." Scott Decl. Ex. 7, Email from A. Bowser to L. Hartmann (June 28, 2022, 6:54 PM); *see* Scott Decl. ¶¶ 10–11 (citing same). Mr. Bowser had been "informed that once [the credit check] is cleared on the vendor's end, the vendor will send its MSA over to the Defendants for execution." Scott Decl. Ex. 7.

iii.      There is no evidence in the record that the Entity Defendants executed this vendor's agreement or otherwise retained a discovery vendor to run the court-ordered ESI searches, Disc. Order ¶¶ 3–4. *See* Scott Decl. ¶ 10.

iv.      Therefore, the Entity Defendants violated paragraph 3 of the Discovery Order.

6.      **Paragraph 4** required the Entity Defendants to run automated searches "us[ing] Plaintiffs' proposed search terms and the parties' agreed-upon list of custodians to identify and collect any ESI, other than that stored in Capsule, Lightspeed, or similar database" responsive to Entity RFP Nos. 4, 6, 7, 9, 11, 13, 14, 15, 17, 20, 21, and/or 22. Disc. Order. ¶ 4. These RFPs sought relevant information about staff compensation, RFP No. 4; program marketing and development, RFP Nos. 6–7, 9; third-party contracts, RFP No. 15; and internal or external

program audits, RFP Nos. 21–22. Defendants' counsel needed to review the initial search results

and produce any responsive ESI to Plaintiffs' counsel by October 1, 2022. *See* Disc Order ¶ 3.

        i.        "[T]o date, Defendants have not produced initial search term results; have

not responded to Plaintiffs' repeated inquiries concerning the status of ESI; and have not

produced a single page of ESI discovery." Scott Third Supp'l Decl. ¶ 27 (Jan. 2023); *see* Scott

Second Supp'l Decl. ¶ 5 (Sept. 2022); Scott Decl. ¶ 11 (July 2022); *id.* Ex. 6, Email from L.

Hartmann to A. Bowser (June 23, 2022, 4:28 PM), ECF No. 141-6.

        ii.        Therefore, the Entity Defendants violated paragraph 4 of the Discovery

Order.

        7.        **Paragraph 5** required the Entity Defendants, on or before June 29, 2022, to

export and produce to Plaintiffs complete, unredacted electronic versions of all Capsule,

Lightspeed, and other database files or records responsive to Entity RFP Nos. 5, 8, 10, 11, 13,

14, 17, and/or 20. *See* Disc. Order ¶ 5. These RFPs sought relevant information about the

individual consumers who received Defendants' products or services, including the consumers'

payment histories, RFP Nos. 5, 10, 13; program or service documents provided to the consumers,

RFP No. 8; records of Nexus employees' communications with the consumers, RFP Nos. 11, 14,

17; and consumer complaints, RFP No. 20. The Entity Defendants' joint answers to Plaintiffs'

interrogatories identified (at least) six databases within Defendants' possession or control that

contained responsive ESI: Capsule, Lightspeed, NetSuite, QuickBooks, American Spirit, and

Five-9. Scott Third Supp'l Decl. ¶¶ 9–12 (citing *id.* Ex. 1, Defs. Nexus & Libre's Resp. to Pl.

Comm'w of Va.'s First Interrogs. (Nov. 11, 2021), ECF No. 175-1, at 4–5). Defendant Micheal

Donovan signed the Entity Defendants' responses to Plaintiffs' interrogatories. *Id.* Ex. 1, ECF

No. 175-1, at 27.

i.      "To date, Defendants have not produced any files from four of the six databases—
NetSuite, QuickBooks, American Spirit, and Five-9." Scott Third Supp'l Decl. ¶ 14 (Jan. 2023);
*see also* Scott First Supp'l Decl. ¶ 4 (Aug. 2022); Bowser Decl. ¶ 6 (Sept. 2022). Therefore, the
Entity Defendants violated paragraph 5 of the Discovery Order with respect to these databases.

ii.      *Lightspeed.* The Entity Defendants use Lightspeed to organize, maintain, or track
information relating to "the amount of all payments made toward collateralizing the
[consumer's] bond." *See* Scott Third Supp'l Decl. Ex. 1, Defs. Nexus & Libre's Resp. to Pl.
Comm'w of Va.'s First Interrogs. 4–5 (Interrog. & Resp. No. 4), ECF No. 175-1.

