IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, et al., <br><br>   Plaintiffs, <br><br> v. <br><br> NEXUS SERVICES, INC., et al., <br><br>   Defendants. | Case No.: 5:21-cv-00016-EKD-JCH |

**SUPPLEMENTAL BRIEF IN RESPONSE TO THE ORDERS TO SHOW CAUSE AND IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS AND MOTION FOR ORDER TO SHOW CAUSE**

Under the Court's March 14, 2023 Order (ECF No. 187), Plaintiffs respectfully submit this brief in response to the recently issued Orders to Show Cause and in further support of Plaintiffs' Motion for an Order to Show Cause why Defendants Should Not Be Held in Civil Contempt, to Impose Discovery Sanctions, and for Certification Under 28 U.S.C. § 636(e)(6)(B)(iii) (the Motion for Sanctions, ECF No. 139) for violating the June 8, 2022 Order for Defendants to Provide or Permit Discovery (the Discovery Order, ECF No. 129). For over a year, Defendants have refused to participate in the discovery process and ignored Court orders to produce information or retain counsel. Given these ongoing and willful failures to comply and the apparent ineffectiveness of lesser measures, entry of default judgment is the most appropriate sanction against all Defendants. The Court is empowered to enter default judgment as to all Defendants under its inherent authority and under Federal Rule of Civil Procedure 37 (Rule 37), and good cause exists for the entry of default judgment against all Defendants here. In the

alternative, Plaintiffs respectfully request that the Court construe Plaintiffs' Motion for Sanctions as a Motion for Entry of Default Judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 22, 2021, Plaintiffs filed a seventeen-count Complaint alleging that Defendants violated federal and state consumer-protection laws in their offering of products and services related to immigration bonds for consumers held in federal detention centers.[1] On September 13, 2021, this Court entered a Scheduling Order that required the parties to complete discovery by October 28, 2022, and set a trial date of January 30, 2023.[2]

Plaintiffs propounded document requests on Defendants, but Defendants substantially failed to comply. After Plaintiffs' attempts to resolve the parties' discovery issues were unsuccessful, Plaintiffs submitted a Statement Detailing and Itemizing Discovery Dispute (ECF No. 115). On June 8, 2022, the Magistrate Judge granted Plaintiffs' request for discovery and ordered compliance with specific provisions by specified dates.[3] This Discovery Order, as relevant here, required the Entity Defendants to: produce deposition transcripts, including any exhibits, within their possession, custody, or control; file a notice certifying that they had retained an ESI discovery vendor and providing an estimate of how much time the vendor needed to run the agreed-upon ESI searches; apply Plaintiffs' search terms to an agreed-upon list of custodians and collect ESI; and produce certain database records.[4] The Discovery Order also required the Individual Defendants to respond to certain document requests, including requests seeking financial information.[5]

---

[1] *See* Compl., ECF No. 1.
[2] *See* Scheduling Order 1, ECF No. 66.
[3] *See* Disc. Order.
[4] *Id.* ¶¶ 2-5. "Entity Defendants" refers to Defendants Nexus Services, Inc. and Libre by Nexus, Inc. "Individual Defendants" refers to Defendants Micheal Donovan, Richard Moore, and Evan Ajin. "Defendants" refers to the Entity Defendants and Individual Defendants, collectively.
[5] *Id.* ¶ 9.

Defendants did not comply with the Discovery Order, forcing Plaintiffs to file their Motion for Sanctions on July 19, 2022. As reflected in the certified facts contained in the Magistrate Judge's February 7, 2023 Order for Defendants to Show Cause & Certification Under 28 U.S.C. § 636(E)(6)(B)(iii) (First Order to Show Cause, ECF No. 181), Defendants knowingly violated each of the aforementioned provisions of the Discovery Order.[6] The Magistrate Judge granted Plaintiffs' Motion for Sanctions and issued the First Order to Show Cause, finding that Defendants' violations "significantly harmed Plaintiffs' ability to prepare their case for trial in a just, speedy, and inexpensive manner," "prevented Plaintiffs from completing discovery in accordance with the Scheduling Order," and "required the Court to cancel the bench trial set previously set [sic] for January 30, 2023."[7] The Magistrate Judge also recommended monetary penalties of up to $1,000 per day for the Entity Defendants' further non-compliance with the Discovery Order and $500 per day for each Individual Defendant's further non-compliance with the Discovery Order.[8] Defendants largely did not comply with either the Discovery Order or the First Order to Show Cause since their entry by the Court.[9]

