IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, et al., | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 5:21-cv-00016 |
| v. | ) ) ) | By: Elizabeth K. Dillon<br>United States District Judge |
| NEXUS SERVICES, INC., et al., | ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

In February 2021, the Consumer Financial Protection Bureau ("CFPB"), the Commonwealth of Massachusetts, the People of the State of New York, and the Commonwealth of Virginia filed a 17-count complaint against Nexus Services, Inc. ("Nexus"), Libre by Nexus, Inc. ("Libre") (collectively, the "Entity Defendants"), Micheal Donovan, Richard Moore, and Evan Ajin (collectively, the "Individual Defendants"). (Compl., Dkt. No. 1, at 1.) Plaintiffs allege that defendants violated the Consumer Financial Protection Act ("CFPA"), the Virginia Consumer Protection Act ("VCPA"), and Massachusetts and New York consumer protection laws in administering "immigration bonds" for indigent consumers facing deportation. (Compl. 1–3, 26–47.)

This matter is now before the court on plaintiffs' motion for sanctions (Dkt. No. 139) and for consideration of U.S. Magistrate Judge Joel C. Hoppe's February 7, 2023 Order for Defendants to Show Cause & Certification Under 28 U.S.C. 636(e)(6)(B)(iii) ("Show Cause Order & Certification") (Dkt. No. 181). By reason of the facts certified by Judge Hoppe, the court finds each defendant in civil contempt; accordingly, the court will grant plaintiffs' motion and will enter default judgment against each defendant.

1

I.  BACKGROUND

**A. Discovery Dispute and the June 8 Order**

On May 4, 2022, pursuant to Judge Hoppe's order regarding the resolution of discovery disputes (Dkt. No. 81), the parties brought to the court a dispute over defendants' responses and objections to plaintiffs' first sets of Requests for Production ("RFP") of Documents and Electronically Stored Information ("ESI"). (*See* Dkt. No. 115 (plaintiffs' statement detailing and itemizing the discovery dispute, which noted that in June 2021, plaintiffs served one set of RFPs on the Entity Defendants and another set of RFPs on each of the Individual Defendants); Dkt. No. 120 (defendants' response to plaintiffs' statement).) Then, on June 8, 2022, Judge Hoppe issued an Order overruling many of defendants' objections and in turn directing them to take certain steps, within certain timeframes, to fully respond to and produce specific categories of documents and ESI responsive to plaintiffs' outstanding RFPs (June 8 Order, Dkt. No. 129); this Order is the subject of the subsequent Show Cause Order and Certification. Specifically, the June 8 Order directed the Entity Defendants to do the following:

- Within seven days, provide plaintiffs with the name and contact information for the individual or company who recorded or transcribed each deposition listed in RFP No. 24[1] and, to the extent that they had not yet already done so, identify and produce complete copies of any such recordings or transcripts, including deposition exhibits, within the Entity Defendants' possession, custody, or control (June 8 Order ¶ 2 ("Depositions"));

---

[1] This RFP listed several depositions taken in other cases then pending in federal courts (including this court): one deposition taken in *Vasquez v. Libre by Nexus, Inc.*, No. 4:17-cv-775 (N.D. Cal.), and six depositions taken in *RLI Insurance Co. v. Nexus Services, Inc..*, No. 5:18-cv-66 (W.D. Va.). (*See* Dkt. No. 115 at 22–23.)

- Within 14 days, file a Notice indicating that defendants had retained an ESI discovery vendor and providing a good faith estimate of how much time the vendor needs to run the agreed-upon searches and return the results to defendants' counsel for their initial review (*id.* ¶ 3 ("ESI Vendor"));[2]

- Run automated (as opposed to manual) searches using plaintiffs' proposed search terms and the parties agreed-upon list of custodians to identify and collect any ESI (other than that stored in Capsule, Lightspeed, or similar databases) that is responsive to Entity RFP Nos. 4, 6, 7, 9, 11, 13, 14, 17, 20, 21, and/or 22 (*id.* ¶ 4 ("ESI Search Terms"));[3]

- Within 21 days, export and produce to plaintiffs complete, unredacted electronic versions of all Capsule, Lightspeed, and other database files or records responsive to Entity RFP Nos. 5, 8, 10, 11, 13, 14, 17, and/or 20 (*id.* ¶ 5 ("Database Files"));[4] and

- Within 21 days, produce any documents responsive to Entity RFP No. 16 that had not been produced by a specific certified public accountant in response to plaintiffs' third-party subpoena or by defendants in response to any of plaintiffs' prior requests (*id.* ¶ 6 ("CPA Records")).

