IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NEXUS SERVICES, INC., et al.,<br><br>Defendants. | Case No.: 5:21-cv-00016-EKD-JCH |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION OR IN THE ALTERNATIVE CERTIFICATION FOR INTERLOCUTORY APPEAL**

Plaintiffs the Consumer Financial Protection Bureau (Bureau), the Commonwealth of Massachusetts, the People of the State of New York, and the Commonwealth of Virginia brought this civil enforcement action to address unfair, abusive, and deceptive acts that Defendants committed in offering "immigration bonds" for indigent consumers facing potential deportation. For nearly two years, Defendants obstructed Plaintiffs' efforts to pursue those claims and secure relief. They refused to participate in the discovery process, ignored court orders, and failed to appear or meaningfully defend themselves in the litigation.

Last month, the Court entered case-ending sanctions against Defendants. Recognizing their "abject failure to timely comply with" Court orders, as well as the "bad faith . . . implicit in their pattern of knowing noncompliance," the Court found Defendants in civil contempt and granted Plaintiffs' request for a default judgment against each of them. Mem. Op. at 5, 12, 16 (Sanctions Op.), ECF No. 201. Given its decision to enter case-ending

sanctions, the Court denied as moot Defendants' untimely motion for judgment on the pleadings, which they had belatedly filed months after any conceivable deadline and on the eve of the Court's decision on the pending sanctions motion.

Defendants now ask the Court to reconsider its denial of their motion for judgment on the pleadings, or, in the alternative, seek certification for interlocutory appeal. Defendants do not contest the underlying contempt finding, nor do they argue that the Court was wrong to decide that default judgment is warranted here. Instead, Defendants claim that the Court erred in declining to consider the substance of their motion for judgment on the pleadings, which challenged the constitutionality of the Bureau's statutory funding mechanism under the Appropriations Clause.

Defendants offer no support for their claim that their untimely constitutional challenge to the Bureau's funding prevents the Court from sanctioning them with an entry of default judgment. Nor could they offer such support. Defendants' Appropriations Clause challenge does not go to this Court's jurisdiction over the case, and it is not otherwise subject to any special entitlement to review. This Court did not err—and certainly not *clearly* so—by concluding that Defendants could not stave off the justified sanction of default by belatedly raising a constitutional challenge to one plaintiff's statutory funding source. Defendants likewise have not identified any issue in this case appropriate for interlocutory review. In its sanctions order, the Court did not address either of the questions that Defendants propose to certify—the constitutionality of the Bureau's funding mechanism and the appropriate remedy if any violation were identified. The Court did not need to address these questions because it appropriately resolved Defendants' motion for judgment on the pleadings on other grounds. As a result, these questions are not controlling, and their certification could not materially

advance this litigation. Plaintiffs therefore respectfully request that this Court deny Defendants' motion.

**BACKGROUND**

In February 2021, the Bureau, New York, Massachusetts, and Virginia filed this case alleging that Defendants Nexus Services, Inc., Libre by Nexus, Inc., Micheal Donovan, Richard Moore, and Evan Ajin violated federal and state consumer-protection laws in their offering of products and services related to immigration bonds for consumers held in federal detention centers. *See* Compl. ¶¶ 1–7, ECF No. 1. The complaint alleges that Defendants charge hefty upfront and monthly fees for their services and engage in various deceptive and abusive practices—including presenting complex, and at times incoherent, agreements in English when most of their clients do not speak or read English; misrepresenting the nature and cost of their services; and making false threats of arrest or deportation if the consumers fail to pay. *See id.* ¶¶ 32–34, 47–54, 101–03, 120.

For nearly two years, Defendants frustrated Plaintiffs' efforts to litigate their case. In February 2023, Magistrate Judge Hoppe found that Defendants had knowingly violated a June 2022 order requiring them to respond to specific discovery requests by specific dates. *See* Order for Defs. to Provide or Permit Disc. (Discovery Order), ECF No. 129; Order to Show Cause at 19–25 (Discovery Show Cause Order), ECF No. 181. He recommended a finding of contempt and imposition of monetary sanctions. *See* Discovery Show Cause Order at 25–27. Since Defendants also failed to act on Magistrate Judge Hoppe's order to retain counsel after their prior counsel withdrew from the case, he issued a separate Order to Show Cause "why the Court should not sanction each Entity Defendant, including by entering default judgment." Order to Show Cause, ECF No. 182. Because Defendants continued to ignore their discovery obligations

and court orders, Plaintiffs requested that the Court impose an entry of default judgment against each Defendant. *See* Pls.' Suppl. Br. in Supp. of Pls.' Mot. for Sanctions, ECF No. 189. Despite the significance of that proposed sanction, Defendants did not timely object—making only a belated bid to file a response just hours before the scheduled April 17 contempt hearing. *See* Mot. to Continue, ECF No. 195; Minute Order, ECF No. 196 (denying motion for leave to file untimely response). At that hearing, Defendants "conceded that their conduct was contemptuous" and argued "solely" that they should not be sanctioned with default judgments. Sanctions Op. at 8.

Still, as the Court described, Defendants demonstrated a "lack of candor with the court and a delusion as to the exigency of the situation." *Id.* at 12. Rather than take the "concrete steps" they'd promised to come into compliance with the Court's Discovery Order "as quickly as humanly possible," Mem. in Supp. of Mot. to Continue at 3, ECF No. 195-1, after the contempt hearing, Defendants instead filed an untimely motion for judgment on the pleadings. That motion raised, for the first time in this litigation, a constitutional challenge to the Bureau's statutory funding mechanism, citing for support the Fifth Circuit's decision in *Community Financial Services Ass'n of America, Ltd. v. CFPB* ("*CFSA*"), 51 F.4th 616 (5th Cir. 2022). *See* Mem. in Supp. of Defs.' Mot. for J. on the Pleadings, ECF No. 198-1.

On May 11, the Court found Defendants in contempt for their "abject failure to timely comply" with its discovery mandates and agreed with Plaintiffs that default judgment was "emphatically" warranted as a sanction for those "discovery abuses." Sanctions Op. at 5, 11–12. In support of this decision, the Court found that Defendants' "bad faith [was] implicit in their pattern of knowing noncompliance with numerous orders of the court," and concluded that "no sanction short of default can accomplish" the needed "deterrence in this case." *Id.* at 12, 14.

The Court's opinion also addressed the pending motion for judgment on the pleadings. The Court identified significant concerns with the motion's timeliness—noting that Defendants filed it "long after any conceivable deadline to do so," and that "full briefing, argument, and disposition of" the "hotly debated constitutional question" it presented would likely "delay any prospective trial date," in contravention of Federal Rule of Civil Procedure 12(c). *Id.* at 12–13 & n.9. The Court also expressed "grave doubts" about whether it could "fully consider the issue on the pleadings alone and without a developed record"—particularly given Defendants' insistence that the appropriate remedy for any constitutional problem with the *Bureau*'s funding would include dismissal of claims brought by the *state* plaintiffs, too. *See id.* at 13 n.11. Finally, the Court chastised Defendants for filing a hastily prepared submission—with a supporting memorandum "presented more as a rough draft"—even as they promised to finally begin complying with their discovery obligations. *Id.* at 13 n.10. As the Court observed, that was "hardly consistent with the conduct of a litigant for whom purging itself of contempt and avoiding delay are top priorities." *Id.* at 13. Appropriately disregarding this last-ditch effort to forestall the justifiable sanction of default, the Court denied the motion for judgment on the pleadings as "moot" following the entry of case-ending sanctions. *See id.* at 15. The Court then ordered the clerk to enter default judgment against each Defendant and set out a process to determine the appropriate remedies to accompany those judgments. *See* Order, ECF No. 202.

Defendants now move the Court to reconsider its denial of their motion for judgment on the pleadings. *See* Mem. in Supp. of Defs.' Mot. for Recon. ("Recon. Mem."), ECF No. 205-1. In their motion, Defendants do not contest the Court's contempt finding, nor do they contend that the Court erred in finding that default judgment would be the only effective sanction to address their discovery misconduct. Rather, Defendants argue that the Court was somehow obligated to

reach the merits of the constitutional question raised in their motion for judgment on the pleadings, despite the Court's decision that the motion did not preclude entry of default judgment against them. *See id.* at 5–9. In the alternative, Defendants ask the Court to certify two questions for interlocutory appeal to the Fourth Circuit: "(1) whether the Consumer Financial Protection Bureau's funding mechanism is constitutional"; and "(2) if such is unconstitutional[,] whether invalidation of actions taken derived from such unconstitutional funding is appropriate and proper and whether dismissal is required." *See* Defs.' Mot. for Recon. at 2, ECF No. 205. Plaintiffs oppose both requests.

**ARGUMENT**

In the opening lines of their memorandum, Defendants claim that their motion presents a "rather simple" question: "should this Court adopt the holding of the Fifth Circuit as it relates to the [Bureau's] funding mechanism." Recon. Mem. at 1. That is not the relevant question, and that framing betrays Defendants' misunderstanding of this Court's order denying their motion for judgment on the pleadings. In its sanctions opinion, the Court determined that it need not reach the merits of Defendants' challenge to the Bureau's statutory funding mechanism because Defendants' litigation misconduct justified entering default without considering any of their defenses. Defendants have not established that the Court's decision was wrong, let alone that it constituted clear error causing manifest injustice. Nor can they explain why this litigation would be advanced by allowing an interlocutory appeal of a constitutional question that this Court never reached. Accordingly, the Court should deny their motion.

**I. Defendants have offered no valid ground for reconsideration of the Court's denial of their motion for judgment on the pleadings.**

Defendants first ask the Court to reconsider its decision to deny their motion for judgment on the pleadings after entering case-ending sanctions. The Court should not. The Court had no obligation to consider the merits of any affirmative defense before sanctioning Defendants, and their unsupported arguments to the contrary are unavailing.

**A. Legal Standard**

As Defendants correctly note (at 3), their motion for reconsideration is governed by Rule 54(b), which allows district courts to "revise[]" their interlocutory orders "at any time before the entry of" final judgment. *See* Fed. R. Civ. P. 54(b); *see also* 10A Wright, Miller & Kane, Fed. Prac. & Proc. Civ. § 2692 (4th ed. Apr. 2023 update) (explaining that, "until the measure of recovery has been ascertained" and court enters a "final default judgment," "a default judgment may be revised at any time under Rule 54(b)"). But Defendants selectively quote the Fourth Circuit's standards for such reconsideration motions, noting only the discretionary nature of the inquiry. *See* Recon. Mem. at 3 (quoting *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003)). They ignore what the Fourth Circuit has repeatedly emphasized: that "the discretion afforded by Rule 54(b) is not limitless," and is "subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 256–57 (4th Cir. 2018) (internal citations and quotation marks omitted). "Accordingly, a court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." *Id.* at 257 (internal quotation

marks omitted). Because Defendants do not assert any change in the evidence or governing law, they must establish that the Court committed a clear error causing manifest injustice.

**B. The Court did not commit clear error when it declined to reach the merits of Defendants' funding challenge after deciding to sanction them with entry of default judgments.**

In their motion for reconsideration, Defendants ask this Court to reevaluate its decision to deny their motion for judgment on the pleadings, which presented, as an affirmative defense, a constitutional challenge to the Bureau's statutory funding mechanism. The Court denied that motion as moot after it determined that case-ending sanctions were warranted for Defendants' knowing disregard of its orders. Defendants do not and cannot establish that this decision constituted clear error. The Court should therefore deny the motion for reconsideration.

Defendants' argument rests primarily on a misunderstanding of the mootness inquiry in the Court's sanctions order. In Defendants' view, the constitutional issue they sought to raise in their untimely motion for judgment on the pleadings is still a "live" one because the Bureau continues to pursue this case, and the Court could still remedy some harm supposedly flowing from the Bureau's ongoing use of funds in this case. *See* Recon. Mem. at 5–9. The Court's decision to deny Defendants' motion for judgment on the pleadings as "moot," however, did not turn on the merits of the funding challenge or the Court's ability to remedy any constitutional problem it might find. Instead, the Court believed—appropriately—that there was no need to reach the affirmative defense presented in the motion for judgment on the pleadings because it had already decided that judgment must be entered against Defendants regardless. Defendants do not ask this Court to reconsider its decision to enter case-ending sanctions against them. Thus, the only relevant question on reconsideration is

whether the Court clearly erred when it found it unnecessary to evaluate Defendants' funding challenge on the merits.

The Court did not. "As a general rule, the parties' litigation conduct determines what issues are properly before a court"—including affirmative defenses to liability. *Hicks v. Ferreyra*, 965 F.3d 302, 310 (4th Cir. 2020) (internal quotation marks omitted). Unless they go to a court's Article III jurisdiction over a case, such defenses—even constitutional ones—are not subject to any special entitlement to review. *Id.*; *see also, e.g.*, *Edd Potter Coal Co., Inc. v. Dir., Off. of Workers' Comp. Programs, U.S. Dep't of Lab.*, 39 F.4th 202, 207 (4th Cir. 2022) (holding that Appointments Clause challenge could be denied on forfeiture grounds). Defendants' constitutional challenge to the Bureau's statutory funding mechanism does not go to the Court's jurisdiction over this enforcement action. *See CFPB v. CashCall, Inc.*, 35 F.4th 734, 743 (9th Cir. 2022) (rejecting argument that funding challenge implicates the court's subject-matter jurisdiction and faulting defendants for "erroneously conflat[ing]" the Bureau's "authority to execute the laws (Article II) with the United States' interest in the case (Article III)"); *cf. also CFPB v. Fair Collections & Outsourcing, Inc.*, No. GJH-19-2817, 2020 WL 7043847, at *4 (D. Md. Nov. 30, 2020) (holding that challenge to Bureau's leadership structure likewise did not "void[] the CFPB's standing" or otherwise implicate the Court's jurisdiction). The Court therefore could—and did—properly deny the motion based on Defendants' litigation misconduct, without reaching the merits of their belated constitutional challenge.[1]

[1] In its sanctions opinion, the Court also noted two other procedural hurdles to consideration of Defendants' funding challenge. First, the Court faulted Defendants for the timing of their motion, which was filed well after "any conceivable deadline" and likely not early enough that it could be resolved without "delay[ing]" trial. Sanctions Op. at 13 & n.9. Second, the Court expressed "grave doubts" about its ability to resolve Defendants' motion on the pleadings given their fact-bound and broad remedial request. *Id.* at 13 n.11. Nothing about the nature of Defendants'

To support their claim that the Court needed to evaluate the defense on the merits, Defendants cite only to the remedial analyses in the Fifth Circuit's decision in *CFSA* and in an earlier Fifth Circuit concurrence on which the *CFSA* court relied. *See* Recon. Mem. at 6–9 (citing *CFSA*, 51 F.4th at 643; *CFPB v. All Am. Check Cashing, Inc.*, 33 F.4th 218, 242 (5th Cir. 2022) (Jones, J., concurring)). Those lengthy quotations only lay out how the Fifth Circuit would analyze the remedial questions posed by an Appropriations Clause challenge, were it properly presented.[2] Nothing in *CFSA* suggests that any feature of the Bureau's statutory funding mechanism affects the Bureau's enforcement authority or standing to bring suit. *Cf. CFSA*, 51 F.4th at 629 (concluding that Bureau acted within statutory authority to promulgate rules, notwithstanding separate holding on funding challenge). And, in any event, "[t]o say that a court must apply a given analysis when it addresses a question is not to say that the court must address that question" in the first instance. *Hicks*, 965 F.3d at 311. As explained, the Court here concluded that it need not reach the issue presented in Defendants' untimely motion for judgment on the pleadings because their discovery misconduct necessitated the sanction of default judgment.

Finally, Defendants cannot save their unsupported request for reconsideration with their misleading assertion that "a default does not allow a party to recover on a claim that cannot as a matter of law succeed." *See* Recon. Mem. at 9. To be sure, a court may enter a default judgment only if "the well-pleaded allegations in [the] . . . complaint support the relief sought." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). But

constitutional challenge would have precluded the Court from resolving the motion on these procedural grounds, either.

[2] To the extent that the non-binding remedial analysis in *CFSA* is even relevant, the remedy that Defendants seek here—dismissal even of co-plaintiff *states'* claims based on a purported constitutional problem with the *Bureau's* funding mechanism—also goes well beyond any fix that the Fifth Circuit contemplated in *CFSA*.

that rule only requires the court to assure itself that "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." 10A Wright, Miller & Kane, Fed. Prac. & Proc. § 2688.1 (4th ed. Apr. 2023 update). In other words, plaintiffs must allege a *prima facie* case before securing a default judgment.

That requirement does not obligate courts to consider affirmative defenses—particularly ones that defendants have not even properly raised. *See Falaiye v. CCA Acad. Res., LLC*, No. 16-cv-2887, 2017 WL 4098740, at *4 (D. Md. Sept. 14, 2017) (refusing to *sua sponte* consider standard affirmative defense to default judgment on wage-and-hour claims); *cf. Peters v. Xhilaration*, No. 1:16-cv-96, 2016 WL 4599943, at *4 (E.D. Va. July 26, 2016), *report and recommendation adopted*, No. 1:16-cv-96, 2016 WL 4599903 (E.D. Va. Sept. 2, 2016) (holding only that court "*may* . . . properly consider obvious affirmative defenses in evaluating whether entry of default judgment is appropriate" (emphasis added)). "[W]here the conduct of a party amounts to willful misconduct, the existence of a meritorious defense does not prohibit default judgment." *Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 857 (8th Cir. 1996). To hold otherwise would allow "[d]efendants who refuse to appear and defend against claims made against them" to improperly "benefit from their actions." *First Tech. Cap., Inc. v. Airborne, Inc.*, 378 F. Supp. 3d 212, 219 (W.D.N.Y. 2019). There is thus no legal bar to the Court's entry of default judgment against Defendants on all claims brought by all Plaintiffs. The Court should deny their motion for reconsideration.

## II. The Court should not certify any questions for interlocutory review.

In the alternative, Defendants ask the Court to certify two questions for interlocutory appeal to the Fourth Circuit: (1) "whether the Consumer Financial Protection Bureau's funding mechanism is constitutional"; and (2) if so, "whether invalidation of actions taken

derived from such unconstitutional funding is appropriate and proper and whether dismissal is required." *See* Defs.' Mot. for Recon. at 1–2. Because neither of these questions satisfies the standard for certification, the Court should likewise deny this request.

**A. Legal Standard**

Defendants' request to certify an issue for interlocutory appeal is governed by 28 U.S.C. § 1292(b), which allows a district court to certify an order for interlocutory appeal where (1) it involves a controlling question of law; (2) about which there is a substantial ground for difference of opinion; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b); *Prince v. Johnson Health Tech Trading, Inc.*, No. 5:22-cv-00035, 2023 WL 3190403, at *2 (W.D. Va. May 1, 2023) (Dillon, J.). The Fourth Circuit has cautioned that Section 1292(b) "should be used sparingly and . . . that its requirements must be strictly construed." *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989). For that reason, district courts "may not and should not" certify orders for immediate appeal unless they find that "*all* of the statutory criteria are satisfied." *Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 452 (D. Md. 2015) (citing *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000)).

Defendants misconstrue how the district court should apply this provision. They claim the Court has a "*duty* to allow an immediate appeal to be taken" if it finds that the statute's criteria are met. *See* Recon. Mem. at 4 (quoting *In re Trump*, 928 F.3d 360, 369 (4th Cir. 2019)). But for support, Defendants cite only to the Fourth Circuit's panel decision in *In re Trump*—an opinion that the en banc Fourth Circuit expressly declined to follow on rehearing. *See In re Trump*, 958 F.3d 274 (4th Cir. 2020), *cert. granted, judgment vacated on other grounds sub nom. Trump v. District of Columbia*, 141 S. Ct. 1262 (2021). To the

contrary, the full court emphasized that "the matter of certification" is "vested first in the discretion of the district court." *Id.* at 282–83. As this Court has recently noted, "[e]ven if the requirements of section 1292(b) are satisfied, the district court has 'unfettered discretion' to decline to certify an interlocutory appeal if exceptional circumstances are absent." *Prince*, 2023 WL 3190403, at *2 (quoting *Manion v. Spectrum Healthcare Res.*, 966 F. Supp. 2d 561, 567 (E.D.N.C. 2013)). "The moving party bears the burden of persuading the court that exceptional circumstances justify a departure from the general policy against piecemeal appeals." *Id.*

**B. Defendants have not put forward any question of law appropriate for certification.**

The Court should deny Defendants' alternative request for certification to the Fourth Circuit because neither question proposed for certification would control this case, nor would their resolution on interlocutory appeal meaningfully advance this litigation.

A question of law can be "controlling" for the purposes of Section 1292(b) if its "resolution will be completely dispositive of the litigation, either as a legal or practical matter, whichever way it goes." *Fannin v. CSX Transp., Inc.*, 873 F.2d 1438, 1998 WL 42583, at *5 (4th Cir. 1989) (Table). Questions may also be controlling "if interlocutory reversal might save time for the district court, and time and expense for the litigants." *Coal. For Equity & Excellence in Md. Higher Educ. v. Md. Higher Educ. Comm'n*, No. 06-cv-2773, 2015 WL 4040425, at *4 (D. Md. June 29, 2015) (quoting 16 Wright, Miller & Cooper, Fed. Prac & Proc. Juris. § 3930 (3d ed. 2012)). The questions that Defendants present do not fall into either bucket. The Court denied Defendants' motion for judgment on the pleadings on procedural grounds—finding it unnecessary to reach the merits after deciding to sanction Defendants with default judgments. Defendants do not seek certification

of any question that could bear on that decision to deny their dispositive motion as "moot." Thus, whatever the Fourth Circuit thinks of the merits of, or remedies associated with, a properly presented challenge to the Bureau's statutory funding mechanism, those answers could not affect the course of this litigation.

Section 1292(b) also requires that immediate interlocutory appeal would materially advance the ultimate termination of the litigation. This condition "is closely tied to the requirement that the order involve a controlling question of law." 16 Wright, Miller & Cooper, Fed. Prac. & Proc. Juris. § 3930 (3d ed. Apr. 2023 update). And here, the analysis is the same: Because the Court's denial of the motion for judgment on the pleadings did not turn on either of the questions that Defendants now propose for interlocutory review, the requested certification would not advance the ultimate termination of this litigation.

In sum, Defendants have not satisfied two separate and mandatory criteria for interlocutory appeal under Section 1292(b). *See Butler*, 307 F.R.D. at 452. The Court should therefore reject their request.[3]

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion for reconsideration or in the alternative for certification for interlocutory appeal.

[3] In a footnote, Defendants suggest that certification of questions related to their challenge to the Bureau's funding mechanism would "conserve judicial resources" and "at worst result in a slightly delayed trial." Recon. Mem. at 2 n.2. The Court does not need to reach these considerations because Defendants have not presented any question appropriate for interlocutory appeal. Still, Defendants are wrong in multiple respects about the effects of certification. First, certification could significantly delay the resolution of the remedies phase of this litigation, which is essential to Plaintiffs' efforts to secure meaningful relief for the consumers harmed by Defendants' conduct. Second, certification of issues not actually relevant to this Court's resolution of the litigation would waste, rather than conserve, judicial resources. Last, Defendants are wrong to suggest that the next phase of this litigation would require a full-blown trial. Plaintiffs plan to present their request for remedies at an evidentiary hearing, which will allow prompt, final resolution of this enforcement action.

Respectfully submitted,

*Attorneys for the Consumer Financial Protection Bureau*

Eric Halperin
*Enforcement Director*
Alusheyi J. Wheeler
*Deputy Enforcement Director*
Kara K. Miller
*Assistant Litigation Deputy*

**Stephanie B. Garlock**
D.C. Bar Number: 1779629
Hai Binh T. Nguyen
California Bar Number: 313503
Leanne E. Hartmann
California Bar Number: 264787
Lee I. Sherman
California Bar Number: 272271
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Telephone (Garlock): (202) 435-7201
Telephone (Nguyen): (202) 435-7251
Telephone (Hartmann): (415) 844-9787
Telephone (Sherman): (202) 374-4575
Email: stephanie.garlock@cfpb.gov
Email: haibinh.nguyen@cfpb.gov
Email: leanne.hartmann@cfpb.gov
Email: lee.sherman@cfpb.gov

*Attorneys for the Commonwealth of Virginia, ex rel. Jason S. Miyares, Attorney General*

Jason S. Miyares
*Attorney General*
Charles H. Slemp, III
*Chief Deputy Attorney General*
Steven G. Popps
*Deputy Attorney General*
Richard S. Schweiker, Jr.
*Chief and Senior Assistant Attorney General*

**James E. Scott**
Assistant Attorney General
Virginia Bar Number: 88882

David B. Irvin
Virginia Bar Number: 23927
Unit Manager and Senior Assistant Attorney General
Office of the Attorney General
Consumer Protection Section
202 North Ninth Street
Richmond, VA 23219
Telephone (Irvin): (804) 786-4047
Telephone (Scott): (804) 225-4778
Fax: (804) 786-0122
Email: dirvin@oag.state.va.us
Email: jscott@oag.state.va.us

*Attorneys for the Commonwealth of Massachusetts*

Maura Healy
*Attorney General*

**Jon Burke**
Massachusetts Bar Number: 673472
Assistant Attorney General
Office of the Attorney General
10 Mechanic Street
Worcester, MA 01608
Telephone: (774) 214-4416
Fax: (508) 795-1991
Email: Jonathan.burke@mass.gov

*Attorneys for the People of the State of New York*

LETITIA JAMES
*Attorney General*

Jane Azia (New York Bar Number: 1539600)
*Bureau Chief for the Bureau of Consumer Frauds and Protection*
Laura Levine (New York Bar Number: 2337368)
*Deputy Bureau Chief for the Bureau of Consumer Frauds and Protection*

**Franklin H. Romeo**
New York Bar Number: 4422051
Assistant Attorney General
Office of the Attorney General
28 Liberty Street
New York, NY 10005

Telephone: (212) 416-8320
Fax: (212) 416-6003
Email: franklin.romeo@ag.ny.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on June 14, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record for the parties.

*/s/ Stephanie B. Garlock*
Stephanie B. Garlock