UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

CONSUMER FINANCIAL PROTECTION
BUREAU, *et al.*,

               Plaintiff,

        v.

NEXUS SERVICES, INC., *et al.*,

               Defendants.

No.: 5:21-cv-00016-EKD-JCH

## DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

## INTRODUCTION

Defendants' do not and have not argued that the unconstitutional funding structure of the Consumer Financial Protection Bureau ("CFPB") either deprives the CFPB of standing or that such is a jurisdictional error. *Compare* ECF Doc. No. 205-1 at 6-9 (discussing proper remedy as invalidating actions taken with unconstitutional funding) (hereinafter "Motion" or Defs. Mem."), *with* ECF Doc. No. 213 at 9 (noting that unconstitutional funding does not result in stripping Court of jurisdiction) (hereinafter "Opposition" or "Pls. Mem.. Mem.").

Rather, what the Defendants argued was that the CFPB utilized unconstitutional funding to file certain matters including the original Complaint, which remains the operative Complaint in this matter. *See* Defs. Mem. Mot. at 2, 8. Further, that the CFPB filed other papers in the case which have resulted in harm being done Defendants, that by

its nature required the usage of unconstitutional funding. *Id*.; *see also ECF Doc. No*. 198 at 2, n.1.

The argument largely boils down to whether or not the CFPB can actively participate in this, or any matter, utilizing unconstitutional funding and whether or not the actions taken—the filings—should be invalidated. To the extent they should be the entry of a default becomes impossible and the motion for judgment on the pleadings should have been granted as a matter of law.

**ARGUMENT**

I.     **PLAINTIFFS FAIL TO ADDRESS IF THE MOTION WAS TIMELY AND COURT FAILED TO CONSIDER THE SAME.**

Plaintiff's mistakenly assert repeatedly that the underlying motion for judgment on the pleadings was untimely, Pls. Mem.. Mem. at 2, 4, 8, 10, but never address how or why such should be the case where no trial date remains scheduled.

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed *but within such time as not to delay the trial*, any party may move for judgment on the pleadings." (emphasis added). In the simplest of terms there was not a trial date to delay: no trial date was calendared. *See* ECF Doc. No 171 (cancelling hearing). While the Court had previously entered a scheduling order, the same scheduling order had been modified at the request of New York and all dispositive motions were to be based on the final trial date. ECF Docs. No. 113, 102. To be perfectly blunt the motion was timely because there

was no trial date set which it could delay and no trial date based on which it could be considered untimely under the operative order. *See* Docs. No. 113, 171.

While there certainly were delays in the initially scheduled trial date, such were not caused by the motion for a judgment on the pleadings, nor was there any indication that the motion would have delayed any scheduled trial date, nor was the filing of the motion barred by an operative scheduling order which would have required its filing at an earlier date.

Untimeliness simply was simply not a reason to deny the motion. *See, e.g.*, *PDX North, Inc. v. Comm'r N.J. DOL & Workforce Dev.*, 978 F.3d 871, 880 (3d Cir. 2020) ("[N]o trial date had been set—and therefore no trial date could have been delayed by [the motion for judgment on the pleading's] filing."); *CVR Energy, Inc. v. Wachtell, Lipton, Rosen & Katz*, 830 Fed. Appx. 330, 333 n.2 (2d Cir. 2020) ("[W]e reject CVR's contention that the district court should have denied defendants' motion on timeliness grounds .... Here, no trial date had been set when defendants made their motion.").[1]

Neither the Court, nor the Plaintiffs considered the actual standards and plain language set forth in Rule 12(c). It is inconceivable that the motion could have delayed an

---

[1] The District Court of Maryland appears to be the only Court in the Circuit to have addressed the question at length and has held the same. *See, e.g.*, *Lyons v. PNC Bank, N.A.*, 618 F.Supp.3d 238, 242 (D.Md. 2022) ("Because no trial date has yet been set, the filing of this motion will not delay trial."); *Pulte Home Corp. v. Montgomery Cnty., Md.*, 271 F.Supp.3d 762, 268, n. 3 (D.Md. 2017) (collecting cases).

unscheduled trial and simply should not have been denied on those grounds. To the

extent that much of Plaintiffs' arguments rely on untimeliness as a justification for denial

of the motion they should fail—they completely lack analysis under law and are belied by

the language of Rule 12(c) and caselaw.

> **II.** **THERE WAS NO DEMONSTRATION THAT ANY PLAINTIFF WAS ENTITLED TO JUDGMENT REGARDLESS OF ADMISSION OF FACTS WITHIN COMPLAINT BY OPERATION OF DEFAULT.**

The entrance of a default prevents a party from answering and contesting

traversable facts set forth within the complaint—it in essence acts as an admission of all

such.

> As the Supreme Court stated in the "venerable but still definitive case" of
> *Thomson v. Wooster:* a default judgment may be lawfully entered only "according
> to what is proper to be decreed upon the statements of the bill, assumed to be
> true," and not "as of course according to the prayer of the bill." The defendant is
> not held ... to admit conclusions of law. In short, despite occasional statements to
> the contrary, a default is not treated as an absolute confession by the defendant of
> his liability and of the plaintiff's right to recover.

*Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting

*Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975)

(quoting *Thomson v. Wooster*, 114 U.S. 104, 113 (1885))) (internal quotations and other

citations omitted).

A default does not result in automatic recovery, nor should default be entered

where there is not and cannot be a demonstration of entitlement to recovery. *See Id.* at

781 ("The district court correctly concluded that acceptance of these undisputed facts

does not necessarily entitle appellants to relief sought" ) (citing *Nishimatsu*, 515 F.2d at

1206).

Regardless of whether or not the facts in the complaint are admitted, because the

conclusions of law are not, the Court *must* determine the conclusions of law that flow

from the facts admitted and whether those entitle the non-defaulting party to relief—

indeed where such do not on their face, or may contain a fatal flaw, a court might take

evidence to ensure it reaches the correct legal conclusion. *See Nishimatsu*, 515 F.2d at

1206, n.5; *see also DIRECTV, Inc. v. Pernites,* 200 Fed.Appx. 257, 258 (4th Cir.2006) (a

"'defendant is not held to admit facts that are not well-pleaded or to admit conclusions of

law'") (quoting *Nishimatsu*, 515 F.2d at 1206).

The point here is an admission of facts, will not change whether or not there might

be some constitutional flaw in recovery, whether or not those facts as a matter of law

could support recovery, or whether the entrance of a default judgment is appropriate. The

Defendants are not arguing that the facts admitted might or might not state a claim, but

rather stating that the CFPB (as currently funded) cannot recover on a pleading that it has

filed utilizing constitutionally invalid funding because the filing of such a pleading is an

act that it simply could not undertake absent the same funding and that such must be

invalidated. *See generally* Defs. Mem. at 6-9. This is simply not addressed by Plaintiffs.

*See* Pls. Memo.

5

While a Court might be free to correct otherwise fatal errors in the pleading through the collection of evidence, it still must do so to establish that the Plaintiffs are entitled to relief; or where a material fact is not particularly pleaded—and through effect of the default established—the same must be established by additional evidence. *See Nishimatsu*, 515 F.2d at 1206; *see also id.* at n. 5.[2] Plaintiffs' do not and appear never to have allege that the contention was incorrect, or that the CFPB's funding mechanism is constitutional, but rather that the default should be entered regardless of whether or not the pleading—and the litigation—was completely tainted with money that violated the constitution. Pls. Mem. 2, 8.

The Defendants respectfully disagree: Defendants in essence are setting forth two concrete propositions which Plaintiffs seem not to grasp: 1, it is the CFPB that appears to have filed the initial pleading in this case; and 2, the CFPB made multiple filings in the matter that have resulted in harm. *See generally* Defs. Mem. at 8. Because each of these has done Defendants harm, each must as a matter of law be invalidated, *i.e.*, voided, including the complaint. *Id.* at 7 (quoting *Community Financial Protection Bureau v. All Am. Check Cashing, Inc.*, 33 F.4th 218, 242 (5th Cir. 2022) (Jones, J., concurring)).

Even in the absolute best of worlds, the CFPB would have utilized funds to review the Complaint, to ultimately approve the signature of one of its attorneys on the same

---

[2] Moreover, Courts strongly disfavor determining important issues on default. *See Gen. Motors Corp. v. Blevins*, 144 F.Supp. 381, 389, n. 8 (D. Colo. 1956) (collecting cases)

document—this in and of itself represents a necessary expenditure of funds which facially, were one to accept the holdings of the Fifth Circuit would give cause to an unconstitutional act, *i.e.*, the utilization of funds for an attorney to sign and file a Complaint. *Id.* This signature on the complaint, and inclusion of the CFPB within the suit caused harm to Defendants, thus giving reason for Nexus to invalidate the action, *i.e.*, void the filing. *Id.*

While the acts are not void—again, not something that Defendants have argued—they are voidable. *See* Def. Mem. at 6. Defendants brought this to the Court's attention and the Court has never addressed the question, nor did Plaintiff's demonstrate that given this facial, and constitutional flaw, they were entitled to judgment. *See generally* Pls. Mem.

Here at a minimum the initial Complaint required an outlay of unconstitutional funding—it was signed by a lawyer who was getting paid—and as such, were one to adopt the Fifth's logic a default should never have been entered and a judgment on the pleadings was appropriate.

### III.    CASELAW SPEAKING TO PRESERVATION OF ISSUES FOR APPEAL ARE SIMPLY OFF BASE.

Defendants timely filed their motion for judgment on the pleadings, *see* Fed. R. Civ. Proc. 12(c), it was filed after pleadings closed and when no trial date was set. *Id.* Defendants did not need to bring an argument reaching to the jurisdiction of the Court,

because they were not on appeal and were not required to preserve the issue in a lower court. *Cf.* Pls. Mem. at 9 (*Hicks v. Ferreyra,* 965 F.3d 302, 310 (4th Cir. 2020) (analyzing unpreserved issue for appellate review)). Indeed, no case cited by Plaintiffs that addresses the exception to the preservation requirement is particularly relevant because there has been no appeal here and no need to preserve the issue for appeal as of yet. *See, e.g.*, *id.* (citing *CFPB v. CashCall, Inc*., 35 F.4th 734, 743 (9th Cir. 2022) (addressing failure to preserve issue for appeal)).

Likewise, Defendants did not seek to enter an argument that required preservation at an administrative level, or for Defendants to present the matter to an administrative Court. *Compare id.* (citing *Edd Potter Coal Co., Inc. v. Dir., Off. of Workers' Comp. Programs, U.S. Dep't of Lab.*, 39 F.4th 202, 207 (4th Cir. 2022) (addressing exhaustion of administrative remedies and requirement to preserve issue in administrative hearing).

In other words, the only way Defendants could have waived their argument would have been if they were required to bring the matter at a certain stage in litigation, which due to the vacating of the trial date simply was not what existed here.

## IV. DECLARING AN ACTION VOID, HOLDING A PLEADING A NULLITY, OR UNDOING CONSTITUTIONAL HARM IS FUNDAMENTALLY DIFFERENT THAN A STANDARD AFFIRMATIVE DEFENSE.

A court need not consider affirmative defenses, but this is not an affirmative defense in a typical sense. Just as a court considers personal jurisdiction[3], service of a complaint,[4] or obvious defects which appear on the face of a complaint,[5] prior to the entrance of a default judgment, so too should the Court consider matters of law and constitutional tenets. For this, and other reasons, default simply should not be entered where there is any doubt as to its appropriateness. *See Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969) ("Any doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits.").

This case must fail as a matter of law, assuming the Fifth Circuit is correct: there is strong reason to believe that the CFPB cannot, as a matter of law, utilize unconstitutional funding to do parties harm, and that where they choose to do so, the correct recourse is to invalidate the acts—in this case void, strike, or otherwise remove the filings, in an attempt to undo the harm and then to allow for parties to proceed

---

[3] *See, e.g., Glaser v. Hagen*, No. 1:14-cv-01726 (LMB/IDD), 2015 WL 10012993 at *2 n.1, (E.D. Va. Oct. 29, 2015) (noting that "Fourth Circuit case law appears to be unsettled regarding whether a court should raise the issue of personal jurisdiction sua sponte," but ultimately considering the issue of personal jurisdiction, to avoid entering a void default judgment); *Winzeler v. Sanchez*, Civ. No. 2:13cv612, 2015 WL 12645001 at *3 (E.D. Va. July 28, 2015);

[4] *Maryland State Firemen's Ass'n v. Chaves*, 166 F.R.D. 353, 354 (D. Md. 1996) (requiring demonstration of proper service before entrance of default); U.S. ex rel. Combustion Sys. Sales, Inc. v. E. Metal Prods. & Fabricators, Inc., 112 F.R.D. 685, 690 (M.D.N.C. 1986) (noting vacation of default proper for lack of proper service).

[5] *Peters v. Xhilaration*, No. 1:16-cv-96, 2016 WL 4599943, at *4 (E.D. Va. July 26, 2016)

constitutionally to the extent that such remains possible and to recover what they can

constitutionally recover. *See generally* Defs. Mem. at 6-9.

In short there is substantial doubt as to whether the complaint, regardless of the

admission of facts, allows for recovery as a matter of law at all.

V.     CERTIFICATION, DISPOSITIVE QUESTIONS, AND
       EFFICIENCY.

To begin, Defendants question whether what they seek to certify would prove

moot. There are two questions the Defendants seek to certify: 1, whether the funding

mechanism is unconstitutional; 2, and if so, whether invalidation of actions taken, derived

from such unconstitutional funding, is appropriate and proper. *See* ECF 205 at 1-2. If the

Circuit were to answer both questions in the affirmative, then there would be no operative

complaint; it would be invalidated, *i.e.*, voided, and the action would be dismissed,

leaving the parties (those who could participate) to refile their action. It just does not

seem like the Plaintiffs address these questions and how they would fail to move the

matter towards ultimate disposition. Pls. Mem at 13-14. How these questions would not

be dispositive is unclear and the Plaintiffs do not clarify the same. *See Id*. at 13. Further,

it seems they fail to address what is an inevitable appeal and what will certainly be

contested motion practice around these very issues. *See id.* Further, the assumption that

the invalidating of the underlying complaint in this matter would not affect the litigation

or a determination that the 12(c) motion simply does not seem realistic. *Id.*

Further still, even were the answer to one of the questions, which are requested for

certification, determined in the negative, or the Defendants' assertion that no action could

proceed on an invalidated complaint denied, the certification would avoid what is certain

to be contentious motion practice that will drain all parties resources—Court included—

and result inevitably in appeal. Defendants position is that they have been done harm and

that certain actions are unconstitutional; this being the case, they will seek to stop such

harm from continuing prospectively and the only manner in which to do this is through

injunction, *see Bell v. Hood*, 327 U.S. 678, 684 (1946) (recognizing the "jurisdiction of

federal courts to issue injunctions to protect rights safeguarded by the Constitution);

*Correctional Services Corp v. Malesko*, 534 U.S. 61, 74 (2001) (noting injunction proper

remedy to prevent unconstitutional harm), or significant motion practice.[6] It can hardly be

contended that if Defendants and the Fifth Circuit are correct that Defendants should

stand idly by and continue to be harmed in violation of the Constitution.

There is virtually no question that the CFPB continues to participate in this matter,

presumably this requires an outlay of funds. Further, it is almost inconceivable that the

results of those funds will not continue to be utilized to the harm of Defendants. There is

no benefit to litigating this issue at the trial-level, yet more, only to bring the matter to the

appellate court after more time, energy, expense and resources are expended.

---

[6] Indeed, if Plaintiffs are correct in asserting that the motion for judgment on the pleadings should have, regardless of the merit of the constitutional argument, been denied on procedural grounds, then it is only more pressing to preserve the issue for appeal through other vehicles.

The only substantive difference between certifying these questions at this moment or waiting until significantly more litigation has taken place in order to prevent further constitutional harm is the significant litigation. If Defendants are incorrect, then there is no need to enjoin any party, there is no need for extensive motion practice limiting evidence, or the conduct at trial. Indeed, there is a focused, narrow appeal, which could be expedited that would both avoid significant litigation, at the worst, or at the best simply result in the matter being disposed of entirely.

The Plaintiffs seem to fail to address what will be the required motion practice should this issue simply not be addressed at the appellate level and the effects which the determination of an appeal would likely have on the instant litigation—whether the outcome be positive or negative for Defendants.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request the Court grant their motion and any other relief the Court deems just and proper.


Dated: June 21, 2023
    Joplin, Mo.

Respectfully submitted,
/s/Zachary Lawrence
Lawrence Law Firm PLLC
Little Falls, NY 13365
202-468-9486
zach@zlawpllc.com
Pro hac vice (NY Bar No.: 5798202)