IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

CONSUMER FINANCIAL PROTECTION
BUREAU, et al.,

    Plaintiffs,

v.

NEXUS SERVICES, INC., et al.,

    Defendants.

Case No.:  5:21-cv-00016-EKD-JCH

**REPLY IN SUPPORT OF PLAINTIFFS' REQUEST
FOR EVIDENTIARY SANCTIONS, INJUNCTIVE RELIEF,
CONSUMER REDRESS, AND CIVIL MONEY PENALTIES**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 4

   I.   The allegations of the Complaint set forth claims for which relief can be granted under the CFPA and the States' consumer protection laws—which Defendants do not contest................ 4

   II.   Sanctions under Rule 37 are appropriate, and Defendants should be precluded from offering newly identified evidence and testimony at the evidentiary hearing. .......................... 7

      A.   Contested evidentiary issues should be resolved in Plaintiffs' favor.............................. 9

      B.   Evidence tainted by discovery misconduct, including all witnesses and exhibits included in Defendants' Initial Witness and Exhibit Lists, should be excluded. .................. 11

          1.   Exclusion of Defendants' exhibits and witnesses under Rule 37(c)(1)...................... 12

          2.   Exclusion of testimony or evidence on any matter covered by Plaintiffs' discovery requests ........................................................................................................... 15

      C.   Plaintiffs have not waived their ability to request evidentiary sanctions. ...................... 20

   III.   Plaintiffs' proposed restitution is appropriate................................................................. 20

      A.   Returning money that consumers paid is the appropriate measure of restitution in consumer cases. ........................................................................................................ 20

      B.   Defendants have not met their burden to show that the proper restitution amount is something less than the full amount of money they collected............................................. 23

      C.   In the alternative, the Court should exclude any irrelevant evidence or testimony for purposes of calculating damages. .......................................................................... 26

      D.   Defendants have conceded that the State consumer protection laws provide an alternative basis for the Court to award restitution.............................................................. 27

   IV.   Plaintiffs' requested civil money penalties are justified. .............................................. 28

      A.   Defendants' conduct justifies the Tier 2 penalty that the Bureau requested................. 28

      B.   Defendants' conduct justifies the States' requested civil penalties.............................. 30

   V.   Damages and penalties may be assessed without a hearing. ............................................ 32

CONCLUSION.................................................................................................................... 32

## INTRODUCTION

Less than one month before the August hearing, Defendants fail to cite any evidence—not a single document or witness declaration—in response to Plaintiffs' Memorandum in Support of their Request for Evidentiary Sanctions, Injunctive Relief, Consumer Redress, and Civil Money Penalties (Opening Brief);[1] instead, Defendants' Response[2] speculates about the existence of "significant" undisclosed testimony and evidence[3] that they seek the "opportunity"[4] to offer at the August hearing.

Defendants' deficient Response only compounds their discovery abuses and further prejudices Plaintiffs. Defendants ignore that the Court entered default judgment because Defendants' "abject failure"[5] to comply with this Court's orders left Plaintiffs without the means to conduct effective discovery, depose witnesses, or prepare their case for trial.[6] Defendants now attempt to benefit from those failures. In short, during discovery, Defendants withheld critical evidence from Plaintiffs relevant to both liability and damages.[7] Defendants continue to withhold the "significant" evidence that they intend to use to contest the "valuation or calculation"[8] of both damages and civil penalties and want to wait for next month's hearing to reveal their evidence. There is a phrase for this strategy—"trial by ambush."[9]

---

[1] ECF No. 216.
[2] Defs.' Mem. in Opp'n. to Pls.' Mem. in Supp. of Their Req. for Evidentiary Sanctions, Inj. Relief, Consumer Redress, and Civil Money Penalties (Defs.' Resp.), ECF No. 221.
[3] *Id*. at 22-23 (failing to cite a single piece of evidence in a section concerning "Significant Evidence").
[4] *Id*. at 18 (ignoring the opportunity at hand to brief remedies and damages but requesting "the opportunity to provide analysis or evidence" later).
[5] Mem. Op. 5 (Sanctions Op.), ECF No. 201.
[6] *Id.* at 14.
[7] As discussed further below, discovery in this case was not bifurcated or phased. Defendants' "bad faith" and "knowing" discovery abuses, *id.* at 5, were as prejudicial to Plaintiffs' ability to prove damages as they were to liability.
[8] Defs.' Resp. 8.
[9] *AMEX v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002) (citations omitted).

Defendants' Initial Witness and Exhibit Lists[10] evidence the same gamesmanship. Defendants identified two experts (one of whom Defendants had not yet retained as of that filing[11]) as prospective witnesses at the August hearing, but they failed to disclose their experts by the Court's deadlines in violation of Federal Rule of Civil Procedure (Rule) 26, withheld in discovery the materials that Plaintiffs would need to effectively cross-examine or rebut these witnesses, and still have not provided any expert's report or identified the documents on which the experts rely for their forthcoming opinions.[12] Similarly, Defendants identified twelve potential fact witnesses and disclosed seventeen documents as potential exhibits.[13] Again, in violation of Rule 26, Defendants previously disclosed only one of the twelve potential fact witnesses,[14] and Defendants withheld discovery materials related to each topic about which the witnesses are purported to testify.[15] Plaintiffs were not able to depose any of these witnesses during discovery. Defendants have also failed to identify any of their listed exhibits as having been produced in discovery (despite the fact that they are within the scope of Plaintiffs' requests that were the subject of the Order to Show Cause),[16] and they have not provided the exhibits to Plaintiffs in connection with the exchange of witness and exhibit lists.[17] Excluding these witnesses and exhibits under Rule 37, as requested in Plaintiffs' Opening Brief and further explained below, would disabuse Defendants of their continued "delusion as to the exigency of the situation"[18] that they have created.

---

[10] ECF No. 219.
[11] *Id*. at 2 n.1.
[12] *See* Decl. of James E. Scott (Scott Decl.), filed herewith, ¶ 10.
[13] Defs.' Initial Witness and Ex. Lists (Defs.' Lists) 2-9, ECF No. 219.
[14] *Compare* Defs.' Lists *with* Scott Decl. ¶¶ 11-12, Ex. 2 (Defs.' Initial Disclosures).
[15] *See* Scott Decl. ¶¶ 13-14, Ex. 3 (Chart).
[16] *See* Order for Defs. to Show Cause and Certification Under 28 U.S.C. § 636(e)(6)(B)(iii), 18-25, ECF No. 181 (Order to Show Cause).
[17] Scott Decl. ¶ 10.
[18] Sanctions Op. 12.

As to the merits of Defendants' Response, Defendants concede several arguments set forth in Plaintiffs' Opening Brief. First, Defendants concede that the Complaint contains sufficient allegations supporting claims asserted under the Consumer Financial Protection Act of 2010 (CFPA) and the States' consumer protection laws.[19] To the extent that Defendants make any arguments on liability, their arguments do not apply to the state law claims and their arguments as to the CFPA are meritless. Second, Defendants do not contest any of the injunctive relief requested by Plaintiffs; in fact, the Response does not mention injunctive relief. Third, Defendants concede, as they must, that restitution is an appropriate form of damages under both the CFPA and the States' consumer protection laws. They additionally concede that the evidence Plaintiffs have used to calculate restitution is valid—and that Plaintiffs' calculation of net revenues is both accurate and complete.[20] And fourth, Defendants do not contest that the factual allegations in the Complaint support an award of civil penalties under both the CFPA and the States' consumer protection laws.[21] Defendants contest only the amount of restitution and civil penalties due.

Defendants' arguments on these points are without merit. Defendants offer no persuasive arguments to Plaintiffs' request that restitution be calculated based on net revenues. Similarly, Defendants' arguments for reducing the requested restitution and civil penalties fail—on both legal and evidentiary grounds.

Finally, Defendants' Response proclaims that if "the Court accept[s] the Plaintiffs' arguments," it would "moot[] the need for a trial."[22] In fact, Defendants' position is that if the Court so much as "disallow[s] the presentation of expert testimony . . . , there would be no need

---

[19] *See* Defs.' Resp. 2-3.
[20] *See id.* at 8 ("Defendants will be unable to dispute revenues . . .").
[21] *See id*. at 19-23.
[22] *Id.* at 7-8.

for a trial."[23] Plaintiffs agree. Accordingly, Plaintiffs respectfully submit that the scheduled

August evidentiary hearing be canceled, and Plaintiffs request that the Court enter an order and

judgment: (1) determining that the Complaint contains sufficient factual allegations to establish

Defendants' liability under the claims asserted under the CFPA and the States' consumer

protection laws; (2) imposing the requested Rule 37 evidentiary sanctions against Defendants;

(3) awarding restitution and civil penalties in the amounts requested by Plaintiffs; and (4)

entering the requested injunctive relief.

## ARGUMENT

**I.    The allegations of the Complaint set forth claims for which relief can be granted under the CFPA and the States' consumer protection laws— which Defendants do not contest.**

Because the Court has not yet decided whether Plaintiffs have set forth claims for which

relief can be granted,[24] Plaintiffs argued in their Opening Brief that the well-pleaded allegations

of the Complaint "support[] default judgment and the causes of action [in the Complaint]."[25] In

their Response, Defendants acknowledge Plaintiffs' argument that the Complaint states claims

upon which relief may be granted,[26] and Defendants admit that their Response "solely

address[es] damages" and that it raises issues related to liability "[s]olely for the purposes of

preservation for appeal."[27] By failing to contest liability, Defendants have conceded that

Plaintiffs have sufficiently stated causes of action to support default judgment.[28]

---

[23] *Id.* at 8.

[24] *See* Mem. Op. 4 n. 1, ECF No. 108 (declining to construe Defendants' motion to dismiss as a motion under Rule 12(b)(6).

[25] Opening Br. 8 (quoting *ME2 Prods., Inc. v. Ahmed*, 289 F. Supp. 3d 760, 762 (W.D. Va. 2018)); *see also id.* at 13-33 (explaining how the allegations of Complaint state causes of action under the CFPA and the states' consumer protection laws).

[26] *See* Defs.' Resp. 2.

[27] *Id.*

[28] *See W. Va. Coal Workers' Pneumoconiosis Fund v. Bell,* 781 F. App'x 214, 226 (4th Cir. 2019) (recognizing that a failure to respond to an argument "ordinarily result[s] in waiver") (quoting *Alvarez v. Lynch*, 828 F.3d 288, 295

Defendants nonetheless state that the entry of default judgment is improper here for two reasons—both of which are unconvincing and neither of which affect the propriety of the state law causes of action. First, Defendants claim that this case is the product of the Bureau receiving "unconstitutional funding," but as Defendants note, the Court already rejected their motion for judgment on the pleadings on that basis, and Defendants make no further argument on that point in their Response.[29] Second, Defendants claim that Nexus is not a "covered person" under the CFPA under the misconception that Plaintiffs' theory of liability "is based on the subjective belief of consumers."[30] Not so. Plaintiffs allege that Defendants are "covered persons" because Defendants, through their affirmative misrepresentations and omissions, "[have] create[d] the *reasonable* impression in consumers' minds that [they are] offering or providing extensions of credit to pay for consumers' immigration bonds," when that was not the case.[31] Reasonableness is based on an objective, not subjective, standard.[32]

Given the nature of the misrepresentations at issue here, it does not matter whether Defendants are "actually . . . in the business of providing financial products."[33] The opinion in *SEC v. Lauer*[34] is instructive. There, appellants argued that they somehow could evade the federal securities laws because the fictious program that they promoted to investors as "a high-

---

(4th Cir. 2016)); *Nzabandora v. Univ. of Va.*, No. 3:17-cv-00003, 2017 WL 4798920, at *5 (W.D. Va. Oct. 24, 2017) (finding party "concede[d]" issue by "propound[ing] no argument in response"); *East West, LLC v. Rahman*, 873 F. Supp. 2d 721, 728 (E.D. Va. 2012) (finding that defendants conceded an issue that they did not contest) (citing *Kinetic Concepts, Inc. v. Convatec, Inc.*, No. 1:08-cv-00918, 2010 WL 1667285, at *8 (M.D.N.C. Apr. 23, 2010) (collecting cases)).

[29] *See* Defs.' Resp. 3 n.3; *see also* Pls.' Opp'n. to Defs.' Mot. for Recons. or in the Alternative Certification for Interlocutory Appeal, ECF No. 213.

[30] Defs.' Resp. 3 n.3, 21-22.

[31] Opening Br. 14 (quoting Compl. ¶ 19, ECF No. 1) (emphasis added); *see also id.* (citing Compl. ¶¶ 114-17) (allegations of Defendants' misrepresentations and omissions that cause consumers to reasonably believe that Defendants are extending credit to them).

[32] *See CFPB v. ITT Educ. Servs.*, 219 F.Supp.3d 878, 905 n.24 (S.D. Ind. 2015) ("[A]s the Bureau has noted, the use of 'reasonableness' as a proxy for objectivity is hardly an alien feature in the law.") (citing *Barclays Bank PLC v. Franchise Tax Bd. Of Cal.*, 512 U.S. 298, 315-16 (1994)).

[33] Defs.' Resp. 22.

[34] 52 F.3d 667 (7th Cir. 1995).

yield security," was not in fact a security.[35] The Seventh Circuit, in an opinion written by Judge Posner, rejected that argument, recognizing the absurdity of the notion "that the securities laws do not apply to frauds so complete"[36] that investors were reasonably duped into believing that an interest was a security when in actuality it was not. The court reasoned:

> It would be a considerable paradox if the worse the securities fraud, the less applicable the securities laws. [Appellant] overlooks the fact that is the representations made by the promoters, not their actual conduct, that determine whether an interest is an investment contract (or other security). A central purpose of the securities laws is to protect investors and would-be investors in the securities markets against misrepresentations. An elementary form of such misrepresentation is misrepresenting an interest as a security when it is nothing of the kind.[37]

The same is true here. Defendants misrepresented that their product was a loan, *i.e.*, an extension of credit (which it is not), to repay Defendants for the bond they claimed to have paid (which they did not).[38] Defendants knew, but did not correct, the misimpressions caused by their representations.[39] It would undermine the very purpose of the CFPA—which is intended to ensure that markets for financial products "are fair, transparent, and competitive"[40]—if Defendants could elude liability under the statute just because their deception was "so complete" that they did not actually provide the credit product that they represented to offer to consumers.[41]

Plaintiffs' well-pleaded allegations, along with reasonable factual inferences drawn therefrom, set forth claims for which relief may be granted and support the requested relief.

---

[35] *Id.* at 669.

[36] *Id.* at 670.

[37] *Id.* (citations omitted); *see also SEC v. C. M. Joiner Leasing Corp.*, 320 U.S. 344, 353 (1943) ("In the enforcement of an act such as this it is not inappropriate that promoters' offerings be judged as being what they were represented to be.").

[38] *See* Compl. ¶¶ 114-16.

[39] *See id.* ¶ 117.

[40] 12 U.S.C. § 5511(a).

[41] *See Lauer*, 52 F.3d at 670.

## II.     Sanctions under Rule 37 are appropriate, and Defendants should be precluded from offering newly identified evidence and testimony at the evidentiary hearing.

Defendants should not benefit from their discovery abuses and should be precluded from offering previously undisclosed exhibits and testimony. For a period of nearly two years, Defendants engaged in a pattern of "bad faith . . . knowing noncompliance with numerous [discovery] orders of this court."[42] Because discovery was not bifurcated or phased,[43] Defendants' misconduct prevented Plaintiffs from "conduct[ing] effective discovery . . . tak[ing] effective depositions . . . [or] prepar[ing] their case"[44]—not only on liability, but also on damages. Defendants now want to use those discovery abuses to their advantage. In their Response, Defendants attempt to contest the calculation of damages by asserting that it is unclear how many consumers were harmed by their unfair, abusive, and deceptive conduct.[45] But, to the extent that there is any material uncertainty in the records, that situation is entirely attributable to Defendants' discovery abuses.

Making matters worse, Defendants now wish to present previously undisclosed evidence, including testimony from fact and expert witnesses, at the August hearing. As discussed below, Defendants did not properly disclose any of the non-party fact witnesses identified in their Initial Witness and Exhibits Lists in their initial Rule 26(a) disclosures. Defendants were also required to designate expert witnesses and produce the associated disclosures required by Rule 26(a)(2) nearly a year ago, by August 1, 2022.[46] Defendants failed to disclose anything related to expert testimony before August 1, 2022—or before discovery closed on October 1, 2022. Instead,

---

[42] Sanctions Op. 12.
[43] *See* Joint Rule 26(f) Report and Disc. Plan ¶ 5, ECF No. 41.
[44] Sanctions Op. 14.
[45] *See* Defs.' Resp. 18, 24.
[46] First Amendment to the Joint Rule 26(f) Report and Disc. Plan, ECF No. 102.

Defendants first disclosed their intention to present expert testimony and reports in their Initial Witness and Exhibit Lists filed on June 26, 2023.[47] And, to date, Defendants have neither provided the expert reports identified on their exhibit list nor provided any statement of the opinions to be offered by the experts. Defendants claim that their experts will testify that "unjust gains attributable to the practices [alleged in the Complaint] can be calculated to a definite amount, which represents the appropriate amount of damages."[48] But Defendants fail to identify how this calculation is to be conducted, any documents or other evidence upon which it will be based, or the "definite amount" of damages that it will yield. And the issues with Defendants' proposed experts are emblematic of their larger nondisclosures—Plaintiffs are left guessing as to the content of Defendants' evidence and have no reasonable means for rebuttal.

To prevent Defendants from benefiting from their discovery abuses and from engaging in a trial by ambush, Plaintiffs seek the following sanctions under Rule 37 to ensure that Plaintiffs receive a fair opportunity to prove their requested remedies and damages:

    a.    under Rule 37(b)(2)(A)(i), an order directing that it be taken as established for the purposes of this action that Defendants engaged in unfair, abusive, and deceptive misconduct that each Defendant knew, or should have known, was unlawful, and that this misconduct harmed all Libre consumers;

    b.    under Rule 37(c)(1), an order prohibiting Defendants from presenting documentary evidence or witness testimony that was not disclosed as required by Rule 26(a) and (e); and

    c.    under Rule 37(b)(2)(A)(ii), an order prohibiting Defendants from asserting mitigation defenses and from presenting documentary evidence or witness testimony on any matter that was the subject of a discovery request to which Defendants failed to fully respond in violation of the Discovery Order.

---

[47] Defs.' Lists 1-2, 8.
[48] Defs.' Resp. 14-15

These sanctions will necessarily limit Defendants' ability to contest Plaintiffs' calculation of damages and penalties.[49] Rightfully so. As Magistrate Judge Hoppe has observed: "Lawyers and litigants who decide that they will play by [discovery] rules of their own invention will find that the game cannot be won."[50]

### A.    Contested evidentiary issues should be resolved in Plaintiffs' favor.

Under Rule 37(b)(2)(A)(i), contested evidentiary issues relevant to the calculation of damages and penalties are appropriately resolved in Plaintiffs' favor. In particular, the Court may direct that it be taken as established that Defendants engaged in unfair, abusive, and deceptive misconduct that harmed all of Libre's consumers.[51]

In their Response, Defendants concede that, because of their default, the fact of their unfair, abusive, and deceptive acts and practices is taken as established.[52] But Defendants' attempt to contest Plaintiffs' calculation of damages and penalties on the ground that is "wholly unclear" how many consumers were harmed by this unlawful misconduct.[53] Defendants go so far as to assert that, "far from being prevalent or widespread[,]" the unlawful practices alleged in the Complaint were "isolated events which Nexus actively attempted to mitigate."[54] These claims directly contradict allegations in the Complaint that must be taken as true.[55] Moreover, to the extent that there is any material uncertainty as to how many consumers were harmed by

---

[49] *Id.* at 7-8 ("Should the Court accept the Plaintiffs' arguments . . . each would result in mooting the need for a trial…[W]ere the Court to impose additional evidentiary sanctions or alternatively disallow the presentation of expert testimony to contest the valuation or calculation of damages…there would be no need for a trial.").
[50] *Sines v. Kessler*, No. 3:17-cv-00072, 2021 WL 1208924, at *2 (W.D. Va. Mar. 20, 2021) (Hoppe, Mag. J.) (quoting *Nw. Nat'l Ins. Co. v. Baltes*, 15 F.3d 660, 663 (7th Cir. 1994)).
[51] Opening Br. Arg. § I(B)(1).
[52] Defs.' Resp. 4-5.
[53] *Id.* at 24; *see also id.* at 18 (contesting calculation of restitution on the ground that Plaintiffs "have not established that every [consumer] transaction was impossibly tainted by [unlawful] practices").
[54] *Id.* at 15.
[55] Opening Br. Arg. § 1(A).

Defendants' misconduct, that evidentiary issue should be resolved in Plaintiffs' favor under Rule 37(b)(2)(a)(i).

First, Plaintiffs' Complaint alleges that Defendants engaged in pervasive unfair, abusive, and deceptive misconduct.[56] Among other unlawful practices, for years Defendants used a written service agreement that contained deceptive terms and that was written in a language that the "vast majority" of consumers could not understand.[57] This single unlawful practice harmed "thousands" of consumers.[58] The Complaint further alleges that the Entity and Individual Defendants not only failed to take steps to prevent unlawful misconduct, but instead implemented policies that encouraged it.[59] There is no way to reconcile these allegations that must be accepted at this stage with Defendants' new contention that such incidents of unlawful conduct were "isolated events that Nexus actively attempted to mitigate."[60] Defendants should be precluded from adducing any evidence in support of this position, and the Court should resolve the matter in Plaintiffs' favor.

Second, Defendants' discovery misconduct prevented Plaintiffs from acquiring the evidence that they would need to demonstrate exactly how many consumers were injured by each of Defendants' unlawful practices. Defendants withheld evidence of their interactions with consumers, including recordings of telephone calls and copies of text messages and emails;[61]

---

[56] *See id.* at Facts, Arg. § II.
[57] *See* Compl. ¶¶ 31-34, 47-70, 118.
[58] *Id.* ¶¶ 31-34; *see also id.* ¶¶ 80-92 (alleging recurring problems with GPS devices that affected "thousands" of consumers); *id.* ¶¶ 112-13 (alleging that "systemic failure" to accurately account for consumer payments caused Defendants to "regularly" demand payment of debts that were not due); *id.* ¶ 117 (alleging that consumers "routinely" reported being misled about core terms of Defendants' bond securitization program); *id.* ¶ 123 (alleging that Defendants "habitually omit or misrepresent material terms to consumers").
[59] *Id.* ¶¶ 93-100, 121-37.
[60] Defs.' Resp. 15.
[61] *See* Order to Show Cause 22-24 (finding violation of Paragraph 5 of the Discovery Order which required Entity Defendants to produce underlying communications from databases in response to RFP Nos. 11, 14, and 17 and separately recognizing "deficiencies" in Defendants' production of Capsule files).

ESI concerning virtually every aspect of the bond-securitization program, including all internal communications concerning the allegations in the Complaint;[62] and all records of internal audits, reviews, and consumer complaints.[63] Without access to any of this critical evidence, Plaintiffs cannot show exactly how many consumers were harmed by each of Defendants' unfair, abusive, and deceptive acts and practices—including because Plaintiffs had no opportunity to depose witnesses on this issue.[64] Defendants should therefore be precluded from contesting Plaintiffs' calculation of damages and penalties on the ground that it is "unclear" how many consumers were impacted by their unlawful practices, and, again, this evidentiary dispute should be resolved in Plaintiffs' favor under Rule 37(b)(2)(a)(i).

**B.** **Evidence tainted by discovery misconduct, including all witnesses and exhibits included in Defendants' Initial Witness and Exhibit Lists, should be excluded.**

Under Rules 37(c)(1) and 37(b)(2)(a)(ii), Defendants should be precluded from introducing testimony or other evidence that was not properly disclosed during discovery or that concerns a matter that was subject to a discovery demand to which Defendants failed to properly respond.[65] These sanctions would result in the exclusion of all witnesses and exhibits identified in Defendants Initial Witness and Exhibit Lists and would properly narrow the issues for the August hearing.[66]

---

[62] *See id.* 21-22 (finding violation of Paragraph 4 of the Discovery Order which required Entity Defendants to run automated searches to identify and collect ESI responsive to a dozen discovery requests).

[63] *See id.* (finding violation of Paragraph 4 of the Discovery Order which required Defendants to identify and collect ESI in response to RFP No. 20 concerning consumer complaints and RFP No. 21 concerning internal audits).

[64] *See* Opening Br. Arg. § I(B)(1).

[65] *See id.* at Arg. § I(B)(2).

[66] *See Hornady v. Outokumpu Stainless USA*, Civ. Action No. 1:18-00317-JB-N, 2022 WL 5052293, at *6 n.5 (S.D. Ala. Oct. 4, 2022) (following Rule 37 sanctions, damages were only "subject to mathematical calculations.").

1.  **Exclusion of Defendants' exhibits and witnesses under Rule 37(c)(1)**

Rule 37(c)(1) provides that "[I]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." The rule is intended to "prevent[] surprise and prejudice" to one party as a result of another party's failure to provide mandatory disclosures.[67] Further, it is "self-executing" insofar as it mandates that evidence not disclosed in accordance with Rule 26 be excluded,[68] unless the party seeking to introduce such evidence can show that the delay in disclosure was justified or harmless.[69]

Rule 26(a)(1) requires parties to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses,"[70] as well as "all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses."[71] Rule 26(a)(2) further requires the disclosure of the identity of expert witnesses and, for those experts retained for the purpose of litigation, a written expert report.[72] Parties are required to timely supplement their Rule 26 disclosures if they learn that their prior disclosures were incomplete or inaccurate.[73]

---

[67] *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003).
[68] *Beach Mart, Inc. v. L&L Wings, Inc.*, 302 F.R.D. 396, 409 (E.D.N.C. 2014).
[69] *S. States,* 318 F.3d at 596 ("[I]t is the obligation of the party facing sanctions for belated disclosure to show that its failure to comply with Rule 37(c)(1) was either justified or harmless.") (citation omitted).
[70] Fed. R. Civ. P. 26(a)(1)(A)(i).
[71] *Id.* 26(a)(1)(A)(ii).
[72] *Id.* 26(a)(2).
[73] *Id.* 26(e).

As the Court already determined, Defendants willfully refused to participate meaningfully in this litigation and were held in default due to their refusals to abide by the Discovery Order.[74] Yet now, despite this history, Defendants seek to introduce witnesses and evidence that were not disclosed in their mandatory Rule 26 disclosures or any supplementation of those disclosures, were not provided in response to Plaintiffs' relevant discovery requests, and were not provided in connection with the filing of Defendants' Initial Witness and Exhibit Lists. Rule 37(c)(1) prevents them from doing so.

Defendants' Initial Witness and Exhibit Lists identify seventeen documents, two expert witnesses, and twelve fact witnesses that Defendants intend to present at the August hearing. Of the twelve fact witnesses, eleven are either Libre "program participants," family members of program participants, other purported recipients of Libre's services, current or former employees, or a combination thereof.[75] The remaining fact witness is Individual Defendant Ajin.[76]

Defendants did not identify any of the documents listed as exhibits in their initial Rule 26 disclosures. In fact, Defendants' initial disclosures (which were never supplemented) state that Defendants do not have any documents, ESI, or other things in their custody or control that they intend to use to support their claims or defenses.[77] Compounding this problem, Defendants did not produce or otherwise make available to Plaintiffs copies of the identified exhibits when they filed their Witness and Exhibit Lists.[78] Nor did Defendants identify whether they produced the documents in discovery.[79] In response to Plaintiffs' inquiries on this point, Defendants' counsel

---

[74] Sanctions Op. 5.
[75] *See* Defs.' Lists; Scott Decl. Ex. 3 (chart listing witnesses, descriptions, and prior discovery responses to which that information would have been responsive). Three of the current or former employees are also identified as "program participants" or family members of program participants explaining the overlap between these two categories of witnesses.
[76] *See* Defs.' Lists.
[77] Scott Decl. Ex. 2.
[78] *Id*. ¶ 3.
[79] *Id*.

13

noted that they would need to confer with prior counsel about prior productions, and, as for the two expert reports, explained that, "the expert reports were not produced in discovery because they did not exist *and as of yet do not*."[80]

Similar problems plague Defendants' witness disclosures. Defendants failed to identify the two expert witnesses, or to provide the associated disclosures, by August 1, 2022, as required by Rule 26 and the Scheduling Order. Further, of the twelve listed fact witnesses, only one— Individual Defendant Ajin—was identified in Defendants' initial disclosures. Again, Plaintiffs had no opportunity to effectively depose any of these witnesses and have no means for effective cross-examinations.[81]

Defendants cannot credibly claim that their eleventh-hour identification of witnesses and exhibits is either justified or harmless.[82] Defendants have provided no explanation for their failure to disclose witnesses or exhibits during the approximately eighteen months between the filing of this case and the close of discovery in October of last year.[83] This is particularly true of Defendants' expert testimony and reports.[84] Defendants had ample opportunity to retain and timely disclose expert witnesses before August 1, 2022; they simply chose to wait until after

---

[80] *Id*. ¶¶ 3-8, Ex. 1.

[81] *See* Sanctions Op. 14 (finding that Defendants' discovery misconduct prevented Plaintiffs from "tak[ing] effective depositions").

[82] *S. States,* 318 F.3d at 597 (in considering whether belated disclosure is justified or harmless, courts consider "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence").

[83] Based upon statements made in their brief, Defendants appear to have forgotten that they filed initial Rule 26 disclosures. *See* Defs.' Resp. 28 ("Defendants did not disclose supplemental responses to their discovery responses because there were no discovery responses to supplement prior to the entrance of default…"). Plaintiffs also note that the Court has already determined that Defendants' failure to provide discovery was "knowing" and the result of "bad faith." Sanctions Op. 12-13.

[84] *See Donalds v. Ethicon, Inc.*, No. 22-1737, 2023 WL 2446703, at *3 (4th Cir. March 10, 2023). Notably, the Fourth Circuit in *Donalds* refused to allow a supplemental report of an expert under Rule 37(c)(1) because it was not disclosed pursuant to Rule 26, although the party had produced a timely initial expert report under Rule 26. Defendants' conduct here is far more egregious, as they did not identify any expert witnesses or provide any expert reports as part of their Rule 26 disclosures.

14

discovery had closed—and after the Court entered default judgment—to do so.[85] As a result,

Plaintiffs have been prevented from effectively preparing to cross-examine or to rebut

Defendants' witnesses. And Plaintiffs have not seen, or been able to review, Defendants'

proposed documentary evidence, including the two proposed expert reports.

Defendants propose a self-serving solution: to prevent a trial by ambush in August, the

Court should simply cancel the hearing and "reopen discovery."[86] As this Court has observed:

> Over two years after filing their complaint, plaintiffs are without
> meaningful discovery . . . They have been forced to expend a
> tremendous amount of time, effort, and expense in the discovery
> process and motions practice, and defendants' conduct has rendered
> much of that activity essentially *meaningless.*[87]

Canceling the hearing and re-opening discovery would aggravate, not prevent, the prejudice to

Plaintiffs and would continue to delay the resolution of this action—exacerbating the harm from

Defendants' discovery violations.

### 2. Exclusion of testimony or evidence on any matter covered by Plaintiffs' discovery requests

Rule 37(b)(2)(A)(ii) permits the Court to prohibit a party that has disobeyed a discovery

order from "supporting or opposing designated claims or defenses, or from introducing

designated matters in evidence."[88] Here, "prohibit[ing] Defendants under Rule 37 from

introducing matters in evidence that were the subject of . . . [Plaintiffs'] discovery requests to

which Defendants failed to respond despite court orders" is an appropriate sanction "in light of

Defendants' failure to comply with discovery orders and the resulting prejudice to Plaintiff[s]."[89]

---

[85] *See* Defs.' Resp. 27-28 (indicating that experts were retained "on the exceedingly tight timetable necessitated by the August trial date").
[86] *Id.* at 29.
[87] Sanctions Op. 13-14 (quotations and citations omitted).
[88] Fed. R. Civ. P. 37(b)(2)(A)(ii).
[89] *Global Digit. Sols., Inc.*, *v. Grupo Rontan Electro Metalurgica, S.A.*, No. 18-cv-80106, 2020 WL 8816214, at *4 (S.D. Fla. Dec. 1, 2020).

For the Court's ease of reference, Plaintiffs prepared a chart identifying the document requests that were addressed in the Order to Show Cause, to which Defendants failed to respond, and that are relevant to the testimony that Defendants claim that their identified witnesses will provide.[90] As evidenced by the chart, because of the broad scope of the evidentiary matters encompassed by the Discovery Order—and Defendants' admitted failure to comply with the Discovery Order[91]—the practical effect of this sanction will be to prevent Defendants from introducing evidence in support of any alternative "valuation or calculation of damages" or "the availability of mitigation factors" relevant to civil penalties.[92] Again, Defendants withheld information in discovery concerning virtually every aspect of their business, their interactions with consumers, their finances, and the relationships between the Individual and Entity Defendants.[93] On a record replete with prejudice already done to Plaintiffs, it would be patently unfair to allow Defendants now to offer evidence on any of these matters to attempt to mitigate their liability for damages and penalties.

Case law supports this result. For example, the United States District Court for the Northern District of Texas considered a case where, due to the defendants' discovery abuses, the plaintiff was "substantially prejudiced in its ability to prove its damages[,]" which was the only contested issue following default judgment.[94] There, the plaintiff sued the defendants on a breach of contract theory for continuing to use a tradename, the exclusive rights to which had been

---

[90] Scott Decl. Ex 3.

[91] Sanctions Op. 11.

[92] *See* Scott Decl. Ex. 3; *see also* Defs.' Resp. 7-8 (conceding that if the Court grants evidentiary sanctions, "there would be no need for a trial").

[93] *See* Statement Detailing and Itemizing Disc. Dispute, ECF No. 115 (charting information sought by Entity Defendant RFP Nos. 4, 7, 9, 11, 13, 14, 15, 17, 20, 21, 22 and Individual RFP Nos. 3, 5); *see also* Order to Show Cause, ECF No. 181 (detailing discovery misconduct).

[94] *Tandycrafts, Inc. v. Bublitz*, 3:97–CV–1074–T, 2002 WL 324290, at *6 (N.D. Tex. Mar. 4, 1999), report and recommendation adopted, 2002 WL 324290 (N.D. Tex. Feb. 26, 2002).

contractually assigned to the plaintiff.[95] After the defendants failed to contest liability,[96] the magistrate judge determined that the defendants destroyed sales records relevant to damages and, under Rule 37(b), recommended that the defendants "be precluded from contesting the Plaintiff's evidence of damages."[97] The district court adopted that recommendation for the damages hearing, noting that, "Defendants will only be permitted to cross-examine Plaintiff's witnesses, and Defendants will be prohibited from producing any evidence of their own, or impeaching any witness with any document not produced by Defendants in discovery."[98]

Similarly, the United States District Court for the Southern District of Florida considered a breach of contract case that resulted in the entry of default judgment under Rule 37 because "Defendants had willfully disobeyed numerous court orders and, in doing so, had acted in bad faith throughout the litigation."[99] The court then set an evidentiary hearing to determine damages.[100] The plaintiff moved the court under Rule 37(b)(2)(A)(ii) "to limit the scope of the evidence to be presented at the damages hearing due to Defendants' repeated discovery violations throughout this litigation."[101]

Based on "the same bad faith discovery conduct" on which the court relied to enter default judgment, the plaintiff argued that "the Court should preclude Defendants from adducing any testimony on subjects" that were the subject of their discovery requests.[102] Specifically, plaintiff represented that the "discovery requests that Defendants failed to respond to were relevant to the issue of damages in that they requested information" concerning defendants'

---

[95] *Id.* at *1.
[96] *Id.* at *6 n.2.
[97] *Id.* at *6.
[98] *Id.* at *3.
[99] *Global Digit. Sols.,* 2020 WL 8816214, at *1.
[100] *Id.* at *2.
[101] *Id.*
[102] *Id.* at *4.

finances.[103] The court agreed and barred the defendants from presenting evidence on matters covered by the plaintiff's discovery requests.[104] Importantly, the court ruled that both *testimony and other evidence* would be excluded at the hearing.[105]

The same should hold true here. There is no material difference between the defendants' destruction of evidence in *Tandycrafts*, the defendants' bad faith misconduct in *Global Digital Solutions*, and Defendants' abject failure to comply with the Discovery Order in this case. The result is the same: Defendants withheld evidence that Plaintiffs need to effectively cross-examine witnesses and to offer rebuttal evidence concerning Defendants' mitigation defenses. Defendants should therefore be barred from introducing evidence, or adducing testimony, to support these defenses.

For example, according to Defendants' Initial Witness and Exhibit Lists, Defendant Ajin intends to testify in opposition to Plaintiffs' calculation of damages. Mr. Ajin will testify about "his work" with Libre, the work Libre "does for its program participants and the community[,]" and his subjective belief as to the "value" of Libre's services.[106] But Defendants withheld documents in discovery concerning the Individual Defendants' roles and responsibilities at Libre, the "work" Libre does for program participants and the community, and the "value" of their services.[107] This includes all documents concerning Defendant Ajin's role and work at the company, all internal communications involving or concerning Defendant Ajin, all direct evidence of Defendants' interactions with consumers, documents concerning "how the Nexus

---

[103] *Id.*

[104] *Id.*

[105] *Id.* at *5.

[106] Defs.' Lists 3.

[107] Order to Show Cause 21-22 (finding violations of Paragraph 4 of the Discovery Order to failing to identify and collect ESI responsive to a dozen discovery requests); Scott Decl. Ex. 3 at 2-3 (identifying document requests that relate to Mr. Ajin's proposed testimony that Defendants failed to comply with); Third Suppl. Decl. of James. E. Scott in Supp. of Pls.' Mot. for an Order to Show Cause Why Defs. Should Not be Held in Civil Contempt, Sanctions, and Certifications Under 28 U.S.C. § 636(e)(6)(B)(iii) ¶ 27, ECF No. 175.

Immigration Bond Service works and what it provides to consumers," and database files containing extensive financial information.[108]

Further, Defendants intend to argue for unspecified "mitigating factors" at the hearing to contest the assessment of civil money penalties under the CFPA.[109] These factors include, among others, the "financial resources and good faith of the person charged"[110] and the "gravity of the violation[.]"[111] Again, Defendants never produced a single internal communication (relevant to good faith);[112] they withheld direct evidence of their interactions with consumers and records of consumer complaints and internal audits (all relevant to the gravity and prevalence of their misconduct);[113] and they failed to produce database files concerning financial information about the Entity Defendants, or any material documents concerning the financial condition of the Individual Defendants (relevant to the financial resources of Defendants).[114]

Defendants' discovery abuses have left Plaintiffs without the material needed to effectively respond to Defendants' alternative damages calculations (whatever they may be) and to address the mitigating factors that Defendants intend to assert. Accordingly, under Rule 37(b)(2)(A)(ii), Defendants should be prohibited from presenting any evidence or testimony in support of these defenses, as all such evidence was the subject of discovery requests to which Defendants did not respond.

---

[108] *See* Statement Detailing and Itemizing Disc. Dispute, RFP Nos. 11, 13, 14, 17, ECF No. 115; Order to Show Cause 21-24 (finding violations of Paragraphs 4 and 5 of the Discovery Order that encompass these requests).

[109] Defs.' Resp. 21-23.

[110] 12 U.S.C. § 5565(c)(3)(A).

[111] *Id.* § 5565(c)(3)(B).

[112] *See* Order to Show Cause 21-22 (finding violation of Paragraph 4 of the Discovery Order for failing to identify and collect ESI responsive to a dozen discovery requests).

[113] *See id.* at 21-24 (finding violation of Paragraph 4 of the Discovery Order, which required Defendants to identify and collect ESI in response to RFP No. 20 concerning consumer complaints and RFP No. 21 concerning internal audits, and Paragraph 5 of the Discovery Order, which required Entity Defendants to produce underlying communications from databases in response to RFP Nos. 11, 14, and 17).

[114] *See id.* at 22-23, 25 (finding violation of Paragraph 5 of the Discovery Order for, in part, failing to produce information from databases containing financial information, and Paragraph 9 of the Discovery Order for failing to produce information about the financial condition of the Individual Defendants).

C.     **Plaintiffs have not waived their ability to request evidentiary sanctions.**

In their Response, Defendants contend that Plaintiffs waived their ability to request evidentiary sanctions. Defendants contend that Plaintiffs were required to move for evidentiary sanctions before (or possibly at the same time) as moving for default. This argument is without merit. Rule 37 imposes no such requirement. There is nothing in the Rule that requires a litigant to request, or a court to impose, sanctions in any particular order[115]—and Defendants have identified no case to that effect.[116] Instead, Rule 37 grants the Court broad discretion to craft sanctions to "fit[] the case at hand."[117] Here, Plaintiffs requested default based upon Defendants' pervasive discovery misconduct. The Court granted Plaintiffs' request and set a schedule for briefing on the issues of remedies and damages. Plaintiffs then made a timely request for evidentiary sanctions specific to those issues. Importantly, Plaintiffs made this request after Defendants indicated that they needed a two-day hearing to put forth witnesses to testify—which Defendants had not disclosed at the point when Plaintiffs made their earlier sanctions request.[118] There is nothing unusual or improper about Plaintiffs' requested relief, or the sequence in which it was placed before the Court.[119]

III.     **Plaintiffs' proposed restitution is appropriate.**

A.     **Returning money that consumers paid is the appropriate measure of restitution in consumer cases.**

In their Opening Brief, Plaintiffs requested legal restitution or a refund of moneys for Defendants' violations of the CFPA and established that net revenues—the amount consumers

---

[115] *See* Fed. R. Civ. P. 37.
[116] Defs.' Resp. 26-27.
[117] *Taylor v. Specialty Mktg., Inc.*, 985 F.2d 553, 1993 WL 21080, at *2 (4th Cir. 1993) (Table).
[118] Scott Decl. ¶ 15.
[119] *See Global Digit. Sols.*, 2020 WL 8816214, at *4-5 (granting evidentiary sanctions under identical circumstances).

paid minus refunds—is the appropriate measure.[120] Plaintiffs provided evidence showing the amount of money that Defendants illegally collected from consumers, after deducting for refunds.[121] Under the two-step burden-shifting framework, which Defendants do not contest,[122] Plaintiffs more than met their burden to establish that the requested restitution is an accurate calculation of the amount of money that Defendants took from consumers and reasonably approximates Defendants' unjust enrichment. Defendants have submitted no calculations to refute Plaintiffs' requested restitution amount and, in fact, concede that "Defendants will be unable to dispute [Plaintiffs'] revenue[]" figures.[123] Instead, Defendants argue that Plaintiffs' calculation of restitution based on net revenues is not the right way to measure Defendants' unjust enrichment.[124] This argument flies in the face of existing authorities and the stated purposes of the CFPA.

In consumer cases, requiring a defendant to return money paid is the customary measure of restitution.[125] When a defendant takes something directly from the person wronged—such as through a deceptive business transaction—the measure of restitution is straightforward: "Unjust enrichment resulting from a direct payment by the claimant to the recipient ordinarily leads to a prima facie liability in the amount of the payment."[126] Put another way, "[a] defendant who takes something . . . that belongs to the plaintiff *must give it back*."[127]

---

[120] Opening Br. 37-38.
[121] *Id.* at 38-40.
[122] Defs.' Resp. 10.
[123] *Id.* at 8.
[124] *Id.* at 13-15.
[125] *See, e.g., FTC v. Kuykendall*, 371 F.3d 745, 765 (10th Cir. 2004); *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 606 (9th Cir. 1993); *CFPB v. Consumer Advoc. Ctr. Inc.*, No. 19-1998-MWF (KSx) 2023 U.S. Dist. LEXIS 119260, at *40-41 (C.D. Cal. July 7, 2023); *see also* Opening Br. 38 n.198 (citing cases using net revenues or gross receipts).
[126] Restatement (Third) of Restitution and Unjust Enrichment § 49, cmt. c (Am. L. Inst. 2023).
[127] *Schlueter v. Latek*, 683 F.3d 350, 354 (7th Cir. 2012) (emphasis added).

This "give it back" measure is also consistent with the purposes of the CFPA.[128] One of the CFPA's express purposes is to ensure that "consumers are protected from unfair, deceptive, or abusive acts and practices."[129] The CFPA authorizes the Bureau to seek restitution as a remedy to achieve the statute's objectives,[130] and restitution "serves to ensure that consumers are made whole when they have suffered a violation of the statute."[131]

The restitution award that Plaintiffs seek here directly reflects the reasons for requiring restitution in the first place. The requested award would require Defendants to return money they had no legal right to take.[132] It would unwind payments that consumers were induced to make through deceptive misrepresentations. An award of less than the requested restitution amount would leave wrongdoers with incentives to break the law and prevent the return of millions of dollars wrongfully taken from consumers.

Defendants also argue that net revenue is not the appropriate measure of restitution here because Plaintiffs have not established that there is "*widespread material* misrepresentation."[133] Defendants are wrong. Once "a pattern or practice of contemptuous conduct [is proven] at the liability stage by clear and convincing evidence, a presumption arises that allows the district court to use all revenue attributable to the contemptuous conduct—the gross receipts from consumers—as a baseline for assessing [restitution]."[134] Because Defendants have defaulted, Plaintiffs' factual allegations relating to Defendants' liability are taken as true.[135] As explained in

---

[128] *See* Restatement (Third) of Restitution and Unjust Enrichment § 49 cmt. a (Am. L. Inst. 2023) ("In the great majority of cases, the difficulties associated with measuring enrichment can be resolved by bearing in mind that 'restitution should be measured to reflect the substantive law purpose that calls for restitution in the first place.'") (quoting 1 Dobbs, Law of Remedies § 4.5(1), at 629 (2d ed. 1993)).

[129] 12 U.S.C. § 5511(b)(2).

[130] *Id.* § 5565(a)(2)(C).

[131] *CFPB v. CashCall, Inc.*, 35 F.4th 734, 750 (9th Cir. 2022) (citing 12 U.S.C. § 5565(a)(2)).

[132] *See, e.g.*, *Porter v. Warner Holding Co.*, 328 U.S. 395, 402 (1946).

[133] Defs.' Resp. 12.

[134] *Kuykendall*, 371 F.3d at 766.

[135] Opening Br. 8 n.46.

Plaintiffs' Opening Brief, Defendants engaged in pervasive misconduct by, among other things: (a) misrepresenting the nature of the product being offered and that Libre was paying consumers' immigration bonds;[136] (b) requiring consumers to lease a GPS device that oftentimes did not work;[137] (c) threatening consumers with false information if they failed to make their payments;[138] and (d) incentivizing employees to rush through the enrollment process rather than provide adequate training to their employees or implement effective controls.[139] Under these facts, Libre engaged in a systemic practice of unlawful deceptive, unfair, and abusive conduct against all of their consumers. Thus, all revenues are attributable to the contemptuous conduct, and the presumption to use net revenues as the baseline applies.

**B.    Defendants have not met their burden to show that the proper restitution amount is something less than the full amount of money they collected.**

Once Plaintiffs met their burden, the onus shifted to Defendants to show that Plaintiffs' calculation overstated the amount of their unjust enrichment.[140] The risk of any uncertainty in the calculation of consumers' losses falls on the wrongdoer "whose illegal conduct created the uncertainty."[141] Defendants fail to meet this burden and, in fact, make no attempt to do so.

To begin with, Defendants do not meet their burden because Defendants did not submit any evidence to refute Plaintiffs' proper calculation of legal restitution or refunds.[142] Instead,

---

[136] *Id.* at 16-17.
[137] *Id.* at 17-18.
[138] *Id.* at 18-20.
[139] *Id.* at 17, 20.
[140] Opening Br. 38; *see FTC v. Trudeau*, 579 F.3d 754, 773 (7th Cir. 2009); *CashCall*, 35 F.4th at 751.
[141] *FTC v. Febre*, 128 F.3d 530, 535 (7th Cir. 1997) (quoting *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1232 (D.C. Cir. 1989)).
[142] *See FTC v. Inc21.com Corp.*, 745 F. Supp. 2d 975, 1013 (N.D. Cal. 2010), *aff'd*, 475 F. App'x 106 (9th Cir. 2012) (holding that Defendants did not meet their burden when they did not "put forth any competent evidence or alternative calculations establishing the amounts that have been refunded, the customers who received them, or an alternative measure of restitution").

Defendants' arguments are backed by empty promises of some future showing[143] that this Court and the Plaintiffs are asked to take at face value. Defendants declare that consumer loss is *de minimus*[144] and that Defendants' unjust gains "can be calculated to a definite amount"[145] but do not provide any amounts—or for that matter, provide any calculations, figures, formulas, documents, or analysis to reach this definite amount.[146]

Even if Defendants had offered evidence to rebut Plaintiffs' calculations, Defendants' arguments are wrong. Defendants argue for a reduction in the restitution award by claiming that the Court should deduct expenses incurred,[147] that Defendants provided some "value" to consumers,[148] and that Defendants' unlawful practices were "rare and isolated."[149] None of those arguments are legally or factually sound.

First, Defendants' proposal to deduct expenses from revenues is, to be clear, a net profit or loss calculation, and courts have rejected similar attempts to limit restitution for deceptive conduct to net profit or loss. In *FTC v. Febre*, the Seventh Circuit recognized that "[c]ourts have regularly awarded . . . the full amount lost by consumers" and rejected defendants' argument to use defendants' profits as the basis for calculating damages.[150] In *FTC v. Stefanchik*, the Ninth Circuit affirmed a judgment awarding damages based on a calculation of "the full amount of loss incurred by consumers" rather than defendants' profits.[151]  In *CFPB v. Gordon*, the Ninth Circuit held that "equity may require a defendant to restore his victims to the status quo where the loss

---

[143] Defs.' Resp. 13 ("Nexus contends and believes that its testimony will demonstrate"), 14 ("[t]he planned thrust of Nexus's argument and testimony"), 14 ("significant portions of testimony can be presented that will demonstrate"), 16 ("given opportunity Nexus can and will rebut").
[144] *Id.* at 14.
[145] *Id.* at 14-15.
[146] *See id.* at 10-19.
[147] *Id.* at 17.
[148] *Id.*
[149] *Id.* at 15.
[150] 128 F.3d at 536.
[151] 559 F.3d 924, 932 (9th Cir. 2009).

suffered is greater than the defendant's unjust enrichment."[152] Of course, in some cases, a profits-based measure of restitution may be entirely appropriate, such as in patent cases[153] where there was no direct transfer from plaintiff to defendant or where any such amount is difficult to determine. Those circumstances do not apply here.

Second, it is irrelevant to the restitution analysis whether consumers received some value in the transaction[154] or "the main benefit of the service."[155] Where a defendant has deceived consumers into engaging in the transaction in the first place, it would be inappropriate to deduct from restitution the value of the product.[156] The reason for this is that misrepresentations in the sales process lead to a tainted purchasing decision; the fraud in the selling entitles consumers to full refunds, regardless of the value of the thing sold.[157] Here, any value of the services or benefits that Defendants claim consumers may have received has no bearing on the damages arising from Libre's misrepresentations. But for the misrepresentations made by Libre, consumers may well have not entered into a contract with Libre or may have terminated their relationship with Libre upon discovering the deceptive terms that the contracts contained. Moreover, Defendants' Response does not propose a method for calculating the value for its "services," however defined, or provide the Court with any basis to quantify that value.

Finally, Defendants' assertion that their practices were rare are proven wrong by the Complaints' admitted facts. As discussed above,[158] Plaintiffs' facts related to liability establish

---

[152] 819 F.3d 1179, 1196 (9th Cir. 2016) (quoting *Stefanchik*, 559 F.3d at 931) (alterations omitted).
[153] *See Liu v. SEC*, 140 S.Ct. 1936, 1944 (2020).
[154] Defs.' Resp. 17.
[155] *Id.* at 15.
[156] *See Trudeau,* 579 F.3d at 773 n.16; *Kuykendall*, 371 F.3d at 765; *FTC v. Figgie Int'l*, 994 F.2d 595, 606 (9th Cir. 1993) ("Customers who purchased rhinestones sold as diamonds should have the opportunity to get all of their money back. We would not limit their recovery to the difference between what they paid and a fair price for rhinestones.").
[157] *See Figgie*, 994 F.2d at 606.
[158] *Supra* at 10-11, 23.

that Libre systemically engaged in unlawful deceptive, unfair, and abusive conduct against all of their consumers. Thus, "every transaction was impossibly tainted by [their unlawful] practices."[159] Based on those same facts, Plaintiffs have established that all revenues derived by Nexus were wrongful, contrary to Defendants' contention.[160] In addition, Defendants fail to provide any competent evidence to show that any of their clients were not deceived by their misrepresentations. Indeed, courts simply do not allow Defendants' attempt to shift this burden back to Plaintiffs.[161]

For these reasons, Plaintiffs are entitled to restitution in the full amount of the revenue that Defendants received from consumers minus refunds.

**C.     In the alternative, the Court should exclude any irrelevant evidence or testimony for purposes of calculating damages.**

As discussed above, all the evidence that Defendants propose to submit is inadmissible under Rule 26 and Rule 37 due to Defendants' discovery abuses.[162] Alternatively, the Court should exclude Defendants' proposed evidence and testimony for purposes of calculating damages for the separate reason that they are irrelevant, as explained above regarding the proper measure of restitution.[163]

One of Defendants' proposed expert witnesses, Stan V. Smith, and ten of their eleven proposed fact witnesses, intend to testify about the value of Libre's services to consumers and the community. As discussed *supra*,[164] this testimony is irrelevant in calculating monetary damages flowing from the violation of consumer protection statutes. Any value consumers may

---

[159] Defs' Resp. 18.
[160] *Id.*
[161] *Inc21.com*, 745 F. Supp. 2d at 1011 ("The FTC, however, is not required to prove that every individual consumer was injured to justify such an award.") (citing *Stefanchik*, 559 F.3d at 929 n.12).
[162] *Supra* § II.
[163] *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").
[164] *Supra* at 24-26.

have received is immaterial because they did not receive the services that they reasonably believed they would receive in light of Defendants' misrepresentations. Therefore, all testimony and exhibits relating to the value of Defendants' services should be excluded as irrelevant.

Defendants' second proposed expert, Kate Lattner, intends to testify about Defendant Libre's accounting processes and expenditures on behalf of consumers.[165] This testimony is also irrelevant. As detailed above and in the Opening Brief,[166] the appropriate method of determining restitution under the CFPA and state consumer protection statutes is by establishing Defendants' "net revenues"—that is, "the amount consumers paid for the product or service minus refunds and chargebacks."[167] Defendants' expenditures other than refunds to clients and chargebacks are immaterial to this calculation.

Finally, Defendant proposes to have one fact witness, Jordan Saul Escobedo Diaz, testify as to the training and development of Libre employees.[168] Again, this testimony neither bears on the net revenues of Defendant Libre, nor relates to the imposition of statutory penalties under the CFPA or state consumer protection statutes. Accordingly, Defendants' proposed evidence should be excluded for purposes of calculating damages.

### D.    Defendants have conceded that the State consumer protection laws provide an alternative basis for the Court to award restitution.

In their response, Defendants do not contest that the States' consumer protection laws provide an alternative basis for the court to award restitution nor do they contest the States' method of calculating the distribution of restitution. In fact, the Response does not contain a

---

[165] Defs.' Lists 2.
[166] *Supra* § III(A); Opening Br. 37-40.
[167] *CashCall, Inc.*, 35 F.4th at 751 (internal quotations omitted).
[168] Defs.' Lists 4-5.

single argument or citation to the States' consumer protection laws. These issues should be deemed conceded.

## IV.   Plaintiffs' requested civil money penalties are justified.

Defendants argue in their Response that the Court should not impose the full amount of civil money penalties requested by Plaintiffs because Defendants' conduct was not reckless and because mitigating circumstances exist.[169] The facts alleged support a finding that Defendants' conduct was at least reckless, and Defendants have cited no admissible evidence to justify mitigation of the penalty.

### A.   Defendants' conduct justifies the Tier 2 penalty that the Bureau requested.

The Bureau has requested a judgment for civil money penalties of up to $111,135,620 per Defendant because Defendants' reckless behavior justifies Tier 2 penalties.[170] Defendants concede that the Bureau is entitled to penalties for violations of the CFPA.[171] After citing to the relevant case law for recklessness, Defendants seem to argue that their behavior does not reach this standard. Despite deceiving tens of thousands of vulnerable consumers, who Defendants themselves describe as "desperate,"[172] and obtaining their agreement to enter contracts in a language they do not speak, saddling them with large monthly payments under false pretenses about what those payments are for and what would happen if they fail to pay,[173] Defendants assert that their conduct does not justify Tier 2 penalties.[174] To support the contention that their behavior was not reckless, Defendants point to the Ninth Circuit's reasoning in *CFPB v. CashCall* and to the Complaint's description of two different versions of Defendants' contracts

---

[169] Defs.' Resp. 19-21.
[170] Opening Br. 41-42.
[171] Defs.' Resp. 19.
[172] *Id.* at 14.
[173] Compl. ¶¶ 5, 32-35, 38-41, 43-45, 58, 60, 101-141.
[174] Defs.' Resp. 20-21.

with consumers to argue that Defendants "attempted to comply with law and apparently attempted to alter [Nexus's] contracting practices and business practices in line with knowledge [] gained over time."[175] But contrary to the facts that the *CashCall* court considered important to its penalty analysis, Defendants here do not point to any evidence to show that they attempted to comply with the law or consulted with attorneys to structure their program. And the allegations in the Complaint establish exactly the opposite conclusion.[176] Defendants argue that their business practices were "novel," but there is nothing novel about deceiving consumers about business practices or the terms of contracts.

Similarly, Defendants have not proffered any admissible evidence that would warrant mitigation of the appropriate penalties. The Complaint alleges that Defendants' actions created a misimpression in reasonable consumers that Libre was offering them credit.[177] Defendants now argue that because what they offered only seemed like credit but was not actually credit, lower-tiered penalties or mitigation is justified. That argument defies logic and rewards Defendants for engaging in a more complete deception.

Defendants' other arguments for mitigation are similarly unpersuasive. Defendants argue that because they enrolled 46,000 vulnerable consumers who had nowhere else to turn, Libre and Nexus helped consumers and the government by freeing them from detention, even if they did so through deceptive and abusive means.[178] Defendants claim that this should mitigate against higher penalties; Plaintiffs argue that those same facts underscore the recklessness with which Defendants acted to profit from this sizable population of vulnerable consumers.[179]

---

[175] *Id.*
[176] Compl. ¶¶ 93-100, 121-37.
[177] *Id.* ¶¶ 1, 4, 19, 117-120.
[178] Defs.' Resp. 22.
[179] Opening Br. 44.

Defendants also object to the Bureau's discussion of the possible ways that it could have chosen to calculate its requested civil money penalties.[180] In its Opening Brief, the Bureau explained that the requested penalties could have been higher had the Bureau sought penalties for each time that Defendants deceived or abused each of the 46,000 customers during the relevant period.[181] Contrary to Defendants' argument, the CFPA clearly authorizes that kind of award, allowing imposition of a penalty each time a "person . . . recklessly engages in a violation of a Federal consumer financial law."[182] But that is beside the point, because the Bureau has instead sought penalties based on the number of days that Defendants continued to engage in the ongoing violations of the law set forth in the Complaint: December 1, 2013, through the entry of default in this case on May 11, 2023, a total of 3,449 days.[183] Defendants do not contest that the CFPA's penalty provision clearly contemplates that kind of calculation,[184] and courts have regularly awarded penalties based on it.[185]

### B.    Defendants' conduct justifies the States' requested civil penalties.

In their brief, Defendants concede that the allegations in the Complaint establish that the States are entitled to recover civil penalties under their respective consumer protection laws.[186] Defendants additionally do not contest that the amount of the per violation penalties requested by the States is appropriate: $2,500 per violation for Virginia, and $5,000 per violation for both

---

[180] Defs.' Resp. 19.
[181] *See* Opening Br. 42-43.
[182] 12 U.S.C. § 5565(c)(2)(B).
[183] *See* Opening Br. 42-43.
[184] *See* 12 U.S.C. § 5565(c)(2)(B) (authorizing penalty "for each day during which such violation continues").
[185] *See, e.g., CFPB v. CashCall,* 2:15-cv-07522-JFW-RAO, 2023 WL 2009938, at *4-5 (C.D. Cal. Feb. 10, 2023) (calculating penalties on a per-day basis for statutory violations); *CFPB v. Future Income Pmts,* Civ. Act. !8:19-2950-BHH-KFM, 2020 WL 6162947, at *8-9 (D.S.C. May 21, 2020) (report and recommendation calculating penalties on a per-day basis); *CFPB v. Morgan Drexen,* 13-cv-1267-JLS, 2016 WL 6601650, at *3 (C.D. Cal. Mar. 16, 2016) (holding requested penalty amount was within limit set forth by statute and statutory factors supported a at Tier 2 penalty where defendants' bad faith resulted in default sanction).
[186] *See* Defs.' Resp. 24.

Massachusetts and New York.[187] Defendants contest only the States' request that penalties should be awarded at the rate of one violation per consumer.[188] Defendants dismiss this method of calculation as unsupported "speculation." But the States' position is supported both by allegations in the Complaint establishing that Defendants engaged in a systemic and pervasive misconduct, and by Rule 37(b)(2)(a)(i) sanctions.[189]

Defendants' arguments appear to be based upon a basic misunderstanding of how civil penalties are calculated under Virginia, Massachusetts, and New York law.[190] Defendants suggest that the Court is precluded from awarding sanctions using a "one violation per consumer" calculation unless the States can prove that each individual state consumer suffered a violation.[191] Not so.[192] Under the States' consumer protection laws, an award of penalties is permissible so long as it remains below the statutory maximum, determined by multiplying the maximum per violation penalty by the total number of prohibited acts at issue in the case.[193] Below this maximum, the Court retains substantial discretion to set the amount of the penalty.

Here, Defendants engaged in a long list of unfair, abusive, and deceptive practices.[194] As Plaintiffs argued in their Opening Brief, the Complaint fairly supports the conclusion that

---

[187] *Id*.

[188] *Id*.

[189] *See* Opening Br. Arg. § III(C)(2).

[190] Defendants fail to include a single citation to Virginia, Massachusetts, or New York law anywhere in the brief.

[191] Defs.' Resp. 24.

[192] *See, e.g., Commonwealth v. Smoky Mountain Secrets, Inc.*, 41 Va. Cir. 564, 564 (1997) (awarding civil penalties proven by "pattern and practice" without requiring proof of individual violations); *Com. v. AmCan Enters., Inc.*, 47 Mass. App. Ct. 330, 339-40 (1999) (recognizing that award of civil penalties may be based on a reasonable estimate or "approximate average" of the number of violations); *see also Com. v. Fall River Motor Sales*, 409 Mass. 302, 311 (1991) (explaining that Mass. Gen. Laws ch. 93A sets a statutory maximum for civil penalties and "[w]ithin this maximum, a judge possesses discretion to determine the amount of the penalty").

[193] *See* Mass. Gen. Laws Ann. ch. 93A, § 4 (West 2023) (authorizing civil penalties of up to $5,000 for each unfair or deceptive act or practice); N.Y. Gen. Bus. Law § 350-d(a) (authorizing civil penalties of up to $5,000 for each deceptive act in violation of the New York General Business Law); and Va. Code Ann. § 59.1-206(A) (authorizing civil penalty of up to $2,500 for each willful violation of the VCPA).

[194] Defs.' Resp. 4-5 (listing unfair, abusive, and deceptive practices established through allegations in the Complaint).

Defendants frequently committed more than one violation per consumer.[195] The States, however, have based their penalty calculation on a conservative estimate of one violation per consumer. Defendants have provided no reason for the Court to conclude that this calculation yields a penalty that exceeds the relevant statutory maximums.[196]

### V.     Damages and penalties may be assessed without a hearing.

The Court is not required by law to hold a hearing before awarding damages and penalties following default.[197] Defendants have provided no reason to do so. They failed to meaningfully challenge the evidence upon which Plaintiffs rely to support their request for damages and penalties.[198] The testimony and evidence that Defendants propose to offer for an alternative "valuation and calculation of damages" and for "mitigation factors" concerning civil penalties should all be excluded under Rule 37. As such, no trial is needed.[199]

### CONCLUSION

For the foregoing reasons, a final hearing on damages is likely unnecessary, and Plaintiffs respectfully request that Court enter final judgment against Defendants as set forth in Plaintiffs' Opening Brief and reflected in the Proposed Order to be filed on July 25, 2023.

---

[195] Opening Br. 46.

[196] In their Response, Defendants only venture that it is "wholly unclear how many consumers may have suffered any violations of state consumer protection law." Defs.' Resp. 24. Particularly as Defendants are responsible for any uncertainty that exists, *see supra* § II, this assertion is inadequate to make out a challenge to the States' request for penalties. *See Am Can Enters.*, 47 Mass. App. Ct. at 339-40 (recognizing that an estimate of the penalty was appropriate where the lower court concluded that "[t]he defendants refused to produce discovery showing the income realized from Massachusetts consumers."); *cf. People v. Gen. Elec. Co*, 302 A.D.2d 314, 317 (1st Dep't 2003) ("[Defendant], whose deceptive practices caused damages to so many consumers, can now hardly complain that petitioner has not quantified actual damages with exactitude[.]"). Under § 59.1-206(A) of the Virginia Consumer Protection Act (VCPA), the Court has discretion to award Virginia "not more than $2,500" for each of Defendants' VCPA violations and, as in *Smoky Mountain Secrets*, the Court can rely on "pattern and practice" to determine that Defendants willfully violated the VCPA *at least one time* with respect to *each* consumer.

[197] *Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*, 155 F.3d 500, 507 (4th Cir. 1998) (recognizing that "in some circumstances a district court entering a default judgment may award damages ascertainable from the pleadings without holding a hearing" and citing a Rule 37 default judgment case as an example—*Mut. Fed. Sav. and Loan Ass'n v. Richards & Assocs.*, 872 F.2d 88, 91 (4th Cir. 1989)).

[198] *Supra* §§ III-IV.

[199] *See* Defs.' Resp. 7-8 ("Should the Court accept the Plaintiffs' arguments, . . . each would result in mooting the need for a trial . . . .").

Dated: July 21, 2023                Respectfully submitted,

                                    *Attorneys for the Consumer Financial Protection Bureau*

                                    Eric Halperin
                                        *Enforcement Director*
                                    Alusheyi J. Wheeler
                                        *Deputy Enforcement Director*
                                    Kara K. Miller
                                        *Assistant Litigation Deputy*

                                    **Hai Binh T. Nguyen**
                                    California Bar Number: 313503
                                    Leanne E. Hartmann
                                    California Bar Number: 264787
                                    Lee I. Sherman
                                    California Bar Number: 272271
                                    Consumer Financial Protection Bureau
                                    1700 G Street, NW
                                    Washington, DC 20552
                                    Telephone (Nguyen): (202) 435-7251
                                    Telephone (Hartmann): (415) 844-9787
                                    Telephone (Sherman): (202) 374-4575
                                    Email: haibinh.nguyen@cfpb.gov
                                    Email: leanne.hartmann@cfpb.gov
                                    Email: lee.sherman@cfpb.gov


                                    *Attorneys for the Commonwealth of Virginia, ex rel. Jason S.
                                        Miyares, Attorney General*

                                    Jason S. Miyares
                                        *Attorney General*
                                    Charles H. Slemp, III
                                        *Chief Deputy Attorney General*
                                    Steven G. Popps
                                        *Deputy Attorney General*
                                    Richard S. Schweiker, Jr.
                                        *Chief and Senior Assistant Attorney General*

                                    **James E. Scott**
                                    Assistant Attorney General
                                    Virginia Bar Number: 88882
                                    David B. Irvin

Virginia Bar Number: 23927
Unit Manager and Senior Assistant Attorney General
Office of the Attorney General
Consumer Protection Section
202 North Ninth Street
Richmond, VA 23219
Telephone (Irvin): (804) 786-4047
Telephone (Scott): (804) 225-4778
Fax: (804) 786-0122
Email: dirvin@oag.state.va.us
Email: jscott@oag.state.va.us


*Attorneys for the Commonwealth of Massachusetts*

Andrea Campbell
    *Attorney General*

**Jon Burke**
Massachusetts Bar Number: 673472
Assistant Attorney General
Office of the Attorney General
10 Mechanic Street
Worcester, MA 01608
Telephone: (774) 214-4416
Fax: (508) 795-1991
Email: Jonathan.burke@mass.gov


*Attorneys for the People of the State of New York*

LETITIA JAMES
    *Attorney General*

Jane Azia (New York Bar Number: 1539600)
    *Bureau Chief for the Bureau of Consumer Frauds and Protection*
Laura Levine (New York Bar Number: 2337368)
    *Deputy Bureau Chief for the Bureau of Consumer Frauds and Protection*

**Franklin H. Romeo**
New York Bar Number: 4422051
Assistant Attorney General
Office of the Attorney General
28 Liberty Street

New York, NY 10005
Telephone: (212) 416-8320
Fax: (212) 416-6003
Email: franklin.romeo@ag.ny.gov