IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| CONSUMER FINANCIAL ) <br> PROTECTION BUREAU, et al., ) <br>          ) <br>     Plaintiffs, ) <br>          ) <br> v.         ) <br>          ) <br> NEXUS SERVICES, INC., et al., ) <br>          ) <br>     Defendants. ) | Civil Action No. 5:21-cv-00016 <br><br> By: Elizabeth K. Dillon <br>      United States District Judge |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is defendants' motion for reconsideration of the court's May 11, 2023 order entering default judgment on all claims against them and denying their motion for judgment on the pleadings as moot (the "May 11 order") or, in the alternative, for amendment of the May 11 order to certify two legal issues for interlocutory appeal pursuant to 28 U.S.C. 1292(b). (Dkt. No. 205.) For the reasons stated herein, defendants' motion will be denied in full; the court will neither reconsider its May 11 order nor amend it to certify any issues for interlocutory appeal.

I. BACKGROUND

The circumstances of this case are well-known to the parties and are set forth in detail in the court's memorandum opinion on plaintiffs' motion for sanctions. (Dkt. No. 201.) To summarize, in February 2021, the Consumer Financial Protection Bureau ("CFPB"), the Commonwealth of Massachusetts, the People of the State of New York, and the Commonwealth of Virginia (collectively, the "plaintiff-states") filed a 17-count complaint against Nexus Services, Inc. ("Nexus"), Libre by Nexus, Inc. ("Libre") (collectively, the "Entity Defendants"), Micheal Donovan, Richard Moore, and Evan Ajin (collectively, the "Individual Defendants")

1

(Compl., Dkt. No. 1, at 1), alleging that defendants engaged in deceptive, abusive, and fraudulent conduct in their administration of "immigration bonds" for indigent consumers facing deportation. (Compl. 1–3, 26–47.) Counts One through Ten assert violations of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5481, *et seq.*, on behalf of all plaintiffs against different groups of defendants, and Counts Eleven through Seventeen each assert violations of various state consumer protection laws on behalf of the corresponding individual plaintiff-state.

**A. Defendants' Failure to Comply with Court Orders to Produce Discovery**

Throughout the two-and-a-half years since the inception of this litigation, the parties have brought to the court's attention several disputes regarding defendants' failure to produce large swaths of documents and electronically stored information responsive to plaintiffs' discovery requests. On June 8, 2022, U.S. Magistrate Judge Joel C. Hoppe ordered defendants to take certain steps, within certain timeframes, to fully respond to plaintiffs' outstanding requests for production. (Dkt. No. 129.) Put simply, defendants did not comply with that order. As a result, on July 19, 2022, plaintiffs moved the court to sanction defendants for their noncompliance and to order defendants to show cause why they should not be held in civil contempt. (Dkt. No. 139.) On February 7, 2023, Judge Hoppe granted the motion, certified facts demonstrating that each defendant knowingly violated his June 8, 2022 discovery order and that plaintiffs suffered harm as a result, and recommended that the court treat those violations as civil contempt and impose sanctions of $1,000 per day and $500 per day upon the Entity and Individual Defendants, respectively, to coerce compliance. (Dkt. No. 181.) Further, Judge Hoppe ordered each defendant to appear before the undersigned to show cause why they should not be held in civil contempt given the facts so certified. (*Id.*)

The court set a supplemental briefing schedule and noticed a show-cause hearing on this matter for April 17, 2023. (Dkt. No. 187.) In their supplemental brief, plaintiffs maintained that entry of default judgment, not monetary sanctions, was "the most appropriate sanction against all Defendants," and asked in the alternative that the court construe their motion for sanctions as a motion for default judgment. (Dkt. No. 189 at 1–2.) None of the defendants filed a brief in response to the show-cause order before the deadline to do so.

**B. Defendants' Inability to Retain Counsel**

During this same period, defendants also struggled to consistently retain counsel. Indeed, "[i]rreconcilable differences," among other reasons, led both their first and second sets of attorneys to move for withdrawal from representation—only four and eight months after their initial appearances, respectively. (Dkt. Nos. 39–40, 134–36.) At a January 10, 2023 hearing on then-defense counsel's motions to withdraw (Dkt. No. 176), Adam Bowser of ArentFox Schiff LLP (one of the attorney-movants) represented that defendants had not paid their attorneys for their services in over a year, that he was not aware of any plans for defendants to begin paying for past or current legal fees, and that he had "repeated[ly]" but unsuccessfully attempted to help defendants meet their court-ordered discovery obligations. (Dkt. No. 178 at 2.) On January 11, 2023, Judge Hoppe granted the pending motions to withdraw from representation and ordered the Entity Defendants to retain new counsel within 14 days.[1] (*Id.*) When they failed to do so, on February 7, 2023, Judge Hoppe directed the Entity Defendants to show cause why they should not each be sanctioned, "including by entering default judgment," for disobeying the court's

---

[1] Nexus and Libre were required to retain new counsel, as they are artificial entities that can only appear in the federal courts through licensed counsel. *Rowland v. Calif. Men's Colony*, 506 U.S. 194, 202–03 (1993). On the other hand, Donovan, Moore, and Ajin could, if necessary, represent themselves pro se. Accordingly, Judge Hoppe advised the Individual Defendants that they must "personally handle all facets of the litigation related to [the] case in accordance with all rules, court orders, and deadlines" unless and until they retain new counsel. (Dkt. No. 178 at 2–3.)

order to retain counsel, and ordered them to do so in a written response within 14 days—through new counsel.  (Dkt. No. 182.)  Another 14 days passed, and no attorney had appeared on behalf of any of the Entity Defendants to respond to the court's order.

## C.  Show-Cause Hearing and Defendants' Belated Motion for Judgment on the Pleadings

Finally, on April 14 and 16, 2023—just days before the discovery sanctions show-cause hearing and nearly three months after the court-imposed deadline to retain counsel—two new attorneys entered appearances on behalf of all defendants.  (Dkt. Nos. 192, 193.)  On April 17, 2023—the day of the show-cause hearing—defendants filed a motion to continue the hearing. (Dkt. No. 195.)  Specifically, defendants requested that the court enter Judge Hoppe's proposed monetary sanctions immediately but continue any hearing on case-ending sanctions for 90 days to "allow [defendants], and new counsel, time to demonstrate good faith progress and to come into compliance" with the court's orders before deciding whether to enter default judgment. (Dkt. No. 195-1 at 2.)  Of particular significance, defendants' new counsel represented to the court "her intention to come into compliance with the Court's June Discovery Order *as quickly as humanly possible*" and that defendants did not intend "to further delay or to prevaricate and obfuscate their way out of discovery compliance or sanctions."  (*Id.* 3, 8 (emphasis added).)

But obfuscate they did.  Two weeks after the show-cause hearing,[2] defendants filed a motion for judgment on the pleadings (Dkt. No. 198)—long after the deadline for filing dispositive motions provided in the court's scheduling order had expired.  Defendants' sole argument for dismissal on the pleadings was that the CFPB's funding structure violates the Appropriations Clause of the U.S. Constitution and, as a result, that the court must dismiss all

---

[2] The court denied defendants' motion to continue that hearing, recognizing that plaintiffs would be prejudiced by a delay and that defendants had not demonstrated excusable neglect or any other legitimate grounds for a continuance.  (Dkt. No. 196.)

claims in the complaint (including not only those claims brought by the CFPB, but also claims brought exclusively by each of the plaintiff-states), relying extensively upon the Fifth Circuit's decision in *Community Financial Services Ass'n of America, Ltd. v. CFPB* ("*CFSA*"), 51 F.4th 616 (5th Cir. 2022). During the intervening two weeks between the show-cause hearing and the filing of this motion, defendants did not provide either plaintiffs or the court with any indication of progress on compliance with its discovery obligations.[3]

### D. The Court's May 11 Order; Defendants' Motion for Reconsideration or, in the Alternative, for Interlocutory Appeal

On May 11, 2023, the court issued a memorandum opinion and order finding each defendant in civil contempt and entering default judgment against each defendant pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(iv). (Dkt. Nos. 201, 202.) Because the terminating sanctions disposed of all claims in the case, the court also denied defendants' motion for judgment on the pleadings as moot. (Dkt. No. 201 at 16; Dkt. No. 202 at 2.)

Defendants now move for reconsideration of that order pursuant to Federal Rule of Civil Procedure 54(b) or, in the alternative, for amendment of that order to include certification of an interlocutory appeal—pursuant to 28 U.S.C. 1292(b)—on two issues, "(1) whether the Consumer Financial Protection Bureau's funding mechanism is constitutional and (2) if such is unconstitutional whether invalidation of actions taken derived from such unconstitutional funding is appropriate and proper and whether dismissal is required." (Dkt. No. 205 at 1–2.)

---

[3] To the contrary, defendants' long-belated constitutional arguments evince a conspicuous change of tune from the claim just weeks earlier that compliance with the court's discovery orders was their top priority. In their motion to continue the show-cause hearing, defendants acknowledged that "the real question, given the admitted non-compliance" with the court's orders, "[wa]s whether Defendants can and will purge themselves of contempt and comply with outstanding discovery requests." (Dkt. No. 195-1 at 1–2.) Yet weeks later, "the only question remaining [wa]s"—apparently—"what is an appropriate remedy *to be afforded Defendants*," given their position "that the funding mechanism . . . of the CFPB is unconstitutional." (Dkt. No. 198-1 at 2–3 (emphasis added).)

II.  DISCUSSION

A. **Motion for Reconsideration**

Under Federal Rule of Civil Procedure 54(b), "a district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003).  "Nevertheless, the discretion afforded by Rule 54(b) is not limitless," and the Fourth Circuit has "cabined revision pursuant to Rule 54(b) by treating interlocutory rulings as law of the case."  *U.S. Tobacco Coop. Inc. v. Big South Wholesale of Va., LLC*, 899 F.3d 236, 256–57 (4th Cir. 2018) (internal quotation marks and citation omitted).  "Accordingly, a court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." *Id*. (internal quotation marks and citation omitted).

Because defendants' motion does not challenge the court's conclusion that default judgment was an appropriate sanction under Rule 37 in light of the facts certified by Judge Hoppe, the court's review is limited to whether the denial of defendants' motion for judgment on the pleadings as moot warrants reconsideration.  No party asserts that there was a subsequent trial producing substantially different evidence relating to that matter, and defendants have not presented a relevant change in applicable law.[4]  Thus, the only remaining question is whether the

---

[4] Nor could they.  It is true that the Supreme Court has only recently granted certiorari for the first time in a case challenging the constitutionality of the CFPB's funding structure. *See CFPB v. Com. Fin. Services Ass'n.*, --- U.S. ---, 2023 WL 2227658, No. 22-448 (Feb. 27, 2023).  But to be sure, the argument is not novel and has been litigated in (and almost uniformly discarded by) federal courts for nearly a decade.  *See, e.g.*, *CFPB v. Morgan Drexen, Inc*., 60 F. Supp. 3d 1082, 1089 (C.D. Cal. 2014) (concluding that "the structure of the CFPB does not violate the Appropriations Clause" in the first district court decision to address the issue).  And the Fourth Circuit has never considered the question, so nothing in the binding case law prevented defendants from making this argument earlier—for example, when they filed their first dispositive motion on the pleadings over two years ago (*see* Dkt. No. 18 (motion to dismiss for lack of subject matter jurisdiction)).

denial of defendants' motion for judgment on the pleadings as moot was "clear error causing manifest injustice." *U.S. Tobacco Coop. Inc.*, 899 F.3d at 257.  It was not.

The denial of defendants' motion for judgment on the pleadings as moot flowed directly from the court's earlier decision to grant plaintiffs' motion for sanctions and enter default judgment against defendants on all claims.  Electing to address the motions in that order was not itself clear error.  "District courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases."  *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016).  And generally, when multiple motions are presented to the court, "it has discretion to decide the order in which it [will] consider and decide them."  *E.g.*, *Hoptowit v. Spellman*, 753 F.2d 779, 782 (9th Cir. 1985); *see also Ryan v. Gonzales*, 568 U.S. 57, 74 (2013) ("We do not presume that district courts need unsolicited advice from us on how to manage their dockets.").  Here, plaintiffs' motion for sanctions was filed nearly a year before defendants' motion for judgment on the pleadings, and the court acted well within its discretion by deciding those motions in the order in which they were filed.  Further, all parties agree that the Appropriations Clause argument raised in defendants' motion does not go to the court's jurisdiction to hear this case,[5] nor does it raise any other unwaivable threshold issue that the court was obligated to consider before entering default judgment under Rule 37.[6]

In addition, the court was under no obligation to consider defendants' motion at all because it was not timely filed.  Under this court's Local Rules, "[e]xcept for good cause

---

[5] *See* Dkt. No. 213 at 9; Dkt. No. 214 at 1 (clarification by defendants that they "do not and have not argued" that the "unconstitutional funding structure of the [CFPB] either deprives the CFPB of standing or that such is a jurisdictional error").

[6] *See, e.g.*, *CFPB v. CashCall, Inc.*, 35 F.4th 734, 743 (9th Cir. 2022) (declining to consider Appropriations Clause defense to CFPB enforcement action because it did not implicate the court's subject matter jurisdiction, it was raised "months after oral argument" and "more than eight years after th[e] litigation first began," and the defendant had "forfeited that argument twice over" by failing to present it earlier).

shown," no dispositive motion "will be considered unless it is filed and set for hearing, or submitted without hearing, within the time fixed by the Court, or if no time is fixed by the Court, within a reasonable time before the date of trial, thus permitting adequate time for the Court to consider the motion." W.D. Va. Civ. R. 56(a);[7] *see also* Fed. R. Civ. P. 12(c) (motions for judgment on the pleadings must be filed "early enough not to delay trial"). Under the most recent version of the scheduling order, dispositive motions were due on November 11, 2022. (*See* Dkt. No. 113 (setting the deadline for dispositive motions at 80 days before trial, which was then scheduled to begin on January 30, 2023).) Defendants did not file their motion for judgment on the pleadings until May 1, 2023—nearly six months after the original deadline.

In their reply brief, defendants maintain that they timely filed their motion under both the Local and Federal Rules because there was no trial date set at the time of filing. They are mistaken on both fronts. Unlike in the cases cited by defendants, in which no trial date had ever been scheduled before the motion for judgment on the pleadings was filed (*see* Dkt. No. 214 at 3), here the court had previously scheduled a trial date to begin January 30, 2023. The only reason there was no set trial date at the time defendants filed their motion is because the court was forced to cancel that trial due to discovery delays of defendants' own creation. (*See* Dkt. No. 181 at 25 (magistrate judge's determination that "[d]efendants' knowing violations" of the court's discovery order "significantly harmed Plaintiffs' ability to prepare their case for trial in a just, speedy, and inexpensive manner" because they "prevented Plaintiffs from completing discovery in accordance with the scheduling Order and required the Court to cancel the

---

[7] This court has repeatedly refused to entertain dispositive motions filed in violation of this Local Rule. *See, e.g.*, *United States ex rel. VT Milcom, Inc. v. PAT USA, Inc.*, No. 5:16-cv-00007, 2017 WL 3022367, at *1 n.3 (W.D. Va. July 14, 2017) (declining to consider a motion for summary judgment filed two weeks after the deadline to file dispositive motions).

8

[January/February 2023] bench trial").) Defendants cannot now use their own transparent discovery abuses to secure an extension of the court's dispositive motion deadlines. Additionally, it does not follow that the court must find the motion to have been filed "early enough not to delay trial" as a matter of law simply because the trial had not yet been rescheduled. Rather, as the court acknowledged in its sanctions decision, "it is hard to imagine how full briefing, argument, and disposition of a dispositive motion raising a hotly debated constitutional question (as defendants' brief does) would not delay any prospective trial date."[8] (Dkt. No. 201 at 13 n.9.) The court was not obligated to analyze the untimely defenses first before entering default judgment.[9]

To the extent that the court's decision to resolve the motion for sanctions first was not clearly erroneous, so too was the decision to deny the motion for judgment on the pleadings as moot. A matter is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000). Here, the issue presented in defendants' motion—put simply—was whether judgment should be entered in defendants' favor on all claims. However, upon the court's determination that default judgment in plaintiffs' favor under Rule 37 was the appropriate sanction for defendants' contempt of court, defendants lacked a legally cognizable interest in the outcome of

---

[8] Under the deadlines of the current scheduling order, if the court had attempted to set new dates for trial, the mere filing of defendants' motion for judgment on the pleadings would have prevented the trial from beginning any earlier than July 20, 2023—80 days after the motion was filed. And if the court were to deny that motion on its merits (as discussed further below), there is no apparent reason why defendants would refrain from pursuing the same interlocutory appeal that they now seek—along with a stay of further proceedings pending that appeal—given their position that "the CFPB's participation in litigation, the investigation underlying the litigation, and the papers filed in this matter" are all a product of "unconstitutional funding" (Dkt. No. 205-1 at 8). Those matters would undoubtedly "delay trial," *see* Fed. R. Civ. P. 12(c).

[9] Indeed, quite recently the Fourth Circuit upheld a district court's entry of default judgment and striking of defenses as a sanction for discovery abuses, without regard to the order in which those sanctions were imposed. *See Mey v. Phillips*, 71 F.4th 203, 222 (4th Cir. 2023) ("Even if we read the district court's first sanction order as imposing default judgment rather than striking defenses, given the flagrant discovery violations at the center of this case, we would still affirm the district court.").

9

their motion because judgment on the pleadings was no longer available. *See, e.g.*, *Pridgen v. Astrue*, No. 7:08–CV–58–BO, 2009 WL 302173, at *1 (E.D.N.C. Feb. 6, 2009) (denying plaintiff's pending motion for judgment on the pleadings as moot after granting defendant's motion to remand the matter to the agency for re-consideration). At that point, the matter became moot because any decision on defendants' motion—regardless of the merits of defendants' Appropriations Clause argument—would have been "'hypothetical or academic'" and "without any 'practical significance.'" *See In re Scarborough-St. James Corp.*, 554 B.R. 714, 720 (D. Del. 2016) (quoting Black's Law Dictionary 1099 (9th ed. 2009)).

Lastly, even assuming defendants were somehow correct that the court erred in finding the causes raised in the motion for judgment on the pleadings to be moot, such error did not cause manifest injustice. The only corollary of defendants' argument on mootness is that "[t]his case must fail as a matter of law, *assuming the Fifth Circuit [wa]s correct*" in *CFSA*. (Dkt. No. 214 at 9 (emphasis added).) But as the *CFSA* court itself recognized, its decision runs counter to the view of "every [other] court to consider" the validity of the CFPB's statutory funding structure. *See CFSA*, 51 F.4th at 641. It is thus worth noting that, "even if th[is] Court were to consider Defendants' belated [and moot] argument, the Court would need no further briefing on the issue and would follow the line of cases concluding that the CFPB's funding structure does not violate the separation of powers principles contained in the Appropriations Clause of the U.S. Constitution." *CFPB v. CashCall, Inc.*, No. CV 15-7522-JFW (RAOx), 2023 WL 2009938, at *3 (C.D. Ca. Feb. 10, 2023) (citing cases).[10] As such, although the court did not address the

---

[10] *See, e.g.*, *PHH Corp. v. CFPB*, 881 F.3d 75, 95–96 (D.C. Cir. 2018) (en banc) (CFPB's funding structure does not violate the Appropriations Clause of the U.S. Constitution), *abrogated on other grounds by Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020)); *CFPB v. Fair Collections & Outsourcing, Inc.*, No.: GJH-19-2817, 2020 WL 7043847, at *7–9 (D. Md. Nov. 30, 2020) (joining "others that have considered the question in finding the CFPB's funding constitutional" and "declin[ing] to dismiss th[e] case on that basis"); *see also CFPB v. Law Offices of Crystal Moroney, P.C.*, 63 F.4th 174, 182–83 (2d Cir. 2023) (explicitly declining to follow the Fifth Circuit's

10

merits of defendants' constitutional arguments in denying the motion for judgment on the pleadings as moot, "manifest injustice has not resulted because the court would have reached the same decision anyway[]." *See Chandler v. Tech. Coll. of Lowcountry*, No. 9:22-cv-01969-DCN, 2023 WL 3026111, at *4 n.2 (D.S.C. Apr. 20, 2023).

Because defendants have not presented a subsequent trial producing substantially different evidence, a change in applicable law, or a clear error causing manifest injustice, their motion will be denied to the extent it seeks reconsideration of the court's May 11 order.

**B. Motion for Certification of Interlocutory Appeal**

A district court may exercise its discretion to certify an order for interlocutory appeal where (1) the order involves a controlling question of law, as to which (2) there is substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 195 (4th Cir. 2011).

Interlocutory appeals should be granted "sparingly and . . . [§ 1292(b)'s] requirements must be strictly construed." *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989). "Unless *all* of the statutory criteria are satisfied . . . 'the district court may not and should not certify its order . . . for an immediate appeal under section 1292(b).'" *Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 452 (D. Md. 2015) (emphasis in original) (quoting *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000)). "Even if the requirements of section 1292(b) are satisfied, the district court has unfettered discretion to decline to certify an interlocutory appeal if exceptional circumstances are absent." *Manion v. Spectrum Healthcare Res.*, 966 F. Supp. 2d 561, 567 (E.D.N.C. 2013). Put another way, district courts are "permitted, not

---

decision in *CFSA* and finding "no support" for its conclusion or reasoning in either "Supreme Court precedent," "the Constitution's text," or "the history of the Appropriations Clause").

11

required, to certify an interlocutory appeal in certain extraordinary situations." *Bezek v. First Nat'l Bank of Pa.*, Civil No. SAG-17-2902, 2023 WL 2571508, at *2 (D. Md. Mar. 20, 2023). The moving party bears the burden of persuading the court that exceptional circumstances justify a departure from the general policy against piecemeal appeals. *St. John's Episcopal Church v. Cincinnati Ins. Co.*, No. 7:21-CV-001310-BO, 2022 WL 1913010, at *2 (E.D.N.C. June 3, 2022).

"As the text of § 1292(b) indicates," upon an interlocutory appeal, "appellate jurisdiction applies to the *order* certified to the court of appeals," not simply "the particular question formulated by the district court." *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996) (emphasis in original). Consequently, the Fourth Circuit's jurisdiction over any interlocutory appeal of the May 11 order would only extend over "any issue *fairly included within [that] order*." *Smith v. Murphy*, 634 F. App'x 914, 915 (4th Cir. 2015) (emphasis added) (quoting *Yamaha Motor Corp.*, 516 U.S. at 205).

Here, defendants request an interlocutory appeal on two legal issues. But the May 11 order does not include rulings on either of those issues. Nowhere in the memorandum opinion accompanying the order does the court address the first question presented for interlocutory appeal (whether the CFPB's funding structure violates the Appropriations Clause). The second question (whether, assuming the CFPB's funding structure is unconstitutional, all claims against all defendants should be dismissed) was likewise not implicated by the May 11 decision because the court entered case-ending sanctions before it could analyze defendants' underlying constitutional arguments—and thus never considered what recourse would have been appropriate if those arguments were to prevail.

In sum, even if either of the two isolated legal issues presented by defendants met all three of § 1292(b)'s requirements, they nevertheless would not be properly presented for interlocutory review because they are not fairly included in the May 11 order. Thus, the motion for certification of an interlocutory appeal must also be denied.

### III. CONCLUSION AND ORDER

For the foregoing reasons, it is HEREBY ORDERED that defendants' motion for reconsideration or, in the alternative, for certification of an interlocutory appeal (Dkt. No. 205) is DENIED. The clerk is directed to send a copy of this memorandum opinion and order to all counsel of record.

Entered: August 7, 2023.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge