IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| CONSUMER FINANCIAL ) <br> PROTECTION BUREAU, et al., ) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> NEXUS SERVICES, INC., et al., ) <br> ) <br>     Defendants. ) | Civil Action No. 5:21-cv-00016 <br><br> By: Elizabeth K. Dillon <br>     United States District Judge |

**MEMORANDUM OPINION AND ORDER**

This case is set for a two-day evidentiary hearing on August 15 and 16, 2023, for the court to determine the appropriate remedies and/or damages in connection with the entry of default against each defendant. (Dkt. No. 210.) Now pending before the court are plaintiffs' objections to defendants' witness and exhibit lists. (Dkt. No. 223.) For the reasons stated herein, the court will sustain most of plaintiffs' objections and, in so doing, will exclude all of defendants' proposed exhibits and will exclude all of their proposed witnesses, except defendant Evan Ajin. The court will take under advisement plaintiffs' objections regarding the scope of Ajin's testimony.

I. BACKGROUND

**A. Introduction**

The circumstances of this case are well-known to the parties and are set forth in detail in the court's memorandum opinion on plaintiffs' motion for sanctions (Dkt. No. 201) and on defendants' motion for reconsideration of that decision and certification of an interlocutory appeal (Dkt. No. 226). In February 2021, the Consumer Financial Protection Bureau ("CFPB"), the Commonwealth of Massachusetts, the People of the State of New York, and the

1

Commonwealth of Virginia (collectively, the "plaintiff-states") filed a 17-count complaint against Nexus Services, Inc. ("Nexus"), Libre by Nexus, Inc. ("Libre") (collectively, the "Entity Defendants"), Micheal Donovan, Richard Moore, and Evan Ajin (collectively, the "Individual Defendants") (Compl., Dkt. No. 1, at 1), alleging that defendants engaged in deceptive, abusive, and fraudulent conduct in their administration of "immigration bonds" for indigent consumers facing deportation.  (Compl. 1–3, 26–47.)  Counts One through Ten assert violations of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5481, *et seq*., on behalf of all plaintiffs against different groups of defendants, and Counts Eleven through Seventeen each assert violations of various state consumer protection laws on behalf of the corresponding individual plaintiff-state.

**B.  Deadlines for Initial Disclosures and Completion of Discovery**

On May 19, 2021, the parties met by teleconference to discuss matters designated in Federal Rule of Civil Procedure 26(f).  Pursuant to the parties' joint Rule 26(f) discovery plan (Dkt. No. 41), defendants agreed to provide their Rule 26(a) individual disclosures on or before July 22, 2021, which they ultimately did on July 21 (Dkt. No. 222-3).[1]  With respect to disclosure of individuals who were "likely to have discoverable information . . . that [defendants] may use to support [their] claims or defenses," Fed. R. Civ. P. 26(a)(1)(A)(i), defendants listed 19 individuals/entities.  (Dkt. No. 222-3 at 2.)  Most of the individuals/entities disclosed were already named somewhere in the complaint—namely, defendants Michael Donovan, Richard Moore, and Evan Ajin (collectively, the "Individual Defendants"), defendants Nexus Services, Inc. and Libre by Nexus, Inc. (collectively, the "Entity Defendants"), Hai Binh Nguyen (counsel

---

[1] Plaintiffs attached a copy of defendants' initial disclosures to their reply brief in support of their request for damages/appropriate remedies (Dkt. No. 222-3), and counsel for the Commonwealth of Virginia—James E. Scott—swore to its authenticity (Dkt. No. 222-1 ¶ 11).

for the CFPB), Donald R. Gordon (then-counsel for the CFPB), Jeffrey Paul Ehrlich (then the CFPB's Deputy Enforcement Director), the Massachusetts Attorney General's Office (which was representing the Commonwealth of Massachusetts as plaintiff), the New York Attorney General's Office (which was representing the State of New York as plaintiff), Letitia James (the Attorney General of New York), the Virginia Attorney General's Office (which was representing the Commonwealth of Virginia as plaintiff), and Mark R. Herring (then the Attorney General of Virginia). (Dkt. No. 222-3 at 2.) In addition to those names listed in the complaint, defendants disclosed The Legal Aid Justice Center in Charlottesville, Virginia, James H. Boykin, Simon Y. Sandoval-Moshenberg, David Briggman, Vivian Katsantonis, and a "[f]ormer Nexus Client referred to as M.H. in a CFPB Affidavit dated 10/12/17, Hillsborough, Florida." (*Id.*) With respect to the disclosure of copies of "all documents, electronically stored information, and tangible things that [defendants had] in [their] possession, custody, or control and may use to support [their] claims or defenses," Fed. R. Civ. P. 26(a)(1)(A)(ii), defendants indicated that they "have no documents, electronically stored information, and tangible things[] in their possession, custody, or control at this time." (Dkt. No. 222-3 at 3.) To date, defendants have not supplemented those initial disclosures.

On September 13, 2021, the court issued an order scheduling a bench trial for January 30 through February 17, 2023, and setting other key deadlines in this case. (Dkt. No. 66.) On April 18, 2022, the court made several changes to the deadlines in the scheduling order in light of delays caused by several discovery disputes between the parties. (Dkt. No. 113.) As relevant here, under the most current scheduling order, defendants were required to provide their initial expert disclosures on or before August 1, 2022, and the parties were required to complete discovery 95 days before trial—i.e., October 27, 2022. (*Id.*)

### C. Defendants' Failure to Timely Produce Documents or Disclose Witnesses

As the court has previously explained, defendants have largely failed to produce large swaths of documents and electronically stored information responsive to plaintiffs' discovery requests throughout this litigation. On June 8, 2022, U.S. Magistrate Judge Joel C. Hoppe ordered defendants to take certain steps, within certain timeframes, to fully respond to plaintiffs' outstanding requests for production. (Dkt. No. 129.) Put simply, defendants did not comply—and to date have not fully complied—with that order. Consequently, on July 19, 2022, plaintiffs moved the court to sanction defendants for their noncompliance. (Dkt. No. 139.)

The deadline for defendants' expert disclosures (August 1, 2022) came and passed, and defendants had not yet disclosed the identity or written report of any expert. Likewise, the deadline to complete discovery (October 27, 2022) came and passed, and "plaintiffs still ha[d] not received large swaths of responsive ESI" (Dkt. No. 201 at 13), and, as a result, were "effectively unable to 'conduct[] effective discovery or tak[e] effective depositions'" (*id.* (quoting *Projects Mgmt. Co. v. Dyncorp Int'l, LLC*, 734 F.3d 366, 374 (4th Cir. 2013))). As a result, on December 1, 2022 (while the parties were litigating the discovery sanctions motion), the court cancelled the early 2023 bench trial.[2] (Dkt. No. 171; *see also* Dkt. No. 181 at 25 (noting that defendants' discovery violations "significantly harmed Plaintiffs' ability to prepare their case for trial in a just, speedy, and expensive manner").)

---

[2] Defendants have recently argued, in briefing on damages/remedies and on other matters, that because the trial date was cancelled and not immediately rescheduled, the deadlines listed in the scheduling order which had already long passed were somehow vacated and are no longer in effect. (*See, e.g.*, Dkt. No. 214 at 2–3 (arguing that defendants' motion for judgment on the pleadings was timely despite it being filed nearly six months late because the deadline in the scheduling order "w[as] to be based on the *final* trial date" (emphasis added) and "there was no trial date based on which it could be considered untimely under the operative order" at the time it was filed).) The court does not share defendants' understanding of the scheduling order. Rather, because the deadline to—for example—complete discovery had passed when the court cancelled the early 2023 trial date, that deadline would not be reset when the trial date (or, in this case, the date of the damages/remedies hearing) was ultimately rescheduled.

On May 11, 2023, the court issued a memorandum opinion and order finding each defendant in civil contempt and entering default against each defendant pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(iv). (Dkt. Nos. 201, 202.) Because the terminating sanctions resolved only the disposition of plaintiffs' claims and not the extent of the associated relief, the court ordered further proceedings to determine the appropriate damages and/or other remedies in relation to those claims. (Dkt. No. 202 at 2.)

**D. Defendants' Proposed Exhibit and Witness Lists; Plaintiffs' Objections**

The court set the damages/remedies hearing for August 15 and 16, 2023, and ordered the parties to file initial exhibit and witness lists for that hearing on or before June 26, 2023. (Dkt. No. 211.) On June 26, defendants filed their initial exhibit and witness lists. (Dkt. No. 219.) Remarkably, the 14-witness list included two expert witnesses[3] and 11 lay witnesses[4] who defendants had never before disclosed to plaintiffs. The only witness on this list whose identity was previously disclosed was Evan Ajin—one of the Individual Defendants. The exhibit list included a total of 17 documents—two of which were expert reports. Defendants did not provide copies of any of the documents identified as exhibits in this list to plaintiffs. (Dkt. No. 222-1 ¶ 3.)

On June 30, 2023, after receiving defendants' initial witness and exhibit lists, counsel for the CFPB e-mailed defense counsel asking that defendants produce the exhibits identified in their initial list by close of business on July 3 and, if they had previously produced any of these exhibits in discovery, to identify the Bates numbers for those documents. (Dkt. No. 222-1 at 4.)

---

[3] Those witnesses are Dr. Stan V. Smith and Kate Lattner.

[4] Those witnesses are Marvin Antonio Hernandez-Ramirez, Wilmer Yeremy Coc Asig, Otilia Asig Putul, Jordan Saul Escobedo Diaz, Efrain Medina, Penny Riker, Delmis Marlen Dubon Mendez, Inez Moza Moreno, Lilliana Cruz Martinez, Jose Angel Mendoza-Chavarria, and Edinelson Antonio Cuatete-Hernandez.

On the afternoon of July 3, defense counsel responded that he "will get those out to you all as soon as possible" but noted that, "[j]ust for the sake of transparency, with expert reports it will be impossible to get those to you prior to their being drafted, but as soon as they exist they will be provided to you." (*Id.* 3.)[5] Shortly thereafter, counsel for the Commonwealth of Virginia sought clarification: "Just so we're on the same page here, are you telling us [plaintiffs] that the exhibits Defendants identified were not produced in discovery (presumably that is why you indicated that you will get those documents to us as soon as possible)?" (*Id.* 2–3.) Defense counsel responded as follows: "Most certainly the expert reports were not produced in discovery because they did not exist and as of yet do not." (*Id.* 1.) Counsel for defendants also noted his "belief . . . that the other proposed exhibits also would not have been" produced in discovery (but that he needed "to confirm" that with defendants' former counsel, Adam Bowser) and his "belief" that "most of these documents would not have been produced because they would not have existed, ie [sic], expert reports, or would not have been responsive to requests previously made." (*Id.*) To date, defendants have neither provided plaintiffs with copies of their proposed exhibits[6] nor identified whether any of those documents were produced in discovery.

On July 25, 2023, plaintiffs filed objections to the entirety of plaintiffs' proposed exhibit and witness lists. (Dkt. No. 223.)

---

[5] Defendants did not ultimately produce the documents in their exhibit list by close of business on July 3.

[6] The only partial exception is that, on July 24, 2023, defendants provided plaintiffs with an incomplete version of the expert report of one of their proposed experts—Dr. Stan V. Smith. But even that disclosure (to the extent a nonfinal draft is a meaningful disclosure) came nearly a year after the relevant deadline had passed and less than a month before the damages/remedies hearing.

II.  DISCUSSION

A.  **Federal Rules of Civil Procedure 26 and 37**

Federal Rule of Civil Procedure 26(a)(1)(A)(i) provides that a party must provide to its opponent, *without awaiting a discovery request*, the name of each individual likely to have discoverable information that the disclosing party may use to support its claims and a copy—or a description by category and location—of all documents and electronically stored information that the disclosing party has in its possession, custody, or control and may use to support its claims, unless the use would be solely for impeachment. Fed. R. Civ. P. 26(a)(1)(A)(i)–(ii). These initial disclosures must be made within 14 days of the parties' first discovery planning conference unless a different time is set by stipulation or court order.  Fed. R. Civ. P. 26(a)(1)(C).  In addition, the party must also disclose the identity of any witness it may use at trial to present expert testimony, and that disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony.  Fed. R. Civ. P. 26(a)(2)(A), (2)(B).  The party must make these expert disclosures at the times and in the sequence that the court orders.  Fed. R. Civ. P. 26(a)(2)(D).  The party is also required to supplement or correct these initial disclosures *in a timely manner*, if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.  Fed. R. Civ. P. 26(e)(1)(A). Importantly, "[a] party is not excused from making its disclosures because it has not fully investigated the case." Fed. R. Civ. P. 26(a)(1)(E).

If a party fails to provide information or identify a person as required by Rules 26(a) or 26(e), that party is not permitted to use that information or witness at trial unless such failure was

substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). The basic purpose of this exclusionary rule is to prevent "surprise and prejudice to the opposing party." *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003). When assessing whether the nondisclosure was substantially justified or harmless, the court should consider "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non[-]disclosing party's explanation for its failure to disclose the evidence." *Id.* at 597. The party seeking to rely on the improperly disclosed opinion bears the burden of persuasion. *Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014). "The court need not consider every *Southern States* factor, and the court is afforded 'particularly wide latitude to [use its] discretion to issue sanctions under Rule 37(c)(1).'" *Marr v. Abercrombie & Fitch Stores, Inc.*, No. 5:14-cv-00123, 2015 WL 3827326, at *6 (E.D.N.C. June 19, 2015) (quoting *Wilkins*, 751 F.3d at 220–21).

Moreover, if a party fails to obey an order to provide or permit discovery, the court may issue further just orders, including "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(ii).

**B. Plaintiffs' Objections to Defendants' Exhibit List**

Plaintiffs object to every exhibit on defendants' initial list. That list includes the following exhibits:

1. Expert Report of Stan V. Smith, PhD;
2. Expert Report of Kate Lattner;[7]

---

[7] At a recent telephone hearing, defense counsel indicated that defendants ultimately did not retain Ms. Lattner as an expert witness and would not be introducing her testimony or report at trial. Regardless, even if

3. I352 Immigration Bond Document for Marvin Antonio Hernandez-Ramirez;

4. Photos of injuries sustained by Wilmer Yeremy Coc Asig;

5. Nexus Services/Libre by Nexus Standard Operating Procedures;

6. Nexus Services/Libre by Nexus training guide;

7. Medical documentation related to the heart condition of the minor son of Delmis Marlen Dubon Mendez;

8. Court records of conviction and sentence of Penny Riker;

9. Court records regarding the reinstatement of driving privileges of Penny Riker;

10. Birth Certificate of the minor son of Delmis Marlen Dubon Mendez;

11. I352 Immigration Bond Document for Delmis Marlen Dubon Mendez;

12. I352 Immigration Bond Document for Otilia Asig Putul;

13. I352 Immigration Bond Document for Jose Angel Mendoza-Chavarria;

14. I352 Immigration Bond Document for Juan Carlos Moza Moreno;

15. I352 Immigration Bond Document for Jose Cruz;

16. I352 Immigration Bond Document for Edinelson Antonio Cuatete-Hernandez; and

17. I352 Immigration Bond Document for Jose Angel Mendoza-Chavarria.

(Dkt. No. 219 at 8–9.)  Plaintiffs' objections to each exhibit fall into one or more of three categories: (1) defendants have not produced the document in connection with the initial exhibit list; (2) defendants did not produce the document by the relevant discovery deadline despite being required to do so, either affirmatively by the Federal Rules or responsively pursuant to plaintiffs' document requests; or (3) the document is irrelevant for purposes of this hearing.

---

defendants had retained Ms. Lattner and did intend to introduce the report as an exhibit, the court would nevertheless exclude it for the reasons stated below.

For several reasons, all of defendants' proposed exhibits must be excluded. First, defendants did not list any of these documents in their initial disclosures from July 22, 2021, as required by Rule 26(a)(1)(A)(ii), nor did they supplement the initial disclosures to include these documents, as required by Rule 26(e)(1)(A). Moreover, defendants have not disputed that these documents were withheld from discovery. As a result, defendants are presumptively prohibited from using any of these documents at the damages/remedies hearing unless their failure to list them in their initial disclosures (or appropriately supplement those disclosures) was substantially justified or harmless. Neither exception applies here.

Collectively, the *Southern States* factors weigh heavily against permitting defendants to introduce these documents as exhibits at the damages/remedies hearing. First, surprise to plaintiffs upon admission of these documents into evidence would be inevitable; defendants have essentially filibustered against plaintiffs' reasonable requests not only by failing to provide copies of the proposed exhibits to this day, but also not definitively stating whether any of the documents were provided in discovery (though defense counsel indicated his "belief" that "most" of the documents were probably not produced—without specifying which documents might indeed have been produced). Second and relatedly, defendants had the chance to at least attempt to cure that surprise by providing plaintiffs with copies of the proposed exhibits as soon as they resolved to put them on their initial exhibit list.[8] But they have thus far squandered that chance. Third, the court expects that allowing defendants to present these exhibits would significantly disrupt the hearing; plaintiffs will have had little to no opportunity to review the documents for possible evidentiary objections based on (among other grounds) authenticity,

---

[8] Because defendants did not, and have not, provided copies of their proposed exhibits, the court need not (and does not) decide whether doing so as soon as possible (for example, upon filing their initial exhibit list) would have cured any surprise and/or undue prejudice to plaintiffs.

10

hearsay, the witness's personal knowledge, unfair prejudice, and the like. Fourth, although one cannot be certain how exactly defendants intend to use each exhibit, the court sees no reason why defendants would endeavor to introduce 17 documents not already produced in discovery if those documents were not in some sense important to the issues. Moreover, each of the defendants' proposed exhibits relate, in one respect or another, to one of their 12 proposed witnesses. This factor favors defendants and the admission of the evidence; however, it is insufficient to overcome the other factors. Notably, one wonders why the documents, if so important to the damages and remedies issues, were not produced and still have not been produced. This also bolsters plaintiffs' argument that they are prejudiced by the late disclosure of the documents without their production.

Lastly, defendants' principal reason for only recently disclosing these documents was that their counsel only recently entered this case in April 2023—long after discovery had closed—and did the best they could in light of their clients' default and earlier discovery violations. But while the court appreciates their efforts, that does not relieve *the defendants themselves* of their obligation to comply with the Federal Rules and court-ordered discovery deadlines, by and through whomever represents them at the time. Even putting that aside, at the hearing on plaintiffs' objections, defense counsel failed to offer the court a meaningful explanation for why defendants had not yet provided copies of the proposed exhibits despite having identified them on their list. In that regard, defense counsel's recent entry into this case is no excuse.

In sum, the court sustains plaintiffs' objections to the exhibits listed in defendants' initial exhibit list; defendants are prohibited from introducing any of those documents as exhibits at the damages/remedies hearing.[9]

---

[9] Because plaintiffs' objections will be sustained on the ground that defendants failed to include their proposed exhibits in their discovery disclosures without substantial justification, it need not reach whether those

11

### C. Plaintiffs' Objections to Defendants' Witness List

Plaintiffs also object to each of defendants' proposed witnesses on the grounds that (1) defendants neither identified the witness in their initial Rule 26 disclosures sent on July 22, 2021, nor supplemented their initial disclosures to include this witness before discovery closed (thereby preventing plaintiffs from deposing that witness); (2) defendants withheld in discovery documents related to the witness's proposed testimony that was responsive to one or more of plaintiffs' discovery requests; and/or (3) the witness's testimony is irrelevant, in whole or in part, for purposes of this hearing.

For analogous reasons to those discussed earlier with respect to the proposed exhibits, all but one of defendants' 12 proposed witnesses must be excluded. As with the exhibits, most of the witnesses on defendants' list were not included in their initial disclosures from July 22, 2021, as required by Rule 26(a)(1)(A)(i), nor were they included in any supplemental disclosure as required by Rule 26(e)(1)(A). The only proposed witness who was listed in defendants' initial disclosures was Ajin. Thus, defendants are presumptively prohibited from calling any of the listed witnesses (other than Ajin) at the damages/remedies hearing unless their failure to timely disclose them was substantially justified or harmless. Again, as with the exhibits, defendants have not demonstrated either a substantial justification for their nondisclosure or that introducing the testimony of these witnesses would be harmless.

Looking to the first *Southern States* factor, permitting defendants to elicit testimony from any of the witnesses on their list (other than Ajin) would cause even greater surprise to plaintiffs than would admission of the documents. Indeed, defendants' failure to timely disclose the identity of these witnesses prevented plaintiffs from taking any of their depositions before the

---

documents were also withheld despite being responsive to one or more of plaintiffs' discovery requests or whether they are relevant for purposes of the damages/remedies hearing.

close of discovery, thereby inhibiting their preparation for an eventual trial (or, in this case, a hearing on damages/remedies). And as to any experts, defendants still have not provided plaintiffs with a final report, leaving them with even less information. Second, unlike the exhibits, there was no realistic way for defendants to entirely cure the surprise to plaintiffs that would result from calling undisclosed, un-deposed witnesses at the hearing while operating within the confines of the already-delayed schedule because defendants indicated their intent to disclose these new witnesses less than two months before the scheduled damages/remedies hearing.[10] Third, allowing defendants to present these witnesses would disrupt the hearing in the same way as would admitting the undisclosed exhibits. Lastly, defendants' explanation for the late disclosure of the witnesses was essentially the same as for the late disclosure of the exhibits and is insufficient for the same reasons.

Defendants are free to question plaintiffs' witnesses or otherwise cast doubt upon their evidence, but they may not do so through "trial by ambush." (Dkt. No. 222 at 15.) Accordingly, the court will sustain plaintiffs' objections as to 11 of defendants' 12 proposed witnesses. But defendant Ajin *was* identified in defendants' initial disclosures, and plaintiffs do not make that same objection as to him. However, defendants nevertheless object to Ajin's testimony on the grounds that defendants' discovery violations prevented plaintiffs from timely deposing him, that defendants withheld in discovery materials related to his testimony, and that portions of his testimony are irrelevant. The court will take those objections under advisement pending defendants' introduction of Ajin's testimony at the hearing. To the extent that testimony

---

[10] At the hearing on plaintiffs' objections, defendants maintained that they would be amenable to re-opening discovery, postponing the damages/remedies hearing, and permitting plaintiffs to depose their proposed witnesses. But the court is not obliged to rearrange its proceedings and the schedule of this already delayed case so that defendants may rectify their own discovery violations at plaintiffs' further expense.

implicates matters raised in plaintiffs' objections, plaintiffs are free to re-raise those objections, and the court will rule on them considering the testimony proffered.

### III. CONCLUSION AND ORDER

For the foregoing reasons, it is HEREBY ORDERED that plaintiffs' objections to defendants' proposed exhibit and witness lists (Dkt. No. 223) are SUSTAINED IN PART. The court will exclude all 17 of defendants' proposed exhibits and 11 of defendants' 12 proposed witnesses. However, the court TAKES UNDER ADVISEMENT plaintiffs' objections regarding the testimony of Evan Ajin and will issue a ruling depending upon the nature of the testimony offered at the hearing. Of course, defendants will be permitted to cross-examine plaintiffs' witnesses and may be permitted to offer documents into evidence for purposes of impeachment. Defendants will also be permitted to argue that the damages and/or remedies requested by plaintiffs are not permitted by law and/or that plaintiffs' evidence is insufficient.

The clerk is directed to send a copy of this memorandum opinion and order to all counsel of record.

Entered: August 8, 2023.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge