IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION | ) | |
| BUREAU; COMMONWEALTH OF | ) | |
| MASSACHUSETTS; THE PEOPLE OF | ) | |
| THE STATE OF NEW YORK, by | ) | Civil Action No. 5:21-cv-00016 |
| LETITIA JAMES, ATTORNEY | ) | |
| GENERAL OF THE STATE OF NEW | ) | |
| YORK; and COMMONWEALTH OF | ) | By: Elizabeth K. Dillon |
| VIRGINIA, *ex rel.* MARK R. HERRING, | ) | United States District Judge |
| ATTORNEY GENERAL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NEXUS SERVICES, INC.; LIBRE BY | ) | |
| NEXUS, INC.; MICHEAL DONOVAN; | ) | |
| RICHARD MOORE; and EVAN AJIN, | ) | |
| | ) | |
| Defendants. | ) | |

**AMENDED FINAL JUDGMENT ORDER**

Plaintiffs Consumer Financial Protection Bureau (CFPB), the Commonwealth of

Massachusetts (Massachusetts), the People of the State of New York by Letitia James, Attorney

General of the State of New York (NYAG), and the Commonwealth of Virginia (alone Virginia,

together with Massachusetts and the NYAG, the States), commenced this civil action on

February 22, 2021, to obtain permanent injunctive relief, restitution, civil money penalties, and

other relief, from Nexus Services, Inc., Libre by Nexus, Inc., Micheal Donovan, Richard Moore,

and Evan Ajin. (Compl., Dkt. No. 1.) The complaint alleges violations of §§ 1031(a) and

1036(a) of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531(a),

5536(a)(1)(A); §§ 59.1-200(A)(2), (3), (5), and (14) of the Virginia Consumer Protection Act

(VCPA); the Massachusetts Consumer Protection Act (Massachusetts General Laws (M.G.L.),

ch. 93A, § 2), and the Massachusetts Fair Debt Collection Practices Act (M.G.L. c. 93, § 49);

§ 63(12) of the New York Executive Law; and § 349 of the New York General Business Law in

connection with the offering and providing of services related to immigration bonds.

This court entered default judgment against Defendants and directed the parties to brief

the issues of remedies and damages. (Dkt. No. 202). After considering the pleadings,

declarations, exhibits, and the entire record in this matter, and for the additional reasons set forth

in the accompanying memorandum opinion, the court hereby orders and adjudges as set forth

herein.

## I. FINDINGS

1.     This court has jurisdiction over the parties and the subject matter of this action.

2.     The complaint states claims against Defendants upon which relief can be granted.

3.     Defendants' liability has been established as to the claims set forth in Counts 1

through 17 in the complaint, and thus, Plaintiffs are entitled to judgment on those claims by

virtue of Defendants' default.

4.     Sections 1054 and 1055 of the CFPA, 12 U.S.C. §§ 5564 and 5565; §§ 59.1-

203(A), 59.1-205, and 59.1-206(A) of the VCPA; Massachusetts Consumer Protection Act,

M.G.L. ch. 93A, § 4; the New York Executive Law § 63(12); and the New York General

Business Law § 349 empower the court to order injunctive and other equitable relief against

Defendants for violations of the CFPA, VCPA, Massachusetts Consumer Protection Act,

Massachusetts Fair Debt Collection Practices Act, New York Executive Law, and New York

General Business Law, and to award legal restitution, damages, refund of moneys, and

disgorgement of ill-gotten gains resulting from Defendants' unlawful acts and practices, and civil

money penalties for violations of the federal consumer financial laws and the States' laws.

5.      Plaintiffs have established through competent evidence that, during the Relevant Period (as defined below), Defendants collected approximately $230,996,970.84 in fees paid by Affected Consumers (as defined below).  (*See* Am. Stipulation, Dkt. No. 238.)  The CFPB is entitled to relief in the amount of $230,996,970.84 against Defendants as redress for the fees paid by Affected Consumers.  This redress will provide the relief sought by the States for Affected Consumers in their respective states, which includes an estimated $14,021,516.13 for Virginia consumers, an estimated $3,349,456.08 for Massachusetts consumers, and an estimated $13,721,220.07 for New York consumers.

6.      Plaintiffs are entitled to an order imposing a permanent injunction and requiring defendants to pay redress in the amount of $230,996,970.84.

7.      Each Defendant has violated the CFPA, warranting civil money penalties of $111,135,620 from each defendant to the CFPB.  12 U.S.C. § 5565(c)(2)(B).

8.      By reason of Corporate Defendants' (as defined below) violations of § 59.1-200(A)(2), (3), (5), and (14) of the VCPA, Corporate Defendants, jointly and severally, are liable for $7,100,000 in civil money penalties to Virginia.  Va. Code Ann. § 59.1-206(A).

9.      By reason of Defendants' violations of M.G.L. ch. 93A, §§ 2 and 4, Defendants, jointly and severally, are liable for $3,400,000 in civil money penalties to Massachusetts.

10.      By reason of Defendants' violations of the New York General Business Law, Defendants, jointly and severally, are liable for $13,890,000 in civil money penalties to the NYAG.

11.      This action and the relief awarded herein are in addition to, and not in lieu of, other remedies as may be provided by law, including both civil and criminal remedies.

12.      Entry of this Order is in the public interest.

## II. DEFINITIONS

13.    The following definitions apply to this Order:

a.     "**Affected Consumers**" includes any person who entered into an agreement with any Corporate Defendant for Nexus Immigration Bond Services and paid fees for such services between December 1, 2013, and the Effective Date.

b.     "**Assist Others**" or **"Assisting Others"** includes, but is not limited to:

  i.   consulting in any form whatsoever;

  ii.  performing customer-service functions, including but not limited to, receiving or responding to consumer complaints;

  iii. providing names of, or assisting in the generation of, potential customers;

  iv.  performing marketing, billing, or payment services of any kind; and

  v.   acting or serving as an owner, officer, director, manager, or principal of any entity.

c.     "**Clearly and Prominently**" means:

  i.   in textual communications (e.g., printed publications or words displayed on the screen of an electronic device), the disclosure must be of a type size and location sufficiently noticeable for an ordinary consumer to read and comprehend it, in print that contrasts with the background on which it appears;

  ii.  in communications disseminated orally or through audible means (e.g., radio or streaming audio), the disclosure must be delivered in a volume

and cadence sufficient for an ordinary consumer to hear and
comprehend it;

 iii. in communications disseminated through video means (e.g., television
or streaming video), the disclosure must be in writing in a form
consistent with subsection (i), and must appear on the screen for a
duration sufficient for an ordinary consumer to read and comprehend
it;

 iv. in communications made through interactive media such as the
internet, online services, and software, the disclosure must be
unavoidable and presented in a form consistent with subsection (i);

 v. in communications that contain both audio and visual portions, the
disclosure must be presented simultaneously in both the audio and
visual portions of the communication; and

 vi. in all instances, the disclosure must be presented before the consumer
incurs any financial obligation, in an understandable language and
syntax, and with nothing contrary to, inconsistent with, or in
mitigation of the disclosures used in any communication with the
consumer.

d. "**Defendants**" means the Individual Defendants and the Corporate
Defendants, individually, collectively, or in any combination.

 i. "**Corporate Defendants**" means Libre by Nexus, Inc. and Nexus
Services, Inc., individually or collectively, and their successors and
assigns.

    ii.  "**Individual Defendants**" means Micheal Donovan, Richard Moore, and Evan Ajin, individually, collectively, or in any combination, and each of them by any other names by which they might be known.

e.    "**Effective Date**" means the date on which the Order is entered by the Court.

f.    "**Enforcement Director**" means the Assistant Director of the Office of Enforcement for the Consumer Financial Protection Bureau, , or their delegate.

g.    "**Enrollment**" means when a consumer enters into an agreement with Corporate Defendants.

h.    "**Nexus Immigration Bond Services**" means Defendants' services related to immigration bonds described in the Complaint.

i.    "**Plaintiffs**" means the Consumer Financial Protection Bureau, the Commonwealth of Massachusetts, the People of the State of New York by Letitia James, Attorney General of the State of New York, and the Commonwealth of Virginia, collectively, or in any combination.

j.    "**Related Consumer Action**" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against any Defendant based on substantially the same facts as described in the Complaint.

### III.  ORDER

**It is hereby ORDERED as follows:**

**A.  Conduct Provisions**

    **1.  Prohibition on deceptive practices**

14.     Defendants and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them who receive actual notice of this Order, whether acting directly or indirectly, shall be permanently restrained and enjoined from:

a.     violating sections 1031(a) and 1036(a)(1)(B), (a)(3) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B), (a)(3);

b.     violating M.G.L. c. 93A, § 2 and M.G.L. c. 93, § 49;

c.     violating section 63(12) of the New York Executive Law, and section 349 of the New York General Business Law;

d.      in connection with the advertising, marketing, promotion, offering for sale, sale, or provision of Nexus Immigration Bond Services, misrepresenting, or Assisting Others in misrepresenting, expressly or impliedly, the terms or nature of services provided, including:

i.    whether payments are applied to the consumers' immigration bonds;

ii.   whether Corporate Defendants are affiliated with U.S. Immigration and Customs Enforcement (ICE) or any other governmental body or agency;

iii.  the nature, limitations, or conditions of the provision of legal services to consumers;

iv.   the consequences of non-payment of fees or non-compliance with the terms of Defendants' agreements with consumers, including misrepresentations regarding selling consumers' debt;

v.    whether Defendants furnish information to credit reporting agencies;

      vi.   whether Defendants bring debt-collection actions against consumers; or

     vii.   any other fact material to consumers concerning Nexus Immigration Bond Services, such as: the total costs; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

15.     Pursuant to § 59.1-203(A) of the VCPA, Corporate Defendants, their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them who receive actual notice of this Order, whether acting directly or indirectly, shall be permanently restrained and enjoined from violating § 59.1-200(A) of the VCPA and from engaging in the acts set forth in ¶ 14(d)(i)–(vii) of this Order.

**2. Prohibitions regarding GPS devices**

16.     Defendants and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them who receive actual notice of this Order, whether acting directly or indirectly, shall be permanently restrained and enjoined from:

      a.   requiring a consumer who enters into an agreement with Defendants for Nexus Immigration Bond Services to wear a GPS device;

      b.   using GPS devices with any consumers regardless of the date on which they entered into an agreement with Defendants; and

      c.   collecting payments related to GPS monitoring.

**3. Prohibition on collecting or retaining monies**

17.     Defendants and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them who receive actual notice of this Order, whether acting directly or indirectly, shall be permanently restrained and enjoined from:

      a.     Collecting, or attempting to collect, any monies in connection with an agreement with any Corporate Defendant for Nexus Immigration Bond Services between December 1, 2013, and the Effective Date; and

      b.     retaining money owed to consumers.

## B.  Affirmative Requirements

### 1.  Required disclosures relating to consumer agreements

18.     Defendants must Clearly and Prominently disclose in writing to each consumer before Enrollment, in a language accessible to the consumer:

      a.     the full and complete terms of any product or service to be provided to the consumer;

      b.     all fees that Libre may charge in connection with that product or service, the circumstances in which those fees may be charged, and whether those fees are refundable or non-refundable;

      c.     that Libre will not report consumers to law enforcement for non-payment of fees or non-compliance with the contract, and that non-payment or non-compliance will not have any impact on a consumer's immigration status or associated immigration proceeding; and

      d.     that Libre has no authority to cause any consumer to be returned to immigration detention, to be deported, or to otherwise suffer any negative

consequence associated with their immigration status or associated immigration proceedings.

### 2. Customer information

19.    Defendants, and their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, may not:

    a.    disclose, use, or benefit from customer information, including names, addresses, telephone numbers, email addresses, social security numbers, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that Defendants obtained before the Effective Date in connection with the offering and provision of Nexus Immigration Bond Services; and

    b.    attempt to collect, sell, assign, or otherwise transfer any right to collect payment from any consumer who entered into an agreement for Nexus Immigration Bond Services with Defendants.

*However*, customer information may be disclosed if requested by a government agency or required by law, regulation, or court order.

### C.  Monetary Provisions

#### 1.  Order to Pay Redress

20.    A judgment for monetary relief is entered in favor of Plaintiffs and against Defendants, jointly and severally, in the amount of $230,996,970.84.

21.    Within 10 days of the Effective Date, Defendants must pay to Plaintiffs, by wire transfer to Plaintiffs or to Plaintiffs' agents, and according to Plaintiffs' wiring instructions, a

total of $230,996,970.84 in full satisfaction of the judgment as ordered in Paragraph 20 of this

Section.

22.     Any funds received by Plaintiffs in satisfaction of this judgment will be deposited

into a fund or funds administered by the CFPB, Massachusetts, Virginia, or NYAG, or any

Plaintiff's agent according to applicable statutes and regulations to be used for redress for

Affected Consumers, including, but not limited to, refund of moneys, legal restitution, damages

or other monetary relief, and for any attendant expenses for the administration of any such

redress.

23.     If the CFPB determines, in its sole discretion, that providing redress to consumers

is wholly or partially impracticable or if funds remain after the administration of redress is

completed, the CFPB will deposit any remaining funds in the U.S. Treasury.  Defendants will

have no right to challenge the CFPB's choice of remedies under this Section and will have no

right to contest the manner of distribution chosen by the CFPB.

24.     If Virginia determines, in its sole discretion, that providing redress to consumers

is wholly or partially impracticable or if funds remain after the administration of redress is

completed, Virginia will deposit any remaining funds into the Virginia Attorney General's

Regulatory, Consumer Advocacy, Litigation and Enforcement Revolving Trust Fund to be used

by the Attorney General for consumer protection, education, or enforcement purposes, or for

other purposes permitted by law.  Defendants will have no right to challenge Virginia's choice of

remedies under this Section and will have no right to contest the manner of distribution chosen

by Virginia.

25.     If Massachusetts determines, in its sole discretion, that providing redress to

consumers is wholly or partially impracticable or if funds remain after the administration of

redress is completed, any remaining funds shall escheat to Massachusetts, by and through the Office of the Attorney General, and shall be deposited or disposed of by the Office of the Attorney General, at the discretion of the Attorney General, as permitted by law. Defendants will have no right to challenge Massachusetts's choice of remedies under this Section and will have no right to contest the manner of distribution chosen by Massachusetts.

26. If NYAG determines, in its sole discretion, that providing redress to consumers is wholly or partially impracticable or if funds remain after the administration of redress is completed, NYAG will retain any remaining funds. Defendants will have no right to challenge NYAG's choice of remedies under this Section and will have no right to contest the manner of distribution chosen by NYAG.

27. Payment of redress to any Affected Consumer under this Order may not be conditioned on that Affected Consumer waiving any right.

**2. Order to pay civil money penalty to the CFPB**

28. Under Section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law alleged in the Complaint and continuing until the Effective Date, each Defendant must pay a civil money penalty of $111,135,620 to the CFPB.

29. Within 10 days of the Effective Date, Defendants must pay the civil money penalty by wire transfer to the CFPB or to the CFPB's agent in compliance with the CFPB's wiring instructions.

30. The civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of the CFPB as required by Section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

31.     Defendants, for all purposes, must treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes.  Regardless of how the CFPB ultimately uses those funds, Defendants may not:

      a.     claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

      b.     seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

32.     The civil penalty imposed by the Order represents a civil penalty owed to the United States Government, is not compensation for actual pecuniary loss, and, thus, as to any Individual Defendant, it is not subject to discharge under the Bankruptcy Code under 11 U.S.C. § 523(a)(7).

### 3. Order to pay civil money penalty to Virginia

33.     Pursuant to § 59.1-206(A) of the VCPA, by reason of the violations of the VCPA alleged in the Complaint, Corporate Defendants are jointly and severally liable for, and must pay to Virginia, a civil money penalty of $7,100,000.

34.      Within 10 days of the Effective Date, Corporate Defendants must pay the civil money penalty by wire transfer to Virginia in compliance with Virginia's wire transfer instructions.

35.     The civil money penalty ordered to be paid pursuant to the VCPA will be deposited into the Virginia Attorney General's Regulatory, Consumer Advocacy, Litigation and Enforcement Revolving Trust Fund to be used by the Attorney General for consumer protection, education, or enforcement purposes, or other purposes permitted by law.

36.     Corporate Defendants must treat the civil penalty paid under this Order as a penalty paid to the government for all purposes.  Regardless of how the Office of the Attorney General ultimately uses those funds, Corporate Defendants may not:

a.      claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

b.      seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

### 4. Order to pay civil money penalty to Massachusetts

37.     Under M.G.L. c. 93A, § 4, by reason of the violations of law alleged in the Complaint and continuing until the Effective Date, Defendants must pay a civil penalty of $3,400,000.00 to Massachusetts.  Defendants shall be jointly and severally liable for payment of this civil penalty.

38.     Within 10 days of the Effective Date, Defendants must pay the civil penalty by wire transfer to Massachusetts pursuant to wiring instructions provided by the Office of the Attorney General.

39.     The civil penalty paid under this Order will be deposited or disposed of by the Office of the Attorney General, at the discretion of the Attorney General, as permitted by law.

40.     Defendants must treat the civil penalty paid under this Order as a penalty paid to the government for all purposes.  Regardless of how the Office of the Attorney General ultimately uses those funds, Defendants may not:

a.      claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

      b.     seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

41.     The civil penalty imposed by the Order represents a civil penalty owed to Massachusetts, is not compensation for actual pecuniary loss, and, thus, as to any Individual Defendant, it is not subject to discharge under the Bankruptcy Code under 11 U.S.C. § 523(a)(7).

**5. Order to pay civil money penalty to New York**

42.     Under General Business Law § 350-d, by reason of the violations of General Business Law § 349 alleged in the Complaint and continuing until the Effective Date, Defendants must pay a civil penalty of $13,890,000 to New York.  Defendants shall be jointly and severally liable for payment of this civil penalty.

43.     Within 10 days of the Effective Date, Defendants must pay the civil penalty by wire transfer to New York pursuant to wiring instructions provided by the NYAG.

44.     The civil penalty paid under this Order will be deposited or disposed of by the NYAG, at the discretion of the Attorney General, as permitted by law.

45.     Defendants must treat the civil penalty paid under this Order as a penalty paid to the government for all purposes.  Regardless of how the NYAG ultimately uses those funds, Defendants may not:

      a.     claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

      b.     seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

46.     The civil penalty imposed by the Order represents a civil penalty owed to New York, is not compensation for actual pecuniary loss, and, thus, as to any Individual Defendant, it is not subject to discharge under the Bankruptcy Code under 11 U.S.C. § 523(a)(7).

**6.  Additional monetary provisions**

47.     In the event of any default on Defendants' obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

48.     Defendants relinquish all dominion, control, and title to the funds paid under this Order to the fullest extent permitted by law and no part of the funds may be returned to Defendants.

49.     The facts alleged in the Complaint will be taken as true and be given collateral estoppel effect, without further proof, in any proceeding based on the entry of the Order, or in any subsequent civil litigation by or on behalf of any Plaintiff, including in a proceeding to enforce its rights to any payment or monetary judgment under this Order, such as a non-dischargeability complaint in any bankruptcy case.

50.     The facts alleged in the Complaint establish all elements necessary to sustain an action by any Plaintiff under Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and for such purposes this Order will have collateral estoppel effect against each Defendant, even in such Defendant's capacity as debtor-in-possession.

51.     Under 31 U.S.C. § 7701, each Defendant, unless it already has done so, must furnish to Plaintiffs its taxpayer-identification numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

52.     Within 30 days of the entry of a final judgment, order, or settlement in a Related

Consumer Action, Defendants must notify the Enforcement Director, Virginia, Massachusetts,

and the NYAG of the final judgment, order, or settlement in writing.  That notification must

indicate the amount of redress, if any, that Defendants paid or is required to pay to consumers

and describe the consumers or classes of consumers to whom that redress has been or will be

paid.  To preserve the deterrent effect of the civil money penalty in any Related Consumer

Action, Defendants may not argue that Defendants are entitled to, nor may Defendants benefit

by, any offset or reduction of any monetary remedies imposed in the Related Consumer Action

because of the civil money penalty paid in this action or because of any payment that the CFPB

makes from the Civil Penalty Fund.  If the court in any Related Consumer Action offsets or

otherwise reduces the amount of compensatory monetary remedies imposed against Defendants

based on the civil money penalty paid in this action or based on any payment that the CFPB

makes from the Civil Penalty Fund, Defendants must, within 30 days after entry of a final order

granting such offset or reduction, notify the CFPB and pay the amount of the offset or reduction

to the U.S. Treasury.  Such a payment will not be considered an additional civil money penalty

and will not change the amount of the civil money penalty imposed in this action.

53.     Upon written request of a representative of the CFPB, Virginia, Massachusetts, or

the NYAG, any consumer reporting agency must furnish consumer reports to the requesting

Plaintiff concerning any Individual Defendant under Section 604(a)(1) of the Fair Credit

Reporting Act, 15 U.S.C.§ 168l b(a)(1), which may be used for purposes of collecting and

reporting on any delinquent amount arising out of this Order.

**D.  Compliance Provisions**

   **1.  Reporting requirements**

54. Defendants must notify the CFPB, Virginia, Massachusetts, and the NYAG, of any development that may affect compliance obligations arising under this Order, including but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against a Defendant; or a change in a Defendant's name or address. Defendants must provide this notice at least 30 days before the development, but in any case no later than 14 days after the development, whichever is sooner.

55. Within 7 days of the Effective Date, each Defendant must:

a.  designate at least one telephone number and email, physical, and postal addresses as points of contact that Plaintiffs may use to communicate with Defendant;

b.  identify all businesses for which Defendant is the majority owner, or that Defendant directly or indirectly controls, by all of their names, telephone numbers, and physical, postal, email, and Internet addresses;

c.  describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales.

d.  identify each Individual Defendant's telephone numbers and all email, Internet, physical, and postal addresses, including all residences; and

e.  describe in detail any Individual Defendant's involvement in any business for which he performs services in any capacity or which he wholly or partially owns, including Individual Defendant's title, role, responsibilities, participation, authority, control, and ownership.

56.     Defendants must report any change in the information required to be submitted under Paragraph 57 at least 30 days before the change or as soon as practicable after learning about the change, whichever is sooner.

57.     One year after the Effective Date, each Defendant must submit to the Enforcement Director an accurate written compliance progress report (Compliance Report), sworn to under penalty of perjury, which, at a minimum:

        a.      describes the steps that each Corporate Defendant has taken to reasonably assess whether such Defendant is complying with each applicable paragraph and subparagraph of this Order;

        b.      describes in detail whether and how each Defendant has complied with each appliable paragraph and subparagraph of this Order, including the manner of verification of such compliance and any corrective actions taken to remedy potential noncompliance with the applicable requirement, paragraph, or subparagraph; and

        c.      attaches a copy of each Order Acknowledgment obtained under Section D(2) of this Order unless previously submitted to the Plaintiffs.

**2. Order distribution and acknowledgment**

58.     Within 7 days of the Effective Date, each Defendant must submit to the Enforcement Director, Virginia, Massachusetts, and the NYAG, an acknowledgment of receipt of this Order, sworn under penalty of perjury.

59.     Within 30 days of the Effective Date, Corporate Defendants, and Individual Defendants, for any business for which they are the majority owner or which they directly or indirectly control, must deliver a copy of this Order to each of its executive officers, as well as to

any managers, employees, service providers, or other agents and representatives who have responsibilities related to the subject matter of the Order.

60. For 10 years from the Effective Date, Corporate Defendants and Individual Defendants, for any business for which they are the majority owner or which they directly or indirectly control, must deliver a copy of this Order to any business entity resulting from any change in structure referred to in Section D(1) of this Order, any future executive officers, as well as to any managers, employees, Service Providers, or other agents and representatives who will have responsibilities related to the subject matter of the Order before they assume their responsibilities.

61. Defendants must secure a signed and dated statement acknowledging receipt of a copy of this Order, within 30 days of delivery, from all persons receiving a copy of this Order under this Section.

62. Ninety days from the Effective Date, each Defendant must submit to the Plaintiffs a list of all persons and their titles to whom this Order was delivered under Paragraphs 59 and 60 and a copy of all signed and dated statements acknowledging of receipt of this Order under Paragraph 61.

### 3. Recordkeeping

63. Defendants (including any business for which any Individual Defendant, individually or collectively with any other Defendants, is a majority owner or which he directly or indirectly controls) must create, for at least 10 years from the Effective Date, all documents and records necessary to demonstrate full compliance with each provision of this Order, including all submissions to Plaintiffs. Defendants must retain these documents for at least 10 years after creation and make them available to the CFPB, Virginia, Massachusetts, or the

NYAG upon request.

64.     Defendants (including any business for which any Individual Defendant, individually or collectively with any other Defendants, is a majority owner or which he directly or indirectly controls) must maintain, for at least 10 years from the Effective Date or 10 years after creation, whichever is longer:

> a.      copies of all sales scripts; training materials; advertisements; websites; and other marketing materials relating to the subject of this Order, including any such materials used by a third party on a Defendant's behalf;
>
> b.      for each individual Affected Consumer: the consumer's name, address, phone number, email address; amount of any payments the consumer paid; a copy of any contracts the consumer signed; and a copy of any promotional or welcome materials provided;
>
> c.      accounting records showing the gross and net revenues from all goods or services sold;
>
> d.      all consumer complaints and refund requests by Affected Consumers (whether received directly or indirectly, such as through a third party), and any responses to those complaints or requests; and
>
> e.      records showing, for each employee providing Nexus Immigration Bond Services, that person's name; telephone number; email, physical, and postal address; job title or position; dates of service; and, if applicable, the reason for termination;

65.     All documents and records must be maintained in their original electronic format. Data should be centralized, and maintained in such a way that access, retrieval, auditing and production are not hindered.

66.     Defendants must make these materials available to the CFPB, Virginia, Massachusetts, or the NYAG upon request.

### 4. Notices

67.     Unless otherwise directed in writing by Plaintiffs, Defendants must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, "*CFPB v. Libre by Nexus, Inc., et al.*, Case No. 5:21-cv-00016," and send them by overnight courier or first-class mail to the below addresses and contemporaneously by email to:

  a.  **CFPB**

      Enforcement_Compliance@cfpb.gov

      ATTN: Assistant Director for Enforcement

      Consumer Financial Protection Bureau

      Office of Enforcement

  b.  **Virginia**

      Assistant Attorney General James E. Scott (or in his absence, to the person holding the title of Chief, Consumer Protection Section)

      Office of the Attorney General

      Consumer Protection Section

      202 North Ninth Street

      Richmond, VA 23219

      jscott@oag.state.va.us

  c.  **Massachusetts**

      Office of the Attorney General

      Attn: Chief, Civil Rights Division

      One Ashburton Place

Boston, MA 02108

d. **NYAG**

Assistant Attorney General Franklin Romeo (or in his absence, to the person

holding the title of Bureau Chief, Consumer Frauds & Protection Bureau)

Consumer Frauds & Protection Bureau

Office of the New York Attorney General

28 Liberty Street

New York, NY 10005

Franklin.Romeo@ag.ny.gov

## 5. Cooperation with Plaintiffs

68.     Defendants must cooperate fully to help Plaintiffs determine the identity and
location of, and the amount of injury sustained by, each Affected Consumer.  Defendants must
provide such information in its or its agents' possession or control within 14 days of receiving a
written request from Plaintiffs.

69.     Defendants must cooperate fully with Plaintiffs in this matter and in any
investigation or litigation related to or associated with the conduct described in the Complaint.
Defendants must provide truthful and complete information, evidence, and testimony.  Individual
Defendants must appear and Corporate Defendants must cause Corporate Defendants' officers,
employees, representatives, or agents to appear for interviews, discovery, hearings, trials, and
any other proceedings that Plaintiffs may reasonably request upon 10 days' written notice, or
other reasonable notice, at such places and times as Plaintiffs may designate, without the service
of compulsory process.

70.     Within 30 days of the Effective Date, Defendants must complete all steps necessary to register Corporate Defendants for the CFPB's Company Portal, including providing the information required at www.consumerfinance.gov/company-signup and in the CFPB's Company Portal Boarding Form (OMB No. 3170-0054).  Defendants, in connection with responding to consumer complaints and inquiries, whether acting directly or indirectly, must comply with the requirements that §§1034(b) and (c) of the CFPA, 12 U.S.C. §§ 5534(b) and (c), imposes on covered persons subject to supervision and primary enforcement by the CFPB pursuant to section 1025 of the CFPA, 12 U.S.C. § 5515.

**6.  Compliance monitoring**

71.     Within 14 days of receipt of a written request from the CFPB, Virginia, Massachusetts, or the NYAG, Defendant must submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; provide sworn testimony; or produce documents.

72.     For purposes of this Section, the CFPB, Virginia, Massachusetts, or the NYAG may communicate directly with each Defendant, unless such Defendant retains counsel related to these communications.

73.     Defendant must permit representatives of the CFPB, Virginia, Massachusetts, or the NYAG to interview any employee or other person affiliated with Defendants who has agreed to such an interview regarding: (a) this matter; (b) anything related to or associated with the conduct described the Complaint; or (c) compliance with this Order.  The person interviewed may have counsel present.

74.     Nothing in this Order will limit the CFPB's lawful use of compulsory process, under 12 C.F.R. § 1080.6.

**7.  Transfer or Assignment of Operations**

75.     Should Defendants seek to transfer or assign all or part of their operations that are subject to this Order, Defendants must, as a condition of sale, obtain the written agreement of the transferee or assignee to comply with all applicable provisions of this Order.

**8.  Retention of Jurisdiction**

76.     The Court will retain jurisdiction of this matter for the purpose of enforcing this Order.

77.     The clerk is directed to strike this matter from the active docket of the court and provide a copy of this order and the accompanying memorandum opinion to all counsel of record.

Entered: April 1, 2024.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge