April 9, 2024

To: Vincent J. Smith or his corporate nominee

Re: Proposal for Purchase the Assets and Liabilities of Nexus Services, Inc. and Libre by Nexus, Inc.

Dear Mr. Smith:

As discussed at a meeting held today with Nexus Services Inc.'s and Libre by Nexus, Inc.'s CEO and attorney, Nexus Services, Inc. and Libre by Nexus, Inc. (collectively "Nexus") has prepared this letter (this "**Letter**"), intended to summarize the principal terms of a proposal being considered by Vincent J. Smith or his chosen corporate nominee ("**Buyer**") regarding its possible acquisition of substantially all of the assets, and all liabilities as may be required by judgments made by the Western District of Virginia, specifically in the matter of *CFPB, et. al v. Nexus Services, Inc., et al.* (5:21-cv-00016) (the "Judgment"), of the immigration services business of Nexus, currently owned by Evan Ajin and Micheal Donovan (collectively "**Seller**"). The possible acquisition of Nexus is referred to as the "**Transaction**" and Buyer and Seller are referred to collectively as the "**Parties.**"

    1.    <u>Acquisition of Assets and Purchase Price</u>.

    (a)    Subject to the satisfaction of the conditions described in this Letter, at the closing of the Transaction Buyer would acquire substantially all of the assets, and certain specified liabilities, of the Nexus (the "**Assets**"), free and clear of all encumbrances, at the purchase price set forth in Section 1(b).

    (b)    The purchase price for the Assets would be $3.50 (the "**Purchase Price**") in cash, subject to adjustment, and payable in cash at the closing of the Transaction.

    (c)    Buyer has calculated the Purchase Price on the basis of information after a conversation which occurred on April 9, 2024. Buyer is aware of the substantial liabilities he is assuming, specifically those related to the Judgment.

    2.    <u>Proposed Definitive Agreement</u>. As soon as reasonably practicable after the execution of this Letter, the Parties shall commence to negotiate a definitive purchase agreement (the "**Definitive Agreement**") relating to Buyer's acquisition of the Assets, to be drafted by Buyer's counsel. The Definitive Agreement would include the terms summarized in this Letter and such other representations, warranties, conditions, covenants, indemnities and other terms that are customary for transactions of this kind and are not inconsistent with this Letter. The Parties shall also commence to negotiate ancillary agreements to be drafted by Buyer's counsel,

including (i) an escrow agreement, (ii) a bill of sale, and (iii) an assignment and assumption agreement.

       3.      <u>Conditions</u>. Buyer's obligation to close the proposed Transaction will be subject to customary conditions, including:

           (a)    Buyer's satisfactory completion of due diligence;

           (b)    the Board of Directors and/or stockholders of Buyer and Seller approving the Transaction;

           (c)    the Parties' execution of the Definitive Agreement and the ancillary agreements;

           (d)    the receipt of any regulatory approvals and third party consents, on terms satisfactory to Buyer;

           (e)    Nexus' attorney and key employees of Nexus entering contracts agreements with Nexus' ensuring continuity or in the alternative entering into employment agreements with Buyer;

           (f)    Buyers' attorney's performing due diligence relating to the Judgment and other liabilities; and

           (g)    there being no material adverse change in Nexus, results of operations, prospects, condition (financial or otherwise) or assets of Nexus.

       4.      <u>Due Diligence</u>. From and after the date of this Letter, Seller will authorize its management to allow Buyer and its advisors full access to the facilities, records, key employees customers, suppliers, and advisors of Nexus for the purpose of completing Buyer's due diligence review. The due diligence investigation will include, but is not limited to, a complete review of the financial, legal, tax, environmental, intellectual property and labor records and agreements of Nexus, and any other matters as Buyer's accountants, tax and legal counsel, and other advisors deem relevant.

       5.      <u>Employment Arrangements</u>. Buyer would offer employment to substantially all of the employees of Nexus and would expect the Seller's management to use its reasonable best effort to assist Buyer to employ those individuals.

       6.      <u>Covenants of Seller</u>. During the period from the signing of this Letter through the execution of the Definitive Agreement, Seller will: (i) conduct Nexus in the ordinary course in a manner consistent with past practice, (ii) maintain its properties and other assets in good working condition (normal wear and tear excepted), (iii) use its best efforts to maintain Nexus and employees, customers, assets and operations as an ongoing concern in accordance with past practice, and (iv) undertake all steps necessary to mitigate the effect of the Judgment and preserve rights to appellate review.

       7.      <u>Exclusivity</u>.

(a)     In consideration of the expenses that Buyer has incurred and will incur in connection with the proposed Transaction, Seller agrees that until such time as this Letter has terminated in accordance with the provisions of paragraph 8 (such period, the "**Exclusivity Period**"), neither it nor any of its representatives, officers, employees, directors, agents, stockholders, subsidiaries or affiliates (the "**Seller Group**") shall initiate, solicit, entertain, negotiate, accept or discuss, directly or indirectly, any proposal or offer from any person or group of persons other than Buyer and its affiliates (an "**Acquisition Proposal**") to acquire all or any portion of Nexus or the Assets, whether by merger, purchase of stock, purchase of assets, tender offer or otherwise, or provide any non-public information to any third party in connection with an Acquisition Proposal or enter into any agreement, arrangement or understanding requiring it to abandon, terminate or fail to consummate the Transaction with Buyer. Seller agrees to immediately notify Buyer if any member of the Seller Group receives any indications of interest, requests for information or offers in respect of an Acquisition Proposal, and will communicate to Buyer in reasonable detail the terms of any such indication, request or offer, and will provide Buyer with copies of all written communications relating to any such indication, request or offer. Immediately upon execution of this Letter, Seller shall, and shall cause the Seller Group to, terminate any and all existing discussions or negotiations with any person or group of persons other than Buyer and its affiliates regarding an Acquisition Proposal. Seller represents that no member of the Seller Group is party to or bound by any agreement with respect to an Acquisition Proposal other than under this Letter.

8.      <u>Termination</u>. This letter will automatically terminate and be of no further force and effect upon the earlier of (i) execution of the Definitive Agreement by Buyer and Seller, (ii) mutual agreement of Buyer and Seller, and (iii) 12:00AM on April 17, 2024. Notwithstanding anything in the previous sentence, paragraphs 10, 11 and 13 shall survive the termination of this Letter and the termination of this Letter shall not affect any rights any Party has with respect to the breach of this Letter by another Party prior to such termination.

9.      <u>Bid Expiration</u>. This offer will remain in effect until 12:00AM on April 17, 2024, unless accepted or rejected by Seller, or withdrawn by Buyer prior to that time.

10.     <u>GOVERNING LAW</u>. **THIS LETTER SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH INTERNAL LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO ANY CHOICE OR CONFLICT OF LAW PROVISION OR RULE (WHETHER OF THE STATE OF NEW YORK OR ANY OTHER JURISDICTION) THAT WOULD CAUSE THE APPLICATION OF LAWS OF ANY JURISDICTION OTHER THAN THOSE OF THE STATE OF NEW YORK.**

11.     <u>Confidentiality</u>. This Letter is not confidential to the Parties and their representatives and is not subject to the confidentiality agreement entered into between Buyer and Seller on April 9, 2024, which otherwise continues in full force and effect.

12.     <u>No Third Party Beneficiaries</u>. Except as specifically set forth or referred to herein, nothing herein is intended or shall be construed to confer upon any person or entity other than

the Parties and their successors or assigns, any rights or remedies under or by reason of this Letter.

13. <u>Expenses</u>. The Parties will each pay their own transaction expenses, including the fees and expenses of investment bankers and other advisors, incurred in connection with the proposed Transaction.

14. <u>No Binding Agreement</u>. This Letter reflects the intention of the Parties, but for the avoidance of doubt neither this Letter nor its acceptance shall give rise to any legally binding or enforceable obligation on any Party, except with regard to paragraphs 7 through 15 hereof. No contract or agreement providing for any transaction involving Nexus shall be deemed to exist between Seller and Buyer and any of its affiliates unless and until a final definitive agreement has been executed and delivered.

15. <u>Miscellaneous</u>. This Letter may be executed in counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one agreement. The headings of the various sections of this Letter have been inserted for reference only and shall not be deemed to be a part of this Letter.

[SIGNATURE PAGE FOLLOWS]

If you are in agreement with the terms set forth above and desire to proceed with the proposed Transaction on that basis, please sign this Letter in the space provided below and return an executed copy to the attention of Micheal Donovan.

Very truly yours,

Zachary Lawrence

By: _____

Attorney for Nexus Services, Inc., Libre by Nexus, Inc., Micheal Donovan, and Evan Ajin

Micheal Donovan,

_____

Nexus Services, Inc., Libre by Nexus, Inc.,

Agreed to and accepted:

Vincent J. Smith or His Corporate Nominee

By: _____

_____