IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, et al., | |
| Plaintiffs, | |
| v. | Case No.:  5:21-cv-00016-EKD-JCH |
| NEXUS SERVICES, INC., et al., | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION TO STAY EXECUTION OF JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

    I.   Summary of Defendants' Conduct in this Litigation that Culminated in the Court's
        Sanction Orders.................................................................................................... 2

        a.   Defendants had numerous opportunities to comply with the Discovery Order.......... 3

        b.   Defendants had numerous opportunities to disclose witnesses and produce
             documents that they belatedly sought to introduce for the damages hearing............. 4

    II.  The Court's Judgment and the Injunctive Provisions that Defendants Move to Stay ........ 6

ARGUMENT ....................................................................................................................... 8

    I.   Legal Standard ......................................................................................................... 8

    II.  Defendants Have Not Made a Strong Showing on the Likelihood of Success on the
        Merits ..................................................................................................................... 10

        a.   Defendants are unlikely to prevail on the merits of their untimely challenge to the
             constitutionality of the Bureau's statutory funding mechanism................................ 10

        b.   Defendants' challenge to the Court's restitution award is both irrelevant to this
             motion and unlikely to succeed on the merits......................................................... 12

        c.   Defendants are unlikely to succeed in showing that the Court's issuance of sanctions
             was improper............................................................................................................ 13

    III. Defendants Have Not Established a Likelihood That They Will Suffer Irreparable Harm
         Absent a 45-Day Stay. ........................................................................................... 14

        a.   Provisions relating to Defendants' income streams (Paragraphs 17 and 19)............. 16

        b.   Provisions relating to the Judgment's administrative requirements (Paragraphs 54,
             56, 59, 61, 62, 65)................................................................................................... 17

        c.   Provisions relating to tendering payment of monetary obligations (Paragraphs 21, 29,
             34, 38, and 43) ....................................................................................................... 18

        d.   Provision relating to cooperation with Plaintiffs (Paragraph 69) ............................. 18

    IV. The Public Interest Weighs Heavily in Favor of the Effectuation of the Judgment's
        Injunctive Provisions. ............................................................................................ 19

CONCLUSION .................................................................................................................... 20

## INTRODUCTION

After Defendants deceived tens of thousands of consumers, and then stonewalled Plaintiffs in discovery and disobeyed the orders of the Court, the Court appropriately entered default judgment and ordered Defendants to pay $230,996,970.84 in relief to consumers and $580,068,100 collectively to the Plaintiffs in civil money penalties.[1] The sanctions that the Court imposed, and the restitution and civil money penalties that the Court ordered, are a direct consequence of Defendants' deceptive, abusive, and unfair business practices toward consumers and their willful contempt of the Court and judicial process.

Now Defendants attempt to delay the consequences of their actions by seeking to stay fourteen paragraphs of the Amended Judgment and Order (Judgment) for 45 days.[2] Defendants argue that these provisions of the Judgment would "effectively prevent the chance of [the] Companies' survival for long enough to allow the Companies to be acquired."[3] But after the filing of their motion, on April 17, Defendants informed the Court that Defendants Nexus Services, Inc. and Libre by Nexus, Inc. (the Entity Defendants) were sold to Libre Immigration Services, Inc. for $3.50, demonstrating that the Judgment has not interfered with the sale of the Entity Defendants.[4]

Defendants' other bases for staying the Judgment pending appeal likewise fail. Defendants have not established a likelihood of success on the merits of any of the issues they plan to raise on appeal. Defendants have not shown how a 45-day stay of the Judgment will prevent Defendants from experiencing irreparable harm, and their purported injuries are self-

---

[1] *See* Am. Final J. Order (Am. J.), ECF No. 246; Am. Mem. Op. (Am. Damages Op.), ECF No. 247. The Court issued a Final Judgment Order, ECF No. 245, and accompanying Memorandum Opinion, ECF No. 244, on March 31, 2024, and issued the Amended Final Judgment Order, ECF No. 246, and Amended Memorandum Opinion, ECF No. 247, the following day.
[2] Defs.' Mot. for a Temporary Stay Pending Appeal (Stay Mot.), ECF No. 249.
[3] Mem. in Supp. of Defs.' Mot. for a Temporary Stay Pending Appeal (Stay Mem.) 10, ECF No. 250.
[4] *See* Decl. of Vincent J. Smith & Asset Purchase Agreement, ECF Nos. 253 & 253-1.

inflicted, which disqualifies them for the equitable relief they request. Furthermore, Defendants have provided no evidence to demonstrate that the Entity Defendants will be in a financial condition to survive and satisfy both the monetary and injunctive provisions of the Judgment after the 45-day period is over. Defendants are not irreparably injured by the administrative and cooperation provisions of the Judgment that they seek to stay. And Defendants cannot stay the monetary provisions of the Judgment that are covered by their motion.

Finally, it is in the public interest for Defendants to comply with the injunctive provisions of the Judgment immediately. The Court has found that Defendants have engaged in systemic unlawful and deceptive conduct, and Defendants acknowledge that they are unequipped to immediately bring themselves into compliance with the Judgment while still continuing to operate. That means Defendants would be permitted to engage in the same conduct that this Court found violates federal and state consumer protection law if a stay is granted. Defendants' claims that they will be in a better position to satisfy the monetary provisions of the Judgment ring hollow when their own evidence underscores the precarious financial condition of the Entity Defendants and the size of the monetary judgment.

## **BACKGROUND**

### I.    **Summary of Defendants' Conduct in this Litigation that Culminated in the Court's Sanction Orders**

The Court is well familiar with Defendants' deceptive, abusive, and unfair business practices that culminated in the award of restitution and civil penalties in the Judgment,[5] Defendants' willful violations of the Court's orders that led to the entry of default,[6] and Defendants' failure to comply with the federal rules of civil procedure and the Court's orders

---

[5] *See* Am. Damages Op. 2-7.
[6] *See* Mem. Op. 2-8 (Sanctions Op.), ECF No. 201.

that resulted in the Court's exclusion of the witnesses and exhibits that Defendants proposed introducing at an evidentiary hearing.[7] Plaintiffs do not intend to recount that entire history here, but do summarize the most salient points to underscore why the sanctions the Court imposed were not "disproportionate;"[8] rather, they were necessary because Defendants repeatedly failed to comply with the Court's orders and the discovery rules despite numerous opportunities to do so.

> ### a. Defendants had numerous opportunities to comply with the Discovery Order.

On June 8, 2022, the Magistrate Judge granted Plaintiffs' request for discovery and ordered compliance with specific provisions by specified dates.[9] In the next eleven months leading up to the Court's entry of default, Defendants had numerous opportunities to comply with this Discovery Order. Defendants failed to comply at each opportunity. Specifically, Defendants failed to: (i) comply with the Discovery Order in the required 21 days, forcing Plaintiffs to file a motion for sanctions on July 19, 2022;[10] (ii) produce a single page of ESI discovery during the six months of briefing the motion for sanctions and no documents after October 5, 2022;[11] (iii) comply with the Magistrate Judge's January 11, 2023 order to retain an attorney within fourteen days after prior counsel withdrew;[12] (iv) comply with the Magistrate Judge's February 7, 2023 order to file a response within fourteen days of the Order to Show Cause;[13] (v) attend the March 14, 2023 status conference to discuss the schedule for

---

[7] *See* Mem. Op. and Order (Evidentiary Sanctions Op.), ECF No. 229.
[8] Stay Mem. 18.
[9] *See* June 8 Order for Defs. to Provide or Permit Disc. (Disc. Order), ECF No. 129.
[10] *See* Pls.' Mot. for an Order to Show Cause why Defs. Should Not Be Held in Civil Contempt, to Impose Disc. Sanctions, and for Certification Under 28 U.S.C. § 636(e)(6)(B)(iii), ECF No. 139.
[11] ECF No. 190 ¶¶ 3, 9; ECF No. 175 ¶¶ 3-4, 27, 29.
[12] Order 2-3, ECF No. 178; Sanctions Op. 6.
[13] Order to Show Cause 1-2, ECF No. 182 (with the Order for Defendants to Show Cause & Certification Under 28 U.S.C. § 636(c)(6)(B)(iii)), ECF No. 181, the Orders to Show Cause); Sanctions Op. 12.

supplemental briefing, witness lists, and/or exhibit lists for the matters to be presented at the show cause hearing;[14] and (vi) take any further steps to bring themselves into compliance with the Discovery Order in the weeks leading up to the April 17, 2023 show cause hearing.[15] Defendants' new counsel appeared for the first time three days before the show cause hearing, but Defendants presented no evidence or witnesses and did not contest the veracity of the facts in the Orders to Show Cause.[16]

On May 11, 2023, the Court found each Defendant in contempt of court on this record and entered default against each Defendant.[17] The Court recognized that, where Defendants repeatedly refused to comply with court orders and where monetary sanctions had not worked in compelling these same Defendants to comply with court orders in other cases, "no sanction short of default can accomplish deterrence in this case."[18]

### b. Defendants had numerous opportunities to disclose witnesses and produce documents that they belatedly sought to introduce for the damages hearing.

On June 13, 2023, the Court set a schedule for briefing appropriate remedies and damages in advance of an August 2023 hearing.[19] In their witness and exhibit list, Defendants identified two experts and twelve fact witnesses that they proposed calling—all but one of the fact witnesses were never previously disclosed.[20] Defendants also proposed introducing

---

[14] Sanctions Op. 7.
[15] *See* Decl. of James E Scott in Supp. of Pls.' Suppl. Br., ECF No. 190; Sanctions Op. 7-8.
[16] *See* Sanctions Op. 8.
[17] *See id.* at 16.
[18] *Id.* at 14-15.
[19] Scheduling Order, ECF No. 211.
[20] *Compare* Defs.' Initial Witness and Ex. Lists, ECF No. 219, *with* Defs.' Initial Disclosures, ECF No. 222-3 & Evidentiary Sanctions Op. 5.

4

seventeen exhibits, including two expert reports, without identifying whether any of the documents were produced in discovery.[21]

Defendants had numerous opportunities—over the course of two years of this litigation—to disclose these individuals and produce these documents, yet they failed to do so at every opportunity. Defendants failed to provide expert disclosures by August 1, 2022 as required under the Scheduling Order and only belatedly produced one incomplete expert report nearly a year later.[22] Defendants failed to identify eleven of the fact witnesses that they proposed calling or any of the exhibits that they proposed introducing in their initial disclosures, which Defendants never supplemented.[23] Defendants also could have produced the proposed exhibits by October 27, 2022—the deadline for completing discovery under the scheduling order.[24] But, as the Court found, Defendants failed to produce large swaths of responsive ESI by that date, and counsel for Defendants acknowledged his belief that the proposed exhibits would not have been produced in discovery.[25] Even after Defendants filed their Initial Witness and Exhibit Lists, Defendants failed to provide any of the exhibits (aside from one incomplete expert report).[26]

On August 8, 2023, on this record, the Court excluded all seventeen of Defendants' proposed exhibits and eleven proposed witnesses.[27] The Court did permit Evan Ajin—one of the Individual Defendants who was identified in Defendants' initial disclosures—to testify at the damages hearing about "the value of services provided as it relates to appropriate damages in this

---

[21] *See* Defs.' Initial Witness and Ex. Lists, ECF No. 219; Decl. of James E. Scott in Supp. of Pls.' Reply in Supp. of Pls.' Request for Evidentiary Sanctions, Injunctive Relief, Consumer Redress, and Civil Money Penalties (July 2023 Scott Decl.), ECF No. 222-1.

[22] Order, ECF No. 113; Evidentiary Sanctions Op. 3.

[23] *Compare* Defs.' Initial Witness and Ex. Lists, ECF No. 219, *with* Defs.' Initial Disclosures, ECF No. 222-3; July 2023 Scott Decl. ¶ 12; Evidentiary Sanctions Op. 3.

[24] Order, ECF No. 113.

[25] Order for Defs. to Provide or Permit Disc., ECF No. 129; Evidentiary Sanctions Op.  4; July 2023 Scott Decl. ¶ 8 & Ex. 1.

[26] July 2023 Scott Decl. ¶ 10; Evidentiary Sanctions Op. 6.

[27] Evidentiary Sanctions Op. 14.

case."[28] Although Defendants still had the opportunity to present evidence from Mr. Ajin, on the day before the scheduled hearing, counsel for Defendants agreed to stipulate to the amount that the Entity Defendants received from consumers after accounting for refunds and proposed taking the hearing off calendar in part because Mr. Ajin's testimony "would require . . . (a) speculation, (b) opinion, or (c) be mooted by the stipulation to the amounts."[29] The Court subsequently cancelled the damages hearing.[30]

## II.     The Court's Judgment and the Injunctive Provisions that Defendants Move to Stay

On April 1, 2024, the Court issued the Judgment[31] finding that the Complaint in this action states claims against Defendants upon which relief can granted, that Defendants are liable for such claims, and that Plaintiffs are entitled to judgment on the claims due to Defendants' default.[32] The Court awarded Plaintiffs both monetary damages and permanent injunctive relief. With respect to monetary relief, the Court ordered Defendants to pay redress to consumers in the amount of $230,996,970.84;[33] ordered each Defendant to pay $111,135,620 in civil penalties to the Bureau;[34] and found the Defendants jointly and severally liable for civil penalties in the amounts of $7,100,000 to Virginia,[35] $3,400,000 to Massachusetts,[36] and $13,890,000 to New York.[37]

---

[28] *Id.*; Defs.' Ex. and Witness Lists 3, ECF No. 219.
[29] Am. Stipulation for Order Establishing Authenticity and Foundation of Docs. Produced by the Entity Defs. and Establishing as Fact the Amount of Revenue that the Entity Defs. Received from Consumers, ECF No. 238; Decl. of Hai Binh T. Nguyen, filed herewith, Ex. 1.
[30] Notice of Cancellation of August 16, 2023 Hr'g (with the agreement of the parties), ECF No. 239.
[31] ECF No. 246.
[32] Am. J.  ¶¶ 2-3.
[33] *Id.* ¶¶ 6, 20.
[34] *Id.* ¶¶ 7, 28.
[35] *Id.* ¶¶ 8, 33.
[36] *Id.* ¶¶ 9, 37.
[37] *Id.* ¶¶ 10, 42.

Recognizing that "[m]onetary penalties alone are likely insufficient to enjoin defendants' unlawful conduct since, without an injunction, defendants 'would be free to return to their old ways,'"[38] the Court's Judgment further enjoined Defendants from, among other acts, engaging in deceptive acts by misrepresenting the terms or nature of the services provided by Defendants; requiring consumers to wear GPS devices; and collecting or retaining monies owed to consumers pursuant to the agreements relating to immigration bond services that gave rise to this action.[39]

Defendants now seek a stay of certain provisions of the Judgment that go to the heart of the injunctive relief granted by the Court to prevent further harm to consumers. Specifically, Defendants seek to stay four categories of the Judgment's provisions:

- **Provisions relating to Defendants' Income Streams:** Paragraphs 17 and 19 prohibit Defendants from collecting and retaining any income streams from the consumers whom Defendants injured. Subsection (a) of Paragraph 17 enjoins Defendants from collecting monies in connection with their immigration bond services prior to the Effective Date of the Judgment, while subsection (b) enjoins Defendants from retaining money owed to consumers. Subsection (a) of Paragraph 19 enjoins Defendants from disclosing or using customer information, including sensitive personal and financial data, obtained in connection with their immigration bond services, while subsection (b) enjoins Defendants from selling or otherwise transferring the right to collect payments from consumers in connection with their immigration bond services.

---

[38] Am. Damages Op. 20 (quoting *Disney Enters., Inc. v. Redbox Automated Retail, LLC*, 336 F. Supp. 3d 1146, 1158 (C.D. Cal. 2018)).
[39] Am. J. ¶¶ 14-17.

- **Administrative Provisions:** Paragraphs 54, 56, 59, 61, 62, and 65 consist of administrative requirements to ensure that Plaintiffs are informed about any changes relating to Defendants' compliance obligations, including any sale or merger of an Entity Defendant (Paragraphs 54 and 56). And the provisions require Defendants to notify the necessary executive officials and employees within the Entity Defendants about the Judgment, and maintain documents and records in their correct format (Paragraphs 59, 61, 62, and 65).

- **Monetary Provisions:** Paragraphs 21, 29, 34, 38, and 43 require Defendants to pay the amounts awarded for consumer redress and penalties, as described above.

- **Cooperation Provision:** Paragraph 69 requires Defendants to cooperate with Plaintiffs in any investigation or litigation relating to the conduct described in the Complaint.

## ARGUMENT

### I.     Legal Standard

To prevail on a motion to stay a judgment pending appeal, a party must satisfy a four-part test established in *Nken v. Holder*.[40] That test, which has "substantial overlap" with the preliminary injunction standard, requires a Court to assess: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."[41] The first two factors—likelihood of success on the merits and irreparable harm—are the most critical.[42]

---

[40] 556 U.S. 418 (2009).

[41] *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

[42] *Id.*

The third and fourth factors merge when, as here, the Government is the party opposing the stay.[43]

Defendants are mistaken that "[t]he strength of the showing required on any one factor depends on the others."[44] Following the Supreme Court's decision in *Winter v. Natural Resources Defense Council*,[45] which clarified the substantially similar standard for obtaining a preliminary injunction, the Fourth Circuit declined to further use this "balance-of-hardship-test," instead "requiring that each preliminary injunction factor be satisfied as articulated."[46] Accordingly, a failure to meet any one of the four factors is fatal to Defendants' motion. None of the cases that Defendants rely upon—all of which predate *Winter*—call for a different outcome.[47]

Further, Defendants' claim that a movant "need only show a substantial case on the merits"[48] wholly fails to appreciate the importance of establishing the first prong of the *Nken* test and the extraordinary nature of the relief that they are seeking. As one court stated in explaining why the standard for a stay pending appeal cannot be less stringent: "At this point, the merits of [the movants'] case have already been considered, and [the movants] have lost. . . . [I]t would be problematic and unfair to allow [the movants] to further delay based on a showing much lower than that required for them to have received a preliminary injunction in the first place."[49]

---

[43] *Id.* at 435.
[44] Stay Mem. 6.
[45] 555 U.S. 7 (2008).
[46] *Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013) (abrogated on other grounds) (internal quotation marks omitted); *see also Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 215 n.7 (4th Cir. 2019) ("We recalibrated that [balance-of-hardship] approach after *Winter*, which requires a party seeking preliminary relief to satisfy all four prongs of the preliminary-injunction standard, and does not employ a sliding scale.") (internal quotations omitted).
[47] *See* Stay Mem. 6-7.
[48] *Id.* at 6.
[49] *Ohio Valley Env't Coal., Inc. v. U.S. Army Corps of Eng'rs*, 890 F. Supp. 2d 688, 693 (S.D.W. Va. 2012).

## II.     Defendants Have Not Made a Strong Showing on the Likelihood of Success on the Merits.

Defendants raise four issues that they urge are "substantial legal question[s]" warranting application of a stay: (a) whether the Bureau's funding structure is unconstitutional; (b) whether the entry of default was improper if the Bureau's funding structure is unconstitutional; (c) whether it was proper for the Court to use net revenue to calculate restitution; and (d) whether the Court's issuance of sanctions was proper.[50] Defendants are unlikely on appeal to succeed on the merits of any of these issues.

### a.     Defendants are unlikely to prevail on the merits of their untimely challenge to the constitutionality of the Bureau's statutory funding mechanism.

The first two issues that Defendants raise relate to their claim that the constitutionality of the Bureau's statutory funding mechanism—which the Supreme Court is reviewing this term in *CFPB v. Community Financial Services Ass'n*, No. 22-448—is a substantial legal question that supports a stay pending appeal.[51] But Defendants only raised this constitutional challenge—which they say would be an affirmative defense to liability—in a motion for judgment on the pleadings filed well after the deadline for dispositive motions, and on the eve of the Court's Sanctions Opinion.[52] In that Sanctions Opinion, the Court determined that default judgment was warranted and accordingly denied as "moot" the motion raising the claimed constitutional defense.[53] The relevant question on appeal, then, will not be whether the Bureau's statutory funding mechanism is constitutional, but rather whether the Court erred in denying the motion raising the challenge as moot.

---

[50] *See* Stay Mem. 13-19.
[51] *Id.* at 13-16.
[52] *See* Sanctions Op. 13 & n.9; Mem. Op. & Order (Recon. Op.) 8, ECF No. 226.
[53] Sanctions Op. 16.

Defendants are unlikely to succeed on such an argument in the Fourth Circuit. As the Court has already recognized, district courts have inherent authority to manage their dockets—including deciding in what order to decide motions pending before them.[54] While that discretion gives way where there are questions about the court's jurisdiction or other non-waivable threshold issues, the Appropriations Clause challenge Defendants tried to belatedly raise here does not satisfy that exception.[55] Thus—contrary to Defendants' suggestion[56]—the Court here did not need to reach Defendants' untimely affirmative defense before deciding that Plaintiffs were entitled to default judgments. The Fourth Circuit will review that determination only for an abuse of discretion,[57] and Defendants have not established that the Fourth Circuit is likely to find any abuse of discretion.

Finally, even if the Fourth Circuit were to somehow reach the merits of the Appropriations Clause argument, Defendants are unlikely to succeed on this challenge on appeal.[58] As the Supreme Court has long recognized, the Appropriations Clause contains only a "straightforward and explicit" command: "'[i]t means simply that no money can be paid out of the Treasury unless it has been appropriated by an Act of Congress.'"[59] Congress satisfied that command when it funded the Bureau through its organic statute.[60] There is nothing unusual or constitutionally suspect about that choice.[61] This Court has thus already held that, if it were to

---

[54] Recon. Op. 7 (citing *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016); *Hoptowit v. Spellman*, 753 F.2d 779, 782 (9th Cir. 1985)).

[55] *See id.* at 7 & n.6 (citing *CFPB v. CashCall, Inc.*, 35 F.4th 734, 743 (9th Cir. 2022)).

[56] Stay Mem. 15-16.

[57] *Turner v. United States*, 736 F.3d 274, 283 (4th Cir. 2013).

[58] Virginia does not join the portion of this brief arguing that Defendants are unlikely to succeed on the merits of any Appropriations Clause challenge. However, all Plaintiffs agree that this Court's denial of Defendants' motion for judgment on the pleadings as moot was appropriate.

[59] *OPM v. Richmond*, 496 U.S. 414, 424 (1990) (quoting *Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937)).

[60] *See* 12 U.S.C. § 5497.

[61] *See CFPB v. L. Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 182-183 (2d Cir. Mar. 23, 2023) (finding "no support" in "Supreme Court precedent," constitutional text, or "the history of the Appropriations Clause" for the conclusion that the Bureau's funding is unconstitutional).

reach "Defendants' belated [and moot] argument," it "would follow the line of cases concluding that the CFPB's structure does not violate the separation of powers principles contained in the Appropriations Clause."[62] Defendants are therefore unlikely to succeed on their challenge to the Bureau's funding on appeal.[63]

> **b. Defendants' challenge to the Court's restitution award is both irrelevant to this motion and unlikely to succeed on the merits.**

Defendants also suggest that a stay of various injunctive relief provisions is warranted because there is a substantial question about how the Court calculated the restitution award.[64] They are wrong. To begin, in this motion, Defendants only seek to stay certain *injunctive* provisions of the Judgment,[65] so it does not matter whether they are likely to succeed on appeal of the *monetary* award.[66] But even if the calculation of monetary relief were relevant to whether this Court should stay portions of the injunction, Defendants again cannot establish that they are likely to succeed on their challenge to the restitution award. Defendants suggest that there is a split in authorities on whether an award of restitution based on the full amount the defendant wrongfully charged consumers is permissible under the Consumer Financial Protection Act (CFPA), but they misread the relevant case law. In particular, the Seventh Circuit in *CFPB v. Consumer First Legal Group*[67] did not hold—as Defendants would have it—that any restitution

---

[62] Recon. Op. 10 (alteration in original) (quoting *CFPB v. CashCall, Inc.*, No. CV 15-7522-JFW (RAOx), 2023 WL 2009938, at *3 (C.D. Ca. Feb. 10, 2023)).

[63] Defendants' challenge to the Bureau's funding also fails as a basis for a stay relative to Massachusetts, Virginia, and New York because the states brought their own claims under the CFPA and state consumer protection laws—independent from the Bureau's claims—and the states are entitled to injunctive relief under the CFPA and state statutes. Am. Damages Op. 19-22.

[64] *See* Br. in Supp. of Mot. Stay at 16–17, ECF No. 250.

[65] As Plaintiffs explain, *infra* Arg. § III.c., while Defendants request to stay provisions requiring them to tender payment of monetary obligations, that effort to, in effect, stay the money judgment without posting a bond is unsupported and improper.

[66] *Cf. Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1135 (11th Cir. 2005) (holding that court committed error in premising grant of preliminary relief on showing that applicant was likely to succeed on the merits of issue unrelated to the relevant claims).

[67] 6 F.4th 694 (7th Cir. 2021).

award under the CFPA must be limited to a defendant's net profits. Rather, the court there only held that awards of *equitable* restitution are limited to net profits.[68] Here, the Court granted Plaintiffs' request for *legal* restitution (or, in the alternative, refund of moneys, damages, or other monetary relief)—all available remedies under the CFPA.[69] There is thus no question that the Court appropriately calculated that amount based on the amount of money Defendants took from consumers—the customary measure of restitution in consumer cases.[70]

### c. Defendants are unlikely to succeed in showing that the Court's issuance of sanctions was improper.

As set forth in this Court's Sanctions Opinion (after a thorough recitation of the facts of this case): "[t]he appropriate remedy for civil contempt is within the court's broad discretion."[71] Similarly, a court's determination of whether to exclude evidence due to failure to disclose it in advance is discretionary, and the district court is given wide latitude to exercise that discretion.[72] Defendants argue that the Court's imposition of the default sanction, when combined with the exclusion of evidence, raises a colorable issue on appeal. It is within the court's discretion to enter default as a sanction in the first instance where the facts and law support it.[73] And there is no factual or legal basis to suggest that Defendants' failures to disclose its witnesses and evidence was justified or harmless, and Defendants point to none in their brief.[74]

In determining to exclude Defendants' late-proffered evidence, the Court issued a 14-page opinion in which it meticulously recited the facts and the legal basis for its decision,

---

[68] *See id.* at 711.
[69] *See* Am. J. ¶ 22; 12 U.S.C. § 5565(a)(2).
[70] *See, e.g.*, *CashCall*, 35 F.4th at 751; *CFPB v. Gordon*, 819 F.3d 1179, 1195 (9th Cir. 2016); *FTC v. Kuykendall*, 371 F.3d 745, 764-66 (10th Cir. 2004) (en banc); *FTC. v. Trudeau*, 579 F.3d 754, 771 (7th Cir. 2009).
[71] Sanctions Op. 10 (*citing Redner's Mkts., Inc. v. Joppatowne G.P. Ltd. P'ship*, 608 F. App'x 130, 131 (4th Cir. 2015); *Rainbow Sch., Inc. v. Rainbow Early Educ. Holding, LLC*, 887 F.3d 610, 617 (4th Cir. 2018)).
[72] *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595 (4th Cir. 2003).
[73] *See Projects Mgmt. Co. v. Dyncorp Int'l*, 734 F. 3d 366, 373-74 (4th Cir. 2013).
[74] Stay Mem. 17-19.

including the harm that Defendants' conduct caused Plaintiffs in this case.[75] There is not a colorable argument that the Court abused its discretion when considering Defendants' conduct throughout the litigation,[76] even where doing so resulted in a large monetary judgment against Defendants.

### III.   Defendants Have Not Established a Likelihood That They Will Suffer Irreparable Harm Absent a 45-Day Stay.

Defendants fail to satisfy the second prong of the *Nken* test because they have not shown that any Defendant will suffer irreparable harm absent the requested 45-day stay. This factor requires that movants show irreparable harm is *likely*, not merely that they face "some possibility" of injury.[77] Defendants must not only show that their injury is irreparable, but that the relief they are requesting would remedy that injury.[78] Moreover, "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough" to establish irreparability.[79]

Here, Defendants argue that they will be irreparably harmed if their requested stay is not granted because "[t]he aggregate effect of the [Judgment] . . . spells the death of Companies' business" [*sic*].[80] They argue that a 45-day stay of certain injunctive provisions of the Judgment would prevent the business failure of the Entity Defendants by enabling a sale of the entities to a third party, and even go so far as to argue that this delay in enforcement would ultimately benefit

---

[75] Evidentiary Sanctions Op.

[76] *See supra* Background § I.

[77] *Nken*, 556 U.S. at 434-35 (citing *Winter*, 555 U.S. at 22).

[78] *See, e.g., Elec. Priv. Info. Ctr. v. Dep't of Com.*, 356 F. Supp. 3d 85, 96 (D.D.C. 2019) (vacated on other grounds, 928 F.3d 95 (D.C. Cir. 2019)) (finding no basis for a preliminary injunction where "even assuming this harm is irreparable, it will not be redressed by the relief requested"); *Hisp. Affs. Project v. Perez*, 141 F. Supp. 3d 60, 69-74 (D.D.C. 2015) (finding no irreparable injury because "whether viewed through the prism of redressability or irreparable harm, the injunctive relief requested would not necessarily help [the movant]").

[79] *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Va. Petrol. Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958)).

[80] Stay Mem. 10.

Plaintiffs by providing a mechanism through which the Entity Defendants would be able to comply with the Judgment and meet their monetary obligations under it.[81]

As an initial matter, Defendants ignore that the Judgment is a byproduct of their unlawful business practices against consumers and their contemptuous misconduct in this litigation, which disqualifies Defendants from obtaining the equitable relief they seek. By disregarding the Court's orders and the civil judicial process, Defendants delayed Plaintiffs' ability to obtain relief for consumers—relief Defendants are seeking to prolong once again through this motion. The Fourth Circuit has concluded that stay applicants who have delayed relief are not entitled to a stay when the "principal injury" is "[one] of their own making," as "[i]t would seem elementary that a party may not claim equity in his own defaults."[82] This reasoning applies with equal force to these Defendants considering their conduct in this litigation.[83]

But even if their injuries were not self-inflicted, Defendants fail to establish that they are likely to be irreparably harmed absent a stay because they have neither demonstrated that the stay is necessary to facilitate the sale of the Entity Defendants, nor that the sale would prevent their business failure.[84] Defendants do not submit any competent evidence in support of their contention that a stay is necessary to facilitate the sale of the Entity Defendants. Rather, Defendants submit a Letter of Intent[85] and subsequent Asset Purchase Agreement[86] purporting to document Vincent Smith's acquisition of the Entity Defendants on April 17, 2024[87]—a mere six days after Defendants filed this motion. As such, this issue has become moot.

---

[81] *Id.*; Decl. of Vincent J. Smith ¶¶ 9-10, ECF No. 249-1; Decl. of Micheal Donovan ¶¶ 20-25, ECF No. 249-4.
[82] *Long v. Robinson*, 432 F.2d 977, 981 (4th Cir. 1970).
[83] *See supra* Background § I.
[84] *See, e.g., Elec. Priv. Info. Ctr.*, 356 F.Supp.3d at 96; *Hisp. Affs. Project*, 141 F.Supp.3d at 69-74.
[85] Letter of Intent, ECF No. 249-2.
[86] Asset Purchase Agreement, ECF No. 253-1.
[87] Defendants do not submit the Bill of Sale referenced within the Asset Purchase Agreement to be signed at the April 17, 2024 closing.

In addition, Defendants do not provide any evidence that a 45-day stay of any of the provisions for which they seek to stay enforcement would enable the Entity Defendants to be rehabilitated as viable companies. Nor do they demonstrate that any of the provisions present an undue hardship on either the Defendants or the putative purchaser. As such, they have not demonstrated that a stay is likely to prevent irreparable harm to any Defendant. To the contrary, Defendants' request for a stay appears to be an attempt not to prevent injury to Defendants, but to evade provisions of the Judgment that are necessary to prevent further harm to consumers.

### a. Provisions relating to Defendants' income streams (Paragraphs 17 and 19)

Defendants seek a stay of Paragraphs 17 and 19, both of which restrain Defendants (or their successor in interest)[88] from collecting or attempting to collect monies relating to their immigration bond services. Defendants fail to demonstrate that a 45-day stay of these provisions is likely to prevent the failure of the Entity Defendants. Despite Mr. Donovan's assertion that absent revenue, the Entity Defendants operate at a loss of $50,000 per week and face imminent failure,[89] Mr. Smith does not provide any explanation as to how he intends to restructure the entities to meet their financial obligations while also complying with the Judgment's injunctive restraints after the requested stay.[90] As Mr. Smith states in his Declaration, "the assumption of the vast liabilities of the Companies makes the purchase for a nominal amount [of $3.50] an extremely risky investment."[91] Given Defendants' acknowledgment that the inability of the Entity Defendants to collect money on their immigration bond service contracts, sell the rights to collect on these contracts, or profit from their customer is fatal to their viability as businesses, and absent credible evidence demonstrating that the putative buyer has sufficient resources to

---

[88] All provisions of the Judgment must be binding upon any successor in interest to Defendants. Am. J. ¶ 75.
[89] Decl. of Micheal Donovan ¶¶ 5-16, 20, ECF No. 249-4.
[90] *See* Decl. of Vincent J. Smith, ECF No. 249-1.
[91] *Id.* ¶ 8.

meet the Entity Defendants' substantial financial liabilities and overhaul their business model to one that does not harm consumers, Defendants fail to meet the requisite showing that the stay would remedy Defendants' purported irreparable injury.[92]

### b. Provisions relating to the Judgment's administrative requirements (Paragraphs 54, 56, 59, 61, 62, 65)

Defendants further seek a stay of various provisions relating to administrative requirements under the Judgment that require them to provide certain notices and maintain certain records.[93] Defendants cannot demonstrate that any of these provisions would cause irreparable harm. None of these provisions are onerous or require Defendants to provide sensitive information. Defendants cannot credibly claim that the burden of notifying Plaintiffs of the sale of an Entity Defendant or changes to contact information, as required by Paragraphs 54 and 56,[94] injures them in any way, much less causes irreparable harm. Likewise, Defendants have not demonstrated that they are harmed by the requirements of Paragraphs 59, 61, and 62—delivering copies of the Judgment to the executive officers, managers, and employees charged with complying with its provisions, obtaining receipts of such delivery, and providing a list of the same to Plaintiffs—and the requirement of Paragraph 65 to maintain their existing records in their original electronic form. These administrative requirements, which are necessary to ensure compliance with the Judgment, are simply not burdensome and do not qualify as irreparable injury.[95]

---

[92] *See, e.g., Elec. Priv. Info. Ctr.*, 356 F.Supp.3d at 96; *Hisp. Affs. Project*, 141 F.Supp.3d at 69-74.

[93] Defendants only seek a stay of Paragraph 65 insofar as it requires the creation of a new centralized record keeping system. Stay Mot. ¶ 8.

[94] Paragraph 56 refers to the reporting requirements of Paragraph 57, which requires an annual Compliance Report to Plaintiffs. However, it appears to have been intended to reference Paragraph 55, which requires Defendants to designate contact information and provide business details for each Defendant within 7 days of the Effective Date of the Order, and Defendants have interpreted it as such.

[95] *See Samson*, 415 U.S. at 90; *Mowbray v. Kozlowski*, 725 F. Supp. 888, 890-91 (W.D. Va. 1989) (finding administrative costs are of the type of "money, time and energy" that is not irreparable); *see also Simon v. DOJ*, No.

### c.   Provisions relating to tendering payment of monetary obligations (Paragraphs 21, 29, 34, 38, and 43)

Defendants further have not established that they are irreparably harmed by the "injunctive provisions" of Paragraphs 21, 29, 34, 38, and 43 because these paragraphs do not include injunctive relief.[96] Rather, each of these paragraphs sets out the date by which Defendants must tender payment of the monetary relief awarded by the Judgment and manner in which such payment is to be made. As such, any motion for a stay of these provisions should be made pursuant to Federal Rule of Civil Procedure 62(a) and accompanied by a bond.

### d.   Provision relating to cooperation with Plaintiffs (Paragraph 69)

Finally, Defendants seek a stay of Paragraph 69, which requires Defendants to cooperate fully with Plaintiffs in any investigation or litigation relating to the conduct described in the Complaint, including providing "truthful and complete information, evidence, and testimony."[97] Unsurprisingly, Defendants do not submit any evidence that this provision would cause them irreparable injury, as it strains all notions of justice to suggest that Defendants—having been found liable for violating federal consumer protection laws and the laws of three states—would suffer harm beyond repair by a mandate to cooperate with Plaintiffs in their attempts to enforce the Judgment.

---

20-0580 (RC), 2021 WL 1578293, at *5 (D.D.C. Apr. 22, 2021) (finding "simple administrative requirement[s]" to not qualify as irreparable harm).

[96] Stay Mot. ¶ 4. Even if the Court were to consider these provisions "injunctive," the Individual Defendants fail to provide any argument applicable to them to support a stay of these provisions, which impose on the Individual Defendants payment obligations that are either separate from or in addition to the Entity Defendants'.

[97] Am J. ¶ 69.

IV.     **The Public Interest Weighs Heavily in Favor of the Effectuation of the Judgment's Injunctive Provisions.**

The public has a strong interest in ensuring that businesses comply with the law and do not deceive the public.[98] The Court found that Defendants engaged in systemic deceptive and other unlawful conduct, and enjoined Defendants from, among other things, collecting or attempting to collect monies from consumers.[99] Defendants acknowledge that they are unequipped to immediately bring themselves in compliance with the Judgment while continuing to operate, meaning that if a stay is granted, Defendants would have 45 more days to engage in the same conduct that this Court found violates federal and state consumer protection law.[100] Further, the delay of even the most rudimentary reporting requirements of the Judgment—including notifying Plaintiffs of the creation, dissolution, sale, or acquisition of business entities owned by Defendants—would create a potential loophole Defendants could exploit to hide assets or otherwise evade enforcement of the Judgment. Such a result is antithetical to the public interest.

Defendants claim that a temporary stay is in the public interest to enable them to comply with the monetary provisions of the Judgment,[101] but their own evidence underscores the precarious financial condition of the companies, which belies their claims that they will be in a better position to satisfy the monetary provisions of the Judgment in six weeks. In fact, Defendant Donovan goes into great detail in his declaration to set out the expenses of Entity

---

[98] *See, e.g., Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 939 (4th Cir. 1995) (concluding that the public interest is served by an injunction "preventing future consumers from being misled"); *United States v. Envigo RMS, LLC*, No. 6:22-cv-00028, 2022 WL 1607840, at *9 (W.D. Va. May 21, 2022) (recognizing the public interest in ensuring that companies follow the law and "not financially profit from their law-breaking endeavors") (internal quotations omitted).
[99] Am. Damages Op. 23; Am. J. ¶ 17(a).
[100] Stay Mem. 20-21.
[101] *See id.* at 2, 10.

19

Defendants,[102] but neither his declaration nor that of Mr. Smith, the buyer,[103] makes clear how the companies can operate lawfully with its ongoing expenses and liabilities within the confines of the Judgment once 45 days have passed. And Defendants' argument that public interest is not served by "disorderly death of companies"[104] is not compelling: bankruptcy laws and other dissolution provisions no doubt do allow for orderly death, or restructuring, of companies in the face of significant liabilities.

## **CONCLUSION**

For these reasons, Plaintiffs request that the Court deny Defendants' motion in its entirety.

Dated: April 25, 2024               Respectfully submitted,

*Attorneys for the Consumer Financial Protection Bureau*

Eric Halperin
*Enforcement Director*
Alusheyi J. Wheeler
*Deputy Enforcement Director*
Kara K. Miller
*Assistant Litigation Deputy*

**Hai Binh T. Nguyen**
California Bar Number: 313503
Leanne E. Hartmann
California Bar Number: 264787
Lee I. Sherman
California Bar Number: 272271
Stephanie B. Garlock
D.C. Bar Number: 1179629
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Telephone (Nguyen): (202) 341-7124

---

[102] Decl. of Micheal Donovan ¶¶ 7-24, ECF No. 249-4.
[103] Decl. of Vincent J. Smith, ECF No. 249-1.
[104] Stay Mem. 20.

Telephone (Hartmann): (415) 844-9787
Telephone (Sherman): (202) 374-4575
Telephone (Garlock): (202) 435-7201
Email: haibinh.nguyen@cfpb.gov
Email: leanne.hartmann@cfpb.gov
Email: lee.sherman@cfpb.gov
Email: stephanie.garlock@cfpb.gov


*Attorneys for the Commonwealth of Virginia, ex rel. Jason S. Miyares, Attorney General*

Jason S. Miyares
*Attorney General*
Charles H. Slemp, III
*Chief Deputy Attorney General*
Steven G. Popps
*Deputy Attorney General*
Richard S. Schweiker, Jr.
*Chief and Senior Assistant Attorney General*

**James E. Scott**
Senior Assistant Attorney General
Virginia Bar Number: 88882
Office of the Attorney General
Consumer Protection Section
202 North Ninth Street
Richmond, VA 23219
Telephone: (804) 225-4778
Fax: (804) 786-0122
Email: jscott@oag.state.va.us


*Attorneys for the Commonwealth of Massachusetts*

Maura Healy
*Attorney General*

**Jon Burke**
Massachusetts Bar Number: 673472
Assistant Attorney General
Office of the Attorney General
10 Mechanic Street
Worcester, MA 01608
Telephone: (774) 214-4416
Fax: (508) 795-1991

Email: Jonathan.burke@mass.gov


*Attorneys for the People of the State of New York*

LETITIA JAMES
*Attorney General*

Jane Azia (New York Bar Number: 1539600)
*Bureau Chief for the Bureau of Consumer Frauds and Protection*
Laura Levine (New York Bar Number: 2337368)
*Deputy Bureau Chief for the Bureau of Consumer Frauds and Protection*

**Franklin H. Romeo**
New York Bar Number: 4422051
Assistant Attorney General
Office of the Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8320
Fax: (212) 416-6003
Email: franklin.romeo@ag.ny.gov