UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, *et al.*, <br> Plaintiff, <br><br> v. <br><br> NEXUS SERVICES, INC., *et al.*, <br> Defendants. | No.: 5:21-cv-00016-EKD-JCH |

**DEFENDANTS' MEMORANDUM IN REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO STAY EXECUTION OF JUDJMENT**

**INTRODUCTION**

Plaintiffs challenge in part the demonstration of likelihood of success pointing out, "[t]o begin, in this motion, Defendants only seek to stay certain injunctive provisions of the Judgment, so it does not matter whether they are likely to succeed on appeal of the monetary award." ECF Doc. No. 255 at 14[1] ("Plaintiff's Opposition" or "Oppo. Mem."). Defendants do not necessarily disagree with this assertion; it is for this reason, that Defendants addressed arguments which, if accepted, would reverse either the entrance of the judgment

---

[1] Defendants utilize the header stamp page number rather than internal pagination.

1

(containing the injunctions)² or to the extent provisions were injunctive the injunctions themselves.³

Next, and addressing the injunctive or equitable relief, much of the Defendants arguments address the lack of clarity in what may or not be equitable and what may or may not be enforceable through contempt; take the "restitution," it is less than clear that it is in fact a monetary judgment because it is ordered payable on ten days. *Cf.* Fed. R. Civ. P. 62(a). Indeed, restitution is not necessarily determined based on the name or title given to it, but must be interpreted by the nature of the relief and how the Court structures the relief.⁴ Moreover, it was for this reason, the appearance of being equitable, that the Seventh Circuit reversed the calculation in *Consumer Fin. Prot. Bureau v. Consumer First Legal Grp., LLC*. Defendants sought to this provision to the extent it was equitable—again, the requirement that it be paid prior to the 30-day automatic stay created confusion. *See* ECF Doc. No. 246 at ¶¶ 20, 21.

---

² *See generally* ECF Doc. No. 250 at 13-17.
³ For instance, in addressing restitution ordered Defendants only sought to stay the provision to the extent it was to be considered injunctive or equitable, *i.e.*, enforceable by contempt. *See* ECF Doc. No. 249 at 2, ¶ 4. It appears as if the Plaintiffs believe that such is not equitable and have argued as much, *see* Oppo. Mem. at 15, although appear to have some sympathy to Defendants' view. *See* Oppo. Mem. at 20, n. 96.
⁴ *See generally*, *Consumer Fin. Prot. Bureau v. Consumer First Legal Grp., LLC*, 6 F.4th 694, 711 (7th Cir. 2021) ("The district court understood itself to be awarding equitable relief, which is why it cited equitable restitution cases in support of its order").

Finally, to address the injunctive relief specifically, Defendants would be perfectly happy were the injunctive and equitable relief awarded limited to that which *Plaintiffs* had requested in their trial brief and addressed; indeed, such would encompass and address many of the concerns which Defendants have and result in the relief Plaintiffs desire. *See generally* Donovan Decl. The injunctive relief awarded, however, is significantly broader than that requested or briefed. *Id.*

## STATEMENT OF FACTS

Very briefly, the following was the injunctive relief requested:

> Here, the injunctive relief sought by Plaintiffs is appropriately tailored to the specific deceptive, abusive, and unfair acts of Defendants that give rise to Plaintiffs' claims on behalf of consumers. In particular, Plaintiffs request that the Court:
> - Enjoin Defendants from making material misrepresentations or omissions with respect to the nature and scope of the services provided by Defendant Libre, including misrepresentations regarding whether payments are applied to the consumers' immigration bonds, Libre's affiliation with ICE, and the provision of legal services to consumers. Defendants' misrepresentations form the factual basis for Counts 1, 2, 8, 9, 10, 11, 12, 13, 15, and 17 of the Complaint.
> - Require Defendants to provide all consumers and prospective consumers with clear and accurate contracts, presented in a language accessible to the consumer, that include conspicuous disclosures of the fees charged by Libre and advising consumers that Libre will not report consumers to law enforcement for non- payment of fees or non-compliance with the contract. These requirements would prevent Defendants from harming consumers through misleading and abusive contract terms as set forth in Counts 1, 2, 9, 10, 11, 12, 13, 15, 16, and 17.
> - Enjoin Defendants from requiring GPS monitors as a term of any consumer contract. Defendants' deceptive and abusive use of GPS devices is detailed in Counts 2, 6, 10, 11, 12, 13, 15, 16, and 17.

- Enjoin Defendants from collecting any payments related to GPS monitors. Defendants' deceptive and abusive use of GPS devices is detailed in Counts 2, 6, 10, 11, 12, 13, 15, 16, and 17.
- Enjoin Defendants from collecting monies in connection with the Original Agreement, from collecting monies not owed, and from retaining money owed to consumers, as set forth in Counts 1, 7, 9, 10, 11, 12, 13, 14, 15, and 17.
- Enjoin Defendants from making material misrepresentations with respect to non-
- payment of fees or non-compliance with the contract, including misrepresentations regarding selling consumers' debt, as set forth in Counts 3, 10, 11, 12, 14, 15, and 17; misrepresentations regarding providing negative information to credit reporting agencies, as set forth in Counts 4, 10, 11, 14, 15, and 17; and misrepresentations regarding bringing debt collection actions against consumers, as set forth in Counts 5, 10, 11, 14, 15, and 17.
- Enjoin Defendants Nexus Services, Inc., Micheal Donovan, Richard Moore, and Evan Ajin from engaging in or providing substantial assistance to any deceptive or abusive acts or practices by Defendant Libre, as set forth in Count 10.

ECF Doc. No. 216 at 39-40

These requests differ significantly from what was ordered by the Court. *See, e.g.*, ECF Doc. No. 246 at ¶ 17(a) (enjoining collecting any monies from any agreements from December 1, 2013 to April 1, 2024 rather than monies relating to "original contract"); ¶ 19(b) (enjoining sale or transfer of any right to collect payment from any contract, not limited by time, to any other party, rather than any injunctive relief requested); ¶ 75 (mandating "as a condition of sale, obtain the written agreement of the transferee or assignee to comply with all applicable provisions of this Order[,]" rather than any injunctive relief requested).

The point here being, that the provisions Defendants seek to have stayed are the provisions that were not requested by Plaintiffs. *Compare* ECF Doc. No. 216 at 39-40, *with* ECF Doc. No. 249 at 2-3. Indeed, Defendants do not seek to collect monies under the original contract. ECF Doc. No. 249. Nor do they seek to utilize GPS devices or collect payments for the same. *Id.* Nor do they seek to avoid provide contracts in a particular language or with particular disclosures. *Id.* The relief sought does not involve an immunity from consumer protection law. *Id.* Indeed, Defendants seek the opposite, and limit their requests generally to the extent that the provisions are unclear or would prevent certain *legal* activities:

1. Injunctive provisions contained in paragraph 17(b) to the extent it requires Defendants to release, or transfer, or otherwise alienate *all money owed pursuant to judgment;*
2. Injunctive provisions contained in paragraph 17(a) to the extent that it enjoins Nexus Companies from receiving payments in the normal course of business *that become due after the Effective Date*;
3. Injunctive provisions of paragraph 19(a) and (b) *to the extent that they would enjoin a sale of Nexus Companies to a third party*;
4. Injunctive provisions of paragraphs 21, 29, 34, 38, 43 *to the extent they are considered injunctive in nature and not part of a monetary judgment subject to Federal Rules of Civil Procedure 62(a)*;
5. The application of paragraph 54 *to the extent it requires reporting of developments prior to their existence*;
6. The application of paragraph 56 *to the extent it requires reporting of change prior to their existence*;
7. The application of paragraphs 59, 61, and 62;
8. The application of paragraph 65 *to the extent it requires the creation of a new centralized record keeping system*; and
9. The application of paragraph 69.

*Id.* at 2-3 (emphasis added).

5

The stay Defendants seek is generally in line with what was originally requested and to a large extent is simply to ensure that contempt does not occur because a lack of clarity present in certain provisions. *See* Donovan Decl. Indeed, many of the requests are imminently reasonable: Paragraph 54 requires:

> Defendants must notify the CFPB, Virginia, Massachusetts, and the NYAG, of any development that may affect compliance obligations arising under this Order, including but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against a Defendant; or a change in a Defendant's name or address. Defendants must provide this notice *at least 30 days before the development,* but in any case no later than 14 days after the development, *whichever is sooner*.

ECF Doc. No. 246 at 18 (emphasis added). Taken literally it would require notice to be provided of "development[s]" relating to a sale 30 days prior to that development—30 days before the development will always be sooner than 14 days after—which could result in contempt, if for instance developments were very rapidly occurring, or one lacked knowledge of them 30 days before they developed. Defendants sought only to limit this to the extent that it would require foreknowledge or report of the event prior to existence. *See* ECF Doc. No. 249.

All of these requests are aimed both at allowing survival and preventing contempt by providing clarity. *See* Donovan Decl. Further, they are in line with the injunctive provisions originally requested and simply narrow the breadth of injunctive provisions that appear to have never been requested. *Id.*

Finally, and to clarify, Defendants sought to stay the provisions ordered to be in line with those requested and would be perfectly pleased were the Court to stay all injunctive relief to the extent that it is broader than that relief requested by the Plaintiffs. *Id.*

## ARGUMENT

### I. PLAINTIFFS FUNDAMENTALLY MISUNDERSTAND WHAT WAS REQUESTED STAYED AND WHY.

On occasions, litigants and courts overstep. When they do so, it is prudent to take a modest path and recognize that such might have occurred. It is for this reason, and only to the extent that Defendants believe the Court has overstepped, that Defendants ask for a stay to prevent irremediable harm. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). This is the very reason why stay pending appeal exist and because of this that Defendants have not sought to undermine the injunctive relief actually requested by Plaintiffs. *See generally* ECF Doc. No. 216 at 39-40; *see also* ECF Doc. No. 249 at 2-3.

### II. *HILTON* HAS NOT BEEN OVER-RULED AND A LESSENING OF THE WEIGHTINESS OF A REQUIRED SHOWING IS NOT IDENTICAL TO REQUIRING NO SHOWING.

*Hilton*[5] has not been over-ruled, and certainly has not been over-ruled by caselaw of the Fourth Circuit and is regularly cited by this Court in post-*Winter* jurisprudence:

> "Since the traditional stay factors contemplated individualized judgments in each case, the formula cannot be reduced to a set of rigid rules." Hilton v. Braunskill, 481 U.S. 770, 777 (1987). Accordingly, "[t]he court need not give these factors equal weight, but should consider all of the factors in light of the circumstances surrounding the injunction." MicroStrategy, Inc. v. Bus. Objects, S.A., 661 F. Supp. 2d 548, 558 (E.D. Va. 2009). Although the Fourth Circuit has not addressed the issue directly, many sister circuits treat the first two factors as a sliding scale, requiring a less rigorous showing of likelihood of success on appeal in the face of a compelling showing of irreparable harm. Id. (collecting cases). Absent a showing of likelihood of success on appeal, a movant must, at the very least, "demonstrate a substantial case on the merits," irrespective of the degree of irreparable harm. ePlus Inc. v. Lawson Software, Inc., 946 F. Supp. 2d 503, 507 (E.D. Va. 2013) (quoting Hilton, 481 U.S. at 778) (internal quotations and citations omitted). But see Combs v. FV–1, Inc., No. MJG–13–3734, 2013 WL 6662729, at *2 (D. Md. Dec. 16, 2013) ("[Movant] must satisfy each element for relief.").

*RLI Ins. Co. v. Nexus Servs. Inc.*, No. 5:18-CV-66, 2020 WL 7407466, at *2 (W.D. Va. Dec. 17, 2020); *see also Fitzgerald v. Alcorn*, No. 5:17-CV-16, 2018 WL 709979, at *1 (W.D. Va. Feb. 5, 2018).

Indeed, *Nken*,[6] decided after *Winter*[7] relied on *Hilton*. Nken v. Holder, 556 U.S. 418, 425-426 (citing *Hilton*, 481 U.S. 770).

---

[5] 481 U.S. 770.
[6] *Nken v. Holder*, 556 U.S. 418 (2009)
[7] 555 U.S. 7 (2008).

Defendants merely argued that in a *stay* analysis where one showing is shown with great weight the other showings need be shown to a lesser weight— this is the law this court has continued to follow and holdings of the Fourth Circuit relating to preliminary injunctions and the prior *Blackwelder*[8]-test have in no way changed this. *See generally Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013) (addressing injunctions and *Blackwelder*); *see also Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 215 n.7 (4th Cir. 2019) (same).

### III. MERITS AND THEIR RELEVANCY TO INJUNCTIVE PROVISIONS.

Briefly, Defendants sought to present an idea of the arguments that they will present on appeal; they did not seek to be verbose or to list every issue which would affect the viability of the injunctive provisions they sought to stay. They, rather, raised a select group of arguments which they believe would have prevented the entrance of the judgment *in toto* and such were sufficient to satisfy the applicable standard, *see generally*, *supra*; *see also* ECF Doc. No. 250 at 13-17 (demonstrating substantial questions on appeal).

### IV. TO THE EXTENT PLAINTIFFS WISH TO ADDRESS THE SPECIFIC INJUNCTIVE PROVISIONS DEFENDANTS WILL DO SO.

---

[8] *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co.*, 550 F.2d 189, 196 (4th Cir.1977)

To begin, certain injunctive provisions are impossible to comply with literally, and clearly would enjoin perfectly legal behavior. *See,* ECF Doc. No. 246 ¶¶ 54, 56 (presumably requiring substantial delay to allow for thirty-day prior notice if events unfold unexpectedly or quickly). For that reason, Defendants would contend that they are not clear and are overly broad. Defendants solely seek clarity in their request to stay these provisions.

Moreover, certain provisions appear to be clearly broader than that relief which was requested by Plaintiffs. *Compare* ECF Doc. No. 216 at 39-40 (requesting injunction of collection of monies relating to Original Agreement and GPS devices), *with* ECF Doc. No. 246 at ¶ 17(a) (enjoining collection of monies relating to *any* agreement existing between December 1, 2013 and April 1, 2024).

Federal Rules of Civil Procedure 65(d) applies to all "equitable decree[s] compelling obedience under the threat of contempt." *International Longshoreman's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n.*, 389 U.S. 64, 75 (1967); *see also Vaughn v. Amprey*, 117 F.3d 1415, No. 97-1507, 1997 WL 378068 (4th Cir. 1997); *Consumers Gas & Oil v. Farmland Industries, Inc.*, 84 F.3d 367, 370 (10th Cir. 1996) (the term "injunction" is not to be read narrowly but includes all *equitable decrees* compelling action under threat of contempt) (emphasis added). Because these are apparently orders enforceable by contempt the objective provisions *must* comply with Rule 65.

First, it is well-settled that "[i]n granting injunctive relief, the court's remedy should be *no broader than necessary to provide full relief to the aggrieved plaintiff*." *McLendon v. Continental Can Co.*, 908 F.2d 1171, 1182 (3rd Cir. 1990) (citing *Ameron, Inc. v. U.S. Army Corp. of Engineers*, 787 F.2d 875 (3rd Cir. 1986), *on reh'g*, 809 F.2d 979, *cert. granted*, 485 U.S. 958, *cert. dismissed*, 488 U.S. 918 (1988)) (emphasis added).

> An injunction "should be tailored to restrain no more than what is reasonably required to accomplish its ends." Consolidation Coal Co. v. Disabled Miners, 442 F.2d 1261, 1267 (4th Cir.), cert. denied, 404 U.S. 911, 92 S.Ct. 228, 30 L.Ed.2d 184 (1971). Although injunctive relief should be designed to grant the full relief needed to remedy the injury to the prevailing party, it should not go beyond the extent of the established violation.

*Hayes v. N. State L. Enf't Officers Ass'n*, 10 F.3d 207, 217 (4th Cir. 1993)

The injunctive relief here was broader than that requested—the Plaintiff's requested the injunctive relief they desired to remedy the wrongs they believe they suffered and *much* broader relief was granted—Defendants seek to stay that relief to the extent that it is overly broad, *i.e.*, beyond the scope of what Plaintiffs believed they required. *See* Donovan Decl.; *see also* ECF 249. Moreover, the injunctive provisions Defendants seek to stay appear to be overbroad because they enjoin acts and potential acts that were not adjudicated by the Court and require or bar acts that go well beyond the conduct that the Plaintiff's argued to be wrongful and the Court found unlawful; for instance, the sale of assets or creation of a new record keeping system not currently existing. *See* ECF Doc. No. 246 at ¶¶ 19, 65,

11

75. "In accord with the policy of [Rule 65(d)], the Supreme Court does not countenance overly broad injunctions due to the threat of costly contempt proceedings *for acts unrelated to those originally judged unlawful.*" *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 986 F.2d 476, 479 (Fed Cir. 1993) (citing *NLRB v. Express Pub. Co.,* 312 U.S. 426, 435-36 (1941)) (emphasis added).

Beyond that courts routinely find injunctions overbroad where the injunctions prohibit lawful conduct. *Mallet & Co. v. Lacayo,* 16 F.4th 364, 389 (3rd Cir. 2021) ("The description of the conduct enjoined should be narrowly tailored to reach only those acts that *closely relate to the unlawful conduct giving rise to an entitlement to injunctive relief* ... The injunction order here is problematic *because it extends the scope of the injunction to reach what appears to be lawful conduct.*") (emphasis added); *Roton Barrier, Inc. v. Stanley Works,* 79 F.3d 1112, 1121-22 (Fed. Cir. 1996) (reversing a preliminary injunction that completely prohibited a competitor from lawfully buying and reselling competing products); *E.W. Bliss Co. v. Struthers-Dunn, Inc.,* 408 F.2d 1108, 1113-17 (8th Cir. 1969) (setting aside a preliminary injunction for restraining otherwise lawful activity).

These injunctive provisions prevent what would be an otherwise lawful sale for no apparent reason and in contradiction with other provisions that appear to allow for such a sale to occur. *See generally* ECF Doc. No. 246 ¶¶ 19, 75.

In addition to being overbroad, the Court's injunctive provisions also violate Rule 65(d) because they are too vague, often confusing, occasionally contradictory, and the meaning of key terms is unknowable. *See, e.g.*, *id.* at ¶¶ 54, 56. Defendants are unable to understand the scope of the due to the nondescript and general language—this is true for *key terms*. *See, e.g.*, *Id.* at ¶¶ 75(requiring compliance with unspecified "applicable provisions").

Moving forward, Rule 65 provides that every order granting injunctive relief "shall set forth the reasons for its issuance…" *See also SEC v. Fundpack, Inc.*, 666 F.2d 612 (D.C. Cir. 1981); *Alberti v. Cruise*, 383 F.2d 268, 271-72 (4th Cir. 1967). The Court's reasoning for exceeding the scope of the relief requested is wholly unclear and certainly the reasons for such are not set forth with clarity. *See generally* ECF Doc. Nos. 246, 247.

**V. PLAINTIFFS MISS THE MARK ON EQUITIES AND IREPPARABLE HARM; MOREOVER, THEIR PREVIOUS REPRESENTATIONS AND REQUESTS BELIE THEIR ARGUMENTS.**

Plaintiffs contend that were the stay granted it would cause great harm and inequity—the irony of this is that the provisions Defendants seek to stay are not those briefed or requested. *See* Oppo. Mem. at 21. Indeed, had the Plaintiffs

wished for this injunctive relief or believed it required to prevent irreparable harm presumably they would have requested it. *See generally* ECF Doc. Nos. 1, 216, 222. Beyond this, it is telling that the Plaintiffs do not address the specific provisions which Defendants request (often with limitations stayed). *See generally* Oppo. Mem. at 9-10 (describing broad swaths of order in generalities rather than the exact provisions and the extent to which Defendants sought them stayed).

The reason for this is because much of it would be absurd, had they attempted to explain what they were actually opposing.

For instance, the Plaintiffs cannot state that requiring the report of certain developments (prior to their existence) would create harm; indeed, reporting such as soon as practicable "and in no event no later than 14 days after the development[,]" cannot reasonably be argued inequitable. *See* ECF Doc. No. 249 (requesting exactly this for paragraphs 54 and 56). This is what Defendants request, to take an injunction that in many cases might be impossible to literally preform, and in the case of the sale was—Defendants could not have reported the existence of an interested buyer 30 days prior to such existing or having knowledge of the same, nor indeed could they have reported the sale 30 days prior to its occurrence (the closing of the sale occurred on April 19, 2024 and Defendant's had no knowledge that it would occur until April 9, 2024 when the first meeting occurred relating to it). *See* Donovan Decl.

14

Likewise, staying the payment of monies, to the extent they are considered "injunctive," only seeks to ensure that if those provisions are not considered money judgments, and are equitable in nature, are temporarily stayed if injunctive to avoid contempt—it was generally prophylactic due to the lack of clarity; if those are money judgments, the Defendants have requested virtually nothing. *See* ECF Doc. No. 249 (requesting that relief).

In the same way, they seek to ensure that they need not *create from scratch* a new centralized recordkeeping system. *Id.* This is not seeking to destroy records, nor to avoid any provision of consumer protection law, nor to harm consumers, but to simply ensure that a *new* system need not be created for a very modest period of time.

Defendants seek to stay "17(a) to the extent that it enjoins Nexus Companies[9] from receiving payments in the normal course of business *that become due after the Effective Date*[.]" This would generally be in line with the Plaintiff's requested relief which would have prevented the collection of monies relating to GPS practices, the "Original Contract," *etc.*, in other words the exact injunctive relief Plaintiffs sought and now argue is inappropriate.

## VI.  THE SEVENTH CIRCUIT'S HOLDING AND DAMAGES

---

[9] Defendants refer to Libre by Nexus, Inc. and Nexus Services, Inc. as "Nexus Companies" throughout.

Defendants sought to stay the provisions relating to payment of monies to the extent they were equitable or injunctive; if they were, a not insane guess because they were due in 10 rather than 30 days, then they were miscalculated. *See generally Liu v. SEC*, 591 U.S. 71(2020) (rejecting net-profit calculation); *see also Consumer First Legal Grp., LLC*, 6 F.4th at 710-11 (reversing restitution based on net profits where it was not clear whether the district court was issuing legal or equitable relief). That is not a wild argument, but one based on holdings of the Supreme Court and based in the logic of the Seventh Circuit's holding in *Consumer First Legal Group.*

In that case, the Seventh Circuit looked at the Court's award and determined that the *Court* may have considered it equitable because as legal relief it would be nonsensical to have cited to caselaw dealing with equitable restitution and to utilize the term disgorgement as interchangeable with restitution. 6 F.4th at 710-11. If the restitution in this case was for "damages," or in other words a money judgment awarded at law rather than equitable relief, it would have been payable on 30 days and up until that point would have been automatically stayed pursuant to Rule 62(a). The Court apparently did not believe it subject to this provision and thus, Defendants assumed the Court must have meant it to be equitable relief.[10]

---

[10] It would be more sensical for a Court to be unfamiliar with little-known case law rather than a provision of the FRCP.

That in essence is the Plaintiff's argument. To the extent it was not equitable relief, there is still a very legitimate question as to whether or not the damages were correctly calculated. *See generally* ECF Doc. No. 221 at 13-15 (citing Complaint at ¶¶ 23, 35-36, 119, 242)); *see also id.* at 17-18 (noting, *inter alia* that plaintiffs must first demonstrate that the net profits are reasonable approximations of consumer loss and that such would be an inappropriate finding in this case). Here despite the fact that Defendant's defaulted there was evidence in the record that went to the benefits received by Nexus Companies clients. *Ibid.* The facts alleged in the Complaint were considered true. Those facts related that Nexus Companies in essence acted as an intermediary facilitating the release of people desperate for release. *Id.* at 13-15. Those people did have bonds secured for them. *See id.* Those people did get released. *See id.* Those people did get the very thing they were desperate for. *Id.*

While, were this a case involving a normal financial transaction or a normal Defendant it is highly likely that there would be consumers who would not have received the main benefit of their bargain, here, there was no question that Nexus Companies secured the very thing consumers desired. *Id.*

The matter was briefed, and the argument need not be repeated here, but the entire point being that where *generally* gross earnings minus refunds may approximate loss, such was inappropriate in this case, because here there was no

question that consumers received the very services and result which they sought, namely the issuance of a bond and freedom from immigration detention.

### VII. THE DEFENDANTS SEEK MODEST STAYS OF INJUNCTIVE PROVISIONS THAT WILL DO NO HARM AND AVOID NEEDLESS CONTEMPT HEARINGS ALLOWING A BUSINESS TO CONDUCT LAWFUL TRANSACTIONS.

The Defendants have stated that they would be happy to accept the injunctive provisions as originally requested—those provisions, based on previous arguments should be considered more than adequate to prevent irreparable harm. *See generally* ECF Doc. No. 216 (arguing for such relief).

Indeed, it is difficult to understand why Plaintiffs would not have requested the relief the Court ultimately granted had they believed it necessary or appropriate. There is now a great likelihood that a fragile transaction will falter doing no one any good based on injunctive provisions which likely run afoul of Rule 65. *See generally* ECF Doc. No. 250. Moreover, and more foundationally, it is unclear that a judgment should have ever been entered. *Ibid*.

While Defendants do not wish to continue arguments forever, the entire thrust of their motion was that there existed substantive questions on appeal that support the issuance of a stay and that such would represent *de minimus* harm at best to Plaintiffs; Plaintiffs cannot readily, or credibly, argue otherwise without answering why they failed to request the very broad relief actually granted by the Court.

Moreover, the harms that Defendants will suffer are close to certain, one of which including contempt, the others involving debilitating injunctive provisions which appear better tailored to ensure the failure of a business rather than to prevent harm—indeed, to the extent that the provisions prevented a sale (again it is unclear to Defendants whether or not this was the case), it appears that the provisions at issue were designed to ensure failure and dissuade any investor or purchaser from acquiring the business. *See generally* ECF Doc. No. 246 at ¶¶ 17, 19, 75. It is this, the death of a business, whether that be Nexus or Libre Immigration Services, Inc. which Defendants seek to prevent.

## **CONCLUSION**

Defendants have requested an extremely reasonable stay of specific provisions of injunctive relief, this should occur under the applicable standard set forth in *Hilton*.

Dated: May 2, 2024                                          Respectfully submitted,

Washington, DC                                                /s/Zachary Lawrence

                                                                Lawrence Law Firm PLLC
                                                                 166 Five Acres Lane
                                                                 Cold Brook, NY 13324
                                                                 202-468-9486
                                                                 zach@zlawpllc.com
                                                                 *Pro hac vice* (NY Bar No.: 5798202)
                                                                 *Attorney for Defendants*