IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

CONSUMER FINANCIAL PROTECTION
BUREAU, et al.,

   Plaintiffs,

v.

NEXUS SERVICES, INC., et al.,

   Defendants.

Case No.:  5:21-cv-00016-EKD-JCH

**MOTION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANTS AND LIBRE IMMIGRATION SERVICES, INC. SHOULD NOT BE HELD IN CONTEMPT AND SUPPORTING MEMORANDUM**

This Court's April 1, 2024 Amended Final Judgment and Order (Judgment) prohibits Defendants from transferring consumer data and selling any right to collect on contracts that the Court found unlawful.[1] But two weeks later, Defendants sold, and Libre Immigration Services, Inc. (LIS) bought, the consumer data and contracts.[2] In their filings following the sale and through representations made by Defendants' counsel at the hearing before the Court on May 28, 2024, Defendants and LIS removed any doubt that Defendants sold consumer data and the right to collect on their contracts in contravention of the Judgment. Plaintiffs Consumer Financial Protection Bureau, the Commonwealths of Massachusetts and Virginia, and the State of New York therefore move the Court for an order requiring Defendants and LIS to show cause why each should not be held in contempt for violating the Judgment.

## BACKGROUND

The Judgment requires Defendants to pay more than $230 million in redress to consumers and a collective $580 million in civil penalties.[3] The Judgment also protects consumers from further harm through injunctive provisions, such as a prohibition on making various types of misrepresentations, prohibitions on collecting and retaining payments based on existing contracts, and a requirement to disclose certain facts in an accessible language before a customer enrolls.[4]

Relevant to the instant motion, the Judgment establishes guardrails if Defendants transfer any part of their business. It provides that if Defendants seek "to transfer or assign all or part of their operations that are subject to this Order, Defendants must, as a condition of sale, obtain the

---

[1] Am. Final J. Order (Am. J.) ¶ 19(b), ECF No. 246.
[2] Individual Defendants Ajin and Donovan signed the purchase and sale agreement on behalf of Nexus Services, Inc. and Libre by Nexus, Inc. (Entity Defendants). It is not clear what level of involvement Defendant Moore has in Entity Defendants generally or the sale specifically; given the ambiguity, Defendant Moore should similarly show cause as to why he should not be held in contempt for violating the Court's Judgment.
[3] Am. J. ¶¶ 6–10.
[4] Id. ¶¶ 14, 15, 17, 18.

written agreement of the transferee or assignee to comply with all applicable provisions of this Order."[5] And the Judgment also makes clear that there are some things Defendants cannot transfer at all: to protect the consumers Defendants deceptively enrolled from further harm, Paragraph 19 prohibits Defendants and "all other persons in active concert or participation with any of them" from "disclos[ing], us[ing], or benefit[ing] from customer information" and "attempt[ing] to collect, sell, assign or otherwise transfer any right to collect payment from any consumer who entered into an agreement for Nexus Immigration Bond Services with Defendants."[6]

On April 11, 2024, Defendants moved to stay significant portions of the Judgment, including Paragraph 19, to enable a sale of Libre by Nexus, Inc. and Nexus Services, Inc to LIS.[7] But before Plaintiffs had an opportunity to respond to the motion, Defendants and LIS completed the sale.[8] LIS was aware of the Judgment at the time of the sale: LIS's CEO, Vincent J. Smith, declared that he had "reviewed the Court's Amended Judgment and Order" and agreed "to comply with all applicable provisions of that Order, pursuant to Paragraph 75 of that Amended Judgment and Order."[9] The purchase and sale agreement also acknowledged the Judgment.[10] At the May 28, 2024 hearing on Defendants' stay motion, Defendants' counsel confirmed before the Court that: (1) LIS had notice of the Judgment before the sale; and (2) the sale is complete.

---

[5] *Id.* ¶ 75.
[6] *Id.* ¶ 19.
[7] Defs.' Mot. for a Temp. Stay Pending Appeal, ECF No. 249.
[8] *See* Decl. of Vincent J. Smith (Smith Decl. in Supp. of Mot. to Stay) ¶ 2, ECF No. 253; Asset Purchase Agreement, ECF No. 253-1.
[9] Smith Decl. in Supp. of Mot. to Stay ¶ 3.
[10] Asset Purchase Agreement § 1.03(a)(v) ("Buyer shall assume and agree to pay, perform, and discharge . . . those Liabilities arising from the Amended Order and Judgment, entered April 1, 2024, and which were required to be transferred pursuant to paragraph 75, in *CFPB, et al. v. Libre by Nexus, Inc., et al.*, No. 5:21-cv-00016 (W.D. Va.) . . . ."); *id.* ("Liabilites [*sic*] required transferred per court order in CFPB, et al. v. Libre by Nexus, Inc., et al., No. 5:21-cv-00016" under "Included Liabilities").

Despite full awareness of the Judgment and Paragraph 19's express prohibitions, Defendants sold, and LIS bought, consumer data and contracts, including: accounts receivables;[11] contracts;[12] and books and records, including "customer lists," "customer purchasing histories," and "customer complaints and inquiry files."[13] The purchase and sale agreement, dated April 17, 2024, specifically listed the sale of: "Libre Client Accounts," "Libre Email List," "Libre Text List," "Immigration Legal List," "VA-Criminal Legal List," "Accounts Receivable,"[14] and "[a]ll other Contracts which Nexus Services, Inc. and Libre by Nexus, Inc. have rights under," which includes the contracts that Defendants entered with consumers that are covered by the Judgment.[15] Two days later, LIS acquired those assets.[16]

Then, LIS (represented by the same counsel as Defendants) sought to intervene in Defendants' appeal of this case in the Fourth Circuit to contest the obligations it is required to assume under the Judgment and request the invalidation of Paragraph 19.[17] LIS's stated basis for intervention is to protect its interests, which LIS claims are "fundamentally different" from Defendants', because Defendants have sold LIS assets relevant to Paragraph 19 and thus do not have an interest in challenging that provision.[18] LIS's motion confirmed that Defendants have, in fact, sold—and LIS has bought—Defendants' consumer data and contracts, including the right to

---

[11] *Id.* § 1.01(b).
[12] *Id.* § 1.01(d).
[13] *Id.* § 1.01(i).
[14] *Id.* (listing items under "Intangible Property and Cash").
[15] *Id.* (listing items under "Assigned Contracts").
[16] Libre Immigration Services, Inc.'s Mot. to Intervene at 4, *CFPB v. Nexus Servs., Inc.*, No. 24-1334 (4th Cir. filed May 1, 2024), ECF No. 11-1 ("Intervenor acquired the assets of Corporate Appellants on April 19, 2024."); *id.* at 10 ("[u]ntil April 19, 2024, when LIS acquired the assets of Corporate Appellants"); *id.* at 11 ("Intervenor [] closed on the purchase of assets on April 19, 2024.").
[17] *See id.* at 5.
[18] *See id.* at 17 ("While Corporate Appellants *could* prior to the acquisition have made those arguments, they are no longer available to them because they have now transferred the assets to LIS.").

3

collect under those contracts.[19] Plaintiffs have opposed LIS's motion; the motion is currently pending before the Fourth Circuit.

# ARGUMENT

I. **Legal Standard**

This Court has inherent authority to enforce compliance with its orders through the remedy of civil contempt. To establish contempt, the moving party must show by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's favor; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that the movant suffered harm as a result.[20]

II. **Defendants Sold, and LIS Bought, Consumer Data and Contracts in Violation of the Judgment.**

No doubt exists regarding Defendants' and LIS's actual knowledge of the Court's Judgment. The Judgment bound all Defendants and LIS, which had actual notice of the Judgment and acted in concert with Defendants.[21] Nor is there any doubt that the Court issued the Judgment in Plaintiffs' favor; the Judgment enjoined Defendants from harming consumers, required consumer redress, and ordered civil money penalties.

Defendants and LIS also cannot contest that Defendants sold, and LIS purchased, consumer data and contracts despite the Judgment's unequivocal prohibitions. Paragraph 19's

---

[19] *Id.* at 4 ("As part of the asset purchase agreement, Intervenor was assigned rights to Corporate Appellants' contracts, assumed liabilities and obligations under the judgment and order, and obtained virtually all assets of Corporate Appellants."); *id.* at 20 ("Corporate Entities have assigned contracts to LIS . . . ."); *id.* at 17 ("[O]nly LIS has an operating concern that interreacts [*sic*] with clients . . . .").
[20] *FTC v. Pukke*, 53 F.4th 80, 101 (4th Cir. 2022) (quoting *De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 529 (4th Cir. 2022)) (cleaned up).
[21] *See* Fed. R. Civ. P. 65(d)(2)(C) (providing that injunction binds "persons who are in active concert or participation with" a party who receive "actual notice" of the order); Am. J. ¶ 19 (specifically binding Defendants as well as "all other persons in active concert or participation with" Defendants "who receive actual notice of this Order"); Smith Decl. in Supp. of Mot. to Stay ¶ 3 (stating that LIS's CEO had reviewed the Order); Asset Purchase Agreement § 1.03(a)(v), Included Liabilities.

provisions are uncomplicated: Paragraph 19a prohibits Defendants and those acting in concert with them from disclosing, using, or benefitting from consumer data; Paragraph 19b prohibits Defendants and those acting in concert with them from, among other things, attempting to sell, assign, or otherwise transfer any right to collect payments on existing consumer contracts. The purchase and sale agreement contains definite and specific terms and provisions demonstrating that Libre sold, and LIS bought, (1) consumer data; and (2) consumer contracts, including the right to collect on them in the future.[22] And LIS's motion to intervene in the appellate court, as well as Defendants' most recent representations at the stay hearing, further confirmed the sale of consumer data and contracts.[23]

Although all of the filings make plain that Defendants have sold the consumer data and contracts, LIS newly claimed in its Fourth Circuit reply briefing on its intervention motion that a Libre contractor—Subversivo LLC—is in current possession of the consumer data and contracts.[24] Even if that were so, it does not change the conclusion that Defendants and LIS are in violation of Paragraph 19. As a special master in another case in this district involving the same Entity Defendants recently found, "Nexus's statements through counsel that the debtor is unable to retrieve data and documents from Subversivo are not credible," and the entire arrangement between Libre and Subversivo was "little more than" a "fraudulent conveyance" designed to shield assets from creditors.[25] The terms of the agreements between Libre and Subversivo confirm that Libre continued to have access to consumer data and a residual right to collect on

---

[22] Asset Purchase Agreement § 1.01, Intangible Property and Cash, Assigned Contracts; *see also infra* n.11–15.
[23] Libre Immigration Services, Inc.'s Mot. to Intervene at 4, 20, *CFPB v. Nexus Servs., Inc.*, No. 24-1334 (4th Cir. filed May 1, 2024), ECF No. 11; *see also infra* n.16, 18, 19.
[24] *See* Decl. of Vincent Smith (Smith Decl. in Supp. of Mot. to Intervene) ¶¶ 7, 14, *CFPB v. Nexus Servs., Inc.*, No. 24-1334 (4th Cir. filed May 20, 2024), ECF No. 22-2.
[25] *RLI Ins. Co. v. Nexus Servs., Inc.*, No. 5:18-CV-066, 2024 WL 2237678, at *4 (W.D. Va. May 17, 2024).

consumer contracts,[26] which has now been transferred to LIS. Indeed, LIS even conceded in the Fourth Circuit that it now stands in Libre's shoes with respect to those contracting agreements, and will seek to take back any functional control from Subversivo "as soon as humanly possible."[27]

The sale of consumer data and contracts injures the government agency Plaintiffs' ability to protect the consumers who were harmed by Defendants' unlawful conduct. Much of the Judgment is targeted at ensuring Defendants' and others' present and future compliance.[28] Paragraph 19 is necessary to ensure that consumer data and contracts are kept in the possession of one entity so Plaintiffs can best monitor compliance with the Judgment. By selling the consumer data and contracts, Defendants disregarded this core protection the Court put in place for consumers who were harmed by Defendants' underlying conduct. Defendants' and LIS's contumacious conduct further elevates the risk that consumer data will be abused. This prohibited transfer threatens to expose consumers' personal and financial information to be used and benefited from without consumers' knowledge and increases the likelihood that LIS or a subsequent purchaser will attempt to evade the Judgment's protections. The illegal transfer of consumers' contracts not only harms consumers, who may face collections on debts they do not owe but also undermines the Judgment's other prohibitions on collecting and retaining payments.[29]

---

[26] *See* Admin. Servs. Agreement at 2, *CFPB v. Nexus Servs., Inc.*, No. 24-1334 (4th Cir. filed May 20, 2024), ECF No. 22-3 (giving Libre the "absolute right to inspect, make copies of, or otherwise review" Subversivo's "program records"); Loan Repayment Agreement at 5–6, *CFPB v. Nexus Servs., Inc.*, No. 24-1334 (4th Cir. filed May 20, 2024), ECF No. 22-3 (providing that assignment from Libre to Subversivo of right to repayment from collecting on consumer contracts will be released upon full repayment of $1 million loan).
[27] Smith Decl. in Supp. of Mot. to Intervene ¶ 13.
[28] *See, e.g.,* Am. J. ¶¶ 14–19; 54–67; 71–73.
[29] *See* Am. J. ¶ 17.

6

**III.     Requested Relief**

In light of the violations set forth above, Plaintiffs request that the Court order Defendants and LIS to show cause why they should not be held in contempt for their violations of this Court's order.

If the Court finds Defendants and LIS in civil contempt, the Court has broad discretion to fashion an appropriate remedy.[30] "[T]he remedies and sanctions must be remedial and compensatory and, unlike criminal contempt, nonpunitive."[31] In this case, the Court should order LIS and Defendants to reverse the portions of the sale that violate the Judgment, specifically the sale of consumer data and the sale or assignment of consumer contracts that are covered by the Judgment. LIS must destroy any duplicates of consumer data and contracts in its possession. All parties must confirm compliance to this Court's satisfaction (including through, at a minimum, an attestation). LIS and Defendants should also be ordered to immediately cease collecting on any outstanding contracts if they are doing so; and disclose, account for, and disgorge to consumers all money collected on the contracts to date within fourteen days of being found in contempt. The Court could also consider monetary sanctions against LIS and Defendants on a per day basis for failing to comply in the time stated.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion and order the requested relief set forth above.

---

[30] *See In re Gen. Motors Corp.*, 61 F.3d 256, 259 (4th Cir. 1995) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193–94 (1949)).
[31] *Id.* (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 302–04 (1947)).

Dated: May 30, 2024

Respectfully submitted,

*Attorneys for the Consumer Financial Protection Bureau*

Eric Halperin
    *Enforcement Director*
Alusheyi J. Wheeler
    *Deputy Enforcement Director*
Kara K. Miller
    *Assistant Litigation Deputy*

**Hai Binh T. Nguyen**
California Bar Number: 313503
Leanne E. Hartmann
California Bar Number: 264787
Lee I. Sherman
California Bar Number: 272271
Stephanie B. Garlock
D.C. Bar Number: 1179629
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Telephone (Nguyen): (202) 435-7251
Telephone (Hartmann): (415) 844-9787
Telephone (Sherman): (202) 374-4575
Telephone (Garlock): (202) 435-7201
Email: haibinh.nguyen@cfpb.gov
Email: leanne.hartmann@cfpb.gov
Email: lee.sherman@cfpb.gov
Email: stephanie.garlock@cfpb.gov

*Attorneys for the Commonwealth of Virginia, ex rel. Jason S.*
    *Miyares, Attorney General*

Jason S. Miyares
    *Attorney General*
Charles H. Slemp, III
    *Chief Deputy Attorney General*
Steven G. Popps
    *Deputy Attorney General*
Richard S. Schweiker, Jr.
    *Chief and Senior Assistant Attorney General*

**James E. Scott**
Senior Assistant Attorney General
Virginia Bar Number: 88882

Office of the Attorney General
Consumer Protection Section
202 North Ninth Street
Richmond, VA 23219
Telephone: (804) 225-4778
Fax: (804) 786-0122
Email: jscott@oag.state.va.us

*Attorneys for the Commonwealth of Massachusetts*

Andrea Campbell
    *Attorney General*

**Jon Burke**
Massachusetts Bar Number: 673472
Assistant Attorney General
Office of the Attorney General
10 Mechanic Street
Worcester, MA 01608
Telephone: (774) 214-4416
Fax: (508) 795-1991
Email: Jonathan.burke@mass.gov

*Attorneys for the People of the State of New York*

LETITIA JAMES
    *Attorney General*

Jane Azia (New York Bar Number: 1539600)
    *Bureau Chief for the Bureau of Consumer Frauds and Protection*
Laura Levine (New York Bar Number: 2337368)
    *Deputy Bureau Chief for the Bureau of Consumer Frauds and Protection*

**Franklin H. Romeo**
New York Bar Number: 4422051
Assistant Attorney General
Office of the Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8320
Fax: (212) 416-6003
Email: franklin.romeo@ag.ny.gov

9