UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

|  |  |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, *et al.*, <br> Plaintiff, <br><br> v. <br><br> NEXUS SERVICES, INC., *et al*., <br> Defendants. | No.: 5:21-cv-00016-EKD-JCH |

## **DEFENDANTS'MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE.**

## **INTRODUCTION**

The Plaintiffs have not demonstrated the elements of civil contempt by clear and convincing evidence. They will never be able to do so vis-à-vis the sale of assets and the current state of the Amended Judgment and Order (ECF Doc. No. 246) (the "Order").

Beyond this, the motion should simply not have been filed: neither Nexus nor LIS intended for the sale, purchase, or assignment, of assets which would violate the Court's Amended Judgment and Order and Nexus and LIS would simply have consented to a modification of the contract to confirm the scope of Section 1.05 and that it operates as it is written, *i.e.*, it prevents the transfer and assignment of assets that would violate the law notwithstanding any other

provision of the sales agreement.[1] *See generally* Donovan Decl.; Smith Decl.; ECF Doc. No. 253-1 (the "Sale Agreement").

## RELAVENT FACTS

First, and dispositive, the Sale Agreement has a clause dealing with non-assignable assets; no assets were transferred, assigned or sold that would constitute a violation of law. Sale Agreement at § 1.05.

That clause begins

(a)***Notwithstanding anything to the contrary in this Agreement***, this Agreement shall not constitute a sale, assignment or transfer of any Purchased Asset if such sale, assignment or transfer: (i) violates applicable Law; or (ii) requires the consent or waiver of a Person who is not a party to this Agreement or an Affiliate of a party to this Agreement and such consent or waiver has not been obtained prior to the Closing.

*Id.* (emphasis and boldface added).

This provision continues in predictable fashion, and goes on to state that Nexus shall utilize commercially reasonable efforts to effect the transfer or sale to the extent possible after closing and that to the extent such cannot occur, Nexus Companies will hold the assets in trust, to the extent such is legal:

(b) Following the Closing, Seller and Buyer shall use commercially reasonable efforts, and shall cooperate with each other, to obtain any such

---

[1] The instant motion practice is a perfect illustration of why counsel should be required to meet and confer prior to filing motions and Nexus' counsel *literally* the day before the filing of this motion broached the idea of mooting the appeal and curing the ambiguity of the injunctive provision through an indicative ruling. This would have both avoided this motion practice and potentially mooted the need for appeal. *See* Lawrence Decl. at ¶ 11.

required consent or waiver, or any release, substitution or amendment required to novate all Liabilities under any and all Assigned Contracts or other Liabilities that constitute Assumed Liabilities or to obtain in writing the unconditional release of all parties to such arrangements, so that, in any case, Buyer shall be solely responsible for such Liabilities from and after the Closing Date; *provided, however,* that neither Seller nor Buyer shall be required to pay any consideration therefor. Once such consent, waiver, release, substitution or amendment is obtained, Seller shall sell, assign and transfer to Buyer the relevant Purchased Asset to which such consent, waiver, release, substitution or amendment relates for no additional consideration. Applicable sales, transfer and other similar Taxes in connection with such sale, assignment or transfer shall be paid by Buyer in accordance with Section 5.04.

(c) To the extent that any Purchased Asset or Assumed Liability cannot be transferred to Buyer pursuant to this Section 1.05, Buyer and Seller shall use commercially reasonable efforts to enter into such arrangements (such as subleasing, sublicensing or subcontracting) to provide to the parties the economic and, to the extent permitted under applicable Law, operational equivalent of the transfer of such Purchased Asset and/or Assumed Liability to Buyer as of the Closing. Buyer shall, as agent or subcontractor for Seller, pay, perform and discharge fully the liabilities and obligations of Seller thereunder from and after the Closing Date. To the extent permitted under applicable Law, Seller shall, at Buyer's expense, hold in trust for and pay to Buyer promptly upon receipt thereof, all income, proceeds and other monies received by Seller from and after the Closing Date, to the extent related to such Purchased Asset in connection with the arrangements under this Section 1.06. Seller shall be permitted to set off against such amounts all direct costs associated with the retention and maintenance of such Purchased Assets.

*Id.*

Section 1.05 clearly applies notwithstanding any other language to the contrary. *Id.*

Next, and equally dispositive, the Order at issue is simply vague and cannot support contempt. *See generally* Order.

3

Next, and also dispositive, Nexus had well before the Order assigned contracts to a third party; assuming in the future such a third party were to re-assign such rights back to LIS or Nexus, obviously the same would not grant LIS or Nexus (both bound by the Court's Order) the right to collect on those contracts and further it is unclear when, if, and how such will occur. *See* Donvoan Decl. at ¶¶ 11-13; *see also* Smith Decl. at ¶¶ 11-14; *CFPB v. Nexus Servs., Inc., et al.*, Case No.: 24-1334 (Dkt. No. 22-2 at 2; 22-3) (4th Cir. May 20, 2024). Quite frankly, by the time such occurs it is highly likely that certain provisions of the Order will be defined with more clarity nothing contemptuous will occur. *See CFPB v. Nexus Servs., Inc., et al.*, Case No.: 24-1334 (Dkt. No. 24) (4th Cir. Jun. 6, 2024).

Beyond this, to date, Nexus has not disclosed any client information to LIS; moreover, such information is being held in trust until the scope of the injunction is made clear pursuant to further court order. *See* Donovan Decl. at ¶¶ 8-9; *see also* Smith Decl. at ¶¶ 7-8.

All of the above is compounded by the following:

1. Nexus obviously lacked any right to collect on client contracts, entered into prior to April 1, 2024, at the time of the sale and did not transfer any rights that it lacked, including a non-existent contractual right to collect on historic contracts;

2. LIS, equally is bound by Order, and even were it assigned a right to collect on historic contracts such would be illusory, because of paragraph 75 of the Order; and

3. Neither Nexus nor LIS currently has the ability to collect on past contracts, regardless of the Order, because such was already assigned to a third party and would not be "re-assigned" until significant monies were paid.

*See* Donovan Decl. at ¶¶ 9-13; *see also* Smith Decl. at ¶¶ 10-14; *CFPB v. Nexus Servs., Inc., et al.*, Case No.: 24-1334 (Dkt. No. 22-2 at 2; 22-3) (4th Cir. May 20, 2024).

Beyond all of the above, the Plaintiffs can point to no actual damages they have suffered; the damages are in essence illusory and based on a chain of actions that are at best unlikely to occur. *See generally* ECF Doc. No. 260 at 7.[2]

## **ARGUMENT**

### I.   **STANDARDS OF CONTEMPT AND CONTRACT INTERPRETATION WERE GENERALLY IGNORED BY PLAINTIFFS.**

To begin, contempt requires the moving party to demonstrate by clear and convincing proof such has each element of civil contempt is present. United v. Ali, 874 F.3d 825, 831 (4th Cir. 2017). This is generally not an easy task and becomes

---

[2] Defendants utilize header stamped page numbering rather than the internal pagination.

impossible when an order is ambiguous, *see generally CFPB v. Klopp*, 957 F.3d 454, 464 (4th Cir. 2020) (holding "party cannot be held in contempt for violating an ambiguous court order . . .") (quoting *Acosta v. La Piedad Corp.*, 894 F.3d 947, 951 (8th Cir. 2018)). Where an order is ambiguous and there exist multiple good faith interpretations of the order it becomes impossible either to demonstrate that the order has been violated by clear and convincing proof or that the alleged violator of that order has knowledge that their behavior is in violation of the order. *Id.*

Beyond this, for contempt to lie, the order at issue cannot be vague and cannot violate Rule 65. *See generally Scott v. Clarke*, 355 F.Supp.3d 472, 492 (W.D.Va. 2019)*, aff'd* 852 Fed.Appx. 727 (4th Cir. 2021); *accord Klopp*, 957 F.3d at 464. In other words, if the enjoined party is left to guess at what they may and may not do under the order, contempt simply will not lie; and if an order fails to comply with Rule 65(d) it is simply not valid, thus contempt will not lie.

In the instant case, presumably, a responsible party would have addressed whether or not there existed ambiguity in either the Court's Amended Judgment and Order or the Sale Agreement and then if such were the case, take part in significant interpretation to demonstrate that a single interpretation of each was the only possible acceptable interpretation and that clearly the definitive interpretation of the Order prohibited the activity which with certainty had occurred under the

definitive interpretation of the contract. This of course was never done. *See generally* ECF Doc. No. 260 (taking part in no substantive interpretation of either the Sale Agreement or Order).

While Defendants, quite frankly do not believe that the Sale Agreement is subject to multiple good faith interpretations, they will address those interpretations below, as they may relate to various interpretations of the Order.

Plaintiffs likely have not taken part in this analysis because such would have made the frivolity of their motion obvious: the Fourth Circuit rather recently reversed a finding of contempt where there was both a broad a narrow reading of an order, creating ambiguity, which in turn barred contempt. *See Klopp*, 957 F.3d at 464 (4th Cir. 2020) (recognizing that "expansive" reading was of course possible, but rejecting it for the purposes of contempt after applying rules of contract interpretation).

Beyond this, Plaintiffs skirt any substantive analysis of whether or not there is a "valid order" under the Fourth Circuit's jurisprudence. This again, is likely because none exists.

*Scott,* 355 F. Supp. 3d at 491, dealt with the existence of a "valid order"; the plaintiffs there argued that the defendant had waived its right to complain about an injunction not complying with Rule 65. However, the district court concluded it could not ignore Fourth Circuit precedent, and that an order that fails to comply

with the mandates of Rule 65 cannot be a "valid" court order which would subject a litigant to contempt. *Scott,* 355 F. Supp. 3d at 493.

> The district court concluded:
>
> Nonetheless, the Court is bound by the Fourth Circuit's clear statements in *CPC, Thomas,* and *Alberti* that Rule 65(b) is mandatory. If a trail is to be blazed through or around those precedents, the Fourth Circuit should be the one to blaze it. *See Stop Reckless Econ. Instability Caused by Democrats v. F.E.C.*, 814 F.3d 221, 230 (4th Cir. 2016). Accordingly, the Court holds that it cannot at present enforce the Settlement Agreement through contempt.
>
> *Id.*

As a result, the court would not find the defendant in contempt for violating the injunction which did not comply with Rule 65(d). The Fourth Circuit subsequently affirmed the district court's, stating that "[t]he Trial Opinion is well-reasoned and carefully crafted, and we are satisfied to resolve this appeal by adopting the reasoning embodied in that Opinion ...." *Scott,* 852 F. App'x at 731. The Court of Appeals even referred to the injunction as invalid (due to noncompliance with Rule 65(d)); *see also id.* at 731 n.4 ("the district court correctly concluded that contempt was unavailable for want of a valid court order"). Though, it appears that the question of the existence of a "valid court order" is more determined by the existence of an unambiguous command rather than strict compliance with Rule 65. *Id.* ("But regardless of Rule 65(d)'s relevance, the district court correctly concluded that contempt was unavailable for want of a valid court order. *See In re Gen. Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995)

8

("Civil contempt is an appropriate sanction if we can point to an order ... which sets forth in specific detail an unequivocal command which a party has violated." (internal quotation marks omitted))").

Regardless, the Plaintiffs have neither demonstrated that the Order is unequivocal, by clear and convincing proof, or that it complies with Rule 65.

## II.   THE COURT'S ORDER DOES NOT CLEARLY COMPLY WITH RULE 65 AND IN ANY EVENT DOES NOT UNEQUIVOCALLY SET FORTH COMMANDS, THUS IS NOT A "VALID COURT ORDER" FOR THE PURPOSES OF CONTEMPT.

### A. Interpretation of the Court's Order

Interpretation of injunctions is an unfortunately complicated business. *See, e.g.*, F. Andrew Hessick & Michael T. Morley, *Interpreting Injunctions*, 107 Va. L. Rev. 1059, 1061 (2021) (analyzing at length the inconsistency of courts' interpretation of injunctions as well as various schools of interpretation). While it does not exactly appear that fully binding case law exists on the proper interpretation of an injunction, the Fourth Circuit in similar circumstances has utilized statutory or contract style interpretation with a consent order and this is generally the interpretive framework Nexus' counsel utilized in providing advice to defendants. *See generally Klopp*, 957 F.3d 463-464 (utilizing norms of contract interpretation for consent order in the context of contempt); *see also* Lawrence

Decl. at ¶¶ 5-10. In any event it is a more coherent school of interpretation than simply concluding the meaning of an order with *no substantive analysis.*

First, presumably, the Order—especially, one such as this with multiple mandates—should be interpreted as a whole. *See generally*, *See, e.g., Graham Cnty. Soil and Water Conserva. Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 290 (2010) (holding courts have a duty to avoid interpreting provisions in isolation) (citing *Gustafson v. Alloyd Co.,* 513 U.S. 561, 568 (1995)). One cannot simply remove portions of the injunctive provisions and examine them in isolation, but rather must consider how the injunctive relief acts *in toto* to reach a meaningful interpretation. *Id.*

Second, the injunctive provisions of the Order, to the extent possible should be read in harmony and to not contradict with one another. *See Speaks v. U.S. Tobacco Coop., Inc*., 31 F.4th 838, 843 (4th Cir. 2022) (citing *Burgess v. Joseph Schlitz Brewing Co.*, 298 N.C. 520, 259 S.E.2d 248, 251 (1979) and Antonin Scalia & Bryan A. Garner, *Reading Law*: *The Interpretation of Legal Texts* at 180-182 (2012)).

Third, an avoidance principle should be involved, where possible, to make the injunction legal, *i.e.*, not violative of either the Constitution or Rule 65, where such is possible. *See, e.g.*, *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018) (noting

where multiple constructions are possible the interpretation that would be legal is preferable).

Lastly, certain traditional cannons, *esjudem generis, noscitur a sociis*, *generalia specialibus non derogant*, *etc.*, should be utilized to allow one to meaningfully interpret particular words based on those around them and to allow one to assume that the broader provisions are not meant to vitiate more specialized provisions. *See generally* Gardner & Scalia, *supra*, *Reading Law*; *see also* R. Randall Kelso, *Statutory Interpretation Doctrine on the Modern Supreme Court and Four Doctrinal Approaches to Judicial Decision-Making*, 25 Pepp. L. Rev. 37 (1997) (setting forth various traditional maxims of statutory interpretation); *see also Klopp*, 957 F.3d at 464 (utilizing *esjudem generis* for interpretation).

All this said, there are two pertinent provisions, here:

Should Defendants seek to transfer or assign all or part of their operations that are subject to this Order, Defendants must, as a condition of sale, obtain the written agreement of the transferee or assignee to comply with all applicable provisions of this Order.

Order, ¶ 75.

Nexus interpreted the same as allowing for the sale of all or part of the its operations, including the sale of substantially all assets, so long as buyer assumed "applicable provisions of this order[,]" which is what occurred here. This in essence, would place the Plaintiffs in no worse position because the buyer would

be subject to the "applicable provisions" of the Order and thus in the same position vis-à-vis compliance with the Order. Were a substantial sale of all assets not possible, or were a sale of the companies simply barred, then it would be somewhat nonsensical to contain this paragraph.

Paragraph 19, states:

19. Defendants, and their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, may not:
a. disclose, use, or benefit from customer information, including names, addresses, telephone numbers, email addresses, social security numbers, other identifying information, or *any data that enables access to a customer's account* (including a credit card, bank account, or other financial account), that Defendants obtained before the Effective Date in connection with the offering and provision of Nexus Immigration Bond Services; and
b. attempt to collect, sell, assign, or otherwise transfer any right to collect payment from any consumer who entered into an agreement for Nexus Immigration Bond Services with Defendants.

*Id.* at ¶ 19 (emphasis added).

As to the injunction in paragraph 19, Nexus did and does not see that as preventing a sale of substantially all assets with the buyer bound by the same injunctions,[3] or otherwise preventing legal activities, but rather preventing Nexus from simply off-loading these assets to a party who would not be subject to the

---

[3] All of this is colored by Rule 65, which would prevent an overly broad injunction from prohibiting wide swaths of legal activity and the facts alleged in the Complaint, along with the relief requested, *i.e.*, what the injunctions presumably were meant to enjoin.

same injunctive provisions allowing for that buyer to cause harm similar to that complained of in the Complaint. *See* ECF Doc. No. 1.

In essence, it was a provision, that rather sensibly was aimed at preventing circumvention of the injunctive mandates of the order.

If this Court were to apply the interpretive norms of the Fourth Circuit, *see Klopp*, 957 F.3d 463-464  (utilizing rule of *esjudem generis* in contempt analysis), something which seems reasonable, the Court would utilize *noscitur a sociis* to interpret the provision barring  the "disclos[ure], use, or benefit from customer information, including names, addresses, telephone numbers, email addresses, social security numbers, other identifying information, or *any data that enables access to a customer's account* (including a credit card, bank account, or other financial account)" to determine that Nexus is barred from disclosing information that would allow access to customer's financial accounts, including names, telephone numbers, *etc.* Indeed, it was this interpretive style that led the Fourth Circuit in *Klopp* to favor a narrower interpretation in finding that the defendant was barred from the mortgage industry in certain circumstance, but not barred from the industry overall as the CFPB argued in that matter. *Id.*

The entire basis underlying the interpretive analysis of the Fourth Circuit in that matter was because

> subjecting a litigant to contempt liability—whether civil or criminal—
> requires a clear indication of what is prohibited. *See Acosta v. La Piedad*

*Corp.*, 894 F.3d 947, 951 (8th Cir. 2018) ("A party cannot be held in contempt for violating an ambiguous court order."). An order limited "as follows" is hardly a clear imposition of a similarly comprehensive ban.

*Id.* at 464.

Indeed, the failure to properly and honestly interpret the order at issue simply prevents the Plaintiffs from meeting their rather substantial burden.

This reading, that Nexus believes correct, is generally colored by both the Complaint and the relief requested by the Plaintiffs in their briefings; Nexus is assuming that the injunctive provisions, to the extent possible are narrowly tailored and meant to prevent irreparable harm as the Plaintiffs thought necessary and as facts demonstrated. All that the Plaintiffs requested was:

- Enjoin Defendants from making material misrepresentations or omissions with respect to the nature and scope of the services provided by Defendant Libre, including misrepresentations regarding whether payments are applied to the consumers' immigration bonds, Libre's affiliation with ICE, and the provision of legal services to consumers. Defendants' misrepresentations form the factual basis for Counts 1, 2, 8, 9, 10, 11, 12, 13, 15, and 17 of the Complaint.
- Require Defendants to provide all consumers and prospective consumers with clear and accurate contracts, presented in a language accessible to the consumer, that include conspicuous disclosures of the fees charged by Libre and advising consumers that Libre will not report consumers to law enforcement for non- payment of fees or non-compliance with the contract. These requirements would prevent Defendants from harming consumers through misleading and abusive contract terms as set forth in Counts 1, 2, 9, 10, 11, 12, 13, 15, 16, and 17.
- Enjoin Defendants from requiring GPS monitors as a term of any consumer contract. Defendants' deceptive and abusive use of GPS devices is detailed in Counts 2, 6, 10, 11, 12, 13, 15, 16, and 17.

- Enjoin Defendants from collecting any payments related to GPS monitors. Defendants' deceptive and abusive use of GPS devices is detailed in Counts 2, 6, 10, 11, 12, 13, 15, 16, and 17.
- Enjoin Defendants from collecting monies in connection with the Original Agreement, from collecting monies not owed, and from retaining money owed to consumers, as set forth in Counts 1, 7, 9, 10, 11, 12, 13, 14, 15, and 17.
- Enjoin Defendants from making material misrepresentations with respect to non-payment of fees or non-compliance with the contract, including misrepresentations regarding selling consumers' debt, as set forth in Counts 3, 10, 11, 12, 14, 15, and 17; misrepresentations regarding providing negative information to credit reporting agencies, as set forth in Counts 4, 10, 11, 14, 15, and 17; and misrepresentations regarding bringing debt collection actions against consumers, as set forth in Counts 5, 10, 11, 14, 15, and 17.
- Enjoin Defendants Nexus Services, Inc., Micheal Donovan, Richard Moore, and Evan Ajin from engaging in or providing substantial assistance to any deceptive or abusive acts or practices by Defendant Libre, as set forth in Count 10.

ECF Doc. No. 216 at 39-40

To the extent that the provisions of the Order appear to be broader than the same, Plaintiff is interpreting them as narrowly as reasonably justified to have them comply with Rule 65 and to address the harm complained of and the relief sought; again, compliance with Rule 65 is mandatory in the Fourth Circuit and of such importance that it cannot be waived. *Scott*, 355 F.Supp.3d at 491-93 (squarely addressing question and stating that until Fourth Circuit over-rules mandatory nature of Rule 65 such cannot be overruled by trial Court).

With that in mind Nexus reads paragraph 19(a), as exceedingly narrow, to prevent the disclosure of information that would allow for "*access to a customer's*

*accounts* (including a credit card, bank account, or other financial account)" that would allow for a party to collect payments relating to GPS devices, the "Original Agreement[,]" and monies not owed.

In other words, it does not prevent the sale of such information or the disclosure of such information in connection with the sale of virtually all assets of the Nexus, but rather would prevent Nexus from assigning contractual rights to a third party, unbound by the injunctive provisions, who would be free to collect monies from the "Original Agreement" and from GPS devices, and would have access to information required to charge clients "credit card, bank account, or other financial accounts[.]"

All, of this, however, is largely academic because of the savings clause in the asset purchase agreement and because Nexus has not acted to disclose any client information and shall not do so *until* a further court order occurs. *See* Donovan Decl. at ¶¶ 8-9.

## B. In Attempting to Interpret the Court's Order to Be in Compliance with Rule 65, a Litigant Is Forced to Guess as to Its Proscriptions.

Interpretation of the injunction simply is not easy; it is very difficult to interpret the Order's mandates to be compliant with Rule 65 because in many ways it seems like they cannot be squared with the requirements of the Rule. This, the

need to try to remold the contours of the Order to try to interpret it as compliant

with Rule 65, requires one to take part in significant guess work.

### 1. *Attempting to Interpret the Order Narrowly Requires one to Guess at Its Meaning.*

It is well-settled that "[i]n granting injunctive relief, the court's remedy

should be *no broader than necessary to provide full relief to the aggrieved*

*plaintiff.*" *McLendon v. Continental Can Co.*, 908 F.2d 1171, 1182 (3rd Cir. 1990)

(citing *Ameron, Inc. v. U.S. Army Corp. of Engineers*, 787 F.2d 875 (3rd Cir.

1986), *on reh'g*, 809 F.2d 979, *cert. granted*, 485 U.S. 958, 108 S.Ct. 1218, 99

L.Ed.2d 419, *cert. dismissed*, 488 U.S. 918, 109 S.Ct. 297, 102 L.Ed.2d 264

(1988)) (emphasis added).

> An injunction "should be tailored to restrain no more than what is
> reasonably required to accomplish its ends." *Consolidation Coal Co. v.*
> *Disabled Miners*, 442 F.2d 1261, 1267 (4th Cir.), *cert. denied*, 404 U.S. 911,
> 92 S.Ct. 228, 30 L.Ed.2d 184 (1971). Although injunctive relief should be
> designed to grant the full relief needed to remedy the injury to the prevailing
> party, it should not go beyond the extent of the established violation.
>
> *Hayes v. N. State L. Enf't Officers Ass'n*, 10 F.3d 207, 217 (4th Cir. 1993)

Certain provisions of the Order appear to be clearly broader than that relief

which was requested by Plaintiffs. *Compare* ECF Doc. No. 216 at 39-40

(requesting injunction of collection of monies relating to Original Agreement and

GPS devices), *with* Order, ¶ 17(a) (enjoining collection of monies relating to *any*

agreement existing between December 1, 2013 and April 1, 2024). Or simply were not requested, *Compare* ECF Doc. No. 216 at 39-40, *with* Order, ¶¶ 19, 75.

Indeed, both provisions at issue here, do not appear to be ones which were addressed in briefing or requested by Plaintiffs. *Ibid.* This leaves a litigant to attempt to guess at exactly how broad the injunctions actually are and try to artificially narrow the injunctive mandates in order to make them comply with Rule 65. At best, this leaves one rather uncertain of how much narrowing one should do in order to *actually* have the injunctive provisions narrow enough to comply with Rule 65.

### 2. *Attempting to Square Key Terms with a Narrow Interpretation Requires Further Guesswork.*

This interpretive problem is compounded by having no definition for meaningful terms like "applicable provisions" as set forth in paragraph 75, Order, ¶ 75, and apparent contradictions between paragraphs, such as 19 and 75. *Id.* at ¶¶ 19, 75. One simply does not know what provision controls and which provision carves out an exception from the other—presumably the narrower construction should control to attempt to comply with Rule 65.

The injunctive relief here was broader than that requested; moreover, the injunctive provisions apparently enjoin acts and potential acts that were not adjudicated by the Court and prohibit acts that go well beyond the conduct that

Plaintiffs argued to be wrongful, and the Court found unlawful; for instance the sale of assets or creation of a new record keeping system not currently existing.

"In accord with the policy of [Rule 65(d)], the Supreme Court does not countenance overly broad injunctions due to the threat of costly contempt proceedings *for acts unrelated to those originally judged unlawful." Additive Controls,* 986 F.2d 476, 479 (Fed Cir. 1993) (citing *NLRB,* 312 U.S. at 435-36) (emphasis added).

Trying to make this not so, requires very carefully trying to re-interpret ambiguous terms to allow for them to actually comply with Rule 65. And that is made all the more complex where one does not know what interacts with what and in what manner. For instance, potentially, LIS under paragraph 75 has accepted the "applicable provisions" which requires for it to create a record keeping system under paragraphs 63-65, and to assist in locating affected consumers under paragraph 68. If so, it is wholly unclear how they might do so unless exempted at least partially from the Plaintiffs' very broad reading of paragraph 19, and if such is the case, then the Plaintiff's *carte blanch* ban on the disclosure of information cannot be correct.

Beyond all of the above, one need to attempt to interpret the injunctive provisions from prohibiting lawful conduct. *Mallet & Co. v. Lacayo,* 16 F.4th 364, 389 (3rd Cir. 2021) ("The description of the conduct enjoined should be narrowly

tailored to reach only those acts that *closely relate to the unlawful conduct giving rise to an entitlement to injunctive relief ...* The injunction order here is problematic *because it extends the scope of the injunction to reach what appears to be lawful conduct."*) (emphasis added); *Roton Barrier, Inc. v. Stanley Works,* 79 F.3d 1112, 1121-22 (Fed. Cir. 1996) (reversing a preliminary injunction that completely prohibited a competitor from lawfully buying and reselling competing products); *E.W. Bliss Co. v. Struthers-Dunn, Inc.,* 408 F.2d 1108, 1113-17 (8th Cir. 1969) (setting aside a preliminary injunction for restraining otherwise lawful activity).

These injunctive provisions, as interpreted by the Plaintiffs, would prevent what would be an otherwise lawful sale for no apparent reason and in contradiction with other provisions that appear to allow for such a sale to occur—again, presumably paragraph 75 would moot any concerns of LIS acting contrary to the Court's Order, and thus it is unclear as to why any such assignment or disclosure in the case of an asset purchase agreement would prevent any damage or risk.

In order, to try to make these ambiguous provisions compliant with Rule 65 one needs to guess at their meaning by narrowing them, where reasonable, and do so only for the provisions that are susceptible to multiple interpretations, *see, e.g.*, *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018), it is a herculean task and certainly not one that allows for another to state that the meaning of the prohibited

behavior is clearly and unequivocally set forth as required to support a "valid order" for the purposes of contempt, as well as for one to demonstrate knowledge that behavior was in violation of an injunction. *See, e.g.*, *Scott*, 355 F.Supp.3d at 492-93; *Klopp*, 957 F.3d at 464 ("A party cannot be held in contempt for violating an ambiguous court order.") (cleaned up).

### III.   THE INJUNCTIVE PROVISIONS ARE IMPERMISSIBLY VAGUE AND CANNOT SUPPORT CONTEMPT.

To hold a party in contempt, there must be an order that clearly and specifically makes a command and a demonstration that such has been violated; in the Fourth Circuit, a party seeking to hold another in contempt must "point to an order of this Court which 'set[s] forth in specific detail an unequivocal command' which a party has violated." *In re Gen. Motors Corp.*, 61 F.3d 256, 259 (4th Cir. 1995) (quoting *Ferrell v. Pierce*, 785 F.2d 1372, 1378 (7th Cir.1986)). Indeed, this requirement is in place because "The judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one." *Int'l Longshoremen's Ass'n, Local 1291 v. Phila. Marine Trade Ass'n,* 389 U.S. 64, 76 (1967) ("*Longshoremen*"). Because the order in *Longshoremen* was vague, both the order and the contempt could not stand.  *Id.*

The Fourth Circuit has held "civil contempt will lie only if the putative contemnor has violated an order that is clear and unambiguous."  *In re Gen.*

*Motors Corp.*, 61 F.3d at 259 (quoting *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 16 (1st Cir.1991)) (internal quotation marks and brackets omitted). The injunctive provisions of this Order are anything but clear and unambiguous.

Here, it would have been wise to have simply met and conferred; Nexus' Counsel specifically broached the idea of an indicative order, and limited remand on appeal; rather then take part in this task, or to even reach out to confer, Plaintiffs have filed contempt based on an order which is vague—again, this could be cured by some very basic cooperation, which may have mooted the need for appeal as well.

Again, Nexus may only be punished where the injunction specifically and unambiguously prohibits the alleged acts of contempt. *See Granny Goose Foods*, 415 U.S. at 444; *Schmid*t, 414 U.S. at 476; *Longshoremen*, 389 U.S. at 76; *see also Terminal R. Ass'n of St. Louis v. United States*, 266 U.S. 17, 29 (1924) ("a decree will not be expanded by implication or intendment beyond the meaning of its terms"); *cf. United States v. Fleischman*, 339 U.S. 349, 370-71 (1950) (Black, J., dissenting) ("failure to take action required by an order can be punished only if the action is clearly, specifically, and unequivocally commanded by that order"). Thus, here where there is no clear and unambiguous demand no contempt may lie. *In re Gen. Motors Corp.*, 61 F.3d at 259.

Here the Order is vague, and contempt will not lie.

## IV.   IT IS WHOLLY UNCLEAR THAT THE COURT ORDER HAS BEEN VIOLATED, AND THAT KNOWLEDGE OF THE VIOLATION EXISTS.

The only persons who have knowledge of the actual conduct at issue state that no information has been disclosed and that they contracted only for the sale of assets which could legally be sold. *See generally* Donovan Decl.; *see also* Smith Decl. They, in drafting a Sale Agreement, specifically attempted to prevent the sale of any asset that would violate the law. *See* Donovan Decl. at ¶¶ 10-11; *see also* Smith Decl. at ¶¶ 10-12. It is neither clear from the contract nor the Order that any violation of any sort has occurred.[4]

Beyond this, it is clear from the contract that *both* LIS and Nexus relied on independent general counsel in drafting the Agreement and in the case of Nexus and Principals it is clear that they relied on advice of counsel who stated unequivocally that the savings clause would prevent violation of the Order. *See generally* Sale Agreement (listing counsel); *see also* Lawrence Decl. at ¶¶ 4-10.

In short, they lacked knowledge of any violation, even if such has occurred.

---

[4] Even assuming that the Plaintiffs' interpretation is reasonable: that the inclusion of "client contracts" and "customer lists" in asset schedules should trump a clause which specifically states notwithstanding any term to the contrary no asset shall be sold or transferred where such a sale would be illegal. It is hard to accept that the contract obviously and by clear and convincing proof would lead to a transaction that would by its nature have violated provisions of the Order. It would require one to *both* take an idiosyncratic interpretation of the Order and Contract to reach that conclusion, which simply cannot be considered a demonstration by clear and convincing evidence.

## V.   **Damage and the Specific Provisions.**

Even assuming that various conclusory representations of counsel could demonstrate damage for the purposes of contempt to a clear and convincing level—they cannot, *see SmartSky  Networks, LLC v. Wireless Sys. Sols., LLC*, 630 F.Supp.3d 718, 730-31 (M.D.N.C. 2022) ("This declaration, standing alone, is insufficient to establish by clear and convincing evidence that the Defendants are in violation of the injunction.") (citing *Aschraft v. Connoco, Inc.*, 218 F.3d, 288, 301 (4th Cir. 2000)—it is wholly unclear what harm the Plaintiffs and consumers would suffer if the actions they claim to have occurred actually occurred. If Nexus sold LIS the right to collect on contracts, LIS would presumably be subject to the Court's Order and would be unable to collect on those contracts *unless* and *until* a further court order modified or altered the Court's Order; if Nexus did not sell the right to collect on those contracts, then Nexus is unable to collect on those contracts *unless* and *until* a further court order modified or altered the Court's Order. Were either to violate this, *clearly* the Plaintiff's would file contempt. It makes not a jot of difference, and all parties are in exactly the same position.

The same exact things is true of disclosure.

In other words, the CFPB stands in no different position whatsoever if LIS or Nexus owns what is in essence an illusory right to collect or has particular consumer information. The *only* reason Plaintiff's know of the transaction which

occurred is *because* LIS and Nexus have, as they are bound to, disclosed information to the Plaintiff's in compliance with the Order. If anything, the actions of LIS and Nexus *post*-judgment demonstrate a sincere desire to comply with Court orders.

A final aside, and to address the idea of fraud, Nexus previously disclosed to a third-party virtually all customer information and assigned to that third party all rights to collect on client contracts—indeed, it in essence assigned the entire operation of its business to that third party; this was done in February 2022. *See* ECF Doc. No. 260 at 6; *see also CFPB v. Nexus Servs., Inc.*, Case No.: 24-1334 (Dkt. Nos. 22-1, 22-2, 22-3) (4th Cir. May 20, 2024)

That third party was *in no way whatsoever* bound by the Order at the time of the sale. *See generally* Order. In the event that the true goal was to enter a series of fraudulent transactions to frustrate the CFPB, LIS simply would have purchased the contractual rights and information from that third company (not subject to any order, not triggering any reporting requirements, and not requiring any assumption of responsibilities under this Order). It boggles the mind as to why anyone would have purchased these assets this way if the desire was to effect a string of transfers to avoid this Court's judgment.

If Nexus controlled Subversivo, LLC, and wished to ferret away assets and frustrate the effect of this Court's Order, Nexus would have defaulted on its

obligations to Subversivo, then would have had Subversivo sell the assets (totally free from court order) to LIS (who then would have assets both without needing to comply with the obligations of the Order and without triggering any reporting requirement), and who then would have been free to sell the assets to further entities, thereby actually frustrating the Court.

This is not what occurred, all parties, disclosed the acts that they were undertaking in compliance with the Court's Order; either the "masterminds" of "fraudulent transfers" sought to frustrate this Court's Orders by purposefully becoming subject to them and complying with them, or LIS and Nexus chose to abide by the Court's orders because in fact they wished to comply with the Court's orders—the actions of the parties simply defy logic if they were in fact taken for the reasons the Plaintiffs' purport they were taken for.

## **CONCLUSION**

The Court should deny the motion. Additionally, the Court should remind the parties of the value in avoiding unnecessary motion practice, and that collegial conversation is of value for litigants and proves a boon to the Court.


Dated: June 12, 2024                    Respectfully Submitted,

                                        /s/Zachary Lawrence
                                        Zachary Lawrence
                                        Lawrence Law Firm PLLC
                                        166 Five Acres Ln.

Cold Brook, NY 13324
zach@zlawpllc.com
202-468-9486
*Counsel for Defendants*
*Richard Moore, Evan Ajin,*
*Micheal Donovan, Libre by Nexus,*
*Inc., Nexus Services, Inc.*