UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, *et al.*, <br><br> Plaintiff, <br><br> v. <br><br> NEXUS SERVICES, INC., *et al.*, <br><br> Defendants. | No.: 5:21-cv-00016-EKD-JCH |

## DECLARATION OF MICHEAL DONOVAN

MICHEAL DONOVAN, declares as follows pursuant to 28 U.S.C. § 1746:

1. I am the CEO of Nexus Services, Inc. and Libre by Nexus, Inc. (collectively "Nexus") and have personal knowledge of all facts averred herein, unless stated on information and belief, in which case I sincerely believe the assertions to be true based on information available to me. Nothing prevents me from making the instant Declaration.

2. In April, 2024, Nexus, through counsel was contacted about a possible sale; given the existence of the Amended Judgment and Order, any sale at any price of Nexus presented an opportunity which was attractive.

3. Nexus' principals initially wished to sell all shares in Nexus to Libre Immigration Services, Inc. ("LIS"), which would have resulted in Nexus being wholly owned subsidiaries of LIS, more efficiently severing principals from Nexus; however, a version of a contract involving such a sale of shares was rejected by LIS.

4. This led, after substantial additional negotiations, to the asset purchase agreement in its current form, executed April 17, 2024, and closed on April 19, 2024.

5. Since the purchase of assets, the transition to LIS of Nexus operations has been complex and burdensome, it is difficult to fully explain how difficult the same has been given the state of both LIS and Nexus.

6. On information and belief, LIS has yet to be able to fully transition from Nexus' operating structure—in other words, LIS continues to operate through contract with Subversivo, LLC, which Nexus utilized once it became impossible to bank.

7. Since the purchase, on information and belief LIS has only been collecting payments from clients acquired after the entrance of the Amended Judgment and Order.

8. Under this current state of affairs, LIS has not received any client information of any sort, and Nexus has been directed to keep all records in trust. After

consultation with multiple attorneys, it remains unclear what must be done, and thus, Nexus has simply "tagged" new clients—those whose information it is clearly legal to disclose—while directing Subversivo, LLC, to provide a copy of client records to Nexus' general counsel, to keep in trust for LIS.

9. It remains unclear to me, to what extent and when I should disclose historic records to LIS, and whether such should be done under the order to allow for LIS to comply with applicable provisions of the order. Because of this state of affairs, I have operated under the assumption that a copy of historic records should simply be held by Nexus' general counsel.

10. Nexus, and on information and belief, LIS, wished to avoid any contract which would result in contempt or violation of any law.

11. For this reason, we contracted specifically to prevent illegal or contemptuous transfer/assignment and included Section 1.05 in the Agreement (the "Clause"). It was my belief, that this clause would be controlling notwithstanding any other language in the Agreement and that the Clause would prevent any problematic transfer.

12. Additionally, I did not believe that Nexus could transfer rights that Nexus lacked due to the Court's Amended Judgment and Order, *i.e.*, because the Court's Amended Judgment and Order greatly limited Nexus' ability to undertake certain acts to consumers, and LIS was bound under paragraph 75

3

from taking the same actions, I did not believe that I could transfer a right that neither Nexus, nor LIS, would be entitled to take.

13. I did not believe the LIS or Nexus had a right to collect on historic client contracts and thus I did not believe that such could be transferred or assigned.

14. Further, it was my understanding that the Court's Amended Judgment and Order specifically considered the sale of substantially all assets and that such could occur as long as the proposed buyer agreed to apply with all applicable provisions of the Court's Amended Judgment and Order. I had no idea that given paragraph 75 and the non-objection of the Plaintiffs to the sale that it was in any way problematic— as I know that counsel contacted Plaintiffs on multiple occasions prior to the closing of the sale.

Under the terms of 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 12th day of June 2024, Staunton, VA.



_____

Micheal Donovan