UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, *et al.*, <br><br> Plaintiff, <br><br> v. <br><br> NEXUS SERVICES, INC., *et al.*, <br><br> Defendants. | No.: 5:21-cv-00016-EKD-JCH |

# DECLARATION OF VINCENT J. SMITH

VINCENT J. SMITH, declares as follows pursuant to 28 U.S.C. § 1746:

1. I am the CEO of Libre Immigration Services, Inc. ("LIS") and have personal knowledge of all facts averred herein, unless stated on information and belief, in which case I sincerely believe the assertions to be true based on information available to me. Nothing prevents me from making the instant Declaration.

2. I created LIS in order to purchase virtually all assets of Nexus Services, Inc. and Libre by Nexus, Inc. (collectively "Defendants").

3. Since the purchase of assets, which occurred on April 19, 2024, I have been occupied primarily with satisfying investors' due diligence requirements in

1

order to secure funding to allow LIS to survive in the immediate-term; fostering banking relationships to allow for the receipt of cash payments; and fostering relationships with providers of merchant accounts to facilitate electronic payments. These seemingly easy tasks have proven exceedingly difficult.

4. LIS at the time of drafting has yet to begin contracting in its own name, utilizing its own accounts, or processing consumer payments; LIS as of the time of drafting has not yet accepted any consumer funds. Again, of primary importance has been immediate survival through securing investment, and finding financial institutions willing to conduct business—a difficult task given the history of Defendants.

5. Since the closing, LIS has been forced to continue to operate through an administrative services agreement entered into by the Defendants, approximately two and a half years ago, with a third party, Subversivo, LLC.

6. LIS's operations under this arrangement are temporary, and will cease as soon as possible; however, at the time of drafting the instant Declaration LIS has yet to conduct any consumer-facing business in its name.

7. Under this current state of affairs, LIS has not received any client information of any sort, nor does LIS plan to take possession of or review Defendants' historic client information unless a future court order allows LIS to derive revenue therefrom or such is necessary to comply with applicable provisions of

the Court's Amended Judgment and Order; in particular paragraphs 63-66, 68-69 and 71 of the Amended Judgment and Order, which if they are considered "applicable provisions[,]" appear to consider or require a successor to have access to records.

8. LIS has directed its agents to "tag" new customers (those whose information can be transmitted and disclosed), which will allow for LIS to direct Defendants/Subversivo, LLC to disclose information clearly not subject to the Amended Judgment and Order once LIS has the foundational, and financial, capacity to begin operating in its own name; beyond taking this initial step, it remains unclear what can be done to comply with the "applicable provisions" of the Amended Judgment and Order.

9. Currently, beyond directing its agents to comply with the Court's order and to *only* collect funds from newly acquired clients—again, all of this to date is being done through an agent, rather than directly by LIS employees or in LIS's name—LIS has primarily concerned itself with putting systems in place to ensure compliance once it becomes consumer-facing and fully operational.

10. To effect the purchase of Defendants' assets, significant contracting had to occur. LIS was concerned primarily with obtaining all assets that could legally be obtained, which at the time of negotiations was less than clear and remains, quite frankly, unclear to date.

11. In furtherance of this, broad language was utilized to facilitate the purchase of these assets, which was then limited by clauses which I believed, and continue to believe, prevented the transfer of any asset or right which would violate any court order or law, specifically Section 1.05 of the Agreement (the "Savings Clause").

12. My understanding was that given the Savings Clause, no sale, assignment, or transfer of any right or asset would occur that would violate a court order or law.

13. Moreover, it was my understanding that Defendants could not transfer or assign rights or assets, which they lacked, *i.e.*, because the Court's Amended Judgment and Order terminated Defendants' right to collect from certain contracts, it was my understanding that they could not transfer the right to collect on those contracts to LIS.

14. Further still, it was my understanding that LIS would be subject to applicable provisions of the Judgment and Order that would likewise enjoin me from exercising rights which Defendants could not exercise, in other words, even were such a transfer to occur LIS likewise would lack any right to collect on those contracts.

15. Beyond all of the above, it was my general understanding that neither the Court nor the Plaintiffs in this matter opposed, in general, a sale of substantially all assets, and the terms of this specific asset purchase.

16. Further, it was my understanding that the Court's Amended Judgment and Order specifically considered the sale of substantially all assets and that such could occur as long as the proposed buyer agreed to apply with all applicable provisions of the Court's Amended Judgment and Order.

17. On information and belief, Plaintiffs in this matter were made aware of the sale, were provided with the letter of intent, were provided with the sales contract, and were provided with the various ancillary documents prior to closing of the sale and that *no* objection or complaint was made to the asset sale in general nor its specific terms.[1]

18. The provision of these documents occurred on information and belief as follows:

    April 11, 2024 (letter of intent and disclosure of potential sale);

    April 17, 2024 (asset purchase agreement sent pre-closing); and

---

[1] The first objection was noted in an unrelated filing in the Fourth Circuit opposing LIS's intervention into the appeal to challenge the scope and propriety of certain injunctive provisions of the Court's Amended Judgment and Order.

April 17, 2024 (declaration of Vincent Smith on LIS's behalf agreeing to comply with applicable provisions).

19. Beyond all of the above, on information and belief, the only damages Plaintiffs have suffered has been self-inflicted by determining it prudent to file an unnecessary motion without first contacting LIS's counsel—it is wholly unclear how or if, given the actual contractual clauses and LIS' behavior, any damage was suffered. Had this been clarified prior to the filing of the motion the expense associated with the same could have been avoided.

20. LIS has every intent to satisfy the Plaintiffs and to comply with court orders, LIS sincerely hopes in the future minor disputes may be determined absent needless court intervention and through good faith conversation with Plaintiffs.

Under the terms of 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 10th day of June 2024, Reading, PA.

_____

VINCENT J. SMITH