CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

June 28, 2024

LAURA A. AUSTIN, CLERK
BY:  s/J.Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION ) <br> BUREAU; COMMONWEALTH OF ) <br> MASSACHUSETTS; THE PEOPLE OF ) <br> THE STATE OF NEW YORK, by ) <br> LETITIA JAMES, ATTORNEY ) <br> GENERAL OF THE STATE OF NEW ) <br> YORK; and COMMONWEALTH OF ) <br> VIRGINIA, *ex rel.* MARK R. HERRING, ) <br> ATTORNEY GENERAL, ) <br> ) <br>       Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> NEXUS SERVICES, INC.; LIBRE BY ) <br> NEXUS, INC.; MICHEAL DONOVAN; ) <br> RICHARD MOORE; and EVAN AJIN, ) <br> ) <br>       Defendants. ) | Civil Action No. 5:21-cv-00016 <br><br> By: Elizabeth K. Dillon <br>     United States District Judge |

**MEMORANDUM OPINION**

This matter is before the court on defendants Nexus Services, Inc., Libre by Nexus, Inc.,

Micheal Donovan, Richard Moore, and Evan Ajin's (collectively, Nexus) motion to temporarily

stay (Dkt. No. 249) certain provisions of the court's April 1, 2024 Amended Final Judgment

Order (Final Order) (Dkt No. 246) pending appeal.  Nexus claims that a 45-day stay would allow

for the sale and reorganization of the defendant companies, which would provide the defendant

companies (Nexus Services, Inc. and Libre by Nexus, Inc.) a "meaningful chance . . . to survive."

(Nexus's Br. in Supp. of Mot. to Stay 4, Dkt. No. 250.)  For the following reasons, Nexus's

motion for a temporary stay pending appeal will be denied.

I.  BACKGROUND

The circumstances of this case are well known to the parties and are set forth in detail in

the court's amended memorandum opinion on plaintiffs' motion for remedies (Dkt. No. 247).

Briefly, plaintiffs filed a complaint against Nexus in February 2021 alleging that it engaged in

deceptive, abusive, and fraudulent conduct in the course of its business.  (Compl. ¶¶ 1–3, 26–47,

Dkt. No. 1.)  Counts One through Ten assert violations of the Consumer Financial Protection Act

of 2010 ("CFPA"), 12 U.S.C. §§ 5481, et seq., on behalf of all plaintiffs against different groups

of defendants, and Counts Eleven through Seventeen assert violations of various state consumer

protection laws on behalf of the corresponding individual plaintiff-state.  (*Id.* ¶¶ 145–251.)

On September 13, 2021, the court issued an order scheduling a bench trial for January 30

through February 17, 2023, and setting other key deadlines in this case.  (Dkt. No. 66.)  Nexus

subsequently largely failed to produce documents and electronically stored information

responsive to plaintiffs' discovery requests.  On June 8, 2022, U.S. Magistrate Judge Joel C.

Hoppe ordered Nexus to take certain steps to fully respond to plaintiffs' outstanding requests for

production.  (Dkt. No. 129.)  Nexus did not comply with that order.  Consequently, on July 19,

2022, plaintiffs moved the court to sanction Nexus for its noncompliance.  (Dkt. No. 139.)

On May 11, 2023, the court issued a memorandum opinion and order finding all

defendants in civil contempt and entering default against them pursuant to Federal Rule of Civil

Procedure 37(b)(2)(A)(vi).  (Dkt. Nos. 201, 202.)  Because the sanctions resolved only the

disposition of plaintiffs' claims and not the extent of the associated relief, the court ordered

further proceedings to determine the appropriate damages and/or other remedies for those claims.

(Dkt. No. 211.)  The court set the damages/remedies hearing for August 15 and 16, 2023, and

ordered the parties to file initial exhibit and witness lists prior to the hearing.  (*Id.*)  On July 25,

2023, plaintiffs also sent a proposed final order to the court and all counsel of record, to which

Nexus did not object.  The court ultimately excluded all of Nexus's proposed exhibits and all but

one of its witnesses.  (Dkt. No. 229.)  On August 8, 2023, the evidentiary hearing was changed
from a two-day hearing to a one-day hearing to be held August 16, 2023, by agreement of the
parties.  (Dkt. No. 232.)  On August 15, 2023, the parties then entered into a stipulation as to
Nexus's total revenue (Dkt. No. 237–238.)  On that same day, following inquiry from the court,
the hearing scheduled for the next day was canceled with the agreement of all parties.  (Dkt. No.
255-1 at 3.)

On April 1, 2024, the court issued the Final Order finding that plaintiffs stated claims
against Nexus upon which relief could be granted, that Nexus was liable for such claims, and that
plaintiffs were entitled to judgment on the claims due to Nexus's default.  (Am. Final Order, Dkt.
No. 246.)  The court awarded plaintiffs both monetary damages and permanent injunctive relief.
With respect to monetary relief, the court ordered Nexus to pay redress to consumers in the
amount of $230,996,970.84, ordered each defendant to pay $111,135,620 in civil penalties to the
CFPB, and found each defendant jointly and severally liable for civil penalties in the amounts of
$7,100,000 to Virginia, $3,400,000 to Massachusetts, and $13,890,000 to New York.  (*Id.* ¶¶ 20,
28, 33, 37, 42.)  Recognizing that "[m]onetary penalties alone are likely insufficient to enjoin
defendants' unlawful conduct since, without an injunction, defendants 'would be free to return to
their old ways,'" the court further enjoined Nexus from, among other acts, engaging in deceptive
acts by misrepresenting the terms or nature of the services provided by Nexus, requiring
consumers to wear GPS devices; and collecting or retaining monies owed to consumers pursuant
to the agreements relating to immigration bond services that gave rise to this action.  (Am. Mem.
Op. 20, Dkt. No 247; *see* Am. Final Order.)

Nexus now seeks a 45-day stay of certain injunctive provisions of the Final Order.  These
provisions concern: Nexus's income streams (Am. Final Order ¶¶ 17, 19); administrative

requirements to ensure that plaintiffs are informed about any changes to Nexus's compliance

obligations (¶¶ 54, 56, 59, 61, 62, 65); requirements regarding when Nexus must pay its

monetary penalties (¶¶ 21, 29, 34, 38, 43); and Nexus's cooperation with plaintiffs in any future

investigations or litigation (¶ 69).  The primary reason for the stay, according to Nexus's motion

and brief, is to allow for the sale and reorganization of Nexus.  However, six days after the

motion was filed, Nexus filed an Asset Purchase Agreement showing that Nexus had already

been sold.  (Decl. of Vincent J. Smith & Asset Purchase Agreement, Dkt. Nos. 253 and 253-1.)

## II.  DISCUSSION

### A.  Legal Standards

Federal Rule of Civil Procedure 62(c) imbues district courts with the power to stay

injunctions pending appeal.  As the Supreme Court has explained, "the power to stay

proceedings is incidental to the power inherent in every court to control the disposition of the

causes on its docket with economy of time and effort for itself, for counsel, and for litigants."

*Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  "A stay is considered 'extraordinary relief' for

which the moving party bears a 'heavy burden.'"  *Northrop Grumman Tech. Servs, Inc. v.*

*DynCorp Int'l, LLC*, No. 1:16-cv-534, 2016 WL 3346349, at *2 (E.D. Va. 2016) (quoting *Larios*

*v. Cox*, 305 F. Supp. 2d 1335, 1336 (N.D. Ga. 2004)).

In considering a motion to stay pending appeal, the court must evaluate the following

factors: (1) whether the stay applicant has made a strong showing that it is likely to succeed on

the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether

issuance of the stay will substantially injure the other parties interested in the proceeding; and (4)

where the public interest lies.  *Id.* at *2 (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)).  When

the government is the plaintiff, the last two factors merge into one.  *Nken*, 556 U.S. at 435.

The parties disagree on the degree to which Nexus must demonstrate success on the merits. Nexus argues that the court should apply the balancing test set forth in *Hilton v. Braunskill,* 481 U.S. 770, 778 (1987), which states that where a movant cannot make a strong showing of success on the merits, the movant may "nonetheless demonstrate a substantial case on the merits" if the other factors of the test weigh in favor of a stay.

On the other hand, plaintiffs request that the court apply to Nexus's stay request the more stringent standard for preliminary injunctions established in *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7 (2008), requiring that a preliminary injunction movant must make a "*clear showing*" of likely success on the merits. *Id.* at 22 (emphasis added); *see also Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009) (abrogated on other grounds) (emphasis added). This standard requires a movant to establish *all four* factors of the preliminary injunction standard instead of using a sliding scale. *See, e.g.*, *Pashby v. Delia,* 709 F.3d 307, 320 (4th Cir. 2013); *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell,* 915 F.3d 197, 215 n.7 (4th Cir. 2019).

However, the distinction between the two standards is ultimately irrelevant here because, as discussed below, Nexus fails to meet its burden even under the less-demanding *Hilton* standard.

**B. Substantial Case on the Merits**

Nexus has not shown that it has a substantial case or likely success on the merits on appeal. Generally, a party raises a substantial case on the merits when the case "raises substantial difficult or novel legal issues meriting a stay" or when the case is "one of first impression that touches on matters of substantial national importance." 11 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure*, § 2904 (3d ed.) (April

5

2023); *Project Vote/Voting for Am., Inc. v. Long*, 275 F.R.D. 473, 474 (E.D. Va. 2011) (quoting *Hilton*, 481 U.S. at 778).

In its opening brief, Nexus presents as its primary argument on appeal the question of whether the CFPB's funding structure is constitutional.  (Br. in Supp. 8.)  However, the Supreme Court very recently found that "[t]he Bureau's funding statute contains the requisite features of a congressional appropriation" and "fits comfortably with the First Congress' appropriations practice."  *Consumer Fin. Prot. Bureau v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 601 U.S. 416, 435 (2024).  This Supreme Court decision effectively forecloses Nexus's ability to make this argument on appeal.

Nexus's next argument on appeal is that the court improperly applied the Seventh Circuit standard for calculating net revenue in determining restitution because the Fourth Circuit has "not weighed in on the issue and the nature of the calculation of these remedies under the CFPA is unclear . . . ."  (Br. in Supp. 17.)  Yet, Nexus only seeks to stay certain *injunctive* provisions of the Amended Final Order, namely those relating to the date of restitution payments, not the monetary awards themselves.  Therefore, Nexus's likelihood of successfully challenging on appeal the method by which the court calculated restitution is irrelevant to the stay it currently seeks.  *Cf. Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1135 (11th Cir. 2005) (holding that court erred in premising grant of preliminary injunction on showing that applicant was likely to succeed on the merits of issue unrelated to relevant claims).

Nexus also plans to argue on appeal that the court's issuance of discovery sanctions, particularly its entry of default and its exclusion of Nexus's evidence regarding damages, was improper and disproportionate to Nexus's contemptuous conduct.  (Br. in Supp. 17.)  However, "the appropriate remedy for civil contempt is within the court's discretion," as is the

determination of whether to exclude evidence due to a party's failure to disclose such evidence in advance. *Redner's Mkts., Inc. v. Joppatowne G.P. Ltd. P'ship*, 608 F. App'x 130, 131 (4th Cir. 2015); *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595 (4th Cir. 2003). To hold a party in civil contempt, the court must set forth: (1) the existence of a valid court order, (2) that the order was in the moving party's favor, (3) a knowing violation of the terms of the order, and (4) that the moving party suffered harm from the violation. *See Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 461 (4th Cir. 2020). The court noted in its detailed memorandum opinion on sanctions that (1) Magistrate Judge Joel C. Hoppe entered a discovery order on June 8, 2022, (2) the order was in plaintiffs' favor, (3) Nexus knowingly violated the June 8 order, and (4) the delays in the discovery process, extra expenses, and postponement of a scheduled bench trial harmed plaintiffs. (Mem. Op. on Sanctions 11–12, Dkt. No. 201.) The court further noted, "[I]f default judgment is to ever be warranted as a sanction for discovery abuses, it is emphatically so in this case . . . . [D]efendants' bad faith is implicit in their pattern of knowing noncompliance with numerous orders of the court . . . . [Nexus's conduct] indicates a lack of candor with the court and a delusion as to the exigency of the situation." (*Id.* at 12.) The court was well within its discretion to impose sanctions for Nexus's egregious misconduct over the course of this litigation; therefore, Nexus has not shown it has a substantial case or likely success on the merits for this argument.

Finally, Nexus claims in its reply brief that it plans to argue on appeal that the injunctive relief granted in the Final Order was much broader than what plaintiffs requested in their motion for sanctions and remedies. (Reply Br. 11, Dkt. No. 216.) Nexus had ample opportunity to voice its objections to plaintiffs' proposed order but ultimately chose not to. Plaintiffs sent their proposed order to the court and all counsel of record by email on July 25, 2023, in preparation

7

for the evidentiary hearing.  Nexus did not express any disagreement with the proposed order.

Instead, it informed the court on August 15, 2023, that it did not believe the evidentiary hearing

scheduled for the next day (during which Nexus could have presented argument against the

provisions of the proposed order that it now claims are overbroad) was necessary. (*See* Dkt. No.

255-1 at 3.)  Therefore, Nexus has not shown that it has a substantial case on the merits or that it

will likely succeed regarding its arguments.  Even if the court were to discount this factor in

balancing all the factors, Nexus does not prevail.

## C. Irreparable Harm

Nexus has also failed to show it would suffer irreparable harm absent a stay.  To establish

irreparable harm, the movant must make a "clear showing" that it will suffer harm that is

"neither remote nor speculative, but actual and imminent."  *Direx Israel, Ltd. v. Breakthrough*

*Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (internal quotation marks omitted).  "Mere

injuries, however substantial, in terms of money, time and energy necessarily expended in the

absence of a stay are not enough."  *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017)

(quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).

In its motion and opening brief, Nexus asserts that a 45-day stay is necessary to facilitate

the sale of the defendant companies to a third party.  Nexus claims that, without a stay, the

purchase will fall through and the companies will fail.  (Br. in Supp. 4.)  However, six days after

filing its motion to stay, Nexus filed an Asset Purchase Agreement demonstrating that Vincent J.

Smith, through Libre Immigration Services, Inc., has *already purchased* the defendant

companies.  (Dkt. No. 253.)  Therefore, any argument regarding irreparable harm as to the sale

of the companies is now moot.

Nexus further contends that the stay will allow for the "installation [of] new management and building internal legal and compliance teams required for both compliance with the Amended Judgment and Order and a meaningful chance for the Companies to survive." (Br. in Supp. 4.) But, Nexus provides no evidence that a stay would somehow facilitate the reorganization of the companies or prevent the companies' failure. *See ePlus Inc. v. Lawson Software, Inc.*, 946 F. Supp. 2d 503, 510 (E.D. Va. 2013) (rejecting claim of irreparable harm because movant failed to produce any evidence of harm). As noted above, injuries involving time, money, and energy do not rise to the level of irreparable harm. Therefore, the energy and time Nexus will expend in reorganizing the companies does not constitute irreparable harm. Similarly, Nexus claims that a stay is necessary because its sole attorney is working over ninety hours per week and, as such, "compliance with additional injunctive requirements will be extremely taxing." (Br. in Supp. 3.) Again, though, the expenditure of energy and time does not constitute irreparable harm.

Nexus then attempts to compare itself to the defendant in *Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 546 (7th Cir. 2007), where the Seventh Circuit found that the defendant's "uncompensated death of its business" constituted irreparable harm and granted its request for an injunction pending appeal. However, the defendant in *Cavel* had "made a compelling case" that it would lose *99 percent* of its business absent a stay. *Id.* Nexus has made no such showing. Indeed, the purchase of the companies portends that the companies will, in fact, live on in some form or another and may be able to meet their financial obligations. Moreover, Nexus represents that "within the 45-day stay period new resources will be brought to bare [sic] that will enable more robust compliance, but that such will require a short period of time to ensure an orderly transition." (Br. in Supp. 4.) As the Fourth Circuit has noted, more than the possibility of

irreparable harm is required.  *Di Biase*, 872 F.3d at 230.  For all these reasons, Nexus has failed to demonstrate that, absent a stay, the sale and reorganization of the companies will not go forward and that Nexus will suffer irreparable harm as a result.

Additionally, in its reply brief and at the hearing on this motion, Nexus raised the argument that the possibility of it being held in contempt for its potential failure to comply with the Final Order would also constitute irreparable harm.  (Reply Br. 6.)  However, courts have found that the risk of a finding of contempt does not rise to the level of irreparable harm necessary to grant a stay, reasoning that since "a present inability to comply with an order is ordinarily a complete defense to contempt," "the possibility that defendant could be held in contempt . . . does not constitute irreparable harm."  *Dale v. Butler*, No. 7:20-cv-184, 2021 WL 1305391, at *4 (E.D.N.C. Apr. 2, 2021); *Mamula v. Satralloy, Inc.*, 578 F. Supp. 563, 585 (S.D. Ohio 1983).  Therefore, Nexus has failed to show that being found in contempt would cause it irreparable harm.[1]

**D.  Substantial Injury to Plaintiffs & the Public Interest**

Nexus contends that a stay would not cause substantial injury to plaintiffs because they "would be in no worse position than where the[y] find themselves today" and describes the stay as a "*de minimus*" delay.  (Br. in Supp. 20.)  Nexus additionally asserts that a stay would serve the public interest because such a stay would allow for the continued existence of the company defendants which "provide valuable services to impoverished and disadvantaged immigrants." (*Id.* at 21.)  It further argues that the death of the defendant companies would reduce competition in the immigration bond market and lead to a "virtual monopoly."  (*Id.*)

---

[1]  The court notes that plaintiffs have filed a motion for an order to show cause why defendants should not be held in contempt.  (Dkt. No. 260), which should be fully briefed at some point today.  The court will address that motion separately.

However, the public also has a considerable interest in ensuring businesses comply with the law and do not deceive their consumers.  As this court stated in its memorandum opinion accompanying the Amended Final Order, "[t]he allegations here demonstrate that defendants consciously disregarded substantial and unjustifiable risks to their vulnerable consumers—namely the risk of financial harm—in gross deviation from accepted standards set forth by the CFPA and other consumer protection laws."  (Am. Mem. Op. on Remedies 27.)  The court further found that plaintiffs' requested injunctive relief would "undoubtedly serve the public interest" because the injunctions would "fence in" Nexus from engaging in behavior related to their previous illegal conduct and "[i]f defendants were to resume their unlawful activities, other potential victims could suffer similar harm."  (*Id.* at 20–21 (internal quotations omitted).)  The court finds that the interest in preventing future harm to the public far outweighs Nexus's concerns about the state of the market.

### III.  CONCLUSION

For the reasons stated above, Nexus's motion for a temporary stay pending appeal will be denied.  An accompanying order will follow.

Entered: June 28, 2024.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge