**ON REHEARING**

**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

––––––––––––

**No. 24-1334**

––––––––––––

CONSUMER FINANCIAL PROTECTION BUREAU; COMMONWEALTH OF
MASSACHUSETTS; THE PEOPLE OF THE STATE OF NEW YORK, by Letitia
James, Attorney General of the State of New York; COMMONWEALTH OF
VIRGINIA EX REL. JASON S. MIYARES,

> Plaintiffs – Appellees,

> v.

NEXUS SERVICES, INC.; LIBRE BY NEXUS, INC.; MICHEAL DONOVAN;
RICHARD MOORE; EVAN AJIN,

> Defendants – Appellants.

––––––––––––

Appeal from the United States District Court for the Western District of Virginia, at
Harrisonburg.  Elizabeth K. Dillon, Chief District Judge.  (5:21-cv-00016-EKD-JCH)

––––––––––––

Argued:  September 12, 2025                     Decided:  October 15, 2025

––––––––––––

Before KING, RUSHING, and BENJAMIN, Circuit Judges.

––––––––––––

Affirmed by published opinion.  Judge King wrote the opinion, in which Judge Rushing
and Judge Benjamin joined.

––––––––––––

**ARGUED:**  Zachary Timothy Peter Lawrence, LAWRENCE LAW FIRM PLLC, Cold
Brook, New York, for Appellants.    Larkin Turner, CONSUMER FINANCIAL

PROTECTION BUREAU, Washington, D.C., for Appellee. **ON BRIEF:** Seth Frotman, General Counsel, Steven Y. Bressler, Deputy General Counsel, Kristin Bateman, Assistant General Counsel, Stephanie B. Garlock, CONSUMER FINANCIAL PROTECTION BUREAU, Washington, D.C., for Appellee Consumer Financial Protection Bureau. Andrea Joy Campbell, Attorney General, David C. Kravitz, State Solicitor, OFFICE OF THE ATTORNEY GENERAL OF MASSACHUSETTS, Boston, Massachusetts, for Appellee Commonwealth of Massachusetts. Letitia James, Attorney General, Andrea W. Trento, Assistant Solicitor General, Jane Azia, Bureau Chief, Laura Levine, Deputy Bureau Chief, Bureau of Consumer Frauds and Protection, OFFICE OF THE ATTORNEY GENERAL OF NEW YORK, New York, New York, for Appellee People of the State of New York. Jason S. Miyares, Attorney General, Steven G. Popps, Chief Deputy Attorney General, Thomas J. Sanford, Deputy Attorney General, Richard S. Schweiker, Jr., Chief and Senior Assistant Attorney General, James E. Scott, Senior Assistant Attorney General, Consumer Protection Section, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee Commonwealth of Virginia, ex rel. Jason S. Miyares, Attorney General.

---

REVISED OPINION

KING, Circuit Judge:

The defendants herein — namely, two corporate entities named Nexus Services, Inc. and its subsidiary, Libre by Nexus, Inc., plus three individuals connected to those entities named Micheal Donovan, Richard Moore, and Evan Ajin (collectively, the "Nexus defendants") — appeal from an adverse final judgment of the Western District of Virginia. They challenge the district court's rulings that imposed default judgment and evidentiary sanctions against the defendants, plus permanent injunctive relief and the imposition of a monetary award that subjects them to approximately $811,000,000 in liability. As explained in further detail below, we are satisfied to reject the appellate contentions of the defendants and affirm the final judgment of the district court.

I.

A.

In February 2021, the Consumer Financial Protection Bureau (the "CFPB"), the Commonwealth of Massachusetts, the State of New York, and the Commonwealth of Virginia (collectively, the "plaintiffs"), initiated a civil enforcement action in the federal district court for Western Virginia at Harrisonburg against the Nexus defendants. By their 17-count complaint, the plaintiffs sought to hold the Nexus defendants accountable for a nationwide fraud scheme that preyed on vulnerable and distressed immigrant consumers held in custody by U.S. Immigration and Customs Enforcement ("ICE"), who were eligible

for release on immigration bonds.  *See* J.A. 36-84 (the "Complaint").[1]  The Complaint alleged, inter alia, that the Nexus defendants marketed their product to the immigrant consumers as an "easy and affordable" method of securing release from ICE custody on immigration bonds.  *Id.* at 41.  In reality, however, the Nexus defendants charged the immigrant consumers exorbitant fees for a purported array of services — only some of which the defendants actually provided — and deceived and abused those immigrant consumers, in violation of federal and state consumer protection statutes.

More specifically, the factual background giving rise to this civil enforcement action — having been entirely admitted by the default judgment entered against the Nexus defendants, *see, e.g.*, *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) — was spelled out best by the district court:

> Nexus, through its wholly owned subsidiary Libre, operates a nationwide business aimed at immigrants held in federal detention.  The business was designed and implemented by Micheal Donovan, Richard Moore, and Evan Ajin.  At the time the suit was originally filed, Donovan was a majority owner, officer, and director of Nexus and the chief executive officer of Libre. Moore was part owner of Nexus, the chief financial officer of Libre, and the executive vice president of Nexus and Libre.  Ajin was part owner and a director of Nexus and a vice president of Libre.
>
> Libre advertises its services to immigrants who are detained and may be released on bond. In 2018, the average immigration bond was $7,500.  A detainee may pay an immigration bond fully in cash or guarantee the bond through a surety company that is certified by the U.S. Treasury.  Neither Nexus nor Libre is a licensed bail-bond agent or a surety company certified by the U.S. Treasury.  Instead, Libre is a service provider that acts as an intermediary between . . . detainees and sureties and . . . bond agents.

---

[1] Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

4

To obtain Libre's services, Libre requires detainees to execute an agreement with certain obligations, and, in exchange, Libre agrees to indemnify the sureties and their bond agents for any losses in connection with the immigration bonds.  From about 2014 until 2017, Libre used a multi-part, 21-page, written client agreement ("the Original Agreement").  The Original Agreement was written in English, except for a single page written in Spanish.  The Original Agreement required consumers to make upfront payments in the amount of 20% of the bond, a $420 advance payment, and an activation fee up to $460.  In addition, it required consumers to wear a GPS ankle monitor and make monthly payments of $420 until: (1) the consumer's immigration proceedings are resolved; or (2) the consumer makes supplemental collateral payments that add up to 80% of the amount of the bond, at which time the ankle monitor is removed, and the consumer agrees to pay the remaining 20% over a specified time.  A consumer's monthly payments to Libre are not refundable, but the collateral payments are refundable once a consumer's immigration proceedings are resolved.

In late 2017 or early 2018, Libre revised its written client agreement (the "New Agreement").  The New Agreement does not require GPS monthly lease payments. Instead, it requires monthly "program fees," which are recurring monthly charges that vary according to the bond amount.  The New Agreement requires consumers to either pay program fees according to a schedule or to pay supplemental bond collateralization payments that add up to the full amount of the bond.  After a consumer has paid all of the program fee installments or made bond collateralization payments in the full amount of the bond, the consumer must then pay a monthly maintenance fee of $50 until the bond is cancelled.

According to plaintiffs, Libre falsely told consumers that it paid the full amount of the consumer's bond to [ICE].  In addition, Libre falsely told consumers that the $420 monthly payments in the Original Agreement were repayments to Libre for the bond Libre paid, but the monthly payments actually went toward leasing the GPS device. Regarding the New Agreement, Libre represented to consumers that the monthly payments were payments toward a loan.  Further, consumers told call-center employees that they thought their monthly payments were going toward paying down their bonds.  Most Libre consumers do not read or speak English; therefore, they cannot understand the terms in the written agreement and rely on Libre's oral representations.  Plaintiffs allege that "Libre's misrepresentations lead consumers to reasonably believe that Libre ha[d] paid cash bonds, that consumers owe[d] a debt to Libre in the amount of the cash bonds, and that [consumers'] monthly payments pa[id] down that debt."

*See* J.A. 1720-22 (citation modified).

## B.

After the Nexus defendants unsuccessfully sought dismissal of the Complaint in early 2021 on grounds that the district court lacked subject-matter jurisdiction, they engaged in a systematic and continuous pattern of noncompliance with multiple court orders, and they failed to engage properly in discovery proceedings.[2]  Put simply, the defendants refused to meaningfully participate in discovery, including by failing to respond to the plaintiffs' discovery requests, ignoring multiple court orders compelling the disclosure of documents and other information, and by disregarding pertinent deadlines.

The panoply of the Nexus defendants' discovery misconduct and failure to participate in this litigation was well summarized by the district court in April 2024:

> On May 19, 2021, defendants agreed to provide in discovery their Rule 26(a) individual disclosures on or before July 22, 2021, which they ultimately did on July 21.  With respect to disclosure of individuals who were "likely to have discoverable information . . . that [defendants] may use to support [their] claims or defenses," Fed. R. Civ. P. 26(a)(1)(A)(i), defendants listed nineteen individuals/entities, most of whom were already named somewhere in the complaint.  Concerning the disclosure of copies of "all documents, electronically stored information, and tangible things that [defendants had] in [their] possession, custody, or control and may use to support [their] claims or defenses," Fed. R. Civ. P. 26(a)(1)(A)(ii), defendants indicated that they "have no documents, electronically stored information, and tangible

---

[2] By its Memorandum Opinion of March 22, 2022, the district court rejected the Nexus defendants' arguments for dismissal of the Complaint.  *See Consumer Fin. Prot. Bureau v. Nexus Servs., Inc.*, No. 5:21-CV-00016 (W.D. Va. Mar. 22, 2022), ECF No. 108.  Therein, the court concluded it possessed subject-matter jurisdiction over the case because the plaintiffs' CFPA claims conferred it with original jurisdiction pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the plaintiffs' state law claims under 28 U.S.C. § 1367(a).  Although the Nexus defendants do not challenge that ruling, we are satisfied with the court's assessment of its subject-matter jurisdiction in this case.

things in their possession, custody, or control at this time." To date, defendants have not supplemented those initial disclosures.

On September 13, 2021, the court issued an order scheduling a bench trial for January 30 through February 17, 2023, and setting other key deadlines in this case. Defendants largely failed to produce documents and electronically stored information responsive to plaintiffs' discovery requests throughout this litigation. On June 8, 2022, U.S. Magistrate Judge Joel C. Hoppe ordered defendants to take certain steps to fully respond to plaintiffs' outstanding requests for production. Defendants did not comply with that order. Consequently, on July 19, 2022, plaintiffs moved the court to sanction defendants for their noncompliance.

The deadline for defendants' expert disclosures . . . came and went, and defendants had not yet disclosed the identity or written report of any expert. Likewise, the deadline to complete discovery . . . passed, and plaintiffs still had not received most of their requested discovery. As a result, on December 1, 2022, the court canceled the early 2023 bench trial.

See J.A. 1722-23 (citation modified).

Following this pattern of litigation misconduct, during a January 2023 hearing before the United States Magistrate Judge, the parties discussed the defendants' noncompliance with court orders and their unfulfilled discovery obligations, along with potential sanctions. *See* J.A. 1035-79. Notably, the defendants' lawyers conceded that monetary sanctions were unlikely to prompt any compliance by the defendants with prior court orders and discovery obligations. *Id.* at 1069-70 (defendants' counsel stating to court that he was "at a loss" for what sanctions to "suggest"). At that juncture of the proceedings, the plaintiffs clarified their position and explained that "[i]f there are no financial fines that we can impose . . . that are going to get [the defendants] to take the basic steps to participate in this litigation, then it's time to hold them in default." *Id.* at 1071.

Soon thereafter, the Magistrate Judge issued several court orders aimed at addressing the ongoing discovery noncompliance and litigation misconduct of the Nexus defendants. The Magistrate Judge also approved the defendants' counsel's requests to withdraw from their representation of the defendants and ordered the two corporate defendants — that is, Nexus and Libre — to have new counsel enter appearances within 14 days, by January 25, 2023. *See* J.A. 1082. Therein, the Magistrate Judge explicitly warned the defendants that failure to comply could result in a default.

But the Nexus defendants nevertheless failed to comply. That is, the defendants ignored the Magistrate Judge's orders by failing to produce any additional documents responsive to the plaintiffs' discovery requests, *see* J.A. 1135-36; by failing to attend a March 2023 status conference with the District Judge, *id.* at 1136, 1204; and by seeking to delay the proceedings by making promises in April 2023 to ensure compliance with discovery obligations "as quickly as humanly possible," *id.* at 1150.[3] Eventually, given

---

[3] The Nexus defendants' promise to come into compliance with their discovery obligations "as quickly as humanly possible" was short-lived. *See* J.A. 1150. Indeed, just two weeks after an April 2023 hearing before the District Judge, the defendants moved for judgment on the pleadings, contending that the plaintiffs' claims against them should be dismissed based on a constitutional contention about the CFPB's statutory funding mechanism, *see* J.A. 1190, which the Supreme Court has since rejected, *see CFPB v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 601 U.S. 416, 441 (2024). As the District Judge would thereafter observe — in granting the plaintiffs' request for default judgment — the filing of that untimely motion, more than five months *after* the deadline for dispositive motions had lapsed, was "hardly consistent with the conduct of a litigant for whom purging itself of contempt and avoiding delay are top priorities." *See* J.A. 1205.

the defendants' continued noncompliance and failure to meaningfully engage in the pre-trial litigation, the plaintiffs requested that the district court impose default judgment.[4]

C.

On May 11, 2023, in addressing the Nexus defendants' record of well-documented noncompliance and misconduct with court orders and applicable rules governing litigation, the district court resolved — pursuant to Rule 37 of the Federal Rules of Civil Procedure and the court's inherent authority — to sanction the defendants with an entry of default judgment. And the court's decision in that respect was predicated on the defendants' bad-faith violations of multiple court orders, disregard for applicable deadlines, and refusal to engage in discovery proceedings. *See Consumer Fin. Prot. Bureau v. Nexus Servs., Inc.*, No. 5:21-cv-00016 (May 11, 2023), ECF No. 201 (the "Default Judgment Ruling").

Applying the four-factor test for Rule 37 sanctions such as default judgment, as set forth by our Court in *Wilson v. Volkswagen of America, Inc.*, 561 F.3d 494, 503-05 (4th Cir. 1977), the district court concluded that, "if default judgment is to ever be warranted as a sanction for discovery abuses, it is emphatically so in this case." *See* Default Judgment Ruling 12. The court then emphasized and explained that the Nexus defendants'

> bad faith . . . in their pattern of knowing noncompliance with numerous orders of the court, including but not limited to their failure to timely retain counsel when ordered to do so, their refusal to respond in writing to [the

---

[4] Notably, the Nexus defendants failed to file a timely response to the plaintiffs' request for default judgments. On appeal, the defendants stated that their failure to file such a response was due to the fact that they did not have counsel. That fact was revealed in spite of the Magistrate Judge's prior order — from *months* earlier — directing the defendants to promptly secure representation by counsel. *See* Br. of Appellant 49.

Magistrate Judge's] order to show cause when directed to do so, and their
unexcused absence from a scheduled telephone conference.

*Id.* at 12 (citation modified).  The court also observed that the defendants' "other litigation

activity in this case — even after the appearance of new counsel — further indicates a lack

of candor with the court and a delusion as to the exigency of the situation."  *Id.*

Furthermore, the district court concluded that the plaintiffs were prejudiced by the

Nexus defendants' misconduct and "persistent noncompliance" in failing to provide them

with "meaningful discovery."  *See* Default Judgment Ruling 13.  The court explained that

the plaintiffs were "'forced to expend a tremendous amount of time, effort, and expense in

the discovery process and motions practice,' and defendants' conduct 'has rendered much

of that activity essentially meaningless,' given that plaintiffs still have not received large

swaths of responsive [information]."  *Id.* (quoting *Rangarajan v. Johns Hopkins Univ.*, 917

F.3d 218, 226 (4th Cir. 2019)).   And lastly, the court reasoned that "[t]he need for

deterrence of this particular sort of noncompliance could not be greater, as defendants have

'[s]talled and ignore[d] the direct orders of the court with impunity.'"  *Id.* at 14 (quoting

*Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989)).[5]

---

[5] In addition to imposing default judgment against the Nexus defendants, the district
court held the defendants in civil contempt based on the Magistrate Judge's show cause
order and certification, which documented in "careful detail" the "failings of [the
defendants] to respond to plaintiffs' discovery requests or make good faith effort to do so."
*See* Default Judgment Ruling 11.  The court then recognized that, because "[t]he factual
certification constitutes prima facie evidence of contempt, which sustains plaintiffs' initial
burden of proof," the defendants' lawyer's subsequent concession "that defendants should
be held in contempt" — along with the defendants' failure to contest or oppose the certified
facts — supported a finding of civil contempt.  *Id.* at 11, 16.  Notably, the defendants do
not challenge the civil contempt aspect of the Default Judgment Ruling.

D.

During the ensuing post-default judgment proceedings, on June 13, 2023, the district court scheduled an evidentiary hearing for August 2023 concerning the civil remedies sought by the plaintiffs, which included, inter alia, a request for permanent injunctive relief and monetary penalties.[6]  Leading to that evidentiary hearing, on June 26, 2023,  the Nexus defendants disclosed witnesses and exhibits that had not been previously disclosed in discovery proceedings, prompting swift objections from the plaintiffs.  *See* J.A. 1458-67.

By its Memorandum Opinion of August 8, 2023, the district court sustained most of the plaintiffs' objections and resolved to exclude the Nexus defendants' proposed witnesses — with the exception of individual defendant Ajin — along with all of their proposed exhibits.  *See Consumer Fin. Prot. Bureau v. Nexus Servs., Inc.*, No. 5:21-cv-00016 (Aug. 8, 2023), ECF No. 229 (the "Witnesses and Exhibits Ruling").  Therein, the court ruled that such an exclusion was the appropriate remedy, pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, and that the nondisclosures of evidence were neither substantially justified nor harmless.  Applying our Court's 2003 precedent in *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003),

---

[6] In responding to the plaintiffs' request for a permanent injunction, the Nexus defendants did not mount any opposition in their remedies briefing.  *See* J.A. 1468-98.  Nor did they respond, object, or offer an alternative to the relief sought by the plaintiffs, *id.* at 1925-50; argue against injunctive relief requested by the plaintiffs during the remedies-related evidentiary hearing (but instead asked only to cancel the hearing), *id.* at 1612, 1889-90; or request reconsideration or modification of the injunction after it was entered.

the court explained in the Witnesses and Exhibits Ruling that its exclusion of the

defendants' proposed exhibits was appropriate for the following reasons:

> Collectively, the *Southern States* factors weigh heavily against permitting
> defendants to introduce these documents as exhibits at the damages/remedies
> hearing. First, surprise to plaintiffs upon admission of these documents into
> evidence would be inevitable; defendants have essentially filibustered
> against plaintiffs' reasonable requests not only by failing to provide copies
> of the proposed exhibits to this day, but also not definitively stating whether
> any of the documents were provided in discovery (though defense counsel
> indicated his "belief" that "most" of the documents were probably not
> produced — without specifying which documents might indeed have been
> produced).   Second and relatedly, defendants had the chance to at least
> attempt to cure that surprise by providing plaintiffs with copies of the
> proposed exhibits as soon as they resolved to put them on their initial exhibit
> list.  But they have thus far squandered that chance.  Third, the court expects
> that allowing defendants to present these exhibits would significantly disrupt
> the hearing; plaintiffs will have had little to no opportunity to review the
> documents for possible evidentiary objections based on (among other
> grounds) authenticity, hearsay, the witness's personal knowledge, unfair
> prejudice, and the like.  Fourth, although one cannot be certain how exactly
> defendants intend to use each exhibit, the court sees no reason why
> defendants would endeavor to introduce 17 documents not already produced
> in discovery if those documents were not in some sense important to the
> issues.  Moreover, each of the defendants' proposed exhibits relate, in one
> respect or another, to one of their 12 proposed witnesses.  This factor favors
> defendants and the admission of the evidence; however, it is insufficient to
> overcome the other factors.  Notably, one wonders why the documents, if so
> important to the damages and remedies issues, were not produced and still
> have not been produced.  This also bolsters plaintiffs' argument that they are
> prejudiced by the late disclosure of the documents without their production.
>
> Lastly, defendants' principal reason for only recently disclosing these
> documents was that their counsel only recently entered this case in April
> 2023 — long after discovery had closed — and did the best they could in
> light of their clients' default and earlier discovery violations. But while the
> court appreciates their efforts, that does not relieve the defendants themselves
> of their obligation to comply with the Federal Rules and court-ordered
> discovery deadlines, by and through whomever represents them at the time.
> Even putting that aside, at the hearing on plaintiffs' objections, defense
> counsel failed to offer the court a meaningful explanation for why defendants
> had not yet provided copies of the proposed exhibits despite having identified

them on their list.  In that regard, defense counsel's recent entry into this case is no excuse.

*See* Witnesses and Exhibits Ruling 10-11 (citation modified).

From there, the district court extended that reasoning in also excluding 11 of the 12 witnesses identified by the defendants in their pre-evidentiary hearing submission:

> Looking to the first *Southern States* factor, permitting defendants to elicit testimony from any of the witnesses on their list (other than Ajin) would cause even greater surprise to plaintiffs than would admission of the documents. Indeed, defendants' failure to timely disclose the identity of these witnesses prevented plaintiffs from taking any of their depositions before the close of discovery, thereby inhibiting their preparation for an eventual trial (or, in this case, a hearing on damages/remedies). And as to any experts, defendants still have not provided plaintiffs with a final report, leaving them with even less information. Second, unlike the exhibits, there was no realistic way for defendants to entirely cure the surprise to plaintiffs that would result from calling undisclosed, un-deposed witnesses at the hearing while operating within the confines of the already-delayed schedule because defendants indicated their intent to disclose these new witnesses less than two months before the scheduled damages/remedies hearing.  Third, allowing defendants to present these witnesses would disrupt the hearing in the same way as would admitting the undisclosed exhibits. Lastly, defendants' explanation for the late disclosure of the witnesses was essentially the same as for the late disclosure of the exhibits and is insufficient for the same reasons.

*See* Witnesses and Exhibits Ruling 12-13.

On August 15, 2025, the Nexus defendants requested that the district court cancel its planned evidentiary hearing concerning the plaintiffs' request for permanent injunctive relief and monetary remedies.  *See* J.A. 1889 (defendants' counsel confirming to court that defendants "do not believe that a hearing is necessary").  That same day, and of importance concerning the issue of remedies, the parties stipulated to the sum of $230,996,970.84 as being the monies collected by the defendants from the immigrant consumers and not

refunded.  *Id.* at 1629 (stipulating that Nexus and Libre "received $230,996,970.84 from

consumers between December 2013 to June 2022") (the "Stipulation").

E.

In early April 2024, the district court entered its final judgment, therein awarding

permanent injunctive relief against the Nexus defendants to prevent further illegal conduct

and otherwise assessing a monetary award, pursuant to both federal and state law.  *See

Consumer Fin. Prot. Bureau v. Nexus Servs., Inc.*, No. 5:21-cv-00016 (April 1, 2024), ECF

No. 246 (the "Amended Final Judgment"); *Consumer Fin. Prot. Bureau v. Nexus Servs.,

Inc.*, No. 5:21-cv-00016 (April 2, 2024), ECF No. 247 (the "Amended Memorandum

Opinion").  In those rulings, the court concluded and explained that the Complaint had

alleged valid claims against the Nexus defendants under the Consumer Financial Protection

Act ("CFPA") and relevant state statutes, which had permitted the court's earlier entry of

default judgment.  Next, applying the four-factor test governing the issuance of permanent

injunctive relief, as articulated by the Supreme Court in *eBay LLC v. MercExchange, LLC*,

547 U.S. 388, 391 (2006), the court ascertained that the plaintiffs' request for injunctive

relief — set forth in a proposed order submitted by the plaintiffs, and without *any

opposition* from the defendants — was warranted under both federal and state law.  *See*

Amended Memorandum Opinion 20.[7]  In particular, the court recognized that the "public

---

[7] The *eBay* test requires a federal court to consider the following four factors in
ascertaining whether permanent injunctive relief is appropriate and warranted:

> (1) that [the plaintiff] has suffered an irreparable injury; (2) that remedies
> available at law, such as monetary damages, are inadequate to compensate
(Continued)

14

interest is served by injunctions that reasonably 'fence in' [the defendants] from engaging in behavior related to their previous illegal conduct." *Id.*

Moving on, in light of the Stipulation by the parties concerning the Nexus defendants' net collections from their immigrant consumers, the district court resolved to assess a monetary award in favor of the plaintiffs, totalling approximately $811,000,000. Predicated on well-established precedent, that monetary award included the sum agreed to by the parties and set forth in the Stipulation as restitution payable to the immigrant consumers, along with the court's attendant assessment of civil penalties of $111,135,620 per defendant (for an aggregate of $555,678,100) to the CFPB; $7,100,000 to the Commonwealth of Virginia; $3,400,000 to the Commonwealth of Massachusetts; and $13,890,000 to the State of New York.

As to the issue of restitution to the immigrant consumers, the court explained that the plaintiffs had satisfied their "burden of establishing that the amount of restitution [they seek] — that is, defendants' net revenues — reasonably approximate defendants' unjust gains," which the court thereupon observed was the appropriate measure of restitution to the immigrant consumers under federal law and precedent. *See* Amended Memorandum Opinion 22 (citing, inter alia, *Consumer Fin. Prot. Bureau v. CashCall, Inc.*, 35 F.4th 734, 750 (4th Cir. 2022)) (citation modified). In that sense, the court explained that "[g]ross

---

for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*See eBay*, 547 U.S. at 391; *see also Wudi Indus. (Shanghai) Co., Ltd. v. Wong*, 70 F.4th 183, 190 (4th Cir. 2023) (applying *eBay* factors to assess permanent injunctive relief).

and net revenues are regularly used to approximate consumer loss or gain," such that the Stipulation reflected an appropriate amount of restitution.  *Id.*[8]

Turning to the issue of civil monetary penalties, the district court concluded that such penalties were also appropriate.  With respect to the CFPA, the court explained that it would "follow a similar approach" in assessing penalties against the Nexus defendants:

> Plaintiffs have extensively alleged that each of the defendants "knowingly or recklessly" engaged in "deceptive acts or practices in violation of the CFPA." Defendants admit these allegations by virtue of their default.  The allegations here demonstrate that defendants consciously disregarded substantial and unjustifiable risks to their vulnerable consumers — namely the risk of financial harm — in gross deviation from accepted standards set forth by the CFPA and other consumer protection laws.  The court finds that defendants recklessly violated the CFPA and will impose Tier Two penalties [i.e., up to $34,065 per day for each reckless violation of the CFPA].

*See* Amended Memorandum Opinion 27 (citation modified).[9]

---

[8] Although the Nexus defendants argued to the district court that "a plaintiff cannot *always* meet its burden of approximating losses or gains by calculating from gross or net revenues," the court observed that the defendants provided "[no] case law illustrating an alternative calculation method." *See* Amended Memorandum Opinion 23.  In any event, the court then proceeded to explain that, in light of the "systemic pattern of unlawful and deceptive conduct against all of their consumers" established by the plaintiffs, the use of defendants' revenues to measure restitution was appropriate given that such revenues are "wholly attributable to their pattern of contemptuous conduct."  *Id.*

[9] As to civil penalties under state law — i.e., the laws of Virginia, Massachusetts, and New York — the court calculated the number of immigrant consumers in each jurisdiction (2,840 immigrant consumers in Virginia; 680 immigrant consumers in Massachusetts, and 2,778 immigrant consumers in New York) and then multiplied those totals by the applicable civil penalty under each governing state statute. *See, e.g.*, Va. Code Ann. § 59.1-206(A) (permitting penalty of up to $2,500 per statutory violation); Mass. Gen. Laws Ann. ch. 93A, § 4 (permitting penalty of up to $5,000 per violation whenever person or entity engages in any act or practice that they "knew or should have known" was unfair or deceptive); N.Y. Gen. Bus. Law § 350-d (permitting penalty of $5,000 per violation).

On April 11, 2024, the Nexus defendants timely appealed from the Amended Final Judgment. We possess jurisdiction in this appeal pursuant to 28 U.S.C. § 1291.

## II.

Our Court reviews for abuse of discretion a district court's imposition of default-judgment sanctions under Rule 37(b)(2) and evidentiary sanctions under Rule 37(c)(1) of the Federal Rules of Civil Procedure. *See Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014). We also "review for abuse of discretion both the court's decision to enter the injunction and the scope of relief awarded" therein. *See RXD Media, LLC v. IP Application Dev. LLC*, 986 F.3d 361, 375 (4th Cir. 2021). And finally, we review de novo the challenged legal principles underlying a district court's remedial award. *See U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 384 (4th Cir. 2015).

## III.

On appeal, the Nexus defendants have presented four assignments of error with respect to the district court's rulings and final judgment. First, the defendants maintain that the court abused its discretion in sanctioning them with default judgment for their series of affronts to the court and violations of the court's various orders, plus other violations of applicable deadlines and litigation obligations. Second, the defendants assert that the court was required to approve the introduction of their evidence and witnesses at the scheduled remedies-related evidentiary hearing, despite the fact that such evidence had neither been disclosed to the plaintiffs nor produced during discovery proceedings. Third, the

defendants contend that the court's permanent injunctive relief does not comply with applicable law and Rule 65(d) of the Federal Rules of Civil Procedure. Fourth, the defendants assert that the court erred in calculating the monetary award. As explained herein, we reject each of the defendants' appellate contentions.

A.

First, the district court did not abuse its discretion in sanctioning the Nexus defendants with default judgments in the first instance. The thorough and well-reasoned Default Judgment Ruling of May 2023 — which abides by our precedent — explained that default judgment was warranted for the defendants' "knowing noncompliance with numerous orders of the court." *See* Default Judgment Ruling 12. And that proposition is bolstered by the defendants' lawyer's statement to the court that he was "at a loss" for what other sanction might be appropriate in ensuring his clients' compliance with court orders, discovery obligations, and other litigation deadlines. *See* J.A. 1069-70.

Stated succinctly, there was simply no error in the district court's entry of default judgment against the Nexus defendants, who were — in the words of the able District Judge — "stall[ing] and ignor[ing] the *direct orders* of the court *with impunity*." *See* Default Judgment Ruling 14 (emphasis added). Rather, the Default Judgment Ruling contains detailed and comprehensive findings documenting the defendants' blatant misconduct in this litigation, which included defiance of court orders and the rules that govern the orderly resolution of pending litigation. *See, e.g.*, *Wilson v. Volkswagen of America, Inc.*, 561 F.3d 494, 503-05 (4th Cir. 1977); *Mey v. Phillips*, 71 F.4th 203, 218 (4th Cir. 2023). Such "repeated misconduct [by a litigant] . . . will not [be] tolerate[d]" in our judicial system,

18

and we perceive of no reason as to why it should be tolerated here.  *See Mut. Fed. Sav. &*
*Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 94 (4th Cir. 1989).[10]

## B.

Second, we are entirely unpersuaded by the contention that the district court abused

its discretion in excluding certain proposed exhibits and witnesses in the scheduled — but

unconducted — remedies-related evidentiary hearing once set for August 2023, which the

defendants indisputably failed to disclose or identify in discovery.  Pursuant to the Rules

of Civil Procedure, if a litigant fails to provide information or identify a witness, as required

by Rules 26(a) and (e), that litigant is not entitled to utilize the undisclosed information or

such witnesses at trial, unless the failure to disclose was "substantially justified" or

"harmless."  *See* Fed. R. Civ. P. 37(c)(1).  As our Court has explained in that regard,

---

[10] The Nexus defendants inanely suggest that, prior to imposing the sanction of default judgment, the district court was required to explicitly warn them that noncompliance with prior court orders could result in default.  *See* Br. of Appellant 49 (citing *Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40 (4th Cir. 1995)).  But our precedent directly refutes this contention.  Instead, we have recognized that "an explicit warning is not always necessary . . . because a party is already put on notice of the possibility of default by the terms of Federal Rule of Civil Procedure 37."  *See Mey*, 71 F.4th at 218 (explicitly rejecting that *Hathcock* always requires pre-default judgment warning requirement and otherwise recognizing that circumstances exist "where the entry of default judgment against a defendant for systemic discovery violations is the natural next step in the litigation, even without an explicit prior warning from the district court").

Relatedly, the Nexus defendants claim they were also not given an adequate opportunity to cure their misconduct *after* learning that the plaintiffs would seek default judgment.  Yet again, this argument is meritless.  Consistent with *Mey*, if a defendant has been "given ample opportunity to satisfy the conditions of the court's discovery orders" and chooses "continued obstinacy," such that there is no requirement to provide a defendant with notice *before* default judgment is entered, then there can be no requirement for a post-notice opportunity to cure, as the defendants suggest.  *See* 71 F.4th at 221.

whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003).

Prior to the scheduled — but unconducted — evidentiary hearing on remedies, the Nexus defendants failed to disclose all the exhibits included on their proposed list for introduction, and they also failed to disclose 11 of their 12 proposed witnesses. In that regard, the Witnesses and Exhibits Ruling explained why the court's exclusion of the defendants' proposed witnesses for the evidentiary hearing (with the exception of defendant Ajin, who was included in the defendants' initial disclosures) — and its exclusion of all of their proposed but undisclosed exhibits — was appropriate and warranted by our Court's 2003 *Southern States* precedent. We thus also reject this contention, on the basis of the court's thorough Witnesses and Exhibits Ruling.[11]

---

[11] The Nexus defendants argue that the district court's evidentiary sanctions (at the remedies stage) were duplicative of the default judgment sanction (at the liability stage). *See* Br. of Appellant 55-56. Not only is that argument unavailing, but it overlooks the fact that trial courts routinely impose both types of sanctions when warranted. *See, e.g.*, *Tandycrafts, Inc. v. Bublitz*, 2002 WL 324290, at *3 (N.D. Tex. Feb. 27, 2002); *Glob. Digit. Sols., Inc. v. Grupo Rontan Electro Metalurgica, S.A.*, 2020 WL 8816214, at *1-2 (S.D. Fla. Dec. 1, 2020). And otherwise, the defendants have failed to point to any authority — much less controlling authority — to support their erroneous position.

C.

Third, the district court did not abuse its discretion in entering its well-supported, specific, and detailed permanent injunction.  Although the plaintiffs broadly maintain that the Nexus defendants "forfeited their [appellate] challenges to the [permanent] injunction by failing to raise them before the district court," *see* Br. of Appellee 38 — such that we should review those challenges only for stringent "fundamental error," *see, e.g.*, *Hicks v. Ferreyra*, 965 F.3d 302, 310 (4th Cir. 2020) — we are satisfied to simply reject the defendants' arguments regarding the propriety of the court's permanent injunction because they abjectly fail, even under an abuse-of-discretion standard of review.

With respect to the Nexus defendants' primary substantive challenge to the permanent injunction, we are satisfied that the "fencing-in" relief  afforded by the injunction — which faced *no objection* by the defendants' in the underlying proceedings — is appropriately tailored to account for the defendants' various and several violations of federal and state consumer protection laws.  And such relief was otherwise necessary to prevent further evasion by the defendants.  *See, e.g.*, *Fed. Trade Comm'n v. Pukke*, 53 F.4th 80, 110 (4th Cir. 2022) (recognizing that appropriate award of injunctive relief may include "fencing-in" provisions designed to "prevent [defendants] from engaging in similarly illegal practices" in future); *accord Fed. Trade Comm'n v. Ruberoid Co.*, 343 U.S. 470, 473 (1952); *Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 307 (7th Cir. 2010); *Fed. Trade Comm'n v. Grant Connect, LLC*, 763 F.3d 1094, 1105 (9th Cir. 2014).

Procedurally, the district court's permanent injunction — which includes very detailed factual findings and thorough definitions of relevant terms — clearly describes the

acts restrained and required, and thus complies with Federal Rule of Civil Procedure 65(d). That is, the injunction states "its terms specifically" and it "describe[s] in reasonable detail — and not by referring to the complaint or other document — the act or acts to be restrained or required." *See* Fed. R. Civ. P. 65(d)(1)(B)-(C).  Those mandatory requirements, the Supreme Court has observed, serve to ensure "that those who must obey [an injunction] will know what the court intends to require and what it means to forbid." *See Int'l Longshoremen's Ass'n, Loc. 1291 v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76 (1967). To reiterate, Rule 65(d) has been adhered to, and we therefore reject the defendants' belated attempts to undermine the procedural propriety of the permanent injunction.

### D.

Finally, we reject the Nexus defendants' confusing last-ditch effort to undermine the district court's monetary award by claiming that it requires them to pay as restitution the total sum collected from the immigrant consumers (i.e., the amount identified in the Stipulation), as opposed to some other unspecified amount.  To that end, we agree with and adopt the well-crafted — and legally correct — analysis set forth in the court's Amended Final Judgment and the Amended Memorandum Opinion.  As detailed more fully above, those rulings cogently explain the legal rationale underlying the restitution and penalties imposed, which comply with precedent, the CFPA, and the applicable state statutes.

Accordingly, we affirm the district court's monetary award in favor of the plaintiffs and against the Nexus defendants, totalling approximately $811,000,000.  That sum includes $230,996,970.84 in restitution to the immigrant consumers, along with an attendant assessment of civil penalties of $111,135,620 per defendant (for an aggregate of

$555,678,100) to the CFPB; $7,100,000 to the Commonwealth of Virginia; $3,400,000 to the Commonwealth of Massachusetts; and $13,890,000 to the State of New York.

IV.

Pursuant to the foregoing — and with austere reverence for our judicial system and its rules concerning the orderly and fair disposition of pending disputes — we reject the Nexus defendants' appellate contentions and affirm the final judgment.

*AFFIRMED*