UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

CONSUMER FINANCIAL
PROTECTION BUREAU, *et al.*,

Plaintiff,

v.

NEXUS SERVICES, INC., *et al.*,

Defendants.

No.: 5:21-cv-00016-EKD-JCH

## **AFFIDAVIT**

STATE OF ___P A___          )
                            ) ss.:
COUNTY OF ___Berks___       )

VINCENT SMITH, being duly sworn, deposes and says:

1.  I am over 18 years of age, of sound mind and otherwise competent to make this Affidavit.
    The evidence set out in the foregoing Affidavit is based on my personal knowledge.

2.  I am the CEO of Libre Immigration Services, Inc. ("LIS").

3.  LIS has pursuant to the Court's order acquiesced to the recission of the sale Nexus
    Services, Inc.'s and Libre by Nexus, Inc.'s assets to LIS.

4.  LIS does not contend that any aspect of that sale survives or has effect.

1

5.  LIS has made a diligent search for any covered information and contracts that it possesses but has not discovered such. In the search inducted by me no NEXUS Customer Files were located in our office.  NEXUS Customer Files were stored in a storage facility, which LIS had no keys or access to, ot Mike Donovan's residence.  LIS did not have access to NEXUS Customer Digital Files which were maintained by an outside vendor ZoHo.  In the event it discovers such it will delete or destroy the same.

6.  LIS further states that it has never had access to historical customer information of Nexus or any of its related entities. All Nexus customer information was maintained in digital files on a ZoHo online platform. That platform was never transferred to LIS by Nexus and LIS was locked out of the platform almost immediately after the Purchase Agreement was signed.

7.  LIS's client base is entirely new and consists solely of clients acquired independently by LIS.  LIS has never intentionally accessed any former NEXUS Client.   As LIS does not possess any historical NEXUS Customer List, to compare against LIS's Customer List, we cannot say with certainty as to whether or not there was a cross-over with Customers

8.  LIS has never had access to historical customer files of Nexus or any related entity. Nexus maintained those files either at the residence of Mike Donovan or in a storage facility, neither of which LIS ever had access to.

9.  LIS has never had access to historical customer contracts of Nexus or any related entity. LIS obtained new customer contract forms under the CFPB and Court-ordered regulations. This required LIS to hire a translation service to properly translate the new contract forms.

2

10. LIS has never had access to Nexus office space. No keys were ever provided to LIS. LIS has also never had access to or possession of any Nexus office furnishings, equipment, or automotive vehicles, as none were ever transferred to LIS.

11. LIS has never had access to any Nexus or related entity domain names. LIS uses its own wholly-owned domain. No domain name was ever transferred to LIS.

12. LIS had only limited use of Nexus phone numbers after execution of the Purchase Agreement. Those numbers were not made available to LIS, and LIS subsequently created its own toll-free number. Nexus never transferred any phone number to LIS.

13. The Nexus and related-entity employees assigned after execution of the Purchase Agreement mostly resigned, quit, or were terminated. LIS retained only two call-center employees who had industry experience.

14. LIS formally placed Nexus and its related entities on notice that all payments due under the Purchase Agreement would cease immediately due to multiple contractual breaches. Nexus was operating an alter-ego business, Subversio, LLC, which competed with LIS in violation of the Purchase Agreement. LIS has not made any payments to Nexus or its related entities since issuing that notice.

15. LIS did receive transfer of a Nexus vendor relationship with Phone.com, which provided call-center system services. No other assets, accounts, or property of Nexus or its related entities were ever transferred to LIS.

16. LIS has never had access to any social media accounts of Nexus or its related entities. No such accounts were ever transferred to LIS.

17. LIS has not and will not collect on any covered contracts.

18. LIS has been and continues to be contacted by historic clients of Nexus Companies, seeking information, relating to Nexus Companies, and their own administrative hearings.[1] LIS will consult with the plaintiffs to determine whether the plaintiff's wish for LIS to provide information to such persons because to do such requires LIS representatives to take certain information from those historic clients.

19. LIS has done everything within its ability to comply with the Court's March 30, 2026, order and I believe LIS is as of the date of signing in full compliance with that order.

_____
VINCENT SMITH

Sworn to before me this 17
day of April 2026

_____

Notary Public

Commonwealth of Pennsylvania - Notary Seal
Jean McKim, Notary Public
Berks County
My Commission Expires September 16, 2029
Commission Number 1235499

---

[1] LIS had previously, as a courtesy, provided those historic clients, who contacted LIS, information with regard to their immigration hearings in the event that the historic client requested the same and provided LIS with information necessary to search for the hearing. In order to look up a hearing through the publicly available ICE portal one must input an A-number, first and last name, and country of origin; LIS would receive that information from any communications received from the historic client rather than in data or IP provided by Nexus Companies.

4