a.      The Entity Defendants did not produce any Lightspeed records by June 29,
2022. *See* Scott Decl. ¶ 4 (Aug. 2022); Bowser Decl. ¶ 6 (Sept. 2022). Therefore, the
Entity Defendants violated paragraph 5 of the Discovery Order with respect to the
Lightspeed database.

b.      On July 29, 2022, the Entity Defendants produced Lightspeed records
from 2021 and either 2020 or 2022. *See* Bowser Decl. ¶ 6 ("I was informed that
Defendants have produced all the Lightspeed data for 2022 and 2021.") (Sept. 2022);
Scott Third Supp'l Decl. ¶ 15 ("The [Lightspeed] production included partial records for
2020 and 2021.") (Jan. 2023).

c.      Plaintiffs' complaint alleges that Defendant Libre has charged
immigration consumers "Bond Collateralization Fees" since at least "late 2017 or early
2018," Compl. ¶¶ 71–72, and that Libre has tracked consumer's "collateral payments"
since at least 2014, *see id.* ¶¶ 46–54. To date, the Entity Defendants have not produced
any Lightspeed records from before 2020 or 2021. *See* Scott Third Supp'l Decl. ¶ 15 (Jan.
2023); Bowser Decl. ¶ 6 (Sept. 2022).

23

iii.     *Capsule.* The Entity Defendants use Capsule to store, organize, and maintain records of their employees' interactions with consumers, among other information relevant to Plaintiffs' claims. *See* Scott Third Supp'l Decl. Ex. 1, at 4–5 (Interrog. & Resp. No. 4).

a.     The Entity Defendants did not produce any Capsule database files by June 29, 2022. *See* Scott Decl. ¶ 3 (July 2022); Bowser Decl. ¶ 5 (Sept. 2022). Therefore, the Entity Defendants violated paragraph 5 of the Discovery Order with respect to the Capsule database.

b.     The Capsule hard drive produced in September 2022 does not appear to contain "complete, unredacted electronic versions of all Capsule . . . database files or records responsive to [Entity] RFP Nos. 5, 8, 10, 11, 13, 14, 17, and/or 20." Disc. Order ¶ 5. Plaintiffs' counsel attested that some consumers' Capsule files contain both references to relevant interactions and a transcript or other contemporaneous record of the interaction itself, whereas other consumers' files contain references to such interactions, but not the underlying contemporaneous transcripts or recordings. *See* Scott Third Supp'l Decl. ¶¶ 19–21. Plaintiffs presuppose that these "missing" materials were stored in the Capsule database; therefore, those materials should have been included on the hard drive that Defendants produced in September 2022. *See id.* Defendants did not rebut Plaintiffs' declaration. Nonetheless, it is not clear whether the cited materials were ever entered into the Capsule database. On this mixed record, I cannot find that the deficiencies in Defendants' production of the Capsule database violated the Discovery Order. Nevertheless, the parties should be prepared to present evidence on this issue at the contempt hearing before the presiding District Judge.

24

8.     **Paragraph 9** directed Defendants Micheal Donovan, Richard Moore, and Evan Ajin, on or before June 29, 2022, to produce any documents or information that (a) was responsive to Individual RFP Nos. 3, 5, 6 and/or 8; and (b) had not been produced either by the Entity Defendants or a by third party in response to Plaintiffs' discovery requests served in this action. Disc. Order ¶ 9. Individual RFP No. 8 sought relevant information about each Individual Defendant's financial condition from January 1, 2016, to the present. *See* Scott Third Supp'l Decl. ¶¶ 12–13.

i.     No Individual Defendant produced any responsive materials by June 29, 2022. *See* Scott. Decl. ¶ 12. The Individual Defendants do not dispute that these materials were within their possession, custody, or control. *See* Disc. Order ¶ 9.

ii.     On October 5, 2022, Mr. Donovan and Mr. Moore produced monthly statements from a single joint bank account they held from 2014 to 2017, and Mr. Ajin produced monthly statements from one bank account he held from 2017 to 2021. *See* Scott Third Supp'l Decl. ¶ 29. They have not produced any other responsive records. *See id.* ¶ 30. No evidence suggests that these productions satisfied the Individual Defendants' obligations under Paragraph 9 of the Discovery Order. Therefore, they have violated the Discovery Order.

9.     Defendants' knowing violations of the June 8, 2022, Discovery Order significantly harmed Plaintiffs' ability to prepare their case for trial in a just, speedy, and inexpensive manner. Defendants' failure to produce the specified discovery by the Court's deadlines prevented Plaintiffs from completing discovery in accordance with the Scheduling Order and required the Court to cancel the bench trial set previously set for January 30, 2023.

IV. Order to Appear

25

I submit that the facts certified above show that each Defendant knowingly violated my June 8, 2022 Order directing that Defendant to take certain steps, within specific timeframes, to provide or permit discovery of the materials Plaintiffs sought in the RFPs at issue and that Plaintiffs suffered harm as a result. Accordingly, Plaintiffs' Motion for an Order to Show Cause Why Defendants Should Not Be Held in Civil Contempt, To Impose Discovery Sanctions, and for Certification Under 28 U.S.C. § 636(e)(6)(B)(iii), ECF No. 139, is hereby **GRANTED**. It is hereby **ORDERED** that Defendant Micheal Donovan, Defendant Richard Moore, and Defendant Evan Ajin each **SHALL APPEAR** before the Honorable Elizabeth K. Dillon, presiding United States District Judge, to **SHOW CAUSE** why he should not be adjudged in contempt by reason of the facts so certified against the Individual Defendants. Defendant Nexus Services, Inc. and Defendant Libre by Nexus, Inc. shall appear to show cause why they should not be adjudged in contempt by reason of the facts so certified against the Entity Defendants.

Judge Dillon may consider additional "evidence from the parties either to challenge the accuracy of the facts certified by the [undersigned] magistrate [judge] or to establish the existence of other relevant facts" in determining "whether . . . a finding of contempt [is] warranted." *Proctor v. State Gov't of N.C.*, 830 F.2d 514, 521 (4th Cir. 1987).

## V. Proposed Findings of Civil Contempt & Sanctions

Whether each Defendant's conduct described above "constitutes contempt and any sanctions therefor are committed to discretion of the" presiding district judge. *Church*, 35 F. Supp. 2d at 217; *see also JTH Tax, Inc.*, 359 F.3d at 705. "Upon certification" under 28 U.S.C. § 636(e)(6), however, the "magistrate judge may recommend that certain sanctions be imposed by the district court upon a finding of contempt." *Church*, 35 F. Supp. 2d at 217. Based on my familiarity with each Defendant's unjustified failure and refusal to comply with its discovery

obligations under both the Federal Rules and my June 8, 2022 Order, ECF No. 129, I respectfully recommend that Judge Dillon treat each Defendant's failure to obey the June 8 Order as civil contempt. *See* Fed. R. Civ. P. 37(b)(2)(A)(vii). I further recommend that Judge Dillon impose the following measures to coerce each Defendant's compliance with the June 8 Order:

1. Impose upon Defendants Nexus Services, Inc. and Libre by Nexus, Inc. (collectively, "the Entity Defendants"), a fine of **$1,000 per day** for further non-compliance with the Order, which shall be jointly and severally payable to Plaintiffs in addition to any other judgment, fine, or fee imposed against the Entity Defendants in this case.

2. Impose upon Defendant Micheal Donovan, Defendant Richard Moore, and Defendant Evan Ajin a fine of **$500 per day** each for that Individual Defendant's further non-compliance with the Order, which shall be payable to Plaintiffs in addition to any other judgment, fine, or fee imposed against that Individual Defendant in this case.

3. Award attorneys' fees and costs incurred in relation to briefing and arguing Plaintiffs' Motion for Rule 37 sanctions, ECF No. 139. *See* Fed. R. Civ. P. 37(b)(2)(C).

**IT IS SO ORDERED.**

The Clerk shall send a copy of this Order to the parties.

ENTER: February 7, 2023

Joel C. Hoppe
U.S. Magistrate Judge