Separately, on June 23, 2022, Defendants' then-counsel filed Motions for Leave to Withdraw (Motions to Withdraw, ECF Nos. 134-36) as counsel for Defendants. Defendants and Defendants' counsel represented to the Magistrate Judge that Defendants could no longer pay for the retained counsel's services.[10] On January 11, 2023, the Magistrate Judge granted counsel's Motions to Withdraw and ordered the Entity Defendants to "retain a licensed attorney and have that attorney enter his or her appearance on that Defendant's behalf in this matter" within

---

[6] First Order to Show Cause 19-25.
[7] *Id.* at 25.
[8] *Id.* at 27.
[9] *See* Decl. of James E. Scott in Supp. of Pls.' Suppl. Br. ("Scott Decl.") ¶¶ 3-9. The Scott Declaration accompanies this filing.
[10] Hr'g Tr. 4:21-5:15, 7:14-21, Aug. 2, 2022, ECF No. 152.

fourteen days.[11] After the Entity Defendants failed to retain counsel as required by the Court, on February 7, 2023, the Magistrate Judge issued an Order to Show Cause (referred to here as the Second Order to Show Cause) "why the Court should not sanction each Entity Defendant, including by entering default judgment, for disobeying the Court's Order of January 11, 2023."[12] The Magistrate Judge ordered Defendants to file a written response within fourteen days, which Defendants failed to do.[13]

Defendants have not corrected any of the violations found by the Magistrate Judge.[14] Defendants have not produced any documents since October 5, 2022, and have yet to produce a single page of ESI discovery in this litigation.[15] Indeed, Defendants' prior counsel represented to the Magistrate Judge at the January 10, 2023 hearing that despite "repeated emails" from counsel asking Defendants to pay a retainer for their e-Discovery vendor, counsel was "just not getting any movement" from Defendants.[16] Neither Defendants nor any counsel for Defendants have contacted Plaintiffs to address any of the deficiencies identified by the Magistrate Judge since the issuance of the Orders to Show Cause.[17] And despite the Court providing Defendants with notice, neither Defendants nor any counsel for Defendants appeared at the status conference held for this matter on March 14, 2023.[18]

## ARGUMENT

Throughout this litigation, Defendants have consistently ignored their discovery obligations and this Court's orders. Default judgment is the only appropriate sanction for

---

[11] Order 2-3, ECF No. 178.
[12] Second Order to Show Cause 1-2, ECF No. 182. The First Order to Show Cause and the Second Order to Show Cause are referred to here as the "Orders to Show Cause," collectively.
[13] *Id.* at 2.
[14] *See* Scott Decl. ¶¶ 2-10.
[15] *Id.* ¶¶ 3-9, Third Suppl. Decl. of James E. Scott in Supp. of Pls.' Mot. for Sanctions ¶¶ 3-4, 27, 29, ECF No. 175.
[16] Hr'g Tr. 20:11-22, Jan. 10, 2023, ECF No. 183.
[17] Scott Decl. ¶¶ 3, 10.
[18] *Id.* ¶ 11.

Defendants' blatant disregard for the judicial process. Under the long-established framework set forth by the Fourth Circuit, Defendants' failures to comply with the Court's orders warrants the exercise of the Court's inherent power to enter default judgment against all Defendants. The Court can also enter default judgment under Rule 37 for Defendants' failure to comply with the Discovery Order. In either case, the Court can act *sua sponte* and is not constrained by Plaintiffs' initial request for a remedy of monetary sanctions. In the alternative, Plaintiffs respectfully request that the Court construe Plaintiffs' Motion for Sanctions as a Motion for Entry of Default Judgment.

    A.    <u>The Court has inherent authority to enter default judgment against all Defendants</u>.

Federal courts possess "powers governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."[19] The Fourth Circuit recognizes that these "organic" powers exist "without need of a statute or rule"[20] and permit district courts "to sanction a party, including entry of default or dismissal of an action, when a party abuses the judicial process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process."[21] "[T]he inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct."[22] Importantly, district courts are "entitled to consider sanctions on [their] own motion and without any limitation on the types of conduct that

---

[19] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (cleaned up).
[20] *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461(4th Cir. 1993).
[21] *First Mariner Bank v. Resolution Law Grp., P.C.*, No. MJG-12-1133, 2014 WL 1652550, at *7 (D. Md. Apr. 22, 2014) (citing *Projects Mgmt. Co. v. Dyncorp Int'l, LLC*, 734 F.3d 366, 373-74 (4th Cir. 2013)).
[22] *Chambers*, 501 U.S. at 49; *Brockton Sav. Bank v. Peat, Marwich, Mitchell & Co.*, 771 F.2d 5, 10-12 (1st Cir. 1985) (affirming default judgment against defendant under the court's inherent powers even though Rule 37 was available).

[they can] consider."[23] A district court is not even "limited to the precise arguments raised by the parties when the court is exercising its inherent authority."[24]

The Fourth Circuit applies the six "*Shaffer* factors" when considering final adjudication of an action as a sanction for disregarding court orders.[25] Those factors are:

> (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest.[26]

The Fourth Circuit has held that repeated discovery abuses can warrant a finding of default judgment under this analysis, as such abuses may satisfy each of the factors.[27] For example, in *Projects Management Co. v. Dyncorp International*, the Fourth Circuit affirmed a district court's exercise of its inherent authority to enter a final judgment against the offending party under facts similar to those that exist here.[28] In *Dyncorp*, the Fourth Circuit affirmed that the first *Shaffer* factor was satisfied where the district court found that "withholding a large number of relevant documents during discovery" and making "late disclosures of material significance" demonstrated a high degree of culpability.[29] The Fourth Circuit upheld the district court's finding as to the second factor where the plaintiff, "rather than counsel, has committed

---

[23] *Dyncorp*, 734 F.3d at 376.
[24] *Id.* at 375.
[25] *See id.* at 373-74; *Shaffer*, 11 F.3d at 462-63; *see also, e.g., Davis v. United States*, No. 17-2258, 767 Fed. Appx 396, 397 (4th Cir. Sept. 11, 2018) (recognizing that the court's ability to exercise its inherent authority extends to the court's power to enter default judgment); *Secrease v. Western & Southern Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015) (explaining that the court's inherent authority to "preserve the integrity of its proceedings . . . apply to default judgments against defendants as well as dismissals against plaintiffs.").
[26] *Shaffer*, 11 F.3d at 462-63.
[27] *Dyncorp*, 734 F.3d at 373-77.
[28] *Id.*
[29] *Id.* at 374.

6

serious discovery defalcations."[30] As to the third, fourth, and fifth factors, the Fourth Circuit noted the district court's finding that the plaintiff's discovery misconduct caused substantial prejudice to the "judicial process" and to the defendant, who was prevented from "conducting effective discovery or taking effective depositions," and that plaintiff's "unabated obstruction and defiance made clear" that lesser sanctions would neither remedy the prejudice nor deter the misconduct.[31] And the final *Shaffer* factor was satisfied based solely on "a public interest in ensuring the integrity of the judicial process."[32]

Here, Defendants' ongoing failure to comply with their discovery obligations, in direct contravention of the Discovery Order, and their failure to comply with the Court's orders are even more severe than the discovery misconduct in *Dyncorp*.

1. Degree of Defendants' culpability

Like the plaintiff's discovery defalcations in *Dyncorp*, Defendants' willful obstruction of the discovery process here and continued refusal to comply with the Discovery Order—which apply to both Entity Defendants and Individual Defendants—demonstrate a high level of culpability. For example, the Entity Defendants never retained a discovery vendor to even *begin* producing ESI in response to Plaintiffs' discovery requests, despite their prior assurances to the Court and Plaintiffs that they would do so.[33] The Entity Defendants failed to produce—or even run initial searches for—e-mails, text messages, and other electronic communications concerning the bond program, or other relevant information about staff compensation, program marketing and development, third-party contracts, and internal or external program audits.[34] While the

---

[30] *Id.*
[31] *Id.*
[32] *Id.* (cleaned up).
[33] Defs.' Notice Regarding Disc. Vendor, ECF No. 133; First Order to Show Cause 8, 20-21.
[34] First Order to Show Cause 21-22.

Individual Defendants made limited productions relating to their financial conditions, as the Court found, their productions did not satisfy their obligations under the Discovery Order.[35]

The Entity Defendants' degree of culpability is magnified by their blatant disregard of the Magistrate Judge's other recent orders. The Entity Defendants were under order to retain counsel and are long past their deadline for counsel to enter an appearance.[36] And even after the Magistrate Judge issued the Second Order to Show Cause "why the Court should not sanction each Entity Defendant, including by entering default judgment," for their failure to retain counsel and ordered Defendants to file a written response within fourteen days,[37] Defendants did not respond and did not appear at the Court's March 14, 2023 status conference, and no counsel has made an appearance for the Entity Defendants.

The Individual Defendants also are culpable for the Entity Defendants' failure to comply with the Discovery Order, failure to retain counsel, and failure to respond to the Second Order to Show Cause. As owners and officers of the Entity Defendants,[38] the Individual Defendants bear responsibility for the Entity Defendants' compliance with the Court's orders. As the Fourth Circuit explained in *Colonial Williamsburg Foundation v. Kittinger Co.*:

> A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation

---

[35] *Id*. at 25.
[36] *See* Order, ECF No. 178 (granting Defendants' former counsel's motion to withdraw and directing Entity Defendants to retain counsel within fourteen days).
[37] Second Order to Show Cause 1-2.
[38] *See* Answer ¶¶ 20-22, ECF No. 114 (admitting that Individual Defendant Donovan is a co-founder, a majority owner, an officer, and a director of Entity Defendant Nexus Services, Inc. and Chief Executive Officer of Entity Defendant Libre by Nexus, Inc; Individual Defendant Moore is a co-founder and Executive Vice President of Entity Defendant Nexus Services, Inc; and Individual Defendant Ajin is a minority owner and the "corporate secretary" of Entity Defendant Nexus Services, Inc. and a vice president of Entity Defendant Libre by Nexus, Inc.). Corporate records indicate that Individual Defendants Donovan and Ajin are designated as President and Vice President, respectively, of Entity Defendants Libre by Nexus, Inc. and Nexus Services, Inc. Scott Decl. ¶¶ 12-13 & Exs. 1-2.

itself, are guilty of disobedience, and may be punished for contempt.[39]

In *Kittinger*, the district court found the chairman of the board in contempt because he "took none of the affirmative steps necessary to ensure Kittinger's compliance with the Consent Judgment."[40] Similarly here, the Individual Defendants, as owners and officers, are responsible for the Entity Defendants' compliance with the Court's orders.

    2. <u>Defendants' blameworthiness</u>

Defendants' former counsel admitted that despite continuous efforts, he was unable to get his clients to comply with the Discovery Order and could not identify a sanction that would coerce Defendants' compliance.[41] Defendants, and Defendants alone, are to blame for their continued misconduct in this case.

    3. <u>Prejudice to the Court</u>

Defendants' obstruction of discovery has prejudiced the Court by preventing it from managing its "own affairs so as to achieve the orderly and expeditious disposition of cases."[42] As the Magistrate Judge certified, Defendants' "knowing violations" of the Discovery Order "required the Court to cancel the bench trial previously set for January 30, 2023."[43]

    4. <u>Prejudice to Plaintiffs and to the victims of the conduct alleged in Plaintiffs' Complaint</u>

More than two years after filing their Complaint, Plaintiffs are still without sufficient responses to basic written discovery and without a trial date due to Defendants' actions. The Entity Defendants remain unrepresented in continuing violation of a Court order, which has

---

[39] *Colonial Williamsburg Found. v. Kittinger Co.*, 38 F.3d 133, 137 (4th Cir. 1994) (quoting *Wilson v. United States*, 221 U.S. 361, 376 (1911)).
[40] *Kittinger* at 134, 136 (quoting *Colonial Williamsburg Found. v. Kittinger Co.*, 792 F. Supp. 1397, 1406-07 (E.D. Va. 1992)).
[41] *See, e.g.*, Hr'g Tr. 20:17-22, Jan. 10, 2023, ECF No. 183.
[42] *See Chambers*, 501 U.S. at 43 (cleaned up).
[43] First Order to Show Cause 25.

9

effectively stalled the case since the Entity Defendants cannot participate without counsel. And none of the Defendants appeared at the Court's March 14, 2023 status conference. Defendants' "knowing violations" of the Discovery Order "significantly harmed Plaintiffs' ability to prepare their case for trial in a just, speedy, and inexpensive manner,"[44] and the Entity Defendants' failure to retain counsel has, and will continue to, protract this litigation. And while Defendants' misconduct continues to frustrate the progress of this litigation, the violations of law alleged in Plaintiffs' complaint likely continue, prolonging the harm to the victims of Defendants' violations.

5. Availability of lesser sanctions

In *Dyncorp*, the district court "previously imposed lesser sanctions" against the plaintiff, and it ultimately dismissed the case when it was clear that "lesser sanctions [would not] remedy the prejudice to [the defendant] or deter" the misconduct.[45] Lesser sanctions are likewise unlikely to be effective here. The Magistrate Judge recommended daily monetary sanctions, but this recommendation has had no impact on Defendants' conduct. And at the January 10, 2023 hearing on the Motion for Sanctions, Defendants' former counsel expressed doubt that *any* order would be effective at compelling Defendants to comply with the Court's orders; when asked by the Court to suggest a way to ensure Defendants' compliance, their former counsel stated, "I'm at a loss. . . . I don't really know what to suggest."[46] In addition to failing to retain counsel nearly three months after their former counsel's withdrawal, the Defendants failed to appear at the January 10, 2023 hearing and the Court's March 14, 2023 status conference, further demonstrating that all Defendants have essentially stopped participating in this litigation. While

---

[44] *Id.*
[45] *Dyncorp*, 734 F.3d at 374.
[46] *See, e.g.*, Hr'g Tr. 35:21-25, 36:1-4, Jan. 10, 2023, ECF No. 183.

the Magistrate Judge correctly states that Plaintiffs did not specifically "seek any evidentiary or claim-dispositive discovery sanctions,"[47] in their initial motion, these intervening facts support the sanction of default judgment now.

      6.   <u>The public interest</u>

As the Fourth Circuit has affirmed, there is a "public interest in ensuring the integrity of the judicial process."[48] Entry of default judgment against all Defendants here would serve that public interest.

Plaintiffs brought this case, in part, to enjoin alleged unfair, abusive, and deceptive acts and practices targeted at a vulnerable population—indigent immigrants facing potential deportation.[49] Allowing Defendants to escape or delay judicial oversight of their actions by simply refusing to participate in the litigation undermines the public trust in the effectiveness of the judiciary to resolve such disputes. Entry of default judgment therefore serves the public interest by preventing Defendants from further frustrating the integrity of the judicial process and, thus, from delaying the resolution of this government enforcement action.

Accordingly, Defendants' obstructionist tactics in this case satisfy each of the *Shaffer* elements and warrant entry of default judgment against all Defendants.

    B.   <u>The Court has separate authority to enter default judgment under Rule 37 as to all Defendants.</u>

Rule 37 supplements the Court's inherent power to sanction parties for their noncompliance with the Court's orders. As with the Court's inherent power to enter default judgment, the Court can also enter default judgment under Rule 37(b)(2)(A)(vi) *sua sponte*. "The

---

[47] First Order to Show Cause 2.
[48] *Dyncorp*, 734 F.3d at 374.
[49] *See generally* Compl., ECF No. 1.

court generally may act *sua sponte* in imposing sanctions under the Rules."[50] Indeed, failing to comply with discovery orders can provide an "immediate ground for dismissing the case" or, in this case, entering default judgment under Rule 37.[51]

District courts have substantial discretion to determine, after consideration of the full record, when the entry of default judgment is the appropriate remedy for repeated and willing noncompliance.[52] While default judgment should be imposed more narrowly than monetary sanctions for discovery violations in light of a litigant's right to a jury trial, entry of default judgment will be upheld "where the party's noncompliance represents bad faith and callous disregard for the authority of the district court and the Rules."[53]

The Fourth Circuit requires the application of a four-factor test, known as the *Wilson* factors, to balance these competing interests:

> (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.[54]

Considering these factors, the Fourth Circuit has upheld entry of default judgment based on "noncompliance" and "haphazard compliance" markedly similar to the Defendants'

---

[50] *Chambers*, 501 U.S. at 42 n.8.
[51] *Roadway Express v. Piper*, 447 U.S. 752, 764 (1980). In contrast to other sections of Rule 37, subsection (b)(2) of Rule 37 does not require a motion for entry of sanctions. *Compare* Fed. R. Civ. P. 37(b)(2) ("If a party . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders. They may include . . . rendering a default judgment against the disobedient party . . . .") *with* Fed. R. Civ. P. 37(d) (authorizing entry of sanctions "on motion" for failure to attend depositions, serve answers to interrogatories, or respond to requests for inspection).
[52] *See NHL v. Metro. Hockey Club*, 427 U.S. 639, 642-43 (1976) ("[H]ere, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.").
[53] *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs.*, 872 F.2d 88, 92 (4th Cir. 1989) (citing *Wilson v. Volkswagen of Am.*, 561 F.2d 494, 504 (4th Cir. 1977)).
[54] *Id.*

misconduct in this case.[55] In *Mutual Federal Savings Ass'n v. Richards & Associates*, with respect to the first *Wilson* factor, the Fourth Circuit determined that the district court's finding that defendants acted in bad faith was supported by a "pattern of indifference and disrespect to the authority of the court."[56] With respect to the second *Wilson* factor, the *Richards* district court found that the plaintiff "suffered great prejudice" because it was unable "to prove its case" after the defendants withheld "essential" documents in discovery.[57] As to the third factor, the district court found that the noncompliance at issue—ignoring discovery orders and stalling the litigation—"must obviously be deterred."[58] And finally, the district court found that monetary sanctions had "little, if any, impact on the defendants" and rejected "other sanctions such as partial summary judgment" because "without the essential discovery materials, the case could be more difficult to try."[59] Under this record, the Fourth Circuit concluded that the district court "clearly applied the *Wilson* factors" and had not abused its discretion in granting default judgment against a defendant that "ignore[d] outright the court's orders or . . . submit[ted] chaotically and defectively to them."[60]

Similarly here, Defendants' violations of the Discovery Order satisfy each of the *Wilson* factors.

1. Defendants' bad faith

In the Fourth Circuit, "bad faith includes willful conduct, where the party clearly should have understood his duty to the court but nonetheless deliberately disregarded it."[61] This plainly

---

[55] *Id.* at 93.
[56] *Id.*
[57] *Id.*
[58] *Id.*
[59] *Id.*
[60] *Id.* at 93-94.
[61] *Axiom Res. Mgmt., Inc. v. Alfotech Sols., LLC*, No. 1:10cv1011, 2011 U.S. Dist. LEXIS 69450, at *19 (E.D. Va. June 3, 2011) (cleaned up).

13

occurred here—the Magistrate Judge certified that both Entity Defendants and Individual Defendants committed "knowing violations" of the Discovery Order as detailed in the First Order to Show Cause.[62] Furthermore, the Individual Defendants, as owners and officers of the Entity Defendants, should be held accountable for the Entity Defendants' failure to comply with the Discovery Order, as described above in connection with the first *Shaffer* factor.

2. Prejudice to Plaintiffs

As noted above with respect to the fourth *Shaffer* factor, Plaintiffs still have not received responses to basic written discovery despite filing their Complaint over two years ago. Defendants' noncompliance with the Discovery Order "significantly harmed Plaintiffs' ability to prepare their case for trial in a just, speedy, and inexpensive manner."[63]

3. The need to deter Defendants' noncompliance

The Magistrate Judge certified that Defendants' "knowing violations" of the Discovery Order have "prevented Plaintiffs from completing discovery in accordance with the Scheduling Order and required the Court to cancel the bench trial set previously set [sic] for January 30, 2023."[64] As in *Richards*, here there is an "obvious[]" need to deter Defendants' misconduct, which amounts to "stalling and ignoring the direct orders of the court with impunity."[65]

4. Effectiveness of lesser sanctions

For the same reasons described in connection with the fifth *Shaffer* factor above, there is no sanction other than default judgment that will remedy Defendants' noncompliance with the Discovery Order. Former counsel for the Defendants represented that Defendants would not

---

[62] First Order to Show Cause 25.
[63] *Id*.
[64] *Id.*
[65] *Richards*, 872 F.2d at 93.

comply with an order requiring the payment of monetary sanctions and could not identify any lesser sanction that would coerce Defendants' compliance with the Discovery Order.[66]

Even if Defendants were to make a "last-ditch" effort to comply with the Discovery Order, it would be too late. As the Fourth Circuit explained in *Richards*:

> Even though the defendants may have made efforts to comply, the attempts were last-ditch and only offered when it became crystal clear that they were going to lose the case unless they did something. . .. Entrance of default judgment against the defendants now is not punishment for their 'compliance' as they would have it characterized, but an unmistakable message to them and others that the judicial system will not tolerate repeated misconduct never wholly remedied in the future. To find otherwise would be to send the opposite message that the court may be pushed, ignored and defied to the outermost limits so long as the noncomplying party has even an inadequate fallback act ready in the wings should the final curtain be falling.[67]

At this point, any attempt by Defendants to cure their nine-month disregard of the Court's orders would be reminiscent of the efforts of the *Richards* defendants—an untimely promise of future compliance with passed deadlines. And Defendants here have shown that promises of future compliance go unfulfilled. Applying the Fourth's Circuit reasoning in *Richards*, Defendants' conduct warrant the same "unmistakable message" that their willful misconduct will not be tolerated, and entry of default judgment against all Defendants is appropriate. A lesser sanction can neither compel compliance nor remedy the waste of Plaintiffs' and the Court's resources occasioned by Defendants' obstruction of discovery.

    C.    <u>No additional notice to Defendants is required for the Court to enter default judgment.</u>

Defendants have no grounds to object to the Court considering default as an appropriate sanction at the scheduled hearing. Rule 37 provides all litigants with notice that failure to comply

---

[66] *See, e.g.*, Hr'g Tr. 35:21-25, 36:1-4, Jan. 10, 2023.
[67] *Richards*, 872 F.2d at 94.

with discovery orders may result in terminating sanctions.[68] Courts are not required to give litigants any additional warning before entering default judgment under Rule 37.[69]

Notwithstanding the above, Defendants have received notice that their continuing failure to comply with this Court's orders could result in terminating sanctions. Defendants were warned nearly ten months ago that their failure to comply with the Discovery Order would "provide a basis for the Court to impose appropriate sanctions" under Rule 37(b)(2), which includes default judgment.[70] In the Second Order to Show Cause, the Magistrate Judge expressly ordered Defendants to file a response as to "why the Court should not sanction each Entity Defendant, including by entering default judgment," which Defendants failed to provide.[71] Plaintiffs have requested that the Court sanction Defendants by entering default—both at the status conference, which Defendants declined to attend, and in this filing. Defendants will have a "full opportunity to respond," and to argue against entry of default, "before any decision on sanctions [is] made."[72] Nothing more is required.[73]

        D.      <u>In the alternative, Plaintiffs request that their Motion for Sanctions be construed as a Motion for Entry of Default Judgment against Defendants</u>.

The Court has the power to enter a default judgment against Defendants under its inherent authority or *sua sponte* under Rule 37 without further motion by Plaintiffs. But in the alternative, Plaintiffs ask that their Motion for Sanctions, in which Plaintiffs requested that the

---

[68] *See* Fed. R. Civ. P. 37(b)(2).
[69] *See Rangarajan v. Johns Hopkins Univ.*, 917 F.3d 218, 225-26 (4th Cir. 2019).
[70] Disc. Order ¶ 11; *see NHL*, 427 U.S. at 640-41 (district court did not abuse discretion when it dismissed case after "warnings that . . . failure to provide [discovery] . . . could result in the imposition of sanctions under Fed. R. Civ. P. 37.").
[71] Second Order to Show Cause 1-2.
[72] *Rangarajan*, 917 F.3d at 226 (upholding dismissal by district court under inherent power).
[73] *Id.*

Court "grant[] Plaintiffs any other or additional relief that may be appropriate,"[74] be construed as a Motion for Entry of Default Judgment against Defendants under the Court's inherent authority and under Rule 37(b)(2)(A)(vi). In support of this request, Plaintiffs incorporate the facts and arguments made in their initial Motion for Sanctions and the supporting documents filed therewith and submit that, for the reasons articulated herein, default judgment against all Defendants is warranted.[75]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter default judgment against each Defendant. Plaintiffs further request that the Court schedule a separate hearing to determine damages and provide Plaintiffs leave to submit supplemental briefing in support of their claims for damages in connection with the Court's entry of default judgment.

Respectfully submitted,

*Attorneys for the Consumer Financial Protection Bureau*

Eric Halperin
   *Enforcement Director*
Alusheyi J. Wheeler
   *Deputy Enforcement Director*
Kara K. Miller
   *Assistant Litigation Deputy*

**Leanne E. Hartmann**
California Bar Number: 264787
Hai Binh T. Nguyen
California Bar Number: 313503
Lee I. Sherman
California Bar Number: 272271
Consumer Financial Protection Bureau
1700 G Street, NW

---

[74] Mot. for Sanctions 2.
[75] *See* Mot. for Sanctions; *see also Lockette v. Dr. Miracle LLC*, No. 4:11-cv-00605 AGF, 2012 WL 12966204, at *1 (E.D. Mo. Apr. 9, 2012) (construing an earlier motion for sanctions as a motion for default judgment that set forth "essentially the same arguments with respect to default judgment as those in her responses to the order to show cause").

Washington, DC 20552
Telephone (Hartmann): (415) 844-9787
Telephone (Nguyen): (202) 435-7251
Telephone (Sherman): (202) 374-4575
Email: leanne.hartmann@cfpb.gov
Email: haibinh.nguyen@cfpb.gov
Email: lee.sherman@cfpb.gov

*Attorneys for the Commonwealth of Virginia, ex rel. Jason S. Miyares, Attorney General*

Jason S. Miyares
   *Attorney General*
Charles H. Slemp, III
   *Chief Deputy Attorney General*
Steven G. Popps
   *Deputy Attorney General*
Richard S. Schweiker, Jr.
   *Chief and Senior Assistant Attorney General*

**James E. Scott**
Assistant Attorney General
Virginia Bar Number: 88882
David B. Irvin
Virginia Bar Number: 23927
Unit Manager and Senior Assistant Attorney General
Office of the Attorney General
Consumer Protection Section
202 North Ninth Street
Richmond, VA 23219
Telephone (Irvin): (804) 786-4047
Telephone (Scott): (804) 225-4778
Fax: (804) 786-0122
Email: dirvin@oag.state.va.us
Email: jscott@oag.state.va.us

*Attorneys for the Commonwealth of Massachusetts*

Maura Healy
   *Attorney General*

**Jon Burke**
Massachusetts Bar Number: 673472
Assistant Attorney General

Office of the Attorney General
10 Mechanic Street
Worcester, MA 01608
Telephone: (774) 214-4416
Fax: (508) 795-1991
Email: Jonathan.burke@mass.gov

*Attorneys for the People of the State of New York*

LETITIA JAMES
    *Attorney General*

Jane Azia (New York Bar Number: 1539600)
    *Bureau Chief for the Bureau of Consumer Frauds and Protection*
Laura Levine (New York Bar Number: 2337368)
    *Deputy Bureau Chief for the Bureau of Consumer Frauds and Protection*

**Franklin H. Romeo**
New York Bar Number: 4422051
Assistant Attorney General
Office of the Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8320
Fax: (212) 416-6003
Email: franklin.romeo@ag.ny.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on April 3, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I hereby certify that I have mailed the document by United States Postal Service to the following non-CM/ECF participants:

Defendant Libre by Nexus, Inc.
113 Mill Place Pkwy, Suite 103
Verona, Virginia 24482

Defendant Nexus Services, Inc.
113 Mill Place Pkwy, Suite 103
Verona, Virginia 24482

Defendant Micheal Donovan
47 S. Windsong Ct.
Fishersville, Virginia 22939

Defendant Richard Moore
47 S. Windsong Ct.
Fishersville, Virginia 22939

Defendant Evan Ajin
8 Gables East Blvd, Apt. 204
Fishersville, Virginia 22939

/s/ James E. Scott
James E. Scott, VSB No. 88882
Assistant Attorney General
*Attorney for the Commonwealth of Virginia,*
  *ex rel. Jason Miyares, Attorney General*
Office of the Attorney General
202 North Ninth Street
Richmond, VA 23219
Telephone: (804) 225-4778
Fax: (804) 786-0122
Email: jscott@oag.state.va.us