---

[2] This estimate also needed to give the parties enough time to finish discovery on or before October 1, 2022. (*See* Dkt. No. 66 (setting bench trial to begin on January 30, 2023, and requiring parties to complete discovery 95 days before trial); Dkt. No. 113 (incorporating this deadline).)

[3] These RFPs requested relevant information about staff compensation, program marketing and development, defendants' third-party contracts, and internal or external program audits. (*See* Dkt. No. 15 at 21–22.)

[4] These RFPs sought relevant information about the individual consumers who received defendants' products or services, including the consumers' payment histories, program or service documents provided to those consumers, records of Nexus or Libre employees' communications with the consumers, and consumer complaints. (*See* Dkt. No. 115 at 12–21.)

Further, Judge Hoppe ordered each Individual Defendant to, within 21 days from the date of the June 8 Order, produce any documents or information that (a) was responsive to any of Individual RFP Nos. 3, 5, 6, and/or 8; and (b) had not been produced either by the Entity Defendants or by a third party in response to plaintiffs' discovery requests served in this case. (*Id.* ¶ 9 ("Individual Records").)[5]

**B. Plaintiffs' Motion for Sanctions and Judge Hoppe's Show Cause Orders**

Over a month later, on July 19, 2022, and with no intervening request by defendants for an extension of time, plaintiffs filed their motion for sanctions and for an order to show cause why defendants should not be held in contempt (Dkt. No. 139), upon a sworn declaration of James Scott, counsel for the Commonwealth of Virginia (Dkt. No. 141) which, in Judge Hoppe's assessment, "laid out Defendants' complete failure to obey most, if not all, of [his] Discovery Order's specific requirements as of that date." (Show Cause Order & Certification 8.)  After defendants responded to the motion (addressing some of the discovery issues but not others), the court ordered at least one attorney from each party to file additional sworn declarations. (Dkt. No. 159.)  Over the ensuing months, the parties filed several sworn declarations updating the court on the status of defendants' compliance with its June 8 Order. (Dkt. Nos. 157 (supplemental declaration of Mr. Scott), 166 (second supplemental declaration of Mr. Scott); 167 (declarations of former counsel for defendants and of defendant Evan Ajin, Vice President of Operations at Nexus Services, Inc.); 175 (third supplemental declaration of Mr. Scott).)

---

[5] These RFPs sought relevant information about each Individual Defendant's employment history and financial relationship with an Entity Defendant or other affiliated entity, as well as the Individual Defendant's financial condition from January 1, 2016, through the present. (Dkt. No. 115 at 24–26.) Because the Individual Defendants had access to financial records produced by the Entity Defendants and any third parties in the case, the court reasoned that each Individual Defendant would be in the best position to determine which of his own financial records had not been produced as of the date of the Order. (*See* June 2022 Order 7 n.3.)

4

On February 7, 2023, Judge Hoppe issued the Show Cause Order & Certification (Dkt. No. 181), which granted plaintiffs' motion to the extent it sought a certification of facts and an order for defendants to show cause why they should not be held in contempt.  First, Judge Hoppe offered a thorough and extensive certification of facts—spanning six-and-a-half pages and 29 numbered sections and sub-sections—regarding defendants' abject failure to timely comply with several of the court's discovery mandates from the June 8 Order.[6]  (Show Cause Order & Certification 19–25.)  In doing so, Judge Hoppe concluded that (1) the Entity Defendants violated paragraphs 3, 4, and 5[7] of the June 8 Order; and (2) the Individual Defendants violated paragraph 9 of the June 8 Order.  (*Id.*)  According to Judge Hoppe, "[d]efendants' knowing violations" of the June 8 Order "significantly harmed Plaintiffs' ability to prepare their case for trial in a just, speedy, and inexpensive manner," as it "prevented Plaintiffs from completing discovery in accordance with the scheduling Order and required the Court to cancel the bench

---

[6] Under the Federal Magistrates Act, 28 U.S.C. § 636, a magistrate judge overseeing pretrial matters under § 636(b)(1) who is faced with an act that constitutes a civil contempt

> shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified.

28 U.S.C. § 636(e)(6)(B)(iii).  The magistrate judge's role in certifying facts under § 636(e)(6) is "to determine whether the moving party can adduce sufficient evidence to establish a prima facie case of contempt."  *Church v. Steller*, 35 F. Supp. 2d 215, 217 (N.D.N.Y. 1999) (citing *Proctor v. State Gov't of N.C.*, 830 F.2d 514, 521 (4th Cir. 1987)).

[7] Judge Hoppe found that the Entity Defendants violated paragraph 5 because they failed to produce any files from four of the six databases (NetSuite, QuickBooks, American Spirit, and Five-9) and only produced files from two of the databases (Lightspeed and Capsule) after the deadline.  (Show Cause Order & Certification 23–24.) As to the Lightspeed files that were untimely produced, Judge Hoppe resolved that the Entity Defendants' production was still insufficient because it did not include any records from 2020 or 2021.  (*Id.* 23.)  As to the Capsule file that were untimely produced, Judge Hoppe concluded that "[o]n this mixed record, I cannot find that the deficiencies in Defendants' production of the Capsule database violated the [June 8] Order," but that "[n]evertheless, the parties should be prepared to present evidence on this issue at the contempt hearing before the presiding District Judge."  (*Id.* 24.)

5

trial previously set for January 30, 2023." (*Id.* 25.)  Judge Hoppe ordered all defendants to appear before the undersigned to show cause why each should not be adjudged in contempt by reason of the facts certified against them.  (*Id.*)

Lastly, based on his "familiarity with each Defendant's unjustified failure and refusal to comply with its discovery obligations under both the Federal Rules and [his] June 8, 2022 Order," Judge Hoppe recommended that the undersigned treat each defendant's failure to obey the June 8 Order as civil contempt.  (*Id.* 26–27.)  In doing so, Judge Hoppe proposed sanctions to induce compliance with the June 8 Order—specifically, a fine of $1,000 per day and $500 per day upon the Entity and Individual Defendants, respectively,[8] and an award to plaintiffs of attorneys' fees and costs incurred in relation to briefing and arguing their motion.  (*Id.* 27; *see also, e.g.*, *Church v. Steller*, 35 F. Supp. 2d 215, 217 (N.D.N.Y. 1999) (stating that, "[u]pon certification," "the magistrate judge may recommend that certain sanctions be imposed by the district court upon a finding of contempt.").)

Separately, but on the same day, Judge Hoppe ordered the Entity Defendants (Dkt. No. 182) to show cause why the court should not sanction each Entity Defendant, including by entering default judgment, for disobeying the court's January 11, 2023 Order directing each of them to retain a licensed attorney and have that attorney enter his or appearance on that defendant's behalf in this matter within 14 days of its entry (Dkt. No. 178).  A month prior,

---

[8] Of note, when plaintiffs moved for sanctions and an order for defendants to show cause why they should not be held in contempt, they explicitly sought only monetary sanctions (*see* Dkt. No. 139 at 2); they have since expanded their request to call for entry of default judgment (*see* Dkt. No. 189 at 1).  However, they did make a catch-all plea for "any other or additional relief that may be appropriate," which would include dispositive sanctions, if deemed appropriate.  (*Id.*)  But nevertheless, as further explained herein, the court may, when warranted, enter default judgment *sua sponte* pursuant either to Rule 37 or its inherent power, and is not cabined by the contours of plaintiffs' initial request to the magistrate judge.  Moreover, although plaintiffs' initial motion did not put defendants on notice that they were seeking default judgment, their subsequent supplemental brief (Dkt. No. 189) did.  Further, Rule 37 does not require "a clear and explicit warning of dismissal" before default judgment may be entered.  *See Rangarajan v. Johns Hopkins Univ.*, 917 F.3d 218, 225–26 (4th Cir. 2019).

6

Judge Hoppe had granted defendants' prior counsel's motions to withdraw (Dkt. Nos. 134–36), after defendants and their prior counsel represented to the court that defendants could no longer pay for their prior counsel's services. (Hr'g Tr., Dkt. No. 152, at 4:21–5:15, 7:14–21.)

### C.  Show Cause Hearing and Related Briefing

On March 14, 2023, after a conference with the parties (which neither the Entity nor Individual Defendants attended), the court set a schedule for any supplemental briefing, witness lists, and/or exhibit lists for the matters to be presented at the hearing. (Dkt. No. 187.) On April 3, 2023, plaintiffs filed a supplemental brief in response to the show-cause Orders and in further support of its motion for sanctions. (Dkt. No. 189.) In that brief, plaintiffs requested that the court impose the dispositive sanction of entry of default judgment (as opposed to a monetary sanction) against all defendants; they further asserted that defendants had not corrected any of the violations Judge Hoppe identified. In a related declaration, Mr. Scott swore to the court that, since entry of the Show Cause Order & Certification:

- "[N]o Defendant and no counsel on behalf of any Defendant has contacted any plaintiff, whether in regard to further attempts to comply with the [June 8] Order or otherwise" (Dkt. No. 190 ¶ 3);

- Nexus Services, Inc. has not "produced any deposition transcripts and, therefore, has not cured its noncompliance with ¶ 2 of the [June 8] Order" (*id.* ¶ 4);

- Neither Entity Defendant has "informed Plaintiffs that they retained a discovery vendor, and Plaintiffs are therefore unaware of any action taken by the Entity Defendants to comply with ¶ 3 of the [June 8] Order" (*id.* ¶ 5);

- Neither Entity Defendant has "produced any ESI to Plaintiffs and, therefore, have not cured their compliance with ¶ 4 of the [June 8] Order" (*id.* ¶ 6);

7

- Neither Entity Defendant has produced any files from the NetSuite, QuickBooks, American Spirit, or Five-9 databases, nor any additional Lightspeed files, and, therefore, "have not cured their noncompliance with ¶ 5 of the [June 8] Order" (*id*. ¶¶ 7–8); and

- None of the Individual Defendants have "produced any documents concerning their financial condition and, therefore, have not cured their noncompliance with ¶ 9 of the [June 8] Order" (*id.* ¶ 9).

Plaintiffs maintained that at this point, entry of default judgment "is the only appropriate sanction" because "[t]hroughout this litigation, Defendants have consistently ignored their discovery obligations and this Court's orders." (Dkt. No. 189 at 4–5.) On April 14, 2023, three days before the scheduled hearing and over three months after the court first ordered the Entity Defendants to retain new counsel (and two months after the court ordered them to show cause for failing to do so), an attorney appeared in this action on behalf of all defendants. (Dkt. No. 192.)

The court held a show-cause hearing on April 17, 2023. (Dkt. No. 196.) No parties presented additional evidence or witnesses, nor did any party contest the veracity of the facts certified by Judge Hoppe. Indeed, defendants conceded that their conduct was contemptuous and agreed to be sanctioned but solely argued against entry of default judgment.

## II.  LEGAL STANDARDS

**A. Civil Contempt**

Federal courts have the inherent authority to hold parties in civil contempt for violating court orders. *See Redner's Mkts., Inc. v. Joppatowne G.P. Ltd. P'ship,* 608 F. App'x 130, 131 (4th Cir. 2015) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt.") (quoting *Shillitani v. United*

*States*, 384 U.S. 364, 370 (1966)); *Ex parte Robinson*, 86 U.S. 505, 510 (1874) ("The power to punish for contempt[] is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of judgments, orders, and writs of the courts, and consequently to the due administration of justice."); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (The power to punish for contempt is "firmly established").  In addition, Federal Rule of Civil Procedure 37(b)(2) explicitly vests in the district court the authority to impose sanctions when "a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery."  Fed. R. Civ. P. 37(b)(2)(A); *RLI Ins. Co. v. Nexus Servs., Inc.*, No. 5:18-cv-00066, 2022 WL 2654227, at *1 (W.D. Va. July 8, 2022) (citing *Law Funder, LLC v. Munoz*, 924 F.3d 753, 758 (5th Cir. 2019)).  To find a party in civil contempt, the moving party must show: (1) the existence of a valid court order, (2) that the order was in the moving party's favor, (3) a knowing violation of the terms of the order, and (4) that the moving party suffered harm from the violation.  *See CFPB v. Klopp*, 957 F.3d 454, 461 (4th Cir. 2020). "Willfulness is not an element of civil contempt." *Joppatowne*, 608 F. App'x at 131.  If these elements are satisfied, the burden shifts to the non-moving party "to show good faith [in making] all reasonable efforts to comply with the enforcement order" to avoid being held in civil contempt.  *Klopp*, 957 F.3d at 461–62.

**B.  Sanctions; Default Judgment**

"Once a court makes the threshold determination under Rule 37(b) that a party has failed to obey a prior discovery order issued by it, then it must determine what sanctions are warranted."  *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 102 (D. Md. 2003).  "Rule 37(b)(2) provides a non-exclusive list of possible sanctions," *id.*, and the Supreme Court has provided guidance as to the exercise of the court's discretion in issuing sanctions.

> Rule 37(b)(2) contains two standards—one general and one specific—that limit a district court's discretion. First, any sanction must be "just"; second, the sanction must be specifically related to the particular "claim" which was at issue in the order to provide discovery.

*Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982). Ultimately, "[t]he appropriate remedy for civil contempt is within the court's broad discretion." *Joppatowne*, 608 F. App'x at 131; *see also Rainbow Sch., Inc. v. Rainbow Early Educ. Holding, LLC*, 887 F.3d 610, 617 (4th Cir. 2018).

One possible sanction explicitly provided for in Rule 37 is "[the] rendering [of] a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(iv). Moreover, the Fourth Circuit has on multiple occasions upheld default judgment as a sanction for discovery abuses under Rule 37. *See, e.g.*, *Anderson v. Found. for Advancement, Educ., & Employment of Am. Indians*, 155 F.3d 500 (4th Cir. 1998); *Young Again Prods., Inc. v. Acord*, 459 F. App'x 294 (4th Cir. 2011). However, in recognition of "the seriousness of the imposition of default judgment," *see Young Again Prods.*, 459 F. App'x at 301, the Fourth Circuit has instructed district courts to apply a four-factor test when determining appropriate sanctions under Rule 37(b):

> (1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective.

*Anderson*, 155 F.3d at 504 (citing *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503–05 (4th Cir. 1977)). These factors aim to balance a "district court's desire to enforce its discovery orders" and a "party's rights to a trial by jury and a fair day in court." *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989) (citing *Wilson*, 561 F.2d at 503–05).

III. ANALYSIS

With respect to a finding of civil contempt, the calculus here is rather straightforward. "Th[e] certificate of facts forwarded by the magistrate to the district court" is "considered the statement of a prima facie case" of contempt. *See Proctor v. State Gov't of N.C.*, 830 F.2d 514, 521 (4th Cir. 1987). "Thus, if there is nothing else appearing before the district court and the certified facts, if true, will support a violation, then the district court may, if it deems the burden of persuasion to have been satisfied, find a party in contempt." *Id.*

In careful detail, Judge Hoppe's Show Cause Order & Certification documented the failings of both the Entity and Individual Defendants to respond to plaintiffs' discovery requests or make a good faith effort to do so. The factual certification constitutes prima facie evidence of contempt, which sustains plaintiffs' initial burden of proof. Then, at the hearing, no party contested any of the certified facts; rather, counsel for defendants conceded that defendants should be held in contempt and offered consent to a monetary sanction in lieu of default judgment. (*See also* Defs.' Mot. for Continuance, Dkt. No. 195, at 2–3 ("[T]he real question, *given the admitted non-compliance*, is whether Defendants can and will purge themselves of contempt and comply with outstanding discovery requests.") (emphasis added).) And in a sworn declaration, plaintiffs advised the court that defendants still have not produced any additional discovery or otherwise come into further compliance with the June 8 Order. (Dkt. No. 190 at 1–3.) As defendants do not challenge any of the certified facts and have not produced the discovery required by Judge Hoppe's Order to date, defendants' contempt is established. The record establishes (1) the existence of the June 8 Order; (2) that compelling discovery responses from defendants is in plaintiffs' favor; (3) a knowing violation of the Order on behalf of both the

Entity and Individual Defendants; and (4) harm to plaintiffs by virtue of gross delay of the discovery process, several sources of excess expense, and postponement of the bench trial.

Moreover, if default judgment is to ever be warranted as a sanction for discovery abuses, it is emphatically so in this case. *Cf. Projects Mgmt. Co. v. Dyncorp Int'l, LLC*, 734 F.3d 366, 374 (4th Cir. 2013) (upholding entry of final judgment where the party "with[held] a large number of relevant documents during discovery" and "ma[de] late disclosures of material significance"). First, defendants' bad faith is implicit in their pattern of knowing noncompliance with numerous orders of the court, including but not limited to their failure to timely retain counsel when ordered to do so (Dkt. No. 178), their refusal to respond in writing to Judge Hoppe's order to show cause when directed to do so (Dkt. No. 182), and their unexcused absence from a scheduled telephone conference (Dkt. No. 188) (especially the Individual Defendants, who need not be represented by counsel to attend). *See Young Again Prods.*, 459 F. App'x at 302 (citing *Richards*, 872 F.2d at 93).

Defendants' other litigation activity in this case—even after the appearance of new counsel—further indicates a lack of candor with the court and a delusion as to the exigency of the situation. For example, in an April 17 motion to continue the show-cause hearing, counsel for defendants (who had entered an appearance only three days prior) expressed their intention "to come into compliance with the Court's June Discovery Order *as quickly as humanly possible*" (Defs.' Mot. to Continue 6 (emphasis added)) and not "to further delay or to prevaricate and obfuscate their way out of discovery compliance or sanctions." (*Id.* 8.) But that representation proved false-hearted; two weeks later (and with no further indication of progress on discovery compliance), defendants filed a motion for judgment on the pleadings—long after

12

any conceivable deadline to do so[9] and with an incomplete supporting memorandum[10]—based on the theory that the cased must be dismissed in its entirety because the CFPB's funding structure is unconstitutional.[11] (Dkt. No. 198.) That is hardly consistent with the conduct of a litigant for whom purging itself of contempt and avoiding delay are top priorities. Defendants have simply failed to demonstrate to the court that "factors other than obduracy and willfulness led to [their] prior non-compliance." (*See* Defs.' Mot. to Continue 7.)

As to the prejudice caused by defendants' persistent noncompliance, over two years after filing their complaint, plaintiffs are without meaningful discovery and without a trial date. They "have been forced to expend a tremendous amount of time, effort, and expense in the discovery process and motions practice," and defendants' conduct "has rendered much of that activity essentially meaningless," given that plaintiffs still have not received large swaths of responsive ESI. *See Rangarajan v. Johns Hopkins Univ.*, 917 F.3d 218, 226 (4th Cir. 2019) (finding that

---

[9] Under the most recent version of the scheduling order, dispositive motions were due on November 11, 2022. (*See* Dkt. No. 113 (setting the deadline for dispositive motions at 80 days before trial, which was then set to begin on January 30, 2023).) Moreover, motions for judgment on the pleadings must be filed "early enough not to delay trial," *see* Fed. R. Civ. P. 12(c), and it is hard to imagine how full briefing, argument, and disposition of a dispositive motion raising a hotly debated constitutional question (as defendants' brief does) would not delay any prospective trial date.

[10] The submission presented more as a rough draft than as a finalized memorandum ready for filing; in several passages, defense counsel evidently neglected to substitute placeholder words in both narrative text and in citations. (*See, e.g.*, Dkt. No. 198 at 1 (defendants asked the court to "dismiss[] the CRPB from this action and order[] all filings made by CFPB and in which CFPB participated utilizing funding *pursuant to (statute)* void") (emphasis added); 3–4 ("Furthermore, it seems this result is demanded by CITATION, which notes the importance of maintaining incentives for litigants to continue to undertake separation-of-powers defenses in order to ensure constitutionality and prevent abusive over-reach. *CITATION* (PARENTHETICAL).") (emphasis in original).)

[11] The Supreme Court recently granted certiorari in a case that raises this constitutional issue to be argued during the October 2023 Term. *See CFPB, et al. v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, No. 22-448, 143 S. Ct. 978 (Feb. 27, 2023). Even assuming that defendants' motion was somehow timely, the court has grave doubts that it could even fully consider that issue on the pleadings alone and without a developed record. As to the state plaintiffs, defendants insist that "it is almost impossible to imagine that Co-Plaintiffs can unlearn what they have learned, whether it be the knowledge gleaned of the CFPB's unconstitutionally funded legal research and analysis or the fruits of an investigation which was tainted by unconstitutional funding." (Dkt. No. 198 at 3.) But the pleadings do not attest to any such research, analysis, or investigation in drafting the complaint, nor can the court simply assume such activity occurred simply because the CFPB is one of four plaintiff entities that signed the document. Importantly, in *Community Financial Services Association,* the Court will review a grant of summary judgment, not judgment on the pleadings.

similar considerations supported entry of default judgment). As a result, plaintiffs are effectively unable to "conduct[] effective discovery or tak[e] effective depositions," *see Dyncorp*, 734 F.3d at 374. Relatedly and as mentioned previously, defendants' noncompliance caused the cancellation of the early 2023 bench trial. As Judge Hoppe certified, their violation "significantly harmed Plaintiffs' ability to prepare their case for trial in a just, speedy, and expensive manner." (Show Cause Order & Certification 25.)

The need for deterrence of this particular sort of noncompliance could not be greater, as defendants have "stall[ed] and ignore[ed] the direct orders of the court with impunity." *See Richards*, 872 F.2d at 93. And relatedly, the circumstances indicate that no sanction short of default can accomplish deterrence in this case. Defendants are now on their third set of lawyers; although the court understands the difficulties that face counsel who enter representation of a party already in dire legal straits, that can no longer excuse the party's manifest refusal to comply with court mandates and the discovery process. Notably, defendants' former counsel admitted that, despite repeated efforts, he was unable to compel his clients to comply with the June 8 Order and could not identify a sanction that would coerce their compliance. (*See* Hr'g Tr., Dkt. No. 183, at 20:17–22.) As new counsel for defendants has admitted, defendants are in "a financial situation which has made retention and payment of counsel difficult if not impossible, which leads to loss of counsel, which compounds procedural difficulties, which makes it more difficult to find counsel." (Dkt. No. 195 at 11.) Defendants have not provided the court with any indication that this financial situation has changed.

At the hearing, defendants argued that they should be afforded an opportunity to demonstrate compliance under a monetary sanction because the court had not already used monetary sanctions to compel that compliance. Though it is true that the court has not yet

ordered sanctions in this case, civil contempt in the federal courts is not new territory for Nexus; both the Entity and Individual Defendants have quite recently been reprimanded for failing to comply with court orders—including discovery orders—in other cases. *See RLI Ins. Co. v. Nexus Servs., Inc.*, No. 5:18-cv-00066, 2022 WL 2654227 (W.D. Va. July 8, 2022) [12]; *Vasquez v. Libre by Nexus, Inc.*, No. 17-cv-00755 CW, 2023 WL 36042 (N.D. Cal. Jan. 23, 2023).[13] Accordingly, entry of default judgment sends "an unmistakable message to [defendants] and others that the judicial system will not tolerate repeated misconduct never wholly remedied in the future." *Richards*, 872 F.2d at 94. Given the broader context, entering lesser sanctions would, in the court's view, "send the opposite message that the court may be pushed, ignored and defied to the outermost limits so long as the noncomplying party has even an inadequate fallback act ready in the wings should the final curtain be falling." *Id.*

In sum, the court finds that the *Wilson* factors counsel in favor of entry of default judgment against all defendants under Rule 37.[14]

---

[12] In *RLI*, even after this court, in October 2020, entered partial summary judgment in favor of RLI and ordered Nexus to both pay RLI over $3.3 million in damages and provide RLI with access to its books and data (No. 5:18-cv-00066, Dkt. No. 585), Nexus continued to evade compliance, which eventually led to the July 2022 order finding the defendants in contempt of several of Judge Hoppe's post-judgment discovery orders and imposing monetary sanctions of $1,000 per day of noncompliance (*id.*, Dkt. No. 796–97). Most recently, in November 2022, RLI moved to increase the sanctions to $5,000 per day of noncompliance and convert the outstanding sanctions amount to a judgment (*id.*, Dkt. No. 806); that motion remains pending.

[13] As Judge Hoppe did, the court takes judicial notice of the content of the court records in these cases. *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989).

[14] In the alternative, the court finds that entry of default judgment pursuant to its inherent authority (as opposed to Rule 37) would likewise be warranted on this record under the factors set forth by the Fourth Circuit in *United States v. Shaffer Equipment. Co.*, 11 F.3d 450 (4th Cir. 1993), because defendants have "abuse[d] the process at a level that is utterly inconsistent with the orderly administration of justice [and] undermines the integrity of the process," *see id.* at 462.

## IV.  CONCLUSION

For the foregoing reasons, upon consideration of Judge Hoppe's Order for Defendants to Show Cause & Certification Under 28 U.S.C. 636(e)(6)(B)(iii) (Dkt. No. 181), the court finds each defendant in civil contempt of court.  The court will grant plaintiffs' motion for sanctions (Dkt. No. 139) and, pursuant to Rule 37(b)(2)(A)(vi), enter default judgment against each defendant.  As a result, defendants' motion for judgment on the pleadings (Dkt. No. 198) will be denied as moot, and the show-cause order regarding the Entity Defendants' failure to timely retain counsel (Dkt. No. 182) will be withdrawn as moot.  An appropriate order will follow.

Entered: May 11, 2023.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge